**Hearing Date and Time: August 9, 2005 at 10:00 a.m. (Eastern Time)**
**Objection Deadline:  August 4, 2005 at 4:00 p.m. (Eastern Time)**

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York  10178
Tel:  (212) 808-7800
Fax:  (212) 808-7897

Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11 Case No.** |
| **WORLDCOM, INC., et al.** | **02-13533 (AJG)** |
| **Debtors.** | **(Jointly Administered)** |

## MOTION OF CLAIMANT, PARUS HOLDINGS, INC.,
## TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS
## <u>AND TO EXTEND DISCOVERY DEADLINES</u>

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC

(collectively, "Parus"), by their undersigned attorneys Kelley Drye & Warren LLP ("Kelley

Drye"), hereby moves this Court ("Motion"), pursuant to Rules 7026, 7034, 7037 and 9014 of

the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule/s"), Rule 26, 34 and 37 of the

Federal Rules of Civil Procedure ("Civil Rule/s"), and section 105(a) of Title 11 of the United

States Code ("Bankruptcy Code"), for an order, substantially in the form annexed hereto as

Exhibit "1", compelling debtors, Intermedia Communications, Inc. ("Intermedia") and MCI

WorldCom Communications Inc. ("MCI WorldCom") (collectively, "Debtors") to produce

**A 00121**

documents responsive to Parus' First Request for Documents, dated February 7, 2005 ("Parus' Document Request), by a date certain provided by this Court.  In support of the Motion, Parus shows as follows:

## JURISDICTION AND VENUE

1.    The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).  The statutory predicate for the relief requested herein is Section 105(a) of the Bankruptcy Code, Bankruptcy Rules 7026, 7034, 7037, and 9014 and Federal Rules 26, 34 and 37.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### Parus' Claims Against the Debtors

2.    On or about January 8, 2003, EffectNet, Inc.,[1] through their counsel Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz, Levin"),[2] filed proofs of claim in the United States Bankruptcy Court for the Southern District of New York against MCI WorldCom, claim no. 9291, and Intermedia, claim no. 9293.  Subsequently, on or about January 15, 2003, Parus filed amended proofs of claim against Intermedia, claim no. 11173, and MCI WorldCom, claim no. 11242.  (Wood Decl. ¶ 5, Ex. B and C.)  These proofs of claim amended and superceded the proofs of claim that were filed with this Court on or about January 8, 2003. (*Id.*)

3.    EffectNet's claims against the Debtors relate to Intermedia's total breach and repudiation of its duties under a Unified Communications Services General Agreement

---

[1]    EffectNet, Inc. is the successor in interest to EffectNet, LLC (collectively, "EffectNet").  (Wood Decl. ¶ 5, Ex. B and C.)  References to "Wood Decl. ¶ ___" are to the Declaration of Stephen A. Wood, dated July 13, 2005.

[2]    In December 2004, Kelley Drye substituted as counsel for Parus.  (Wood Decl. ¶ 2, Ex. A.)

2

A 00122

between EffectNet and Intermedia dated as of November 20, 2000 (the "UC Contract").  (Wood Decl. ¶ 6, Ex. B and C.)

4.    Pursuant to the UC Contract, EffectNet was obligated to supply unified messaging, wholesale communications and related services ("Services") to Intermedia for marketing and resale to its end users and customers.  (Wood Decl. ¶ 7, Ex. B and C.)  The UC Contract included an unconditional minimum take-or-pay obligation for the Services.  (*Id.*)  The take-or-pay obligations of the UC Contract required Intermedia to compensate EffectNet as if Intermedia had at least 10,000 subscribers for the Services for all periods on or after December 18, 2001 through the expiration of the contract on November 20, 2003.  (*Id.*)  The pricing for these Services was provided in Appendix P to the UC Contract.  (*Id.*)

5.    Intermedia breached the UC Contract by failing to pay amounts due under it for Services provided by EffectNet, and by purposefully failing to purchase and market the Services supplied by EffectNet under the UC Contract.  (Wood Decl. ¶ 8, Ex. B and C.)  In March of 2002, EffectNet formally notified Intermedia that it was in default of its obligations under the UC Contract.  (Wood Decl. ¶ 8, Ex. B, C and D)  Intermedia failed and refused to cure its default under the UC Contract despite EffectNet's demands.  (Wood Decl. ¶ 8, Ex. D at ¶ 20.)  The EffectNet notices state that EffectNet "may" terminate the UC Contract if Intermedia did not cure the default.  (Wood Decl. ¶ 8, Ex. B, C and D)  However, EffectNet at no time terminated the UC Contract as a result of the default.  (*Id.*)  On July 21, 2002 and November 8, 2002, the Debtors and various affiliates filed separate voluntary Chapter 11 bankruptcy petitions.  (Wood Decl. ¶ 8, Ex. D at ¶ 21.)  Intermedia has never cured its default.  (Wood Decl. ¶ 8, Ex. D at ¶ 22.)

A 00123

6.     As a result of Intermedia's breach of the UC Contract, EffectNet suffered damages, at a minimum, equal to unpaid invoices for the period ending March 20, 2002, approximately $828,000, and Intermedia's remaining minimum monthly take-or-pay commitment under the UC Contract for the period March 21, 2002 through November 20, 2003, approximately $5.5 million.  (Wood Decl. ¶ 9, Ex. D at ¶¶ 23-26.)

7.     Moreover, EffectNet contends that Intermedia and MCI WorldCom, on or before July 1, 2001 (MCI WorldCom completed its acquisition of and/or merger with Intermedia in July 2001), acted in concert to breach the UC Contract.  (Wood Decl. ¶ 10, Ex. D at ¶¶ 1, 14-15 and 27-28.)  EffectNet contends that these actions were made with knowledge that a breach of the UC Contract would impose financial distress on EffectNet, a competitor of MCI WorldCom, as well as create leverage to obtain better terms under a separate Master Agreement for Software Licenses ("MASL") that MCI WorldCom was at this time negotiating with Webley Systems, Inc. ("Webley"), a company that supplied technology to EffectNet that EffectNet was, at this same time, merging with.  (*Id.*)  In fact, last minute price concessions were demanded regarding the MASL.  (*Id.*)  Furthermore, EffectNet contends that as part of this process, MCI WorldCom made improper use of confidential financial and other disclosures it obtained from EffectNet and Webley as part of MCI WorldCom's due diligence requests negotiating the MASL as well as disclosures made to WorldCom Ventures as part of a separate inquiry by Webley concerning whether MCI WorldCom might have an interest in investing in Webley.  (*Id.*)

8.     As a result, EffectNet has additional claims against Intermedia for unfair and deceptive trade practices, a breach of the implied covenant of good faith and fair dealing, and conspiracy.  (Wood Decl. ¶ 11, Ex. B and Ex. D at ¶¶ 27-38.)  EffectNet also has separate claims against MCI WorldCom for interference with EffectNet's contractual relations under the

4

A 00124

UC Contract, unfair and deceptive trade practices, and civil conspiracy in procuring Intermedia's breach of the UC Contract. (Wood Decl. ¶ 11, Ex. C and Ex. D at ¶¶ 27-38.) EffectNet contends that its damages as a result of the Debtors' concerted action were foreseeable and estimates that its damages attributable to the foregoing may exceed $20 million. (Wood Decl. ¶ 11, Ex. D at ¶ 38.)

