```
 1              Proceedings
 2   review the documents and who pays the costs
 3   for taking the box off the shelf, which gets
 4   expensive when you are dealing with tens of
 5   thousands of boxes.
 6              So the documents have been legally
 7   produced.  It is a question of real world,
 8   how do you review them?  We want to help them
 9   to do it.  We don't know what the
10   alphanumeric designations mean either.  The
11   people who made these indexes were employees
12   of Intermedia.  As the Court knows,
13   Intermedia has been shut down.  These
14   employees who would know this information are
15   no longer with us.
16              MR. WOOD:  Your Honor, there is an
17   interesting thing about one of these indexes
18   that was produced by the other side.  There
19   were 10 indexes, and the longest of these
20   indexes contains references to a number of
21   boxes.  Some of these boxes have been
22   highlighted.  If you look at the general
23   descriptions of the contents, they don't mean
24   anything to us.  I can't tell what is in
25   these boxes.  But at the end of the index
```

```
 1              Proceedings
 2   documents, which would also apply to us,
 3   which would include any additional documents
 4   that we had to produce in light of the
 5   Court's ruling on our motion.  So that is the
 6   only other issue that I would raise at this
 7   time.
 8              JUDGE GONZALEZ:  How does that then
 9   resolve the dispute or does it just leave it
10   to the parties to resolve it and then for me
11   to be involved, if it is not resolved?
12              MR. BIGUS:  Your Honor, this is
13   Larry Bigus.  In my opinion we have legally
14   produced the documents.  We have given them
15   indexes to tens of thousands of boxes.  We
16   have given them the location where those
17   boxes are kept.  Under Rule 34(b) we have
18   chosen to produce those as they are kept in
19   the usual course of business.
20              Now, I acknowledge there are real
21   world practicalities that WorldCom has an
22   obligation to deal with and I think so do the
23   claimants.  I think creating an artificial
24   deadline, that Your Honor is right on point,
25   that it doesn't solve anything.  WorldCom
```

```
 1              Proceedings
 2   can't tell whether or not the boxes that are
 3   reflected in the indexes contain responsive
 4   documents or not.
 5              Now, we served our request for
 6   production of documents on the Debtors back
 7   in February, on February 7th, and we are
 8   still waiting for the bulk of their documents
 9   to be produced.  We received about 400, but
10   no less than 500, pages of documents.  But
11   that is it.  It seems reasonable to me to ask
12   the Court to impose a deadline for document
13   production to be completed in advance of the
14   deadline for disclosing expert witnesses, and
15   that is what we were seeking here.
16              MR. BIGUS:  Your Honor, this is
17   Larry Bigus.  The documents have been legally
18   produced under Rule 34(b).  We filed a
19   response to their requests timely.  We have
20   told them where the documents are.  We have
21   told them, "Tell us when you want to go, and
22   we will tell the warehouses to show them to
23   you."  We have legally produced the
24   documents.  The question is how in the
25   practical, real world to enable them to
```

```
 1              Proceedings
 2   obviously has to go through the boxes at some
 3   level.  It is a question of how many of those
 4   boxes then get handed over to the claimants.
 5   It is a question of who pays to take them off
 6   the shelf, which could be $30,000 to $50,000;
 7   and it is a question of who does some very
 8   expensive searches of electronic documents.
 9   It will probably end up being outside vendors
10   who have the technology available to do it.
11   I don't think setting an artificial deadline
12   resolves the real world practicality.  We
13   want to produce the documents.  We have
14   offered to produce documents beyond what the
15   claimants have requested.  The claimants have
16   objected to that as a means to hide what is
17   really responsive.  I didn't mean it that
18   way.  We really are letting them, if they
19   want, to go review all of these documents.
20              In order to solve the problem of
21   the 120-day deadline to name experts and what
22   has been reviewed by them, I offered to put a
23   statement in the amended scheduling order
24   that we are going to propose to you that says
25   (1) we need to review all of these documents
```

```
 1            Proceedings
 2   before they can name experts, (2) that it may
 3   take time to accomplish the review and there
 4   are disagreements over how to do the review
 5   and the costs, and (3) that if the review
 6   wasn't completed by 120 days, that they could
 7   seek an additional extension of time in order
 8   to try to solve the issue.
 9            I think to set an artificial
10   deadline to produce this volume of documents
11   absolutely accomplishes nothing for either
12   side, and that Mr. Wood has to wake up to the
13   fact that even if we review all of them
14   first, he is going to have thousands and
15   thousands of boxes to get through that he is
16   going to have to undertake.
17            MR. WOOD:  Your Honor, we thought
18   it reasonable to request a date certain by
19   which the parties would turn over all
20   responsive documents.  That is, produce them
21   to the other side.  We have received some
22   indexes from the Debtors, but the indexes are
23   indecipherable to us.  They were created by
24   them.  There are alphanumeric designations in
25   there that don't mean anything to us.  We
```

# EXHIBIT HH

A 00412

Stephen A. Wood
July 7, 2005
Page 2

of documents produced. These conclusions are clear because there are no copies of contracts, no negotiating notes, no documents from anyone's files except one person, no copies of the termination letters, no drafts of the contracts, no negotiating notes, and a lack of many other documents that should have obviously been included in a full production. You claim that your clients have gone to a lot of trouble, effort and expense to produce documents. It is clear that this is not the case.

