**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Four

        In addition, we are claiming that the Debtors engaged in tortious conduct that had a devastating impact on the business of EffectNet and its merger partner, Webley Systems. We will need experts, likely with industry expertise, to review Debtors documents and the testimony of its witnesses regarding Debtors' products, targeted markets, marketing strategy, and business plans to reach conclusions about liability for these tortious claims as well as damages. We believe that Debtors were developing products that competed with the EffectNet product sold to Intermedia. This undoubtedly involved market assessments and business plans that would be relevant to the opinions of Parus's expert witnesses.

        In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. I would remind you that when you requested an extension of time to produce your documents, we readily agreed. Please reconsider your position on this matter and get back to me as soon as possible. If you insist on maintaining an objection to amending the scheduling order, I would like an explanation of the basis for your objection.

                    Very truly yours,

                    *Stephen A. Wood*

                    Stephen A. Wood

SAW:ds



Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

STINSON
MORRISON
HECKER llp

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

Re:    Extension of Deadlines
       In re WorldCom, Inc. - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

LWB:lag

6593760.1

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**A 00458**

# KELLEY
## DRYE

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Lawrence W. Bigus |
| **FIRM** | Stinson Morrison Hecker LLP |
| **CITY** | |
| **FAX** | 913-451-6352 |
| **PHONE** | 913-451-8600 |
| **NO. OF PAGES** | 5 |
| **DATE** | May 25, 2005 |

**KELLEY DRYE & WARREN LLP**
**333 WEST WACKER DRIVE**
**SUITE 2600**
**CHICAGO, ILLINOIS 60606**
**(312) 857-7070**
**FAX (312) 857-7095**

**MESSAGE:**

| | |
|---|---|
| **FROM** | Stephen A. Wood |
| **PHONE** | (312) 857-2311 |
| **E-MAIL** | swood@kelleydrye.com |
| **TIMEKEEPER ID** | 04206 |
| **CLIENT NO.** | 015749.0058 |

**NEW YORK, NY**
**WASHINGTON, DC**
**TYSONS CORNER, VA**
**CHICAGO, IL**
**STAMFORD, CT**
**PARSIPPANY, NJ**
**BRUSSELS**

**AFFILIATE OFFICES**
**JAKARTA**
**MUMBAI**

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (312) 857-7070.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

CH01/WOODS/192364.1

A 00459

# EXHIBIT O

A 00460

# EXHIBIT M

A 00461

**KELLEY DRYE & WARREN** LLP

Lawrence W. Bigus, Esq.
May 31, 2005
Page Five

relevant and admissible evidence to Parus' claims and Parus demands that Debtors produce all such non-privileged documents.

Twelfth, Debtors improperly object to producing any documents in response to requests 30-35. In Parus' Response to Debtors' Objection, Parus sets forth that the General Agreement was underpinning of a major Debtors' initiative suite branded "IntermediaOne." Since this litigation is centered around the General Agreement, requests 30-35 properly seek various documents concerning IntermediaOne. Therefore, these requests are proper and calculated to lead to the discovery of relevant and admissible evidence to Parus' claims and Parus demands that Debtors produce all such non-privileged documents.

Please promptly confirm that Debtors will not withhold from production any documents on the basis of the objections, modifications and/or limitations identified above but will, instead, produce all non-privileged and responsive documents. To the extent that Debtors are withholding any documents on the basis of a privilege, please promptly provide Parus with a privilege log pursuant to Local Bankruptcy Rule 7034-1(c). We note that the limited number of documents produced by you are Bates labeled with two different schemes and the numbers are not in sequence. There is a MCIWC prefix on some of the documents and an MCI prefix on others. This suggests that certain documents were collected and labeled, but not produced for some reason. Please explain this discrepancy.

Finally, Debtors served their First Amended Initial Disclosures on or about November 23, 2004, wherein you stated that "any contact with management employees, current or former, must be through counsel for Debtors." Debtors cite no authority as to their position as it relates to former employees. Moreover, Debtors' position is wrong under New York law. The case law is clear that counsel has the right to interview former employees of an adverse party in private without the presence or consent of opposing counsel. *See G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 533 (S.D.N.Y. 2001); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 628 (S.D.N.Y. 1990). Therefore, Parus and its counsel are free to approach and interview any willing former employees of the WorldCom and Intermedia Debtors. If you have any authority to the contrary, please advise us immediately.

Very truly yours,

Stephen A. Wood

CH01/WOODS/197039.1

**A 00462**



**STINSON**

**MORRISON**

**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

May 31, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606

> Re:    In re World Com - Chapter 11
>         Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Stephen:

As you are aware, Intermedia and MCI have been working diligently to locate documents responsive to your Request for Production and/or which are relevant to the pending adversary case.  In our responses to certain of you requests for production of documents, we agreed to produce responsive documents, subject to objections as stated, and advised you that that we are continuing to search for additional documents that might be responsive.  As previously indicated, the search has been complicated by the fact that Intermedia no longer exists as a separate entity, offices have been moved to different states and certain of the people involved no longer work for MCI.

1.    <u>Located Documents:</u>

We have located boxes of documents in multiple locations around the country, some of which are independent storage facilities, that could possibly include responsive documents.  Our client has advised that there are in excess of 10,000 boxes of documents.  Our office has not reviewed or examined any of these additional documents.

2.    <u>Imprecise Indexes:</u>

Unfortunately, the indexes for these documents are not very precise.  We have searched the indexes but have not been able to satisfy ourselves that we can determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for your review. This is in part because of the imprecise descriptions in the indexes and, in part, because of the very broad nature of your alleged tort claims.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

**A 00463**

Lawrence W. Bigus, Esq.
May 31, 2005
Page Four

     Seventh, Debtors' specific objections to requests number 12, 13 and 22 are improper. Requests number 12, 13 and 22 seek all documents concerning the Memorandum of Understanding, the Interim Agreement and the Master License Agreement, including documents concerning the negotiation, drafting and execution of the Memorandum of Understanding, the Interim Agreement and the Master License Agreement. These requests also seek documents regarding all aspects of performance. Furthermore, there are no specific objections raised to documents concerning the negotiations and drafting. As such, it is clear, these requests are not simply limited to a copy of the Memorandum of Understanding, the Interim Agreement and the Master License Agreement. Therefore, Parus demands that Debtors produce all non-privileged and responsive documents to requests number 12, 13 and 22.

