7.5.3   subsequent to disclosure hereunder is lawfully received from a third party having rights to such Proprietary Information without restriction of the third party's right to disseminate the Proprietary Information and without notice of any restriction against its further disclosure, is disclosed with the written approval of the other party as can be proven by documentation.

7.5.4   is obligated to be produced by a Party under order of a court of competent jurisdiction or other government authority; provided however, that the receiving party shall immediately provide notice to the disclosing party such that the disclosing party may seek injunctive relief and/or a protective order; and further provided that the disclosing party shall use best efforts to ensure that the information shall be treated as confidential by the party to whom it is disclosed.

7.5.5   is independently developed by the receiving party without reference to or reliance upon the confidential information.

In the event of a disputed disclosure, the receiving party shall bear the burden of proof of demonstrating that the information falls under one of the above exceptions.

8.    **WARRANTIES.**

8.1.    <u>Authorization</u>.  Each Party represents and warrants to the other Party that the execution and delivery of this Agreement and the performance of such Party's obligations under this Agreement have been duly authorized, and that the Agreement is a valid and binding agreement, enforceable in accordance with its terms.

8.2.    <u>Legal Compliance</u>.  Each Party represents and warrants that it has obtained, or will obtain prior to offering the Services hereunder, all licenses, approvals and/or regulatory authority necessary to provide the Services described herein. This Agreement is made expressly subject to all present and future valid orders and regulations of any regulatory body having jurisdiction over the subject matter of this Agreement.

8.3    <u>No Other Warranties</u>.  With respect to the UC Services to be provided in, and to users accessing these services from the United States and Canada, EffectNet warrants that it will exercise commercially reasonable care in the performance of its obligations under this Agreement

**EFFECTNET DOES NOT WARRANT THAT THE EFFECTNET SERVICES OR THE PLATFORM THAT IT PROVIDES TO INTERMEDIA IS ERROR-FREE.  IN ADDITION, THE EFFECTNET SERVICES OR INTERMEDIA PLATFORM IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND.  EFFECTNET DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  NEITHER PARTY SHALL BE LIABLE FOR ANY DAMAGES ARISING FROM THE OTHER PARTY'S OR ANY THIRD PARTY'S USE OF THE EQUIPMENT, INCLUDING WITHOUT LIMITATION INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILTY OF SUCH DAMAGES.  THE PARTIES AGREE TO THE ALLOCATION OF LIABILITY RISK SET FORTH IN THIS SECTION.  THIS LIMITATION ON LIABILITY IS INTENDED ITO APPLY WITHOUT REGARD TO**

A 00709

WHETHER OTHER PROVISIONS OF THIS CONTRACT HAVE BEEN BREACHED OR PROVEN INEFFECTIVE. "AS IS" means the As Is condition of the EffectNet Services to be provided as Intermedia UC Services, including such customer support, software and hardware as required in the condition as of the Initial Launch Date agreed upon between the Parties and including any planned enhancement as well as any other changes mutually agreed upon. These products may as of the Initial Launch Date include works for hire for the benefit of Intermedia as further described in Section 9.2.

## 9. INTELLECTUAL PROPERTY.

9.1    General. Except as otherwise agreed in writing between the Parties, EffectNet shall own any Patent applications and Patents issued on inventions under this Agreement. All Inventions that are not the subject of patents or applications will be considered Confidential Information of EffectNet. Nothing in this Agreement shall be construed to transfer any right title or interest in EffectNet's designs, inventions, copyrights, trade secrets, trade names or other intellectual property.

**10. INDEMNIFICATION. Each Party ("Indemnitor") will defend, indemnify and hold harmless the other Party and such Party's affiliates, directors, officers, employees, proprietors, independent contractors, consultants, partners, shareholders, representatives, customers, agents, predecessors, successors, and permitted assigns (collectively, "Indemnitees") from and against any claim, suit, demand, loss, damage, expense (including reasonable attorneys' fees and costs) or liability that may result from, arise out of or relate to: (a) acts or omissions arising out of or in connection with this Agreement resulting in property damage; by Indemnitor and (b) intentional or negligent violations by Indemnitor of any applicable laws or governmental regulation.**

Intermedia shall indemnify and hold harmless EffectNet from and against any and all claims, expenses, judgments, liabilities, damages or losses, including reasonable attorney's fees and expenses, and shall defend all third-party actions and proceedings arising from any infringement or alleged infringement of any patent, copyright, trade secret, mask work, trade marks or service marks of any third party to the extent such claims are caused by the acts or omissions of Intermedia with respect to the marketing and/or provision of the Intermedia UC Services, but not including any claims, expenses, judgments, liabilities, damages or losses to the extent attributable to the EffectNet Services. EffectNet shall indemnify and hold harmless Intermedia from and against any and all claims, expenses, judgments, liabilities, damages or losses, including reasonable attorneys' fees and expenses, and shall defend all third-party actions and proceedings arising from any infringement or alleged infringement of any patent, copyright, trade secret, mask work or other intellectual property right of any third party, to the extent such claims are caused by use of the EffectNet Services. In the event that an injunction or restraining order is obtained against the use or distribution of any product or deliverable pursuant to this Agreement because of any infringement or alleged infringement of any patent, copyright, trade secret, mask work or other intellectual property right or any proprietary, contract or other right of any third party, or if in EffectNet's reasonable judgment any product or deliverable is likely to become the subject of a successful claim of such infringement, then EffectNet's sole obligation to Intermedia (in addition to its obligations of indemnification set forth above) shall be to promptly: (i) procure for Intermedia the right to use the product or deliverable as provided in this Agreement, (ii)

A 00710

replace or modify the EffectNet product or deliverable so it becomes non-infringing without materially affecting the performance thereof, or if options (i) and (ii) are not available despite commercially reasonable efforts, (iii) terminate the licenses granted hereunder, and accept the return of all copies of all products.

**11.    LIMITATION OF LIABILITY.**  EXCEPT FOR DAMAGES ARISING UNDER SECTION , IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OF ANY KIND INCLUDING WITHOUT LIMITATION, LOSS OF PROFITS, LOSS OF BUSINESS OR INTERRUPTION OF BUSINESS, WHETHER SUCH LIABILITY IS PREDICATED ON CONTRACT, STRICT LIABILITY OR ANY OTHER THEORY WITHOUT REGARD TO WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**12.    GENERAL PROVISIONS.**

    12.1    Monetary Values.  All monetary values in the Agreement refer to U.S. dollars.

    12.2    Assignment.  Either Party may assign its rights or obligations under this Agreement with written notice to the other Party, and after obtaining written approval by the other party, which shall not be unreasonably withheld or delayed.  In the event that Intermedia is acquired by WorldCom no such written approval shall be required.  In the event of a restructuring, merger, or acquisition of either party, in which such party retains at least 25 percent control of the resulting entity such notice and approval shall not be required.

