# EXHIBIT T

A 00809

# KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

## IOI PARK AVENUE
### NEW YORK, NEW YORK 10178

(212) 808-7800

WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE
(212) 808-7897
www.kelleydrye.com

ROBERT S. FRIEDMAN
DIRECT LINE: (212) 808-7853
EMAIL: rfriedman@kelleydrye.com

June 6, 2005

**Via Overnight Delivery**

The Honorable Arthur J. Gonzalez
United States Bankruptcy Judge
Southern District of New York
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004

> Re:   In re WorldCom, Inc., Chapter 11 Case No. 02-13533
>        Claims of Parus Holdings, Inc.
>        Claim Nos. 9291,9293,11173, and 11242

Dear Judge Gonzalez:

Claimant, Parus Holdings, Inc. ("Parus") hereby requests an informal conference pursuant to Local Rule 7007-1(b) to consider a request to amend the current scheduling order. A copy of the current order is attached hereto as Exhibit A. Under the order, Parus is required to disclose expert witnesses and provide reports no later than June 20, 2005. The ability of Parus to disclose expert witnesses has been severely hindered by the failure of Debtors, Intermedia Communications, Inc. and MCI WorldCom Communications, Inc., to produce documents in this case. Only within the past week, on May 31, 2005, have Debtors provided to Parus a "proposal" for producing their documents. Under this proposal it will take weeks if not months for Parus to obtain Debtors documents. Given this time frame, there is no way that Parus can provide Debtors' documents to its experts, not to mention the testimony of Debtors' witnesses regarding those documents, before the current deadline of June 20, 2005.

Nevertheless, Debtors object to extending the deadline for Parus to disclose its experts' opinions. In a good faith effort to avoid bringing another dispute before this Court, Parus asked Debtors on multiple occasions to agree to extend the expert disclosure deadlines and other deadlines in this case. Refusing to even discuss any period of extension, and in spite of Debtors' failure to produce documents or to produce a single witness for deposition, Debtors

CH01/WOODS/197142.4

A 00810

**KELLEY DRYE & WARREN LLP**

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Two

have objected to any extension of the deadlines in this case. In essence, Debtors are insisting that Parus disclose expert opinions when fact discovery is barely underway.

### *Debtors' Production of Documents to Date*

Parus served a Request for Production of Documents on Debtors on February 8, 2005. To date, Debtors have produced only 732 pages of documents in this case, consisting of approximately 247 pages in their Rule 26 disclosures, received on or about January 25, 2005 and 485 pages in response to Parus' Request for Production of Documents, received on or about March 25, 2005. Combined, this is a 4 inch stack of documents. The bulk of these 700 odd pages consist of copies of contracts, other agreements, and communications already in the possession of both parties. To date, Debtors have failed to produce anything of substance.

Debtors even acknowledge they have yet to produce the overwhelming majority of their documents. In their written response to Parus' Request for Production of Documents, served on March 25, 2005, Debtors stated the following:

> Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.
>
> . . .
>
> The Stored Documents are poorly indexed.
>
> . . .
>
> Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

CH01/WOODS/197142.4

**KELLEY DRYE & WARREN LLP**

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Three


*See* Debtors' Responses to Claimant's First Request for Production of Documents, attached as
Exhibit B hereto.  In the foregoing Response, Debtors admitted that they have not even located
let alone reviewed or produced anything more than a fraction of their documents in this case.
The documents they have located are contained in "several locations" and are in "thousands of
boxes."

        Having heard nothing further on this issue from Debtors during the ensuing
weeks, Parus contacted counsel for Debtors on May 12, 2005  regarding discovery issues
including amending the schedule in light of Debtors' failure to produce documents.  On May 31,
2005, after conference calls between counsel for the parties on May 18th and May 31st, Debtors
finally sent to Parus a proposal for producing documents.  *See* May 31, 2005 letter from L. Bigus
to S. Wood attached as Exhibit C hereto.  This proposal reiterated the statements made in
Debtors' response to Parus' Request for Production of Documents, to wit, that Debtors had
located 10,000 boxes of documents in "multiple locations around the country."  That Debtors
proposal used the same language as their Response to Parus' Request for Production of
Documents, suggests that Debtors had done nothing to locate or produce documents beyond what
was done prior to the service of their written Response to Parus' Request for Production of
Documents.

        In the letter of May 31, 2005, Debtors proposed producing to Parus copies of
indexes that are "not very precise" to give Parus the chance to identify boxes it may wish to
review.  Debtors would then review those boxes for privilege and confidentiality after which
documents would be produced at a suitable location.  The process proposed by Debtors would
undeniably take several weeks or perhaps even months.[1]

        <u>*Debtors' Refusal to Agree to Amend the Schedule in Spite of Their Failure to*
*Produce Documents*</u>

        After the conference call on May 12, 2005 wherein Parus requested that under the
circumstances Debtors agree to amend the schedule, Debtors, in an E-mail dated May 17, 2005,
indicated they would not agree to extending the expert disclosure deadlines.  A telephone
conference was held between counsel for the parties on May 18, 2005 wherein Parus explained
the unfairness of requiring it to disclose experts when none of Debtors witnesses had been
deposed and its documents remained to be produced.  Nothing was resolved in this conference

---

[1] Not surprisingly, because Debtors' documents have not been produced, not a single fact witness deposition has
been taken in this case.  Deposition of Debtors' witnesses without Debtors' documents would likely be a substantial
if not complete waste of time.  Debtors failure to produce documents has prevented examination of Debtors'
witnesses regarding these documents.

KELLEY DRYE & WARREN LLP

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Four

call. In a subsequent E-mail, dated May 24, 2005, Debtors indicated they would object to any extension of the deadlines in the schedule.

In an effort to avoid bringing this matter before the Court, Parus requested, in a letter to Debtors' counsel dated May 25, 2005, that in light of the Debtors' acknowledged failure to produce the overwhelming bulk of their documents, that Debtors agree to extend the deadline for Parus to disclose experts in this case, as well as other deadlines. *See* May 25, 2005 Letter from S. Wood to L. Bigus attached as Exhibit D hereto. A telephone conference was held between counsel for Parus and counsel for Debtors on May 31, 2005 in an effort to reach agreement on extending the deadline for Parus to disclose experts. No resolution was reached.

