-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 15, 2005 1:46 PM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald; Bigus, Lawrence
**Subject:** production by Parus

It appears that the documents produced by Parus are all scanned documents. This means that Parus has not produced electronic documents. Please advise concerning the production of electronic documents. Additionally, please send assurances that the documents produced in scanned format are exact copies of the actual hard copies, that if there is anything on the back of documents that the back was scanned, and that if there was anything on file folders that the file folders have been scanned.

You have not identified which documents are responsive to which request. This is a problem that applies to both sides in this case. Based on the manner in which you produced documents I suspect you are willing to agree that neither side in this case will be held to a requirement of identifying specific documents produced back to specific requests for production. Please confirm this understanding.

We look forward to further discussions with you concerning the production issues.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                              Email:  lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00859

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Friday, June 17, 2005 1:03 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: production by Parus

We actually have produced electronic documents. The E-mail communications you have with the attachments were in electronic form originally. They have not been altered and they have been produced in complete form. You will see several file folders that have been scanned and instead of identifying specific requests, we have organized the documents into subjects or topics. These are identified by file folders as follows:

PPM (April 2000) General
SSB Forecast
Bankruptcy Issues May/June 2002 ACP
PPM (April 2001) Investor Specific
Bankruptcy Issues May/June 2002
PPM (April 2001) Roadshow Presentations & Calendars
PPM (April 2001) Financial
PPM (April 2001) PPM
APAX (Patricof) Apax Term Sheet 9/19/01
APAX (Patricof) General
AOL
SSB Due Diligence
PPM (August 2001) Roadshow Presentations
PPM (August 2001) PPM
PPM (August 2001) General
Bridge Financing (November 2001) General/Drafts ACP
Bridge Financing (September 2001) General/Drafts ACP
Bridge Financing (January 2002) General/Drafts ACP
Bridge Financing (January 2002) Term Sheet/Issues ACP
Bridge Financing (September 2001) General/Drafts
Bridge Loan (June 2001) ACP
Equity Fund Raising Misc 2001-2002
Revolver (June 2002)
Bridge Financing (January 2002 Term Sheet/Issues

We will be happy to relate the bates numbers of these documents to specific requests for you and will undertake to do that immediately. Since we are undertaking this effort, I would expect the debtors to produce documents in the same fashion.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 15, 2005 1:46 PM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald; Bigus, Lawrence
**Subject:** production by Parus

7/6/2005

**A 00860**

It appears that the documents produced by Parus are all scanned documents. This means that Parus has not produced electronic documents. Please advise concerning the production of electronic documents. Additionally, please send assurances that the documents produced in scanned format are exact copies of the actual hard copies, that if there is anything on the back of documents that the back was scanned, and that if there was anything on file folders that the file folders have been scanned.

You have not identified which documents are responsive to which request. This is a problem that applies to both sides in this case. Based on the manner in which you produced documents I suspect you are willing to agree that neither side in this case will be held to a requirement of identifying specific documents produced back to specific requests for production. Please confirm this understanding.

We look forward to further discussions with you concerning the production issues.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                    Email:  lbigus@stinsonmoheck.com



This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.


                                                        A 00861

-----Original Message-----
**From:**     Wood, Stephen
**Sent:**     Tuesday, June 21, 2005 5:50 PM
**To:**       'Bigus, Lawrence'
**Subject:**  Parus/WorldCom

Attached is a chart which correlates our recent document production by bates number with the number of your document requests.  This is being provided pursuant to our obligation under Rule 34 to produce documents organized to correspond to the categories in the numbered requests.

In addition I have reviewed the indexes you provided on June 15, 2005.  As you yourself indicated, they are not searchable for responsive documents and we are not able to determine on our own whether the boxes referenced contain responsive documents.



**Document**
oduction organized

Stephen A. Wood
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, Illinois 60606
(312) 857-7070

A 00862

PARUS HOLDINGS, INC. DOCUMENT PRODUCTION TO MCI WORLDCOM

**Categories of Requests:**

| | |
|---|---|
| Request 1: | Financial Statements |
| Request 2: | Income Statements |
| Request 3: | Balance Sheets |
| Request 4: | Correspondence between Parus and MCI |
| Request 5: | Correspondence between EffectNet and Intermedia |
| Request 6: | Confidential Information given to WorldCom |
| Request 7: | Representation that Intermedia had hundreds of sales personnel |
| Request 8: | Intermedia & WorldCom's election to breach and repudiate UC Contract |
| Request 9: | WorldCom initiative to offer products similar to EffectNet services under UC Contract |
| Request 10: | WorldCom products were based on an incompatible business model |
| Request 11: | Invoice # 1010 |
| Request 12: | Invoice # 1011 |
| Request 13: | Invoice # 1018 |
| Request 14: | Invoices issued to Intermedia pursuant to the Agreement |
| Request 15: | Two pricing options to calculate Minimum Commitment |
| Request 16: | Attempt by EffectNet/Webley to raise equity funding from investors |
| Request 17: | Financial and other disclosures to WorldCom |
| Request 18: | Cost per customer to provide services to Intermedia |
| Request 19: | Versions of agreement negotiated by and between MCI and Webley |
| Request 20: | Correspondence concerning agreement negotiated between MCI and Webley |
| Request 21: | All calculations used to compute invoices issued to Intermedia |
| Request 22: | Any transactions between Claimants and Debtors |

A 00863

| Bates Numbers | File Folders | Description | Corresponding Requests |
|---|---|---|---|
| PH 00758-00908 | PPM (April 2001) General | | 1, 16 |
| PH 00909-05653 | SSB Forecast | | 1, 2, 3, 16 |
| PH 05654-05658 | Bankruptcy Issues May/June 2002 | | 1 |
| PH 05659-06275 | PPM (April 2001) Investor Specific | | 1, 16 |
| PH 06276-06323 | Bankruptcy Issues May/June 2002 | | 1 |
| PH 06324 -06708 | PPM (April 2001) Roadshow Presentation & Calendars | | 1, 2, 3, 16 |
| PH 06709-06785 | PPM (April 2001) Financials | | 1, 2, 3, 16 |
| PH 06786-11742 | PPM (April 2001) PPM | | 1, 2, 3, 16 |
| PH 11743-13747 | APAX (Patricof) Apax Term Sheet 9-19-01 | | 1, 2, 3, 16 |
| PH 13748-16489 | APAX (Patricof) General | | 1, 2, 3, 16 |
| PH 16489-16690 | AOL APAX | | 1, 2, 3, 16 |
| PH 16691-17267 | SSB Due Diligence | | 1, 2, 3, 16 |
| PH 17268-17821 | PPM (August 2001) Roadshow Presentations | | 1, 2, 3, 16 |
| PH 17822-19126 | PPM (August 2001) PPM | | 1, 2, 3, 16 |
| PH 19127-20055 | PPM (August 2001) Investor Specific | | 1, 2, 3, 16 |
| PH 20056-20264 | PPM (August 2001) General | | 16 |
| PH 20265-20275 | Bridge Financing (November 2001) General – Drafts | | 1, 16 |
| PH 20276-20278 | Bridge Financing (September 2001) General – Drafts ACP | | 16 |
| PH 20279-20280 | Bridge Financing (January 2001) General – Drafts ACP | | 1 |
| PH 20281-20329 | Bridge Financing | | 1, 16 |

A 00864

| | | | |
|---|---|---|---|
| | (January 2002) General – Drafts | | |
| PH 20330-20338 | Bridge Financing (January 2002) Term Sheet – Issues ACP | | 1, 16 |
| PH 20339-20605 | Bridge Financing (September 2001) General – Drafts | | 1, 16 |
| PH 20606-22902 | Bridge Loan (June 2001) | | 1, 2, 3 |
| PH 22903-22997 | Equity Fund Raising Misc 2001-2002 | | 1, 2, 3, 16 |
| PH 22998-23167 | Equity Fund Raising Misc Connor M | | 1, 2, 3, 16 |
| PH 23168-23189 | Revolver (June 2002) | | 1, 2, 3 |
| PH 23190-23331 | Bridge Financing (January 2002) Term Sheet – Issues | | 1, 2, 3, 16 |
| PH 23332-23703 | | WorldCom Related | 1, 2, 3, 5, 6, 14, 19 |
| PH 23704-23721 | | Intermedia Related | 1, 2, 3, 18 |
| PH 23722 | SSB Forecast | | 2 |

