STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Lawrence W. Bigus, Esq.
1201 Walnut, Suite 2900
Kansas City, MO  64106
Attorney for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | CHAPTER 11 CASE |
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

### WORLDCOM'S RESPONSE AND OPPOSITION TO CLAIMANT'S MOTION TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS AND TO EXTEND DISCOVERY DEADLINES

WorldCom, Inc. ("WorldCom") provides the following response and opposition to

Claimant Parus Holdings, Inc.'s ("Parus Holdings") Motion to Compel and to Extend Discovery

Deadlines ("Motion") (Docket No. 16423), which was filed on July 13, 2005.

### INTRODUCTION

WorldCom served timely objections and responses to Parus Holdings' document requests

and has made good faith efforts to locate documents maintained by its subsidiary Intermedia

Communications, Inc. ("Intermedia"), which ceased doing business long before Parus Holdings

ever filed its claims in this proceeding.  See Parus Holdings' Motion, Ex. D at 6 (¶ 16)

(WorldCom began dismantling Intermedia in July of 2001).  Over 10,000 boxes of Intermedia

documents have been located in depositories in four states, and the estimated cost of just

retrieving those documents for review is $149,000.  WorldCom has proposed reasonable and cost

efficient methods for retrieving the Intermedia documents, all of which have been rejected by

Parus Holdings.  Rather than offer reasonable counter-proposals, Parus Holdings seeks an order

A 01043

from this Court requiring WorldCom to retrieve and review all of the Intermedia documents at its own cost.

Parus Holdings' Motion is without merit and should be denied.  Given Parus Holdings' refusal to agree to any compromise position, WorldCom has retrieved and is reviewing boxes of Intermedia documents that, based on its review of the available document indexes, are most likely to contain responsive documents.  This review coupled with WorldCom's offer to make the Intermedia boxes available for Parus Holdings' own review at any time more than fulfills WorldCom's obligation to produce documents.  If the Court determines that WorldCom is required to retrieve and review all of the over 10,000 boxes of Intermedia documents, then discovery should be stayed until the Court rules on WorldCom's pending motion for summary judgment.  If WorldCom prevails on its motion, then most if not all of the documents Parus Holdings now seeks will be outside the proper scope of discovery.  If it later becomes necessary to continue discovery, then Parus Holdings should be ordered to share in the costs of WorldCom's production.

## **BACKGROUND**

**I.    THE NON-CONTRACT CLAIMS OF PARUS HOLDINGS FAIL AS A MATTER OF LAW AND NO DISCOVERY IS REQUIRED FROM DEBTORS REGARDING THE REMAINING CONTRACT CLAIM.**

Parus Holdings seeks recovery from Intermedia in this proceeding for breach of contract (Parus Holdings' Motion at 4 (¶ 6)) and recovery from Intermedia and WorldCom under multiple theories sounding in tort – civil conspiracy, tortious interference with contract, breach of an implied covenant of good faith and fair dealing, and alleged violation of trade practice acts.  Id. at 4-5 (¶ 8).  However, as explained in WorldCom's Motion for Summary Judgment (Docket Nos. 16645 and 16646), the non-contract claims of Parus Holdings fail as a matter of law.

2

A 01044

- The tort theories of civil conspiracy and tortious interference with contract fail because the assertedly conspiratorial and/or interfering conduct was between a parent corporation (WorldCom) and its wholly owned subsidiary (Intermedia), a unified interest relationship that precludes such claims as a matter of law.

- The claim for breach of an implied covenant of good faith and fair dealing fails because the UC Contract at issue was an ordinary private commercial agreement between two business entities, whose contractual relationship did not embrace public interest, arise from a position of adhesion or involve fiduciary responsibilities.

- The claim for purported violation of deceptive trade practice acts fails because neither WorldCom nor Intermedia sold any service or product to EffectNet.  Indeed, it was the other way around. Moreover, EffectNet was not the target of any deceptive advertising, and claimant therefore cannot maintain an action under the Arizona Consumer Fraud Act.

See Memorandum in Support of WorldCom's Motion for Summary Judgment (Docket No. 16646).  If the Court grants WorldCom's Motion for Summary Judgment, as WorldCom believes it should, the remaining breach of contract claim can be decided by the Court without resort to evidence outside the contract, other than Parus Holdings' own accounting records.  This is because the parties' contract contains provisions (1) specifying the methodology for determining the monetary consequences of contract termination such as occurred here, and that yields a recovery to Parus Holdings of no more than $460,442.30, and (2) prohibiting any other form of damages.  See Appendix to WorldCom's Motion for Summary Judgment at Ex. A (Docket No. 16645).[1]

---

[1]  The damage limitation provision of the parties' contract is comprehensive and reads as follows:

> LIMITATION OF LIABILITY.  EXCEPT FOR DAMAGES ARISING UNDER SECTION [left blank in original], IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OF ANY KIND INCLUDING WITHOUT LIMITATION, LOSS OF PROFITS, LOSS OF BUSINESS OR INTERRUPTION OF BUSINESS, WHETHER SUCH LIABILITY IS PREDICATED ON CONTRACT, STRICT LIABILITY OR

(footnote continued)

A 01045

## II.    MOST OF THE DOCUMENTATION SOUGHT BY PARUS HOLDINGS RELATES TO ITS DEFICIENT NON-CONTRACT CLAIMS.

Parus Holdings' extremely broad document requests primarily seek documents related to the liability and damage aspects of its tort claims.  For example, Parus Holdings seeks documents concerning:

1) the finances, business, technology and products, and any financial evaluation or analysis of EffectNet and Webley Systems, Inc. ("Webley," the focus of Parus Holdings' allegations of tortious conduct by WorldCom; Motion at 4, ¶ 7) (Request Nos. 11 and 12);

2) negotiations, drafting and execution of the Webley Master Agreement for Software Licenses Contract ("MASL") (Request No. 13);

3) communications between WorldCom and Webley regarding the MASL Contract (Request No. 23);

4) communications from September 1, 2000, to the present regarding products and services offered to WorldCom under the MASL Contract (Request No. 24);

5) the prices to be paid for licenses obtained from Webley under the MASL Contract (Request No. 25);

6) payments under the MASL Contract (Request No. 26);

7) the merger between Intermedia and WorldCom that relate to unified communications products (the type of products sold by EffectNet to Intermedia) (Request No. 34); and

8) WorldCom and Intermedia's efforts to develop, market and obtain their own unified communications product (Request No. 35).

None of these document requests would be within the proper scope of discovery if WorldCom's Motion for Summary Judgment is granted.[2]

---

ANY OTHER THEORY WITHOUT REGARD TO WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Id. at Ex. A, UC Contract § 11.

[2]  Parus Holdings further contends that WorldCom must search the files of all Debtors involved in this proceeding for responsive documents even though WorldCom and Intermedia are the only
(footnote continued)

A 01046

## ARGUMENT

I. **PARUS HOLDINGS HAS REFUSED TO CONSIDER ANY REASONABLE PROPOSAL FOR THE RETRIEVAL AND REVIEW OF WORLDCOM'S DOCUMENTS.**

   A. **WorldCom Disagrees With Parus Holdings' Characterization Of Counsels' Communications Regarding Document Production.**

Over 15 pages of Parus Holdings' motion is dedicated almost exclusively to a detailed recitation of telephone calls, emails and letters that counsel for the parties exchanged regarding WorldCom's document production. See generally Parus Holdings' Motion at 5-23. WorldCom disagrees with Parus Holdings' characterization of the parties' counsel's communications, but also believes that a recitation of its version of the communications would be counter-productive. The correspondence between the parties' counsel speaks for itself and demonstrates that WorldCom at all times has acted in good faith in an effort to resolve the issues related to its document production.[3]

---

two Debtors with any relationship to Parus Holdings' claims. See Parus Holdings' Motion at 10 (¶ 25) ("Debtors had an obligation to produce any and all responsive documents . . . [from] any and all of the WorldCom Debtors as well as their officers, directors, employees, partners, corporate parent subsidiaries or affiliates.") This unreasonable demand for irrelevant information only broadens the scope of Parus Holdings' requests.

