Hearing Date and Time: August 9, 2005 at 10:00 a.m. (Eastern Time)

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WORLDCOM, INC., et al.<br><br>Debtors. | Chapter 11 Case No.<br>02-13533 (AJG)<br><br>(Jointly Administered) |

**REPLY OF CLAIMANT, PARUS HOLDINGS, INC., IN FURTHER
SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF
RESPONSIVE DOCUMENTS AND TO EXTEND DISCOVERY DEADLINES**

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC (collectively, "Parus"), by their undersigned attorneys Kelley Drye & Warren LLP ("Kelley Drye"), hereby submits this Reply to WorldCom's Response and Opposition to Claimant's Motion to Compel Production of Responsive Documents and To Extend Discovery Deadlines, submitted on August 4, 2005 ("WorldCom's Response"), and in further support of its Motion pursuant to Rules 7026, 7034, 7037 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule/s"), Rule 26, 34 and 37 of the Federal Rules of Civil Procedure ("Civil Rule/s"), and section 105(a) of Title 11 of the United States Code ("Bankruptcy Code"), for an

order, compelling debtors, Intermedia Communications, Inc. ("Intermedia") and MCI WorldCom Communications Inc. ("MCI WorldCom") (collectively, "Debtors") to produce documents responsive to Parus' First Request for Documents, dated February 7, 2005 ("Parus' Document Request), by a date certain provided by this Court. In further support of its Motion, Parus shows as follows:

## PRELIMINARY STATEMENT

1. Debtors have endeavored to thwart Parus' legitimate discovery efforts at every stage of this case. To show this, Parus painstakingly and exhaustively set forth in its Motion the discovery chronology and communications between its and Debtors' counsel. Debtors do not respond to this showing but instead argue in their response that they should be allowed to do a "document dump" and shift costs of discovery in violation of the Federal Rules, merely because they filed for bankruptcy. They cite no authority, however, for their unique position that a bankruptcy petition excuses obligations under the Federal Rules.

2. In March of 2005, Debtors formally notified Parus that they had boxes of documents which were warehoused and which may contain responsive documents. To date, more than six months after Parus served its document requests, none of these documents have been produced. On May 31, 2005 Debtors made a proposal for producing these documents, even though they still did not produce any documents. This proposal amounted to nothing more than a massive document dump aided by indexes which Debtors admitted were "not very precise." When Parus resisted this obviously unfair proposal, Debtors represented that they had "no means to identify what is responsive." Debtors subsequently changed tactics and pronounced that they had complied with the rules, that their documents had been produced and they had gone "far beyond what is required by the rule."

A 01097

3.     On June 29, 2005, within one hour of the conclusion of a telephone conference with this Court wherein Parus was given leave to present this motion to compel, Debtors made a proposal whereby they finally offered to review their own hard documents for responsiveness and produce responsive documents to Parus. Because they insisted that Parus absorb part of their costs and refused to commit to a mutual deadline to produce responsive documents, Parus rejected this proposal. Now Debtors resort to still another tactic arguing that Parus is not entitled to discovery because its claims lack merit. Debtors cite a motion for summary judgment they have filed and claim that this motion obviates the need for discovery by Parus.

4.     Debtors motion for summary judgment, which was filed in violation of local rules, should be recognized as nothing more than the latest attempt to stymie Parus' legitimate and reasonable discovery of the Debtors. They are now seeking a stay without filing a motion for a stay. This effort along with Debtors' other arguments in opposition to Parus' document requests should be rejected by this Court. Further delay and failure to comply with the rules cannot be condoned.

## ARGUMENT

**I.   Debtors Must Be Required to Produce Documents At Their Expense By A Deadline Which Applies To The Production Of The Documents Of All Parties**

   **A.   Debtor's Proposals To Date Have Been Neither Reasonable Nor In Compliance With The Rules**

5.     As noted in Parus' Motion to Compel, Debtors proposed providing their own indexes to Parus for use in determining which of the 10,000 boxes of Debtor's own documents were responsive to Parus' document requests. Dumping large quantities of documents in this fashion on a party opponent does not satisfy the obligation of litigants under the Rules. Federal Rule of Civil Procedure 34(b) requires that a party producing documents for

3

inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." However, a party electing to produce documents for inspection as they are kept in the usual course of business still has a burden to select and produce the items requested. It is not permissible to dump large quantities of unrequested material onto the discovering party along with the items actually sought under Rule 34." 8A Wright, Miller & Marcus, *Federal Practice and Procedures* § 2213 (2005 Pocket Part).

