replace or modify the EffectNet product or deliverable so it becomes non-infringing without materially affecting the performance thereof, or if options (i) and (ii) are not available despite commercially reasonable efforts, (iii) terminate the licenses granted hereunder, and accept the return of all copies of all products.

**11.    LIMITATION OF LIABILITY.** EXCEPT FOR DAMAGES ARISING UNDER SECTION  , IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OF ANY KIND INCLUDING WITHOUT LIMITATION, LOSS OF PROFITS, LOSS OF BUSINESS OR INTERRUPTION OF BUSINESS, WHETHER SUCH LIABILITY IS PREDICATED ON CONTRACT, STRICT LIABILITY OR ANY OTHER THEORY WITHOUT REGARD TO WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**12.    GENERAL PROVISIONS.**

12.1    Monetary Values.  All monetary values in the Agreement refer to U.S. dollars.

12.2    Assignment.  Either Party may assign its rights or obligations under this Agreement with written notice to the other Party, and after obtaining written approval by the other party, which shall not be unreasonably withheld or delayed.  In the event that Intermedia is acquired by WorldCom no such written approval shall be required.  In the event of a restructuring, merger, or acquisition of either party, in which such party retains at least 25 percent control of the resulting entity such notice and approval shall not be required.

12.3    Governing Law. This Agreement will be interpreted in accordance with the laws of the state of Arizona, excluding its conflict of law rules.  The Parties agree that the federal and state courts located in Arizona and/or Florida shall be the proper forum for any action brought against the other Party, and each Party shall take all necessary actions to consent to the jurisdiction of such courts. 12.4    Notices.  All notices or other communications between EffectNet and Intermedia under this Agreement shall be in writing and delivered personally, sent by confirmed facsimile, by confirmed e-mail, by certified mail, postage prepaid and return receipt requested, or by a nationally recognized express delivery service addressed to the Parties at the addresses first set forth below or at such other addresses, facsimile numbers or e-mail addresses or to such individuals as either Party may specify by notice to the other Party pursuant to this Section. All notices shall be in English and shall be effective upon receipt. As a courtesy, Parties are encouraged to send duplicate copies of notice, demands, or other by facsimile. Issuance of a facsimile copy of a notice, request, demand or other communication shall not replace the requirements for delivery by mail or overnight courier in the manner provided in this Section, nor shall the date the facsimile received constitute the official receipt date. Any Party may change the address to which notices, requests, demands or other to such Party shall be delivered or mailed by giving notice of the change to the other Party in the manner provided in this Section. The addresses for the Parties for the purposes of this Agreement are:

A 01420

**For EffectNet:**

Taj Reneau

**Chief Executive Officer**

**EffectNet**

**Phone:  602.296.3300**

**Fax:      602.296.3311**

*For Intermedia Communications, Inc.*

Kathleen A. Victory

**VP Product Line Management**

**Intermedia Communications Inc.**

**Phone: 813.829.6703**

**Fax:      813.829.2359**

12.5    Independent Contractors. This Agreement and the relations hereby established do not constitute a partnership, joint venture, franchise or agency between the Parties. Both parties are independent contractors acting for their own accounts and neither is authorized to bind, or attempt to bind, the other to any contract, general warranty, covenant or undertaking of any nature whatsoever unless authorized in writing. Neither party shall have the authority to accept delivery, collect or otherwise take possession of any funds or other property of the other party, and if done so inadvertently, shall immediately notify the other party, shall hold same in trust and shall immediately deliver same to the other party.  In all matters relating to this Agreement neither party nor such party's employees or agents are, or will act, as employees of the other party within the meaning of any federal or state laws.

12.6    Severability.  If any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other term or provision hereof.  The Parties agree that they will negotiate in good faith or will permit a court to replace any provision hereof so held invalid, illegal or unenforceable with a valid provision, which is as similar as possible in substance to the invalid, illegal or unenforceable provision.

12.7    Entire Agreement And Modifications.  This Agreement together with any appendices, exhibits and attachments constitute the entire agreement between the Parties with regard to the subject matter hereof and supersedes all prior, agreements and understandings, whether written or oral, relating to the subject matter hereof.  This Agreement may only be modified by a written instrument duly executed by each Party, making specific reference to this Agreement and to the clause to be modified.

