# EXHIBIT C

A 01480

STINSON
MORRISON
HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

May 31, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606

Re:    In re World Com - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Stephen:

As you are aware, Intermedia and MCI have been working diligently to locate documents responsive to your Request for Production and/or which are relevant to the pending adversary case. In our responses to certain of you requests for production of documents, we agreed to produce responsive documents, subject to objections as stated, and advised you that that we are continuing to search for additional documents that might be responsive. As previously indicated, the search has been complicated by the fact that Intermedia no longer exists as a separate entity, offices have been moved to different states and certain of the people involved no longer work for MCI.

1.    Located Documents:

We have located boxes of documents in multiple locations around the country, some of which are independent storage facilities, that could possibly include responsive documents. Our client has advised that there are in excess of 10,000 boxes of documents. Our office has not reviewed or examined any of these additional documents.

2.    Imprecise Indexes:

Unfortunately, the indexes for these documents are not very precise. We have searched the indexes but have not been able to satisfy ourselves that we can determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for your review. This is in part because of the imprecise descriptions in the indexes and, in part, because of the very broad nature of your alleged tort claims.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**A 01481**

Stephen A. Wood
May 31, 2005
Page 2

3.     Proposed Procedures:

After considering several means of producing the responsive non-privileged documents, we would like to propose what we consider to be the most efficient means. We are open to proposals from you concerning other possible means of efficiently producing the large number of documents that have been located. Intermedia/MCI proposes to produce the documents pursuant to the procedures and limitations contained in Exhibit A attached hereto.

4.     Objections Not Waived:

Intermedia and MCI will not, by following the attached procedures, have waived any of the objections previously made to the written discovery.

5.     Production Supplements Interrogatory Answers:

Any production of documents pursuant to these procedures will be both a supplemental production responsive to your Request for Production of Documents and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing appropriate further response to your written discovery and for producing any documents which might have any relevancy to this adversary proceeding. Please advise whether you would agree to this procedure and the stated limitations. If so, we will immediately forward the indexes for your review. The procedure is, of course, open for discussion. If there are alternatives that you would like to discuss please advise of that as well.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

Enclosure

6590719.2

A 01482

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

## PROPOSED PRODUCTION PROCEDURES

1.      Intermedia/MCI will provide claimants with a complete set of the indexes for the documents.

2.      Claimants will review the indexes and identify those specific boxes it wishes to review.

3.      Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.  In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.      Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

   a.      Those documents identified as privileged.

   b.      Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

   c.      Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

6590719.2

**A 01483**

# EXHIBIT D

A 01484

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

May 25, 2005

<u>VIA FACSIMILE</u>

Lawrence W. Bigus
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008

Re:    <u>Parus Holdings/WorldCom</u>; Amended Scheduling Order

Dear Mr. Bigus:

        I received an email from Don Ramsay of your firm on May 17, 2005 regarding amending the scheduling order where Mr. Ramsay indicated "I am informed we cannot agree to extensions of the deadlines set for designation of experts etc." I spoke with Mr. Ramsay on May 18th by telephone regarding this issue.

        I pointed out to Mr. Ramsay we had yet to receive the bulk of your document production and, accordingly, were unable to take depositions of WorldCom fact witnesses. In light of this, I asked Mr. Ramsay whether WorldCom was intending to object to or actively oppose our request to amend the scheduling order. He indicated that he was not exactly sure and would get back to me. Yesterday I received another email from him indicating that you would object to extending the deadlines. Mr. Ramsay offered no explanation of the basis for your objection. One deadline, for filing amendments, has already passed. Another deadline, for Parus to disclose experts, is set for June 20, 2005.

        I would like to make the following points in an effort to avoid taking a dispute regarding this issue to the court. We served a request for production of documents on you on February 8, 2005. To date, you have produced only 732 pages of documents in this case,

CH01/WOODS/196861.1

A 01485

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Two

approximately 247 pages in your Rule 26 disclosures and 485 pages in response to our request
for production of documents. Combined, this is a 4 inch stack of documents. The bulk of these
700 odd pages consist of copies of the UC Services Agreement, the Master Agreement for
Software Licensing, other agreements and communications already in the possession of both
parties. To date, little if any substance has been produced by you.

Indeed, you acknowledge much remains to be done by you regarding document
production. In your written response to our request for production of documents you have stated
the following:

> Intermedia is no longer actively engaged in business. Most of the
> Intermedia documents have been boxed up and sent to storage
> ("Stored Documents"). Debtors have aggressively undertaken an
> investigation to locate the Intermedia documents including the
> Stored Documents and those documents that were still in the
> possession of the current employees. The Intermedia documents
> are referred to herein as "Intermedia Documents".

> Debtors have located and reviewed some of the Intermedia
> Documents ("Located and Reviewed Documents") and are still
> working to locate the remaining Intermedia Documents. It appears
> that the Stored Documents are contained in several different
> storage locations and are in thousands of boxes ("Stored
> Documents"). Some of the storage locations are known and
> Debtors are still conducting due diligence to determine the location
> of the remaining storage locations. None of the documents at
> storage locations are included in Located and Reviewed
> Documents.

> In response to this Request for Production Debtors have indicated
> that certain documents will be produced ("Responsive
> Documents"). To the extent that Located and Reviewed
> Documents are also Responsive Documents they are attached
> hereto.

> The Stored Documents located to date are poorly indexed. As it
> relates to the Claims at issue the Stored Documents contained in
> these thousands of boxes can be described as follows:   1)
> Documents which have no relevancy to the Claims at issue, which
> Claimant has not requested and which Debtors have no desire to
> review in connection with the Claims at issue ("Irrelevant
> Documents"); 2) Documents which Debtors would like to review

CH01/WOODS/196861.1

A 01486

KELLEY DRYE & WARREN LLP

Lawrence Bigus
May 25, 2005
Page Three

in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents"). Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

In the foregoing Response you have admitted that you have not even located let alone reviewed or produced all of your documents in this case. The documents you have located are contained in "several locations" and are in "thousands of boxes." It appears, therefore, once you locate all of your documents, your production of documents to date will be dwarfed by documents yet to be produced. Not only have you failed to produce all responsive documents, you have not explained why you have failed to produce these documents to date, or why, despite that failure, Parus should be expected to disclose its experts' opinions.

Moreover, I note that because your documents have not been produced, not a single fact witness deposition has been taken in this case. So there has been no opportunity to examine WorldCom witnesses regarding your documents. Needless to say, depositions without documents would probably be completely useless. As you know, Intermedia breached a contract with EffectNet and Parus, successor-by-merger to EffectNet, has incurred damages. The measure of contract damages is certain to be a subject of expert testimony. Contract damages will depend, *inter alia*, on negotiations between the parties and expectations regarding performance. The Debtor's documents and the testimony of its witnesses are necessary for Parus' experts to form their opinions in this case.

A 01487

KELLEY DRYE & WARREN LLP

Lawrence Bigus
May 25, 2005
Page Four

In addition, we are claiming that the Debtors engaged in tortious conduct that had a devastating impact on the business of EffectNet and its merger partner, Webley Systems. We will need experts, likely with industry expertise, to review Debtors documents and the testimony of its witnesses regarding Debtors' products, targeted markets, marketing strategy, and business plans to reach conclusions about liability for these tortious claims as well as damages. We believe that Debtors were developing products that competed with the EffectNet product sold to Intermedia. This undoubtedly involved market assessments and business plans that would be relevant to the opinions of Parus's expert witnesses.

In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. I would remind you that when you requested an extension of time to produce your documents, we readily agreed. Please reconsider your position on this matter and get back to me as soon as possible. If you insist on maintaining an objection to amending the scheduling order, I would like an explanation of the basis for your objection.