9.    On or about February 23, 2004 EffectNet, Inc. served and filed a notice of name change. (Wood Decl. ¶ 12, Ex. E.) The notice stated that on or about January 28, 2004 EffectNet, Inc. was merged into Parus Holdings, Inc. (*Id.*)

10.    On or about June 10, 2004, the Debtors served and filed their objection to Parus' proofs of claim. (Wood Decl. ¶ 13, Ex. F.) In turn, on or about July 30, 2004, Parus timely served and filed its response and opposition to Debtors' objection. (Wood Decl. ¶ 13, Ex. D.)

11.    On or about October 8, 2004, the Debtors and Parus timely exchanged their initial disclosures pursuant to Federal Rule 26(a)(1) and Bankruptcy Rule 7026. (Wood Decl. ¶ 14.)

### Current Discovery Dispute

12.    On February 7, 2005, Parus served its First Request for Documents on Debtors' counsel ("Parus' Document Request"), pursuant to Federal Rules 26 and 34 and made applicable to these proceedings by Bankruptcy Rules 7026 and 7034. (Wood Decl. ¶ 15,Ex. G.) Parus' Document Request focused on documents pertinent to the contract and tort claims set forth in its amended proofs of claim (Wood Decl. ¶ 15, Ex. B and C.) as well as the assertions and defenses set forth in the Debtors' objection to Parus' proofs of claim (Wood Decl. ¶ 15, Ex. F.) Thus, each of Parus' requests are proper and calculated to lead to the discovery of relevant

5

and admissible evidence as required by the Federal Rules 26 and 34 and Bankruptcy Rules 7026 and 7034.  (Wood Decl. ¶ 15, Exhibit G.)

13.    Debtors' counsel requested and were granted an extension of time to respond to Parus' Document Request to March 25, 2005.  (Wood Decl. ¶ 16.)  On or about March 25, 2005, Debtors' counsel served on Parus Debtors' written responses to Parus' Document Request ("Debtors' Document Responses").  (Wood Decl. ¶ 16, Ex. H.)

14.    Simultaneously with the Debtors' Document Responses, Debtors' made a minimal production consisting of approximately 33 documents (a total of 343 pages).  (Wood Decl. ¶ 17.)  These documents were produced to Parus' counsel and were organized by individual document requests as set forth in Federal Rule 34 and Bankruptcy Rule 7034.  (*Id.*)  However, the bulk of this production consisted of copies of executed contracts and agreements as well as communications already in the possession of both parties.  (*Id.*)  Consequently, little of substance was actually produced.  (*Id.*)

15.    Debtors' March 25, 2005 production was made up of:

10 letters (total of 30 pages);

11 e-mails (total of 39 pages);

4 contracts/agreements (total of 64 pages);

3 reports (total of 37 pages);

2 manuals (total of 166 pages); and

3 approval forms (total of 7 pages).  (Wood Decl. ¶ 18.)

16.    What made the March 25, 2005 production even less substantive was the fact that Debtors had previously produced a number of these documents in January of 2005. Wood Decl. ¶ 19.)  Pursuant to an amended scheduling order, the parties exchanged documents

A 00126

referred to in their Federal Rule 26 and Bankruptcy Rule 7026 disclosures on or about January 26, 2005. (Wood Decl. ¶ 19, Ex I.) Parus produced approximately 750 pages of documents and the Debtors produced approximately 247 pages of documents. (*Id.*)

       17.    Debtors' January 26, 2005 production was made up of:

           3 letters (total of 11 pages);

           2 e-mails (total of 4 pages);

           8 contracts/agreements (total of 161 pages);

           6 reports (total of 45 pages);

           Parus' proof of claim (total of 22 pages); and

           1 chart (total of 4 pages). (Wood Decl. ¶ 20.)

       18.    The Debtors' Document Responses included multiple meritless general and specific objections as well as modifications and limitations to Parus' Document Requests. (Wood Decl. ¶ 21, Ex. H.) However, subject to those objections, modifications and/or limitations, Debtors' agreed to produce non-privileged documents responsive to requests 6 – 7 and 11 – 27 in addition to the attached limited document production. (*Id.*) Indeed, the Debtors acknowledged that much remained to be done regarding document production. (*Id.*) The Debtors' Document Responses set forth a long and detailed narrative under the heading "Continuing Effort to Locate Documents" regarding the vast quantities of potentially responsive documents that the Debtors had yet to locate and/or review as of March 25, 2005 for production. (Wood Decl. ¶ 21, Ex. H at pp. 7-8.) Based on these representations, the Debtors' production of responsive documents to date would be dwarfed by responsive documents yet to be produced. (*Id.*)

A 00127

19.     Having heard nothing further on this issue or receiving any additional responsive documents from Debtors during the ensuing weeks, Parus' counsel contacted Debtors' counsel telephonically on May 12, 2005 requesting, under the circumstances, that Debtors agree to amend the current amended scheduling order which required Parus to designate its experts on or before June 20, 2005. (Wood Decl. ¶ 22, Ex. I.) In a May 17, 2005 e-mail, Debtors' counsel indicated that they would not agree to extending the expert disclosure deadline. (Wood Decl. ¶ 22, Ex. J.)

20.     A telephone conference was held between counsel for the parties on May 18, 2005 wherein Parus explained the unfairness of requiring it to disclose experts when none of Debtors' witnesses had been deposed and the vast majority of its responsive documents remained to be produced. (Wood Decl. ¶ 23.) However, nothing was resolved in this conference call. (*Id.*) In a subsequent e-mail, dated May 24, 2005, Debtors again indicated they would object to any extension of deadlines in the amended schedule. (Wood Decl. ¶ 23, Ex. K.)

21.     On May 25, 2005, in an effort to resolve this issue and avoid bringing it before the Court, Parus again requested, that in light of the Debtors' acknowledged failure to produce the overwhelming bulk of their documents, that Debtors agree to extend the deadline for Parus to disclose experts in this case. (Wood Decl. ¶ 24, Ex. L.) Another telephone conference was held between counsel for Parus and counsel for Debtors on May 31, 2005 in an effort to reach an agreement on extending the deadline for Parus to disclose experts. (*Id.*) Again, no resolution was reached. (*Id.*)

22.     On May 31, 2005, more than two months after serving their Document Responses and nearly four months after receiving Parus' Document Requests, Debtors' counsel sent Parus a "proposal" for producing responsive documents. (Wood Decl. ¶ 25, Ex. M.) This

A 00128

proposal borrowed verbatim from statements in Debtors' Document Responses, to wit, that Debtors had located "thousands of boxes" of documents in "multiple locations around the country." (*Id.*) That this proposal used the same language as the Debtors' Document Responses suggested that Debtors had expended no new effort to locate, review or produce documents beyond that expended prior to service of the Debtors' Document Responses. (*Id.*) In fact, Debtors admitted in their letter that all they had done was review the indexes and that Debtors' counsel's "office had not reviewed or examined any of these additional documents." (*Id.*)