Please comply with the requests set forth above in paragraph A on or before July 31, 2005. As you are aware the Request for Production has been outstanding now for over nine months. You keep complaining that Debtors have not produced their documents in connection with a request that has been outstanding for a little over four months, yet your clients have not fully responded in connection with requests that have been outstanding for over nine months.

If we do not receive acceptable amended responses together with a full document production by July 31, 2005, we will have no choice but to ask the Court for an informal conference on these issues.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

**A 00413**

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 29, 2005 3:19 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** Production by MCI/Intermedia

We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34 (b).  As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business."  We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

1.   Review by MCI/Intermedia:  MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

   a.   what should not be produced because it is protected by the attorney client privilege

   b.   If you desire what is responsive to your requests.  If you want to review everything and make this determination yourself that is acceptable to us.

2.  Handing Over Documents:   MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

3.   Costs:

   a.   Handling of Boxes: As you have been advised there is a cost to removing the boxes from the documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection.  This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes.  It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive.  This cost is from one storage location, was a mere estimate, and may vary from location to location.  We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf.  We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute.  We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

   b.   Copying:  The cost of copying belongs to the requesting party.  Therefore, your Client's will bear this entire expense.

4.   Location: You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

A 00414

7/6/2005

**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 7, 2005

**VIA ELECTRONIC MAIL**

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

     Re:    Production by Parus/EffectNet
              In re WorldCom, Inc. - Chapter 11
              Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

As you are aware your clients have failed to respond to the Court's order indicating that all of its objections are waived. Further, the documents that your client has produced indicate that your client's production was not a full and complete production, even if the objections stand – which they do not, contrary to the representations that you have made on many occasions.

A.     Waiver of Objections: As you are aware the Court has ruled that all of your client's objections to the Request for Production and the Interrogatories propounded by Debtors are waived. On July 1, 2005 we sent you a letter asking you to: 1) serve revised discovery responses which eliminate all objections; 2) provide full and complete answers and responses not subject to objections; 3) provide full and complete responses to all requests for production; and 4) produce all requested documents which have not been produced to date. At this time you have not even given us the courtesy of a response to our letter.

B.     Full and Complete Production: Your client has produced a volume of documents. We have reviewed all of the documents and read all but a handful of the documents. The following is clear from the documents that your client has produced: 1) the documents are from the files of one individual and do not include files from any other individual; 2) while the volume of documents is large, many of the documents are duplicative of each other and therefore the production is not as big as you keep claiming; 3) there are no documents from the individuals involved in the negotiations between Webley and MCI; 4) many of the documents are non-responsive documents which simply increase the count you keep using for the number

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

048629:0094_0019\6679360.1

A 00415

5.   Timing:  In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time.  MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way.  We do not understand how you can object to the rest of the proposal.  We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia.  There is not much more a producing party can do other than give you these options.  Rule 34(b) is very clear that a party has two options.  We have selected one of the options as is our right.  You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business).  We are having a hard time determining what is it you really want.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                              Email:  lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00416

7/6/2005

Stephen A. Wood
July 7, 2005
Page 2

    3.    That reasonable parameters be set in connection with searching the electronic discovery. Parameters such as only searching the files of agreed upon individuals, only searching certain back up tapes (the back up tapes are largely duplicative since each tape backs up everything that the particular servers being backed up contain) rather than every single back up tape and other similar parameters. The court decisions on this issue indicate that reasonable parameters designed to search the data most likely to produce information and which greatly reduce the costs can be adopted by the courts.

    By offering to produce electronic documents subject to the above we are not waiving the objections set forth in response to your clients request for production.

    If you are willing to compromise and work on these issues please let me know. If you cannot agree to the above proposal please respond with a particular proposal of your own rather than your usual outright rejection without any constructive proposals. If you are not willing to work together toward a reasonable solution to the issue of electronic production then we will have no choice but to file a motion for a protective order. We hope that this motion does not become necessary.

    Sincerely,

    **STINSON MORRISON HECKER** LLP

    Lawrence W. Bigus

LWB:lag

**A 00417**

# EXHIBIT II

A 00418

STINSON
MORRISON
HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 7, 2005

VIA ELECTRONIC MAIL

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:    Electronic Document Production by Debtors
       In re WorldCom, Inc. - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

As you are aware Debtors have located a substantial number of back up tapes and other electronic documents in connection with your Request for Production of Documents. You have not responded to the e-mail we sent you concerning cost shifting issues in connection with electronic discovery. Prior to filling a motion for protective order on this subject we want to make an attempt to resolve the issues.