     Eight, Debtors improperly modify and limit their production in response to requests number 14 and 15. Requests number 14 and 15 are not limited to documents "constituting notice." Instead, they request documents concerning Debtors' decision to give notice, a much broader request. As a result, the Debtors' unilateral modification and limitation is inappropriate and Parus demands the production of all non-privileged and responsive documents to requests number 14 and 15 as drafted.

     Ninth, Debtors improperly modify and limit their production in response to requests number 17 and 26. Requests number 17 and 26, in part, seek checks, drafts or evidence of wire transfers constituting payments but they also seek all other documents concerning Debtors' payments to Claimant, under the General Agreement. As a result, the Debtors' unilateral modification and limitation is inappropriate and Parus demands the production of all non-privileged and responsive documents to requests number 17 and 26 as drafted.

     Tenth, Debtors improperly limit their response to requests number 16, 18-19, 23-24, and 27. The applicable definitions of Debtors and Claimant are set forth above and are not limited to the entities that Debtors have set forth. Therefore, Parus demands that Debtors produce all non-privileged and responsive documents in the possession, custody or control of the Debtors, as defined above, and concerning the Claimant, as defined above.

     Eleventh, Debtors improperly object to producing any documents in response to requests number 28 and 29. In Parus' Response and Opposition to Debtors' Objection to Proofs of Claim Filed by EffectNet, Inc. dated June 30, 2004 ("Parus' Response to Debtors' Objection"), Parus sets forth its allegations concerning the Debtors' total breach of the General Agreement. In part, Parus points to the fact that Debtors terminated and/or reassigned many of their employees in 2001 who were performing the obligations under the General Agreement as evidence of the breach. Requests 28 and 29 seek documents concerning the ceasing of employment for two such senior employees whose job titles were set froth in the General Agreement itself. Therefore, these requests are proper and calculated to lead to the discovery of

Stephen A. Wood
May 31, 2005
Page 2

3.    <u>Proposed Procedures:</u>

After considering several means of producing the responsive non-privileged documents, we would like to propose what we consider to be the most efficient means. We are open to proposals from you concerning other possible means of efficiently producing the large number of documents that have been located. Intermedia/MCI proposes to produce the documents pursuant to the procedures and limitations contained in Exhibit A attached hereto.

4.    <u>Objections Not Waived:</u>

Intermedia and MCI will not, by following the attached procedures, have waived any of the objections previously made to the written discovery.

5.    <u>Production Supplements Interrogatory Answers:</u>

Any production of documents pursuant to these procedures will be both a supplemental production responsive to your Request for Production of Documents and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing appropriate further response to your written discovery and for producing any documents which might have any relevancy to this adversary proceeding. Please advise whether you would agree to this procedure and the stated limitations. If so, we will immediately forward the indexes for your review. The procedure is, of course, open for discussion. If there are alternatives that you would like to discuss please advise of that as well.

Sincerely,

**STINSON MORRISON HECKER LLP**


Lawrence W. Bigus

LWB:lag

Enclosure

**KELLEY DRYE & WARREN** LLP

Lawrence W. Bigus, Esq.
May 31, 2005
Page Three

during the contested time period. Local Rule 26.3(c)(5) clearly defines party to include "its officers, directors, employees, partners, corporate parent subsidiaries or affiliates."

Furthermore, Debtors' re-definition of "Claimant" improperly leaves out EffectNet, LLC. As stated in Parus' proofs of claim, EffectNet, Inc. was the successor in interest to EffectNet, LLC. Therefore, "Claimant" was and continues to be defined as "Parus Holdings, Inc., Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC, EffectNet LLC, EffectNet, Inc., Webley Systems, Inc.," and, at a minimum, as set forth in Local Rule 26.3(c)(5) their "officers, directors, employees, partners, corporate parent subsidiaries or affiliates" for purposes of Parus' Document Requests.

Third, Debtors' general objection in paragraph 4 to the term "concerning" is improper under the Local Rules governing this contested matter. "Concerning" is a proper term commonly used in discovery requests and is specifically defined in Local Rule 26.3(c)(7).

Fourth, Debtors improperly object to producing any documents in response to requests 1-5 and 8-10. In making this objection, Debtors' simply incorporate all the General Objections, Objections to Definitions and Objections to Instructions. However, this does not satisfy the requirements set forth in Local Bankruptcy Rule 7034.1(b) which requires an objection to a specific request to be stated with specificity. Therefore, Parus demands the production of all non-privileged and responsive documents to these requests.

Fifth, Debtors improperly modify and limit their production in response to requests number 6 and 7. Request number 6, in part, seeks checks, drafts or evidence of wire transfers constituting payments but it also seeks all other documents concerning Debtors' alleged payment to Claimant. Request number 7, in part, seeks the letters set forth in the objection, but it also seeks all other documents concerning the assertion that the contract was terminated. As a result, the Debtors' unilateral modification and limitation is inappropriate and Parus demands the production of all non-privileged and responsive documents to requests number 6 and 7 as drafted.

Sixth, Debtors' specific objection to request number 11 is improper. Request number 11 seeks all documents concerning the General Agreement, including documents concerning the negotiation, drafting and execution of the General Agreement. This request also seeks documents regarding all aspects of performance and Parus directs Debtors to Section 2 of the General Agreement setting forth, in part, what constitutes performance under the General Agreement. Furthermore, there are no specific objections raised to producing documents concerning the negotiations and drafting. As such, it is clear, this request is not limited to copies of checks constituting payment under the General Agreement. Therefore, Parus demands that Debtors produce all non-privileged and responsive documents to request number 11.

CH01/WOODS/197039.1

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

### PROPOSED PRODUCTION PROCEDURES

1.      Intermedia/MCI will  provide claimants with a complete set of the indexes for the documents.

2.      Claimants will review the indexes and identify those specific boxes it wishes to review.

3.      Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.  In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.      Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

    a.      Those documents identified as privileged.

    b.      Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

    c.      Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

**A 00467**

**KELLEY DRYE & WARREN LLP**

Lawrence W. Bigus, Esq.
May 31, 2005
Page Two

In addition, Debtors' Responses to Parus' Document Requests include multiple general and specific objections as well as modifications and limitations that are meritless and should be withdrawn immediately. Parus' Document Requests focus on documents pertinent to Parus Holdings, Inc.'s, successor-by-merger to EffectNet, Inc. and EffectNet, LLC, ("Parus") claims set forth in its proofs of claim 11173 and 11242 as well as Debtors' objections and defenses set forth in the Debtors' Objection to All Proofs of Claim Filed by EffectNet, Inc. Which is Now Merged into Parus Holdings, Inc., Including, but Not Limited to Claim Numbers 9291, 11242, 9293 and 11173, dated June 10, 2004, and the First Amendment thereto, dated May 16, 2005. Thus, each of Parus' Document Requests are proper and calculated to lead to the discovery of relevant and admissible evidence and shall be responded to as drafted.