    12.3    Governing Law. This Agreement will be interpreted in accordance with the laws of the state of Arizona, excluding its conflict of law rules.  The Parties agree that the federal and state courts located in Arizona and/or Florida shall be the proper forum for any action brought against the other Party, and each Party shall take all necessary actions to consent to the jurisdiction of such courts.12.4    Notices.  All notices or other communications between EffectNet and Intermedia under this Agreement shall be in writing and delivered personally, sent by confirmed facsimile, by confirmed e-mail, by certified mail, postage prepaid and return receipt requested, or by a nationally recognized express delivery service addressed to the Parties at the addresses first set forth below or at such other addresses, facsimile numbers or e-mail addresses or to such individuals as either Party may specify by notice to the other Party pursuant to this Section. All notices shall be in English and shall be effective upon receipt. As a courtesy, Parties are encouraged to send duplicate copies of notice, demands, or other by facsimile. Issuance of a facsimile copy of a notice, request, demand or other communication shall not replace the requirements for delivery by mail or overnight courier in the manner provided in this Section, nor shall the date the facsimile received constitute the official receipt date. Any Party may change the address to which notices, requests, demands or other to such Party shall be delivered or mailed by giving notice of the change to the other Party in the manner provided in this Section. The addresses for the Parties for the purposes of this Agreement are:

A 00711

**For EffectNet:**

**For Intermedia Communications, Inc.**

Taj Reneau

Kathleen A. Victory

**Chief Executive Officer**

**VP Product Line Management**

EffectNet

Intermedia Communications Inc.

Phone: 602.296.3300

Phone: 813.829.6703

Fax:    602.296.3311

Fax:    813.829.2359

12.5    Independent Contractors. This Agreement and the relations hereby established do not constitute a partnership, joint venture, franchise or agency between the Parties. Both parties are independent contractors acting for their own accounts and neither is authorized to bind, or attempt to bind, the other to any contract, general warranty, covenant or undertaking of any nature whatsoever unless authorized in writing. Neither party shall have the authority to accept delivery, collect or otherwise take possession of any funds or other property of the other party, and if done so inadvertently, shall immediately notify the other party, shall hold same in trust and shall immediately deliver same to the other party. In all matters relating to this Agreement neither party nor such party's employees or agents are, or will act, as employees of the other party within the meaning of any federal or state laws.

12.6    Severability. If any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other term or provision hereof. The Parties agree that they will negotiate in good faith or will permit a court to replace any provision hereof so held invalid, illegal or unenforceable with a valid provision, which is as similar as possible in substance to the invalid, illegal or unenforceable provision.

12.7    Entire Agreement And Modifications. This Agreement together with any appendices, exhibits and attachments constitute the entire agreement between the Parties with regard to the subject matter hereof and supersedes all prior, agreements and understandings, whether written or oral, relating to the subject matter hereof. This Agreement may only be modified by a written instrument duly executed by each Party, making specific reference to this Agreement and to the clause to be modified.

12.8    Captions. Where provided, captions of the sections and subsections of this Agreement are for reference purposes only and do not constitute terms or conditions of this Agreement, and shall not limit or affect the terms and conditions hereof.

12.9    Waiver. No provision of, right, power or privilege under this Agreement shall be deemed to have been waived by any act, delay, omission or acquiescence on the part of either Party, its agents, or employees, but only by an instrument in writing signed by an authorized officer of each Party. No waiver by either Party of any breach or default of any provision of this Agreement by the other Party shall be effective as to any other breach or default, whether of the same or any other provision and whether occurring prior to, concurrent with, or subsequent to the date of such waiver.

A 00712

12.10   Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.  In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

12.11   Force Majeure.  Neither Party shall have any liability to the other for delays resulting from any "Event of Force Majeure" or from any act or omission of the such other Party.  An Event of Force Majeure shall include without limitation any delay or failure in performance due to acts of God, earthquake, labor disputes, changes in law, regulation or government policy, riots, war, fire, epidemic, acts or omissions of vendors or suppliers, equipment failures, transportation difficulties, or other occurrences which are beyond the affected Party's reasonable control.

12.12   Conflicts.  To the extent the terms of this Agreement and the MOU conflict, the terms of this Agreement shall be controlling.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

EffectNet, L.L.C.

Signature:

Printed Name: Brad Steinmeyer

Title: VP PARTNER DEVELOPMENT

Date: 11/27/00

Intermedia Communications, Inc.

Signature: Kathleen A Victory

Printed Name:  Kathleen A. Victory

Title: VP Product Line Management

Date: November 20, 2000

A 00713

### APPENDIX P (Pricing)

EffectNet shall offer the following products to Intermedia at the prices attached thereto as follows:

1.    **Basic**

$11.45 per month for each basic account with all platform usage and inbound call times on the EffectNet platform an additional $.10 per minute. The basic account includes unlimited free on-line usage including checking e-mails, faxes, etc... Outbound calling will be $.10 per minute.  This package includes customer service and technical support.  All basic accounts will be billed a base subscription price of $ 6.00 for the first calendar month of activation partial or full, and $11.45 for any calendar month thereafter partial or full.

2.    **Unlimited**

$27.40 per month for each unlimited account with unlimited free platform usage and inbound call time included. Outbound calling will be $.10 per minute. The unlimited account includes unlimited free on-line usage including checking e-mails, faxes, etc. Outbound calls include: conference calls (per member), outbound long distance, outbound fax, follow me, notification, return calls, etc. All unlimited accounts will be billed a base subscription price of $ 14.00 for the first calendar month of activation partial or full, and $27.40 for any calendar month thereafter partial or full.

Intermedia shall be responsible for any and all expenses incurred related to the completion of the Virtual Private Network ("VPN").   No expenses shall be incurred on behalf of Intermedia for the VPN without prior consent from Intermedia.

A 00714



One Parkway North
Fourth Floor North
Deerfield, Illinois 60015
Office: 888.444.6400

Writer's Direct No.
(888)-387-3481

March 25, 2002

**Via Federal Express Mail**
Mr. Brett Bacon
MCI/WorldCom
1945 Old Gallows Road
Vienna, Virginia 22182

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) ("**EffectNet**") and Intermedia Communications, Inc. ("**Intermedia**") (the "**Agreement**")

Dear Mr. Bacon:

EffectNet, by letter to the attention of Mr. Rich Black, dated March 12, 2002, issued a written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults, as defined in the March 12 letter (the "**March 12 Letter**"). I understand from you that Mr. Black referred the March 12 letter to your attention upon receipt. As you know, the Agreement in Section 5.2 provides that "[t]ermination due to default under this Section shall be effective thirty (30) days after written notice to the defaulting Party if the default has not been cured within such thirty (30) day period." Accordingly, the Agreement will be terminated for default by Intermedia on or about April 12, 2002 if the Intermedia Defaults are not cured prior thereto.

I spoke with you on or about March 13 and you indicated that Intermedia and/or its affiliates were interested in pursuing immediate settlement discussions. I also understand that you spoke with Mr. Jim Calandra, Chief Financial Officer of EffectNet on March 18 and that you told Mr. Calandra that Mr. Barry Zip would

A 00715

Mr. Brett Bacon
Page 2 of 3
March 25, 2002

be handling settlement discussions. Further, I understand that you told Mr. Calandra that you would provide Mr. Zip with contact information of Mr. Calandra. On March 20, Mr. Calandra exchanged voice messages with you whereby Mr. Calandra inquired of Mr. Zip and the lack of communication from him and you responded by giving Mr. Calandra, for the first time, contact information for Mr. Zip. Mr. Calandra called Mr. Zip the same day, March 20, and left a voice message for Mr. Zip requesting that Mr. Zip return the call. Neither Mr. Calandra nor anyone else has since received any communications from Intermedia or its affiliates regarding this matter. As you might imagine, EffectNet is becoming increasingly concerned that Intermedia and/or its affiliates fail to understand the gravity of this matter and the urgency with which it must be addressed.