On June 1, 2005, Debtors wrote to Parus' counsel formally stating that they would not agree to extending the June 20 deadline or any other deadlines, ostensibly because they now want to "get this case tried." *See* June 1, 2005 letter from L. Bigus to S. Wood attached as Exhibit E hereto. Strangely, in January of 2005, when the parties were negotiating a new scheduling order, necessitated by the fact that Parus had to retain new counsel due to a conflict involving its former counsel, Debtors objected to the June 20, 2005 deadline and all other deadlines proposed by Parus on the ground that it would not provide sufficient time to complete discovery. Now, in spite of their failure to produce documents, Debtors have changed their position, insisting on maintaining the current deadlines.

Debtors also contend in their letter of June 1, 2005 that Parus doesn't need its documents, or the testimony of its witnesses. Debtors have admitted that Intermedia breached a contract with EffectNet, and Parus, successor-by-merger to EffectNet, has incurred damages. The measure of contract damages is a likely subject of expert testimony. The contract at issue contained a minimum guaranteed payment provision which Parus contends serves as a floor on the measure of contract damages. The full measure of contract damages will likely depend upon evidence regarding negotiations between the parties and expectations regarding performance of the contract, i.e., the expectation of Debtors regarding the size of the market for the Intermedia unified communications product and projected sales. The Debtors' documents and the testimony of their witnesses regarding the subjects of marketing of the unified communications product, sales training, and market projections would therefore be necessary for Parus' experts to form their opinions as to the full measure of damages in this case.

In addition, Parus is claiming that the Debtors engaged in tortious conduct that had a devastating impact on the business of EffectNet and its merger partner, Webley Systems. For example, Parus executives were aware that Debtors were developing a unified communications product that competed with the EffectNet product sold to Intermedia. Parus believes that Debtors conspired to put EffectNet and Webley out of business to eliminate competition. Parus will need experts, most likely with industry expertise, to review Debtors'

**KELLEY DRYE & WARREN LLP**

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Five

documents and the testimony of their witnesses regarding Debtors' targeted markets, marketing strategy, and business plans for unified communications to reach conclusions about liability for these tortious claims as well as damages. Debtors' market assessments and business plans regarding the unified communications product are clearly relevant to the opinions of Parus' expert witnesses.

Despite Parus' efforts to engage Debtors in a discussion regarding these issues, Debtors have rejected out of hand Parus' request to agree to extend the deadline for disclosing experts. Debtors are insisting, unreasonably, that Parus disclose its experts when fact discovery is barely underway. The clear inference from this course of events is that Debtors are unfairly attempting to undermine Parus' case by denying its experts access to Debtors' documents thereby denying Parus a hearing on the merits in this matter.

In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. Because the parties will be before the Court on June 14, 2005 at 10:00 a.m. regarding a motion brought by Parus and because its deadline to disclose experts is imminent, Parus requests that this court conduct an informal conference with the parties on this issue at that time.[2]

Respectfully submitted,

KELLEY DRYE & WARREN LLP

By: _____
Robert S. Friedman

101 Park Avenue
New York, New York  10178
(212) 808-7800
*Attorneys for Parus Holdings, Inc., successor by merger to EffectNet, Inc. and EffectNet, LLC*

---

[2] During the conference call of May 31, 2005, counsel for Parus informed Debtors' counsel that if Debtors would not agree to amend the schedule, Parus would request an informal conference with the Court on this issue to coincide with the hearing on June 14, 2005. Debtors' counsel indicated that, not only would he likely object to amending the schedule, he would also object to the matter being heard informally at that time. Such an objection is a further indication of the unreasonableness of Debtors' position.

CH01/WOODS/197142.4

**A 00814**

KELLEY DRYE & WARREN LLP

The Honorable Arthur J. Gonzalez
June 6, 2005
Page Six


cc:   Lawrence W. Bigus, Esq.
      Stinson Morrison Hecker LLP
      9200 Indian Creek Parkway, Suite 450
      Overland Park, Kansas  66210
      *Attorneys for Debtors*
      (Via Overnight Delivery)

A 00815



EXHIBIT A

A 00816

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
Attorneys for Parus Holdings, Inc.,
Successor to EffectNet, Inc.

              and

STINSON MORRISON HECKER LLP
Lawrence W. Bigus, Esq.
Sharon L. Stolte, Esq.
Mark A. Shaiken, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-In-Possession


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>WORLDCOM, INC., et al.,<br><br>                              Debtors. | CHAPTER 11 CASE<br>NO. 02-13533 (AJG)<br>(Jointly Administered) |

## AMENDED SCHEDULING ORDER

Pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure, the

following amended scheduling order shall govern with respect to discovery in this contested

matter and/or adversary proceeding regarding Claim Nos. 9291, 9293, 11173 and 11242 filed by

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC ("Claimant").

1. The Parties shall exchange, no later than January 26, 2005, those documents
referred to in their initial disclosure statements pursuant to Rule 26(a)(1), Fed. R.
Civ. P., incorporated into bankruptcy proceedings pursuant to Rule 7026, Federal
Rules of Bankruptcy Procedure;

2. The Parties shall complete fact and expert discovery no later than September 15,
2005;

3.  The Parties shall file amendments, if any, to the Claims, the Claims objection, and/or the response to the Claims objection no later than May 15, 2005. If an amended pleading is filed to which there is normally a responsive pleading, the other party shall have thirty (30) days to file an amended responsive pleading;

4.  Claimant shall disclose the identity of its expert witness(es), if any, and provide his/her expert report(s) no later than June 20, 2005;

5.  Debtors shall disclose the identity of their expert witness(es), if any, and provide his/her expert reports(s) no later than August 8, 2005;

6.  The deadline for filing dispositive motions, if any, is October 15, 2005;

7.  The pre-trial conference shall be set by the court at a time after filing dispositive motions.

8.  The parties reserve all rights to, either individually or jointly, seek to amend all deadlines set forth in the stipulation.