A 00865

# EXHIBIT V

A 00866

-----Original Message-----
**From:**        Wood, Stephen
**Sent:**        Tuesday, June 14, 2005 7:05 PM
**To:**          Bigus, Lawrence
**Cc:**          Friedman, Robert; Krolewski, Martin A.
**Subject:**     Parus/WorldCom

Larry -- Pursuant to our discussions today regarding production of the Debtors' documents, you have indexes you will produce in electronic form. You have not had the opportunity to review them all in detail and you are concerned about the possibility of some type of privileged matter contained in these indexes. We will agree that in the event there is some privileged matter contained in these indexes, production of the indexes will not constitute a waiver of the privilege. This agreement pertains to indexes only and does not have any bearing on production of debtors' documents. Please provide the indexes as soon as possible.

Stephen A. Wood
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, Illinois 60606
(312) 857-7070

A 00867

# EXHIBIT W

A 00868

-----Original Message-----
**From:** Ramsay, Donald [mailto:dramsay@stinsonmoheck.com]
**Sent:** Wednesday, June 15, 2005 2:40 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald
**Subject:** Document Indexes

   Attached are the indexes of documents offered to be produced under the terms stated in our May 31, 2005 correspondence.  The indexes are produced subject to your agreement, stated in your e-mail of this date, that providing the indexes does not waive any privilege that there may be for information contained in the indexes or, of course, the documents referred to in the indexes.
   You have rejected the proposal for production of documents made in our May 31, 2005 letter.  We invite you, as we did in our May 31 letter, to make you own proposal.  We would consider any reasonable proposal that might facilitate the production.


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

7/8/2005

A 00869

# EXHIBIT X

A 00870

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Thursday, June 16, 2005 9:13 AM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald
**Subject:** Scheduling Order Deadlines in Parus v. MCI

You have asked for an extension of time to name experts in the above referenced case. You have not indicated how much time you want. At this time we are considering your request. You claim that you need the extension because you cannot name experts on the subject of Claimant's damages until you review Debtor's documents. In order to help us understand why you need the additional time please provide us with the following information:

1.  How much time you are seeking.

2.  The subjects on which you intend to have experts testify.

3.  How many experts you intend to have testify.

Upon receipt of the above information we will discuss the request for extended deadlines with our client. If we receive the information today we should be in a position to discuss your request with you either tomorrow or early Monday. Thank you in advance for sending the information.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                          Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

# EXHIBIT Y

A 00872

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Thursday, June 16, 2005 1:58 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Scheduling Order Deadlines in Parus v. MCI

I appreciate your consideration of this request. With regard to the time, its more a matter of properly sequencing discovery and setting up the deadline for expert disclosures once fact discovery, to include depositions of the current/former employees of debtors, is substantially underway. So, the deadline should allow sufficient time to review debtors' documents and take some of the depositions of the current/former employees of debtors. I am happy to discuss with you a reasonable time period.

I am not absolutely certain of the number of experts I would like to call at trial. However many there are, the issue again is permitting them access to the factual record to include debtors' documents and witnesses in advance of the disclosure deadline. Again, I could better assess the requirement after conducting fact discovery. Whatever estimate I give you now is subject to change after I have reviewed your documents and taken depositions of persons involved in the events.

With regard to subject matters, we have addressed this to some degree in our June 6th letter to the court requesting an informal conference. Do you need more information than this?

I am likely out most of tomorrow, but will be in the office Monday morning.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Thursday, June 16, 2005 9:13 AM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald
**Subject:** Scheduling Order Deadlines in Parus v. MCI

You have asked for an extension of time to name experts in the above referenced case. You have not indicated how much time you want. At this time we are considering your request. You claim that you need the extension because you cannot name experts on the subject of Claimant's damages until you review Debtor's documents. In order to help us understand why you need the additional time please provide us with the following information:

1.   How much time you are seeking.

2.   The subjects on which you intend to have experts testify.

3.   How many experts you intend to have testify.

Upon receipt of the above information we will discuss the request for extended deadlines with our client. If we receive the information today we should be in a position to discuss your request with you either tomorrow or early Monday. Thank you in advance for sending the information.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                                          Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has
been sent to you in error, please contact the sender for instructions concerning return or destruction, and
do not use or disclose the contents to others.

A 00874

7/12/2005

# EXHIBIT Z

A 00875

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Sunday, June 19, 2005 10:25 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** Parus Request for Scheduling Order Extension

You have failed to provide us information which is absolutely pertinent and necessary in order to analyze your request for an extension of deadlines contained in the amended scheduling order. We do not understand how you can expect either the Court or our client to consider an extension to the deadlines in the amended scheduling order without providing such basic information as the proposed new date and/or what experts you may designate by the new date. Please provide this information ASAP.

As you have been aware for sometime I will be out of the office on a business trip for MCI on Monday and Tuesday. I will try to stay in touch by email and voice mail so that if you decide to provide the necessary information our client can consider your request before the hearing on Wednesday. Please provide the necessary information by return email.

Thank you for your attention to this matter.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                                    Email:  lbigus@stinsonmoheck.com



This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.


A 00876

# EXHIBIT AA

A 00877

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Monday, June 20, 2005 5:56 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Parus Request for Scheduling Order Extension

As I indicated on Thursday, it is difficult to be precise regarding expert requirements when we have yet to look at the debtors' documents or take the depositions of their current and former employees. Some of our expert witnesses may be obviated by testimony from WorldCom employees.

The subjects of testimony include but are not limited to, as I've indicated before, the value of the take-or-pay minimum obligation in the contract, the value of the contract beyond the take-or-pay, the WorldCom business model for Unified Communications, projections regarding the market for Unified Communications products, the EffectNet/Webley business model, the investment climate at the relevant time generally and in the telecom industry specifically, and the impact of contract breach and other actions on the EffectNet/Webley business (which encompasses damages and causation).

I would estimate that we may need 4 to 5 experts to cover these subjects, but this is a rough estimate since we need to review the documents and take depositions of WorldCom personnel regarding those documents to accurately assess our expert witness requirements. As I said above, some of these topics may be covered by WorldCom employees.

As for timing, that depends to a very large degree on you and how long it takes you to produce documents. As we've discussed before, document production should be complete before we take depositions to avoid unnecessarily redeposing witnesses. Once your document production is complete, I need a minimum of 75 days to take depositions of WorldCom employees before we have to disclose experts, assuming we can efficiently locate witnesses and take their depositions. Assuming hypothetically that your production is essentially complete by the end of August, an optimistic estimate since you have 10,000 boxes of documents, we would like until mid-November to disclose experts. If you were able to complete your document production by the end of July, I would need until mid-October. This is comparable to the time frame envisioned under the scheduling order entered in January 2005.

We are in the process of reviewing your indexes and have not yet determined whether they are helpful. We will advise you shortly regarding this review.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Sunday, June 19, 2005 10:25 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** Parus Request for Scheduling Order Extension

You have failed to provide us information which is absolutely pertinent and necessary in order to analyze your request for an extension of deadlines contained in the amended scheduling order. We do not understand how you can expect either the Court or our client to consider an extension to the deadlines in the amended scheduling order without providing such basic information as the proposed new date and/or

7/12/2005                                                                                                          **A 00878**

what experts you may designate by the new date. Please provide this information ASAP.

As you have been aware for sometime I will be out of the office on a business trip for MCI on Monday and Tuesday. I will try to stay in touch by email and voice mail so that if you decide to provide the necessary information our client can consider your request before the hearing on Wednesday. Please provide the necessary information by return email.