[3] Although resolved before Parus Holdings filed its Motion, Parus Holdings complains at length that WorldCom would not agree to an extension of Parus Holdings' deadline to designate experts until after WorldCom completed its document production. See, e.g., Parus Holdings' Motion at 8 (¶¶ 19-21). WorldCom's position was based on its understanding that Parus Holdings' experts would opine solely regarding EffectNet's alleged damages, and it was therefore unclear how WorldCom's or Intermedia's documents could relate to this issue. See June 1, 2005, letter from Mr. Bigus to Mr. Wood (Ex. A). WorldCom requested that Parus Holdings provide further information regarding the requested extension including the proposed new deadline, the subjects on which the Parus Holdings' experts will testify and the number of its experts. See June 16, 17 and 19, 2005, emails from Mr. Bigus to Mr. Wood (Ex. B). Parus Holdings eventually provided information generally describing the subjects on which its experts will testify. See June 20, 2005, email from Mr. Wood to Mr. Bigus (Ex. C). WorldCom then proposed a 120-day extension for Parus to designate its experts with the understanding that, if the extension were inadequate, the deadline could be revisited towards the end of the 120 days. See June 29, 2005,

(footnote continued)

A 01047

### B. WorldCom Has Made Good Faith Proposals For Resolving Issues Related To The Retrieval And Review Of Responsive Documents.

Parus Holdings' Motion ignores that Intermedia's documents were boxed and its computer system dismantled long before Parus Holdings filed its document requests in this proceeding. The Intermedia documents are warehoused in over 10,000 boxes in Florida, Mississippi, Virginia and Colorado.  See Declaration of Donald C. Ramsay ("Ramsay Declaration") ¶ 2 (Ex. E). Based on a written estimate by Iron Mountain, WorldCom's warehouse provider, it would cost $149,000 to retrieve the 10,000 boxes, ship them to the Kansas City Iron Mountain facility, obtain space in that facility for review of the documents and return them to storage.  Id.  This bid covers only the logistical costs for making the boxed documents available for review.  Id.  It does not cover the costs of reviewing those documents by qualified personnel, sorting any responsive documents into appropriate categories and preparing a privilege log.  Id.  The costs associated with these substantive tasks could easily approximate or exceed the $149,000 cost for the logistical aspects of the document production.  Id.

### 1. WorldCom offered Parus Holdings the opportunity to select boxes from the indexes for WorldCom's review or access to the depositories so that Parus Holdings could conduct its own review.

Given the costs associated with the retrieval and review of the Intermedia documents, WorldCom offered to provide Parus Holdings with the indexes for the boxes and allow Parus Holdings to select which of the boxes it would like WorldCom to review.  See May 31, 2005, and June 9, 2005, letters from Mr. Bigus to Mr. Wood (Exs. F and G).  Parus Holdings' counsel eventually agreed to review the indexes.  See June 14, 2005, email from Mr. Wood to Mr. Bigus

---

email from Mr. Bigus to Mr. Wood (Ex. D).  Thus, Parus Holdings' complaints regarding this extension were moot before it filed the current motion to compel.  See Parus Holdings' Motion at 18 (¶ 43).

6

A 01048

(Ex. H).  Although the indexes are not overly detailed or precise, they certainly are not "useless," as Parus Holdings now suggests.  See Parus Holdings' Motion at 16 (¶ 38).  On the contrary, as Parus Holdings' counsel previously acknowledged, the indexes can be used, at a minimum, to identify and rule out many boxes that are unrelated to this action.  See June 27, 2005, letter from Mr. Wood to Mr. Bigus (Ex. I) (stating that the content descriptions in the index are "either too general, *obviously nonresponsive*, or otherwise meaningless to [Parus Holdings]." (emphasis added)).  Parus Holdings' counsel, however, refused to identify any boxes on the index for WorldCom to review.  Id.  WorldCom then offered Parus Holdings access to all of the Intermedia boxes so that it could conduct its own review.  See June 28, 2005, email from Mr. Bigus to Mr. Wood (Ex. J).  Parus Holdings refused this offer as well.  Id.

WorldCom's offers to Parus Holdings were made in good faith, and were reasonable under the circumstances and appropriate under the law.  Pursuant to Fed. R. Civ. P. 34, WorldCom is permitted to produce documents as they are maintained in the normal course of business.  Parus Holdings cites to several cases claiming that documents may not be produced by simply making files available for the requesting party's review.  Parus Holdings' Motion at 25-28 (¶¶ 58-59, 63).  But only one of those cases, Hagemeyer North America v. Gateway Data Science Corporation, 222 F.R.D. 594 (E.D. Wis. 2004), see Parus Holdings' Motion at 26 (¶ 58), is relevant, and it actually supports WorldCom's position.  In Hagemeyer, the court held, under circumstances similar to those presented here, that a company may simply make its boxes of documents available for the requesting party's review.  The court in Hagemeyer noted that a producing party may not attempt to "hide a needle in a haystack." Id. at 598.  However, the court found that, because the producing party's documents were stored in a storage facility for a number of years in labeled boxes (as is the situation here), the producing party had not

7

A 01049

deliberately attempted to hide responsive documents among non-responsive documents.  Id.
The court then concluded that the producing party properly had produced the documents as they
were kept in the usual course of business by making the boxes of documents available for the
requesting party's inspection.  Id.  A similar conclusion was reached in Dangler v. New York
City Off Track Betting, No. 95CV8495, 2000 WL 1510090 (S.D.N.Y. Oct. 11, 2000).  The court
in Dangler refused to make the defendants organize responsive documents finding that, at the
time of the request, "the defendants were keeping the documents in dozens of boxes, and if the
documents were disorganized it was not because the defendants maliciously messed them up."
Id. at *1.[4]

Thus, even under the relevant authority Parus Holdings cites, WorldCom's proposed
methods for producing documents were legally supported and appropriate under the
circumstances.

### 2. WorldCom offered to retrieve and review the Intermedia documents provided that Parus Holdings shared in the cost of retrieval.

Although WorldCom produced its documents in accordance with Rule 34 by providing
Parus Holdings access to the Intermedia documents, it continued to search for a method of
production that would be acceptable to both parties.  WorldCom next offered to retrieve and
review the Intermedia documents itself provided that Parus Holdings split the costs of retrieving
the documents.  See June 29, 2005, email from Mr. Bigus to Mr. Wood (Ex. K); July 1, 2005,

---

[4]  Parus Holdings asserts that the court's ruling in Chemtex, LLC v. St. Anthony Enterprises, No.
03Civ4263, 2004 WL 764781 (S.D.N.Y. 2004 April 9, 2004), is "virtually on all fours with the
case at bar."  See Parus Holdings' Motion at 28 (¶ 63).  However, the court's opinion does not
reflect whether the responding party was an ongoing company or defunct like Intermedia.
Without this information, there is no basis to assume that Chemtex is on point.  The court's
holding in Hagemeyer, which Parus Holdings cites with approval, provides the more helpful
analysis under the facts presented.

A 01050

emails from Mr. Wood to Mr. Bigus (Ex. L).  Parus Holdings refused this proposal too, and filed

its motion to compel.  See Parus Holdings' Motion at 19-20 (¶ 45).  But, as discussed *infra* pp.

13-17, if WorldCom is required to review the over 10,000 boxes of Intermedia documents, then

the application of Fed. R. Civ. P. 26(c), which protects a party from undue burden or expense,

and applicable case law require that Parus Holdings share in the cost of WorldCom's document

production.