6. Contrary to the arguments of Debtors, *Chemtex LLC, v. St. Anthony Enterprises, Inc.*, No. 03 Civ. 4263(RWS), 2004 WL 764781 (S.D.N.Y. April 9, 2004) is on point and should be controlling in this dispute. In ordering the defendant to produce documents in the manner requested by the plaintiff, the court recognized that the defendant's proposal to permit plaintiff access to all files which might contain the sought after information was substantively unfair and did not comply with Rule 34(b). These were defendant's documents which defendant chose to maintain in such a state that access to relevant documents by others was very difficult. Debtors cite no authority for its desperate attempt to distinguish *Chemtex* because Intermedia is allegedly "defunct."

7. As the defendant's proposal in *Chemtex* was unreasonable, so is the Debtors' proposal here. The storage method was chosen by Debtors, just as the defendant in *Chemtex* consciously chose its storage method. The Debtors clearly know their documents better than Parus and are in a far better position than Parus to identify responsive documents. Debtors note that Intermedia ceased operations long before Parus filed its proofs of claim as though this should excuse the state of their document storage and their obligations under the Rules. In fact, it is undisputed that Intermedia breached its contract with Parus' predecessor EffectNet within

A 01099

days of its merger with WorldCom. When Debtors stored their documents, they were fully aware of their wrongful conduct. In view of this, Debtors should not be permitted to use Intermedia's defunct status to insulate themselves from discovery.

8. The Debtors argument that the *Hagemeyer North America v. Gateway Data Science Corporation*, 222 F.R.D. 594 (E.D. Wis. 2004) supports their position is incorrect and misleading. In *Hagemeyer* the defendant had produced 10,000 pages of documents to the plaintiff. What's more, the plaintiff had unfettered access to the document storage facilities. Finally, there was no showing that the documents were stored in a disorganized manner. The defendant produced photographs of the storage facility to demonstrate to the court that the boxes were clearly labeled and organized so the plaintiff could locate relevant documents. Unlike *Hagemeyer*, here the storage facilities and indexing are completely disorganized and in disarray. Debtors improperly seek to shift the burden and consequences for their dilatory record-keeping to Claimants.

**B.    It Is Inappropriate For Debtors To Argue An Improperly Filed Motion for Summary Judgment In Response To The Instant Motion**

9. Notwithstanding the various efforts of Debtors aimed at hindering Parus' access to relevant documents, the Debtors have found a new ploy, an apparently improperly filed motion for summary judgment which boldly asserts that Parus is entitled to no discovery whatsoever. Rule 7056-1(a) of the Local Bankruptcy Rules for the Southern District of New York states:

> Unless the Court ordered otherwise, no party shall file a motion for summary judgment without first seeking a pre-motion conference. The request for a pre-motion conference shall be made by letter, filed on the CM/ECF system, setting forth the issues to be presented in the motion and the grounds for relief.

A search of the docket on this case reveals that the Debtors did not follow the proper procedure. There is no Court order or letter filed with the Court requesting a pre-motion conference.

10. Parus has informed the Debtors that they have improperly filed their Motion for Summary Judgment and requested that they withdraw their motion. The summary judgment motion, filed on August 1, 2005, was clearly intended to impact the instant Motion. The arguments raised by Debtors are purely legal arguments; that is, Debtors have argued that Parus has failed to state a claim in any manner except for a breach of written contract claim that can be decided, conveniently, without resort to extracontractual evidence. Obviously, Debtors' motion could have been brought months if not years ago in this contested matter. It is no coincidence therefore that the motion has been brought one week prior to hearing on Parus' Motion to Compel. Indeed, Debtors reargue much of their motion for summary judgment in their Response to the Motion to Compel. Under these circumstances it would be patently unfair to allow an 11th hour, partially briefed, improperly filed motion for summary judgment to have any bearing whatsoever on this Motion to Compel. Parus should not be forced to respond to Debtors one-sided, misleading, and erroneous summary judgment arguments in the context of this Motion to Compel. Parus' legitimate and reasonable discovery has been held up long enough and Debtors' tactics should not cause discovery to be denied any longer.

11. By way of example only, without arguing the merits of the issues raised in Debtors' motion, Debtors state as uncontested fact in their motion that Parus terminated the contract with Intermedia and that such action capped Parus' damages at $460,442.30. Parus previously brought before this court a motion to amend deemed admissions so that it could deny requests to admit stating that Parus had terminated the UC Contract. This motion to amend was aggressively opposed by Debtors. On June 29, 2005, this Court granted Parus' motion

permitting it to amend and deny the requests to admit that Parus terminated the contract. Contract termination is plainly a contested fact issue. As for the amount of contract damages, the figure offered by Debtors, $460,442.30, again stated in their motion as uncontested fact, is low by a factor of at least 13. The UC Contract with Intermedia was a multiyear contract that was worth eight figures to Parus and its predecessors EffectNet and Webley Systems, Inc. The invoices sent by EffectNet to Intermedia pursuant to this Contract, which were attached to Parus' proofs of claim, total approximately $828,000. It is outrageous for Debtors to state in their motion for summary judgment, as though it was established fact, that the contract damages are no more than $460,442.30.