12.8    Captions.  Where provided, captions of the sections and subsections of this Agreement are for reference purposes only and do not constitute terms or conditions of this Agreement, and shall not limit or affect the terms and conditions hereof.

12.9    Waiver.  No provision of, right, power or privilege under this Agreement shall be deemed to have been waived by any act, delay, omission or acquiescence on the part of either Party, its agents, or employees, but only by an instrument in writing signed by an authorized officer of each Party.  No waiver by either Party of any breach or default of any provision of this Agreement by the other Party shall be effective as to any other breach or default, whether of the same or any other provision and whether occurring prior to, concurrent with, or subsequent to the date of such waiver.

A 01421

12.10  Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. In making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

12.11  Force Majeure. Neither Party shall have any liability to the other for delays resulting from any "Event of Force Majeure" or from any act or omission of the such other Party. An Event of Force Majeure shall include without limitation any delay or failure in performance due to acts of God, earthquake, labor disputes, changes in law, regulation or government policy, riots, war, fire, epidemic, acts or omissions of vendors or suppliers, equipment failures, transportation difficulties, or other occurrences which are beyond the affected Party's reasonable control.

12.12  Conflicts. To the extent the terms of this Agreement and the MOU conflict, the terms of this Agreement shall be controlling.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives as of the date first written above.

EffeciNet, L.L.C.

Signature:

Printed Name: Brad Steinmeyer

Title: VP PARTNER DEVELOPMENT

Date: 11/27/00

Intermedia Communications, Inc.

Signature: Kathleen A Victory

Printed Name: Kathleen A. Victory

Title: VP Product Line Management

Date: November 20, 2000

A 01422

## APPENDIX P (Pricing)

EffectNet shall offer the following products to Intermedia at the prices attached thereto as follows:

1.     **Basic**

$11.45 per month for each basic account with all platform usage and inbound call times on the EffectNet platform an additional $.10 per minute. The basic account includes unlimited free on-line usage including checking e-mails, faxes, etc... Outbound calling will be $.10 per minute.  This package includes customer service and technical support.  All basic accounts will be billed a base subscription price of $ 6.00 for the first calendar month of activation partial or full, and $11.45 for any calendar month thereafter partial or full.

2.     **Unlimited**

$27.40 per month for each unlimited account with unlimited free platform usage and inbound call time included. Outbound calling will be $.10 per minute. The unlimited account includes unlimited free on-line usage including checking e-mails, faxes, etc. Outbound calls include: conference calls (per member), outbound long distance, outbound fax, follow me, notification, return calls, etc. All unlimited accounts will be billed a base subscription price of $ 14.00 for the first calendar month of activation partial or full, and $27.40 for any calendar month thereafter partial or full.

Intermedia shall be responsible for any and all expenses incurred related to the completion of the Virtual Private Network ("VPN").   No expenses shall be incurred on behalf of Intermedia for the VPN without prior consent from Intermedia.

A 01423

*Exhibit B*

A 01424

**From:** Faust, Jimmy J. [mailto:JJFaust@intermedia.com]
**Sent:** Tuesday, March 12, 2002 8:50 AM
**To:** 'support@intermediamail.com'; 'rjeffers@webley.com'
**Cc:** Mellon, Cheryl D.
**Subject:** FW: Cancel Accounts

On Friday March 1st, I requested that all accounts (Mailboxes) for Intermedia be canceled. I have not received conformation that these accounts have been turned off.

As of this morning I can still call into the mailboxes.

Please advise.

**Jimmy J. Faust**
Sr. Product Manager
(813) 829-4327


-----Original Message-----
**From:**  Faust, Jimmy J.
**Sent:**  Friday, March 01, 2002 9:44 AM
**To:**    'support@intermediamail.com'
**Subject:**    Cancel Accounts

My records indicate that we have 47 active mailboxes on this account.

Please cancel all mailboxes as of today (03-01-02).