Very truly yours,

Stephen A. Wood

SAW:ds

CH01/WOODS/196861.1

A 01488

# EXHIBIT E

A 01489

**STINSON**

**MORRISON**

**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450

9200 Indian Creek Parkway

Overland Park, KS 66210-2008

*Tel* (913) 451-8600

*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

Re:    Extension of Deadlines
        In re WorldCom, Inc. - Chapter 11
        Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS          LWB:lag

OMAHA

JEFFERSON CITY     6593760.1

**A 01490**

# Exhibit G

A 01491

**STINSON MORRISON HECKER LLP**
Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-in-Possession


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** : | **CHAPTER 11 CASE** |
|  : | **NO. 02-13533 (AJG)** |
| **WORLDCOM, INC., et al.,** : | **(Jointly Administered)** |
| **Debtors.** : | |
|  : | |

## <u>DEBTORS' SUPPLEMENTAL RESPONSES TO CLAIMANT'S FIRST</u><br><u>REQUEST FOR PRODUCTION OF DOCUMENTS</u>

As set forth in Debtor's Responses to Claimant's First Request for Production of Documents Debtors have aggressively undertaken an investigation to locate documents responsive to the Request for Production. These efforts have continued and did not stop at the time that Debtor's Responses to the Request were filed. These efforts are continuing at this time. Debtors have regularly kept Claimant's advised as to the results of the continuing search for additional documents.

Since Debtor's Responses to the Request were filed Debtor's have located: 1) additional hard documents (Stored Boxes) which are in storage; 2) the back up tapes for electronic documents (Back Up Tapes); and 3) another group of documents, separately maintained from the Stored Boxes, which appear to relate to the MCI-Webley contract (MCI Documents).

A.    **STATUS OF ADDITIONAL DOCUMENTS**.

1.    **MCI Documents**.  Debtors are in the process of putting the MCI Documents onto computer discs for review.  Debtors expect to deliver the MCI Documents to their counsel within the next two weeks.  Counsel will review the MCI Documents to determine the scope of the documents and whether it is economically reasonable to make a determination as which of the MCI Documents are responsive to the Request for Production.

2.    **Stored Boxes**:  The Stored Boxes are made up by in excess of ten thousand boxes.  The indexes for the Stored Boxes have been provided to Claimants.  The location of the storage facilities for the Stored Boxes has been provided to Claimants.  The Stored Boxes have been produced by making them available to Claimants as they are kept in the usual course of business.  Claimants have been told that they may inspect the Stored Boxes at any time they desire but that Claimants need to pay the third party charges that will be associated with inspection of the documents in the Stored Boxes.  Therefore, these documents have been legally produced in accordance with Rule 34(b).

3.    **Back Up Tapes**:  It currently appears that there are in excess of 250 Back Up Tapes.  These tapes probably contain information which is privileged, confidential, responsive, and non-responsive.  In order to determine what is on the Back Up Tapes the information must be transferred to searchable servers and then the information must be searched by electronic means.

048629:0094\6669304.1

A 01493

B.     **<u>OBJECTIONS: DEBTOR'S HEREBY OBJECT TO ALL REQUESTS FOR PRODUCTION OF DOCUMENTS ON THE GROUNDS THAT THE REQUESTS ARE UNDULY BURDENSOME AS SET FORTH BELOW</u>.**

1.     **MCI Documents**: Debtors need to determine the extent of the MCI Documents and the cost of searching the documents. After that determination has been made it may be possible to inspect the MCI Documents and then produce the responsive documents contained in the MCI Documents without undue cost in which case this objection will be removed as to the MCI Documents.

2.     **Stored Boxes**. The burden and expense of production of the Stored Boxes outweighs the likely benefit. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. This position by Claimant's makes Debtor's objections based on the production being unduly burdensome even stronger.

3.     **Back Up Tapes**. The burden and expense of reviewing the Back Up Tapes to determine what to produce is substantial - possibly in excess of one million dollars. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. To require Debtor's to expend in excess of one million dollars to enable Claimants to engage in a fishing expedition is not reasonable. This anticipated cost is based on estimates received from third party vendors to move the information from the back up tapes to servers so that the documents can be searched and then to search the documents for the documents requested by Claimants.

048629:0094\6669304.1

A 01494

4.    **Timing of Inspection**.  It is obvious that even with the utmost effort inspection of the documents to determine what is responsive to Claimants Requests is very time consuming and cannot be accomplished in a short period of time.  Therefore, any inspection of the documents will require a process over several months.  Debtors object to Claimants Request for Production on the grounds that the Requests require immediate production and do not allow for reasonable inspection to determine what documents are responsive.

Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas  66210
Telephone:  (913) 451-8600
Facsimile:  (913) 451-6352
*Attorneys for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of July, 2005, Debtors' Supplemental Responses to Claimant's First Request for Production of Documents served by Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC was served on counsel for Claimant via electronic mail and U.S. mail, postage prepaid, addressed to:

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606
swood@kelleydrye.com
*Attorneys for Parus Holdings, Inc.*
*Successor-by-Merger to EffectNet, Inc.*

Lawrence W. Bigus, Esq.

048629:0094\6669304.1

A 01495

.

# Exhibit H

A 01496

Hearing Date and Time: August 9, 2005 at 10:00 a.m. (Eastern Time)
Objection Deadline:  August 4, 2005 at 4:00 p.m. (Eastern Time)

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York  10178
Tel:  (212) 808-7800
Fax:  (212) 808-7897

Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| **WORLDCOM, INC., et al.** | Chapter 11 Case No. 02-13533 (AJG) |
| **Debtors.** | **(Jointly Administered)** |

### NOTICE OF MOTION OF CLAIMANT, PARUS HOLDINGS, INC., TO COMPEL PRODUCTION OF DOCUMENTS AND FOR AN AWARD OF ATTORNEYS' FEES

PLEASE TAKE NOTICE that a hearing will be held upon the annexed motion,

dated July 13, 2005 (the "Motion"), of Parus Holdings, Inc., successor-by-merger to EffectNet,

Inc. and EffectNet, LLC (collectively, "Parus"), a creditor and party-in-interest in the above-

captioned case regarding proofs of claim, bearing claim numbers 9291, 9293, 11173 and 11242,

and the declaration of Stephen A. Wood, dated July 13, 2005, together with the exhibits attached

thereto, filed contemporaneously with this Notice of Motion, and all prior proceedings herein

and papers on file in this case, for the entry of an order (the "Order") compelling Debtors to

produce documents and for an award of attorneys' fees to Parus, under Fed. R. Civ. P. 26 and 34

**A 01497**

and Fed. R. Bankr. P. 7026(b), 7034, 7037(a)(2)(B) and 9014, before the Honorable Arthur J.

Gonzalez, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court,

Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, on

August 9, 2005, at 10:00 a.m. (Eastern Time), or as soon thereafter as counsel may be heard.