23.    In the May 31, 2005 letter, Debtors proposed providing Parus with copies of the indexes to the thousands and thousands of boxes for Parus to review, letting Parus select from these indexes boxes to be reviewed and produced by Debtors. (Wood Decl. ¶ 26, Ex. M.) These were the same indexes that the Debtors characterized in the very letter as "not being very precise" and which Debtors' counsel themselves were not able to "determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for [Parus'] review." (*Id.*) In essence, the Debtors having reviewed only the indexes, and not a single document from these boxes, and finding the indexes useless, now proposed that Parus review the indexes and decide which of the thousands and thousands of boxes it wanted to review for potentially responsive documents to Parus' Document Request. (*Id.*) The proposal went onto say that once Parus identified the boxes of interest, Debtors would have to review them for privilege, confidentiality and responsiveness, making the remaining documents available for inspection at a suitable location. (*Id.*) Aside from the unfair and improperly burden-shifting nature of this proposal, it would take weeks if not months for Parus to actually receive, let alone review, Debtors' documents. (*Id.*) This was clearly not enough time to provide

A 00129

the Debtors' documents to Parus' experts prior to the current June 20, 2005 expert disclosure deadline. (*Id.*)

24. On May 31, 2005, Parus' counsel wrote the Debtors to address the shortcomings in Debtors' Document Responses, in particular the meritlessness of various general and specific objections, modifications and limitations made in Debtors' Document Responses, demanding their immediate withdrawal and confirmation that Debtors would not be withholding any documents from Parus on those bases. (Wood Decl. ¶ 27, Ex. N.) Furthermore, to the extent that Debtors were withholding any documents on the basis of privilege, the letter demanded a prompt production of a privilege log pursuant to Local Bankruptcy Rule 7034-1(c). (*Id.*) To date, no privilege log has been produced. (*Id.*)

25. Among other issues, Parus' May 31, 2005 letter advised Debtors that Debtors' general objection in Paragraph 3 and the objection to the definition of "Debtor" in paragraph 4 of the Debtors' Document Response were improper. (Wood Decl. ¶ 28, Ex. N. and Ex. H at pp. 1-2 and 4-5.) The Debtors could not limit their responses to Parus' Document Request to documents in the possession, custody or control of only Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. (*Id.*) Parus pointed out that, pursuant to section 5.1 of the Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated October 21, 2004 ("WorldCom Plan"), the WorldCom Debtors (as defined in section 1.118 and Exhibit A1 of the WorldCom Plan) have been substantively consolidated. (*Id.*) Therefore, "each and every Claim filed or to be filed in the Chapter 11 case of any of the WorldCom Debtors shall be deemed filed against the WorldCom Debtors, and shall be one Claim against and obligation of the WorldCom Debtors." *See* WorldCom Plan at § 5.1. (*Id.*) WorldCom Debtors include, but are not limited to, Intermedia Communications, Inc., MCI

A 00130

WorldCom Communications, Inc. as well as MCI WorldCom Network Services, Inc. Therefore, Debtors had an obligation to produce any and all responsive documents to Parus' Document Request in the possession, custody or control of any and all of the WorldCom Debtors as well as their "officers, directors, employees, partners, corporate parent subsidiaries or affiliates." *See* Local Federal Rule 26.3(c)(5) (made applicable to this contested matter pursuant to Local Bankruptcy Rule 7026-1). (*Id.*)

26.    On June 1, 2005, Debtors' counsel yet again rejected extending any deadlines. (Wood Decl. ¶ 29, Ex. O.) Dismissive of their failure to produce documents, the Debtors asserted that Parus did not need any of the Debtors' documents or testimony from their witnesses prior to disclosing its experts and providing expert reports in this litigation. (*Id.*) Furthermore, Debtors stated that they needed to "get this case tried and behind them . . . as expeditiously as possible," and "extending deadlines [would] not accomplish that goal." (*Id.*)

27.    On June 1, 2005, Debtors sent another letter in response to Parus' May 31, 2005 letter. (Wood Decl. ¶ 30, Ex. P.) Despite the detailed objections to the Debtors' Document Responses, the Debtors did not respond to any of them and stated that their May 31, 2005 letter containing the index "proposal" made most of Parus' May 31, 2005 letter "moot" and "[e]ven though our initial responses contained objections we have now proposed sending [Parus] indexes and opening all of the files up for [Parus'] review . . . ." (*Id.*)

28.    Parus' counsel also sent a letter to Debtors' counsel on June 1, 2005 setting forth questions and concerns that Parus had with the Debtors' May 31, 2005 "proposal" and informing the Debtors that Parus was unable to accept the proposal as stated. (Wood Decl. ¶ 31, Ex. Q.) First, Parus wanted Debtors to respond to all of the objections raised by Parus in its May 31, 2005 letter to Debtors' Document Responses, in particular, to the issue of which entities

A 00131

would be producing documents as a result of the substantive consolidation of the Debtors'

bankruptcy proceeding.  (*Id.*)  Second, Parus wanted to know whether Debtors were proposing

that Parus sift through a large number of non-responsive documents (thousands and thousands of

boxes) to locate responsive documents.  (*Id.*)  Third, Parus questioned the utility of reviewing

indexes that were by Debtors own admission "not very precise" in an effort to identify

responsive documents.  (*Id.*)  Finally, Parus noted that the proposal made no mention of

documents stored in electronic form and inquired as to their production status.  (*Id.*)

       29.    In response to Parus' June 1, 2005 letter, Debtors' counsel inexplicably

lashed out at Parus' counsel for summarily rejecting Debtors' "serious proposal."  (Wood Decl. ¶

32, Ex. R.)  Debtors' counsel stated that they "do not have an obligation to review all possible

documents to determine if they are relevant.  (*Id.*)  [Debtors] have a right to make the documents

available to [Parus] for [Parus'] review and determination."  (*Id.*)  In fact, Debtors' admitted in

their May 31, 2005 proposal that they did not review a single document from the thousands of

boxes that they were now making available to Parus. (Wood Decl. ¶ 32, Ex. M.)  Furthermore,

Debtors' counsel accused Parus' counsel of asserting in Parus' June 1, 2005 letter that Debtors

had not produced any emails and boasting that Debtors had produced "hundreds of pages of

documents that contain[ed] emails."  (Wood Decl. ¶ 32, Ex. R.)  In truth, Debtors actually

produced a grand total of 13 emails (consisting of a total of 43 pages) and the May 31, 2005

proposal did not mention any e-mails or other documents stored in electronic form which the

Debtors were obliged to review and produce under the Federal and Bankruptcy Rules.  (*Id.*)

Debtors' counsel also indicated that they were not in a position to respond to "the issue that all

MCI entities that are included in the substantive consolidation have an obligation to search for

the documents that [Parus is] seeking," and would respond to the issue as soon as they had

A 00132

finished researching the issue. (*Id.*) Debtors' counsel never responded to this issue. (*Id.*)

Finally, Debtors' counsel again admitted that the indexes that they had offered to make available

to Parus for review were "not very useful," and stated "[i]f the indexes were useful we would

have narrowed the number of boxes down by using the indexes. (*Id.*) Since we have no means

to identify what is responsive other than by examining all documents we are simply making the

documents available to you subject to a few normal stipulations." (*Id.*)

      30.    Parus' counsel responded to the points raised in Debtors' counsel's e-mail.

(Wood Decl. ¶ 33, Ex. S.) First, Parus' counsel noted that Parus did not reject the May 31, 2005

proposal outright but asked for clarity regarding certain issues. (*Id.*) Second, Parus' counsel

pointed out the inadequate production of documents to date by the Debtors in response to Parus'

Document Request and questioned Debtors' efforts to locate, identify and produce responsive

documents beyond reviewing the indexes set forth in the Debtors' proposal. (*Id.*) Finally, Parus'

counsel noted that its inquiry into the status of an e-mail production were valid since, contrary to

Debtors' assertion, Debtors had only produced 13 emails (total of 43 pages) to date and made no

reference to e-mails in their May 31, 2005 proposal. (*Id.*)

      31.    As a result of the Debtors' repeated refusals to agree to extend discovery

deadlines because of their failure to produce responsive documents, on June 6, 2005, Parus'

counsel was forced to request an informal conference before this Court pursuant to Local

Bankruptcy Rule 7007-1(b) to consider Parus' request to amend the current scheduling order.