At this time we are making the following proposal concerning electronic discovery:

1.      The discovery be postponed until after the Court rules on the summary judgment motion that we plan to file in the near future. The summary judgment motion will assume that all allegations in your pleadings are accurate. The summary judgment motion will be more in the nature of a traditional motion for failure to state a cause of action. We will basically be saying that even if you can prove everything you have alleged that your client does not have a cause of action against Debtors for tort, that the alleged damages are not legally recoverable, and that the contract damages are limited. If the motion is granted as to the tort claims then there will be no need to obtain the electronic discovery. You do not need the electronic discovery to respond to the summary judgment motion because the motion will assume that all of your allegations are correct.

2.      That Claimants pay the cost of searching the electronic files. Case law makes it clear that the Court has the authority to shift the costs in this manner.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

048629:0094_0019\6679423.1

A 00419

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Thursday, June 30, 2005 9:42 AM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** production of electronic documents

As you have been informed on many occasions MCI/Intermedia has continued to look for electronic documents. We have now located the back up tapes that would contain responsive electronic documents if such documents exist.

We have contacted third party vendors in the last couple of days to determine the costs to have the data moved from the tapes to servers so that the data can be searched and then searching the data to try and determine what is relevant. The current estimate is around nine hundred thousand dollars ($900,000.00). This estimate is based on an estimate of 250 back up tapes. At this time the number of tapes is only an estimate. We are working on trying to determine the exact number of tapes. As soon as we get that answer we will provide you with the number of tapes. At that time we can get updated estimates from the vendors.

As you are aware the case law on electronic data indicates that the costs for these searches is imposed on the requesting party under certain circumstances. We believe that those circumstances apply to this case. You have indicated on more than one occasion that you have no direct evidence to prove your tort theories. While you may have a legal right to go on a fishing expedition your client should bear the costs of that fishing expedition.

If the search of electronic documents is performed it will be at your client's costs. Please advise as to whether your client want the search performed. Either you need to have your client make a cash deposit with our firm to cover these costs or your client needs to contract directly with the vendor so that MCI/Intermedia is not liable for these costs. If your client contracts directly with the vendor the results of the searches will be delivered to us for review\, and not to you or your client, so that we can determine what should not be produced and what should be produced.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                          Email: lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00420

-----Original Message-----
**From:** Gagliardi, Lisa [mailto:LGagliardi@stinsonmoheck.com]
**Sent:** Friday, July 08, 2005 2:40 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence
**Subject:** WorldCom, Inc. - Claim of Parus Holdings, Inc.

Attached hereto please find two (2) letters from Larry Bigus regarding the above-named case.


**Lisa Gagliardi**
**Legal Secretary**
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008
Direct Dial Phone:  (913)344-8051
Direct Dial Fax:  1(888)759-6979


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.


A 00421

# EXHIBIT JJ

A 00422

# EXHIBIT MM

A 00423

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Friday, July 01, 2005 4:03 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Production by MCI/Intermedia

I have conferred with my client. There are some problems with your proposal. First, we are not interested in sharing the cost of retrieving boxes from your storage facilities. My client undertook significant time and expense to produce documents to you. We expect you to do the same. As I've said before, this is your obligation under the rules. In addition, your proposal does not indicate when you will turn over your documents. You have had our request since early February. We must have your documents to be able to depose your witnesses and to provide to our experts prior to the deadline to disclose expert opinions. Because you do not commit to turning over responsive documents by a deadline that is well in advance of the expert disclosure deadline, and because you want us to bear half the cost of retrieving boxes from your warehouses, we cannot agree to your proposal.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 29, 2005 3:19 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** Production by MCI/Intermedia

We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34(b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

1.   Review by MCI/Intermedia: MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

     a.   what should not be produced because it is protected by the attorney client privilege

     b.   If you desire what is responsive to your requests. If you want to review everything and make this determination yourself that is acceptable to us.

2.   Handing Over Documents:  MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

3.   Costs:

     a.   Handling of Boxes: As you have been advised there is a cost to removing the boxes from the

A 00424

7/6/2005



STINSON

MORRISON

HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 1, 2005

**VIA ELECTRONIC MAIL**

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

> Re:    Production of Documents by Claimants in Parus v.
>        MCI/Intermedia

Dear Mr. Wood:

As you are aware the Court has ruled that your clients have waived all objections to the Request for Production and the Interrogatories propounded on them in this case. Based on that ruling we are hereby formally requesting that your client:

1) serve revised discovery responses which eliminate all objections;

2) provide full and complete answers to all of the interrogatories which answers are not subject to any objections;

3) provide full and complete responses to all requests for production; and

4) produce all requested documents which have not been produced to date.

We request that this task be accomplished in the next ten days. If there is a logistical reason which makes the 10 day time period unreasonable please let us know what those logistical reasons are and we will be willing to work with you on a reasonable time frame.