First, Debtors' general objection in paragraph 3 and the objection to the definition of "Debtor" in paragraph 4 are completely without merit. The Debtors cannot limit their responses to Parus' Document Requests to merely documents in the possession, custody or control of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.

Pursuant to section 5.1 of the Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated October 21, 2004 ("WorldCom Plan"), the WorldCom Debtors (as defined in section 1.118 and Exhibit A1 of the WorldCom Plan) have been substantively consolidated. Therefore, "each and every Claim filed or to be filed in the Chapter 11 case of any of the WorldCom Debtors shall be deemed filed against the WorldCom Debtors, and shall be one Claim against and obligation of the WorldCom Debtors." *See* WorldCom Plan at § 5.1. WorldCom Debtors include, but are not limited to, Intermedia Communications, Inc., MCI WorldCom Communications, Inc. as well as MCI WorldCom Network Services, Inc.

This is further highlighted by the fact that Debtors filed their initial disclosures pursuant to Fed. R. Bankr. P. 7026(a)(1), dated October 8, 2004, in this matter on behalf of "WorldCom, Inc. et al., ("Debtors")" and not only MCI WorldCom Communications, Inc. and Intermedia Communications, Inc. As such, this Court has jurisdiction and Debtors have an obligation to produce any and all responsive documents to Parus' Document Requests in the possession, custody or control of any and all of the WorldCom Debtors as well as their "officers, directors, employees, partners, corporate parent subsidiaries or affiliates." *See* Rule 26.3(c)(5) of the Local Rules for the Southern District of New York ("Local Rule") (made applicable to this contested matter pursuant to Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York("Local Bankruptcy Rule")).

Second, Debtors' objection to the definition of "Claimant" and the re-definition of that term is improper. Contrary to the Debtors' position, Webley Systems, Inc. ("Webley') is properly included in the definition of "Claimant." Webley merged into what is currently known as Parus prior to this litigation and, at a minimum, was an affiliate of Parus and its predecessors

A 00468

# EXHIBIT N

A 00469

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

———

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

May 31, 2005

<u>VIA FACSIMILE AND U.S. FIRST CLASS MAIL</u>

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, Kansas  66210

Re:    <u>**In re WorldCom, Inc., Chapter 11 Case No. 02-13533**</u>
         *Claims of Parus Holdings, Inc.*

Dear Mr. Bigus:

I am writing regarding Debtors' Responses to Claimant's First Request For Production of Documents dated March 25, 2005 ("Debtors' Response to Parus' Document Requests").

First and foremost, the Debtors' Response to Parus' Document Requests sets forth a long and detailed narrative under the heading "Continuing Effort to Locate Documents" regarding the vast quantities of potentially responsive documents that the Debtors were to review as of March 25, 2005 for production.  However, to date, the Debtors have not produced a single document since March 25, 2005 in response to the Claimant's First Request for Documents dated February 7, 2005 ("Parus' Document Requests").  Therefore, we request that Debtors immediately indicate where their "Continued Efforts to Locate Documents" currently stand and provide us with additional productions and/or a date certain by which we can expect additional responsive documents.

CH01/WOODS/197039.1

**A 00470**

# EXHIBIT T

A 00471



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008

*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

      Re:    Extension of Deadlines
              In re WorldCom, Inc. - Chapter 11
              Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

      You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

      As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

      The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

      Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

              Sincerely,

              **STINSON MORRISON HECKER LLP**

              Lawrence W. Bigus

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

LWB:lag

6593760.1

A 00472

## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

### 101 PARK AVENUE

### NEW YORK, NEW YORK 10178

———

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(212) 808-7897

www.kelleydrye.com

ROBERT S. FRIEDMAN

DIRECT LINE: (212) 808-7853

EMAIL: rfriedman@kelleydrye.com

June 6, 2005

**Via Overnight Delivery**

The Honorable Arthur J. Gonzalez
United States Bankruptcy Judge
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

> Re:   In re WorldCom, Inc., Chapter 11 Case No. 02-13533
>       Claims of Parus Holdings, Inc.
>       Claim Nos. 9291,9293,11173, and 11242

Dear Judge Gonzalez:

Claimant, Parus Holdings, Inc. ("Parus") hereby requests an informal conference pursuant to Local Rule 7007-1(b) to consider a request to amend the current scheduling order. A copy of the current order is attached hereto as Exhibit A. Under the order, Parus is required to disclose expert witnesses and provide reports no later than June 20, 2005. The ability of Parus to disclose expert witnesses has been severely hindered by the failure of Debtors, Intermedia Communications, Inc. and MCI WorldCom Communications, Inc., to produce documents in this case. Only within the past week, on May 31, 2005, have Debtors provided to Parus a "proposal" for producing their documents. Under this proposal it will take weeks if not months for Parus to obtain Debtors documents. Given this time frame, there is no way that Parus can provide Debtors' documents to its experts, not to mention the testimony of Debtors' witnesses regarding those documents, before the current deadline of June 20, 2005.

Nevertheless, Debtors object to extending the deadline for Parus to disclose its experts' opinions. In a good faith effort to avoid bringing another dispute before this Court, Parus asked Debtors on multiple occasions to agree to extend the expert disclosure deadlines and other deadlines in this case. Refusing to even discuss any period of extension, and in spite of Debtors' failure to produce documents or to produce a single witness for deposition, Debtors

A 00473

# EXHIBIT E

A 00474

KELLEY DRYE & WARREN LLP

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Two

have objected to any extension of the deadlines in this case. In essence, Debtors are insisting that Parus disclose expert opinions when fact discovery is barely underway.

### *Debtors' Production of Documents to Date*

Parus served a Request for Production of Documents on Debtors on February 8, 2005. To date, Debtors have produced only 732 pages of documents in this case, consisting of approximately 247 pages in their Rule 26 disclosures, received on or about January 25, 2005 and 485 pages in response to Parus' Request for Production of Documents, received on or about March 25, 2005. Combined, this is a 4 inch stack of documents. The bulk of these 700 odd pages consist of copies of contracts, other agreements, and communications already in the possession of both parties. To date, Debtors have failed to produce anything of substance.