Intermedia should also take notice of the Due Date of invoice #1018, dated March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on March 6, 2002. Payment of this amount was due on or before March 21, 2002. EffectNet has not received this past due payment (the **"February Payment Default"**).

Accordingly, EffectNet hereby gives Intermedia written notice of default under Section 5.2 of the Agreement with respect to the February Payment Default and EffectNet further hereby gives Intermedia written notice that EffectNet may (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice (if the Agreement is not sooner terminated pursuant to the March 12 Letter) if the February Payment Default has not been cured within such thirty (30) day period, and (ii) further exercise all available remedies pursuant to the terms of the Agreement and as otherwise may be available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of the Agreement, of the amounts itemized below:

Total Amount Past Due on invoice 1010,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the December 2001 billing cycle):                    $274,021.05

Total Amount Past Due on invoice 1011,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the January 2002 billing cycle):                     $274,066.20

Mr. Brett Bacon
Page 3 of 3
March 25, 2002

Total Amount Past Due on invoice #1018,
dated March 5, 2002, and delivered to
Intermedia on March 6, 2002
(for the February 2002 billing cycle):                    $279,757.02

**Required Payment:**                                      $827,844.27

The total amount past due is as of March 21, 2002. EffectNet gives notice that all provisions of default will be strictly enforced. As indicated above, Intermedia has until the expiration of thirty (30) days after the March 12 Letter or this written notice, as the case may be, to remit the Required Payment. The Required Payment should be made payable and delivered by wire transfer to Wells Fargo Bank, Tempe, Arizona, ABA Routing Number 1221-09278, EffectNet Operations Account, Account Number 010-4067220, attn: Stephanie Jordan at 480-644-8396.

If Intermedia fails to cure the Intermedia Defaults and the February Payment Default and if the Agreement is terminated as aforesaid, EffectNet may claim damages for all amounts due pursuant to the Agreement.

Nothing in this letter is intended to be a waiver or release of any rights or remedies, or an election thereof, that EffectNet has under the Agreement or applicable law, and all such rights and remedies are hereby expressly reserved in their entirety.

Very truly yours,


Robert C. McConnell
General Counsel




CC:  Mr. Rich Black

A 00717

| Time period | Minimum Commitment | Price | Total per month | Total for period |
|---|---|---|---|---|
| Past due invoices prior to March, 2002 | | | | $827,844.27 |
| March 2002 through December 2002 | 10000 | $27.40 | $274,000.00 | $2,740,000.00 |
| December 18, 2002-December 18, 2003 | 10000 | $27.40 | $274,000.00 | $3,288,000.00 |
| | | | Total: | $6,855,844.27 |

A 00718

## Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.

One Financial Center
Boston, Massachusetts 02111

George B. Hofmann

*Direct dial  617 348 1753*
gbhofmann@mintz.com

617 542 6000
617 542 2241 *fax*

January 14, 2003

**BY FEDERAL EXPRESS**

United States Bankruptcy Court
WorldCom Claims Docketing Center
One Bowling Green, Room 534
New York, NY 10004-1408

     Re:    Intermedia Communications, Inc.
             Chapter 11; Case No. 02-42154

Dear Sir or Madam:

    Enclosed please find the original and two copies of a proof of claim in connection with the above case.  Please file the original and return one of the copies date-stamped to the undersigned in the enclosed self-addressed stamped envelope.

    Thank you for your assistance.  Please contact me if you have any questions.

                Very truly yours,

                MINTZ, LEVIN, COHN, FERRIS,
                GLOVSKY and POPEO, P.C.

                George B. Hofmann

GBH
Enclosures

TRA 1750115v2

*Boston  New York  Reston  Washington  New Haven*

A 00719

# Exhibit B

A 00720



# Delaware

PAGE 1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF OWNERSHIP, WHICH MERGES:

"EFFECTNET, INC.", A DELAWARE CORPORATION,

WITH AND INTO "PARUS HOLDINGS, INC." UNDER THE NAME OF "PARUS HOLDINGS, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE FIFTH DAY OF FEBRUARY, A.D. 2004, AT 6:48 O'CLOCK P.M.



*Harriet Smith Windsor*
_____
Harriet Smith Windsor, Secretary of State

3361348  8100M

040082255

AUTHENTICATION: 2917428

DATE: 02-06-04

A 00721

*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 06:48 PM 02/05/2004*
*FILED 06:48 PM 02/05/2004*
*SRV 040082255 - 3361348 FILE*

CERTIFICATE OF OWNERSHIP AND MERGER

OF

EffectNet, Inc.
(a Delaware corporation)

INTO

Parus Holdings, Inc.
(a Delaware corporation)

It is hereby certified that:

1.    Parus Holdings, Inc. (hereinafter sometimes referred to as the "Corporation") is a business corporation of the State of Delaware.

2.    The Corporation is the owner of all of the outstanding shares of the stock of EffectNet, Inc., which is also a business corporation of the State of Delaware.

3.    On January 28, 2004, the Board of Directors of the Corporation adopted the following resolutions to merge EffectNet, Inc. into the Corporation:

> RESOLVED: that EffectNet, Inc. be merged into this Corporation, and that all of the estate, property, rights, privileges, powers and franchises of EffectNet, Inc. be vested in and held and enjoyed by this Corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by EffectNet, Inc. in its name.

> RESOLVED: that this Corporation shall assume all of the obligations of EffectNet, Inc.

> RESOLVED: that this Corporation shall cause to be executed and filed and/or recorded the documents prescribed by the laws of the State of Delaware and by the laws of any other appropriate jurisdiction and will cause to be performed all necessary acts within the State of Delaware and within any other appropriate jurisdiction.

> RESOLVED: that this Certificate of Ownership and Merger shall be effective on the date it is filed with the Secretary of State of the State of Delaware.

A 00722

Executed on January 28, 2004.

Parus Holdings, Inc.

By: TAT RENEAU

Its: CEO

A 00723

# EXHIBIT F

A 00724

HEARING DATE AND TIME July 13, 2004 AT 10:00 A.M. EST
OBJECTION DEADLINE: July 8, 2004 AT 4:00P.M. EST

STINSON MORRISON HECKER LLP
Attorneys for Debtors and Debtors in Possession
1201 Walnut Street
Kansas City, MO  64106
Telephone:  (816) 842-8600
Facsimile:  (816) 691-3495
Mark A. Shaiken, Esq.
Lawrence W. Bigus, Esq.
Sharon L. Stolte, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------x
In re                                        :
                                             :      Chapter 11 Case No.
WORLDCOM, INC., et al.,                      :      02-13533 (AJG)
                                             :
                                             :      (Jointly Administered)
                        Debtors.             :
-------------------------------------------------x

## DEBTORS' OBJECTION
## TO ALL PROOFS OF CLAIM FILED BY EFFECTNET, INC.
## WHICH IS NOW MERGED INTO PARUS HOLDINGS, INC.,
## INCLUDING, BUT NOT LIMITED TO
## CLAIM NUMBERS 9291, 11242, 9293 AND 11173

TO THE HONORABLE ARTHUR J. GONZALEZ,
UNITED STATES BANKRUPTCY JUDGE

WorldCom, Inc. and certain of its direct and indirect subsidiaries, as debtors and

debtors in possession (collectively, the "Debtors"), respectfully represent:

### JURISDICTION

1.      The Court has jurisdiction to consider this Objection and the relief

requested herein pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding

A 00725

pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

2.     On July 21, 2002 (the "Commencement Date") and November 8, 2002, WorldCom, Inc. and certain of its direct and indirect domestic subsidiaries commenced cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). By Orders dated July 22, 2002 and November 12, 2002, the Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 29, 2002, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed the statutory committee of unsecured creditors (the "Committee").