Dated: New York, New York.
        January 21, 2005

STINSON MORRISON HECKER LLP          KELLEY DRYE & WARREN LLP

/s/ Lawrence W. Bigus                 By: /s/ Robert L. LeHane
Lawrence W. Bigus, Esq.                   Stephen A. Wood (SW 6270)
Sharon L. Stolte, Esq.                    Robert S. Friedman (RF 1538)
Mark A. Shaiken, Esq.                     Robert L. LeHane (RL 9422)

9200 Indian Creek Pkwy., Ste. 450    101 Park Avenue
Overland Park, KS 66210              New York, New York 10178
Telephone: (913) 344-8009           Telephone: (212) 808-7800
Facsimile: (913) 451-6352           Facsimile: (212) 808-7897

*Attorney for Debtors and*           *Attorneys for Parus Holdings, Inc., successor to*
*Debtors-in-Possession*              *EffectNet, Inc.*

                                     SO ORDERED:

                                       s/ Arthur J. Gonzalez      1/24/05
                                     Hon. Arthur J. Gonzalez
                                     United States Bankruptcy Court

2

A 00818

# EXHIBIT B

A 00819

**STINSON MORRISON HECKER LLP**
Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | : CHAPTER 11 CASE |
| | : NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : (Jointly Administered) |
| Debtors. | : |
| | : |

## DEBTORS' RESPONSES TO CLAIMANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

### GENERAL OBJECTIONS

1.     Debtors object to all requests to the extent that they seek information protected from disclosure by the attorney-client privilege or the attorney work product doctrine, or which is otherwise immune from discovery.  Inadvertent identification or production of any such information shall not constitute a waiver by the Debtors of any applicable privilege.

2.     Debtors object to all requests to the extent that they seek to require the Debtors to produce documents containing private and confidential, proprietary, or otherwise sensitive information.  Without waiving this objection, the Debtors will agree to produce such documents subject to a proper Protective Order to protect the confidentiality of the material produced.

3.     Debtors object to all requests to the extent the requests ask for production from entities or persons against which no claim has been made in this litigation.  Claimant has, for example, addressed the request to MCI WorldCom Network Services, Inc. which is not a party to

A 00820

this claim. This response is on behalf of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. None of the other parties to whom this request is directed are a party to this adversary proceeding and therefore this request does not reach any of the other parties to whom it is directed. This objection is based on jurisdictional grounds and on the terms and limitations of applicable federal rules of civil procedure.

4.      Debtors object that the term "concerning" is as broad a term as could possibly be used in a request for production. Almost anything and everything somehow could be deemed to be "concerning." For example, if the term "concerning" is taken literally then every piece of correspondence, every contract draft, every invoice, every sales record, every payment that was made, and many other documents could somehow "concern" Debtors' objection to payment of a claim. This puts the responding party in the position of producing every document in its possession to make sure that nothing is missed or making a judgment call as to what should be produced and what "concerns" the topic specified. What meets the term "concerning" will be different for one attorney than another attorney. Therefore, if counsel for responding party attempts to make such a determination the decision will be subject to second-guessing and puts the responding party in a precarious position. Rule 34 specifically provides that a party may request to see "designated documents". The reason for this provision in the Rule is so that the responding party knows what to produce. Asking for all documents "concerning" a topic is not asking for designated documents. The use of this broad term in every request indicates Claimant is not attempting to designate documents to produce but are simply engaging in a broad ranging hunt for documents generally. Therefore, Debtors object to any and all requests seeking production of "documents concerning" on the grounds that the request are overly broad, do not comply with the requirements of applicable rules, result in Debtors' not being able to determine

2

exactly what the propounding party is seeking to have produced, and create an unreasonable and oppressive burden. All responses are subject to this objection.

    5.      Debtors object to Claimant's request that documents be produced within thirty (30) days. Applicable rules require that Debtors respond within thirty days but do not require that the documents be produced within that same time. Subject to and without waiving that objection, Debtors have attached with this response non-privileged responsive documents specified below. In the event Claimant wishes to view the originals of such documents, Debtors will, where originals are available, make such originals available for inspection and copying at a mutually agreed upon time and place.

    6.      Each of the following responses incorporates these General Objections, whether or not specifically referenced in the responses. The responses below are provided without waiver of any of the objections stated herein.

## OBJECTIONS TO DEFINITIONS

    1.      Debtors object to the definition of "Claimant" in paragraph 2 of the definitions because it includes entities and persons that are, in fact, not making a claim, it is otherwise overly broad and it is, in part, vague and ambiguous. First, Debtors object that Webley Systems, Inc. does not now exist as an entity and no claim has been made for any damages to Webley Systems, Inc. before its merger with Claimant. Debtors further object that including all "officers, directors, employees, agents, contractors, accountants, advisors, attorneys, and representatives" as Claimant makes the definition of "Claimant" overbroad. Debtors also object to including as Claimant "any other person acting or purporting to act on their behalf," apparently intending to include as "Claimant" all persons who act or purport to act on behalf of the listed corporations and all persons who act or purport to act on behalf of their officers, directors, employees, agents, contractors, accountant, advisors, attorneys and representatives. Again the definition makes all

3

A 00822

requests for production overbroad. Finally, the phrase "purporting to act on its behalf" is vague and ambiguous.

For purposes of its responses to Claimant's First Request for Production of Documents, Debtors will treat the term "Claimant" to mean EffectNet, Inc. (the Claimant in both Claim No. 9293 amended by Claim No. 11173 and in Claim No. 9291 amended by Claim No. 11242) and Parus Holdings, Inc. the successor by merger to EffectNet, Inc.

2. Debtors object to Claimant's definition of "Date," "Time," "Period," and "Amount" in paragraph number 7 because the term "approximate" is vague. This is particularly true where, as here, dates in Claimant's requests are months, not specific days. Claimant has, for example, limited two of its Requests to documents relating to a specific month. Request number 14 is for documents concerning an alleged notice in September 2001 and request number 15 is for documents concerning an alleged notice given in March 2002. In both cases, Debtors' responses will be limited to the specified months. Debtors will also otherwise limit their responses to the date, time, period, and amount specified in Claimant's requests.