Thank you for your attention to this matter.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                    Email: lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

7/12/2005

A 00879

# EXHIBIT BB

A 00880

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Tuesday, June 21, 2005 2:18 PM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** RE: Parus Request for Scheduling Order Extension

We have already produced our documents. On May 341, 2005 we sent you a letter which produced the documents and talked about the procedures for production. We have advised you as to the location of the documents. You have an index of the documents. The documents have been produced and it is up to you to inform us as to when you want to view the documents. Additionally, there is the subject of the cost of review. Since you want to examine the documents we expect that you will pay the cost of removing them from the storage shelves and then returning them to the storage shelves.

We cannot agree to an extension of time without knowing the date you want. We doubt the Court will agree to an open ended extension. Furthermore, we question whether you will even be able to use experts along the lines outlines below. We believe you are trying to contrive damages that are not legally recoverable. Unless you give us a date certain there is nothing for us to agree to or not agree to in connection with your request for more time.

**From:** Wood, Stephen [mailto:SWood@KelleyDrye.com]
**Sent:** Monday, June 20, 2005 4:56 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Parus Request for Scheduling Order Extension

As I indicated on Thursday, it is difficult to be precise regarding expert requirements when we have yet to look at the debtors' documents or take the depositions of their current and former employees. Some of our expert witnesses may be obviated by testimony from WorldCom employees.

The subjects of testimony include but are not limited to, as I've indicated before, the value of the take-or-pay minimum obligation in the contract, the value of the contract beyond the take-or-pay, the WorldCom business model for Unified Communications, projections regarding the market for Unified Communications products, the EffectNet/Webley business model, the investment climate at the relevant time generally and in the telecom industry specifically, and the impact of contract breach and other actions on the EffectNet/Webley business (which encompasses damages and causation).

I would estimate that we may need 4 to 5 experts to cover these subjects, but this is a rough estimate since we need to review the documents and take depositions of WorldCom personnel regarding those documents to accurately assess our expert witness requirements. As I said above, some of these topics may be covered by WorldCom employees.

As for timing, that depends to a very large degree on you and how long it takes you to produce documents. As we've discussed before, document production should be complete before we take depositions to avoid unnecessarily redeposing witnesses. Once your document production is complete, I need a minimum of 75 days to take depositions of WorldCom employees before we have to disclose experts, assuming we can efficiently locate witnesses and take their depositions. Assuming hypothetically that your production is essentially complete

6/23/2005

A 00881



by the end of August, an optimistic estimate since you have 10,000 boxes of documents, we would like until mid-November to disclose experts. If you were able to complete your document production by the end of July, I would need until mid-October. This is comparable to the time frame envisioned under the scheduling order entered in January 2005.

We are in the process of reviewing your indexes and have not yet determined whether they are helpful. We will advise you shortly regarding this review.
-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Sunday, June 19, 2005 10:25 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** Parus Request for Scheduling Order Extension

You have failed to provide us information which is absolutely pertinent and necessary in order to analyze your request for an extension of deadlines contained in the amended scheduling order. We do not understand how you can expect either the Court or our client to consider an extension to the deadlines in the amended scheduling order without providing such basic information as the proposed new date and/or what experts you may designate by the new date. Please provide this information ASAP.

As you have been aware for sometime I will be out of the office on a business trip for MCI on Monday and Tuesday. I will try to stay in touch by email and voice mail so that if you decide to provide the necessary information our client can consider your request before the hearing on Wednesday. Please provide the necessary information by return email.

Thank you for your attention to this matter.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                     Email: lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.


Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is

accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

# EXHIBIT CC

A 00884

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

——

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

——

BRUSSELS, BELGIUM

——

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

June 27, 2005

**VIA FACSIMILE and U.S. MAIL**

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Prkway
Overland Park, Kansas 66210

Re:    In re WorldCom -- Chapter 11
       <u>Case No. 02-13533 -- Claim of Parus Holdings, Inc.</u>

Dear Mr. Bigus:

We have carefully reviewed your letters of May 31, 2005 and June 1, 2005 and your email of June 22, 2005 regarding your proposal for producing the Debtors' documents. We have some significant concerns about your proposal, some of which are addressed in my E-mail to you on June 1, 2005. I will expand on those comments.

First, I looked at the 10 indexes you forwarded on June 15, 2005. As you yourself predicted, we were not able to discern whether boxes described therein contained responsive documents. The contents descriptions are either too general, obviously nonresponsive, or otherwise meaningless to us.

You also assert in your June 22, 2005 E-mail, that you have produced documents. To set the record straight, you produced an extremely limited number of documents in response to our Request for Production of Documents. Most of the documents were already in our possession. Approximately 30 pages of the 485 pages you produced were documents we had not seen before. Half of these were E-mails apparently printed on your secretary's computer. So your production of new information has been almost nonexistent. All you have done beyond that is send us a proposal with essentially useless indexes, insisting that we bear the burden and expense of culling through your clients' files to identify responsive documents. This proposal appears to be an effort to either conceal responsive documents or shift your obligations under the discovery rules to us.

CH01/WOODS/197275.1

**A 00885**

**KELLEY DRYE & WARREN LLP**

Lawrence W. Bigus, Esq.
June 27, 2005
Page Two

       We have produced documents to you, nearly 23,000 pages, that you requested. We have undertaken a time-consuming effort to find, review, and produce these documents. We undertook the effort because the rules require it. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) (the general presumption under the discovery rules is that the responding party must bear the expense of complying with discovery requests). These are your client's indexes and documents. Your client knows them better than we do. Your client is in a better position than we are to cull responsive documents. We expect compliance with the rules and an expeditious production of responsive documents.

       As for the deadline for Parus to disclose experts, I need a commitment from you as to when we can expect to receive all of your responsive documents. Once that is done, I have offered to disclose my experts 75 days from that date.

       Finally, there is one other outstanding issue. You indicated to me in an earlier conversation that responsive Intermedia documents were missing because they had been placed in a depository and the depository could not be found. You also indicated to me that you have no electronic documents, a fact that I find very difficult to accept. If documents have in fact been lost or destroyed, there can be consequences as I'm sure you are aware. Your client had an obligation to preserve such documents, particularly since it was aware at the time of the negotiation of the Master Agreement for Software Licensing that the contract with EffectNet was breached by Intermedia. Sanctions may be imposed even if documents were destroyed or lost through ordinary negligence. *See Zubulake v. UBS Warburg, LLC*, 2004 WL 1620866 (July 20, 2004). Please provide me with any information you have regarding this matter.

       Sincerely,

Stephen A. Wood

SAW/

A 00886

# EXHIBIT DD

A 00887

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Monday, June 27, 2005 5:31 PM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald
**Subject:** inaccurate and false assumptions in your letter

Your letter, sent a few minutes ago, is highly disturbing because it contains allegations which are false, inaccurate, and misleading and because it contains threats which are designed to bully our clients into taking certain action.

We will respond to the bulk of your letter in more detail later in the week. I have been in an all day meeting today and will be in an all day CLE tomorrow. I wanted, however, to immediately respond to the false and inaccurate allegations.

I have **never** indicated "that responsive Intermedia documents were missing because they had been placed in a depository and the depository could not be found." I did indicate that it took us a brief period of time to locate the depository. As you are more than aware the depositories have been located. That is the reason you have indexes to a large volume of documents.

I have **never** indicated that MCI has "no electronic documents." I did indicate that many electronic documents involved legal counsel and therefore were privileged documents. I also indicated that the search for electronic documents was continuing. We have produced electronic documents for your review. If we had no electronic documents how could we have produced some electronic documents.

The fact that you might already have many of the documents produced does not mean that MCI and Intermedia have failed to follow the rules. There is no rule requiring us to make up documents so that we can produce something which either you do not already have and/or supports your case. We are not trying to hide any documents from you. An examination of the record indicates just the opposite. We have made indexes available to you which refer to documents far beyond what you requested. We are willing to allow you to review all of the documents to see what you can find on your fishing expedition. Opening up all documents, whether or not requested, is certainly not evidence of an intent to hide anything.