### C.    WorldCom Has Selected And Will Review Those Intermedia Boxes That May Contain Responsive Documents.

As further evidence of its good faith, WorldCom is undertaking one more attempt to offer

a reasonable compromise with regard to the Intermedia documents.  Using the document

indexes, WorldCom has identified 387 of the over 10,000 boxes of documents in the Florida,

Virginia and Colorado depositories that – either based on the date or subject matter description

listed on the index or the lack thereof – may contain responsive documents.[5]  Ramsay

Declaration ¶ 3 (Ex. E). These boxes are being shipped to WorldCom's counsel's office to avoid

the costs associated with using depository space for review and travel, and to ensure that the

---

[5]  The contract at issue is dated November 20, 2000.  See Parus Holdings' Motion at 2 (¶ 6).  The contract was terminated by EffectNet on April 12, 2002.  See March 25, 2002, letter from Mr. McConnell to Mr. Bacon (Ex. M).  WorldCom has not retrieved boxes that are dated before January 1, 2000, unless it appears  based on their description that they may contain potentially responsive documents.  Ramsay Declaration ¶ 3 (Ex. E).

A 01051

boxes will remain easily accessible throughout this case.  Id. ¶ 4.[6]  WorldCom's counsel already

has received some of these boxes and is reviewing them.  Id.[7]

 The use of the date and subject matter (or the lack thereof) as selection criteria should

ensure that all potentially responsive documents are reviewed.  Parus Holdings could have

selected boxes for WorldCom to review using this same criteria months ago, but declined to

make any selection at all.  There is no basis to assume that a search of the thousands of

remaining boxes of Intermedia documents, which are either outside the relevant time frame or

are unrelated to the subject of Parus Holdings' claims, will likely unearth any truly relevant

information.  As a result, WorldCom should not be required to undertake a burdensome and

costly search of these boxes.  See Fletcher v. Atex, Inc., 156 F.R.D. 45, 54-55 (S.D.N.Y. 1994)

(holding that it is a rare case where a litigant will be required to go through the "proverbial

haystack in search of a needle").  The Court should determine that the review of the 387 boxes

coupled with WorldCom's offer to make all Intermedia documents available for Parus Holdings'

own review constitutes a good faith production of Intermedia's documents.

## II. IF WORLDCOM IS REQUIRED TO REVIEW ALL INTERMEDIA BOXES, THEN DISCOVERY SHOULD BE STAYED PENDING THE COURT'S RULING ON WORLDCOM'S MOTION FOR SUMMARY JUDGMENT.

 WorldCom should not be required to retrieve and review all of the Intermedia boxes

given that the indexes provide a reasonable basis for selecting the boxes that should be reviewed.

If, however, the Court believes that a review of all Intermedia documents may be necessary, the

---

[6]  Consistent with its discovery objections, WorldCom does not intend at this time to retrieve and review Intermedia boxes that, based on the subject matter and/or time period described on the indexes, are unrelated to this action.  Id. ¶ 3.

[7]  WorldCom also is continuing its efforts to locate any additional sources of its own paper and electronic documents that may be responsive to Parus Holdings' document requests.  Ramsay Declaration ¶ 7 (Ex. E).

A 01052

Court should stay discovery pending its ruling on WorldCom's Motion for Summary Judgment.[8]

As explained in WorldCom's motion, Parus Holdings' tort claims fail as a matter of law and no

discovery is required from WorldCom regarding the remaining contract claim. See supra pp. 2-

4; see also WorldCom's Motion for Summary Judgment and Memorandum in Support (Docket

Nos. 16645 and 16646). Most of Parus Holdings' document requests seek documents related to

the liability and damages aspects of its tort claims. See supra pp. 4-5 (identifying Parus

Holdings' document requests). These requests will be outside the scope of proper discovery if

WorldCom prevails on its Motion for Summary Judgment. In light of the costs associated with

the retrieval and review of all Intermedia documents, a stay of discovery is warranted until the

Court determines whether Parus Holdings' tort claims may even proceed.[9]

　　　Fed. R. Civ. P. 26(c) authorizes the Court to stay discovery upon a finding of good cause.

See Johnson v. New York Univ. School of Education, 205 F.R.D. 433, 434 (S.D.N.Y. 2002)

---

[8]  WorldCom proposed to Parus Holdings that the parties seek a stay pending the Court's ruling. See July 7, 2005, letter from Mr. Bigus to Mr. Wood (Ex. N).

[9]  A stay is particularly warranted given the costs WorldCom also faces with respect to Intermedia's electronic documents. WorldCom has located 483 monthly backup tapes for Intermedia, which includes 378 monthly backup tapes for the period January 1, 2000, through December 31, 2002, and 105 email backup tapes for the same period. Declaration of Julio O. Valdes ¶ 4 (Ex. O). It is estimated that there may be 15 gigabytes of data per backup tape, for a total of approximately 7,245 gigabytes of data. Id. ¶ 4. This would be the equivalent of approximately 7.245 terabytes of data. Id. Just a single terabyte of data is the equivalent of 500 billion typewritten pages. See Hagemeyer, 222 F.R.D. at 601. Based on the assumptions that all 483 of the backup tapes will be searched, that only 2% of the stored data will be responsive to Parus Holdings' document requests and that electronic searches will be conducted by name of individual and key words, WorldCom received bids from vendors ranging from $496,140 to $2,188,825 to perform the work. Ramsay Declaration ¶ 6 (Ex. E). None of these bids account for review of the retrieved documents and preparation of necessary logs by qualified legal personnel. Id. Although Parus Holdings' Motion states that it does not address electronic discovery, Parus Holdings' document requests do seek discovery of electronically stored documents. See Parus Holdings' Motion at 30-31 (¶ 68), and Ex. G (Request No. 2). The costs WorldCom faces in producing electronic discovery would be staggering.

A 01053

(granting stay, and considering "the breadth of discovery sought and the burden of responding to it"); Spencer Trask Software and Information Services LLC v. RPost Int'l Ltd., 206 F.R.D. 367, 368 (S.D.N.Y. 2002).  "Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." Spencer Trask, 206 F.R.D. at 368 (holding that proceeding with discovery during pendency of a motion to dismiss "would unnecessarily drain the parties' resources").  The Court also may control the timing and sequence of discovery under Fed. R. Civ. P. 26(d).  Johnson, 205 F.R.D. at 434.  Relying on these provisions, courts have held "that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.'" Johnson, 205 F.R.D. at 434 (quoting In re Currency Conversion Fee Antitrust Litigation, 2002 U.S. Dist. LEXIS 974, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (internal quotations omitted)).  Here, as explained in WorldCom's Motion for Summary Judgment, there are indeed substantial grounds for holding that the non-contract claims of Parus Holdings' fail as a matter of law.

Absent these tort claims, the only issue in this case is the amount of damages allegedly owed by Intermedia for its breach of the contract.  Based on the express provision for the dollar value of those obligations in the parties' contract, WorldCom's liability for breach of that contract is no more than $460,422.30.  See WorldCom's Memorandum in Support of Motion for Summary Judgment at 12-15 (Docket No. 16646).  This amount is far less than it will cost to undertake the production of Intermedia's documents, particularly when electronic discovery is included in the analysis.  Thus, a stay of discovery pending the Court's ruling on WorldCom's Motion for Summary Judgment is in the interest of both parties because, as discussed below, if

A 01054

discovery is required to proceed, the costs for retrieving WorldCom's documents should be shared by Parus Holdings.

### III.    IF IT BECOMES NECESSARY FOR WORLDCOM TO REVIEW ALL OF INTERMEDIA'S DOCUMENTS, THEN PARUS HOLDINGS SHOULD SHARE IN THE COSTS.