12. Furthermore, the law regarding the claims of tortious interference, civil conspiracy and unfair trade practices does not clearly favor the Debtors as they argue in their motion. Again, by way of example only, Debtors devote the first section of their argument to a choice of law analysis and conclude that Arizona law controls the resolution of all claims brought by Parus. In the very next section, Debtors argue that Parus' tortious interference and conspiracy claims fail as a matter of law. Tellingly, Debtors cite not a single Arizona case in support of their arguments on these claims.

13. Finally, Debtors suggest that Parus' discovery requests relate only to the tort claims, but this is not the case. In their Response to the Motion to Compel, Debtors list eight of Parus' Document Requests that Debtors claim would be obviated by Debtors' motion for summary judgment. What then is to be done with Parus' remaining 27 Document Requests? These are focused on documents pertinent to the contract claims set forth in its proofs of claim (Wood Decl. ¶ 15, Ex. B and C.) as well as the assertions and defenses set forth in the Debtors' Objection to Parus' proofs of claim (Wood Decl. ¶ 15, Ex. F.) Thus, Parus' requests are proper

A 01102

and calculated to lead to the discovery of relevant and admissible evidence regarding *both* the contract claims and tort claims. For these reasons, the Court should not stay discovery any further.

### C. Costs Shifting Does Not Apply To The Debtors' Production Of Hard Copy Documents

14. The Debtors seek to improperly shift costs associated with physically pulling and returning the boxes to their shelves that Debtors are obliged to review for responsiveness. (Wood Decl. ¶¶ 38, 45 and 48.) First, there is a presumption that "the responding party must bear the expense of complying with discovery requests..." See *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978). Since it is the Debtors burden and obligation under New York law to review the documents because of the unreasonable state of Debtors' records, the Debtors should not be allowed to shift their costs associated with reviewing the boxes of documents for responsiveness.

15. Furthermore, Parus did not ask the Debtors to share costs in producing its documents. Parus has undertaken significant time and expense to produce documents responsive to Debtor's discovery requests. (Wood Decl. 32 and 44.) To date, Parus has produced 23,000 pages of documents in response to Debtors' Requests, an amount that dwarfs Debtors production to date of a few hundred pages. Parus has continued its efforts to collect, review, and produce responsive documents and intends to produce as many as an additional 50,000 pages of documents within 30 days of the date of the hearing on this Motion to Compel. Parus has also filed supplemental responses to Debtors' Interrogatories and Discovery Requests on August 5, 2005. It would be unfair and contrary to controlling law to shift costs associated with the Debtors obligation to review and produce responsive documents.

A 01103

16.     In support of their argument on cost shifting, Debtors discuss extensively the case of *Zubulake v. UBS Warburg*, 217 F.R.D. 309 (S.D.N.Y. 2003). It is well known that *Zubulake* was concerned with the unique problems posed by production of electronic documents. Parus is aware of no case where the *Zubulake* factors were applied to a production of hard documents and application of the *Zubulake* analysis with regard to the Debtors' obligations to produce responsive hard documents is just as inappropriate here. First, Debtors discussion of *Zubulake* on the cost shifting issue actually highlights the insincere and misleading character of their argument. In relying on the *Hagemeyer* case, Debtors suggest that their documents are readily accessible, clearly labeled, and not disorganized. In their next breath, Debtors make and about-face and argue in support of cost-shifting, based on *Zubulake*, that their documents are inaccessible. Second, Debtors state that their documents are "'inaccessible' as that term is defined in *Zubulake I*." Yet, the Debtors offer to review and produce 387 boxes of documents they have determined to be responsive to Parus' Document Requests. It is apparent therefore that Debtors are being neither forthright nor consistent in their Response to Parus' Motion to Compel and based on this alone, this Court should reject Debtors' cost shifting argument.

### D.    Parus' Motion Does Not Address Production of Electronic Documents

17.     Parus' Discovery Requests clearly seek the production of responsive electronic documents, in particular e-mails, and Parus' counsel has repeatedly requested the status of locating electronic documents from Debtors' counsel. (Wood Decl. ¶¶ 28, 30 and 34.) However, the issue of electronic documents cannot be addressed in this motion because there is an insufficient factual record to make a cost-shifting analysis. Parus' counsel was informed for the first time on June 30, 2005, that Debtors had located potentially responsive and non-privileged electronic documents stored on an estimated 250 back up tapes. (Wood Decl. ¶ 46.) The only information provided was an estimate that it would cost approximately $900,000 to

A 01104

have the electronic documents restored and searched. (*Id.*) The WorldCom's Response now states that it has located 483 backup tapes and that they have received bids from vendors ranging from $496,140 to $2,188,825 to perform the work. *See* WorldCom's Response at 11 n.9.) Clearly, the factual record does not currently exist to even begin the type of analysis that the *Zubulake* Court sets forth. This issue is therefore not ripe for decision by this Court. As set forth in its Motion to Compel, Parus will in good faith confer with the Debtors regarding the electronic document production and work to resolve any disputes without the intervention of this Court.