Thanks

**Jimmy J. Faust**
Sr. Product Manager
(813) 829-4327
**WorldCom, Inc.**
Jimmy.faust@wcom.com

*Exhibit C*

A 01426

EffectNet

10230 S. 50th Place
Phoenix, AZ 85044

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/6/2002 | 1010 |

| Bill To |
|---------|
| WorldCom Purchasing, LLC<br>PO Box 7<br>Clinton, MS 39060-0007<br>Attn: Accounts Payable |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| 4570182205 | Net 15 | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | December 2001 Billing Cycle | | |
| 46 | Unified Messaging Mailbox- Unlimited | 27.40 | 1,260.40 |
| 1 | Unified Messaging Mailbox- Basic | 11.45 | 11.45 |
| 370 | Outbound Calling Originated (Minutes) | 0.10 | 37.00 |
| | Reconciliation Payment as of Ramp Date (12/18/01) | | |
| 9,953 | Volume Shortfall (Minimum Monthly Commitment is 10,000) | 27.40 | 272,712.20 |
| | For billing inquiries, please call Richard Jeffers, 877.551.9365 | | |

PO# 4570182205

| | **Total** | **$274,021.05** |
|--|-----------|-----------------|

A 01427

*Exhibit D*

A 01428

EffectNet

10230 S. 50th Place
Phoenix, AZ 85044

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/6/2002 | 1011 |

**Bill To**

WorldCom Purchasing, LLC
PO Box 7
Clinton, MS 39060-0007
Attn: Accounts Payable

| P.O. No. | Terms | Project |
|----------|-------|---------|
| 4570182205 | Net 15 | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | January 2002 Billing Cycle | | |
| 46 | Unified Messaging Mailbox- Unlimited | 27.40 | 1,260.40 |
| 1 | Unified Messaging Mailbox- Basic | 11.45 | 11.45 |
| 370 | Outbound Calling Originated (Minutes) | 0.10 | 37.00 |
| | Reconciliation Payment as of January 31, 2002 | | |
| 9,953 | Volume Shortfall (Minimum Monthly Commitment of 10,000) | 27.40 | 272,712.20 |
| | Late Fees at 1% per month | | |
| 1,833 | September Invoice # 1006 | 0.01 | 18.33 |
| 1,373 | October Invoice # 1007 | 0.01 | 13.73 |
| 1,309 | November Invoice # 1008 | 0.01 | 13.09 |
| | For billing inquiries, please call Richard Jeffers, 877.551.9365. | | |

PO# 4570182205

| **Total** | **$274,066.20** |
|-----------|-----------------|

A 01429

*Exhibit E*

A 01430

EffectNet

10230 S. 50th Place
Phoenix, AZ 85044

# Invoice

| Date | Invoice # |
|---|---|
| 3/5/2002 | 1018 |

**Bill To**

WorldCom Purchasing, LLC
PO Box 7
Clinton, MS 39060-0007
Attn: Accounts Payable

| P.O. No. | Terms | Project |
|---|---|---|
| 4570182205 | Net 15 | |

| Quantity | Description | Rate | Amount |
|---|---|---|---|
| | February 2002 Billing Cycle | | |
| 42 | Unified Messaging Mailbox-Unlimited | 27.40 | 1,150.80 |
| 2,310 | Outbound Calling Originated (Minutes) | 0.10 | 231.00 |
| | Reconciliation Payment as of February 28, 2002 ( | | |
| 9,958 | Volume Shortfall (Minimum Monthly Commitment is 10,000) | 27.40 | 272,849.20 |
| | Late Fees at 1% per month | | |
| 1,833 | September Invoice # 1006 | 0.01 | 18.33 |
| 1,373 | October Invoice # 1007 | 0.01 | 13.73 |
| 1,309 | November Invoice # 1008 | 0.01 | 13.09 |
| 274,021.05 | December Invoice #1010 | 0.01 | 2,740.21 |
| 274,066.2 | January Invoice # 1010 | 0.01 | 2,740.66 |

PO# 4570182205

| | Total | $279,757.02 |
|---|---|---|

A 01431

*Exhibit F*

A 01432



10230 S. 50th Place
Phoenix, AZ 85044
Office: 602.296.3300
Fax: 602.296.3311

Writer's Direct No.
(888)-387-3481

March 12, 2002

**Via Federal Express Mail**
Mr. Rich Black
Senior Vice President
of Sales and Marketing
One Intermedia Way
Tampa, Florida 33647