    PLEASE TAKE FURTHER NOTICE that responses or objections to the Motion,

if any, must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court electronically

in accordance with General Order M-242 (General Order M-242 and the User's Manual for the

Electronic Case Filing System can be found at www.nysb.uscourts.gov), by registered users of

the Bankruptcy Court's Electronic Case Filing System and, by all other parties in interest, on a

3.5 inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other

Windows-based word processing format (with a hard-copy delivered directly to Chambers), and

shall be served in accordance with General Order M-242 upon i) the Reorganized Debtors, 1133

19th Street, Washington, D.C. 20036, Attn: Anatasia Kelly, Esq., General Counsel; ii)Weil,

Gotshal & Manges, Attorneys for the Reorganized Debtors, 767 Fifth Avenue, New York, New

York 10153, Attn: Marcia L. Goldstein, Esq.; iii) Stinson Morrison Hecker, LLP, Attorneys for

the Reorganized Debtors, 9200 Indian Creek Parkway, Suite 450, Overland Park, KS 66210,

Attn: Lawrence W. Bigus, Esq.; iv) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Mary

Elizabeth Tom, Esq.; v) Akin, Gump, Strauss, Hauer & Feld, LLP, Attorneys for the Official

Committee of Unsecured Creditors of WorldCom, Inc., , 590 Madison Avenue, New York, NY

10022, Attn: Ira S. Dizengoff, Esq., and iv) Kelley Drye & Warren LLP, Attorneys for Parus

Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC, 101 Park Avenue,

2

A 01498

New York New York 10178, Attn: Stephen A. Wood, Esq., Robert S. Friedman, Esq. and Robert

L. LeHane, Esq., and shall be filed with the Clerk of the United States Bankruptcy Court for the

Southern District of New York, in each case so as to be received no later than August 4, 2005 at

4:00 p.m. (Eastern Time).

Dated: New York, New York
       July 13, 2005

                                   KELLEY DRYE & WARREN LLP


                          By:  /s/ Robert L. LeHane
                               Stephen A. Wood (SW 6270)
                               Robert S. Friedman (RF 1538)
                               Robert L. LeHane (RL 9422)

                          101 Park Avenue
                          New York, New York 10178
                          Telephone:  (212) 808-7800
                          Facsimile:  (212) 808-7897

                          *Attorneys for Parus Holdings, Inc., Successor-by-
                          Merger to EffectNet, Inc. and EffectNet, LLC*

3

Hearing Date and Time: August 9, 2005 at 10:00 a.m. (Eastern Time)
Objection Deadline:  August 4, 2005 at 4:00 p.m. (Eastern Time)

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York  10178
Tel:  (212) 808-7800
Fax:  (212) 808-7897

Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Chapter 11 Case No.** |
| **WORLDCOM, INC., et al.** | **02-13533 (AJG)** |
| **Debtors.** | **(Jointly Administered)** |

**MOTION OF CLAIMANT, PARUS HOLDINGS, INC.,**
**TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS**
<u>**AND TO EXTEND DISCOVERY DEADLINES**</u>

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC

(collectively, "Parus"), by their undersigned attorneys Kelley Drye & Warren LLP ("Kelley

Drye"), hereby moves this Court ("Motion"), pursuant to Rules 7026, 7034, 7037 and 9014 of

the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule/s"), Rule 26, 34 and 37 of the

Federal Rules of Civil Procedure ("Civil Rule/s"), and section 105(a) of Title 11 of the United

States Code ("Bankruptcy Code"), for an order, substantially in the form annexed hereto as

Exhibit "1", compelling debtors, Intermedia Communications, Inc. ("Intermedia") and MCI

WorldCom Communications Inc. ("MCI WorldCom") (collectively, "Debtors") to produce

documents responsive to Parus' First Request for Documents, dated February 7, 2005 ("Parus' Document Request), by a date certain provided by this Court.  In support of the Motion, Parus shows as follows:

## JURISDICTION AND VENUE

1.     The Bankruptcy Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).  The statutory predicate for the relief requested herein is Section 105(a) of the Bankruptcy Code, Bankruptcy Rules 7026, 7034, 7037, and 9014 and Federal Rules 26, 34 and 37.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### Parus' Claims Against the Debtors

2.     On or about January 8, 2003, EffectNet, Inc.,[1] through their counsel Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. ("Mintz, Levin"),[2] filed proofs of claim in the United States Bankruptcy Court for the Southern District of New York against MCI WorldCom, claim no. 9291, and Intermedia, claim no. 9293.  Subsequently, on or about January 15, 2003, Parus filed amended proofs of claim against Intermedia, claim no. 11173, and MCI WorldCom, claim no. 11242.  (Wood Decl. ¶ 5, Ex. B and C.)  These proofs of claim amended and superceded the proofs of claim that were filed with this Court on or about January 8, 2003. (*Id.*)

3.     EffectNet's claims against the Debtors relate to Intermedia's total breach and repudiation of its duties under a Unified Communications Services General Agreement

---

[1]     EffectNet, Inc. is the successor in interest to EffectNet, LLC (collectively, "EffectNet").  (Wood Decl. ¶ 5, Ex. B and C.)  References to "Wood Decl. ¶ ___" are to the Declaration of Stephen A. Wood, dated July 13, 2005.

[2]     In December 2004, Kelley Drye substituted as counsel for Parus.  (Wood Decl. ¶ 2, Ex. A.)

A 01501

between EffectNet and Intermedia dated as of November 20, 2000 (the "UC Contract"). (Wood Decl. ¶ 6, Ex. B and C.)

        4.      Pursuant to the UC Contract, EffectNet was obligated to supply unified messaging, wholesale communications and related services ("Services") to Intermedia for marketing and resale to its end users and customers. (Wood Decl. ¶ 7, Ex. B and C.) The UC Contract included an unconditional minimum take-or-pay obligation for the Services. (*Id.*) The take-or-pay obligations of the UC Contract required Intermedia to compensate EffectNet as if Intermedia had at least 10,000 subscribers for the Services for all periods on or after December 18, 2001 through the expiration of the contract on November 20, 2003. (*Id.*) The pricing for these Services was provided in Appendix P to the UC Contract. (*Id.*)

        5.      Intermedia breached the UC Contract by failing to pay amounts due under it for Services provided by EffectNet, and by purposefully failing to purchase and market the Services supplied by EffectNet under the UC Contract. (Wood Decl. ¶ 8, Ex. B and C.) In March of 2002, EffectNet formally notified Intermedia that it was in default of its obligations under the UC Contract. (Wood Decl. ¶ 8, Ex. B, C and D) Intermedia failed and refused to cure its default under the UC Contract despite EffectNet's demands. (Wood Decl. ¶ 8, Ex. D at ¶ 20.) The EffectNet notices state that EffectNet "may" terminate the UC Contract if Intermedia did not cure the default. (Wood Decl. ¶ 8, Ex. B, C and D) However, EffectNet at no time terminated the UC Contract as a result of the default. (*Id.*) On July 21, 2002 and November 8, 2002, the Debtors and various affiliates filed separate voluntary Chapter 11 bankruptcy petitions. (Wood Decl. ¶ 8, Ex. D at ¶ 21.) Intermedia has never cured its default. (Wood Decl. ¶ 8, Ex. D at ¶ 22.)

A 01502

6.    As a result of Intermedia's breach of the UC Contract, EffectNet suffered damages, at a minimum, equal to unpaid invoices for the period ending March 20, 2002, approximately $828,000, and Intermedia's remaining minimum monthly take-or-pay commitment under the UC Contract for the period March 21, 2002 through November 20, 2003, approximately $5.5 million.  (Wood Decl. ¶ 9, Ex. D at ¶¶ 23-26.)

7.    Moreover, EffectNet contends that Intermedia and MCI WorldCom, on or before July 1, 2001 (MCI WorldCom completed its acquisition of and/or merger with Intermedia in July 2001), acted in concert to breach the UC Contract.  (Wood Decl. ¶ 10, Ex. D at ¶¶ 1, 14-15 and 27-28.)  EffectNet contends that these actions were made with knowledge that a breach of the UC Contract would impose financial distress on EffectNet, a competitor of MCI WorldCom, as well as create leverage to obtain better terms under a separate Master Agreement for Software Licenses ("MASL") that MCI WorldCom was at this time negotiating with Webley Systems, Inc. ("Webley"), a company that supplied technology to EffectNet that EffectNet was, at this same time, merging with.  (Id.)  In fact, last minute price concessions were demanded regarding the MASL.  (Id.)  Furthermore, EffectNet contends that as part of this process, MCI WorldCom made improper use of confidential financial and other disclosures it obtained from EffectNet and Webley as part of MCI WorldCom's due diligence requests negotiating the MASL as well as disclosures made to WorldCom Ventures as part of a separate inquiry by Webley concerning whether MCI WorldCom might have an interest in investing in Webley.  (Id.)