(Wood Decl. ¶ 34, Ex. T.) Parus suggested in this letter that the informal conference be held on

June 14, 2005 as the parties were scheduled to appear before the Court on another motion. (*Id.*)

      32.    On June 10, 2005, Parus produced to Debtors' counsel approximately

23,000 pages documents in response to Debtors' document requests. (Wood Decl. ¶ 35.) Unlike

A 00133

the Debtors, Parus invested substantial time and resources to locate, review and produce

responsive documents to the Debtors as required under the Federal and Bankruptcy Rules. (*Id.*)

Parus also had the responsive documents scanned at its own expense to make their review and

production more efficient. (*Id.*) Furthermore, Parus promptly provided Debtor a list of the

topics or subjects of the documents produced as well as a chart correlating the bates numbers of

the produced documents with the Debtors' requests pursuant to Parus' obligation to produce

documents organized to correspond to the categories in the numbered requests. (Wood Decl. ¶

35, Ex. U.)

     33.    During the hearing held on June 14, 2005 before this Court on another

motion brought by Parus, this Court instructed the parties to discuss and attempt to resolve their

various discovery and scheduling disputes and to arrange a conference call with the Court for

June 22, 2005. (Wood Decl. ¶ 36.) This Court also extended all discovery deadlines in the

interim until after the June 22, 2005 conference call. (*Id.*) This conference call was later

continued by the Court to June 29, 2005 and Parus' deadline to disclose experts was extended by

the Court to July 5, 2005. (*Id.*)

     34.    Pursuant to the Court's direction, in an effort to compromise and to keep

discovery moving, Parus' counsel agreed to review the indexes set forth in Debtors' counsel's

proposal of May 31, 2005. (Wood Decl. ¶ 37.) Parus also agreed to Debtors' request that

nothing contained in the indexes would result in any waiver of a privilege. (Wood Decl. ¶ 37,

Ex. V.) (*Id.*) During the discussions of June 14, 2005, the subject of electronic documents was

also raised. Debtors' counsel represented to Parus' counsel that Debtors did not have electronic

documents because e-mail messages were not stored in a central location by Debtors and were

instead stored on local PCs which Debtors no longer possessed. (*Id.*)

14

A 00134

35.     On June 15, 2005 Debtors forwarded **copies of** the indexes to Parus'

counsel for review. (Wood Decl. ¶ 38, Ex. W.) (Parus has **not attached** the actual indexes to this

declaration because of their voluminous nature and difficulty of **printing** out in a readable hard

document form, however, Parus can and will make these indexes available if the Court desires to

inspect them). (*Id.*)

36.     On June 16, 2005, two days after the Court directed the parties to make an

effort to work out their disputes, Debtors' counsel sent an e-mail regarding Parus' request for an

extension of time to disclose experts. (Wood Decl. ¶ 39.)  Despite Debtors' failure to produce

their documents, Debtors requested additional information from Parus before they would

consider agreeing to an extension: how long of an extension Parus was seeking, the subjects on

which Parus intended to have experts testify and how many experts Parus intended to testify.

(Wood Decl. ¶ 39, Ex. X.)  Parus' counsel responded to each of the Debtors' counsel's requests

for information: Parus was agreeable to working with Debtors on the deadline as long as it

permitted some time to review Debtors' documents and take some depositions of Debtors'

witnesses, Parus did not know how many experts it would need since some of them may be

obviated by discovery of Debtors, and the subject matters of expert testimony were addressed in

the Parus' June 6, 2005 letter to the Court.  (Wood Decl. ¶ 39, Ex. Y and Ex. T.)

37.     On June 19, 2005, apparently unsatisfied with Parus' response, Debtors'

counsel accused Parus of refusing to provide information necessary for Debtors to analyze Parus'

request for extension of deadlines.  (Wood Decl. ¶ 40, Ex. Z.)  Although believing its previous

response to be both reasonable and responsive, Parus nevertheless attempted to respond with

greater specificity.  (Wood Decl. ¶ 40, Ex. AA.)  Parus, despite the difficulties presented by not

having access to Debtors' documents or witnesses, estimated the number of experts and the

15

subjects of expert testimony. (*Id.*) As to the length of the extension, Parus' counsel offered to produce expert reports 75 days from the date Debtors' document production would be completed. (*Id.*)

38.    Again, this was not satisfactory to Debtors. In response to Parus' counsel's June 20, 2005 e-mail, Debtors' counsel asserted for the first time that "[w]e have already produced our documents." (Wood Decl. ¶ 41, Ex. BB.) Debtors' counsel continued in this vein:

> On May 31, 2005 we sent you a letter which produced the documents and talked about the procedures for production. We have advised you as to the location of the documents. You have an index of the documents. The documents have been produced and it is up to you to inform us as to when you want to view the documents. Additionally there is the subject of the cost of review. Since you want to examine the documents we expect that you will pay the cost of removing them from the storage shelves and returning them to the storage shelves.

(*Id.*) This was the first time Debtors had taken the position that they had produced documents by providing useless indexes and the first time they demanded that Parus pay the costs associated with document retrieval. (*Id.*) Debtors also continued to accuse Parus of not cooperating with their request for information on Parus' experts. (*Id.*)

39.    On June 27, 2005, Parus counsel sent another letter setting forth its concerns regarding the May 31, 2005 "proposal" and Debtors' counsel's June 21, 2005 e-mail. (Wood Decl. ¶ 42, Ex. CC.) Parus' counsel advised the Debtors that the indexes forwarded on June 15, 2005 were not helpful in identifying whether the boxes described therein contained responsive documents. (*Id.*) Furthermore, Parus took issue with Debtors' counsel's assertion that they produced documents on May 31, 2005. (*Id.*) The only productions of documents by the Debtors to date were the documents produced in January and March of 2005. (*Id.*) Since March 25, 2005 it appeared that Debtors had done nothing except to send a proposal with

16

A 00136

essentially useless indexes and insist that Parus bear the burden and expense of culling through

Debtors' boxes to identify responsive documents, if any. (*Id.*) In contrast, Parus had undertaken

a time-consuming effort to find, review and produce over 23,000 pages of responsive documents

to date. (*Id.*) Therefore, Parus expected Debtors to comply with the discovery rules and review

their documents and produce or make available for inspection documents responsive to Parus'

Document Request and bear the expense of complying with the discovery requests. (*Id.*)

Finally, Parus requested, yet again, an update on responsive electronic documents which

Debtors' counsel had previously indicated did not exist. (*Id.*)

      40.    Debtors' counsel wasted no time in lashing out once again, accusing

Parus' counsel repeatedly of making "allegations" that were "false" and "inaccurate". (Wood

Decl. ¶ 43, Ex. DD.) Debtors' counsel stated, in part, that they had located many electronic

documents but most involved legal counsel and therefore were privileged. (*Id.*) However, to

date, Debtors had yet to provide a privilege log to Parus as required under Local Bankruptcy

Rule 7034-1(c). (*Id.*) Debtors continued to assert that they had produced the documents listed

on the indexes. (*Id.*) Debtors interestingly also indicated that they had located additional

documents "beyond those reflected in the indexes" and were waiting to receive them at their

offices before producing them. (*Id.*) The Debtors provided no further details as to what types of

documents, why it took five months to locate them, and when the documents would be produced.