We appreciate your immediate attention to this matter.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

LWB:tlm

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

048629:0094\6669444.1

**A 00425**

documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection. This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes. It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive. This cost is from one storage location, was a mere estimate, and may vary from location to location. We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf. We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute. We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

b.    Copying:  The cost of copying belongs to the requesting party. Therefore, your Client's will bear this entire expense.

4.    Location:  You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

5.    Timing:  In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time. MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way. We do not understand how you can object to the rest of the proposal. We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia. There is not much more a producing party can do other than give you these options. Rule 34(b) is very clear that a party has two options. We have selected one of the options as is our right. You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business). We are having a hard time determining what is it you really want.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax:  888 873 4847                                    Email: lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00426

-----Original Message-----
**From:** Mercer, Theresa [mailto:TMercer@stinsonmoheck.com]
**Sent:** Friday, July 01, 2005 11:58 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence; Befort, Jeff
**Subject:** ltr to Stephen Wood re: Production of Documents by Claimants.DOC

Sent on behalf of Lawrence W. Bigus, Esq.


Theresa Mercer
Legal Secretary
Stinson Morrison Hecker LLP
1201 Walnut Street
Kansas City, MO 64106
(816) 691-2335 (telephone)
(816) 691-3495 (facsimile)
tmercer@stinsonmoheck.com



This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00427

7/12/2005

# EXHIBIT KK

A 00428

# EXHIBIT LL

A 00429

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Friday, July 01, 2005 11:52 AM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Befort, Jeff; Ramsay, Donald
**Subject:** supplemental responses to first request for production (Bigus).DOC

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                          Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00430

7/12/2005

4.    **Timing of Inspection.** It is obvious that even with the utmost effort inspection of the documents to determine what is responsive to Claimants Requests is very time consuming and cannot be accomplished in a short period of time. Therefore, any inspection of the documents will require a process over several months. Debtors object to Claimants Request for Production on the grounds that the Requests require immediate production and do not allow for reasonable inspection to determine what documents are responsive.

Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas 66210
Telephone: (913) 451-8600
Facsimile: (913) 451-6352
*Attorneys for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of July, 2005, Debtors' Supplemental Responses to Claimant's First Request for Production of Documents served by Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC was served on counsel for Claimant via electronic mail and U.S. mail, postage prepaid, addressed to:

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606
swood@kelleydrye.com
*Attorneys for Parus Holdings, Inc.*
*Successor-by-Merger to EffectNet, Inc.*

Lawrence W. Bigus, Esq.

**STINSON MORRISON HECKER LLP**
Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS  66210
Attorney for Debtors and
Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| In re | : | CHAPTER 11 CASE |
|---|---|---|
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

## DEBTORS' SUPPLEMENTAL RESPONSES TO CLAIMANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

As set forth in Debtor's Responses to Claimant's First Request for Production of Documents Debtors have aggressively undertaken an investigation to locate documents responsive to the Request for Production.  These efforts have continued and did not stop at the time that Debtor's Responses to the Request were filed.  These efforts are continuing at this time. Debtors have regularly kept Claimant's advised as to the results of the continuing search for additional documents.

Since Debtor's Responses to the Request were filed Debtor's have located: 1) additional hard documents (Stored Boxes) which are in storage; 2) the back up tapes for electronic documents (Back Up Tapes); and 3) another group of documents, separately maintained from the Stored Boxes, which appear to relate to the MCI-Webley contract (MCI Documents).

B.    **OBJECTIONS: DEBTOR'S HEREBY OBJECT TO ALL REQUESTS FOR**

**PRODUCTION OF DOCUMENTS ON THE GROUNDS THAT THE REQUESTS**

**ARE UNDULY BURDENSOME AS SET FORTH BELOW**.

1.    **MCI Documents**: Debtors need to determine the extent of the MCI Documents and the cost of searching the documents. After that determination has been made it may be possible to inspect the MCI Documents and then produce the responsive documents contained in the MCI Documents without undue cost in which case this objection will be removed as to the MCI Documents.

2.    **Stored Boxes**. The burden and expense of production of the Stored Boxes outweighs the likely benefit. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. This position by Claimant's makes Debtor's objections based on the production being unduly burdensome even stronger.

3.    **Back Up Tapes**. The burden and expense of reviewing the Back Up Tapes to determine what to produce is substantial - possibly in excess of one million dollars. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. To require Debtor's to expend in excess of one million dollars to enable Claimants to engage in a fishing expedition is not reasonable. This anticipated cost is based on estimates received from third party vendors to move the information from the back up tapes to servers so that the documents can be searched and then to search the documents for the documents requested by Claimants.

A.    **STATUS OF ADDITIONAL DOCUMENTS**.

1.    **MCI Documents**. Debtors are in the process of putting the MCI Documents onto computer discs for review. Debtors expect to deliver the MCI Documents to their counsel within the next two weeks. Counsel will review the MCI Documents to determine the scope of the documents and whether it is economically reasonable to make a determination as which of the MCI Documents are responsive to the Request for Production.