Debtors even acknowledge they have yet to produce the overwhelming majority of their documents. In their written response to Parus' Request for Production of Documents, served on March 25, 2005, Debtors stated the following:

> Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.
>
> . . .
>
> The Stored Documents are poorly indexed.
>
> . . .
>
> Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

CH01/WOODS/197142.4

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Four


       In addition, we are claiming that the Debtors engaged in tortious conduct that had a devastating impact on the business of EffectNet and its merger partner, Webley Systems. We will need experts, likely with industry expertise, to review Debtors documents and the testimony of its witnesses regarding Debtors' products, targeted markets, marketing strategy, and business plans to reach conclusions about liability for these tortious claims as well as damages. We believe that Debtors were developing products that competed with the EffectNet product sold to Intermedia. This undoubtedly involved market assessments and business plans that would be relevant to the opinions of Parus's expert witnesses.

       In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. I would remind you that when you requested an extension of time to produce your documents, we readily agreed. Please reconsider your position on this matter and get back to me as soon as possible. If you insist on maintaining an objection to amending the scheduling order, I would like an explanation of the basis for your objection.

       Very truly yours,

       Stephen A. Wood

       Stephen A. Wood

SAW:ds

**KELLEY DRYE & WARREN LLP**

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Three

*See* Debtors' Responses to Claimant's First Request for Production of Documents, attached as
Exhibit B hereto. In the foregoing Response, Debtors admitted that they have not even located
let alone reviewed or produced anything more than a fraction of their documents in this case.
The documents they have located are contained in "several locations" and are in "thousands of
boxes."

   Having heard nothing further on this issue from Debtors during the ensuing
weeks, Parus contacted counsel for Debtors on May 12, 2005 regarding discovery issues
including amending the schedule in light of Debtors' failure to produce documents. On May 31,
2005, after conference calls between counsel for the parties on May 18th and May 31st, Debtors
finally sent to Parus a proposal for producing documents. *See* May 31, 2005 letter from L. Bigus
to S. Wood attached as Exhibit C hereto. This proposal reiterated the statements made in
Debtors' response to Parus' Request for Production of Documents, to wit, that Debtors had
located 10,000 boxes of documents in "multiple locations around the country." That Debtors
proposal used the same language as their Response to Parus' Request for Production of
Documents, suggests that Debtors had done nothing to locate or produce documents beyond what
was done prior to the service of their written Response to Parus' Request for Production of
Documents.

   In the letter of May 31, 2005, Debtors proposed producing to Parus copies of
indexes that are "not very precise" to give Parus the chance to identify boxes it may wish to
review. Debtors would then review those boxes for privilege and confidentiality after which
documents would be produced at a suitable location. The process proposed by Debtors would
undeniably take several weeks or perhaps even months.[1]

    *Debtors' Refusal to Agree to Amend the Schedule in Spite of Their Failure to*
    *Produce Documents*

   After the conference call on May 12, 2005 wherein Parus requested that under the
circumstances Debtors agree to amend the schedule, Debtors, in an E-mail dated May 17, 2005,
indicated they would not agree to extending the expert disclosure deadlines. A telephone
conference was held between counsel for the parties on May 18, 2005 wherein Parus explained
the unfairness of requiring it to disclose experts when none of Debtors witnesses had been
deposed and its documents remained to be produced. Nothing was resolved in this conference

---

[1] Not surprisingly, because Debtors' documents have not been produced, not a single fact witness deposition has
been taken in this case. Deposition of Debtors' witnesses without Debtors' documents would likely be a substantial
if not complete waste of time. Debtors failure to produce documents has prevented examination of Debtors'
witnesses regarding these documents.

A 00477

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Three

in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents"). Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

In the foregoing Response you have admitted that you have not even located let alone reviewed or produced all of your documents in this case. The documents you have located are contained in "several locations" and are in "thousands of boxes." It appears, therefore, once you locate all of your documents, your production of documents to date will be dwarfed by documents yet to be produced. Not only have you failed to produce all responsive documents, you have not explained why you have failed to produce these documents to date, or why, despite that failure, Parus should be expected to disclose its experts' opinions.

Moreover, I note that because your documents have not been produced, not a single fact witness deposition has been taken in this case. So there has been no opportunity to examine WorldCom witnesses regarding your documents. Needless to say, depositions without documents would probably be completely useless. As you know, Intermedia breached a contract with EffectNet and Parus, successor-by-merger to EffectNet, has incurred damages. The measure of contract damages is certain to be a subject of expert testimony. Contract damages will depend, *inter alia*, on negotiations between the parties and expectations regarding performance. The Debtor's documents and the testimony of its witnesses are necessary for Parus' experts to form their opinions in this case.

A 00478

**KELLEY DRYE & WARREN LLP**

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Four

call. In a subsequent E-mail, dated May 24, 2005, Debtors indicated they would object to any
extension of the deadlines in the schedule.

In an effort to avoid bringing this matter before the Court, Parus requested, in a
letter to Debtors' counsel dated May 25, 2005, that in light of the Debtors' acknowledged failure
to produce the overwhelming bulk of their documents, that Debtors agree to extend the deadline
for Parus to disclose experts in this case, as well as other deadlines. *See* May 25, 2005 Letter
from S. Wood to L. Bigus attached as Exhibit D hereto. A telephone conference was held
between counsel for Parus and counsel for Debtors on May 31, 2005 in an effort to reach
agreement on extending the deadline for Parus to disclose experts. No resolution was reached.

On June 1, 2005, Debtors wrote to Parus' counsel formally stating that they would
not agree to extending the June 20 deadline or any other deadlines, ostensibly because they now
want to "get this case tried." *See* June 1, 2005 letter from L. Bigus to S. Wood attached as
Exhibit E hereto. Strangely, in January of 2005, when the parties were negotiating a new
scheduling order, necessitated by the fact that Parus had to retain new counsel due to a conflict
involving its former counsel, Debtors objected to the June 20, 2005 deadline and all other
deadlines proposed by Parus on the ground that it would not provide sufficient time to complete
discovery. Now, in spite of their failure to produce documents, Debtors have changed their
position, insisting on maintaining the current deadlines.

Debtors also contend in their letter of June 1, 2005 that Parus doesn't need its
documents, or the testimony of its witnesses. Debtors have admitted that Intermedia breached a
contract with EffectNet, and Parus, successor-by-merger to EffectNet, has incurred damages.
The measure of contract damages is a likely subject of expert testimony. The contract at issue
contained a minimum guaranteed payment provision which Parus contends serves as a floor on
the measure of contract damages. The full measure of contract damages will likely depend upon
evidence regarding negotiations between the parties and expectations regarding performance of
the contract, i.e., the expectation of Debtors regarding the size of the market for the Intermedia
unified communications product and projected sales. The Debtors' documents and the testimony
of their witnesses regarding the subjects of marketing of the unified communications product,
sales training, and market projections would therefore be necessary for Parus' experts to form
their opinions as to the full measure of damages in this case.