3.     WorldCom, Inc., one of the Debtors in the above captioned cases, together with approximately 200 direct and indirect domestic subsidiaries and 200 non-debtor foreign affiliates (collectively, the "Company"), is one of the world's preeminent global communications companies that provides a broad range of communication services in over 200 countries on six continents. Through its core communications services business, which includes voice, data, Internet and international services, the Company carries more data over its networks than any other entity. The Company is also the second largest carrier of consumer and small business long distance telecommunications services in the United States, provides a broad range of retail and wholesale communications services, including long distance voice and data communications, consumer local voice communications, wireless messaging and voice services, private line services and dial-up Internet access services.

A 00726

4.     For the year ended December 31, 2001, WorldCom recorded revenue of more than $30 billion.[1]  As of March 31, 2002, WorldCom's books and records reflected liabilities totaling approximately $41 billion. As of June 30, 2002, WorldCom employed more than 63,900 individuals, of which approximately 57,700 were full-time employees and approximately 6,200 were part-time employees.

## SCHEDULES AND PROOFS OF CLAIM

5.     On November 21, 2002, the Debtors filed their Schedules of Liabilities (as amended and supplemented, the "Debtors' Schedules") and their Schedules of Executory Contracts and Unexpired Leases.  On December 5, 2002, the Debtors filed their Statements of Financial Affairs.

6.     On October 29, 2002, this Court entered its Order (a) Pursuant to Bankruptcy Rule 3003 (c)(3) Establishing the Deadline for Filing Certain Proofs of Claim and Approving the Form and Manner of Notice Thereof (the "Bar Date Order"). The Bar Date Order established January 23, 2003 as the bar date (the "Bar Date") for filing proofs of claim in these cases. Pursuant to the terms of the Bar Date Order, on or about November 22, 2002, the Debtors mailed notice of the bar date (the "Bar Date Notice") to in excess of 1.2 million creditors and potential claimants.

7.     On March 25, 2003, the Court entered its Order Pursuant to 11 U.S.C. § 105 Approving Notice Procedures Regarding Claim Objections and Deemed Schedule Amendment Motions ("Claim Objection Procedure Order"), approving certain procedures regarding noticing of claims objections and omnibus motions for deemed schedule amendments.

---

[1] The amounts in this paragraph are stated on a consolidated basis, including Debtors and non-debtor domestic subsidiaries only. WorldCom, Inc. has announced its intention to restate the financial statements for 2000, 2001 and the first quarter of 2002.

A 00727

8.    As of the date of this Objection, in excess of 34,000 proofs of claim have been filed in connection with these chapter 11 cases (the "Proofs of Claim"). The Debtors have begun the process of conducting a comprehensive review and reconciliation of all prepetition claims, including both the claims scheduled in the Debtors' Schedules (the "Scheduled Claims") and the claims asserted in the Proofs of Claim (the "Filed Claims"). This process includes identifying particular categories of Filed Claims that may be targeted for disallowance and expungement, reduction and allowance, or reclassification and allowance. To reduce the number and volume of pleadings, and to reduce the possibility of double recovery or improper recovery by claimants, the Debtors are filing this objection to all of the claims filed by EffectNet, Inc. and/or Parus Holdings, Inc. into which EffectNet, Inc. has been merged (hereinafter referred to as "Claimant").

9.    According to available records, Claimant has filed two claims as follows: Claim No. 9291 filed on January 08, 2003, which was replaced by and amended by Claim No. 11242 filed January 15, 2003; and Claim No. 9293 filed on January 08, 2003 which was replaced by and amended by Claim No. 11173 filed January 15, 2003.

10.    Upon information and belief this court has already entered an order expunging claim numbers 9291 and 9293.

11.    The above-referenced claims are the only claims that Debtors have a record of receiving which have been filed by Claimant.

12.    If any other claims have been filed by Claimant or any of Claimant's related entities then these objections apply to and relate to all such claims.

4

A 00728

13.    The claims filed by Claimant are duplicative claims which claim the exact same dollars for the exact same alleged debts and therefore all objections to one claim are objections to the other claim.

## OBJECTIONS

14.    Claimant is not entitled to a double recovery and therefore may not recover on more than one claim.

15.    Claimant terminated the contract upon which it based its claims.  The termination of the contract at issue terminated Claimant's rights to receive continuing monthly minimum payments by the very terms of the contract.

16.    Claimant is seeking minimum monthly commitment payments and liquidated damages as specified in the contract.  The amounts being sought by Claimant for these items constitute unenforceable penalties and therefore are not recoverable by Claimant.

17.    Even if Claimant is entitled to recover some or all of the minimum monthly commitments Claimant has calculated its alleged damages using an amount per commitment which is significantly higher than the amount the contract specifies should be used.

18.    Claimant was not a party to the original contract and the contract prohibits assignment.

19.    Claimant's claims have been partially paid.

20.    Debtors did not engage in any conspiracy and therefore are not liable for such.

21.    Debtors did not engage in unfair and deceptive trade practices and therefore are not liable for such.

A 00729

22.    Debtors did not tortiously interfere with Claimant's contractual relationships and therefore are not liable for such.

23.    Debtors were not damaged by any of the alleged tortious conduct of Claimant.

24.    Claimant's claims are not set forth with enough specificity for Debtors to determine the exact conduct involved and/or alleged and/or the damages alleged to have occurred with respect to the alleged tortious interference, unfair and deceptive trade practices and/or conspiracy. Therefore, Claimant has failed to properly state its claim.

25.    Pursuant to the above objections, Debtors request that all proofs of claims filed or asserted by Claimant be disallowed in their entireties.

## MEMORANDUM OF LAW

26.    assertions such that Debtors cannot Claimant asserts many claims with general, vague and ambiguous fully determine whether there are novel issues of law. Accordingly, the Debtors respectfully request that the Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support of the Objection.

## NOTICE

27.    Notice of this Objection has been provided to each of the persons or entities that filed the proofs of claim identified herein and their counsel (if known), and to other parties in accordance with the Claim Objection Procedure Order. The Debtors submit that no other or further notice need be given.

28.    No previous application for the relief sought herein has been made to this or any other Court.

A 00730

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: June 10, 2004
       New York, New York

                    STINSON MORRISON HECKER LLP

                    /s/    Sharon L. Stolte
                    Mark A. Shaiken, Esq.
                    Lawrence W. Bigus, Esq.[2]
                    Sharon L. Stolte, Esq.
                    9 Corporate Woods, Ste. 450
                    9200 Indian Creek Parkway
                    Overland Park, KS 66210
                    (913) 344-8026-Telephone
                    (913) 451-6352-Facsimile
                    Attorneys for Debtors and
                    Debtors in Possession

---

[2] Please contact this attorney with any questions.