3. Debtors object to the Claimant's definition of "Draft" on the ground that it requests documents protected by the attorney client and/or work product privileges. Debtors specifically object that drafts of contracts or other documents prepared by an attorney and not generally circulated or disclosed to third parties are privileged documents.

4. Debtors object to the Claimant's definition of "Debtor" in paragraph 9 of its definitions because it includes entities against which Claimant has made no claim. To the extent Claimant intends by its definition of Debtor in paragraph 9 of its Definitions to request production of documents from not only Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. but also each of its affiliate or subsidiary companies, Debtors object that

4

A 00823

the definition makes each and every request for production overbroad and unduly burdensome.
Debtors have over 200 direct and indirect domestic subsidiaries and 200 foreign subsidiaries.
Claimant has filed claims against only Intermedia Communications, Inc. (Claim No. 9293
amended by Claim No. 11173) and against MCI WorldCom Communications, Inc. (Claim No.
9291 amended by Claim No. 11242). The court does not have jurisdiction over entities Claimant
proposes to include in the definition of "Debtors." This request for production is not a proper
means of seeking or obtaining discovery from third parties. Debtors' responses will, therefore
be limited to documents in the custody or control of Intermedia Communications, Inc. and MCI
WorldCom Communications, Inc.

Debtors also object to Claimant's definition of Debtor to the extent Claimant intended by
its definition of Debtors in paragraph 9 to request documents from all persons acting or
purporting to act on Debtors' behalf (which would include all persons acting or purporting to act
on behalf of Debtors' affiliate or subsidiary companies). By this definition Claimant requests
documents from entities or persons over which Debtors have no control. Debtors again object
that the definition of "Claimant" makes all requests overbroad and unduly burdensome. In
addition, Debtors object that the definition calls for documents protected by the attorney client
and work product privileges. Finally the phrase "or purporting to act on behalf of" is vague and
ambiguous.

Debtors will respond to Claimant's requests with documents in the custody or control of
Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. including
documents in the custody and control of employees of those two corporations over which
Debtors have control.

5

A 00824

5.     Debtors object to the definitions in paragraphs 11, 12, and 13 and 17 on the ground that by virtue of the definitions certain of the requests are for documents protected by the attorney client and/or work product privileges.  Debtors specifically object that drafts of contracts or other documents prepared by an attorney and not generally circulated or disclosed to third parties are privileged documents.

6.     Debtors object to the definition of "Jim Renforth" in paragraph 15 on the grounds that his title was Senior Services Manager – Local Services.

7.     Debtors object to the definition of "Unified Communications" in definition number 19 on the grounds that the definition is overbroad and is vague and ambiguous.  Debtors do not know what Claimant intends by this definition but the definition begins by defining Unified Communications as "all forms of call . . . controlled by an individual user for both business and social purposes."  Whatever is intended, this definition is too broad.  Debtors also object that the phrases "multimedia/cross-media message-management functions," "enterprise informational or transactional," "emulates a human user," "content-independent," and "contact access" are all vague and ambiguous.

8.     Each of Debtors' responses to Claimant's requests incorporates these objections whether or not specifically mentioned in the specific response.

## OBJECTIONS TO INSTRUCTIONS

As to Claimant's Instructions, Debtors' will, where response is appropriate, respond in a matter consistent with and as required by  Federal Rules of Civil Procedure and any applicable local rules.  To the extent Claimant purports to impose by its Instructions any additional or other obligation, Debtors object that it is not required to comply with Claimant's Instructions.

6

A 00825

## CONTINUING EFFORT TO LOCATE DOCUMENTS

Intermedia is no longer actively engaged in business. Most of the Intermedia documents have been boxed up and sent to storage ("Stored Documents"). Debtors have aggressively undertaken an investigation to locate the Intermedia documents including the Stored Documents and those documents that were still in the possession of current employees. The Intermedia documents are referred to herein as "Intermedia Documents".

Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.

In response to this Request for Production Debtors have indicated that certain documents will be produced ("Responsive Documents"). To the extent that Located and Reviewed Documents are also Responsive Documents they are attached hereto.

The Stored Documents located to date are poorly indexed. As it relates to the Claims at issue the Stored Documents contained in these thousands of boxes can be described as follows: 1) Documents which have no relevancy to the Claims at issue, which Claimant has not requested and which Debtors have no desire to review in connection with the Claims at issue ("Irrelevant Documents"); 2) Documents which Debtors would like to review in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents").

7

A 00826

Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

## RESPONSES TO REQUESTS FOR DOCUMENTS

**REQUEST NO. 1:** All documents concerning Debtors' objections to payment with respect to Claim No. 9291.

**RESPONSE:** In response to request number 1, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.

**REQUEST NO. 2:** All documents concerning Debtors' objections to payment with respect to Claim No. 9293.

**RESPONSE:** In response to request number 2, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.

8

A 00827

**REQUEST NO. 3:**   All documents concerning Debtors' objections to payment with respect to Claim No. 11173.

**RESPONSE:**   In response to request number 3, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.

**REQUEST NO. 4:**   All documents concerning Debtors' objections to payment with respect to Claim No. 11242.

**RESPONSE:**   In response to request number 4, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully restated.

**REQUEST NO. 5:**   All documents concerning Debtors' objection to Claimant's Claim Nos. 9291, 9293, 11173 and 11242 on the ground that Claimant is not entitled to double recovery, as asserted in paragraph 14 of Debtors' Objection.

**RESPONSE:**   In response to request number 5, Debtors incorporate all General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated. Debtors further object to request number 5 on the grounds that Claimant is asking Debtors to produce documents to support a point of law, namely that Claimant is not legally entitled to double recovery.

**REQUEST NO. 6:**   All documents concerning Debtors' alleged payment to Claimant in connection with Claim Nos. 9291, 9293, 11173 and 11242, as asserted in paragraph 19 of Debtors' Objection.

9

A 00828

**RESPONSE:**    In response to request number 6, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving the foregoing objections, Debtors will respond to request number six as though it requested checks, drafts or evidence of wire transfers constituting payment to Claimant under the Unified Communications Services General Agreement between EffectNet, Inc. and Intermedia Communications, Inc. In response to the request so modified, Debtors will produce copies of checks sent to EffectNet, Inc. as payment under the Unified Communications Services General Agreement between EffectNet, Inc. and Intermedia Communications, Inc. Debtors have not yet located these documents. See above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 7:**    All documents concerning Debtors' contention that "Claimant terminated the contract upon which it based its claims" as asserted in paragraph 15 of Debtors' Objection.