Based on the above alleged statements, which are totally false, you threaten sanctions. This type of threat is totally inappropriate at this point in litigation. We would like to work with you but if you are going to continually allege that we have made statements which we have never made, and then threaten sanctions based on the fabricated statements, we will not be very productive in our dealings. I hope we do not reach a point where all of my communications with you have to be in writing in order to stop such bold, broad and inaccurate statements. It is now apparent that at a minimum I need another attorney present during all of my conversations with you. Therefore, when you call I will put the call on hold until I can obtain the presence of another attorney.

We will send you further correspondence concerning how you are going to review the large volume of Intermedia documents which we have now produced. We have located additional documents (beyond those reflected in the indexes) which are being sent to our office. As soon as we receive the additional documents we will deal with producing those documents. Our future correspondence will analyze and set forth applicable case law concerning the cost burden involved in these types of production. The law is not as simple as you attempt to

7/1/2005

A 00888

make it in your letter. I believe that our response to the cost sharing issue raised in your letter requires a detailed explanation of current applicable law. After we have set forth the legal basis for our position then you can respond. After that we can determine if we are going to be able to resolve the current dispute.

Since we have not received dates for the depositions that we have requested we will be sending out notices and if necessary subpoenas later this week. It is imperative that we obtain the two depositions that we have requested.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                    Email: lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00889

# EXHIBIT EE

A 00890

**From:** Wood, Stephen [mailto:SWood@KelleyDrye.com]
**Sent:** Tuesday, June 28, 2005 4:34 PM
**To:** Bigus, Lawrence
**Subject:** Accurate statements in my letter of June 27, 2005

Everything in my letter was true and accurate. If you didn't want your statements repeated in a letter, you should have obtained my agreement not to repeat your statements in writing.

You did tell me, in February I believe, that when Intermedia was acquired a lot of its employees were fired and their documents were put in a depository which you had been unable to locate. If you are now saying you have found the depository, that is new information. If that is not what you are saying and there is still an issue with regard to missing Intermedia documents, please tell me.

You also told me in court in New York on June 14, 2005 that you had no electronic documents because E-mail messages were not kept in a central location and were stored on local PCs which your client no longer had. I am not now and never have misrepresented your statements or the facts in this case. On the contrary, it is you who has done so, in papers submitted to the court no less. I refer to the fictional February 18th letter you claimed we sent you acknowledging receipt of your discovery and promising to respond by March 18th.

You keep saying you have produced your documents, but that is simply not so and your saying it doesn't make it so. You have actually turned over to us 485 pages of documents in response to our document requests. Producing indecipherable indexes to 10,000 boxes of documents is not compliance with the rules and could easily and reasonably be construed as an attempt by the producing party to avoid compliance with rules and production of responsive documents. At this point the court will draw its own conclusions.

If you wish to have all future communications in this case in writing that is fine with me. I don't appreciate being accused of false statements when I am speaking the truth.

I am obtaining dates for the René au brothers depositions and will provide them shortly. I don't have a problem producing them for deposition between the dates you suggested, assuming they are available then.

    -----Original Message-----
    **From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
    **Sent:** Monday, June 27, 2005 5:31 PM
    **To:** Wood, Stephen
    **Cc:** Befort, Jeff; Ramsay, Donald
    **Subject:** inaccurate and false assumptions in your letter

    Your letter, sent a few minutes ago, is highly disturbing because it contains allegations which are false, inaccurate, and misleading and because it contains threats which are designed to bully our clients into taking certain action.

    We will respond to the bulk of your letter in more detail later in the week. I have been in an all day meeting today and will be in an all day CLE tomorrow. I wanted, however, to immediately respond to the false and inaccurate allegations.

A 00891

I have **never** indicated "that responsive Intermedia documents were missing because they had been placed in a depository and the depository could not be found." I did indicate that it took us a brief period of time to locate the depository. As you are more than aware the depositories have been located. That is the reason you have indexes to a large volume of documents.

I have **never** indicated that MCI has "no electronic documents." I did indicate that many electronic documents involved legal counsel and therefore were privileged documents. I also indicated that the search for electronic documents was continuing. We have produced electronic documents for your review. If we had no electronic documents how could we have produced some electronic documents.

The fact that you might already have many of the documents produced does not mean that MCI and Intermedia have failed to follow the rules. There is no rule requiring us to make up documents so that we can produce something which either you do not already have and/or supports your case. We are not trying to hide any documents from you. An examination of the record indicates just the opposite. We have made indexes available to you which refer to documents far beyond what you requested. We are willing to allow you to review all of the documents to see what you can find on your fishing expedition. Opening up all documents, whether or not requested, is certainly not evidence of an intent to hide anything.

Based on the above alleged statements, which are totally false, you threaten sanctions. This type of threat is totally inappropriate at this point in litigation. We would like to work with you but if you are going to continually allege that we have made statements which we have never made, and then threaten sanctions based on the fabricated statements, we will not be very productive in our dealings. I hope we do not reach a point where all of my communications with you have to be in writing in order to stop such bold, broad and inaccurate statements. It is now apparent that at a minimum I need another attorney present during all of my conversations with you. Therefore, when you call I will put the call on hold until I can obtain the presence of another attorney.

We will send you further correspondence concerning how you are going to review the large volume of Intermedia documents which we have now produced. We have located additional documents (beyond those reflected in the indexes) which are being sent to our office. As soon as we receive the additional documents we will deal with producing those documents. Our future correspondence will analyze and set forth applicable case law concerning the cost burden involved in these types of production. The law is not as simple as you attempt to make it in your letter. I believe that our response to the cost sharing issue raised in your letter requires a detailed explanation of current applicable law. After we have set forth the legal basis for our position then you can respond. After that we can determine if we are going to be able to resolve the current dispute.

Since we have not received dates for the depositions that we have requested we will be sending out notices and if necessary subpoenas later this week. It is imperative that we obtain the two depositions that we have requested.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                          Email: lbigus@stinsonmoheck.com




This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00892

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00893

# EXHIBIT FF

A 00894

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 29, 2005 10:16 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence; Befort, Jeff
**Subject:** Extension of Scheduling Order Deadlines

This email is to confirm the discussion that we had this morning concerning the issue of extending scheduling order deadlines. We proposed that the deadline for your clients to name experts be extended 120 days and that the amended scheduling order contain a statement indicating that: 1) you need to review documents being produced by MCI/Intermedia prior to naming experts; 2) it may take time to accomplish the review given disagreements as to the method of review, who pays the costs of the review, and related issues which might delay review; and 3) that if the review is not completed in time to name experts the deadline may need to be extended again. You indicated that you needed to consider this proposal. Obviously, the other deadlines in the scheduling order will need to be extended accordingly.

As you are aware we have produced the documents by making them available for your review and telling you where they are located. You may go to the depositories at any time and review these documents. The depositories will charge you to pull the boxes from the shelves and then to return the boxes to the shelves (we currently believe this cost will be around $2.00 per box but do not have firm estimates). Please advise as to the dates that you want to go to the depositories and review the documents. Upon receiving your selected dates we will instruct the depositories to expect you and to allow you to review the documents. We will review the documents as they are given to you in order to make sure that nothing is being produced which is protected by the attorney client privilege and/or work product doctrines.

We would like to continue to discuss with you the cost shifting issues. As we have indicated to you we will write you a letter on this issue in the near future. After receiving our letter we expect that you will give us the courtesy of writing a return letter with your position. After that we can determine whether there is room for agreement or this is an issue that needs presenting to the court. We both need to keep an open mind on the cost shifting issue until we each have the benefit of receiving in writing a full analysis of each other's position.