Parus Holdings asserts that it has incurred substantial expense in producing 23,000 pages of documents to WorldCom and, consequently, WorldCom should bear the entire cost of retrieving its own paper documents.  See Parus Holdings' Motion at 16-17, 30 (¶¶ 39, 67).  Parus Holdings overstates the breadth of its production by failing to note that it produced the equivalent of only 10 boxes of documents containing numerous duplicates, and that the documents appear to be from a single employee.  More importantly, however, the efforts undertaken by Parus Holdings to produce 10 boxes of documents are not determinative of whether Parus Holdings should share in the costs if WorldCom is required to retrieve and review the over 10,000 boxes of Intermedia documents.

Fed. R. Civ. P. 26(c) gives the Court broad authority to protect a party from undue burden or expense by ordering relief ranging from a complete bar of the discovery to reasonable restrictions.  Under Rule 26(c), the Court may impose limits on the scope of the discovery by weighing the benefits against the burden of the discovery, and may shift the costs of discovery. Mitchell v Fishbein, 227 F.R.D. 239 (S.D.N.Y. 2005); Zubulake v UBS Warburg, 217 F.R.D. 309 (S.D.N.Y. 2003) (Zubulake I); see also Hagemeyer, 222 F.R.D. at 601 (holding that Rule 26 gives the court broad discretion to create any order that would spare a party undue burden or expense, including orders shifting the cost of production).

Cost-shifting should be considered when discovery imposes an undue burden or expense on the requesting party.  Zubulake I, 217 F.R.D. at 318.  Whether production of documents is unduly burdensome or expensive turns primarily on whether the documents are kept in an

A 01055

accessible or inaccessible format, "a distinction that corresponds closely to the expense of production." Id. at 318. Here, there is no question that the Intermedia documents are "inaccessible" as that term is defined in Zubulake I because they are not indexed in a manner that matches the issues in this action. See id. at 318 (paper documents may be inaccessible when the indexing or lack of thereof makes searches impractical). The electronic documents are similarly inaccessible because they cannot be retrieved and restored without incurring substantial costs. See id. at 319 (holding that backup tapes are inaccessible); see also Ramsay Declaration ¶ 6 (Ex. E).

Parus Holdings has indicated a willingness to discuss cost-shifting as to WorldCom's electronic documents, but refuses to share in the costs of retrieving WorldCom's paper documents. See Parus Holdings' Motion at 30 (¶ 66). Cost-shifting, however, may be ordered with respect to paper documents too. In fact, although electronic discovery was at issue in Zubulake I, the court did not limit cost-shifting to electronic data. Id. The court noted that paper documents also may be inaccessible if, among other things, the documents are "in storage in a difficult to reach place," or "kept haphazardly with no indexing system, in quantities that make page-by-page searches impracticable." Id.; see Multitechnology Services, L.P. v Verizon Southwest, No. 4:02-CV-702, 2004 WL 1553480, at *1-2 (N.D. Tex. July 12, 2004) (holding that the court has authority to shift costs regardless of whether the information sought is available on paper or electronically).

**A.     Application of the <u>Zubulake I</u> Factors to the Present Circumstances Favors Shifting a Substantial Portion of Discovery Costs to Parus Holdings.**

In Zubulake I, the court held that the following factors should be considered in determining whether discovery costs should be shifted to or shared by the requesting party:

1.     The extent to which the request is specifically tailored to discover relevant information;

A 01056

2.      The availability of such information from other resources;

3.      The total cost of production compared to the amount in controversy;

4.      The total costs of production compared to the resources available to each party;

5.      The relative ability of the parties to pay the costs and their incentive to do so;

6.      The importance of the issues at stake in the litigation; and

7.      The relative benefits to the parties of obtaining the information.

Zubulake I, 217 F.R.D. at 321-24.[10]  Applying the Zubulake I factors to the inaccessible

documents in this case demonstrates that cost-shifting is warranted:

Factors 1 and 2 -- The extent to which the requests are tailored to discover relevant

information and the availability of such information from other resources.  The court identified

these as the two most important factors in determining the cost-shifting issue.  Zubulake I, 217

F.R.D. at 318.  The less likely it is that the documents contain information relevant to a claim or

defense, the more unjust it would be to make the responding party search for the documents at its

own expense.  Id.  In this case, Parus Holdings' document requests relate primarily to its tort

claims and can fairly be described as a "fishing expedition."  For as Parus Holdings concedes, its

tort claims of civil conspiracy and tortious interference with contract are simply based on the

"juxtaposition" of the timing of Intermedia's breach of the UC Contract and WorldCom's

---

[10]  Zubulake modified a list of factors previously articulated by the court in Rowe Entertainment, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421 (S.D.N.Y. 2002).  Courts in other jurisdictions have used the factors articulated in Rowe and Zubulake to resolve cost-shifting issues, often resulting in cost-shifting for the costs of restoring and searching backup tapes.  See, e.g., Wiginton v CB Richard Ellis, Inc., No. 02C6832, 2004 WL 1895122, at *8 (N.D. Ill. Aug. 10, 2004) (holding that plaintiff required to pay 75% of costs restoring backup tapes, searching data and transferring data to electronic viewer); Murphy Oil v Fluor Daniel, Inc., Case No. 99-3564, 2002 WL 246439, at *8-9 (E.D. La. Feb. 19, 2002) (holding that costs of restoring email backup tapes shifted to requesting party); Byers v. Illinois State Police, No. 99C8105, 2002 WL 1264004, at *10-12 (N.D. Ill. June 3, 2002) (holding that plaintiffs were entitled to archived email only if they were willing to pay the costs).

A 01057

negotiations of the MASL with EffectNet's sister company, Webley.  See Response and Opposition of Parus Holdings, Inc. to Debtors' First Amended Objection to All Proofs of Claim by EffectNet, Inc. at 2-3 (¶¶ 3-7) (Docket No. 16247).  Nevertheless, Parus Holdings seeks broad discovery on all documents concerning the MASL and all efforts by WorldCom to develop or obtain unified messaging products.  See supra pp. 4-5 (describing Parus Holdings' document requests).

In addition, by reviewing those boxes identified on the indexes that may contain responsive documents, WorldCom already will have reviewed the likely sources of documents.

Factors 3, 4 and 5 – Cost issues.  The court's ruling in Zubulake I groups factors 3, 4 and 5 together into a category referred to as "cost issues:"  "'How expensive will this production be?' and, 'Who can handle that expense?'"  Zubulake I, 217 F.R.D. at 323.  These factors also mitigate in favor of cost-shifting in this case.  WorldCom is responding to claims as a debtor in a bankruptcy proceeding.  The estimated costs responding to Parus Holdings' document requests are extremely high (see supra pp. 6, 11 n.9)–equaling or exceeding the probable amount of recovery to be obtained by Parus Holdings under its single, viable contract claim.  See Parus Holdings' Response ¶ 38; WorldCom's Memorandum in Support of Motion for Summary Judgment at 12-15 (Docket No. 16646).

Factors 6 and 7 – The importance of the issues at stake in the litigation and the benefit to the parties of retrieval.  These factors also favor cost-shifting.  This action involves a business dispute and nothing more.  Compare Zubulake I, 217 F.R.D. at 321 (describing actions involving "important issues" as including toxic tort class actions, environmental actions, and "so called 'impact' or social reform litigation").  Also, WorldCom has no business purpose for retrieving

16

these documents.  Any benefit of retrieval will be derived solely by Parus Holdings, which hopes to use the documents in the litigation.