### Parus Is Entitled to Attorney's Fees

18.    The Debtors should pay reasonable costs and expenses incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule 37, made applicable to these proceeding by Bankruptcy Rules 7037 and 9014. To begin with, Parus served its Document Requests on Debtors on February 7, 2005. Approximately six weeks later, Parus received a written response replete with objections and containing a paltry 343 pages of documents many of which were duplicative of documents produced in January by Debtors under Rule 26 and Bankruptcy Rule 7026. To date, no additional documents have been produced. Debtors have not even committed to a date certain to produce additional documents. Debtors made a proposal to produce their documents on May 31, 2005, more than two months after they submitted their written response. No documents were produced at that time. No offer was made by Debtors to review their own documents for responsiveness. Rather, Debtors invited Parus to fish around among 10,000 boxes of documents aided only by indexes that by Debtors own admission were "not very precise." When Parus resisted this proposal, Debtors accused it and its counsel of outrageous and unreasonable conduct. Only after this court gave Parus permission to

A 01105

present a motion to compel did Debtors offer for the first time to review their hard documents for responsiveness.

19. This offer, which is no more or less than the Rules require, should have been made in March when Debtors responded to Parus' Document Requests. Parus should never have been put through the exercise, expense, and delay of bringing the instant Motion. The history of this dispute establishes that Debtors will take no action until faced with the possibility of court-imposed sanction. For these reasons, this Court should award Parus reasonable costs and attorneys' fees in connection with the presentation of this motion.

## CONCLUSION

For the foregoing reasons, Parus respectfully requests this Court to enter an order, substantially in the form annexed to Parus' Motion as Exhibit 1, (a) directing Debtors to produce documents responsive to Parus' First Request for Documents, dated February 7, 2005, by a date certain provided by this Court; (b) directing Parus' to produce documents responsive to Debtor's discovery request, dated September 30, 2004, by the same date certain provided by this Court; (c) directing Debtors and Parus to produce a privilege log regarding any documents either party is withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule 7034-1(c), by the same date certain provided by this Court; (d) directing Debtors and Parus to bear their own costs of production; and (e) directing Debtors to pay the reasonable cost and expenses incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule 37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, and such other relief as the Court deems appropriate. In addition, Parus requests that all discovery deadlines, including, but no limited to Parus' expert disclosure deadline, are extended appropriately by this

A 01106

Court from the date certain provided by this Court governing the responsive document and privilege log productions.

Dated: New York, New York
August 8, 2005

KELLEY DRYE & WARREN LLP

By: */s/ Stephen A. Wood*
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)

101 Park Avenue
New York, New York 10178
Telephone: (212) 808-7800
Facsimile: (212) 808-7897

*Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet,
Inc. and EffectNet, LLC*

A 01107

## CERTIFICATE OF SERVICE

On the 8th day of August, 2005, I caused to be served Reply of Claimant, Parus Holdings, Inc., In Further Support of Its Motion to Compel Production of Responsive Documents And To Extend Discovery Deadlines, via Overnight Mail and/or via e-mail as indicated upon:

| | |
|---|---|
| WorldCom, Inc. et al.<br>1133 19th Street<br>Washington, D.C. 20036,<br>Attn: Anatasia Kelly, Esq., General Counsel | By Overnight Mail |
| Weil, Gotshal & Manges<br>767 Fifth Avenue<br>New York, New York 10153<br>Attn: Marcia L. Goldstein, Esq.<br>Attorneys for the Reorganized Debtors | By Hand |
| Stinson Morrison Hecker, LLP<br>9200 Indian Creek Parkway<br>Suite 450<br>Overland Park, KS 66210<br>Attn: Lawrence W. Bigus, Esq.<br>Attorneys for the Reorganized Debtors | By Overnight Mail & E-Mail |
| Office of the United States Trustee<br>33 Whitehall Street, 21st Floor<br>New York, New York 10004<br>Attn: Mary Elizabeth Tom, Esq. | By Hand |
| Akin, Gump, Strauss, Hauer & Feld, LLP<br>590 Madison Avenue<br>New York, NY 10022<br>Attn: Ira S. Dizengoff, Esq.<br>Attorneys for the Official Committee of<br>Unsecured Creditors of WorldCom, Inc. | By Hand |

/s/ *Michelle Navarro*
Michelle Navarro

A 01108