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) ("**EffectNet**") and Intermedia Communications, Inc. ("**Intermedia**") (the "**Agreement**")

Dear Mr. Black:

Pursuant to the terms of the referenced Agreement, Intermedia agreed to market the UC Services to Intermedia customers and end users, including wholesale and retail customers. Intermedia agreed to provide periodic forecasts of expected mailbox activations, the first of such forecasts to be provided on or before November 30, 2000. Intermedia also agreed to deliver a minimum number of current active subscribers on or before certain dates up to a minimum of 10,000 such subscribers on or before December 18, 2001 and at the end of each calendar month thereafter for the Term of the Agreement. Intermedia also agreed to pay the agreed pricing for activated mailboxes pursuant to the Agreement. Intermedia further agreed to pay all invoices within 15 calendar days of receipt. Intermedia also agreed to pay a Reconciliation Payment as of the Ramp Date and the end of each calendar month thereafter during the Term. On February 12, 2002, Intermedia received an invoice for the pricing applicable to subscribers and for the Reconciliation Payment with respect to the

A 01433

Mr. Rich Black
Page 2 of 3
March 12, 2002

month of December 2001 (including the Ramp Date) and the month of January 2002. Each of the forgoing obligations has not been fulfilled by Intermedia as required by the Agreement ("**Intermedia Defaults**") and each such obligation is a material obligation of Intermedia under the Agreement. The forgoing is not intended to be a full and complete statement of all material obligations under the Agreement that remain unfulfilled by Intermedia. Capitalized terms used in this letter without definition have the meaning assigned to such term in the Agreement.

EffectNet hereby gives Intermedia written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults and EffectNet further hereby gives Intermedia written notice that EffectNet may (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice if each of the Intermedia Defaults has not been cured within such thirty (30) day period, and (ii) further exercise all available remedies pursuant to the terms of the Agreement and as otherwise may be available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of the Agreement, of the amounts itemized below:

Total Amount Past Due on invoice 1010,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the December 2001 billing cycle):          $274,021.05

Total Amount Past Due on invoice 1011,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the January 2002 billing cycle):           $274,066.20

**Required Payment:**                           $548,087.25

The total amount past due is as of March 12, 2002. EffectNet gives notice that all provisions of default will be strictly enforced. As indicated above, Intermedia has until the expiration of thirty (30) days after this written notice to remit the Required Payment. The Required Payment should be made payable and delivered by wire transfer to Wells Fargo Bank, Tempe, Arizona; ABA Routing Number 122105278, EffectNet Operating Account; Account Number 046-4657220; attn: Stephanie Jordan at 480-649-8396.

A 01434

Mr. Rich Black
Page 3 of 3
March 12, 2002

Intermedia should also take notice of the Due Date of invoice #1018, dated March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on March 6, 2002. Payment of this amount is due on or before March 21, 2002.

If Intermedia fails to cure the Intermedia Defaults and if EffectNet terminates the Agreement as aforesaid, EffectNet may claim damages for all amounts due pursuant to the Agreement, including, without limitation, the following:

| | |
|---|---|
| Required Payment | $   548,087.25 |
| Invoice # 1018 | $   279,757.02 |
| Reconciliation Payments for the unexpired Term | $5,662,667.58 |
| Forfeiture of Deposit | $   175,000.00 |

Nothing in this letter is intended to be a waiver or release of any rights or remedies, or an election thereof, that EffectNet has under the Agreement or applicable law, and all such rights and remedies are hereby expressly reserved in their entirety.

Very truly yours,


Robert C. McConnell
General Counsel

*Exhibit G*

A 01436

# Delaware

PAGE   1

### The First State

. I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE CERTIFICATE OF OWNERSHIP, WHICH MERGES:

"EFFECTNET, INC.", A DELAWARE CORPORATION,

WITH AND INTO "PARUS HOLDINGS, INC." UNDER THE NAME OF "PARUS HOLDINGS, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, WAS RECEIVED AND FILED IN THIS OFFICE THE FIFTH DAY OF FEBRUARY, A.D. 2004, AT 6:48 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CORPORATION SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE.