8.    As a result, EffectNet has additional claims against Intermedia for unfair and deceptive trade practices, a breach of the implied covenant of good faith and fair dealing, and conspiracy.  (Wood Decl. ¶ 11, Ex. B and Ex. D at ¶¶ 27-38.)  EffectNet also has separate claims against MCI WorldCom for interference with EffectNet's contractual relations under the

4

A 01503

UC Contract, unfair and deceptive trade practices, and civil conspiracy in procuring Intermedia's

breach of the UC Contract. (Wood Decl. ¶ 11, Ex. C and Ex. D at ¶¶ 27-38.) EffectNet contends

that its damages as a result of the Debtors' concerted action were foreseeable and estimates that

its damages attributable to the foregoing may exceed $20 million. (Wood Decl. ¶ 11, Ex. D at ¶

38.)

9.      On or about February 23, 2004 EffectNet, Inc. served and filed a notice of

name change. (Wood Decl. ¶ 12, Ex. E.) The notice stated that on or about January 28, 2004

EffectNet, Inc. was merged into Parus Holdings, Inc. (*Id.*)

10.     On or about June 10, 2004, the Debtors served and filed their objection to

Parus' proofs of claim. (Wood Decl. ¶ 13, Ex. F.) In turn, on or about July 30, 2004, Parus

timely served and filed its response and opposition to Debtors' objection. (Wood Decl. ¶ 13, Ex.

D.)

11.     On or about October 8, 2004, the Debtors and Parus timely exchanged

their initial disclosures pursuant to Federal Rule 26(a)(1) and Bankruptcy Rule 7026. (Wood

Decl. ¶ 14.)

### Current Discovery Dispute

12.     On February 7, 2005, Parus served its First Request for Documents on

Debtors' counsel ("Parus' Document Request"), pursuant to Federal Rules 26 and 34 and made

applicable to these proceedings by Bankruptcy Rules 7026 and 7034. (Wood Decl. ¶ 15,Ex. G.)

Parus' Document Request focused on documents pertinent to the contract and tort claims set

forth in its amended proofs of claim (Wood Decl. ¶ 15, Ex. B and C.) as well as the assertions

and defenses set forth in the Debtors' objection to Parus' proofs of claim (Wood Decl. ¶ 15, Ex.

F.) Thus, each of Parus' requests are proper and calculated to lead to the discovery of relevant

A 01504

and admissible evidence as required by the Federal Rules 26 and 34 and Bankruptcy Rules 7026 and 7034.  (Wood Decl. ¶ 15, Exhibit G.)

        13.    Debtors' counsel requested and were granted an extension of time to respond to Parus' Document Request to March 25, 2005.  (Wood Decl. ¶ 16.)  On or about March 25, 2005, Debtors' counsel served on Parus Debtors' written responses to Parus' Document Request ("Debtors' Document Responses").  (Wood Decl. ¶ 16, Ex. H.)

        14.    Simultaneously with the Debtors' Document Responses, Debtors' made a minimal production consisting of approximately 33 documents (a total of 343 pages).  (Wood Decl. ¶ 17.)  These documents were produced to Parus' counsel and were organized by individual document requests as set forth in Federal Rule 34 and Bankruptcy Rule 7034.  (*Id.*)  However, the bulk of this production consisted of copies of executed contracts and agreements as well as communications already in the possession of both parties.  (*Id.*)  Consequently, little of substance was actually produced.  (*Id.*)

        15.    Debtors' March 25, 2005 production was made up of:

        10 letters (total of 30 pages);

        11 e-mails (total of 39 pages);

        4 contracts/agreements (total of 64 pages);

        3 reports (total of 37 pages);

        2 manuals (total of 166 pages); and

        3 approval forms (total of 7 pages).  (Wood Decl. ¶ 18.)

        16.    What made the March 25, 2005 production even less substantive was the fact that Debtors had previously produced a number of these documents in January of 2005.  Wood Decl. ¶ 19.)  Pursuant to an amended scheduling order, the parties exchanged documents

6

A 01505

referred to in their Federal Rule 26 and Bankruptcy Rule 7026 disclosures on or about January 26, 2005. (Wood Decl. ¶ 19, Ex I.) Parus produced approximately 750 pages of documents and the Debtors produced approximately 247 pages of documents. (*Id.*)

      17.    Debtors' January 26, 2005 production was made up of:

            3 letters (total of 11 pages);

            2 e-mails (total of 4 pages);

            8 contracts/agreements (total of 161 pages);

            6 reports (total of 45 pages);

            Parus' proof of claim (total of 22 pages); and

            1 chart (total of 4 pages). (Wood Decl. ¶ 20.)

      18.    The Debtors' Document Responses included multiple meritless general and specific objections as well as modifications and limitations to Parus' Document Requests. (Wood Decl. ¶ 21, Ex. H.) However, subject to those objections, modifications and/or limitations, Debtors' agreed to produce non-privileged documents responsive to requests 6 – 7 and 11 – 27 in addition to the attached limited document production. (*Id.*) Indeed, the Debtors acknowledged that much remained to be done regarding document production. (*Id.*) The Debtors' Document Responses set forth a long and detailed narrative under the heading "Continuing Effort to Locate Documents" regarding the vast quantities of potentially responsive documents that the Debtors had yet to locate and/or review as of March 25, 2005 for production. (Wood Decl. ¶ 21, Ex. H at pp. 7-8.) Based on these representations, the Debtors' production of responsive documents to date would be dwarfed by responsive documents yet to be produced. (*Id.*)

A 01506

19.     Having heard nothing further on this issue or receiving any additional responsive documents from Debtors during the ensuing weeks, Parus' counsel contacted Debtors' counsel telephonically on May 12, 2005 requesting, under the circumstances, that Debtors agree to amend the current amended scheduling order which required Parus to designate its experts on or before June 20, 2005. (Wood Decl. ¶ 22, Ex. I.)  In a May 17, 2005 e-mail, Debtors' counsel indicated that they would not agree to extending the expert disclosure deadline. (Wood Decl. ¶ 22,  Ex. J.)

20.     A telephone conference was held between counsel for the parties on May 18, 2005 wherein Parus explained the unfairness of requiring it to disclose experts when none of Debtors' witnesses had been deposed and the vast majority of its responsive documents remained to be produced.  (Wood Decl. ¶ 23.)  However, nothing was resolved in this conference call. (*Id.*)  In a subsequent e-mail, dated May 24, 2005, Debtors again indicated they would object to any extension of deadlines in the amended schedule.  (Wood Decl. ¶ 23, Ex. K.)