(*Id.*)

      41.    Parus' counsel quickly responded on June 28, 2005 to the Debtors'

counsels assertions in its June 27, 2005 e-mail. (Wood Decl. ¶ 44, Ex. EE.) Parus counsel stated

that all statements made in its June 27, 2005 letter were true and accurate. (*Id.*) Parus' counsel

reminded Debtors' counsel that they had represented after the June 14, 2005 Court hearing that

A 00137

Debtors had no electronic documents because e-mail messages were not kept in a central location and were stored on local PCs which Debtors no longer had. (*Id.*) Furthermore, Parus' counsel again pointed out that Debtors had only produced roughly 500 pages of documents to date and the production of indecipherable indexes to thousands of potentially responsive boxes of documents did not comply with the Federal and Bankruptcy Rules. (*Id.*)

42.    Since raising this request for the first time approximately six weeks prior on May 12, 2005 and after endless discussions, correspondence and repeated rejections by Debtors' counsel of any extension to the Parus' expert disclosure deadline, Debtors' counsel suddenly and for the first time on June 29, 2005, only hours prior to a conference call before this Court on this very issue, proposed a 120 day extension. (Wood Decl. ¶ 45, Ex. FF.) It is unclear what if anything had changed during the six weeks that led to Debtors' new position except for the simple fact that within hours Debtors' counsel would have to defend their position before this Court. (*Id.*) Notwithstanding this change in position, Debtors continued to assert that they had produced the documents set forth in the indexes and that it was Parus' obligation to pay the various fees associated with document retrieval. (*Id.*)

43.    Shortly thereafter, counsel for both parties participated in a conference call before this Court. (Wood Decl. ¶ 46, Ex. GG.) Parus counsel informed the Court that the parties had agreed to a tentative 120 day extension of Parus' expert disclosure deadline and requested that the Court also provide an intermediate deadline for all parties to produce their remaining responsive documents. (Wood Decl. ¶ 46, Ex. GG at pp. 6-7.) In response, Debtors' counsel represented to this Court that they had "legally produced the documents. We have given them indexes to tens of thousands of boxes. We have given them the location where those boxes are kept. Under Rule 34(b) we have chosen to produce those as they are kept in the usual course of

A 00138

business." (Wood Decl. ¶ 46, Ex. GG at p. 7.)  Furthermore, Debtors' counsel represented to the Court that they had done "far beyond what is required by the rule" and actually looked at all the indexes they provided to Parus and made an attempt to identify what was responsive.  (Wood Decl. ¶ 46, Ex. GG at pp. 12-13.)  However, at the same time, Debtors' counsel admitted to the Court that the indexes that they had provided to Parus as part of their "legal production" were useless for trying to determine which of the thousands of boxes actually contained responsive documents, (Wood Decl. ¶ 46, Ex. GG at p. 11.), a fact that had been represented by Debtors' counsel multiple times before and confirmed by Parus' counsel after reviewing the indexes themselves.  (*Id.*)

44.    Despite the fact that Debtors represented that they had produced the documents, Debtors' counsel objected to any interim deadline for producing its documents, and raised the issues of cost-shifting regarding the boxes.  (Wood Decl. ¶ 47, Ex. GG at pp. 7-8.)  Interestingly, Debtors made no mention at this hearing and had not yet advised Parus that Debtors had located additional responsive non-privileged electronic documents.  (*Id.*)  Parus' counsel reminded the Court that Parus had undertaken considerable efforts and expenses to locate, review and produce responsive documents as was required by the Federal and Bankruptcy Rules.  (Wood Decl. ¶ 47, Ex. GG at pp. 13-14.)  The Court gave permission to Parus to file a motion to compel and noted that it required an affidavit to be filed by the Debtors in response to the Motion "set[ting] forth what has been done and what the legal arguments are regarding what has to be done."  (Wood Decl. ¶ 47, Ex. GG at p. 14.)  Finally, in the interim, the Court extended Parus' expert disclosure by 120 days from June 20, 2005. (Wood Decl. ¶ 47, Ex. GG at p. 16.)

45.    Within approximately one hour of the June 29, 2005 conference call with the Court, Debtors made an offer for the first time to review their hard documents for responsive

A 00139

documents and make those responsive documents available for review and copying by Parus. (Wood Decl. ¶ 48, Ex. HH.) This offer was made despite Debtors having represented to this Court that Debtors had legally produced their documents and had done "far beyond what is required by the rule," and despite having previously represented that they had "no means to identify what is responsive." (*Id.*) However, Debtors still expected Parus to pay for half the costs associated with document retrieval. (*Id.*) Importantly too, the Debtors made no commitment to producing documents by a date certain. (*Id.*)

46.    In addition, on June 30, 2005, after multiple inquiries by Parus on the status of Debtors' electronic documents, Debtors' counsel for the first time informed Parus that they had located 250 back up tapes that might contain responsive electronic documents. (Wood Decl. ¶ 49, Ex. II.) Debtors' counsel provided no further details as to those back up tapes and merely informed Parus that "the costs to have the data moved from the tapes to servers so that the data could be searched and then searching the data to try to determine what is relevant" would be approximately $900,000 and, despite the fact that Debtors had only produced a total of 13 emails to date, it was Parus' obligation to cover any and all costs associated with the search of the electronic documents. (*Id.*)

47.    On July 1, 2005, Parus' counsel informed debtors that Parus could not agree to the proposal set forth by the Debtors on June 29, 2005 because Debtors did not commit to producing the responsive documents by a date certain even though Debtors have had Parus' Document Request for approximately five months and because Debtors continued to insist that Parus bear half the costs associated with the retrieval of the boxes from its warehouses. (Wood Decl. ¶ 50, Ex. JJ.)

20

A 00140

48.    Three months after the service of Debtors' Document Responses, Debtors served upon Parus Debtors' Supplemental Responses to Claimant's First Request for Production of Documents ("Debtors' Supplemental Document Responses"). (Wood Decl. ¶ 51, Ex. KK.) Not surprisingly, Debtors' Supplemental Document Responses did not attach a single responsive document. Instead, Debtors object to *all* of Parus' Document Requests on the ground that they are unduly burdensome and they object to producing any documents immediately. (*Id.*) The Debtors now represent that they have found a new set of documents, the "MCI Documents", from which it "may be possible to produce responsive documents." (*Id.*) The Supplemental Document Responses further offer the same litany regarding the thousands of stored boxes of documents: indexes have been provided to Parus, these documents have therefore been produced pursuant to Rule 34(b), and Parus may inspect the stored boxes at any time. (*Id.*) With regard to these stored documents, this explanation is no different then that offered in Debtors' Document Responses served in March of 2005, so the clear inference is that Debtors have done nothing with these stored documents since that time. (*Id.*) Debtors also indicate they located 250 back up tapes of e-mails that Debtors had informed Parus of the first time on June 30, 2005. (*Id.*) Debtors did not set forth any further details about the additional documents or back up tapes and did not set forth why it took them approximately five months to locate these documents. (*Id.*) What is clear from the Supplemental Document Response is that Debtors had not reviewed any of these documents for responsiveness and that regardless they would insist that any discovery costs regarding these documents to be shifted to Parus. (*Id.*)