2.    **Stored Boxes**: The Stored Boxes are made up by in excess of ten thousand boxes. The indexes for the Stored Boxes have been provided to Claimants. The location of the storage facilities for the Stored Boxes has been provided to Claimants. The Stored Boxes have been produced by making them available to Claimants as they are kept in the usual course of business. Claimants have been told that they may inspect the Stored Boxes at any time they desire but that Claimants need to pay the third party charges that will be associated with inspection of the documents in the Stored Boxes. Therefore, these documents have been legally produced in accordance with Rule 34(b).

3.    **Back Up Tapes**: It currently appears that there are in excess of 250 Back Up Tapes. These tapes probably contain information which is privileged, confidential, responsive, and non-responsive. In order to determine what is on the Back Up Tapes the information must be transferred to searchable servers and then the information must be searched by electronic means.

# EXHIBIT I

A 00435

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Wednesday, June 01, 2005 8:29 PM
**To:** Bigus, Lawrence
**Subject:** RE: your response to our proposal to produce documents

I would like to respond to the points you make.

First of all, we didn't reject your proposal outright.  Your proposal has problems and lacks clarity which we addressed in the letter I sent you today posing certain questions that you still have not answered completely.  The problems in your proposal were readily identifiable and thus several days were not necessary to consider it.  We asked for a response to our letter in two days because we don't perceive the issues raised to require a great deal of time to consider.  You asked us to advise you as to whether we could agree to your proposal subject to the stated limitations and, responding to this request, we advised that we could not.

You have produced exactly 732 pages of documents.  So that number isn't made to sound like more than it is, the documents stack up about 4 inches high, a fraction of what will be ultimately produced in this case.  The bulk of the documents you have produced consist of copies of the UC Services Agreement, the Master Agreement for Software Licensing, other agreements and communications already in the possession of both parties.  Very little if any substance has been produced by you to date.  In contrast, we anticipate producing thousands of pages of documents prior to the hearing on June 14, 2005 and unlike you we are reviewing our documents in an effort to ensure we are producing responsive documents.

You have only given vague assurances that you have been working hard to locate, identify, and produce documents.  We do not know the extent of your efforts.  Your client knows of many locations of boxes.  You have reviewed indexes.  Beyond this, you have said little.  You say you don't have an obligation to review all possible documents to determine if they are relevant.  You cannot, however, produce responsive documents buried under a mountain of nonresponsive documents.  You have an obligation to produce responsive documents in the manner in which they are kept in the ordinary course of business or organized to correspond to particular requests.

I asked about documents stored in electronic form.  You have produced a few pages of E-mails in paper form, not hundreds.  I would anticipate that companies like WorldCom and Intermedia would have relied on E-mail extensively and would have volumes of E-mail communications stored in various formats.  The question in my letter about electronic documents seems to me therefore to be valid.  I would also expect that electronic media would be more easily searchable than rummaging through warehouses of paper.

If the indexes fall within the scope of the documents requested and they lead to the discovery of admissible evidence, they should be produced now and I propose that this be done.

Lastly, there is one other issue I did not mention in my letter today.  You indicate you will not produce your documents for which you have a confidentiality obligation to a third party.  I don't believe this is an appropriate limitation given we have a protective order in this case.  I propose therefore the this limitation be deleted.

You want us to work with you on this and we will attempt to do so.  Please respond to my questions in today's letter.  In addition, aside from referring us to vague indexes, what can you do to direct us to responsive documents?

A 00436

7/12/2005

**KELLEY DRYE & WARREN LLP**
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York  10178
Attorneys for Parus Holdings, Inc.,
Successor to EffectNet, Inc.

    and

**STINSON MORRISON HECKER LLP**
Lawrence W. Bigus, Esq.
Sharon L. Stolte, Esq.
Mark A. Shaiken, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-In-Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>    **WORLDCOM, INC., et al.,**<br><br>                    **Debtors.** | **CHAPTER 11 CASE**<br>**NO. 02-13533 (AJG)**<br>**(Jointly Administered)** |

## AMENDED SCHEDULING ORDER

Pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure, the

following amended scheduling order shall govern with respect to discovery in this contested

matter and/or adversary proceeding regarding Claim Nos. 9291, 9293, 11173 and 11242 filed by

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC ("Claimant").

    1.       The Parties shall exchange, no later than January 26, 2005, those documents referred to in their initial disclosure statements pursuant to Rule 26(a)(1), Fed. R. Civ. P., incorporated into bankruptcy proceedings pursuant to Rule 7026, Federal Rules of Bankruptcy Procedure;

    2.       The Parties shall complete fact and expert discovery no later than September 15, 2005;

A 00437

1506

# EXHIBIT S

A 00438

3.    The Parties shall file amendments, if any, to the Claims, the Claims objection, and/or the response to the Claims objection no later than May 15, 2005. If an amended pleading is filed to which there is normally a responsive pleading, the other party shall have thirty (30) days to file an amended responsive pleading;

4.    Claimant shall disclose the identity of its expert witness(es), if any, and provide his/her expert report(s) no later than June 20, 2005;

5.    Debtors shall disclose the identity of their expert witness(es), if any, and provide his/her expert reports(s) no later than August 8, 2005;

6.    The deadline for filing dispositive motions, if any, is October 15, 2005;

7.    The pre-trial conference shall be set by the court at a time after filing dispositive motions.

8.    The parties reserve all rights to, either individually or jointly, seek to amend all deadlines set forth in the stipulation.