In addition, Parus is claiming that the Debtors engaged in tortious conduct that
had a devastating impact on the business of EffectNet and its merger partner, Webley Systems.
For example, Parus executives were aware that Debtors were developing a unified
communications product that competed with the EffectNet product sold to Intermedia. Parus
believes that Debtors conspired to put EffectNet and Webley out of business to eliminate
competition. Parus will need experts, most likely with industry expertise, to review Debtors'

A 00479

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Two

approximately 247 pages in your Rule 26 disclosures and 485 pages in response to our request
for production of documents. Combined, this is a 4 inch stack of documents. The bulk of these
700 odd pages consist of copies of the UC Services Agreement, the Master Agreement for
Software Licensing, other agreements and communications already in the possession of both
parties. To date, little if any substance has been produced by you.

   Indeed, you acknowledge much remains to be done by you regarding document
production. In your written response to our request for production of documents you have stated
the following:

> Intermedia is no longer actively engaged in business. Most of the
> Intermedia documents have been boxed up and sent to storage
> ("Stored Documents"). Debtors have aggressively undertaken an
> investigation to locate the Intermedia documents including the
> Stored Documents and those documents that were still in the
> possession of the current employees. The Intermedia documents
> are referred to herein as "Intermedia Documents".
>
> Debtors have located and reviewed some of the Intermedia
> Documents ("Located and Reviewed Documents") and are still
> working to locate the remaining Intermedia Documents. It appears
> that the Stored Documents are contained in several different
> storage locations and are in thousands of boxes ("Stored
> Documents"). Some of the storage locations are known and
> Debtors are still conducting due diligence to determine the location
> of the remaining storage locations. None of the documents at
> storage locations are included in Located and Reviewed
> Documents.
>
> In response to this Request for Production Debtors have indicated
> that certain documents will be produced ("Responsive
> Documents"). To the extent that Located and Reviewed
> Documents are also Responsive Documents they are attached
> hereto.
>
> The Stored Documents located to date are poorly indexed. As it
> relates to the Claims at issue the Stored Documents contained in
> these thousands of boxes can be described as follows: 1)
> Documents which have no relevancy to the Claims at issue, which
> Claimant has not requested and which Debtors have no desire to
> review in connection with the Claims at issue ("Irrelevant
> Documents"); 2) Documents which Debtors would like to review

CH01/WOODS/196861.1

**A 00480**

**KELLEY DRYE & WARREN LLP**

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Five


documents and the testimony of their witnesses regarding Debtors' targeted markets, marketing strategy, and business plans for unified communications to reach conclusions about liability for these tortious claims as well as damages. Debtors' market assessments and business plans regarding the unified communications product are clearly relevant to the opinions of Parus' expert witnesses.

Despite Parus' efforts to engage Debtors in a discussion regarding these issues, Debtors have rejected out of hand Parus' request to agree to extend the deadline for disclosing experts. Debtors are insisting, unreasonably, that Parus disclose its experts when fact discovery is barely underway. The clear inference from this course of events is that Debtors are unfairly attempting to undermine Parus' case by denying its experts access to Debtors' documents thereby denying Parus a hearing on the merits in this matter.

In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. Because the parties will be before the Court on June 14, 2005 at 10:00 a.m. regarding a motion brought by Parus and because its deadline to disclose experts is imminent, Parus requests that this court conduct an informal conference with the parties on this issue at that time.[2]

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: _____
   Robert S. Friedman

101 Park Avenue
New York, New York 10178
(212) 808-7800
*Attorneys for Parus Holdings, Inc., successor by merger to EffectNet, Inc. and EffectNet, LLC*

---

[2] During the conference call of May 31, 2005, counsel for Parus informed Debtors' counsel that if Debtors would not agree to amend the schedule, Parus would request an informal conference with the Court on this issue to coincide with the hearing on June 14, 2005. Debtors' counsel indicated that, not only would he likely object to amending the schedule, he would also object to the matter being heard informally at that time. Such an objection is a further indication of the unreasonableness of Debtors' position.

A 00481

## KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

————

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

————

BRUSSELS, BELGIUM

————

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

May 25, 2005

<u>**VIA FACSIMILE**</u>

Lawrence W. Bigus
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008

Re:     <u>Parus Holdings/WorldCom</u>; Amended Scheduling Order

Dear Mr. Bigus:

I received an email from Don Ramsay of your firm on May 17, 2005 regarding amending the scheduling order where Mr. Ramsay indicated "I am informed we cannot agree to extensions of the deadlines set for designation of experts etc." I spoke with Mr. Ramsay on May 18th by telephone regarding this issue.

I pointed out to Mr. Ramsay we had yet to receive the bulk of your document production and, accordingly, were unable to take depositions of WorldCom fact witnesses. In light of this, I asked Mr. Ramsay whether WorldCom was intending to object to or actively oppose our request to amend the scheduling order. He indicated that he was not exactly sure and would get back to me. Yesterday I received another email from him indicating that you would object to extending the deadlines. Mr. Ramsay offered no explanation of the basis for your objection. One deadline, for filing amendments, has already passed. Another deadline, for Parus to disclose experts, is set for June 20, 2005.

I would like to make the following points in an effort to avoid taking a dispute regarding this issue to the court. We served a request for production of documents on you on February 8, 2005. To date, you have produced only 732 pages of documents in this case,

CH01/WOODS/196861.1

**KELLEY DRYE & WARREN LLP**

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Six


cc:    Lawrence W. Bigus, Esq.
       Stinson Morrison Hecker LLP
       9200 Indian Creek Parkway, Suite 450
       Overland Park, Kansas 66210
       *Attorneys for Debtors*
       (Via Overnight Delivery)

A 00483

# EXHIBIT D

A 00484



A 00485

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

### PROPOSED PRODUCTION PROCEDURES

1.      Intermedia/MCI will  provide claimants with a complete set of the indexes for the documents.

2.      Claimants will review the indexes and identify those specific boxes it wishes to review.

3.      Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.   In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.      Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

       a.      Those documents identified as privileged.

       b.      Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

       c.      Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

6590719.2

**A 00486**

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
Attorneys for Parus Holdings, Inc.,
Successor to EffectNet, Inc.

and

STINSON MORRISON HECKER LLP
Lawrence W. Bigus, Esq.
Sharon L. Stolte, Esq.
Mark A. Shaiken, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-In-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | CHAPTER 11 CASE |
| | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | (Jointly Administered) |
| Debtors. | |

## AMENDED SCHEDULING ORDER

Pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure, the

following amended scheduling order shall govern with respect to discovery in this contested

matter and/or adversary proceeding regarding Claim Nos. 9291, 9293, 11173 and 11242 filed by

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC ("Claimant").