CWDDOCS 113444v5

# EXHIBIT G

A 00732

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

**IOI PARK AVENUE**

**NEW YORK, NEW YORK IOI78**

————

(212) 808-7800

WASHINGTON, DC

TYSONS CORNER, VA

CHICAGO, IL

STAMFORD, CT

PARSIPPANY, NJ

————

BRUSSELS, BELGIUM

HONG KONG

————

AFFILIATE OFFICES

BANGKOK, THAILAND

JAKARTA, INDONESIA

MUMBAI, INDIA

TOKYO, JAPAN

FACSIMILE

(212) 808-7897

www.kelleydrye.com

DIRECT LINE: (212) 808-5102

EMAIL: ksmith@kelleydrye.com

**February 7, 2005**

**VIA OVERNIGHT DELIVERY**

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Pkwy., Suite 450
Overland Park, Kansas  66210

Re:    In re WorldCom, Inc., Chapter 11 Case No. 02-13533
          *Claims of Parus Holdings, Inc.*

Dear Mr. Bigus:

Enclosed for service upon you please find Claimant's First Request for Documents in the above referenced matter.

Thank you.

Very truly yours,

Kevin J. Smith

Enclosure

A 00733

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
Kevin J. Smith (KS 0441)
101 Park Avenue
New York, New York 10178
Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | CHAPTER 11 CASE |
| WORLDCOM, INC., et al., | NO. 02-13533 (AJG) |
| Debtors. | (Jointly Administered) |

## CLAIMANT'S FIRST REQUEST FOR DOCUMENTS

Pursuant to Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure,

made applicable by Rule 9014 of the Federal Rules of Bankruptcy Procedure to the instant

contested matter and/or adversary proceeding regarding Claim Nos. 9291, 9293, 11173 and

11242 filed by Parus Holdings, Inc., Successor-by-Merger to EffectNet, Inc. (hereinafter

"Claimant"), Claimant hereby requests that MCI WorldCom Communications, Inc., MCI

WorldCom Network Services, Inc., and Intermedia Communications, Inc., and their affiliate

and/or subsidiary companies (together, "Debtors") produce for inspection and copying at the

offices of Kelley Drye & Warren LLP, 333 West Wacker Drive, Suite 2600, Chicago, Illinois

60606, within thirty (30) days from the date of the service of this request, each document

described below in the possession, custody or control of each in accordance with the definitions

and instructions set forth below and all applicable Federal and Local Rules of Civil Procedure

and Bankruptcy Procedure.

A 00734

## DEFINITIONS

1.      The provisions of Civil Rule 26.3 of the Local District Rules, made applicable pursuant to Local Rules for The United States Bankruptcy Court, Southern District of New York, are incorporated herein.

2.      As used herein, "Claimant" shall mean Parus Holdings, Inc., Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC, EffectNet LLC, EffectNet, Inc., Webley Systems, Inc., their predecessor companies and their officers, directors, employees, agents, contractors, accountants, advisors, attorneys, representatives, successors or assigns and all other persons acting or purporting to act on their behalf.

3.      As used herein, "Claim No. 9291" shall mean that Proof of Claim bearing claim number 9291 filed by Claimant in this bankruptcy case.

4.      As used herein, "Claim No. 9293" shall mean that Proof of Claim bearing claim number 9293 filed by Claimant in this bankruptcy case.

5.      As used herein, "Claim No. 11173" shall mean that Proof of Claim bearing claim number 11173 filed by Claimant in this bankruptcy case.

6.      As used herein, "Claim No. 11242" shall mean that Proof of Claim bearing claim number 11242 filed by Claimant in this bankruptcy case.

7.      "Date," "Time," "Period," or "Amount" shall mean the approximate date, time, period or amount if the exact date, time, period or amount is not known.

8.      "Draft" means any earlier, preliminary, preparatory or tentative version of all or part of a document, whether or not such draft was superceded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final document.

9.      As used herein, "Debtors" shall mean WorldCom, Inc., and each of its affiliate or subsidiary companies, including but not limited to, MCI WorldCom Communications,

2

A 00735

Inc., MCI WorldCom Network Services, Inc., Intermedia, Inc., their officers, directors, employees, agents, contractors, accountants, advisors, attorneys, representatives, successors or assigns and all other persons acting or purporting to act on their behalf.

  10. As used herein, "Debtors' Objection" shall mean Debtors' Objection to All Proofs of Claim Filed by EffectNet, Inc. which is now merged into Parus Holdings, Inc., including but not limited to Claim Numbers 9291, 11242, 9293 and 11173, dated June 10, 2004.

  11. As used herein, "General Agreement" shall mean the Unified Communications Services General Agreement for Intermedia Communications, Inc., dated as of November 20, 2000, between EffectNet, Inc. and Intermedia Communications, Inc. and all amendments, if any, and drafts of same.

  12. As used herein, "Memorandum of Understanding" shall mean the Memorandum of Understanding between EffectNet, Inc. and Intermedia Communications, Inc. regarding communications services to be provided by EffectNet, Inc., and all amendments, if any, and drafts of same.

  13. As used herein, "Interim Agreement" shall mean the Interim Agreement between EffectNet, Inc. and Intermedia Communications, Inc. regarding communications services to be provided by EffectNet, Inc., and all amendments, if any, and drafts of same

  14. "Including" and "includes" shall be construed as referring only to an incomplete listing of illustrative examples and not as limiting or narrowing the generality of any definition, instruction or request.

  15. As used herein, "Jim Renforth" shall mean the person who was employed by Debtors as a Senior Services Manager in connection with the General Agreement.

A 00736

16.    As used herein, "Jimmy Faust" shall mean the person who was employed by Debtors as a Senior Product Manager.

17.    As used herein, "Master License Agreement" shall mean the Master Agreement for Software Licenses between MCI WorldCom Network Services, Inc. and Webley Systems, Inc., dated as of September 14, 2001, and all amendments, if any, entered into thereafter.

18.    As used herein, "Minimum Monthly Commitment" shall have the same meaning as set forth in the General Agreement.

19.    As used herein, "Unified Communications" shall mean all forms of call and multimedia/cross-media message-management functions controlled by an individual user for both business and social purposes. This includes any enterprise informational or transactional application process that emulates a human user and uses a single, content-independent personal messaging channel (mailbox) for contact access.


## INSTRUCTIONS

1.    **General Instructions.**  The party upon whom the request is served shall, in addition to producing responsive documents, serve a written response within 30 days after the service of the request.  The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated.  If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

2.    If any document requested herein is maintained in electronic form (e.g., computer files), you are requested to produce each such document in paper form as well as provide a copy of each document in electronic form (i.e., on computer disk or CD-ROM).

A 00737

3.    "And" includes "or"; "or" includes "and."

4.    The singular includes the plural and vice versa.

5.    The masculine includes the feminine and neuter and vice versa.

6.    Each and every request for a document to be produced requires production of the document in its entirety (including the reverse side if it contains any printing, writing or information), without abbreviation or expurgation, and without redacting any portions of it.