**RESPONSE:**    In response to request number 7, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving those objections, Debtors will respond to request number 7 as though it requested documents that constitute Claimant's termination of the contract. In response to the request so stated, Debtors will produce and have attached hereto copies of letters from Claimant to Debtor terminating the contract.

A 00829

**REQUEST NO. 8:**     All documents concerning Debtors' contention that Claimant seeks an "unenforceable penalty" in connection with its claims for minimum monthly commitment payments, as asserted in paragraph 16 of Debtors' Objection.

**RESPONSE:**     In response to request number 8, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that request number 8 requests documents that support a principal of law rather than fact.  In further response to this request, Debtors state that Claimant knows the claim it is making and has a copy of the applicable contract.

**REQUEST NO. 9:**     All documents concerning Debtors' contention that "Claimant has calculated its alleged damages using an amount per commitment which is significantly higher than the amount the contract specifies should be used", as asserted in paragraph 17 of the Debtors' Objection.

**RESPONSE:**     In response to request number 9, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further respond that Claimant has a copy of the applicable contract and knows the amount it is claiming.

**REQUEST NO. 10:**  All documents concerning Debtors' contention that "the contract prohibits assignment", as asserted in paragraph 18 of the Debtors' Objection.

A 00830

**RESPONSE:**     In response to request number 10, Debtors incorporate all of Debtors'
General Objections, Objections to Definitions, and Objections to Instructions as if fully here
restated. Debtors further respond that Claimant has a copy of the applicable contract.

**REQUEST NO. 11:** All documents concerning the General Agreement, including
documents concerning the negotiation, drafting, and execution of the General Agreement and
performance of Claimant and Debtors thereunder.

**RESPONSE:**     In response to request number 11, Debtors incorporate all of Debtors'
General Objections, Objections to Definitions, and Objections to Instructions as if fully here
restated.

Debtors further object that the request for documents concerning the "execution" of the
agreement is vague and overbroad. Debtors do not know what is intended by the phrase
"concerning the execution" of the agreement.

Debtors further object that this request for all documents concerning the "performance"
of Claimant and Debtors thereunder" is vague as it must be assumed to relate to something other
than payment required under the contract (because that aspect of performance is covered by other
requests) but Claimant has not specified what aspect of performance Claimant considers to be at
issue. Debtors have, in response to other requests, agreed to produce, if and when located, copies
of checks constituting payments under the General Agreement.

**REQUEST NO. 12:** All documents concerning the Memorandum of Understanding,
including documents concerning the negotiation, drafting, and execution of the Memorandum of
Understanding and performance of Claimant and Debtors thereunder.

12

A 00831

**RESPONSE:**     In response to request number 12, Debtors incorporate all of Debtors'
General Objections, Objections to Definitions, and Objections to Instructions as if fully here
restated.

Debtors further object that the request for documents concerning the "execution" of the
agreement is vague and overbroad.  Debtors do not know what is intended by the phrase
"concerning the execution" of the agreement.

Debtors further object that the request for documents relating to "performance" is
overbroad as it does not specify what aspect, if any, of the performance of the MOU is at issue.

Subject to and without waiving these objections, Debtors will produce and have attached
hereto a copy of the Memorandum of Understanding.


**REQUEST NO. 13:** All documents concerning the Interim Agreement including
documents concerning the negotiation, drafting, and execution of the Interim Agreement and
performance of Claimant and Debtors thereunder.

**RESPONSE:**     In response to request number 13, Debtors incorporate all of Debtors'
General Objections, Objections to Definitions, and Objections to Instructions as if fully here
restated.

Debtors further object that the request for documents concerning the "execution" of the
agreement is vague and ambiguous.  Debtors do not know what is intended by the phrase
"concerning the execution" of the agreement.

Debtors further object that the request for documents relating to "performance" is
overbroad as it does not specify what aspect, if any, of the performance of the Interim Agreement
is at issue.

A 00832

Subject to and without waiving these objections, Debtors will produce and have attached hereto a copy of the Interim Agreement.

**REQUEST NO. 14:** All documents concerning Debtors' decision to give notice in September 2001 to cancel accounts created pursuant to the General Agreement.

**RESPONSE:**    In response to request number 14, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 14 as though it requests documents constituting notice given in September 2001 to cancel accounts activated pursuant to the General Agreement. At this time Debtors have not located documents that would be responsive to this request as so restated. See above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 15:** All documents concerning Debtors' decision to give notice in March 2002 to cancel accounts created pursuant to the General Agreement.

**RESPONSE:**    In response to request number 15, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 15 as though it requests documents constituting notice given in March 2002 to cancel accounts created pursuant to the General Agreement. In response to the request so restated, Debtors are producing herewith copies of Responsive Documents that it has Located and Reviewed. There

14

A 00833

are no such documents which are not privileged. See also above under heading CONTINUING
EFFORT TO LOCATE DOCUMENTS.


**REQUEST NO. 16:** All documents concerning communications between Debtors and
Claimant regarding the General Agreement.

**RESPONSE:**      In response to request number 16, Debtors incorporate all of Debtors'
General Objections, Objections to Definitions, and Objections to Instructions as if fully here
restated.

Subject to and without waiving its objections, Debtors will respond to request number 16
as though it requested documents constituting communications between Debtors (defined as
Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.) and Claimant
(defined as Effect Net, Inc. and Parus Holdings, Inc.) concerning the General Agreement. In
response to the request so restated, Debtors agree to produce Responsive Documents.
Documents that have been Located and Reviewed are attached. See also above under heading
CONTINUING EFFORT TO LOCATE DOCUMENTS.


**REQUEST NO. 17:** All documents concerning Debtors' payments to Claimant under
the General Agreement.

**RESPONSE:**      In response to request number 17, Debtors incorporate all of Debtors'
General Objections, Objections to Definitions, and Objections to Instructions as if fully here
restated.