Please be assured that it is our intention to allow you to review all of the documents except for documents which are protected as indicated above, MCI/Intermedia is actually willing to produce more documents then you have requested. We are not trying to hide anything but rather are willing to allow you to review everything.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210


     A 00895

Direct Dial:  913 344 8026
Fax:  888 873 4847                       Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

7/1/2005

A 00896

# EXHIBIT GG

A 00897

# ORIGINAL

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------x

In re

                        Case No.

WORLDCOM, INC., et al,    02-13533

      Reorganized Debtors.

------------------------------x


        June 29, 2005

        3:13 p.m.

        United States Custom House

        One Bowling Green

        New York, New York   10004


    (Proceedings -- Entire Day)


3:00 02-13533 WORLDCOM, INC., et al


Conference call re Parus Holdings.


B E F O R E:

   THE HONORABLE ARTHUR J. GONZALEZ

   United States Bankruptcy Judge

```
 1
 2    A P P E A R A N C E S:
 3       STINSON MORRISON HECKER LLP
          Attorneys for Reorganized Debtors
 4            1201 Walnut Street
              Kansas City, Missouri    64106
 5
          BY:  LAWRENCE BIGUS, ESQ.
 6                              (via telephone)
                   -and-
 7            DONALD RAMSAY, ESQ.
                              (via telephone)
 8
 9       KELLEY DRYE & WARREN LLP
          Attorneys for Parus Holdings
10            101 Park Avenue
              New York, New York    10178
11
          BY:  STEPHEN WOOD, ESQ.
12                              (via telephone)
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
1              Proceedings
2              JUDGE GONZALEZ:  This is Judge
3    Gonzalez.
4              MR. WOOD:  Your Honor, Stephen Wood
5    on behalf of the claimant Parus Holdings.
6              MR. BIGUS:  Larry Bigus on behalf
7    of the Debtors WorldCom.
8              JUDGE GONZALEZ:  Originally I was
9    going to do this conference call in my
10   chambers, but I realized that if my intention
11   was then to rule on the motion before me,
12   that I should do it on the record.
13             With respect to Parus Holdings'
14   motion to withdraw and/or amend deemed
15   admissions and to serve late responses and
16   objections to Debtors' discovery requests in
17   connection with the Debtors' objections to
18   the claims of Parus Holdings, Inc., the Court
19   finds that the appropriate analysis for
20   purposes of the admissions is Rule 36(b), and
21   under those standards the Court finds that it
22   would be appropriate to grant Parus Holdings'
23   request and enable them to then withdraw
24   and/or amend the deemed admissions.  However,
25   with respect to the objections to the
```

1              Proceedings

2    interrogatories and the requests for

3    productions, the Court finds that the

4    standard there is excusable neglect under

5    9006.  The Court thus finds that Parus

6    Holdings has not established excusable

7    neglect and, therefore, the Court finds that

8    such objections to interrogatories and

9    requests for productions are waived.

10             Now, my recollection is that at the

11   last conference, I know there was a

12   discussion about when the production would

13   take place.  I am not sure where that

14   discussion ended with respect to both the

15   request for the Debtors to produce documents,

16   as well as the production for Parus, as to

17   whether or not that production had taken

18   place?

19             MR. BIGUS:  Judge, Larry Bigus.  My

20   recollection is that you ordered us to have

21   further discussions concerning the production

22   by both sides.  At this point, we have had

23   conversations.  Parus has produced about

24   23,000 pages.  WorldCom is in the process of

25   reviewing those.

```
 1              Proceedings
 2          Now that you have said that their
 3   objections are not valid, we would anticipate
 4   further production of documents, because
 5   there were a lot of objections to the
 6   requests.
 7          We have had discussions concerning
 8   the production by WorldCom.  We have agreed
 9   that the contents of those discussions would
10   be kept confidential between Mr. Wood, and
11   Mr. Ramsay of my firm, and myself, except for
12   discussions with the clients, if we came to
13   an agreement.  We haven't reached agreement.
14          I have told Mr. Wood that I would
15   send him a proposal as to how he might
16   proceed to review that volume of documents
17   and dealing with the cost-sharing issue where
18   we have substantial disagreement on who
19   should bear the burden of the cost of
20   producing that volume of documents, some
21   electronic and some hard.
22          MR. WOOD:  Your Honor, Mr. Wood on
23   behalf of Parus.  We have raised the issue of
24   amending the schedule with the Court, because
25   we were waiting to receive the bulk of the
```

```
 1              Proceedings
 2   documents to be produced by the Debtors.  We
 3   were coming up on a deadline for us to
 4   disclose our expert witnesses.  That deadline
 5   was June 20th under the current scheduling
 6   order that is in place.  The Court has
 7   extended that deadline to July 5th, pending
 8   the conduct of this hearing.  I have had some
 9   conversations with counsel for the Debtors
10   about a date to extend the deadline for our
11   disclosing of expert witnesses, and we were
12   in agreement that an appropriate deadline
13   would be 120 days out.
14              There was an issue that I raised
15   with counsel for the Debtors concerning their
16   production of documents, because we have
17   received a proposal from them to produce
18   documents but no documents yet.  I believe
19   that is in part because there is a
20   disagreement between the parties as to the
21   manner in which the documents should be
22   produced.  So I was going to seek from the
23   Court to include in the amended scheduling
24   order an intermediate deadline for all the
25   parties to produce their responsive
```

1           Proceedings

2   documents, which would also apply to us,

3   which would include any additional documents

4   that we had to produce in light of the

5   Court's ruling on our motion.  So that is the

6   only other issue that I would raise at this

7   time.

8           JUDGE GONZALEZ:  How does that then

9   resolve the dispute or does it just leave it

10  to the parties to resolve it and then for me

11  to be involved, if it is not resolved?

12          MR. BIGUS:  Your Honor, this is

13  Larry Bigus.  In my opinion we have legally

14  produced the documents.  We have given them

15  indexes to tens of thousands of boxes.  We

16  have given them the location where those

17  boxes are kept.  Under Rule 34(b) we have

18  chosen to produce those as they are kept in

19  the usual course of business.

20          Now, I acknowledge there are real

21  world practicalities that WorldCom has an

22  obligation to deal with and I think so do the

23  claimants.  I think creating an artificial

24  deadline, that Your Honor is right on point,

25  that it doesn't solve anything.  WorldCom

```
 1              Proceedings
 2    obviously has to go through the boxes at some
 3    level.  It is a question of how many of those
 4    boxes then get handed over to the claimants.
 5    It is a question of who pays to take them off
 6    the shelf, which could be $30,000 to $50,000;
 7    and it is a question of who does some very
 8    expensive searches of electronic documents.
 9    It will probably end up being outside vendors
10    who have the technology available to do it.
11    I don't think setting an artificial deadline
12    resolves the real world practicality.  We
13    want to produce the documents.  We have
14    offered to produce documents beyond what the
15    claimants have requested.  The claimants have
16    objected to that as a means to hide what is
17    really responsive.  I didn't mean it that
18    way.  We really are letting them, if they
19    want, to go review all of these documents.
20              In order to solve the problem of
21    the 120-day deadline to name experts and what
22    has been reviewed by them, I offered to put a
23    statement in the amended scheduling order
24    that we are going to propose to you that says
25    (1) we need to review all of these documents
```

1          Proceedings

2    before they can name experts, (2) that it may

3    take time to accomplish the review and there

4    are disagreements over how to do the review

5    and the costs, and (3) that if the review

6    wasn't completed by 120 days, that they could

7    seek an additional extension of time in order

8    to try to solve the issue.

9          I think to set an artificial

10   deadline to produce this volume of documents

11   absolutely accomplishes nothing for either

12   side, and that Mr. Wood has to wake up to the

13   fact that even if we review all of them

14   first, he is going to have thousands and

15   thousands of boxes to get through that he is

16   going to have to undertake.