Application of the <u>Zubulake</u> factors to the circumstances of this case overwhelmingly favors shifting to Parus Holdings a substantial percentage of the costs related to responding to its document requests.[11]

## IV.    PARUS HOLDINGS IS NOT ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Parus Holdings has failed to provide any factual or legal support for its request for an award of the attorney's fees incurred in filing its motion.  <u>See</u> Parus Holdings' Motion at 32-33 (requesting an award of attorney's fees without discussion of the factual or legal basis that would support such an award).  WorldCom has not disregarded any orders of this Court.  It timely responded to Parus Holdings' document requests.  It has attempted in good faith to resolve issues related to the complicated process of identifying, retrieving and reviewing the large quantities of documents belonging to a company that ceased doing business long before Parus Holdings filed its claim.  Under these circumstances, there is no basis for awarding Parus Holdings its attorney's fees.  <u>See</u>, <u>e.g.</u>, <u>Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi</u>, No. 94CIV1942, 1995 WL 686715, at *9 (S.D.N.Y. Nov. 17, 1995) (holding that the opposition to the plaintiff's motion to compel was plainly justified in light of the circumstances and, thus, sanctions were not warranted); <u>New Colt Holding Corp. v. RJG Holdings of Florida, Inc.</u>, No. 3:02 CIV173, 2003 WL22327167, at *3 (D. Conn. June 17, 2003) (holding that sanctions are appropriate for "especially serious disregard of the obligations imposed by the discovery rules" and that,

---

[11]  WorldCom does not seek a determination of that percentage at this time.  Instead, it respectfully suggests that such a determination await the Court's ruling on whether discovery is to be stayed.  If the Court determines that discovery is to proceed, allocation of costs to undertake that discovery would then be ripe for decision.

A 01059

although defendants' objection to interrogatories were overruled, they did not provide a basis for sanctions).

**<u>CONCLUSION</u>**

For the reasons set forth herein, Parus Holdings' Motion to Compel and to Extend Discovery Deadlines should be denied.  WorldCom has fulfilled its obligations to produce documents by making the Intermedia documents available for Parus Holdings' review and, further, by using the document indexes to identify and review those boxes of Intermedia documents that may contain responsive documents.  If WorldCom is required to retrieve and review all of the over 10,000 boxes of Intermedia documents, then discovery should be stayed until the Court determines whether Parus Holdings' tort claims may proceed as a matter of law.  Further, if it becomes necessary to undertake such a review, then Parus Holdings should be ordered to share in the costs of that production.  Finally, Parus Holdings' request for an award of attorney's fees should be denied because WorldCom has not disregarded any discovery order of this Court nor has it refused to produce documents.

Respectfully submitted,

STINSON MORRISON HECKER LLP


By:   *s/Robert L. Driscoll*
       Robert L. Driscoll
       Lawrence W. Bigus
       1201 Walnut Street, Suite 2800
       Kansas City, MO  64106
       (816) 842-8600 – Telephone
       (816) 691-3495 – Facsimile

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

A 01060

## CERTIFICATE OF SERVICE

I hereby certify that on August 4, 2005, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all parties receiving electronic means.

_s/Robert L. Driscoll_
Attorney for Debtors

DB02/048629 0094/6730218.2

**A 01061**

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Lawrence W. Bigus, Esq.
1201 Walnut Street
Kansas City, MO  64106
Telephone:  (816) 842-8600
Facsimile:  (816) 691-3495
Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
In re                                                   :
                                                        :        Chapter 11 Case No. 02-13533 (AJG)
WORLDCOM, INC., et al.,                                 :
                                                        :        (Jointly Administered)
                            Debtors.                    :
------------------------------------------------------------------------x

**APPENDIX OF EXHIBITS TO WORLDCOM'S RESPONSE AND OPPOSITION TO
CLAIMANT'S MOTION TO COMPEL PRODUCTION OF RESPONSIVE
DOCUMENTS AND TO EXTEND DISCOVERY DEADLINES**

| **Exhibit** | **Description** |
|---|---|
| A. | June 1, 2005 letter from Mr. Bigus to Mr. Wood |
| B. | June 16, 17 and 19, 2005 e-mails from Mr. Bigus to Mr. Wood |
| C. | June 20, 2005 e-mail from Mr. Wood to Mr. Bigus |
| D. | June 29, 2005 e-mail from Mr. Bigus to Mr. Wood |
| E. | Declaration of Donald C. Ramsay |
| F. | May 31, 2005 letter from Mr. Bigus to Mr. Wood |
| G. | June 9, 2005 letter from Mr. Bigus to Mr. Wood |
| H. | June 14, 2005 e-mail from Mr. Wood to Mr. Bigus |
| I. | June 27, 2005 letter from Mr. Wood to Mr. Bigus |
| J. | June 28, 2005 e-mail from Mr. Wood to Mr. Bigus |
| K. | June 29, 2005 e-mail from Mr. Bigus to Mr. Wood |
| L. | July 1, 2005 e-mails from Mr. Wood to Mr. Bigus |

A 01062

M.          March 25, 2002 letter from Mr. McConnell to Mr. Bacon

N.          July 7, 2005 letter from Mr. Bigus to Mr. Wood

O.          Declaration of Julio Valdes

**A 01063**

# EXHIBIT A

A 01064



**STINSON**

**MORRISON**

**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450

9200 Indian Creek Parkway

Overland Park, KS 66210-2008

*Tel* (913) 451-8600

*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

> Re:    Extension of Deadlines
> In re WorldCom, Inc. - Chapter 11
> Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

LWB:lag

6593760.1

**Exhibit AA 01065**

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Gagliardi, Lisa |
| **Sent:** | Wednesday, June 01, 2005 2:54 PM |
| **To:** | 'swood@kelleydrye.com' |
| **Cc:** | Bigus, Lawrence; Ramsay, Donald |
| **Subject:** | WorldCom, Inc. - Parus Holdings, Inc. |
| **Attachments:** | Ltr to Steve Wood re extension of expert witness deadline.DOC¤; Ltr to Steve Wood re doc production by debtors - MCI _ EffectNet.DOC¤ |

Attached hereto please find two (2) letters from Larry Bigus regarding the above.


**Lisa Gagliardi**
**Legal Secretary**
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008
Direct Dial Phone:  (913)344-8051
Direct Dial Fax:  1(888)759-6979

A 01066

# EXHIBIT B

A 01067

## Gagliardi, Lisa

**From:** Wood, Stephen [SWood@KelleyDrye.com]
**Sent:** Thursday, June 16, 2005 12:58 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Scheduling Order Deadlines in Parus v. MCI

I appreciate your consideration of this request. With regard to the time, its more a matter of properly sequencing discovery and setting up the deadline for expert disclosures once fact discovery, to include depositions of the current/former employees of debtors, is substantially underway. So, the deadline should allow sufficient time to review debtors' documents and take some of the depositions of the current/former employees of debtors. I am happy to discuss with you a reasonable time period.

I am not absolutely certain of the number of experts I would like to call at trial. However many there are, the issue again is permitting them access to the factual record to include debtors' documents and witnesses in advance of the disclosure deadline. Again, I could better assess the requirement after conducting fact discovery. Whatever estimate I give you now is subject to change after I have reviewed your documents and taken depositions of persons involved in the events.

With regard to subject matters, we have addressed this to some degree in our June 6th letter to the court requesting an informal conference. Do you need more information than this?

I am likely out most of tomorrow, but will be in the office Monday morning.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Thursday, June 16, 2005 9:13 AM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald
**Subject:** Scheduling Order Deadlines in Parus v. MCI

You have asked for an extension of time to name experts in the above referenced case. You have not indicated how much time you want. At this time we are considering your request. You claim that you need the extension because you cannot name experts on the subject of Claimant's damages until you review Debtor's documents. In order to help us understand why you need the additional time please provide us with the following information:

1.   How much time you are seeking.

2.   The subjects on which you intend to have experts testify.

3.   How many experts you intend to have testify.

Upon receipt of the above information we will discuss the request for extended deadlines with our client. If we receive the information today we should be in a position to discuss your request with you either tomorrow or early Monday. Thank you in advance for sending the information.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                    Email: lbigus@stinsonmoheck.com

7/18/2005                                              **Exhibit B   A 01068**

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender. This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use. * * * * * * * * * For more information about KELLEY DRYE & WARREN LLP please visit our website at http://www.kelleydrye.com.