*Harriet Smith Windsor*

Harriet Smith Windsor, Secretary of State

3361348   8330

040534366

AUTHENTICATION: 3246598

DATE: 07-21-04

A 01437

*Exhibit H*

A 01438

*State of Delaware*

PAGE    1

## *Office of the Secretary of State*

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"EFFECTNET L.L.C.", A NEVADA LIMITED LIABILITY COMPANY,

WITH AND INTO "EFFECTNET, INC." UNDER THE NAME OF "EFFECTNET, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-EIGHTH DAY OF DECEMBER, A.D. 2000, AT 1:01 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

3337277    8100M

001656793

AUTHENTICATION: 0886563

DATE: 12-29-00

A 01439

Exhibit E

A 01440

**KELLEY DRYE & WARREN LLP**
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
Kevin J. Smith (KS 0441)
101 Park Avenue
New York, New York 10178
Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | **CHAPTER 11 CASE** |
| **WORLDCOM, INC., et al.,** | **NO. 02-13533 (AJG)** |
| Debtors. | **(Jointly Administered)** |

## CLAIMANT'S FIRST REQUEST FOR DOCUMENTS

Pursuant to Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, made applicable by Rule 9014 of the Federal Rules of Bankruptcy Procedure to the instant contested matter and/or adversary proceeding regarding Claim Nos. 9291, 9293, 11173 and 11242 filed by Parus Holdings, Inc., Successor-by-Merger to EffectNet, Inc. (hereinafter "Claimant"), Claimant hereby requests that MCI WorldCom Communications, Inc., MCI WorldCom Network Services, Inc., and Intermedia Communications, Inc., and their affiliate and/or subsidiary companies (together, "Debtors") produce for inspection and copying at the offices of Kelley Drye & Warren LLP, 333 West Wacker Drive, Suite 2600, Chicago, Illinois 60606, within thirty (30) days from the date of the service of this request, each document described below in the possession, custody or control of each in accordance with the definitions and instructions set forth below and all applicable Federal and Local Rules of Civil Procedure and Bankruptcy Procedure.

## DEFINITIONS

1.    The provisions of Civil Rule 26.3 of the Local District Rules, made applicable pursuant to Local Rules for The United States Bankruptcy Court, Southern District of New York, are incorporated herein.

2.    As used herein, "Claimant" shall mean Parus Holdings, Inc., Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC, EffectNet LLC, EffectNet, Inc., Webley Systems, Inc., their predecessor companies and their officers, directors, employees, agents, contractors, accountants, advisors, attorneys, representatives, successors or assigns and all other persons acting or purporting to act on their behalf.

3.    As used herein, "Claim No. 9291" shall mean that Proof of Claim bearing claim number 9291 filed by Claimant in this bankruptcy case.

4.    As used herein, "Claim No. 9293" shall mean that Proof of Claim bearing claim number 9293 filed by Claimant in this bankruptcy case.

5.    As used herein, "Claim No. 11173" shall mean that Proof of Claim bearing claim number 11173 filed by Claimant in this bankruptcy case.

6.    As used herein, "Claim No. 11242" shall mean that Proof of Claim bearing claim number 11242 filed by Claimant in this bankruptcy case.

7.    "Date," "Time," "Period," or "Amount" shall mean the approximate date, time, period or amount if the exact date, time, period or amount is not known.

8.    "Draft" means any earlier, preliminary, preparatory or tentative version of all or part of a document, whether or not such draft was superceded by a later draft and whether or not the terms of the draft are the same as or different from the terms of the final document.

9.    As used herein, "Debtors" shall mean WorldCom, Inc., and each of its affiliate or subsidiary companies, including but not limited to, MCI WorldCom Communications,

2

**A 01442**

Inc., MCI WorldCom Network Services, Inc., Intermedia, Inc., their officers, directors, employees, agents, contractors, accountants, advisors, attorneys, representatives, successors or assigns and all other persons acting or purporting to act on their behalf.

10. As used herein, "Debtors' Objection" shall mean Debtors' Objection to All Proofs of Claim Filed by EffectNet, Inc. which is now merged into Parus Holdings, Inc., including but not limited to Claim Numbers 9291, 11242, 9293 and 11173, dated June 10, 2004.

11. As used herein, "General Agreement" shall mean the Unified Communications Services General Agreement for Intermedia Communications, Inc., dated as of November 20, 2000, between EffectNet, Inc. and Intermedia Communications, Inc. and all amendments, if any, and drafts of same.