21.     On May 25, 2005, in an effort to resolve this issue and avoid bringing it before the Court, Parus again requested, that in light of the Debtors' acknowledged failure to produce the overwhelming bulk of their documents, that Debtors agree to extend the deadline for Parus to disclose experts in this case.  (Wood Decl. ¶ 24, Ex. L.)  Another telephone conference was held between counsel for Parus and counsel for Debtors on May 31, 2005 in an effort to reach an agreement on extending the deadline for Parus to disclose experts.  (*Id.*)  Again, no resolution was reached.  (*Id.*)

22.     On May 31, 2005, more than two months after serving their Document Responses and nearly four months after receiving Parus' Document Requests, Debtors' counsel sent Parus a "proposal" for producing responsive documents.  (Wood Decl. ¶ 25, Ex. M.)  This

A 01507

proposal borrowed verbatim from statements in Debtors' Document Responses, to wit, that Debtors had located "thousands of boxes" of documents in "multiple locations around the country." (*Id.*) That this proposal used the same language as the Debtors' Document Responses suggested that Debtors had expended no new effort to locate, review or produce documents beyond that expended prior to service of the Debtors' Document Responses. (*Id.*) In fact, Debtors admitted in their letter that all they had done was review the indexes and that Debtors' counsel's "office had not reviewed or examined any of these additional documents." (*Id.*)

23.    In the May 31, 2005 letter, Debtors proposed providing Parus with copies of the indexes to the thousands and thousands of boxes for Parus to review, letting Parus select from these indexes boxes to be reviewed and produced by Debtors. (Wood Decl. ¶ 26, Ex. M.) These were the same indexes that the Debtors characterized in the very letter as "not being very precise" and which Debtors' counsel themselves were not able to "determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for [Parus'] review." (*Id.*) In essence, the Debtors having reviewed only the indexes, and not a single document from these boxes, and finding the indexes useless, now proposed that Parus review the indexes and decide which of the thousands and thousands of boxes it wanted to review for potentially responsive documents to Parus' Document Request. (*Id.*) The proposal went onto say that once Parus identified the boxes of interest, Debtors would have to review them for privilege, confidentiality and responsiveness, making the remaining documents available for inspection at a suitable location. (*Id.*) Aside from the unfair and improperly burden-shifting nature of this proposal, it would take weeks if not months for Parus to actually receive, let alone review, Debtors' documents. (*Id.*) This was clearly not enough time to provide

9

A 01508

the Debtors' documents to Parus' experts prior to the current June 20, 2005 expert disclosure deadline. (*Id.*)

24.    On May 31, 2005, Parus' counsel wrote the Debtors to address the shortcomings in Debtors' Document Responses, in particular the meritlessness of various general and specific objections, modifications and limitations made in Debtors' Document Responses, demanding their immediate withdrawal and confirmation that Debtors would not be withholding any documents from Parus on those bases. (Wood Decl. ¶ 27, Ex. N.)  Furthermore, to the extent that Debtors were withholding any documents on the basis of privilege, the letter demanded a prompt production of a privilege log pursuant to Local Bankruptcy Rule 7034-1(c). (*Id.*)  To date, no privilege log has been produced. (*Id.*)

25.    Among other issues, Parus' May 31, 2005 letter advised Debtors that Debtors' general objection in Paragraph 3 and the objection to the definition of "Debtor" in paragraph 4 of the Debtors' Document Response were improper. (Wood Decl. ¶ 28, Ex. N. and Ex. H at pp. 1-2 and 4-5.)  The Debtors could not limit their responses to Parus' Document Request to documents in the possession, custody or control of only Intermedia Communications, Inc. and MCI WorldCom Communications, Inc. (*Id.*)  Parus pointed out that, pursuant to section 5.1 of the Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated October 21, 2004 ("WorldCom Plan"), the WorldCom Debtors (as defined in section 1.118 and Exhibit A1 of the WorldCom Plan) have been substantively consolidated. (*Id.*)  Therefore, "each and every Claim filed or to be filed in the Chapter 11 case of any of the WorldCom Debtors shall be deemed filed against the WorldCom Debtors, and shall be one Claim against and obligation of the WorldCom Debtors." *See* WorldCom Plan at § 5.1. (*Id.*) WorldCom Debtors include, but are not limited to, Intermedia Communications, Inc., MCI

A 01509

WorldCom Communications, Inc. as well as MCI WorldCom Network Services, Inc. Therefore, Debtors had an obligation to produce any and all responsive documents to Parus' Document Request in the possession, custody or control of any and all of the WorldCom Debtors as well as their "officers, directors, employees, partners, corporate parent subsidiaries or affiliates." *See* Local Federal Rule 26.3(c)(5) (made applicable to this contested matter pursuant to Local Bankruptcy Rule 7026-1). (*Id.*)

26.    On June 1, 2005, Debtors' counsel yet again rejected extending any deadlines. (Wood Decl. ¶ 29, Ex. O.) Dismissive of their failure to produce documents, the Debtors asserted that Parus did not need any of the Debtors' documents or testimony from their witnesses prior to disclosing its experts and providing expert reports in this litigation. (*Id.*) Furthermore, Debtors stated that they needed to "get this case tried and behind them . . . as expeditiously as possible," and "extending deadlines [would] not accomplish that goal." (*Id.*)

27.    On June 1, 2005, Debtors sent another letter in response to Parus' May 31, 2005 letter. (Wood Decl. ¶ 30, Ex. P.) Despite the detailed objections to the Debtors' Document Responses, the Debtors did not respond to any of them and stated that their May 31, 2005 letter containing the index "proposal" made most of Parus' May 31, 2005 letter "moot" and "[e]ven though our initial responses contained objections we have now proposed sending [Parus] indexes and opening all of the files up for [Parus'] review . . . ." (*Id.*)

28.    Parus' counsel also sent a letter to Debtors' counsel on June 1, 2005 setting forth questions and concerns that Parus had with the Debtors' May 31, 2005 "proposal" and informing the Debtors that Parus was unable to accept the proposal as stated. (Wood Decl. ¶ 31, Ex. Q.) First, Parus wanted Debtors to respond to all of the objections raised by Parus in its May 31, 2005 letter to Debtors' Document Responses, in particular, to the issue of which entities

11

A 01510

would be producing documents as a result of the substantive consolidation of the Debtors'

bankruptcy proceeding. (*Id.*) Second, Parus wanted to know whether Debtors were proposing

that Parus sift through a large number of non-responsive documents (thousands and thousands of

boxes) to locate responsive documents. (*Id.*) Third, Parus questioned the utility of reviewing

indexes that were by Debtors own admission "not very precise" in an effort to identify

responsive documents. (*Id.*) Finally, Parus noted that the proposal made no mention of

documents stored in electronic form and inquired as to their production status. (*Id.*)

   29. In response to Parus' June 1, 2005 letter, Debtors' counsel inexplicably

lashed out at Parus' counsel for summarily rejecting Debtors' "serious proposal." (Wood Decl. ¶

32, Ex. R.) Debtors' counsel stated that they "do not have an obligation to review all possible

documents to determine if they are relevant. (*Id.*) [Debtors] have a right to make the documents

available to [Parus] for [Parus'] review and determination." (*Id.*) In fact, Debtors' admitted in

their May 31, 2005 proposal that they did not review a single document from the thousands of

boxes that they were now making available to Parus. (Wood Decl. ¶ 32, Ex. M.) Furthermore,

Debtors' counsel accused Parus' counsel of asserting in Parus' June 1, 2005 letter that Debtors

had not produced any emails and boasting that Debtors had produced "hundreds of pages of

documents that contain[ed] emails." (Wood Decl. ¶ 32, Ex. R.) In truth, Debtors actually

produced a grand total of 13 emails (consisting of a total of 43 pages) and the May 31, 2005

proposal did not mention any e-mails or other documents stored in electronic form which the

Debtors were obliged to review and produce under the Federal and Bankruptcy Rules. (*Id.*)

Debtors' counsel also indicated that they were not in a position to respond to "the issue that all

MCI entities that are included in the substantive consolidation have an obligation to search for

the documents that [Parus is] seeking," and would respond to the issue as soon as they had