49.    Amazingly, the same day Debtors served their Supplemental Document Responses in which they object to any deadlines for their own production of documents, Debtors' counsel sent a letter to Parus' counsel demanding that Parus produce all of its

A 00141

remaining responsive documents to Debtors' document requests within the next ten days. (Wood

Decl. ¶ 52, Ex. LL.) Debtors modified this deadline unilaterally when on July 8, 2005, Debtors'

counsel demanded that Parus produce all of its remaining responsive documents as well as serve

revised discovery responses by July 31, 2005. (Wood Decl. ¶ 52, Ex. MM.) The amendment of

the deadline did little to lessen the Debtors' hypocrisy. (*Id.*) These letters are astonishing in

light of the fact that the parties had appeared before this Court only a week earlier to address

various discovery disputes and during that conference Debtors' counsel not only failed to raise

these issues but actually objected to Parus' counsel's request that this Court provide a deadline

by which both parties would be required to produce the remaining responsive documents. (*Id.*)

      50.    Just when Parus thought it had seen it all, Debtors' counsel sent another

letter on July 8, 2005 threatening to file a motion for a protective order in connection with newly

discovered back up tapes. (Wood Decl. ¶ 53, Ex. MM.) The Debtors had informed Parus only a

week prior that they had located these back up tapes and provided no further information except

that they expected Parus to cover the allegedly nearly million dollar in costs involved in

searching these electronic documents. (*Id.*) Furthermore, the Debtors made an opaque proposal

regarding these electronic documents. (*Id.*) They apparently requested that Parus stay electronic

discovery pending Debtors' filing of a partial summary judgment motion which Debtors claim, if

granted, would eliminate some but not all of Parus' claims and obviate the need for electronic

documents. (*Id.*) As far as Parus is concerned responsive electronic documents are relevant to

all the claims against the Debtors and not only the tort claims. (*Id.*) Curiously, while the

proposal suggested that Parus agree to staying electronic discovery, Debtors requested that Parus

agree to pay the costs of searching the electronic documents and that reasonable parameters be

set in connection with searching the electronic documents. (*Id.*) The proposal as written is

A 00142

nonsensical since the first element of the proposal is mutually exclusive of the next two elements. (*Id.*) Notwithstanding Debtors confusing proposal regarding the back up tapes, Parus is unable to respond because the factual record is completely undeveloped on this issue. (*Id.*)

51.    It is interesting to note that Debtors' counsel waited until the afternoon of Friday, July 8th to transmit the letter regarding electronic discovery and back up tapes. During the June 29, 2005 conference call before this Court Debtors' counsel informed the Court that he would be out of the office on vacation from July 8th through the 18th and requested that no hearings be scheduled during that time period. (Wood Decl. ¶ 54, Ex. GG at p. 15.) Nonetheless, Debtors' counsel had his secretary forward this letter after he had left on vacation knowing that Parus would be unable to discuss these issues with Debtors' counsel prior to having to file this Motion to Compel on July 13, 2005.

## RELIEF REQUESTED

52.    By this Motion, Parus respectfully requests this Court to enter an order, substantially in the form annexed hereto as Exhibit 1, (a) directing Debtors to produce documents responsive to Parus' First Request for Documents, dated February 7, 2005, by a date certain provided by this Court; (b) directing Parus' to produce documents responsive to Debtors' discovery requests, dated September 30, 2004, by the same date certain provided by this Court; (c) directing Debtors and Parus to produce a privilege log regarding any documents either party is withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule 7034-1(c), by the same date certain provided by this Court; (d) directing Debtors and Parus to bear their own costs of production; and (e) directing Debtors to pay the reasonable costs and expenses incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule 37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, and such other relief as the Court deems appropriate. In addition, Parus requests that all discovery deadlines,

A 00143

including, but not limited to Parus' expert disclosure deadline, are extended appropriately by this Court from the date certain provided by this Court governing the responsive document and privilege log productions.

## GROUNDS FOR RELIEF REQUESTED

**I.    DEBTORS ARE REQUIRED TO PRODUCE DOCUMENTS IN RESPONSE TO PARUS' DISCOVERY REQUEST**

53.    Federal Rule 34(a) of the Civil Rules, made applicable to these proceedings by Bankruptcy Rules 7034 and 9014, requires a party upon whom a request for production has been served to produce documents "within the scope of 26(b) and which are in the possession, custody or control of the party upon whom the request is served." FED. R. CIV. P. 34(a). Federal Rule 26(b)(1), made applicable by Bankruptcy Rules 7026 and 9014, states that "parties may obtain discovery regarding *any matter*, not privileged, that is relevant to the claim or defense of any party" and information sought "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1) (emphasis added). The relevancy provision has been broadly and liberally construed. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also 7 JAMES WM MOORE ET. AL., MOORE'S FEDERAL PRACTICE* § 34.12[1] (3d ed. 2005).

54.    Parus' Document Request focuses on documents pertinent to Parus' contract and tort claims set forth in its proofs of claim 11173 and 11242 as well as Debtors' objections and defenses set forth in the Debtors' Objection to All Proofs of Claim Filed by EffectNet, Inc. Which is Now Merged into Parus Holdings, Inc., Including, but Not Limited to Claim Numbers 9291, 11242, 9293 and 11173, dated June 10, 2004. (Wood Decl. Ex. B, C, F and G.) Thus, Parus' Document Request is proper and calculated to lead to the discovery of relevant and admissible evidence as required by the Federal and Bankruptcy Rules.

A 00144

55.    Indeed, the Debtors have agreed, in the Debtors' Document Responses, subject to certain objections, modifications and/or limitations, to produce many of the non-privileged documents responsive to requests 6 – 7 and 11 – 27 found in Parus' Document Request. (Wood Decl. ¶ 18, Ex. H.)  Furthermore, the Debtors acknowledged in Debtors' Document Responses that much remained to be done regarding document production and that substantial productions of responsive documents were yet to come. (*Id.* at Ex. H.)

56.    However, other than a minimal production of 33 documents produced simultaneously with Debtors' Document Responses on March 25, 2005 and another minor production of documents in connection with Federal Rule 26 and Bankruptcy Rule 7026 disclosures back on January 26, 2005, Debtors have failed to produce any additional responsive documents pursuant to Federal Rule 34(b). (Wood Decl. ¶¶ 14-17.)

## II.    DEBTORS SHOULD BE COMPELLED TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS

57.    Federal Rule 37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, provides that "a party . . . may apply for an order compelling disclosure or discovery . . . if a party in response to a request for inspection submitted under Rule 34, . . .fails to permit inspection as requested, the discovering party may move for an order compelling . . . compelling inspection in accordance with the request." FED. R. CIV. P. 37(a) and 37(a)(2)(B).