Dated:  New York, New York.
        January 21, 2005


STINSON MORRISON HECKER LLP          KELLEY DRYE & WARREN LLP


/s/ Lawrence W. Bigus                 By:  /s/ Robert L. LeHane
Lawrence W. Bigus, Esq.                    Stephen A. Wood (SW 6270)
Sharon L. Stolte, Esq.                     Robert S. Friedman (RF 1538)
Mark A. Shaiken, Esq.                      Robert L. LeHane (RL 9422)

9200 Indian Creek Pkwy., Ste. 450         101 Park Avenue
Overland Park, KS 66210                    New York, New York 10178
Telephone:  (913) 344-8009                 Telephone:  (212) 808-7800
Facsimile:  (913) 451-6352                 Facsimile:  (212) 808-7897

*Attorney for Debtors and*                 *Attorneys for Parus Holdings, Inc., successor to*
*Debtors-in-Possession*                    *EffectNet, Inc.*



                          SO ORDERED:

                           s/ Arthur J. Gonzalez      1/24/05
                          Hon. Arthur J. Gonzalez
                          United States Bankruptcy Court



2

A 00439

have not reviewed refers to the ten thousand plus boxes that are referenced earlier in the letter. These are the same set of documents.

You are correct in your conclusion that the indexes are not very useful. If the indexes were useful we would have narrowed the number of boxes down by using the indexes. Since we have no means to identify what is responsive other than by examining all documents we are simply making the documents available to you subject to a few normal stipulations.

I am leaving town early tomorrow morning for several days. Please review our proposal in more detail and revise it as you deem necessary rather than simply rejecting it out of hand. We will consider reasonable revisions to our proposal. In fact, the proposal invited your creative thinking on this issue. We are open to creative ideas on how to allow you to review a large number of documents. Your request are very broad and probably objectionable on that grounds. Despite this belief we are willing to allow you to review a large number of documents. If you want to go on a fishing expedition then you need to be prepared to spend time and resources doing the fishing. That is not MCI's obligation.

You request immediate production of the indexes. We have no obligation to produce indexes of documents. We are willing to produce the indexes if you would be reasonable in your approach to your fishing expedition.

We hope that we have a more reasoned response to our proposal when I return next week.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                         Email: lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

**A 00440**

7/6/2005

# EXHIBIT J

A 00441

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 01, 2005 5:11 PM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence
**Subject:** your response to our proposal to produce documents

In a little over three months from your Request for Production MCI has produced hundreds of pages of documents and located ten thousand plus boxes of documents for your review. We have made you a serious proposal to produce all of the documents you want to review subject to review for a few items such as privileged documents. Everything you select to review we will have to review in order to assure that privilege and confidentiality issues are not waived. Therefore, we are not getting out of any work ourselves by the proposal that we have made.

Rather than attempting to modify our proposal to make it workable you simply send a letter rejecting our proposal to produce documents for a variety of reasons. This rejection can within one day of our offer. We question how seriously you have considered our offer. We do not have an obligation to review all possible documents to determine if they are relevant. We have a right to make the documents available to you for your review and determination. What more could you want for your fishing expedition then total access to a large volume of documents.

You demand a response no later than two days from your letter. We find your time demands to be ironic in view of the fact that your clients have not produced one single document and our clients have produced hundreds of pages.

You assume in your response that we have not produced emails. Why would you simply make such an assumption when you have hundred of pages of documents that contain emails?

Just yesterday you raised the issue that all MCI entities that are included in the substantive consolidation have an obligation to search for the documents that you are seeking. We are researching the issue of what entities have a duty to produce documents. You have had our response since March 2005, raise the issue for the first time yesterday, and then demand a response from us within two days. That is simply not reasonable on your part. We will reply to that issue when the legal research is finished.

You refer in your response to the objections contained in the initial reply to your request for production. The objections to categories of documents is certainly moot when we offer to produce all documents that can be located without having reviewed those documents ourselves. The objections concerning what entities have a duty to search for documents is addressed above.

You claim the letter is confusing as to what documents our firm has not reviewed. The additional documents we

A 00442

7/6/2005

-----Original Message-----
**From:** Ramsay, Donald [mailto:dramsay@stinsonmoheck.com]
**Sent:** Tuesday, May 17, 2005 3:13 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence
**Subject:** KELLEY DRYE.DOC

Steve - I understood you were going to call Monday to discuss deadlines and modification of the protective order. I want to get a response to you.