1.  The Parties shall exchange, no later than January 26, 2005, those documents
    referred to in their initial disclosure statements pursuant to Rule 26(a)(1), Fed. R.
    Civ. P., incorporated into bankruptcy proceedings pursuant to Rule 7026, Federal
    Rules of Bankruptcy Procedure;

2.  The Parties shall complete fact and expert discovery no later than September 15,
    2005;

A 00487

Stephen A. Wood
May 31, 2005
Page 2

3.    Proposed Procedures:

After considering several means of producing the responsive non-privileged
documents, we would like to propose what we consider to be the most efficient
means.  We are open to proposals from you concerning other possible means of
efficiently producing the large number of documents that have been located.
Intermedia/MCI proposes to produce the documents pursuant to the procedures and
limitations contained in Exhibit A attached hereto.

4.    Objections Not Waived:

Intermedia and MCI will not, by following the attached procedures, have waived any
of the objections previously made to the written discovery.

5.    Production Supplements Interrogatory Answers:

Any production of documents pursuant to these procedures will be both a
supplemental production responsive to your Request for Production of Documents
and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing
appropriate further response to your written discovery and for producing any
documents which might have any relevancy to this adversary proceeding.  Please
advise whether you would agree to this procedure and the stated limitations.  If so, we
will immediately forward the indexes for your review.  The procedure is, of course,
open for discussion.  If there are alternatives that you would like to discuss please
advise of that as well.

                                Sincerely,

                                **STINSON MORRISON HECKER** LLP



                                Lawrence W. Bigus

LWB:lag

Enclosure

6590719.2

**A 00488**

3.    The Parties shall file amendments, if any, to the Claims, the Claims objection, and/or the response to the Claims objection no later than May 15, 2005. If an amended pleading is filed to which there is normally a responsive pleading, the other party shall have thirty (30) days to file an amended responsive pleading;

4.    Claimant shall disclose the identity of its expert witness(es), if any, and provide his/her expert report(s) no later than June 20, 2005;

5.    Debtors shall disclose the identity of their expert witness(es), if any, and provide his/her expert reports(s) no later than August 8, 2005;

6.    The deadline for filing dispositive motions, if any, is October 15, 2005;

7.    The pre-trial conference shall be set by the court at a time after filing dispositive motions.

8.    The parties reserve all rights to, either individually or jointly, seek to amend all deadlines set forth in the stipulation.


Dated: New York, New York.
       January 21, 2005


STINSON MORRISON HECKER LLP          KELLEY DRYE & WARREN LLP


/s/ Lawrence W. Bigus                 By:  /s/ Robert L. LeHane
Lawrence W. Bigus, Esq.                    Stephen A. Wood (SW 6270)
Sharon L. Stolte, Esq.                     Robert S. Friedman (RF 1538)
Mark A. Shaiken, Esq.                      Robert L. LeHane (RL 9422)

9200 Indian Creek Pkwy., Ste. 450     101 Park Avenue
Overland Park, KS 66210               New York, New York 10178
Telephone: (913) 344-8009            Telephone: (212) 808-7800
Facsimile: (913) 451-6352            Facsimile: (212) 808-7897

Attorney for Debtors and              Attorneys for Parus Holdings, Inc., successor to
Debtors-in-Possession                 EffectNet, Inc.


                                      SO ORDERED:

                                         s/ Arthur J. Gonzalez      1/24/05
                                      Hon. Arthur J. Gonzalez
                                      United States Bankruptcy Court


                                2

A 00489



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

May 31, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606

>       Re:    In re World Com - Chapter 11
>              Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Stephen:

As you are aware, Intermedia and MCI have been working diligently to locate documents responsive to your Request for Production and/or which are relevant to the pending adversary case.  In our responses to certain of you requests for production of documents, we agreed to produce responsive documents, subject to objections as stated, and advised you that that we are continuing to search for additional documents that might be responsive.  As previously indicated, the search has been complicated by the fact that Intermedia no longer exists as a separate entity, offices have been moved to different states and certain of the people involved no longer work for MCI.

1.    Located Documents:

We have located boxes of documents in multiple locations around the country, some of which are independent storage facilities, that could possibly include responsive documents.  Our client has advised that there are in excess of 10,000 boxes of documents.  Our office has not reviewed or examined any of these additional documents.

2.    Imprecise Indexes:

Unfortunately, the indexes for these documents are not very precise.  We have searched the indexes but have not been able to satisfy ourselves that we can determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for your review. This is in part because of the imprecise descriptions in the indexes and, in part, because of the very broad nature of your alleged tort claims.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

A 00490

# EXHIBIT B

# EXHIBIT C

A 00492

STINSON MORRISON HECKER LLP
Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | CHAPTER 11 CASE |
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

## DEBTORS' RESPONSES TO CLAIMANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

### GENERAL OBJECTIONS

1.    Debtors object to all requests to the extent that they seek information protected from disclosure by the attorney-client privilege or the attorney work product doctrine, or which is otherwise immune from discovery.  Inadvertent identification or production of any such information shall not constitute a waiver by the Debtors of any applicable privilege.

2.    Debtors object to all requests to the extent that they seek to require the Debtors to produce documents containing private and confidential, proprietary, or otherwise sensitive information.  Without waiving this objection, the Debtors will agree to produce such documents subject to a proper Protective Order to protect the confidentiality of the material produced.

3.    Debtors object to all requests to the extent the requests ask for production from entities or persons against which no claim has been made in this litigation.  Claimant has, for example, addressed the request to MCI WorldCom Network Services, Inc. which is not a party to

A 00493

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 25th day of March, 2005, Debtors' Responses to Claimant's First Request for Production of Documents (Claim Nos. 9291, 9293, 11173 and 11242 filed by Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC) pursuant to Fed. R. P. 7026(a)(1) were placed in the U.S. mail, postage prepaid, addressed to:

Stephen A. Wood
Robert S. Friedman
Robert L. LeHane
Kevin J. Smith
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
*Attorneys for Parus Holdings, Inc.,*
*Successor-by-Merger to EffectNet, Inc.*

Lawrence W. Bigus, Esq.