7.    If you do not clearly understand, or if you have any questions about, the definitions, instructions, or any discovery request, please contact counsel for Claimant promptly for clarification.

8.    If you intend to resist the production of any document called for by these requests on the ground that it is privileged, identify the document by date, author, recipient(s) and subject matter and state the specific basis for the claim of privilege. Any such document is to be held separately and retained intact by Debtors subject to and pending a ruling by the Court as to the claimed privilege.

9.    **Continuing Obligation.** Pursuant to the Federal Rules of Civil Procedure, this First Request for Documents is to be regarded as continuing. You are requested to provide by way of supplemental responses any other additional document which you or any person on your behalf may hereafter obtain, which will augment or add to the documents previously provided. Such additional documents shall be served upon counsel for Claimant promptly upon receipt by the affected Debtors or counsel for the Debtors. Nothing herein shall constitute a waiver of the right to bar at trial any documents not produced in a timely fashion or to seek any other appropriate sanction in the event that any document described herein is not produced in accordance with this First Request for Documents.

A 00738

## DOCUMENTS REQUESTED

1.      All documents concerning Debtors' objections to payment with respect to Claim No. 9291.

2.      All documents concerning Debtors' objections to payment with respect to Claim No. 9293.

3.      All documents concerning Debtors' objections to payment with respect to Claim No. 11173.

4.      All documents concerning Debtors' objections to payment with respect to Claim No. 11242.

5.      All documents concerning Debtors' objection to Claimant's Claim Nos. 9291, 9293, 11173 and 11242 on the ground that Claimant is not entitled to double recovery, as asserted in paragraph 14 of Debtors' Objection.

6.      All documents concerning Debtors' alleged payment to Claimant in connection with Claim Nos. 9291, 9293, 11173 and 11242, as asserted in paragraph 19 of Debtors' Objection.

7.      All documents concerning Debtors' contention that "Claimant terminated the contract upon which it based its claims" as asserted in paragraph 15 of Debtors' Objection.

8.      All documents concerning Debtors' contention that Claimant seeks an "unenforceable penalty" in connection with its claims for minimum monthly commitment payments, as asserted in paragraph 16 of Debtors' Objection.

9.      All documents concerning Debtors' contention that "Claimant has calculated its alleged damages using an amount per commitment which is significantly higher than the amount the contract specifies should be used", as asserted in paragraph 17 of the Debtors' Objection.

A 00739

10.    All documents concerning Debtors' contention that "the contract prohibits assignment", as asserted in paragraph 18 of the Debtors' Objection.

11.    All documents concerning the General Agreement, including documents concerning the negotiation, drafting, and execution of the General Agreement and performance of Claimant and Debtors thereunder.

12.    All documents concerning the Memorandum of Understanding, including documents concerning the negotiation, drafting, and execution of the Memorandum of Understanding and performance of Claimant and Debtors thereunder.

13.    All documents concerning the Interim Agreement including documents concerning the negotiation, drafting, and execution of the Interim Agreement and performance of Claimant and Debtors thereunder.

14.    All documents concerning Debtors' decision to give notice in September 2001 to cancel accounts created pursuant to the General Agreement.

15.    All documents concerning Debtors' decision to give notice in March 2002 to cancel accounts created pursuant to the General Agreement.

16.    All documents concerning communications between Debtors and Claimant regarding the General Agreement.

17.    All documents concerning Debtors' payments to Claimant under the General Agreement.

18.    All documents concerning Debtors' communications among each other regarding the General Agreement.

19.    All documents concerning Debtors' communications among each other regarding the cancellation of accounts created pursuant to the General Agreement.

A 00740

20.    All documents concerning Claimant, including Claimant's finances, Claimant's business, Claimant's technology, or Claimant's products.

21.    All documents concerning Debtors' evaluation or analysis of Claimant, including Claimant's finances, Claimant's business, Claimant's technology, or Claimant's products.

22.    All documents concerning the Master License Agreement, including documents concerning the negotiation, drafting, and execution of the Master License Agreement and performance of Claimant and Debtors thereunder.

23.    All documents concerning communications between Debtors and Claimant regarding the Master License Agreement.

24.    All documents concerning communications between Debtors and Claimant from September 1, 2000 to the present regarding the products and services offered by Claimant to Debtors under the Master License Agreement.

25.    All documents concerning the price(s) to be paid for licenses to be obtained from Claimant under the Master License Agreement.

26.    All documents concerning Debtors' payments to Claimant pursuant to the Master License Agreement.

27.    All documents concerning Debtors' communications among each other regarding the Master License Agreement.

28.    All documents concerning Jim Renforth's ceasing employment with Debtors in 2001.

29.    All documents concerning Jimmy Faust's ceasing employment with Debtors.

30.    All documents concerning Intermedia Communications, Inc.'s product suite "IntermediaOne".

A 00741

31.    All documents concerning the launch of Intermedia Communications, Inc.'s "IntermediaOne".

32.    All documents concerning Debtors' communications among each other regarding Intermedia Communications, Inc.'s "IntermediaOne".

33.    All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to Claimant, Claimant's finances, Claimant's business, Claimant's technology, Claimant's products, Intermedia Communications, Inc.'s "IntermediaOne", or Unified Communications.

34.    All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to the development, obtaining, marketing or launching of a Unified Communications product or service.

35.    All documents concerning Debtors' efforts to develop, obtain, market, or launch a Unified Communications product or service for their use or for sale to customers.

Dated: New York, New York.
       February 7, 2005

                              KELLEY DRYE & WARREN LLP

                              By: _____
                                  Stephen A. Wood (SW 6270)
                                  Robert S. Friedman (RF 1538)
                                  Robert L. LeHane (RL 9422)
                                  Kevin J. Smith (KS 0441)

                              101 Park Avenue
                              New York, New York 10178
                              Telephone:  (212) 808-7800
                              Facsimile:  (212) 808-7897

                              *Attorneys for Parus Holdings, Inc., successor to
                              EffectNet, Inc.*

9

TO:    Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas 66210
*Attorneys for Debtors and Debtors-in-Possession*

10

A 00743

**KELLEY DRYE & WARREN LLP**
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
Kevin J. Smith (KS 0441)
101 Park Avenue
New York, New York  10178
Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re | CHAPTER 11 CASE |
|---|---|
| WORLDCOM, INC., et al., | NO. 02-13533 (AJG) |
| Debtors. | (Jointly Administered) |

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he caused a copy of **Claimant's**

**First Request for Documents, dated February 7, 2005,** to be served BY OVERNIGHT

COURIER (UNITED PARCEL SERVICE) on February 7, 2005, on the following attorney:

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas 66210
*Attorneys for Debtors and Debtors-in-Possession*

Dated: February 8, 2005
      New York, New York

_____
Kevin J. Smith (KS 0441)

**A 00744**

# EXHIBIT H

A 00745

**STINSON MORRISON HECKER LLP**
Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-in-Possession


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | **CHAPTER 11 CASE** |
| | : | **NO. 02-13533 (AJG)** |
| **WORLDCOM, INC., et al.,** | : | **(Jointly Administered)** |
| Debtors. | : | |
| | : | |

## DEBTORS' RESPONSES TO CLAIMANT'S FIRST REQUEST
## FOR PRODUCTION OF DOCUMENTS

### GENERAL OBJECTIONS

1.      Debtors object to all requests to the extent that they seek information protected from disclosure by the attorney-client privilege or the attorney work product doctrine, or which is otherwise immune from discovery. Inadvertent identification or production of any such information shall not constitute a waiver by the Debtors of any applicable privilege.