Subject to and without waiving the foregoing objections, Debtors will respond to request
number 17 as though it requested checks, drafts or evidence of wire transfers constituting

15

A 00834

payment to Claimant under the Unified Communications Services General Agreement between EffectNet, Inc. and Intermedia Communications, Inc. In response to the request so modified, Debtors will produce copies of checks sent to EffectNet, Inc. as payment under Unified Communications Services General Agreement between EffectNet, Inc. and Intermedia Communications, Inc. Debtors have not yet located these documents. See above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 18:** All documents concerning Debtors' communications among each other regarding the General Agreement.

**RESPONSE:** In response to request number 18, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 18 as though it were a request for non-privileged documents constituting communication among Intermedia Communications, Inc., MCI WorldCom Communications, Inc. and any of their affiliates regarding the General Agreement. Provided, however, to the extent this request is intended to request that Debtors search the records in the possession of their affiliates, Debtors object that the request is burdensome and further object that it is asking for records not in Debtors' custody or control. In response to request number 18 as so restated, Debtors will produce documents in the possession of Intermedia Communications, Inc. or MCI WorldCom Communications, Inc., if any, constituting non-privileged communications among Intermedia Communications, Inc., MCI WorldCom Communications, Inc, or any of their affiliates, regarding the General Agreement. Located and Reviewed documents that are responsive to the

16

A 00835

request as so restated are forwarded to Claimant with this response. See above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 19:** All documents concerning Debtors' communications among each other regarding the cancellation of accounts created pursuant to the General Agreement.

**RESPONSE:**     In response to request number 19, Debtors incorporate all of Debtor's General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving it objections, Debtors will respond to request number 19 as though it were a request for non-privileged documents constituting communication among Intermedia Communications, Inc., MCI WorldCom Communications, Inc. and any of their affiliates regarding the General Agreement. Provided, however, to the extent this request is intended to request that Debtors search the records in the possession of their affiliates, Debtors object that the request is burdensome and further object that it is asking for records not in Debtors' custody or control. In response to request number 19 as so restated, Debtors will produce documents in the possession of Intermedia Communications, Inc. or MCI WorldCom Communications, Inc., if any, constituting non-privileged communications among Intermedia Communications, Inc., MCI WorldCom Communications, Inc, or any of their affiliates, regarding the General Agreement.

This request is a sub-part of what is requested in request 18 and any documents responsive to this request would also be responsive to request 18. There are no documents responsive to this request as so restated. See above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

17

A 00836

**REQUEST NO. 20:** All documents concerning Claimant, including Claimant's finances, Claimant's business, Claimant's technology, or Claimant's products.

**RESPONSE:**    In response to request number 20, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that the request for all documents concerning Claimant's business, Claimant's technology and Claimant's products is overbroad as not all of Claimant's business, technology or products are at issue in this litigation.

Subject to and without waiving its objections, Debtors will respond to request number 20 as though it requested all non-privileged documents, if any, that discuss or mention Claimant's finances and all documents, if any, that discuss or mention the product or technology that Claimant provided under the General Agreement. Located and Reviewed Documents that are responsive to this request as so restated are attached with this response. See above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 21:** All documents concerning Debtors' evaluation or analysis of Claimant, including Claimant's finances, Claimant's business, Claimant's technology, or Claimant's products.

**RESPONSE:**    In response to request number 21, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

18

A 00837

Debtors further object that the request for all documents concerning Claimant's business, Claimant's technology and Claimant's products is overbroad as not all of Claimant's business, technology or products are at issue in this litigation.

Subject to and without waiving these objections, Debtors will respond to request number 21 as though it requested non-privileged documents that constitute evaluation or analysis of Claimant's finances and/or that constitute evaluation or analysis of the products or technology that Claimant provided Intermedia Communications, Inc. under the General Agreement. Documents responsive to this request as so restated are attached hereto.  See above under heading CONTINUING EFFORT TO LOCATE RESPONSIVE DOCUMENTS.

**REQUEST NO. 22:**  All documents concerning the Master License Agreement, including documents concerning the negotiation, drafting, and execution of the Master License Agreement and performance of Claimant and Debtors thereunder.

**RESPONSE:**  In response to request number 22 Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object to request number 22 on the grounds that it requests documents protected by the attorney client privilege.  Specifically, Debtors state that drafts of the Master License Agreement prepared by Debtors' attorney and communication to and from Debtors' attorney not generally circulated or distributed to third parties are protected by the attorney client privilege.

A 00838

Debtors further object that the request for documents concerning "execution" of the Master Licensing Agreement is vague and ambiguous. Debtors do not know what is meant by the request for documents "concerning" the "execution" of the Master Licensing Agreement.

Subject to and without waiving its objections, Debtors will produce and have attached to these responses a copy of the Master Licensing Agreement.

**REQUEST NO. 23:** All documents concerning communications between Debtors and Claimant regarding the Master License Agreement.

**RESPONSE:** In response to request number 23, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 23 as though it requested non-privileged documents constituting communications between Debtors (defined as Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.) and Claimant (defined as Effect Net, Inc. and Parus Holdings, Inc.) regarding the Master Service Licensing Agreement. Located and Reviewed non-privileged documents that are responsive to this request as so restated are produced with this response. Debtors are also continuing to search for documents responsive to this request.

**REQUEST NO. 24:** All documents concerning communications between Debtors and Claimant from September 1, 2000 to the present regarding the products and services offered by Claimant to Debtors under the Master License Agreement.

20

A 00839

**RESPONSE:**    In response to request number 24, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 24 as though it requested non-privileged documents constituting communications between Debtors (defined as Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.) and Claimant (defined as Effect Net, Inc. and Parus Holdings, Inc.) regarding the Master Service Licensing Agreement. Located and Reviewed non-privileged documents that are responsive to this request as so restated are produced in response to request 23. Debtors are also continuing to search for documents responsive to this request.

**REQUEST NO. 25:** All documents concerning the price(s) to be paid for licenses to be obtained from Claimant under the Master License Agreement.