17          MR. WOOD:  Your Honor, we thought

18   it reasonable to request a date certain by

19   which the parties would turn over all

20   responsive documents.  That is, produce them

21   to the other side.  We have received some

22   indexes from the Debtors, but the indexes are

23   indecipherable to us.  They were created by

24   them.  There are alphanumeric designations in

25   there that don't mean anything to us.  We

```
 1              Proceedings
 2   can't tell whether or not the boxes that are
 3   reflected in the indexes contain responsive
 4   documents or not.
 5              Now, we served our request for
 6   production of documents on the Debtors back
 7   in February, on February 7th, and we are
 8   still waiting for the bulk of their documents
 9   to be produced.  We received about 400, but
10   no less than 500, pages of documents.  But
11   that is it.  It seems reasonable to me to ask
12   the Court to impose a deadline for document
13   production to be completed in advance of the
14   deadline for disclosing expert witnesses, and
15   that is what we were seeking here.
16              MR. BIGUS:  Your Honor, this is
17   Larry Bigus.  The documents have been legally
18   produced under Rule 34(b).  We filed a
19   response to their requests timely.  We have
20   told them where the documents are.  We have
21   told them, "Tell us when you want to go, and
22   we will tell the warehouses to show them to
23   you."  We have legally produced the
24   documents.  The question is how in the
25   practical, real world to enable them to
```

```
 1              Proceedings
 2    review the documents and who pays the costs
 3    for taking the box off the shelf, which gets
 4    expensive when you are dealing with tens of
 5    thousands of boxes.
 6              So the documents have been legally
 7    produced.  It is a question of real world,
 8    how do you review them?  We want to help them
 9    to do it.  We don't know what the
10    alphanumeric designations mean either.  The
11    people who made these indexes were employees
12    of Intermedia.  As the Court knows,
13    Intermedia has been shut down.  These
14    employees who would know this information are
15    no longer with us.
16              MR. WOOD:  Your Honor, there is an
17    interesting thing about one of these indexes
18    that was produced by the other side.  There
19    were 10 indexes, and the longest of these
20    indexes contains references to a number of
21    boxes.  Some of these boxes have been
22    highlighted.  If you look at the general
23    descriptions of the contents, they don't mean
24    anything to us.  I can't tell what is in
25    these boxes.  But at the end of the index
```

1               Proceedings

2    there is a key that someone has created, and

3    the key identifies the highlighted boxes and

4    describes what is in those highlighted boxes

5    and describes the contents that are

6    responsive to our requests. So it appears as

7    though someone has gone through that index

8    and identified boxes that have responsive

9    documents. If they can do that for one

10   index, I don't know why they can't do that

11   for the rest of the indexes, and I don't know

12   why those boxes and those documents haven't

13   been produced.

14           MR. BIGUS:  Your Honor, those boxes

15   have been produced. We made an attempt to

16   try to identify what we thought was

17   responsive. As the Court can tell, we sent

18   what we were able to determine to Mr. Wood.

19   We do not know for sure whether or not there

20   might be responsive documents in other boxes.

21   We simply gave Mr. Wood our indication of

22   what we thought was probably responsive, but

23   that doesn't mean it defines the entire

24   universe. We looked at all of the indexes

25   and did our best, as Mr. Wood just pointed

1                    Proceedings

2    out to the Court, to give Mr. Wood as much

3    information as we could give him, far beyond

4    what is required by the rule.

5              If Mr. Wood wants to come down

6    tomorrow morning and look at those boxes that

7    have been highlighted, we will call the

8    warehouse and tell the warehouse that

9    Mr. Wood will be at the warehouse where these

10   documents are located tomorrow morning.  It

11   is up to Mr. Wood to go to the documents and

12   look at them.  We have made them available.

13   We have told him where they are.  I don't

14   know what more we can do to have them legally

15   produced, than tell them where they are and

16   tell them all you have to do is call us and

17   we will tell the warehouse to let them in.

18              Now, we do want to go at the same

19   time he does, so that as each box is pulled,

20   we can look in the box to make sure there is

21   no privileged communication.  But other than

22   that, he can go look at them right now.

23              MR. WOOD:  The only other thing I

24   would say, Your Honor, is that we did produce

25   23,000 pages of documents.  We undertook

| | |
|---|---|
| 1 | Proceedings |
| 2 | considerable effort and expense to locate |
| 3 | these documents and review them and produce |
| 4 | them, and we are asking for the Debtors to do |
| 5 | no more and no less.  These are their |
| 6 | documents in these depositories and their |
| 7 | indexes.  Certainly they know them better |
| 8 | than we do.  Someone has gone through one of |
| 9 | these indexes and identified boxes with |
| 10 | responsive documents, and I think they can do |
| 11 | that with regard to the rest of them. |
| 12 | Your Honor, if the Court would |
| 13 | like, we can present a motion to compel and |
| 14 | we can brief these issues, and I think that |
| 15 | might be the appropriate thing to do. |
| 16 | JUDGE GONZALEZ:  I think you are |
| 17 | going to have to, because I believe what I am |
| 18 | going to need is some form of affidavit |
| 19 | regarding the motion to be filed in response |
| 20 | to it to set forth what has been done and |
| 21 | what the legal arguments are regarding what |
| 22 | has to be done. |
| 23 | MR. WOOD:  Your Honor, Parus |
| 24 | Holdings will file a motion to compel.  I |
| 25 | would like 14 days to get that on file |

```
 1              Proceedings
 2  because of the upcoming July 4th holiday.
 3              JUDGE GONZALEZ:  That is all right.
 4              MR. BIGUS:  Your Honor, I am going
 5  to assume when he does that, you want an
 6  informal letter request pursuant to the
 7  procedures and the local rules or at this
 8  point you want a formal motion that we
 9  actually come to New York and argue?
10              JUDGE GONZALEZ:  I think at this
11  point it has dragged on a little bit longer
12  than it should have from my end, so you might
13  as well do a formal motion.  I don't think we
14  are going to get very far with informal
15  letter responses at this stage.
16              MR. BIGUS:  I would like to inform
17  the Court that I am out the 8th through the
18  18th of July, and that any hearing that we
19  need on this needs to be after that date, so
20  that I don't get stuck trying to move a
21  hearing during the time period when I am
22  already scheduled to be out of the office.
23              MR. WOOD:  We will obviously work
24  with counsel.
25              JUDGE GONZALEZ:  Work through that.
```

```
 1              Proceedings
 2   I think you can check the Court's docket and
 3   see what dates are available early in August
 4   for WorldCom, and you may pick one of those
 5   dates.
 6              MR. BIGUS:  Mr. Wood, I am telling
 7   you right now that if you want to start by
 8   reviewing document boxes which have been
 9   highlighted, tell me when you want to be at
10   which depository, and you can start
11   reviewing.
12              MR. WOOD:  We will prepare our
13   motion and submit it to the Court.
14              Your Honor, as far as the deadline
15   for disclosing expert witnesses is concerned,
16   the parties had agreed to a new deadline of
17   120 days beyond the original deadline.
18              JUDGE GONZALEZ:  Let's leave it at
19   that for now, and then ultimately I guess it
20   gets addressed at that hearing
21              MR. WOOD:  Thank you, Your Honor.
22              MR. BIGUS:  Thank you, Your Honor.
23              (Time noted:  3:28 p.m.).
24
25
```

```
1
2                    C E R T I F I C A T E
3    STATE OF NEW YORK      )

                            : SS:

4    COUNTY OF NEW YORK     )

5

6         I, DEBORAH HUNTSMAN, a Shorthand

7    Reporter and Notary Public within and for the

8    State of New York, do hereby certify:

9              That the within is a true and

10   accurate transcript of the proceedings taken

11   on the 29th day of June, 2005.

12         I further certify that I am not

13   related by blood or marriage to any of the

14   parties and that I am not interested in the

15   outcome of this matter.

16              IN WITNESS WHEREOF, I have hereunto

17   set my hand this 1st day of July, 2005.

18

19              DEBORAH HUNTSMAN

20

21

22

23

24

25
```

# EXHIBIT HH

A 00915

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 29, 2005 3:19 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** Production by MCI/Intermedia

We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34 (b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

1.    Review by MCI/Intermedia:  MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

   a.    what should not be produced because it is protected by the attorney client privilege

   b.    If you desire what is responsive to your requests. If you want to review everything and make this determination yourself that is acceptable to us.