A 01069

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Bigus, Lawrence |
| **Sent:** | Friday, June 17, 2005 2:02 PM |
| **To:** | swood@kelleydrye.com |
| **Cc:** | Ramsay, Donald; Befort, Jeff |
| **Subject:** | scheduling order extensions |

Please respond to my email from yesterday so that we can make a decision on whether we are willing to agree to an extension of these deadlines. It is impossible to agree to something when we do not know what the something is: i.e. what is the new deadline and the experts that you want this extension to apply to.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                          Email: lbigus@stinsonmoheck.com

7/18/2005

A 01070

## Gagliardi, Lisa

**From:** Bigus, Lawrence
**Sent:** Sunday, June 19, 2005 10:25 AM
**To:** swood@kelleydrye.com
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** Parus Request for Scheduling Order Extension

You have failed to provide us information which is absolutely pertinent and necessary in order to analyze your request for an extension of deadlines contained in the amended scheduling order. We do not understand how you can expect either the Court or our client to consider an extension to the deadlines in the amended scheduling order without providing such basic information as the proposed new date and/or what experts you may designate by the new date. Please provide this information ASAP.

As you have been aware for sometime I will be out of the office on a business trip for MCI on Monday and Tuesday. I will try to stay in touch by email and voice mail so that if you decide to provide the necessary information our client can consider your request before the hearing on Wednesday. Please provide the necessary information by return email.

Thank you for your attention to this matter.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                              Email: lbigus@stinsonmoheck.com

# EXHIBIT C

A 01072

## Gagliardi, Lisa

**From:**     Wood, Stephen [SWood@KelleyDrye.com]
**Sent:**     Monday, June 20, 2005 4:56 PM
**To:**       Bigus, Lawrence
**Cc:**       Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Parus Request for Scheduling Order Extension

As I indicated on Thursday, it is difficult to be precise regarding expert requirements when we have yet to look at the debtors' documents or take the depositions of their current and former employees. Some of our expert witnesses may be obviated by testimony from WorldCom employees.

The subjects of testimony include but are not limited to, as I've indicated before, the value of the take-or-pay minimum obligation in the contract, the value of the contract beyond the take-or-pay, the WorldCom business model for Unified Communications, projections regarding the market for Unified Communications products, the EffectNet/Webley business model, the investment climate at the relevant time generally and in the telecom industry specifically, and the impact of contract breach and other actions on the EffectNet/Webley business (which encompasses damages and causation).

I would estimate that we may need 4 to 5 experts to cover these subjects, but this is a rough estimate since we need to review the documents and take depositions of WorldCom personnel regarding those documents to accurately assess our expert witness requirements. As I said above, some of these topics may be covered by WorldCom employees.

As for timing, that depends to a very large degree on you and how long it takes you to produce documents. As we've discussed before, document production should be complete before we take depositions to avoid unnecessarily redeposing witnesses. Once your document production is complete, I need a minimum of 75 days to take depositions of WorldCom employees before we have to disclose experts, assuming we can efficiently locate witnesses and take their depositions. Assuming hypothetically that your production is essentially complete by the end of August, an optimistic estimate since you have 10,000 boxes of documents, we would like until mid-November to disclose experts. If you were able to complete your document production by the end of July, I would need until mid-October. This is comparable to the time frame envisioned under the scheduling order entered in January 2005.

We are in the process of reviewing your indexes and have not yet determined whether they are helpful. We will advise you shortly regarding this review.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Sunday, June 19, 2005 10:25 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** Parus Request for Scheduling Order Extension

> You have failed to provide us information which is absolutely pertinent and necessary in order to analyze your request for an extension of deadlines contained in the amended scheduling order. We do not understand how you can expect either the Court or our client to consider an extension to the deadlines in the amended scheduling order without providing such basic information as the proposed new date and/or what experts you may designate by the new date. Please provide this information ASAP.

> As you have been aware for sometime I will be out of the office on a business trip for MCI on Monday and Tuesday. I will try to stay in touch by email and voice mail so that if you decide to provide the necessary information our client can consider your request before the hearing on Wednesday. Please provide the necessary information by return email.

Exhibit A 01073

Thank you for your attention to this matter.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                    Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

# EXHIBIT D

A 01075

## Gagliardi, Lisa

**From:** Bigus, Lawrence
**Sent:** Wednesday, June 29, 2005 10:16 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence; Befort, Jeff
**Subject:** Extension of Scheduling Order Deadlines

This email is to confirm the discussion that we had this morning concerning the issue of extending scheduling order deadlines. We proposed that the deadline for your clients to name experts be extended 120 days and that the amended scheduling order contain a statement indicating that: 1) you need to review documents being produced by MCI/Intermedia prior to naming experts; 2) it may take time to accomplish the review given disagreements as to the method of review, who pays the costs of the review, and related issues which might delay review; and 3) that if the review is not completed in time to name experts the deadline may need to be extended again. You indicated that you needed to consider this proposal. Obviously, the other deadlines in the scheduling order will need to be extended accordingly.

As you are aware we have produced the documents by making them available for your review and telling you where they are located. You may go to the depositories at any time and review these documents. The depositories will charge you to pull the boxes from the shelves and then to return the boxes to the shelves (we currently believe this cost will be around $2.00 per box but do not have firm estimates). Please advise as to the dates that you want to go to the depositories and review the documents. Upon receiving your selected dates we will instruct the depositories to expect you and to allow you to review the documents. We will review the documents as they are given to you in order to make sure that nothing is being produced which is protected by the attorney client privilege and/or work product doctrines.

We would like to continue to discuss with you the cost shifting issues. As we have indicated to you we will write you a letter on this issue in the near future. After receiving our letter we expect that you will give us the courtesy of writing a return letter with your position. After that we can determine whether there is room for agreement or this is an issue that needs presenting to the court. We both need to keep an open mind on the cost shifting issue until we each have the benefit of receiving in writing a full analysis of each other's position.

Please be assured that it is our intention to allow you to review all of the documents except for documents which are protected as indicated above, MCI/Intermedia is actually willing to produce more documents then you have requested. We are not trying to hide anything but rather are willing to allow you to review everything.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                          Email: lbigus@stinsonmoheck.com

**Exhibit D  A 01076**

# EXHIBIT E

A 01077

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Lawrence W. Bigus, Esq.
1201 Walnut, Suite 2900
Kansas City, MO 64106
Attorney for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re | : | CHAPTER 11 CASE |
|  | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : |  |
|  | : |  |

## DECLARATION OF DONALD C. RAMSAY

I, Donald C. Ramsay, of lawful age and having been duly sworn, depose and state as follows:

1.     I am an attorney with the law firm of Stinson Morrison Hecker LLP. I am one of the attorneys responsible for locating documents responsive to Claimant's First Request for Documents and for dealing with cost issues relating to the production of those documents. I have personal knowledge of the matters set forth herein.

2.     The paper documents of Intermedia Communications, Inc. ("Intermedia") are warehoused in over 10,000 boxes in Florida, Mississippi, Virginia and Colorado. Based on a written estimate by Iron Mountain, WorldCom's warehouse provider, it would cost $149,000 to retrieve the 10,000 boxes, ship them to the Kansas City Iron Mountain facility, obtain space in that facility for review of the documents and return them to storage. This bid covers only the logistical costs for making the boxed documents available for review. It does not cover the costs of reviewing those documents by

Exhibit EA 01078

qualified personnel, sorting any responsive documents into appropriate categories and preparing a privilege log. The costs associated with these substantive tasks could easily approximate or exceed the $149,000 cost for the logistical aspects of the document production.