12. As used herein, "Memorandum of Understanding" shall mean the Memorandum of Understanding between EffectNet, Inc. and Intermedia Communications, Inc. regarding communications services to be provided by EffectNet, Inc., and all amendments, if any, and drafts of same.

13. As used herein, "Interim Agreement" shall mean the Interim Agreement between EffectNet, Inc. and Intermedia Communications, Inc. regarding communications services to be provided by EffectNet, Inc., and all amendments, if any, and drafts of same

14. "Including" and "includes" shall be construed as referring only to an incomplete listing of illustrative examples and not as limiting or narrowing the generality of any definition, instruction or request.

15. As used herein, "Jim Renforth" shall mean the person who was employed by Debtors as a Senior Services Manager in connection with the General Agreement.

3

A 01443

16.    As used herein, "Jimmy Faust" shall mean the person who was employed by Debtors as a Senior Product Manager.

17.    As used herein, "Master License Agreement" shall mean the Master Agreement for Software Licenses between MCI WorldCom Network Services, Inc. and Webley Systems, Inc., dated as of September 14, 2001, and all amendments, if any, entered into thereafter.

18.    As used herein, "Minimum Monthly Commitment" shall have the same meaning as set forth in the General Agreement.

19.    As used herein, "Unified Communications" shall mean all forms of call and multimedia/cross-media message-management functions controlled by an individual user for both business and social purposes. This includes any enterprise informational or transactional application process that emulates a human user and uses a single, content-independent personal messaging channel (mailbox) for contact access.

## INSTRUCTIONS

1.    **General Instructions**. The party upon whom the request is served shall, in addition to producing responsive documents, serve a written response within 30 days after the service of the request. The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated. If objection is made to part of an item or category, the part shall be specified and inspection permitted of the remaining parts.

2.    If any document requested herein is maintained in electronic form (e.g., computer files), you are requested to produce each such document in paper form as well as provide a copy of each document in electronic form (i.e., on computer disk or CD-ROM).

A 01444

3.    "And" includes "or"; "or" includes "and."

4.    The singular includes the plural and vice versa.

5.    The masculine includes the feminine and neuter and vice versa.

6.    Each and every request for a document to be produced requires production of the document in its entirety (including the reverse side if it contains any printing, writing or information), without abbreviation or expurgation, and without redacting any portions of it.

7.    If you do not clearly understand, or if you have any questions about, the definitions, instructions, or any discovery request, please contact counsel for Claimant promptly for clarification.

8.    If you intend to resist the production of any document called for by these requests on the ground that it is privileged, identify the document by date, author, recipient(s) and subject matter and state the specific basis for the claim of privilege.  Any such document is to be held separately and retained intact by Debtors subject to and pending a ruling by the Court as to the claimed privilege.

9.    **Continuing Obligation.** Pursuant to the Federal Rules of Civil Procedure, this First Request for Documents is to be regarded as continuing.  You are requested to provide by way of supplemental responses any other additional document which you or any person on your behalf may hereafter obtain, which will augment or add to the documents previously provided.  Such additional documents shall be served upon counsel for Claimant promptly upon receipt by the affected Debtors or counsel for the Debtors.  Nothing herein shall constitute a waiver of the right to bar at trial any documents not produced in a timely fashion or to seek any other appropriate sanction in the event that any document described herein is not produced in accordance with this First Request for Documents.

A 01445

## DOCUMENTS REQUESTED

1.      All documents concerning Debtors' objections to payment with respect to Claim No. 9291.

2.      All documents concerning Debtors' objections to payment with respect to Claim No. 9293.

3.      All documents concerning Debtors' objections to payment with respect to Claim No. 11173.

4.      All documents concerning Debtors' objections to payment with respect to Claim No. 11242.

5.      All documents concerning Debtors' objection to Claimant's Claim Nos. 9291, 9293, 11173 and 11242 on the ground that Claimant is not entitled to double recovery, as asserted in paragraph 14 of Debtors' Objection.

6.      All documents concerning Debtors' alleged payment to Claimant in connection with Claim Nos. 9291, 9293, 11173 and 11242, as asserted in paragraph 19 of Debtors' Objection.