A 01511

finished researching the issue. (*Id.*) Debtors' counsel never responded to this issue. (*Id.*)
Finally, Debtors' counsel again admitted that the indexes that they had offered to make available
to Parus for review were "not very useful," and stated "[i]f the indexes were useful we would
have narrowed the number of boxes down by using the indexes. (*Id.*) Since we have no means
to identify what is responsive other than by examining all documents we are simply making the
documents available to you subject to a few normal stipulations." (*Id.*)

        30.    Parus' counsel responded to the points raised in Debtors' counsel's e-mail.
(Wood Decl. ¶ 33, Ex. S.) First, Parus' counsel noted that Parus did not reject the May 31, 2005
proposal outright but asked for clarity regarding certain issues. (*Id.*) Second, Parus' counsel
pointed out the inadequate production of documents to date by the Debtors in response to Parus'
Document Request and questioned Debtors' efforts to locate, identify and produce responsive
documents beyond reviewing the indexes set forth in the Debtors' proposal. (*Id.*) Finally, Parus'
counsel noted that its inquiry into the status of an e-mail production were valid since, contrary to
Debtors' assertion, Debtors had only produced 13 emails (total of 43 pages) to date and made no
reference to e-mails in their May 31, 2005 proposal. (*Id.*)

        31.    As a result of the Debtors' repeated refusals to agree to extend discovery
deadlines because of their failure to produce responsive documents, on June 6, 2005, Parus'
counsel was forced to request an informal conference before this Court pursuant to Local
Bankruptcy Rule 7007-1(b) to consider Parus' request to amend the current scheduling order.
(Wood Decl. ¶ 34, Ex. T.) Parus suggested in this letter that the informal conference be held on
June 14, 2005 as the parties were scheduled to appear before the Court on another motion. (*Id.*)

        32.    On June 10, 2005, Parus produced to Debtors' counsel approximately
23,000 pages documents in response to Debtors' document requests. (Wood Decl. ¶ 35.) Unlike

A 01512

the Debtors, Parus invested substantial time and resources to locate, review and produce responsive documents to the Debtors as required under the Federal and Bankruptcy Rules. (*Id.*) Parus also had the responsive documents scanned at its own expense to make their review and production more efficient. (*Id.*) Furthermore, Parus promptly provided Debtor a list of the topics or subjects of the documents produced as well as a chart correlating the bates numbers of the produced documents with the Debtors' requests pursuant to Parus' obligation to produce documents organized to correspond to the categories in the numbered requests. (Wood Decl. ¶ 35, Ex. U.)

33.    During the hearing held on June 14, 2005 before this Court on another motion brought by Parus, this Court instructed the parties to discuss and attempt to resolve their various discovery and scheduling disputes and to arrange a conference call with the Court for June 22, 2005. (Wood Decl. ¶ 36.) This Court also extended all discovery deadlines in the interim until after the June 22, 2005 conference call. (*Id.*) This conference call was later continued by the Court to June 29, 2005 and Parus' deadline to disclose experts was extended by the Court to July 5, 2005. (*Id.*)

34.    Pursuant to the Court's direction, in an effort to compromise and to keep discovery moving, Parus' counsel agreed to review the indexes set forth in Debtors' counsel's proposal of May 31, 2005. (Wood Decl. ¶ 37.) Parus also agreed to Debtors' request that nothing contained in the indexes would result in any waiver of a privilege. (Wood Decl. ¶ 37, Ex. V.) (*Id.*) During the discussions of June 14, 2005, the subject of electronic documents was also raised. Debtors' counsel represented to Parus' counsel that Debtors did not have electronic documents because e-mail messages were not stored in a central location by Debtors and were instead stored on local PCs which Debtors no longer possessed. (*Id.*)

14

A 01513

35.     On June 15, 2005 Debtors forwarded copies of the indexes to Parus' counsel for review.  (Wood Decl. ¶ 38, Ex. W.) (Parus has not attached the actual indexes to this declaration because of their voluminous nature and difficulty of printing out in a readable hard document form, however, Parus can and will make these indexes available if the Court desires to inspect them).  (*Id.*)

36.     On June 16, 2005, two days after the Court directed the parties to make an effort to work out their disputes, Debtors' counsel sent an e-mail regarding Parus' request for an extension of time to disclose experts.  (Wood Decl. ¶ 39.)  Despite Debtors' failure to produce their documents, Debtors requested additional information from Parus before they would consider agreeing to an extension: how long of an extension Parus was seeking, the subjects on which Parus intended to have experts testify and how many experts Parus intended to testify. (Wood Decl. ¶ 39, Ex. X.)  Parus' counsel responded to each of the Debtors' counsel's requests for information: Parus was agreeable to working with Debtors on the deadline as long as it permitted some time to review Debtors' documents and take some depositions of Debtors' witnesses, Parus did not know how many experts it would need since some of them may be obviated by discovery of Debtors, and the subject matters of expert testimony were addressed in the Parus' June 6, 2005 letter to the Court.  (Wood Decl. ¶ 39, Ex. Y and Ex. T.)

37.     On June 19, 2005, apparently unsatisfied with Parus' response, Debtors' counsel accused Parus of refusing to provide information necessary for Debtors to analyze Parus' request for extension of deadlines.  (Wood Decl. ¶ 40, Ex. Z.)  Although believing its previous response to be both reasonable and responsive, Parus nevertheless attempted to respond with greater specificity.  (Wood Decl. ¶ 40, Ex. AA.)  Parus, despite the difficulties presented by not having access to Debtors' documents or witnesses, estimated the number of experts and the

15

subjects of expert testimony. (*Id.*) As to the length of the extension, Parus' counsel offered to produce expert reports 75 days from the date Debtors' document production would be completed. (*Id.*)

38.    Again, this was not satisfactory to Debtors. In response to Parus' counsel's June 20, 2005 e-mail, Debtors' counsel asserted for the first time that "[w]e have already produced our documents." (Wood Decl. ¶ 41, Ex. BB.) Debtors' counsel continued in this vein:

> On May 31, 2005 we sent you a letter which produced the documents and talked about the procedures for production. We have advised you as to the location of the documents. You have an index of the documents. The documents have been produced and it is up to you to inform us as to when you want to view the documents. Additionally there is the subject of the cost of review. Since you want to examine the documents we expect that you will pay the cost of removing them from the storage shelves and returning them to the storage shelves.

(*Id.*) This was the first time Debtors had taken the position that they had produced documents by providing useless indexes and the first time they demanded that Parus pay the costs associated with document retrieval. (*Id.*) Debtors also continued to accuse Parus of not cooperating with their request for information on Parus' experts. (*Id.*)

39.    On June 27, 2005, Parus counsel sent another letter setting forth its concerns regarding the May 31, 2005 "proposal" and Debtors' counsel's June 21, 2005 e-mail. (Wood Decl. ¶ 42, Ex. CC.) Parus' counsel advised the Debtors that the indexes forwarded on June 15, 2005 were not helpful in identifying whether the boxes described therein contained responsive documents. (*Id.*) Furthermore, Parus took issue with Debtors' counsel's assertion that they produced documents on May 31, 2005. (*Id.*) The only productions of documents by the Debtors to date were the documents produced in January and March of 2005. (*Id.*) Since March 25, 2005 it appeared that Debtors had done nothing except to send a proposal with

16

A 01515

essentially useless indexes and insist that Parus bear the burden and expense of culling through

Debtors' boxes to identify responsive documents, if any. (*Id.*) In contrast, Parus had undertaken

a time-consuming effort to find, review and produce over 23,000 pages of responsive documents

to date. (*Id.*) Therefore, Parus expected Debtors to comply with the discovery rules and review

their documents and produce or make available for inspection documents responsive to Parus'

Document Request and bear the expense of complying with the discovery requests. (*Id.*)

Finally, Parus requested, yet again, an update on responsive electronic documents which

Debtors' counsel had previously indicated did not exist. (*Id.*)

      40.    Debtors' counsel wasted no time in lashing out once again, accusing

Parus' counsel repeatedly of making "allegations" that were "false" and "inaccurate". (Wood

Decl. ¶ 43, Ex. DD.) Debtors' counsel stated, in part, that they had located many electronic

documents but most involved legal counsel and therefore were privileged. (*Id.*) However, to

date, Debtors had yet to provide a privilege log to Parus as required under Local Bankruptcy

Rule 7034-1(c). (*Id.*) Debtors continued to assert that they had produced the documents listed

on the indexes. (*Id.*) Debtors interestingly also indicated that they had located additional

documents "beyond those reflected in the indexes" and were waiting to receive them at their

offices before producing them. (*Id.*) The Debtors provided no further details as to what types of

documents, why it took five months to locate them, and when the documents would be produced.