### A.    Federal Rule 34(b) Obligation

58.    Federal Rule 34(b) requires that a party producing documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." However, a party electing to produce documents for inspection as they are kept in the usual course of business still has "a burden to select and produce the items requested rather than simply dumping large quantities of

A 00145

unrequested materials onto the discovering party along with the items actually sought under Rule

34." 8A WRIGHT, MILLER & MARCUS, *FEDERAL PRACTICE AND PROCEDURES* § 2213 (2005

Pocket Part). *See also Rothman v. Emory University*, 123 F.3d 446, 455 (7th Cir. 1997) (Plaintiff

sanctioned for not complying with its obligation to sort through the documents and produce only

those responsive to defendant's request.); *Hagemeyer North America, Inc., v. Gateway Data*

*Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) ("When producing documents, the

responding party cannot attempt to hide a needle in a haystack by mingling responsive

documents with large numbers of nonresponsive documents."); *Kozlowski v. Sears Roebuck &*

*Co.*, 73 F.R.D. 73, 76-77 (D. Mass. 1976)(court rejected propriety of defendant's offer to allow

plaintiff's attorney to hunt through all its files to find responsive documents).

        59.    In fact, Courts in New York have held that a party's offer to opposing

counsel to review its files does not satisfy the obligation to produce documents "as they are kept

in the usual course of business" when the producing party maintains the documents in a

disorganized state that "would make it unreasonably burdensome for the discovering party to

search for the sought-after documents." *See Standard Dyeing & Finishing Co. v. Arma Textile*

*Printers Corp.*, No. 85 Civ. 5399-CSH, 1987 WL 6905, at *2 (S.D.N.Y. Feb. 10, 1987);

*Chemtex, LLC., v. St. Anthony Enterprises, Inc.*, No. 03 Civ. 4263(RWS), 2004 WL 764781

(S.D.N.Y. April 9, 2004). *See also Natural Resources Defense Counsel, Inc. v. Fox*, No. 94 Civ.

8424 PKL HBD, 1996 WL 497024, at *5 n.3 (S.D.N.Y. Aug. 30, 1996) (party may produce

documents as kept in ordinary course of business unless their "filing system is so disorganized

that it is unreasonable for the [requesting party] to make their own review"). In cases where a

party has failed to maintain its records in a reasonable state, New York Courts have held that

"the burden falls on the discoveree to organize the documents so that the discoveror may make

A 00146

'reasonable use' of them . . . If [the party] has failed to maintain its records in a reasonable state, it must bear the burden of searching those available records for documents responsive to plaintiffs' Rule 34(b) request." *Id.* Furthermore, the lack of an adequate filing system does not excuse a party from producing requested documents. *See Baine v. General Motors Corp.*, 141 F.R.D. 328, 331 (M.D. Ala. 1991); *See also Bexter Travenol Lab., Inc. v. LeMay*, 93 F.R.D. 379, 383 (S.D. Ohio 1981) (an unwieldy recordkeeping system could not be used to frustrate discovery).

**B.    Debtors Have Failed to Comply With Their Federal Rule 34(b) Obligation**

60.    Since their March 25, 2005 limited production, Debtors have not made any document production to Parus pursuant to Federal Rule 34(b). Debtors' counsel has, however, asserted multiple times to Parus and this Court that they have legally produced the thousands and thousands of boxes of documents referenced in their May 31, 2005 proposal in accordance with Rule 34(b). (Wood Decl. ¶¶ 38, 40, 42, 43 and 48.) In support, Debtors' counsel represented that they have provided indexes to the boxes, provided their location and have made the documents available for inspection as they are kept in the usual course of business. (Wood Decl. ¶¶ 38 and 43, Ex. GG at p. 7.)

61.    However, along with these representations, Debtors' counsel also admitted to Parus and this Court that they did not review a single document located in these boxes for responsiveness. (Wood Decl. ¶¶ 22-23 and 43.) Contrary to the controlling law, Debtors' counsel claimed they have no such obligation. (Wood Decl. ¶ 29.) Instead, Debtors only attempt to identify responsive documents was to look at the indexes which they claimed was "far beyond what was required by the rule." (Wood Decl. ¶¶ 23 and 43, Ex. GG at pp. 12-13.) However, by Debtors' counsel's own admission, the indexes were not very precise and Debtors' counsel could not ascertain from them which boxes of documents would be relevant and/or responsive. (Wood

A 00147

Decl. ¶ 23.)  Furthermore, Debtors' counsel admitted that they did not know what the various

designations referenced in the indexes meant because they were drafted by former employees of

the Debtors.  (Wood Decl. Ex. GG at pp. 9-11.)  Despite the unreasonable state of Debtors'

documents, Debtors' counsel was making all of the thousands of boxes of documents available,

whether relevant or not, for inspection by Parus.  (Wood Decl. ¶ 23.)

      62.    Such an attempt at a production is exactly the type of voluminous dump of

non-responsive documents that courts prohibit.  Furthermore, under New York precedent, the

disorganized state of Debtors' records, demonstrated by the indecipherable indexes, placed the

burden on the Debtors and not Parus to review the boxes for responsiveness.

      63.    In *Chemtex*, 2004 WL 764781, a case virtually on all fours with the case at

bar, the defendants objected to document requests on the ground that they placed undue burden

and expense upon them because they sought the production of certain documents by customers

and the defendant did not archive its documents by customers.  In an effort to compromise,

defendant offered to provide access to plaintiff's counsel to all of its files that might contain such

information.  *See id.*  However, the New York District Court held that the defendant's offer did

not satisfy the obligation to produce documents "as they are kept in the usual course of business"

because the state of the defendant's records would make it unreasonably burdensome for the

plaintiff to locate the sought-after documents on their own.  *See id.*  Consequently, the Court

directed defendant to search their documents for documents responsive to plaintiff's requests or,

at the plaintiff's option, the defendant can make the documents available for inspection and

provide such reasonable assistance as plaintiff required.  *See id.*

      64.    Despite repeated representations to Parus and this Court that Debtors had

fulfilled their obligations under Federal Rule 34(b) and were not obliged to review their

A 00148

documents for responsiveness, only hours after the June 29, 2005 Court conference regarding various discovery issues, Debtors for the first time made a proposal to Parus' counsel, in part, to review the thousands and thousands of boxes for documents responsive to Parus' Document Request. (Wood Decl. ¶ 45.) However, Debtors would not agree to a date certain by which such a review and production would be completed of these as well as all other responsive documents to Parus' Document Request. (*Id.*) In addition, Debtors' insisted that Parus and Debtors split the costs associated with pulling and returning the boxes that were to be reviewed to their shelves. (*Id.*) As a result of these outstanding issues, Parus could not agree to Debtors' latest proposal and was forced to file this Motion to Compel. (Wood Decl. ¶ 47.)

65.    A date certain by which Debtors will produce responsive documents is necessary to determine and set the other deadlines in this case. Debtors have yet to make a significant production in the more than five months since Parus served its Document Request and have represented in recent correspondences that it may take them months to produce documents. Parus must have Debtors' documents far enough in advance of the deadline to disclose experts to review these documents, depose Debtors' witnesses, and provide Debtors' documents to Parus' experts for review. Currently the disclosure deadline is 120 days from June 20, 2005. (Wood Decl. ¶ 44, Ex. GG at 16.) Parus requests this Court enter a date certain by which Debtors as well as Parus will be required to produce responsive documents to each others' discovery requests pursuant to Federal Rule 34(b) as well as exchange privilege logs pursuant to Local Bankruptcy Rule 7034-1(c). Furthermore, Parus requests that the Court revise its expert disclosure deadline as well all subsequent discovery deadlines accordingly from the date certain.