1.    I am informed we cannot agree to extensions of the deadlines set for designation of experts etc.
2.    We would like dates for depositions of the Reneau brothers.
3.    Attached is the a slightly revised proposed version of the protective order. I would have sent you a redline version but we have just converted to new software and for some reason it will not activate. The changes are in paragraphs 6, 7 and 15. I have bolded the additions in and in paragraph 7 the word "whomsoever" has been deleted. The only substantive change is that we could have experts who were shown docs attest that they had been destroyed in stead of returning them. Let me know if you can agree to these changes.


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00443

7/12/2005

# EXHIBIT R

A 00444

# EXHIBIT K

A 00445

KELLEY DRYE & WARREN LLP

Lawrence W. Bigus, Esq.
June 1, 2005
Page Two

          Second, the paragraph "Located Documents" is quite confusing.  It states that you
have located documents in multiple locations "that could possibly include responsive
documents."  Are you suggesting that we sift through a large number of nonresponsive
documents?  Furthermore, you state "[o]ur client has advised that there are in excess of 10,000
boxes of documents.  Our office has not reviewed or examined any of these additional
documents."  Does "additional documents" refer to the 10,000 boxes or something else?

          Third, you have indexes, but you admit they are not very precise.  Because of this
we are concerned that the indexes will not be useful in identifying boxes that contain responsive
documents.

          Finally, your proposal makes no mention of documents stored in electronic form,
e.g., E-mail.  Where are those documents stored and when are you planning to produce them?

          We ask that you address these issues no later than Friday June 3, 2005.  In the
meantime, you apparently have indexes to at least some documents that you believe are
responsive.  These should have been produced and we request that they be produced as soon as
possible so we may examine them and move this process forward.

          We anticipate making an initial production of our documents prior to the hearing
on June 14, 2005.

                    Very truly yours,

                    Stephen A. Wood

                    Stephen A. Wood

SAW/ds

-----Original Message-----
**From:** Ramsay, Donald [mailto:dramsay@stinsonmoheck.com]
**Sent:** Tuesday, May 24, 2005 3:24 PM
**To:** Wood, Stephen
**Subject:**

   Steve - I intended to respond re: the discovery issue but have been tied up with depositions. You asked whether we would object, as opposed to simply not agreeing, to extension of deadlines for naming experts. Yes, we would object.
   Steve, also, when we last spoke you were going to check on dates for depositions of the Reneau brothers. Have you identified dates when those might be taken?


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00447

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 333 WEST WACKER DRIVE
### SUITE 2600
### CHICAGO, ILLINOIS 60606
———
(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ
———

BRUSSELS, BELGIUM
———
AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(312) 857-7095
www.kelleydrye.com

DIRECT LINE: (312) 857-2311
EMAIL: swood@kelleydrye.com

June 1, 2005

<u>VIA FACSIMILE AND U.S. FIRST CLASS MAIL</u>

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, Kansas  66210

Re:    <u>**In re WorldCom, Inc., Chapter 11 Case No. 02-13533**</u>
       *Claims of Parus Holdings, Inc.*

Dear Mr. Bigus:

Thank you for your letter of May 31, 2005 proposing to supplement your earlier written response to our request for production of documents. We have considered your proposal and have a number of questions. Because of these questions and concerns we are unable to agree to the proposal as stated.

First, you indicate that you are not waiving objections. You objected more than once in your written response to our request for production of documents to producing documents in the possession of entities other than Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. We sent you a letter yesterday around the time of your E-mail and advised you that this objection was improper due to the substantive consolidation of the bankruptcy proceeding. We would like you to respond to all of our concerns raised in that letter, but with regard to your current proposal, what is the anticipated universe of documents? In other words, are you expressly excluding from your proposal documents in the custody or control of other WorldCom entities?

CH01/WOODS/197075.1

**A 00448**

# EXHIBIT L

A 00449

# EXHIBIT Q

A 00450

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

———

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

May 25, 2005

**VIA FACSIMILE**

Lawrence W. Bigus
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008

Re:    **Parus Holdings/WorldCom; Amended Scheduling Order**

Dear Mr. Bigus:

I received an email from Don Ramsay of your firm on May 17, 2005 regarding amending the scheduling order where Mr. Ramsay indicated "I am informed we cannot agree to extensions of the deadlines set for designation of experts etc." I spoke with Mr. Ramsay on May 18th by telephone regarding this issue.

I pointed out to Mr. Ramsay we had yet to receive the bulk of your document production and, accordingly, were unable to take depositions of WorldCom fact witnesses. In light of this, I asked Mr. Ramsay whether WorldCom was intending to object to or actively oppose our request to amend the scheduling order. He indicated that he was not exactly sure and would get back to me. Yesterday I received another email from him indicating that you would object to extending the deadlines. Mr. Ramsay offered no explanation of the basis for your objection. One deadline, for filing amendments, has already passed. Another deadline, for Parus to disclose experts, is set for June 20, 2005.