CWDDOCS 144022v5

A 00494

this claim. This response is on behalf of Intermedia Communications, Inc. and MCI WorldCom
Communications, Inc. None of the other parties to whom this request is directed are a party to
this adversary proceeding and therefore this request does not reach any of the other parties to
whom it is directed. This objection is based on jurisdictional grounds and on the terms and
limitations of applicable federal rules of civil procedure.

4.    Debtors object that the term "concerning" is as broad a term as could possibly be
used in a request for production. Almost anything and everything somehow could be deemed to
be "concerning." For example, if the term "concerning" is taken literally then every piece of
correspondence, every contract draft, every invoice, every sales record, every payment that was
made, and many other documents could somehow "concern" Debtors' objection to payment of a
claim. This puts the responding party in the position of producing every document in its
possession to make sure that nothing is missed or making a judgment call as to what should be
produced and what "concerns" the topic specified. What meets the term "concerning" will be
different for one attorney than another attorney. Therefore, if counsel for responding party
attempts to make such a determination the decision will be subject to second-guessing and puts
the responding party in a precarious position. Rule 34 specifically provides that a party may
request to see "designated documents". The reason for this provision in the Rule is so that the
responding party knows what to produce. Asking for all documents "concerning" a topic is not
asking for designated documents. The use of this broad term in every request indicates Claimant
is not attempting to designate documents to produce but are simply engaging in a broad ranging
hunt for documents generally. Therefore, Debtors object to any and all requests seeking
production of "documents concerning" on the grounds that the request are overly broad, do not
comply with the requirements of applicable rules, result in Debtors' not being able to determine

2

Debtors further object that request number 34 is otherwise overbroad, is burdensome and calls for the production of documents not relevant or likely to lead to the discovery of admissible evidence.

**REQUEST NO. 35:** All documents concerning Debtors' efforts to develop, obtain, market, or launch Unified Communications product or service for their use or for sale to customers.

**RESPONSE:**    In response to request number 35, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that this request is overbroad in that in that it is not limited as to time.

Debtors further object that this request is otherwise overbroad, is burdensome and calls for the production of documents not relevant or likely to lead to the discovery of admissible evidence.

Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas 66210
Telephone: (913) 451-8600
Facsimile: (913) 451-6352
*Attorneys for Debtors and Debtors-in-Possession*

26

A 00496

exactly what the propounding party is seeking to have produced, and create an unreasonable and oppressive burden. All responses are subject to this objection.

5.    Debtors object to Claimant's request that documents be produced within thirty (30) days. Applicable rules require that Debtors respond within thirty days but do not require that the documents be produced within that same time. Subject to and without waiving that objection, Debtors have attached with this response non-privileged responsive documents specified below. In the event Claimant wishes to view the originals of such documents, Debtors will, where originals are available, make such originals available for inspection and copying at a mutually agreed upon time and place.

6.    Each of the following responses incorporates these General Objections, whether or not specifically referenced in the responses. The responses below are provided without waiver of any of the objections stated herein.

## OBJECTIONS TO DEFINITIONS

1.    Debtors object to the definition of "Claimant" in paragraph 2 of the definitions because it includes entities and persons that are, in fact, not making a claim, it is otherwise overly broad and it is, in part, vague and ambiguous. First, Debtors object that Webley Systems, Inc. does not now exist as an entity and no claim has been made for any damages to Webley Systems, Inc. before its merger with Claimant. Debtors further object that including all "officers, directors, employees, agents, contractors, accountants, advisors, attorneys, and representatives" as Claimant makes the definition of "Claimant" overbroad. Debtors also object to including as Claimant "any other person acting or purporting to act on their behalf," apparently intending to include as "Claimant" all persons who act or purport to act on behalf of the listed corporations and all persons who act or purport to act on behalf of their officers, directors, employees, agents, contractors, accountant, advisors, attorneys and representatives. Again the definition makes all

3

A 00497

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 33:** All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to Claimant, Claimant's finances, Claimant's business, Claimant's technology, Claimant's products, Intermedia Communications, Inc.'s "IntermediaOne", or Unified Communications.

**RESPONSE:** In response to request number 33, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated. Debtors further object to request number 33 on the grounds that it is otherwise overly broad, is burdensome and calls for the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence.

**REQUEST NO. 34:** All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to the development, obtaining, marketing or launching of a Unified Communications product or service.

**RESPONSE:** In response to request number 34, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that request number 34 is overbroad because it is not limited as to time.

A 00498

requests for production overbroad. Finally, the phrase "purporting to act on its behalf" is vague and ambiguous.

For purposes of its responses to Claimant's First Request for Production of Documents, Debtors will treat the term "Claimant" to mean EffectNet, Inc. (the Claimant in both Claim No. 9293 amended by Claim No. 11173 and in Claim No. 9291 amended by Claim No. 11242) and Parus Holdings, Inc. the successor by merger to EffectNet, Inc.

2. Debtors object to Claimant's definition of "Date," "Time," "Period," and "Amount" in paragraph number 7 because the term "approximate" is vague. This is particularly true where, as here, dates in Claimant's requests are months, not specific days. Claimant has, for example, limited two of its Requests to documents relating to a specific month. Request number 14 is for documents concerning an alleged notice in September 2001 and request number 15 is for documents concerning an alleged notice given in March 2002. In both cases, Debtors' responses will be limited to the specified months. Debtors will also otherwise limit their responses to the date, time, period, and amount specified in Claimant's requests.

3. Debtors object to the Claimant's definition of "Draft" on the ground that it requests documents protected by the attorney client and/or work product privileges. Debtors specifically object that drafts of contracts or other documents prepared by an attorney and not generally circulated or disclosed to third parties are privileged documents.

4. Debtors object to the Claimant's definition of "Debtor" in paragraph 9 of its definitions because it includes entities against which Claimant has made no claim. To the extent Claimant intends by its definition of Debtor in paragraph 9 of its Definitions to request production of documents from not only Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. but also each of its affiliate or subsidiary companies, Debtors object that

4

A 00499

**REQUEST NO. 30:** All documents concerning Intermedia Communications, Inc.'s product suite "IntermediaOne".

**RESPONSE:**    In response to request number 30, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 31:** All    documents    concerning    the    launch    of    Intermedia Communications, Inc.'s "IntermediaOne".

**RESPONSE:**    In response to request number 31, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 32:** All documents concerning Debtors' communications among each other regarding Intermedia Communications, Inc.'s "IntermediaOne".