2.      Debtors object to all requests to the extent that they seek to require the Debtors to produce documents containing private and confidential, proprietary, or otherwise sensitive information. Without waiving this objection, the Debtors will agree to produce such documents subject to a proper Protective Order to protect the confidentiality of the material produced.

3.      Debtors object to all requests to the extent the requests ask for production from entities or persons against which no claim has been made in this litigation. Claimant has, for example, addressed the request to MCI WorldCom Network Services, Inc. which is not a party to

this claim. This response is on behalf of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. None of the other parties to whom this request is directed are a party to this adversary proceeding and therefore this request does not reach any of the other parties to whom it is directed. This objection is based on jurisdictional grounds and on the terms and limitations of applicable federal rules of civil procedure.

4.    Debtors object that the term "concerning" is as broad a term as could possibly be used in a request for production. Almost anything and everything somehow could be deemed to be "concerning." For example, if the term "concerning" is taken literally then every piece of correspondence, every contract draft, every invoice, every sales record, every payment that was made, and many other documents could somehow "concern" Debtors' objection to payment of a claim. This puts the responding party in the position of producing every document in its possession to make sure that nothing is missed or making a judgment call as to what should be produced and what "concerns" the topic specified. What meets the term "concerning" will be different for one attorney than another attorney. Therefore, if counsel for responding party attempts to make such a determination the decision will be subject to second-guessing and puts the responding party in a precarious position. Rule 34 specifically provides that a party may request to see "designated documents". The reason for this provision in the Rule is so that the responding party knows what to produce. Asking for all documents "concerning" a topic is not asking for designated documents. The use of this broad term in every request indicates Claimant is not attempting to designate documents to produce but are simply engaging in a broad ranging hunt for documents generally. Therefore, Debtors object to any and all requests seeking production of "documents concerning" on the grounds that the request are overly broad, do not comply with the requirements of applicable rules, result in Debtors' not being able to determine

2

A 00747

exactly what the propounding party is seeking to have produced, and create an unreasonable and oppressive burden. All responses are subject to this objection.

5.    Debtors object to Claimant's request that documents be produced within thirty (30) days. Applicable rules require that Debtors respond within thirty days but do not require that the documents be produced within that same time. Subject to and without waiving that objection, Debtors have attached with this response non-privileged responsive documents specified below. In the event Claimant wishes to view the originals of such documents, Debtors will, where originals are available, make such originals available for inspection and copying at a mutually agreed upon time and place.

6.    Each of the following responses incorporates these General Objections, whether or not specifically referenced in the responses. The responses below are provided without waiver of any of the objections stated herein.

## OBJECTIONS TO DEFINITIONS

1.    Debtors object to the definition of "Claimant" in paragraph 2 of the definitions because it includes entities and persons that are, in fact, not making a claim, it is otherwise overly broad and it is, in part, vague and ambiguous. First, Debtors object that Webley Systems, Inc. does not now exist as an entity and no claim has been made for any damages to Webley Systems, Inc. before its merger with Claimant. Debtors further object that including all "officers, directors, employees, agents, contractors, accountants, advisors, attorneys, and representatives" as Claimant makes the definition of "Claimant" overbroad. Debtors also object to including as Claimant "any other person acting or purporting to act on their behalf," apparently intending to include as "Claimant" all persons who act or purport to act on behalf of the listed corporations and all persons who act or purport to act on behalf of their officers, directors, employees, agents, contractors, accountant, advisors, attorneys and representatives. Again the definition makes all

3

A 00748

requests for production overbroad.  Finally, the phrase "purporting to act on its behalf" is vague and ambiguous.

For purposes of its responses to Claimant's First Request for Production of Documents, Debtors will treat the term "Claimant" to mean EffectNet, Inc. (the Claimant in both Claim No. 9293 amended by Claim No. 11173 and in Claim No. 9291 amended by Claim No. 11242) and Parus Holdings, Inc. the successor by merger to EffectNet, Inc.

2.    Debtors object to Claimant's definition of "Date," "Time," "Period," and "Amount" in paragraph number 7 because the term "approximate" is vague. This is particularly true where, as here, dates in Claimant's requests are months, not specific days.  Claimant has, for example, limited two of its Requests to documents relating to a specific month.  Request number 14 is for documents concerning an alleged notice in September 2001 and request number 15 is for documents concerning an alleged notice given in March 2002.  In both cases, Debtors' responses will be limited to the specified months.  Debtors will also otherwise limit their responses to the date, time, period, and amount specified in Claimant's requests.

3.    Debtors object to the Claimant's definition of "Draft" on the ground that it requests documents protected by the attorney client and/or work product privileges.  Debtors specifically object that drafts of contracts or other documents prepared by an attorney and not generally circulated or disclosed to third parties are privileged documents.

4.    Debtors object to the Claimant's definition of "Debtor" in paragraph 9 of its definitions because it includes entities against which Claimant has made no claim. To the extent Claimant intends by its definition of Debtor in paragraph 9 of its Definitions to request production of documents from not only Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. but also each of its affiliate or subsidiary companies, Debtors object that

4

the definition makes each and every request for production overbroad and unduly burdensome. Debtors have over 200 direct and indirect domestic subsidiaries and 200 foreign subsidiaries. Claimant has filed claims against only Intermedia Communications, Inc. (Claim No. 9293 amended by Claim No. 11173) and against MCI WorldCom Communications, Inc. (Claim No. 9291 amended by Claim No. 11242). The court does not have jurisdiction over entities Claimant proposes to include in the definition of "Debtors." This request for production is not a proper means of seeking or obtaining discovery from third parties. Debtors' responses will, therefore be limited to documents in the custody or control of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.

Debtors also object to Claimant's definition of Debtor to the extent Claimant intended by its definition of Debtors in paragraph 9 to request documents from all persons acting or purporting to act on Debtors' behalf (which would include all persons acting or purporting to act on behalf of Debtors' affiliate or subsidiary companies). By this definition Claimant requests documents from entities or persons over which Debtors have no control. Debtors again object that the definition of "Claimant" makes all requests overbroad and unduly burdensome. In addition, Debtors object that the definition calls for documents protected by the attorney client and work product privileges. Finally the phrase "or purporting to act on behalf of" is vague and ambiguous.

Debtors will respond to Claimant's requests with documents in the custody or control of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. including documents in the custody and control of employees of those two corporations over which Debtors have control.

A 00750

5.    Debtors object to the definitions in paragraphs 11, 12, and 13 and 17 on the ground that by virtue of the definitions certain of the requests are for documents protected by the attorney client and/or work product privileges.    Debtors specifically object that drafts of contracts or other documents prepared by an attorney and not generally circulated or disclosed to third parties are privileged documents.

6.    Debtors object to the definition of "Jim Renforth" in paragraph 15 on the grounds that his title was Senior Services Manager – Local Services.