**RESPONSE:**    In response to request number 25, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving its objections, Debtors will respond to request number 25 as though it requested non-privileged documents setting forth the prices to be paid or which discuss the prices to be paid Claimant under the Master License Agreement. Claimant already has the Master License Agreement. Located and Reviewed non-privileged documents that are responsive to this request as so restated are produced in response to request 23. Debtors are also continuing to search for documents responsive to this request.

21

A 00840

**REQUEST NO. 26:**  All documents concerning Debtors' payments to Claimant pursuant to the Master License Agreement.

**RESPONSE:**    In response to request number 26, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving these objections, Debtors will respond to this request as though it requested checks, drafts, and/or evidence of wire transfers constituting payment to Claimant pursuant to the Master Licensing Agreement.  In response to the request so restated, Debtors will produce copies of checks constituting payment to Claimant pursuant to the Master Licensing Agreement.  Debtors have not yet located but are continuing to search for documents that are responsive to this request as so restated.

**REQUEST NO. 27:**  All documents concerning Debtors' communications among each other regarding the Master License Agreement.

**RESPONSE:**    In response to request number 27, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Subject to and without waiving these objections Debtors will respond to this request as though it requested documents constituting communication among Intermedia Communications, Inc., MCI WorldCom Communications, Inc. and their affiliates regarding the Master License Agreement.  Provided, however, to the extent this request is intended to request that Debtors search the records in the possession of their affiliates, Debtors object that the request is burdensome and further object that it is asking for records not in Debtors' custody or control.  In

22

A 00841

response to request number 27 as so restated, Debtors will produce documents in the possession of Intermedia Communications, Inc. or MCI WorldCom Communications, Inc., if any, constituting non-privileged communications among Intermedia Communications, Inc., MCI WorldCom Communications, Inc, or any of their affiliates, regarding the Master Licensing Agreement. Non privileged Located and Reviewed Documents that are responsive to the request as so restated are attached hereto. See also above under heading CONTINUING EFFORT TO LOCATE DOCUMENTS.

**REQUEST NO. 28:** All documents concerning Jim Renforth's ceasing employment with Debtors in 2001.

**RESPONSE:** In response to request number 28, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object to request number 28 on the grounds that it calls for the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence.

**REQUEST NO. 29:** All documents concerning Jimmy Faust's ceasing employment with Debtors.

**RESPONSE:** In response to request number 29, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object to request number 29 on the grounds that it calls for the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence.

23

A 00842

**REQUEST NO. 30:** All documents concerning Intermedia Communications, Inc.'s product suite "IntermediaOne".

**RESPONSE:**    In response to request number 30, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 31:** All documents concerning the launch of Intermedia Communications, Inc.'s "IntermediaOne".

**RESPONSE:**    In response to request number 31, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 32:** All documents concerning Debtors' communications among each other regarding Intermedia Communications, Inc.'s "IntermediaOne".

**RESPONSE:**    In response to request number 32, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

24

A 00843

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 33:** All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to Claimant, Claimant's finances, Claimant's business, Claimant's technology, Claimant's products, Intermedia Communications, Inc.'s "IntermediaOne", or Unified Communications.

**RESPONSE:**      In response to request number 33, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.  Debtors further object to request number 33 on the grounds that it is otherwise overly broad, is burdensome and calls for the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence.

**REQUEST NO. 34:** All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to the development, obtaining, marketing or launching of a Unified Communications product or service.

**RESPONSE:**      In response to request number 34, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that request number 34 is overbroad because it is not limited as to time.

25

A 00844

Debtors further object that request number 34 is otherwise overbroad, is burdensome and calls for the production of documents not relevant or likely to lead to the discovery of admissible evidence.

**REQUEST NO. 35:** All documents concerning Debtors' efforts to develop, obtain, market, or launch Unified Communications product or service for their use or for sale to customers.

**RESPONSE:** In response to request number 35, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that this request is overbroad in that in that it is not limited as to time.

Debtors further object that this request is otherwise overbroad, is burdensome and calls for the production of documents not relevant or likely to lead to the discovery of admissible evidence.

Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas 66210
Telephone: (913) 451-8600
Facsimile: (913) 451-6352
*Attorneys for Debtors and Debtors-in-Possession*

A 00845

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th day of March, 2005, Debtors' Responses to Claimant's First Request for Production of Documents (Claim Nos. 9291, 9293, 11173 and 11242 filed by Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC) pursuant to Fed. R. P. 7026(a)(1) were placed in the U.S. mail, postage prepaid, addressed to:

Stephen A. Wood
Robert S. Friedman
Robert L. LeHane
Kevin J. Smith
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
*Attorneys for Parus Holdings, Inc.,*
*Successor-by-Merger to EffectNet, Inc.*

Lawrence W. Bigus, Esq.

27

CWDDOCS 144022v5

A 00846

# EXHIBIT C

A 00847



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

May 31, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606

      Re:    In re World Com - Chapter 11
             Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Stephen:

As you are aware, Intermedia and MCI have been working diligently to locate documents responsive to your Request for Production and/or which are relevant to the pending adversary case.  In our responses to certain of you requests for production of documents, we agreed to produce responsive documents, subject to objections as stated, and advised you that that we are continuing to search for additional documents that might be responsive.  As previously indicated, the search has been complicated by the fact that Intermedia no longer exists as a separate entity, offices have been moved to different states and certain of the people involved no longer work for MCI.

1.     Located Documents:

We have located boxes of documents in multiple locations around the country, some of which are independent storage facilities, that could possibly include responsive documents.  Our client has advised that there are in excess of 10,000 boxes of documents.  Our office has not reviewed or examined any of these additional documents.

2.     Imprecise Indexes:

Unfortunately, the indexes for these documents are not very precise.  We have searched the indexes but have not been able to satisfy ourselves that we can determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for your review. This is in part because of the imprecise descriptions in the indexes and, in part, because of the very broad nature of your alleged tort claims.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**A 00848**

Stephen A. Wood
May 31, 2005
Page 2

3.   Proposed Procedures:

After considering several means of producing the responsive non-privileged documents, we would like to propose what we consider to be the most efficient means. We are open to proposals from you concerning other possible means of efficiently producing the large number of documents that have been located. Intermedia/MCI proposes to produce the documents pursuant to the procedures and limitations contained in Exhibit A attached hereto.