2.  Handing Over Documents:   MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

3.    Costs:

   a.    Handling of Boxes: As you have been advised there is a cost to removing the boxes from the documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection. This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes. It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive. This cost is from one storage location, was a mere estimate, and may vary from location to location. We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf. We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute. We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

   b.    Copying:  The cost of copying belongs to the requesting party.  Therefore, your Client's will bear this entire expense.

4.    Location: You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

7/6/2005                                                                                                          A 00916

5.  Timing:  In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time.  MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way.  We do not understand how you can object to the rest of the proposal.  We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia.  There is not much more a producing party can do other than give you these options.  Rule 34(b) is very clear that a party has two options.  We have selected one of the options as is our right.  You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business).  We are having a hard time determining what is it you really want.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                              Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00917

# EXHIBIT II

A 00918

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Thursday, June 30, 2005 9:42 AM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** production of electronic documents

As you have been informed on many occasions MCI/Intermedia has continued to look for electronic documents. We have now located the back up tapes that would contain responsive electronic documents if such documents exist.

We have contacted third party vendors in the last couple of days to determine the costs to have the data moved from the tapes to servers so that the data can be searched and then searching the data to try and determine what is relevant. The current estimate is around nine hundred thousand dollars ($900,000.00). This estimate is based on an estimate of 250 back up tapes. At this time the number of tapes is only an estimate. We are working on trying to determine the exact number of tapes. As soon as we get that answer we will provide you with the number of tapes. At that time we can get updated estimates from the vendors.

As you are aware the case law on electronic data indicates that the costs for these searches is imposed on the requesting party under certain circumstances. We believe that those circumstances apply to this case. You have indicated on more than one occasion that you have no direct evidence to prove your tort theories. While you may have a legal right to go on a fishing expedition your client should bear the costs of that fishing expedition.

If the search of electronic documents is performed it will be at your client's costs. Please advise as to whether your client want the search performed. Either you need to have your client make a cash deposit with our firm to cover these costs or your client needs to contract directly with the vendor so that MCI/Intermedia is not liable for these costs. If your client contracts directly with the vendor the results of the searches will be delivered to us for review\, and not to you or your client, so that we can determine what should not be produced and what should be produced.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                          Email:  lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.


**A 00919**

# EXHIBIT JJ

A 00920

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Friday, July 01, 2005 4:03 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Production by MCI/Intermedia

I have conferred with my client. There are some problems with your proposal. First, we are not interested in sharing the cost of retrieving boxes from your storage facilities. My client undertook significant time and expense to produce documents to you. We expect you to do the same. As I've said before, this is your obligation under the rules. In addition, your proposal does not indicate when you will turn over your documents. You have had our request since early February. We must have your documents to be able to depose your witnesses and to provide to our experts prior to the deadline to disclose expert opinions. Because you do not commit to turning over responsive documents by a deadline that is well in advance of the expert disclosure deadline, and because you want us to bear half the cost of retrieving boxes from your warehouses, we cannot agree to your proposal.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 29, 2005 3:19 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** Production by MCI/Intermedia

We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34(b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

1. Review by MCI/Intermedia: MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

   a. what should not be produced because it is protected by the attorney client privilege

   b. If you desire what is responsive to your requests. If you want to review everything and make this determination yourself that is acceptable to us.

2. Handing Over Documents: MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

3. Costs:

   a. Handling of Boxes: As you have been advised there is a cost to removing the boxes from the

A 00921

documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection. This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes. It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive. This cost is from one storage location, was a mere estimate, and may vary from location to location. We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf. We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute. We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

    b.   Copying: The cost of copying belongs to the requesting party. Therefore, your Client's will bear this entire expense.

4.   Location: You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

5.   Timing: In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time. MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way. We do not understand how you can object to the rest of the proposal. We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia. There is not much more a producing party can do other than give you these options. Rule 34(b) is very clear that a party has two options. We have selected one of the options as is our right. You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business). We are having a hard time determining what is it you really want.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847             Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00922

# EXHIBIT KK

A 00923

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Friday, July 01, 2005 11:52 AM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Befort, Jeff; Ramsay, Donald
**Subject:** supplemental responses to first request for production (Bigus).DOC

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                            Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

7/12/2005                                                                   A 00924

**STINSON MORRISON HECKER LLP**
**Lawrence W. Bigus, Esq.**
**Donald C. Ramsay, Esq.**
**9200 Indian Creek Pkwy., Ste. 450**
**Overland Park, KS 66210**
**Attorney for Debtors and**
**Debtors-in-Possession**


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | **CHAPTER 11 CASE** |
| | : | **NO. 02-13533 (AJG)** |
| **WORLDCOM, INC., et al.,** | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | |

## DEBTORS' SUPPLEMENTAL RESPONSES TO CLAIMANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

As set forth in Debtor's Responses to Claimant's First Request for Production of Documents Debtors have aggressively undertaken an investigation to locate documents responsive to the Request for Production. These efforts have continued and did not stop at the time that Debtor's Responses to the Request were filed. These efforts are continuing at this time. Debtors have regularly kept Claimant's advised as to the results of the continuing search for additional documents.

Since Debtor's Responses to the Request were filed Debtor's have located: 1) additional hard documents (Stored Boxes) which are in storage; 2) the back up tapes for electronic documents (Back Up Tapes); and 3) another group of documents, separately maintained from the Stored Boxes, which appear to relate to the MCI-Webley contract (MCI Documents).

A 00925

A.    **STATUS OF ADDITIONAL DOCUMENTS**.

1.    **MCI Documents**. Debtors are in the process of putting the MCI Documents onto computer discs for review. Debtors expect to deliver the MCI Documents to their counsel within the next two weeks. Counsel will review the MCI Documents to determine the scope of the documents and whether it is economically reasonable to make a determination as which of the MCI Documents are responsive to the Request for Production.

2.    **Stored Boxes**: The Stored Boxes are made up by in excess of ten thousand boxes. The indexes for the Stored Boxes have been provided to Claimants. The location of the storage facilities for the Stored Boxes has been provided to Claimants. The Stored Boxes have been produced by making them available to Claimants as they are kept in the usual course of business. Claimants have been told that they may inspect the Stored Boxes at any time they desire but that Claimants need to pay the third party charges that will be associated with inspection of the documents in the Stored Boxes. Therefore, these documents have been legally produced in accordance with Rule 34(b).

3.    **Back Up Tapes**: It currently appears that there are in excess of 250 Back Up Tapes. These tapes probably contain information which is privileged, confidential, responsive, and non-responsive. In order to determine what is on the Back Up Tapes the information must be transferred to searchable servers and then the information must be searched by electronic means.

2

A 00926

B.    **<u>OBJECTIONS: DEBTOR'S HEREBY OBJECT TO ALL REQUESTS FOR PRODUCTION OF DOCUMENTS ON THE GROUNDS THAT THE REQUESTS ARE UNDULY BURDENSOME AS SET FORTH BELOW</u>**.

1.    **MCI Documents**: Debtors need to determine the extent of the MCI Documents and the cost of searching the documents. After that determination has been made it may be possible to inspect the MCI Documents and then produce the responsive documents contained in the MCI Documents without undue cost in which case this objection will be removed as to the MCI Documents.

2.    **Stored Boxes**. The burden and expense of production of the Stored Boxes outweighs the likely benefit. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. This position by Claimant's makes Debtor's objections based on the production being unduly burdensome even stronger.