3.    Using document indexes for the Intermedia boxes that were prepared at the time the boxes were stored, we have identified 387 of the over 10,000 boxes of documents in the Florida, Virginia and Colorado depositories that – either based on the date or subject matter description listed on the index or the lack thereof – may contain responsive documents. We have not retrieved boxes that are dated before January 1, 2000, unless it appears based on their description that they may contain potentially responsive documents. Consistent with WorldCom's discovery objections, we do not intend at this time to retrieve and review Intermedia boxes that, based on the subject matter and/or time period described on the indexes, are unrelated to this action.

4.    The 387 boxes of documents mentioned above are being shipped to the Kansas City, Missouri, office of Stinson Morrison Hecker LLP to avoid the costs associated with using depository space for review and travel, and to ensure that the boxes will remain easily accessible throughout this case. We already have received some of these boxes and are reviewing them.

5.    Julio Valdes, the Senior Manager for Production Operation of MCI and the person responsible for all Windows backup tapes for Intermedia, has advised me that there are 483 monthly backup tapes for Intermedia, which includes 378 monthly backup tapes for the period January 1, 2000, through December 31, 2002, and 105 email backup tapes for the same period. Mr. Valdes also has advised that MCI does not currently have

2

A 01079

the ability to search data on the Intermedia backup tapes. In order to search information on the backup tapes, the data must first be restored to a server comparable to the server from which the data was taken.

6.      We have obtained bids from third-party vendors for the retrieval of data from the Intermedia backup tapes. Based on the assumptions that all 483 of the backup tapes will be searched, that only 2% of the stored data will be responsive to Parus Holdings, Inc.'s document requests and that electronic searches will be conducted by name of individual and key words, we have received bids from vendors ranging from $496,140 to $2,188,825 to perform the work. None of these bids account for review of the retrieved documents and preparation of necessary logs by qualified legal personnel.

7.      We also are continuing our efforts to locate any additional sources of WorldCom's own paper and electronic documents that may be responsive to Parus Holdings, Inc.'s document requests.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 4, 2005.

Donald C. Ramsay

3

A 01080

# EXHIBIT F

A 01081



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

May 31, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606

> Re:    In re World Com - Chapter 11
>        Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Stephen:

As you are aware, Intermedia and MCI have been working diligently to locate documents responsive to your Request for Production and/or which are relevant to the pending adversary case. In our responses to certain of you requests for production of documents, we agreed to produce responsive documents, subject to objections as stated, and advised you that that we are continuing to search for additional documents that might be responsive. As previously indicated, the search has been complicated by the fact that Intermedia no longer exists as a separate entity, offices have been moved to different states and certain of the people involved no longer work for MCI.

1.    Located Documents:

We have located boxes of documents in multiple locations around the country, some of which are independent storage facilities, that could possibly include responsive documents. Our client has advised that there are in excess of 10,000 boxes of documents. Our office has not reviewed or examined any of these additional documents.

2.    Imprecise Indexes:

Unfortunately, the indexes for these documents are not very precise. We have searched the indexes but have not been able to satisfy ourselves that we can determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for your review. This is in part because of the imprecise descriptions in the indexes and, in part, because of the very broad nature of your alleged tort claims.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**Exhibit F**   A 01082

Stephen A. Wood
May 31, 2005
Page 2

3.    Proposed Procedures:

After considering several means of producing the responsive non-privileged documents, we would like to propose what we consider to be the most efficient means. We are open to proposals from you concerning other possible means of efficiently producing the large number of documents that have been located. Intermedia/MCI proposes to produce the documents pursuant to the procedures and limitations contained in Exhibit A attached hereto.

4.    Objections Not Waived:

Intermedia and MCI will not, by following the attached procedures, have waived any of the objections previously made to the written discovery.

5.    Production Supplements Interrogatory Answers:

Any production of documents pursuant to these procedures will be both a supplemental production responsive to your Request for Production of Documents and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing appropriate further response to your written discovery and for producing any documents which might have any relevancy to this adversary proceeding. Please advise whether you would agree to this procedure and the stated limitations. If so, we will immediately forward the indexes for your review. The procedure is, of course, open for discussion. If there are alternatives that you would like to discuss please advise of that as well.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

LWB:lag

Enclosure

A 01083

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

## <u>PROPOSED PRODUCTION PROCEDURES</u>

1.      Intermedia/MCI will  provide claimants with a complete set of the indexes for the documents.

2.      Claimants will review the indexes and identify those specific boxes it wishes to review.

3.      Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.   In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.      Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

        a.      Those documents identified as privileged.

        b.      Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

        c.      Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

6590719.2

**A 01084**

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Bigus, Lawrence |
| **Sent:** | Tuesday, May 31, 2005 4:32 PM |
| **To:** | swood@kelleydrye.com |
| **Cc:** | Bigus, Lawrence |
| **Subject:** | 6590719_2.DOC |
| **Attachments:** | 6590719_2.DOC¤ |

Attached is a letter to you concerning production of the additional documents that Intermedia and MCI have located. As you are aware Intermedia and MIC have already produced hundreds of pages of documents. Please let me know your thoughts on this matter.

**A 01085**

# EXHIBIT G

A 01086



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 9, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

> Re:    Document Production by Debtors
>        In re WorldCom, Inc. - Chapter 11
>        Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

You complain about the lack of production by MCI and Intermedia. You first propounded discovery in February 2005 and we initially responded in March 2005. We are barley three months past the date you first propounded the discovery. It seems to us that timely producing what was immediately available, and then locating extensive additional documents less than two months later, is a diligent response to your requests for production despite your efforts to assert otherwise.

Despite objections that we have asserted we have made it clear that we are willing to produce a large volume of documents and even let you review indexes to determine what documents you want to review. Your client's initial responses to the request for production served on them was made over seven months after the requests were served. You did not complain of the short time lapse until a hearing date was set on your Client's failure to respond for approximately 222 days. It appears to us that your complaints about the time it has taken MCI and Intermedia to produce documents is designed to take the heat off your own Client's failure to respond rather than being legitimate complaints. There is a big distinction between a total failure to respond for over 222 days and a response which produces what is available and then within two months thereafter offers to produce additional documents. We will continue to try and cooperate with you concerning this very large document production but the cooperation must go both ways in order to accomplish the task at hand.

In the spirit of cooperation we are willing to send you the indexes to the additional documents located to date. In our opinion the indexes themselves are not discoverable and are not responsive to any of the requests made to date. Despite these beliefs we are willing to produce the indexes, based on the limited caveats set

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**Exhibit G**  A 01087

Stephen A. Wood
June 9, 2005
Page 2

forth below, concerning format and issues involving attorney client privilege and work product doctrine.

The indexes themselves are very lengthy and best examined in electronic format. Therefore, we propose to send you the indexes via electronic transmission rather than in hard copy. You can always print the indexes if you desire. Because of the length of the indexes we have attempted to review them by performing electronic searches rather than reading hard copies on a line by line basis. Therefore, we are not aware of each and every entry contained in the indexes. It is our belief that there is nothing in the indexes which would waive the attorney client privilege and/or work product doctrine. Because of the fact that we are not aware of each and every line entry we ask for your agreement that producing the indexes will not waive the attorney client privilege and/or work product doctrine. If you are not willing to make such an agreement we will have no choice but to withhold the indexes until such time as our office can examine each and every line entry. Upon receipt of your agreement as set forth in the preceding paragraph we will send the indexes to you via electronic format.

We hope and trust that you will take the time to examine, review and search the indexes before demanding further action on the part of MCI and Intermedia. We also hope that you will be flexible and cooperative in proposing means by which to reasonably review the additional documents that have been located.