7.      All documents concerning Debtors' contention that "Claimant terminated the contract upon which it based its claims" as asserted in paragraph 15 of Debtors' Objection.

8.      All documents concerning Debtors' contention that Claimant seeks an "unenforceable penalty" in connection with its claims for minimum monthly commitment payments, as asserted in paragraph 16 of Debtors' Objection.

9.      All documents concerning Debtors' contention that "Claimant has calculated its alleged damages using an amount per commitment which is significantly higher than the amount the contract specifies should be used", as asserted in paragraph 17 of the Debtors' Objection.

A 01446

10.    All documents concerning Debtors' contention that "the contract prohibits assignment", as asserted in paragraph 18 of the Debtors' Objection.

11.    All documents concerning the General Agreement, including documents concerning the negotiation, drafting, and execution of the General Agreement and performance of Claimant and Debtors thereunder.

12.    All documents concerning the Memorandum of Understanding, including documents concerning the negotiation, drafting, and execution of the Memorandum of Understanding and performance of Claimant and Debtors thereunder.

13.    All documents concerning the Interim Agreement including documents concerning the negotiation, drafting, and execution of the Interim Agreement and performance of Claimant and Debtors thereunder.

14.    All documents concerning Debtors' decision to give notice in September 2001 to cancel accounts created pursuant to the General Agreement.

15.    All documents concerning Debtors' decision to give notice in March 2002 to cancel accounts created pursuant to the General Agreement.

16.    All documents concerning communications between Debtors and Claimant regarding the General Agreement.

17.    All documents concerning Debtors' payments to Claimant under the General Agreement.

18.    All documents concerning Debtors' communications among each other regarding the General Agreement.

19.    All documents concerning Debtors' communications among each other regarding the cancellation of accounts created pursuant to the General Agreement.

7

20.    All documents concerning Claimant, including Claimant's finances, Claimant's business, Claimant's technology, or Claimant's products.

21.    All documents concerning Debtors' evaluation or analysis of Claimant, including Claimant's finances, Claimant's business, Claimant's technology, or Claimant's products.

22.    All documents concerning the Master License Agreement, including documents concerning the negotiation, drafting, and execution of the Master License Agreement and performance of Claimant and Debtors thereunder.

23.    All documents concerning communications between Debtors and Claimant regarding the Master License Agreement.

24.    All documents concerning communications between Debtors and Claimant from September 1, 2000 to the present regarding the products and services offered by Claimant to Debtors under the Master License Agreement.

25.    All documents concerning the price(s) to be paid for licenses to be obtained from Claimant under the Master License Agreement.

26.    All documents concerning Debtors' payments to Claimant pursuant to the Master License Agreement.

27.    All documents concerning Debtors' communications among each other regarding the Master License Agreement.

28.    All documents concerning Jim Renforth's ceasing employment with Debtors in 2001.

29.    All documents concerning Jimmy Faust's ceasing employment with Debtors.

30.    All documents concerning Intermedia Communications, Inc.'s product suite "IntermediaOne".

A 01448

31.    All documents concerning the launch of Intermedia Communications, Inc.'s "IntermediaOne".

32.    All documents concerning Debtors' communications among each other regarding Intermedia Communications, Inc.'s "IntermediaOne".

33.    All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to Claimant, Claimant's finances, Claimant's business, Claimant's technology, Claimant's products, Intermedia Communications, Inc.'s "IntermediaOne", or Unified Communications.

34.    All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to the development, obtaining, marketing or launching of a Unified Communications product or service.

35.    All documents concerning Debtors' efforts to develop, obtain, market, or launch a Unified Communications product or service for their use or for sale to customers.

Dated: New York, New York.
       February 7, 2005


KELLEY DRYE & WARREN LLP

By: _____
    Stephen A. Wood (SW 6270)
    Robert S. Friedman (RF 1538)
    Robert L. LeHane (RL 9422)
    Kevin J. Smith (KS 0441)

    101 Park Avenue
    New York, New York 10178
    Telephone:  (212) 808-7800
    Facsimile:  (212) 808-7897

    *Attorneys for Parus Holdings, Inc., successor to EffectNet, Inc.*

9

**A 01449**