(*Id.*)

      41.    Parus' counsel quickly responded on June 28, 2005 to the Debtors'

counsels assertions in its June 27, 2005 e-mail. (Wood Decl. ¶ 44, Ex. EE.) Parus counsel stated

that all statements made in its June 27, 2005 letter were true and accurate. (*Id.*) Parus' counsel

reminded Debtors' counsel that they had represented after the June 14, 2005 Court hearing that

A 01516

Debtors had no electronic documents because e-mail messages were not kept in a central location and were stored on local PCs which Debtors no longer had. (*Id.*) Furthermore, Parus' counsel again pointed out that Debtors had only produced roughly 500 pages of documents to date and the production of indecipherable indexes to thousands of potentially responsive boxes of documents did not comply with the Federal and Bankruptcy Rules. (*Id.*)

42.    Since raising this request for the first time approximately six weeks prior on May 12, 2005 and after endless discussions, correspondence and repeated rejections by Debtors' counsel of any extension to the Parus' expert disclosure deadline, Debtors' counsel suddenly and for the first time on June 29, 2005, only hours prior to a conference call before this Court on this very issue, proposed a 120 day extension. (Wood Decl. ¶ 45, Ex. FF.) It is unclear what if anything had changed during the six weeks that led to Debtors' new position except for the simple fact that within hours Debtors' counsel would have to defend their position before this Court. (*Id.*) Notwithstanding this change in position, Debtors continued to assert that they had produced the documents set forth in the indexes and that it was Parus' obligation to pay the various fees associated with document retrieval. (*Id.*)

43.    Shortly thereafter, counsel for both parties participated in a conference call before this Court. (Wood Decl. ¶ 46, Ex. GG.) Parus counsel informed the Court that the parties had agreed to a tentative 120 day extension of Parus' expert disclosure deadline and requested that the Court also provide an intermediate deadline for all parties to produce their remaining responsive documents. (Wood Decl. ¶ 46, Ex. GG at pp. 6-7.) In response, Debtors' counsel represented to this Court that they had "legally produced the documents. We have given them indexes to tens of thousands of boxes. We have given them the location where those boxes are kept. Under Rule 34(b) we have chosen to produce those as they are kept in the usual course of

18

A 01517

business." (Wood Decl. ¶ 46, Ex. GG at p. 7.)  Furthermore, Debtors' counsel represented to the Court that they had done "far beyond what is required by the rule" and actually looked at all the indexes they provided to Parus and made an attempt to identify what was responsive.  (Wood Decl. ¶ 46, Ex. GG at pp. 12-13.)  However, at the same time, Debtors' counsel admitted to the Court that the indexes that they had provided to Parus as part of their "legal production" were useless for trying to determine which of the thousands of boxes actually contained responsive documents, (Wood Decl. ¶ 46, Ex. GG at p. 11.), a fact that had been represented by Debtors' counsel multiple times before and confirmed by Parus' counsel after reviewing the indexes themselves.  (*Id.*)

44.     Despite the fact that Debtors represented that they had produced the documents, Debtors' counsel objected to any interim deadline for producing its documents, and raised the issues of cost-shifting regarding the boxes.  (Wood Decl. ¶ 47, Ex. GG at pp. 7-8.) Interestingly, Debtors made no mention at this hearing and had not yet advised Parus that Debtors had located additional responsive non-privileged electronic documents.  (*Id.*)  Parus' counsel reminded the Court that Parus had undertaken considerable efforts and expenses to locate, review and produce responsive documents as was required by the Federal and Bankruptcy Rules.  (Wood Decl. ¶ 47, Ex. GG at pp. 13-14.)  The Court gave permission to Parus to file a motion to compel and noted that it required an affidavit to be filed by the Debtors in response to the Motion "set[ting] forth what has been done and what the legal arguments are regarding what has to be done." (Wood Decl. ¶ 47, Ex. GG at p. 14.)  Finally, in the interim, the Court extended Parus' expert disclosure by 120 days from June 20, 2005. (Wood Decl. ¶ 47, Ex. GG at p. 16.)

45.     Within approximately one hour of the June 29, 2005 conference call with the Court, Debtors made an offer for the first time to review their hard documents for responsive

A 01518

documents and make those responsive documents available for review and copying by Parus. (Wood Decl. ¶ 48, Ex. HH.) This offer was made despite Debtors having represented to this Court that Debtors had legally produced their documents and had done "far beyond what is required by the rule," and despite having previously represented that they had "no means to identify what is responsive." (*Id.*) However, Debtors still expected Parus to pay for half the costs associated with document retrieval. (*Id.*) Importantly too, the Debtors made no commitment to producing documents by a date certain. (*Id.*)

46.    In addition, on June 30, 2005, after multiple inquiries by Parus on the status of Debtors' electronic documents, Debtors' counsel for the first time informed Parus that they had located 250 back up tapes that might contain responsive electronic documents. (Wood Decl. ¶ 49, Ex. II.) Debtors' counsel provided no further details as to those back up tapes and merely informed Parus that "the costs to have the data moved from the tapes to servers so that the data could be searched and then searching the data to try to determine what is relevant" would be approximately $900,000 and, despite the fact that Debtors had only produced a total of 13 emails to date, it was Parus' obligation to cover any and all costs associated with the search of the electronic documents. (*Id.*)

47.    On July 1, 2005, Parus' counsel informed debtors that Parus could not agree to the proposal set forth by the Debtors on June 29, 2005 because Debtors did not commit to producing the responsive documents by a date certain even though Debtors have had Parus' Document Request for approximately five months and because Debtors continued to insist that Parus bear half the costs associated with the retrieval of the boxes from its warehouses. (Wood Decl. ¶ 50, Ex. JJ.)