29

A 00149

**C.    Debtors Cannot Shift the Burden of the Costs Associated With their Obligation to Review Boxes of Documents for Responsiveness under Federal Rule 34(b)**

66.    In addition to attempting to have Parus review poorly indexed boxes of documents, Debtors' also sought to improperly shift costs associated with physically pulling and returning the boxes to their shelves that Debtors are obliged to review for responsiveness. (Wood Decl. ¶¶ 38, 45 and 48.)  First and foremost, there is a presumption that "the responding party must bear the expense of complying with discovery requests . . ." See *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).  Debtors in this case cannot shift the expenses associated with reviewing the boxes of documents for responsiveness, such as pulling and returning the boxes to their shelves, since it's their burden and obligation under New York law to review the documents because of the unreasonable state of Debtors' records.

67.    Furthermore, Parus has undertaken significant time and expense to produce documents responsive to Debtors' discovery requests and will continue to do so to the extent it is necessary to supplement its responses.  (Wood Decl. ¶¶ 32 and 44.)  Therefore, it would be inequitable to shift costs associated with reviews that the Debtor is obligated to perform under New York law.  Parus requests that this Court direct the costs of production be born by the producing parties.

**III.    Parus' Present Motion to Compel Does not Address Electronic Documents**

68.    "Computer records and other electronically stored data are clearly within the permissible scope of discovery." 7 *JAMES WM MOORE ET. AL., MOORE'S FEDERAL PRACTICE* § 34.12[3][a] (3d ed. 2005). *See also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316-17 (S.D.N.Y. 2003).  Parus' Discovery Request clearly seeks the production of responsive electronic documents, in particular e-mails, and Parus' counsel has repeatedly requested the status of locating electronic documents from Debtors' counsel.  (Wood Decl. ¶¶ 28, 30 and 34.)

A 00150

To date, however, Debtors have produced a grand total of 13 e-mails and none since March 25, 2005. (Wood Decl. ¶¶ 15 and 17.)

69.    Parus' counsel also recognizes that the scope and burden of costs related to the production of electronic documents is frequently a contested matter and Debtors' counsel has briefly raised who would be responsible for costs related to "some very expensive searches of electronic documents" before this Court on June 29, 2005. (Wood Decl. Ex. GG at p. 8.)

70.    Resolving disputes regarding the scope and cost of electronic document discovery requires a three-step analysis. *Zubulake,* 217 F.R.D. at 324. "*First*, it is necessary to thoroughly understand the responding party's computer system . . . *Second*, because cost-shifting analysis is so fact-intensive , it is necessary to determine what data may be found on the inaccessible media . . . *Third*, and finally, in conducting the cost-shifting analysis," the court will consider a seven-factor test. *Id.*

71.    Debtors' counsel informed Parus' counsel for the first time two weeks ago, on June 30, 2005, that Debtors had located potentially responsive and non-privileged electronic documents stored on an estimated 250 back up tapes. (Wood Decl. ¶ 46.) Debtors' counsel did not provide any other information concerning these electronic documents nor the back up tapes. (*Id.*) The only information provided was an estimate that it would cost approximately $900,000 to have the electronic documents restored and searched and asserted that these costs should be shifted to Parus. (*Id.*) Since that time, Debtors' counsel has provided Parus' counsel with two additional pieces of correspondence addressing the electronic documents, but failing to offer any facts supporting Debtors cost-shifting claim. (Wood Decl. ¶¶ 48 and 50.)

31

72.    Clearly, the factual record does not currently exist to even began the type of analysis that the *Zubulake* Court sets forth. Therefore, Parus' present Motion to Compel does not address the production of electronic documents. Parus will confer with Debtors regarding the electronic document production and make a good faith effort to resolve any disputes without the intervention of this Court. However, if Parus is unsuccessful, it may be forced to bring this issue before this Court at a future date once a more substantive factual record is established.

## NO PRIOR REQUEST

73.    No prior motion to the Court for the relief requested herein has been made.

## WAIVER OF MEMORANDUM OF LAW

74.    Given the nature of the relief requested in the Motion, Parus respectfully requests that this Court dispense with and waive the requirement for submission of a memorandum of law contained in Local Bankruptcy Rule 9013-1(b).

## NOTICE

75.    Notice of the Motion has been given to the Debtors' counsel and to other parties pursuant to this Court's First Amended Case Management Order entered in the above captioned WorldCom, Inc., et al. bankruptcy.

## CONCLUSION

For the foregoing reasons, Parus respectfully requests this Court to enter an order, substantially in the form annexed hereto as Exhibit 1, (a) directing Debtors to produce documents responsive to Parus' First Request for Documents, dated February 7, 2005, by a date certain provided by this Court; (b) directing Parus' to produce documents responsive to Debtors' discovery requests, dated September 30, 2004, by the same date certain provided by this Court; (c) directing Debtors and Parus to produce a privilege log regarding any documents either party

32

A 00152

is withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule 7034-1(c), by the same date certain provided by this Court; (d) directing Debtors and Parus to bear their own costs of production; and (e) directing Debtors to pay the reasonable costs and expenses incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule 37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, and such other relief as the Court deems appropriate.  In addition, Parus requests that all discovery deadlines, including, but not limited to Parus' expert disclosure deadline, are extended appropriately by this Court from the date certain provided by this Court governing the responsive document and privilege log productions.

Dated:  New York, New York
      July 13, 2005

KELLEY DRYE & WARREN LLP


By:     */s/ Robert L. LeHane*
         Stephen A. Wood (SW 6270)
         Robert S. Friedman (RF 1538)
         Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
(212) 808-7800

Attorneys for Parus Holdings, Inc.
Successor-by-Merger to EffectNet,
Inc. and EffectNet, LLC

A 00153

# EXHIBIT 1

A 00154

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

WORLDCOM, INC., et al.

Debtors.

Chapter 11 Case No.
02-13533 (AJG)

(Jointly Administered)

## ORDER COMPELLING DEBTORS TO PRODUCE DOCUMENTS
## AND FOR AN AWARD OF ATTORNEYS' FEES

Upon consideration of the motion dated July 13, 2005 (the "Motion"), filed by

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC (collectively,

"Parus") and the supporting Declaration of Stephen A. Wood, dated July 13, 2005, together with

the exhibits attached thereto, seeking entry of an order compelling Debtors to produce documents

and for an award of attorneys fees; and good and sufficient cause appearing; and adequate notice

of the Motion and the hearing having been given to all parties entitled thereto in accordance with

the Bankruptcy Rules and this Court's First Amended Case Management Order entered in the

above captioned WorldCom, Inc., et al. bankruptcy, and this Court having taken into

consideration any responses filed hereto; and this Court having convened a hearing to consider

the relief requested in the Motion; and at the hearing, this Court having heard all parties who

sought to be heard; and for good cause shown, it is hereby

ORDERED that the Motion is GRANTED in all respects; It is further

ORDERED that Debtors review their own documents and produce documents

responsive to Parus' Document Requests by a date certain;

A 00155

ORDERED that Debtors cover their own costs of retrieving their boxes from their storage facilities;

ORDERED that Debtors shall produce a privilege log regarding any documents Debtors are withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule

_____.

ORDERED that Parus' deadline to disclose experts is extended by 75 days from the document production date certain;

ORDERED that, pursuant to Rule 37(a)(4) of the FRCP, made applicable to these proceedings by Bankruptcy Rules 7037, Debtors shall pay Parus its attorneys' fees and other reasonable expenses incurred, the amount of which to be set forth by separate order of the Court.

Dated: New York, New York
_____, 2005


HONORABLE ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY COURT

2

A 00156