I would like to make the following points in an effort to avoid taking a dispute regarding this issue to the court. We served a request for production of documents on you on February 8, 2005. To date, you have produced only 732 pages of documents in this case,

CH01/WOODS/196861.1

**A 00451**

Stephen A. Wood
June 1, 2005
Page 2

As you have indicated on more than one occasion you have no direct evidence to establish the facts necessary to prove any of the alleged tortuous conduct and you will be relying on documents from Debtors. It appears to the Debtors that you are on a fishing expedition to determine whether the facts exist to establish the tort claims that have already been filed (Debtors also believe that the tort claims have no legal basis even if your fishing expedition is somehow able to establish a factual basis). It appears to Debtors that your clients are the Plaintiffs and have the duty to come forward with evidence. Despite the fact that Claimants have not produced a single document in response to Requests which have been pending for over 220 days the Debtors have spent considerable time, effort and money to locate documents and then produce them for your review. We do not understand what more you could reasonably want or expect.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

LWB:lag

A 00452

KELLEY DRYE & WARREN LLP

Lawrence Bigus
May 25, 2005
Page Two

approximately 247 pages in your Rule 26 disclosures and 485 pages in response to our request for production of documents. Combined, this is a 4 inch stack of documents. The bulk of these 700 odd pages consist of copies of the UC Services Agreement, the Master Agreement for Software Licensing, other agreements and communications already in the possession of both parties. To date, little if any substance has been produced by you.

Indeed, you acknowledge much remains to be done by you regarding document production. In your written response to our request for production of documents you have stated the following:

> Intermedia is no longer actively engaged in business. Most of the Intermedia documents have been boxed up and sent to storage ("Stored Documents"). Debtors have aggressively undertaken an investigation to locate the Intermedia documents including the Stored Documents and those documents that were still in the possession of the current employees. The Intermedia documents are referred to herein as "Intermedia Documents".

> Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.

> In response to this Request for Production Debtors have indicated that certain documents will be produced ("Responsive Documents"). To the extent that Located and Reviewed Documents are also Responsive Documents they are attached hereto.

> The Stored Documents located to date are poorly indexed. As it relates to the Claims at issue the Stored Documents contained in these thousands of boxes can be described as follows: 1) Documents which have no relevancy to the Claims at issue, which Claimant has not requested and which Debtors have no desire to review in connection with the Claims at issue ("Irrelevant Documents"); 2) Documents which Debtors would like to review

CH01/WOODS/196861.1

A 00453



STINSON

MORRISON

HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

Re:     Document Production by Debtors
        In re WorldCom, Inc. - Chapter 11
        Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

Your letter of May 31, 2005 complains about the failure of Debtor to produce documents when Debtors have produced hundreds of pages of documents and your clients have not produced a single document despite Requests for Production having been served on them on September 30, 2005. The original response date for Claimant's Request for Production directed to Debtors was March 2005 and documents were produced in March 2005. It appears to us that this was a timely response.

Additionally, your letter is written as if you do not know the status of Debtor's continuing efforts to locate and produce additional documents. We have advised you several times by phone as to the status of these efforts. On the very date that you wrote and sent the letter we advised you that you would shortly be receiving a letter offering to produce over ten thousand boxes of documents that have been located. Why would you send a letter asking us to advise you as to the status of these efforts when we have continually advised you as to the status of the efforts and informed you that a letter was coming shortly setting forth a proposed means for producing over ten thousand boxes of documents? It appears to us that you should have waited to receive our letter before writing your letter and that the only purpose of your letter is one-sided posturing in view of the upcoming hearing concerning your client's total failure to respond to discovery timely and/or provide any meaningful information when responding with extensive objections.

Please review our letter and proposal which you have verified that you have received. Our letter and proposal make most of your letter moot. Even though our initial responses contained objections we have now proposed sending you indexes and opening all of the files up for your review subject to normal limitations as set forth in our letter.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

A 00454

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Three

in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents"). Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

In the foregoing Response you have admitted that you have not even located let alone reviewed or produced all of your documents in this case. The documents you have located are contained in "several locations" and are in "thousands of boxes." It appears, therefore, once you locate all of your documents, your production of documents to date will be dwarfed by documents yet to be produced. Not only have you failed to produce all responsive documents, you have not explained why you have failed to produce these documents to date, or why, despite that failure, Parus should be expected to disclose its experts' opinions.

Moreover, I note that because your documents have not been produced, not a single fact witness deposition has been taken in this case. So there has been no opportunity to examine WorldCom witnesses regarding your documents. Needless to say, depositions without documents would probably be completely useless. As you know, Intermedia breached a contract with EffectNet and Parus, successor-by-merger to EffectNet, has incurred damages. The measure of contract damages is certain to be a subject of expert testimony. Contract damages will depend, *inter alia*, on negotiations between the parties and expectations regarding performance. The Debtor's documents and the testimony of its witnesses are necessary for Parus' experts to form their opinions in this case.

A 00455

# EXHIBIT P

A 00456