**RESPONSE:**    In response to request number 32, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

24

A 00500

the definition makes each and every request for production overbroad and unduly burdensome. Debtors have over 200 direct and indirect domestic subsidiaries and 200 foreign subsidiaries. Claimant has filed claims against only Intermedia Communications, Inc. (Claim No. 9293 amended by Claim No. 11173) and against MCI WorldCom Communications, Inc. (Claim No. 9291 amended by Claim No. 11242). The court does not have jurisdiction over entities Claimant proposes to include in the definition of "Debtors." This request for production is not a proper means of seeking or obtaining discovery from third parties. Debtors' responses will, therefore be limited to documents in the custody or control of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.

Debtors also object to Claimant's definition of Debtor to the extent Claimant intended by its definition of Debtors in paragraph 9 to request documents from all persons acting or purporting to act on Debtors' behalf (which would include all persons acting or purporting to act on behalf of Debtors' affiliate or subsidiary companies). By this definition Claimant requests documents from entities or persons over which Debtors have no control. Debtors again object that the definition of "Claimant" makes all requests overbroad and unduly burdensome. In addition, Debtors object that the definition calls for documents protected by the attorney client and work product privileges. Finally the phrase "or purporting to act on behalf of" is vague and ambiguous.

Debtors will respond to Claimant's requests with documents in the custody or control of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. including documents in the custody and control of employees of those two corporations over which Debtors have control.

A 00501

response to request number 27 as so restated, Debtors will produce documents in the possession of Intermedia Communications, Inc. or MCI WorldCom Communications, Inc., if any, constituting non-privileged communications among Intermedia Communications, Inc., MCI WorldCom Communications, Inc, or any of their affiliates, regarding the Master Licensing Agreement. Non privileged Located and Reviewed Documents that are responsive to the request as so restated are attached hereto. See also above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 28:** All documents concerning Jim Renforth's ceasing employment with Debtors in 2001.

**RESPONSE:** In response to request number 28, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object to request number 28 on the grounds that it calls for the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence.

**REQUEST NO. 29:** All documents concerning Jimmy Faust's ceasing employment with Debtors.

**RESPONSE:** In response to request number 29, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object to request number 29 on the grounds that it calls for the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence.

A 00502

5.    Debtors object to the definitions in paragraphs 11, 12, and 13 and 17 on the ground that by virtue of the definitions certain of the requests are for documents protected by the attorney client and/or work product privileges.    Debtors specifically object that drafts of contracts or other documents prepared by an attorney and not generally circulated or disclosed to third parties are privileged documents.

6.    Debtors object to the definition of "Jim Renforth" in paragraph 15 on the grounds that his title was Senior Services Manager – Local Services.

7.    Debtors object to the definition of "Unified Communications" in definition number 19 on the grounds that the definition is overbroad and is vague and ambiguous. Debtors do not know what Claimant intends by this definition but the definition begins by defining Unified Communications as "all forms of call . . . controlled by an individual user for both business and social purposes." Whatever is intended, this definition is too broad. Debtors also object that the phrases "multimedia/cross-media message-management functions," "enterprise informational or transactional," "emulates a human user," "content-independent," and "contact access" are all vague and ambiguous.

8.    Each of Debtors' responses to Claimant's requests incorporates these objections whether or not specifically mentioned in the specific response.

## OBJECTIONS TO INSTRUCTIONS

As to Claimant's Instructions, Debtors' will, where response is appropriate, respond in a matter consistent with and as required by  Federal Rules of Civil Procedure and any applicable local rules.  To the extent Claimant purports to impose by its Instructions any additional or other obligation, Debtors object that it is not required to comply with Claimant's Instructions.

6

A 00503

**REQUEST NO. 26:**  All documents concerning Debtors' payments to Claimant pursuant to the Master License Agreement.

**RESPONSE:**    In response to request number 26, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving these objections, Debtors will respond to this request as though it requested checks, drafts, and/or evidence of wire transfers constituting payment to Claimant pursuant to the Master Licensing Agreement.  In response to the request so restated, Debtors will produce copies of checks constituting payment to Claimant pursuant to the Master Licensing Agreement.  Debtors have not yet located but are continuing to search for documents that are responsive to this request as so restated.

**REQUEST NO. 27:**  All documents concerning Debtors' communications among each other regarding the Master License Agreement.

**RESPONSE:**    In response to request number 27, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving these objections Debtors will respond to this request as though it requested documents constituting communication among Intermedia Communications, Inc., MCI WorldCom Communications, Inc. and their affiliates regarding the Master License Agreement.  Provided, however, to the extent this request is intended to request that Debtors search the records in the possession of their affiliates, Debtors object that the request is burdensome and further object that it is asking for records not in Debtors' custody or control.  In

22

A 00504

## CONTINUING EFFORT TO LOCATE DOCUMENTS

Intermedia is no longer actively engaged in business. Most of the Intermedia documents have been boxed up and sent to storage ("Stored Documents"). Debtors have aggressively undertaken an investigation to locate the Intermedia documents including the Stored Documents and those documents that were still in the possession of current employees. The Intermedia documents are referred to herein as "Intermedia Documents".

Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.

In response to this Request for Production Debtors have indicated that certain documents will be produced ("Responsive Documents"). To the extent that Located and Reviewed Documents are also Responsive Documents they are attached hereto.

The Stored Documents located to date are poorly indexed. As it relates to the Claims at issue the Stored Documents contained in these thousands of boxes can be described as follows: 1) Documents which have no relevancy to the Claims at issue, which Claimant has not requested and which Debtors have no desire to review in connection with the Claims at issue ("Irrelevant Documents"); 2) Documents which Debtors would like to review in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents").

7

A 00505

**RESPONSE:**    In response to request number 24, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 24 as though it requested non-privileged documents constituting communications between Debtors (defined as Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.) and Claimant (defined as Effect Net, Inc. and Parus Holdings, Inc.) regarding the Master Service Licensing Agreement. Located and Reviewed non-privileged documents that are responsive to this request as so restated are produced in response to request 23. Debtors are also continuing to search for documents responsive to this request.

**REQUEST NO. 25:**    All documents concerning the price(s) to be paid for licenses to be obtained from Claimant under the Master License Agreement.

**RESPONSE:**    In response to request number 25, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 25 as though it requested non-privileged documents setting forth the prices to be paid or which discuss the prices to be paid Claimant under the Master License Agreement. Claimant already has the Master License Agreement. Located and Reviewed non-privileged documents that are responsive to this request as so restated are produced in response to request 23. Debtors are also continuing to search for documents responsive to this request.

A 00506