7.    Debtors object to the definition of "Unified Communications" in definition number 19 on the grounds that the definition is overbroad and is vague and ambiguous.  Debtors do not know what Claimant intends by this definition but the definition begins by defining Unified Communications as "all forms of call . . . controlled by an individual user for both business and social purposes."  Whatever is intended, this definition is too broad.  Debtors also object that the phrases "multimedia/cross-media message-management functions," "enterprise informational or transactional," "emulates a human user," "content-independent," and "contact access" are all vague and ambiguous.

8.    Each of Debtors' responses to Claimant's requests incorporates these objections whether or not specifically mentioned in the specific response.

## OBJECTIONS TO INSTRUCTIONS

As to Claimant's Instructions, Debtors' will, where response is appropriate, respond in a matter consistent with and as required by Federal Rules of Civil Procedure and any applicable local rules.  To the extent Claimant purports to impose by its Instructions any additional or other obligation, Debtors object that it is not required to comply with Claimant's Instructions.

6

A 00751

## CONTINUING EFFORT TO LOCATE DOCUMENTS

Intermedia is no longer actively engaged in business. Most of the Intermedia documents have been boxed up and sent to storage ("Stored Documents"). Debtors have aggressively undertaken an investigation to locate the Intermedia documents including the Stored Documents and those documents that were still in the possession of current employees. The Intermedia documents are referred to herein as "Intermedia Documents".

Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.

In response to this Request for Production Debtors have indicated that certain documents will be produced ("Responsive Documents"). To the extent that Located and Reviewed Documents are also Responsive Documents they are attached hereto.

The Stored Documents located to date are poorly indexed. As it relates to the Claims at issue the Stored Documents contained in these thousands of boxes can be described as follows: 1) Documents which have no relevancy to the Claims at issue, which Claimant has not requested and which Debtors have no desire to review in connection with the Claims at issue ("Irrelevant Documents"); 2) Documents which Debtors would like to review in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents").

A 00752

Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

## RESPONSES TO REQUESTS FOR DOCUMENTS

**REQUEST NO. 1:**    All documents concerning Debtors' objections to payment with respect to Claim No. 9291.

**RESPONSE:**    In response to request number 1, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.


**REQUEST NO. 2:**    All documents concerning Debtors' objections to payment with respect to Claim No. 9293.

**RESPONSE:**    In response to request number 2, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.

A 00753

**REQUEST NO. 3:**    All documents concerning Debtors' objections to payment with respect to Claim No. 11173.

**RESPONSE:**    In response to request number 3, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.

**REQUEST NO. 4:**    All documents concerning Debtors' objections to payment with respect to Claim No. 11242.

**RESPONSE:**    In response to request number 4, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.

**REQUEST NO. 5:**    All documents concerning Debtors' objection to Claimant's Claim Nos. 9291, 9293, 11173 and 11242 on the ground that Claimant is not entitled to double recovery, as asserted in paragraph 14 of Debtors' Objection.

**RESPONSE:**    In response to request number 5, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated. Debtors further object to request number 5 on the grounds that Claimant is asking Debtors to produce documents to support a point of law, namely that Claimant is not legally entitled to double recovery.

**REQUEST NO. 6:**    All documents concerning Debtors' alleged payment to Claimant in connection with Claim Nos. 9291, 9293, 11173 and 11242, as asserted in paragraph 19 of Debtors' Objection.

A 00754

**RESPONSE:**   In response to request number 6, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving the foregoing objections, Debtors will respond to request number six as though it requested checks, drafts or evidence of wire transfers constituting payment to Claimant under the Unified Communications Services General Agreement between EffectNet, Inc. and Intemedia Communications, Inc.  In response to the request so modified, Debtors will produce copies of checks sent to EffectNet, Inc. as payment under the Unified Communications Services General Agreement between EffectNet, Inc. and Intermedia Communications, Inc.  Debtors have not yet located these documents.  See above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 7:**   All documents concerning Debtors' contention that "Claimant terminated the contract upon which it based its claims" as asserted in paragraph 15 of Debtors' Objection.

**RESPONSE:**   In response to request number 7, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving those objections, Debtors will respond to request number 7 as though it requested documents that constitute Claimant's termination of the contract.  In response to the request so stated, Debtors will produce and have attached hereto copies of letters from Claimant to Debtor terminating the contract.

A 00755

**REQUEST NO. 8:**    All documents concerning Debtors' contention that Claimant seeks an "unenforceable penalty" in connection with its claims for minimum monthly commitment payments, as asserted in paragraph 16 of Debtors' Objection.

**RESPONSE:**    In response to request number 8, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that request number 8 requests documents that support a principal of law rather than fact. In further response to this request, Debtors state that Claimant knows the claim it is making and has a copy of the applicable contract.

**REQUEST NO. 9:**    All documents concerning Debtors' contention that "Claimant has calculated its alleged damages using an amount per commitment which is significantly higher than the amount the contract specifies should be used", as asserted in paragraph 17 of the Debtors' Objection.

**RESPONSE:**    In response to request number 9, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further respond that Claimant has a copy of the applicable contract and knows the amount it is claiming.

**REQUEST NO. 10:**    All documents concerning Debtors' contention that "the contract prohibits assignment", as asserted in paragraph 18 of the Debtors' Objection.

11

A 00756

**RESPONSE:**    In response to request number 10, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated. Debtors further respond that Claimant has a copy of the applicable contract.

**REQUEST NO. 11:** All documents concerning the General Agreement, including documents concerning the negotiation, drafting, and execution of the General Agreement and performance of Claimant and Debtors thereunder.

**RESPONSE:**    In response to request number 11, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that the request for documents concerning the "execution" of the agreement is vague and overbroad.  Debtors do not know what is intended by the phrase "concerning the execution" of the agreement.

Debtors further object that this request for all documents concerning the "performance" of Claimant and Debtors thereunder" is vague as it must be assumed to relate to something other than payment required under the contract (because that aspect of performance is covered by other requests) but Claimant has not specified what aspect of performance Claimant considers to be at issue. Debtors have, in response to other requests, agreed to produce, if and when located, copies of checks constituting payments under the General Agreement.

**REQUEST NO. 12:** All documents concerning the Memorandum of Understanding, including documents concerning the negotiation, drafting, and execution of the Memorandum of Understanding and performance of Claimant and Debtors thereunder.

A 00757

**RESPONSE:**    In response to request number 12, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that the request for documents concerning the "execution" of the agreement is vague and overbroad.  Debtors do not know what is intended by the phrase "concerning the execution" of the agreement.

Debtors further object that the request for documents relating to "performance" is overbroad as it does not specify what aspect, if any, of the performance of the MOU is at issue.

Subject to and without waiving these objections, Debtors will produce and have attached hereto a copy of the Memorandum of Understanding.

**REQUEST NO. 13:**  All documents concerning the Interim Agreement including documents concerning the negotiation, drafting, and execution of the Interim Agreement and performance of Claimant and Debtors thereunder.

**RESPONSE:**    In response to request number 13, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that the request for documents concerning the "execution" of the agreement is vague and ambiguous.  Debtors do not know what is intended by the phrase "concerning the execution" of the agreement.

Debtors further object that the request for documents relating to "performance" is overbroad as it does not specify what aspect, if any, of the performance of the Interim Agreement is at issue.

A 00758