4.   Objections Not Waived:

Intermedia and MCI will not, by following the attached procedures, have waived any of the objections previously made to the written discovery.

5.   Production Supplements Interrogatory Answers:

Any production of documents pursuant to these procedures will be both a supplemental production responsive to your Request for Production of Documents and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing appropriate further response to your written discovery and for producing any documents which might have any relevancy to this adversary proceeding. Please advise whether you would agree to this procedure and the stated limitations. If so, we will immediately forward the indexes for your review. The procedure is, of course, open for discussion. If there are alternatives that you would like to discuss please advise of that as well.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

Enclosure

6590719.2

A 00849

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

### PROPOSED PRODUCTION PROCEDURES

1.     Intermedia/MCI will provide claimants with a complete set of the indexes for the documents.

2.     Claimants will review the indexes and identify those specific boxes it wishes to review.

3.     Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.   In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.     Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

    a.     Those documents identified as privileged.

    b.     Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

    c.     Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

6590719.2

A 00850

# EXHIBIT D

A 00851

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

NEW YORK, NY

WASHINGTON, DC

TYBONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

(312) 857-7070

FACSIMILE
(312) 857-7095
www.kelleydrye.com

DIRECT LINE: (312) 857-2311
EMAIL: swood@kelleydrye.com

May 25, 2005

**VIA FACSIMILE**

Lawrence W. Bigus
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008

      Re:    <u>Parus Holdings/WorldCom</u>; Amended Scheduling Order

Dear Mr. Bigus:

      I received an email from Don Ramsay of your firm on May 17, 2005 regarding amending the scheduling order where Mr. Ramsay indicated "I am informed we cannot agree to extensions of the deadlines set for designation of experts etc." I spoke with Mr. Ramsay on May 18th by telephone regarding this issue.

      I pointed out to Mr. Ramsay we had yet to receive the bulk of your document production and, accordingly, were unable to take depositions of WorldCom fact witnesses. In light of this, I asked Mr. Ramsay whether WorldCom was intending to object to or actively oppose our request to amend the scheduling order. He indicated that he was not exactly sure and would get back to me. Yesterday I received another email from him indicating that you would object to extending the deadlines. Mr. Ramsay offered no explanation of the basis for your objection. One deadline, for filing amendments, has already passed. Another deadline, for Parus to disclose experts, is set for June 20, 2005.

      I would like to make the following points in an effort to avoid taking a dispute regarding this issue to the court. We served a request for production of documents on you on February 8, 2005. To date, you have produced only 732 pages of documents in this case,

CH01/WOODS/196861.1

**A 00852**

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Two

approximately 247 pages in your Rule 26 disclosures and 485 pages in response to our request for production of documents. Combined, this is a 4 inch stack of documents. The bulk of these 700 odd pages consist of copies of the UC Services Agreement, the Master Agreement for Software Licensing, other agreements and communications already in the possession of both parties. To date, little if any substance has been produced by you.

Indeed, you acknowledge much remains to be done by you regarding document production. In your written response to our request for production of documents you have stated the following:

Intermedia is no longer actively engaged in business. Most of the Intermedia documents have been boxed up and sent to storage ("Stored Documents"). Debtors have aggressively undertaken an investigation to locate the Intermedia documents including the Stored Documents and those documents that were still in the possession of the current employees. The Intermedia documents are referred to herein as "Intermedia Documents".

Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.

In response to this Request for Production Debtors have indicated that certain documents will be produced ("Responsive Documents"). To the extent that Located and Reviewed Documents are also Responsive Documents they are attached hereto.

The Stored Documents located to date are poorly indexed. As it relates to the Claims at issue the Stored Documents contained in these thousands of boxes can be described as follows: 1) Documents which have no relevancy to the Claims at issue, which Claimant has not requested and which Debtors have no desire to review in connection with the Claims at issue ("Irrelevant Documents"); 2) Documents which Debtors would like to review

CH01/WOODS/196861.1

**A 00853**

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Three

in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents"). Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

In the foregoing Response you have admitted that you have not even located let alone reviewed or produced all of your documents in this case. The documents you have located are contained in "several locations" and are in "thousands of boxes." It appears, therefore, once you locate all of your documents, your production of documents to date will be dwarfed by documents yet to be produced. Not only have you failed to produce all responsive documents, you have not explained why you have failed to produce these documents to date, or why, despite that failure, Parus should be expected to disclose its experts' opinions.

Moreover, I note that because your documents have not been produced, not a single fact witness deposition has been taken in this case. So there has been no opportunity to examine WorldCom witnesses regarding your documents. Needless to say, depositions without documents would probably be completely useless. As you know, Intermedia breached a contract with EffectNet and Parus, successor-by-merger to EffectNet, has incurred damages. The measure of contract damages is certain to be a subject of expert testimony. Contract damages will depend, *inter alia*, on negotiations between the parties and expectations regarding performance. The Debtor's documents and the testimony of its witnesses are necessary for Parus' experts to form their opinions in this case.

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Four

In addition, we are claiming that the Debtors engaged in tortious conduct that had a devastating impact on the business of EffectNet and its merger partner, Webley Systems. We will need experts, likely with industry expertise, to review Debtors documents and the testimony of its witnesses regarding Debtors' products, targeted markets, marketing strategy, and business plans to reach conclusions about liability for these tortious claims as well as damages. We believe that Debtors were developing products that competed with the EffectNet product sold to Intermedia. This undoubtedly involved market assessments and business plans that would be relevant to the opinions of Parus's expert witnesses.

In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. I would remind you that when you requested an extension of time to produce your documents, we readily agreed. Please reconsider your position on this matter and get back to me as soon as possible. If you insist on maintaining an objection to amending the scheduling order, I would like an explanation of the basis for your objection.

Very truly yours,

Stephen A. Wood

Stephen A. Wood

SAW:ds

CH01/WOODS/196861.1

A 00855

# EXHIBIT E

A 00856


STINSON

MORRISON

HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

Re:    Extension of Deadlines
       In re WorldCom, Inc. - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

Sincerely,

STINSON MORRISON HECKER LLP

Lawrence W. Bigus

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

LWB:lag

6593760.1

A 00857

# EXHIBIT U

A 00858