3.    **Back Up Tapes**. The burden and expense of reviewing the Back Up Tapes to determine what to produce is substantial - possibly in excess of one million dollars. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. To require Debtor's to expend in excess of one million dollars to enable Claimants to engage in a fishing expedition is not reasonable. This anticipated cost is based on estimates received from third party vendors to move the information from the back up tapes to servers so that the documents can be searched and then to search the documents for the documents requested by Claimants.

A 00927

4.    **Timing of Inspection**. It is obvious that even with the utmost effort inspection of the documents to determine what is responsive to Claimants Requests is very time consuming and cannot be accomplished in a short period of time. Therefore, any inspection of the documents will require a process over several months. Debtors object to Claimants Request for Production on the grounds that the Requests require immediate production and do not allow for reasonable inspection to determine what documents are responsive.

Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas 66210
Telephone: (913) 451-8600
Facsimile: (913) 451-6352
*Attorneys for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of July, 2005, Debtors' Supplemental Responses to Claimant's First Request for Production of Documents served by Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC was served on counsel for Claimant via electronic mail and U.S. mail, postage prepaid, addressed to:

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606
swood@kelleydrye.com
*Attorneys for Parus Holdings, Inc.*
*Successor-by-Merger to EffectNet, Inc.*

Lawrence W. Bigus, Esq.

4

A 00928

# EXHIBIT LL

A 00929

-----Original Message-----
**From:** Mercer, Theresa [mailto:TMercer@stinsonmoheck.com]
**Sent:** Friday, July 01, 2005 11:58 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence; Befort, Jeff
**Subject:** ltr to Stephen Wood re: Production of Documents by Claimants.DOC

Sent on behalf of Lawrence W. Bigus, Esq.


Theresa Mercer
Legal Secretary
Stinson Morrison Hecker LLP
1201 Walnut Street
Kansas City, MO 64106
(816) 691-2335 (telephone)
(816) 691-3495 (facsimile)
tmercer@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00930



**STINSON**

**MORRISON**

**HECKER LLP**

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450

9200 Indian Creek Parkway

Overland Park, KS 66210-2008

*Tel* (913) 451-8600

*Fax* (913) 451-6352

July 1, 2005

**VIA ELECTRONIC MAIL**

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:     Production of Documents by Claimants in Parus v.
MCI/Intermedia

Dear Mr. Wood:

As you are aware the Court has ruled that your clients have waived all objections to the Request for Production and the Interrogatories propounded on them in this case. Based on that ruling we are hereby formally requesting that your client:

1) serve revised discovery responses which eliminate all objections;

2) provide full and complete answers to all of the interrogatories which answers are not subject to any objections;

3) provide full and complete responses to all requests for production; and

4) produce all requested documents which have not been produced to date.

We request that this task be accomplished in the next ten days. If there is a logistical reason which makes the 10 day time period unreasonable please let us know what those logistical reasons are and we will be willing to work with you on a reasonable time frame.

We appreciate your immediate attention to this matter.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

LWB:tlm

048629:0094\6669444.1

**A 00931**

# EXHIBIT MM

A 00932

-----Original Message-----
**From:** Gagliardi, Lisa [mailto:LGagliardi@stinsonmoheck.com]
**Sent:** Friday, July 08, 2005 2:40 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence
**Subject:** WorldCom, Inc. - Claim of Parus Holdings, Inc.

Attached hereto please find two (2) letters from Larry Bigus regarding the above-named case.


**Lisa Gagliardi**
**Legal Secretary**
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008
Direct Dial Phone:  (913)344-8051
Direct Dial Fax:  1(888)759-6979



This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 00933



STINSON

MORRISON

HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 7, 2005

**VIA ELECTRONIC MAIL**

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:    Electronic Document Production by Debtors
       In re WorldCom, Inc. - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

As you are aware Debtors have located a substantial number of back up tapes and other electronic documents in connection with your Request for Production of Documents. You have not responded to the e-mail we sent you concerning cost shifting issues in connection with electronic discovery. Prior to filling a motion for protective order on this subject we want to make an attempt to resolve the issues.

At this time we are making the following proposal concerning electronic discovery:

1.    The discovery be postponed until after the Court rules on the summary judgment motion that we plan to file in the near future. The summary judgment motion will assume that all allegations in your pleadings are accurate. The summary judgment motion will be more in the nature of a traditional motion for failure to state a cause of action. We will basically be saying that even if you can prove everything you have alleged that your client does not have a cause of action against Debtors for tort, that the alleged damages are not legally recoverable, and that the contract damages are limited. If the motion is granted as to the tort claims then there will be no need to obtain the electronic discovery. You do not need the electronic discovery to respond to the summary judgment motion because the motion will assume that all of your allegations are correct.

2.    That Claimants pay the cost of searching the electronic files. Case law makes it clear that the Court has the authority to shift the costs in this manner.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

048629:0094_0019\6679423.1

**A 00934**

Stephen A. Wood
July 7, 2005
Page 2

      3.     That reasonable parameters be set in connection with searching the electronic discovery. Parameters such as only searching the files of agreed upon individuals, only searching certain back up tapes (the back up tapes are largely duplicative since each tape backs up everything that the particular servers being backed up contain) rather than every single back up tape and other similar parameters. The court decisions on this issue indicate that reasonable parameters designed to search the data most likely to produce information and which greatly reduce the costs can be adopted by the courts.

      By offering to produce electronic documents subject to the above we are not waiving the objections set forth in response to your clients request for production.

      If you are willing to compromise and work on these issues please let me know. If you cannot agree to the above proposal please respond with a particular proposal of your own rather than your usual outright rejection without any constructive proposals. If you are not willing to work together toward a reasonable solution to the issue of electronic production then we will have no choice but to file a motion for a protective order. We hope that this motion does not become necessary.

      Sincerely,

      **STINSON MORRISON HECKER** LLP

      Lawrence W. Bigus

LWB:lag



STINSON

MORRISON

HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 7, 2005

VIA ELECTRONIC MAIL

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:    Production by Parus/EffectNet
       In re WorldCom, Inc. - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

As you are aware your clients have failed to respond to the Court's order indicating that all of its objections are waived. Further, the documents that your client has produced indicate that your client's production was not a full and complete production, even if the objections stand – which they do not, contrary to the representations that you have made on many occasions.

A.    Waiver of Objections: As you are aware the Court has ruled that all of your client's objections to the Request for Production and the Interrogatories propounded by Debtors are waived. On July 1, 2005 we sent you a letter asking you to: 1) serve revised discovery responses which eliminate all objections; 2) provide full and complete answers and responses not subject to objections; 3) provide full and complete responses to all requests for production; and 4) produce all requested documents which have not been produced to date. At this time you have not even given us the courtesy of a response to our letter.

B.    Full and Complete Production: Your client has produced a volume of documents. We have reviewed all of the documents and read all but a handful of the documents. The following is clear from the documents that your client has produced: 1) the documents are from the files of one individual and do not include files from any other individual; 2) while the volume of documents is large, many of the documents are duplicative of each other and therefore the production is not as big as you keep claiming; 3) there are no documents from the individuals involved in the negotiations between Webley and MCI; 4) many of the documents are non-responsive documents which simply increase the count you keep using for the number

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

048629:0094_0019\6679360.1

A 00936

Stephen A. Wood
July 7, 2005
Page 2

of documents produced. These conclusions are clear because there are no copies of contracts, no negotiating notes, no documents from anyone's files except one person, no copies of the termination letters, no drafts of the contracts, no negotiating notes, and a lack of many other documents that should have obviously been included in a full production. You claim that your clients have gone to a lot of trouble, effort and expense to produce documents. It is clear that this is not the case.

Please comply with the requests set forth above in paragraph A on or before July 31, 2005. As you are aware the Request for Production has been outstanding now for over nine months. You keep complaining that Debtors have not produced their documents in connection with a request that has been outstanding for a little over four months, yet your clients have not fully responded in connection with requests that have been outstanding for over nine months.

If we do not receive acceptable amended responses together with a full document production by July 31, 2005, we will have no choice but to ask the Court for an informal conference on these issues.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

A 00937