We are continuing to search for additional documents including both hard documents and electronic documents. As soon as we are able to determine what if any additional documents are available we will advise you accordingly. This continued search should not delay this case since there are already over ten thousand boxes of documents to deal with at the present moment.

You have filed claims against MCI and Intermedia and only these two entities. You argue that substantive consolidation means that we have a duty to produce documents in the possession of all the Debtors involved in the bankruptcy proceeding. We respectfully disagree with your position. Substantive consolidation means that the cases have been consolidated for administrative purposes. The various entities remain liable for their own debts and are not liable for each others' debts. The bankruptcy plan further establishes that the entities remain separate for purposes of assets and liabilities. Unless you can provide us with persuasive case authority, indicating that you have the right to seek discovery from all of the Debtors involved in the bankruptcy proceeding, we intend to produce those documents that MCI and/or Intermedia would have an obligation to produce in a lawsuit filed outside of the bankruptcy proceeding. The obligation does not include documents in the possession of third parties, even if the third parties are somehow related to the entities being sued.

You claim that we have a duty to review all documents before producing them for your review. We disagree with your assertion. Please review the indexes and advise as to what documents you would propose that we produce at this time. Based

6615797.1

A 01088

Stephen A. Wood
June 9, 2005
Page 3

on your request, after review of the indexes, we can jointly discuss the best means by which to proceed.

You have indicated that your client does not have any direct evidence of its tort allegations and that in fact the only evidence your client has at all is that MCI demanded price concessions during negotiations. Given the lack of evidence that your client has to support its tort allegations it is apparent that you are on a fishing expedition. Under the circumstances it does not seem appropriate that MCI and Intermedia should bear the costs of the fishing expedition and that your clients should be able to avoid such costs. This is basically what you are asking for when asking MCI and Intermedia to review all of the documents. MCI and Intermedia do not have an obligation to create and then produce evidence to support your client's tort claims.

You have asserted that MCI and Intermedia have an obligation to produce documents even if they have a confidentiality obligation to third parties concerning such documents. In order to produce documents protected by confidentiality agreements with third parties we will need a court order to protect the interests of MCI and Intermedia. If such documents are identified we can discuss the best means by which to obtain such an order. There is a possibility that there will be no such documents.

Rather than simply rejecting our proposal with a lot of criticisms we would have appreciated an alternative proposal that took everyone's interests into account. We look forward to receiving your agreement as set forth above concerning production of the indexes. Once you have the indexes we can discuss how to proceed from that point forward. Hopefully, we can reach agreement as to an acceptable process for production of the large volume of documents already located and any additional documents located in the future.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

LWB:lag

6615797.1

# EXHIBIT H

A 01090

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Wood, Stephen [SWood@KelleyDrye.com] |
| **Sent:** | Tuesday, June 14, 2005 6:05 PM |
| **To:** | Bigus, Lawrence |
| **Cc:** | Friedman, Robert; Krolewski, Martin A. |
| **Subject:** | Parus/WorldCom |

Larry -- Pursuant to our discussions today regarding production of the Debtors' documents, you have indexes you will produce in electronic form. You have not had the opportunity to review them all in detail and you are concerned about the possibility of some type of privileged matter contained in these indexes. We will agree that in the event there is some privileged matter contained in these indexes, production of the indexes will not constitute a waiver of the privilege. This agreement pertains to indexes only and does not have any bearing on production of debtors' documents. Please provide the indexes as soon as possible.

Stephen A. Wood
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, Illinois 60606
(312) 857-7070

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender. This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use. * * * * * * * * * For more information about KELLEY DRYE & WARREN LLP please visit our website at http://www.kelleydrye.com.

**Exhibit H**

A 01091

# EXHIBIT I

A 01092



# KELLEY
## DRYE

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Lawrence W. Bigus |
| **FIRM** | Stinson Morrison Hecker LLP |
| **CITY** | |
| **FAX** | 913-451-6352 |
| **PHONE** | 913-451-8600 |
| **NO. OF PAGES** | 3 |
| **DATE** | June 27, 2005 |

**KELLEY DRYE & WARREN LLP**
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, ILLINOIS 60606
(312) 857-7070
FAX (312) 857-7095

**MESSAGE:**

| | |
|---|---|
| **FROM** | Stephen A. Wood |
| **PHONE** | (312) 857-2311 |
| **E-MAIL** | swood@kelleydrye.com |
| **TIMEKEEPER ID** | 04206 |
| **CLIENT NO.** | 015749.0058 |

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ
BRUSSELS

AFFILIATE OFFICES
JAKARTA
MUMBAI

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (312) 857-7070.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

CH01/WOODS/192364.1

**Exhibit I**    **A 01093**

### KELLEY DRYE & WARREN LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

———

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: awood@kelleydrye.com

June 27, 2005

**VIA FACSIMILE and U.S. MAIL**

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Prkway
Overland Park, Kansas 66210

Re:    In re WorldCom -- Chapter 11
       Case No. 02-13533 -- Claim of Parus Holdings, Inc.

Dear Mr. Bigus:

We have carefully reviewed your letters of May 31, 2005 and June 1, 2005 and your email of June 22, 2005 regarding your proposal for producing the Debtors' documents. We have some significant concerns about your proposal, some of which are addressed in my E-mail to you on June 1, 2005. I will expand on those comments.

First, I looked at the 10 indexes you forwarded on June 15, 2005. As you yourself predicted, we were not able to discern whether boxes described therein contained responsive documents. The contents descriptions are either too general, obviously nonresponsive, or otherwise meaningless to us.

You also assert in your June 22, 2005 E-mail, that you have produced documents. To set the record straight, you produced an extremely limited number of documents in response to our Request for Production of Documents. Most of the documents were already in our possession. Approximately 30 pages of the 485 pages you produced were documents we had not seen before. Half of these were E-mails apparently printed on your secretary's computer. So your production of new information has been almost nonexistent. All you have done beyond that is send us a proposal with essentially useless indexes, insisting that we bear the burden and expense of culling through your clients' files to identify responsive documents. This proposal appears to be an effort to either conceal responsive documents or shift your obligations under the discovery rules to us.

CH01/WOODS/197275.1

**A 01094**

**KELLEY DRYE & WARREN LLP**

Lawrence W. Bigus, Esq.
June 27, 2005
Page Two

We have produced documents to you, nearly 23,000 pages, that you requested. We have undertaken a time-consuming effort to find, review, and produce these documents. We undertook the effort because the rules require it. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) (the general presumption under the discovery rules is that the responding party must bear the expense of complying with discovery requests). These are your client's indexes and documents. Your client knows them better than we do. Your client is in a better position than we are to cull responsive documents. We expect compliance with the rules and an expeditious production of responsive documents.

As for the deadline for Parus to disclose experts, I need a commitment from you as to when we can expect to receive all of your responsive documents. Once that is done, I have offered to disclose my experts 75 days from that date.

Finally, there is one other outstanding issue. You indicated to me in an earlier conversation that responsive Intermedia documents were missing because they had been placed in a depository and the depository could not be found. You also indicated to me that you have no electronic documents, a fact that I find very difficult to accept. If documents have in fact been lost or destroyed, there can be consequences as I'm sure you are aware. Your client had an obligation to preserve such documents, particularly since it was aware at the time of the negotiation of the Master Agreement for Software Licensing that the contract with EffectNet was breached by Intermedia. Sanctions may be imposed even if documents were destroyed or lost through ordinary negligence. *See Zubulake v. UBS Warburg, LLC*, 2004 WL 1620866 (July 20, 2004). Please provide me with any information you have regarding this matter.

Sincerely,

Stephen A. Wood

Stephen A. Wood

SAW/

A 01095
** TOTAL PAGE.03 **