A 01519

48.    Three months after the service of Debtors' Document Responses, Debtors served upon Parus Debtors' Supplemental Responses to Claimant's First Request for Production of Documents ("Debtors' Supplemental Document Responses"). (Wood Decl. ¶ 51, Ex. KK.) Not surprisingly, Debtors' Supplemental Document Responses did not attach a single responsive document. Instead, Debtors object to *all* of Parus' Document Requests on the ground that they are unduly burdensome and they object to producing any documents immediately. (*Id.*) The Debtors now represent that they have found a new set of documents, the "MCI Documents", from which it "may be possible to produce responsive documents." (*Id.*) The Supplemental Document Responses further offer the same litany regarding the thousands of stored boxes of documents: indexes have been provided to Parus, these documents have therefore been produced pursuant to Rule 34(b), and Parus may inspect the stored boxes at any time. (*Id.*) With regard to these stored documents, this explanation is no different then that offered in Debtors' Document Responses served in March of 2005, so the clear inference is that Debtors have done nothing with these stored documents since that time. (*Id.*) Debtors also indicate they located 250 back up tapes of e-mails that Debtors had informed Parus of the first time on June 30, 2005. (*Id.*) Debtors did not set forth any further details about the additional documents or back up tapes and did not set forth why it took them approximately five months to locate these documents. (*Id.*) What is clear from the Supplemental Document Response is that Debtors had not reviewed any of these documents for responsiveness and that regardless they would insist that any discovery costs regarding these documents to be shifted to Parus. (*Id.*)

49.    Amazingly, the same day Debtors served their Supplemental Document Responses in which they object to any deadlines for their own production of documents, Debtors' counsel sent a letter to Parus' counsel demanding that Parus produce all of its

21

A 01520

remaining responsive documents to Debtors' document requests within the next ten days. (Wood Decl. ¶ 52, Ex. LL.) Debtors modified this deadline unilaterally when on July 8, 2005, Debtors' counsel demanded that Parus produce all of its remaining responsive documents as well as serve revised discovery responses by July 31, 2005. (Wood Decl. ¶ 52, Ex. MM.) The amendment of the deadline did little to lessen the Debtors' hypocrisy. (*Id.*) These letters are astonishing in light of the fact that the parties had appeared before this Court only a week earlier to address various discovery disputes and during that conference Debtors' counsel not only failed to raise these issues but actually objected to Parus' counsel's request that this Court provide a deadline by which both parties would be required to produce the remaining responsive documents. (*Id.*)

50.    Just when Parus thought it had seen it all, Debtors' counsel sent another letter on July 8, 2005 threatening to file a motion for a protective order in connection with newly discovered back up tapes. (Wood Decl. ¶ 53, Ex. MM.) The Debtors had informed Parus only a week prior that they had located these back up tapes and provided no further information except that they expected Parus to cover the allegedly nearly million dollar in costs involved in searching these electronic documents. (*Id.*) Furthermore, the Debtors made an opaque proposal regarding these electronic documents. (*Id.*) They apparently requested that Parus stay electronic discovery pending Debtors' filing of a partial summary judgment motion which Debtors claim, if granted, would eliminate some but not all of Parus' claims and obviate the need for electronic documents. (*Id.*) As far as Parus is concerned responsive electronic documents are relevant to all the claims against the Debtors and not only the tort claims. (*Id.*) Curiously, while the proposal suggested that Parus agree to staying electronic discovery, Debtors requested that Parus agree to pay the costs of searching the electronic documents and that reasonable parameters be set in connection with searching the electronic documents. (*Id.*) The proposal as written is

22

A 01521

nonsensical since the first element of the proposal is mutually exclusive of the next two

elements. (*Id.*) Notwithstanding Debtors confusing proposal regarding the back up tapes, Parus

is unable to respond because the factual record is completely undeveloped on this issue. (*Id.*)

51.     It is interesting to note that Debtors' counsel waited until the afternoon of

Friday, July 8th to transmit the letter regarding electronic discovery and back up tapes. During

the June 29, 2005 conference call before this Court Debtors' counsel informed the Court that he

would be out of the office on vacation from July 8th through the 18th and requested that no

hearings be scheduled during that time period. (Wood Decl. ¶ 54, Ex. GG at p. 15.)

Nonetheless, Debtors' counsel had his secretary forward this letter after he had left on vacation

knowing that Parus would be unable to discuss these issues with Debtors' counsel prior to having

to file this Motion to Compel on July 13, 2005.

## RELIEF REQUESTED

52.     By this Motion, Parus respectfully requests this Court to enter an order,

substantially in the form annexed hereto as Exhibit 1, (a) directing Debtors to produce

documents responsive to Parus' First Request for Documents, dated February 7, 2005, by a date

certain provided by this Court; (b) directing Parus' to produce documents responsive to Debtors'

discovery requests, dated September 30, 2004, by the same date certain provided by this Court;

(c) directing Debtors and Parus to produce a privilege log regarding any documents either party

is withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule 7034-

1(c), by the same date certain provided by this Court; (d) directing Debtors and Parus to bear

their own costs of production; and (e) directing Debtors to pay the reasonable costs and expenses

incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule

37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, and such other

relief as the Court deems appropriate. In addition, Parus requests that all discovery deadlines,

A 01522

including, but not limited to Parus' expert disclosure deadline, are extended appropriately by this Court from the date certain provided by this Court governing the responsive document and privilege log productions.

### GROUNDS FOR RELIEF REQUESTED

## I.    DEBTORS ARE REQUIRED TO PRODUCE DOCUMENTS IN RESPONSE TO PARUS' DISCOVERY REQUEST

53.    Federal Rule 34(a) of the Civil Rules, made applicable to these proceedings by Bankruptcy Rules 7034 and 9014, requires a party upon whom a request for production has been served to produce documents "within the scope of 26(b) and which are in the possession, custody or control of the party upon whom the request is served." FED. R. CIV. P. 34(a). Federal Rule 26(b)(1), made applicable by Bankruptcy Rules 7026 and 9014, states that "parties may obtain discovery regarding *any matter*, not privileged, that is relevant to the claim or defense of any party" and information sought "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1) (emphasis added).   The relevancy provision has been broadly and liberally construed. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). *See also* 7 JAMES WM MOORE ET. AL., MOORE'S FEDERAL PRACTICE § 34.12[1] (3d ed. 2005).

54.    Parus' Document Request focuses on documents pertinent to Parus' contract and tort claims set forth in its proofs of claim 11173 and 11242 as well as Debtors' objections and defenses set forth in the Debtors' Objection to All Proofs of Claim Filed by EffectNet, Inc. Which is Now Merged into Parus Holdings, Inc., Including, but Not Limited to Claim Numbers 9291, 11242, 9293 and 11173, dated June 10, 2004. (Wood Decl. Ex. B, C, F and G.) Thus, Parus' Document Request is proper and calculated to lead to the discovery of relevant and admissible evidence as required by the Federal and Bankruptcy Rules.

24

A 01523

55.     Indeed, the Debtors have agreed, in the Debtors' Document Responses, subject to certain objections, modifications and/or limitations, to produce many of the non-privileged documents responsive to requests 6 – 7 and 11 – 27 found in Parus' Document Request. (Wood Decl. ¶ 18, Ex. H.)  Furthermore, the Debtors acknowledged in Debtors' Document Responses that much remained to be done regarding document production and that substantial productions of responsive documents were yet to come.  (*Id.* at Ex. H.)

56.     However, other than a minimal production of 33 documents produced simultaneously with Debtors' Document Responses on March 25, 2005 and another minor production of documents in connection with Federal Rule 26 and Bankruptcy Rule 7026 disclosures back on January 26, 2005, Debtors have failed to produce any additional responsive documents pursuant to Federal Rule 34(b).  (Wood Decl. ¶¶ 14-17.)

## II.     DEBTORS SHOULD BE COMPELLED TO COMPLY WITH THEIR DISCOVERY OBLIGATIONS

57.     Federal Rule 37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, provides that "a party . . . may apply for an order compelling disclosure or discovery . . . if a party in response to a request for inspection submitted under Rule 34, . . .fails to permit inspection as requested, the discovering party may move for an order compelling . . . compelling inspection in accordance with the request."  FED. R. CIV. P. 37(a) and 37(a)(2)(B).

### A.     Federal Rule 34(b) Obligation

58.     Federal Rule 34(b) requires that a party producing documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request."  However, a party electing to produce documents for inspection as they are kept in the usual course of business still has "a burden to select and produce the items requested rather than simply dumping large quantities of

A 01524