unrequested materials onto the discovering party along with the items actually sought under Rule

34." 8A WRIGHT, MILLER & MARCUS, *FEDERAL PRACTICE AND PROCEDURES* § 2213 (2005

Pocket Part). *See also Rothman v. Emory University*, 123 F.3d 446, 455 (7th Cir. 1997) (Plaintiff

sanctioned for not complying with its obligation to sort through the documents and produce only

those responsive to defendant's request.); *Hagemeyer North America, Inc., v. Gateway Data*

*Sciences Corp.*, 222 F.R.D. 594, 598 (E.D. Wis. 2004) ("When producing documents, the

responding party cannot attempt to hide a needle in a haystack by mingling responsive

documents with large numbers of nonresponsive documents."); *Kozlowski v. Sears Roebuck &*

*Co.*, 73 F.R.D. 73, 76-77 (D. Mass. 1976)(court rejected propriety of defendant's offer to allow

plaintiff's attorney to hunt through all its files to find responsive documents).

     59.    In fact, Courts in New York have held that a party's offer to opposing

counsel to review its files does not satisfy the obligation to produce documents "as they are kept

in the usual course of business" when the producing party maintains the documents in a

disorganized state that "would make it unreasonably burdensome for the discovering party to

search for the sought-after documents." *See Standard Dyeing & Finishing Co. v. Arma Textile*

*Printers Corp.*, No. 85 Civ. 5399-CSH, 1987 WL 6905, at *2 (S.D.N.Y. Feb. 10, 1987);

*Chemtex, LLC., v. St. Anthony Enterprises, Inc.*, No. 03 Civ. 4263(RWS), 2004 WL 764781

(S.D.N.Y. April 9, 2004). *See also Natural Resources Defense Counsel, Inc. v. Fox*, No. 94 Civ.

8424 PKL HBD, 1996 WL 497024, at *5 n.3 (S.D.N.Y. Aug. 30, 1996) (party may produce

documents as kept in ordinary course of business unless their "filing system is so disorganized

that it is unreasonable for the [requesting party] to make their own review"). In cases where a

party has failed to maintain its records in a reasonable state, New York Courts have held that

"the burden falls on the discoveree to organize the documents so that the discoveror may make

A 01525

'reasonable use' of them . . . If [the party] has failed to maintain its records in a reasonable state, it must bear the burden of searching those available records for documents responsive to plaintiffs' Rule 34(b) request." *Id.* Furthermore, the lack of an adequate filing system does not excuse a party from producing requested documents. *See Baine v. General Motors Corp.*, 141 F.R.D. 328, 331 (M.D. Ala. 1991); *See also Bexter Travenol Lab., Inc. v. LeMay*, 93 F.R.D. 379, 383 (S.D. Ohio 1981) (an unwieldy recordkeeping system could not be used to frustrate discovery).

> **B.     Debtors Have Failed to Comply With Their Federal Rule 34(b) Obligation**

60.     Since their March 25, 2005 limited production, Debtors have not made any document production to Parus pursuant to Federal Rule 34(b).  Debtors' counsel has, however, asserted multiple times to Parus and this Court that they have legally produced the thousands and thousands of boxes of documents referenced in their May 31, 2005 proposal in accordance with Rule 34(b).  (Wood Decl. ¶¶ 38, 40, 42, 43 and 48.)  In support, Debtors' counsel represented that they have provided indexes to the boxes, provided their location and have made the documents available for inspection as they are kept in the usual course of business.  (Wood Decl. ¶¶ 38 and 43, Ex. GG at p. 7.)

61.     However, along with these representations, Debtors' counsel also admitted to Parus and this Court that they did not review a single document located in these boxes for responsiveness.  (Wood Decl. ¶¶ 22-23 and 43.)  Contrary to the controlling law, Debtors' counsel claimed they have no such obligation.  (Wood Decl. ¶ 29.)  Instead, Debtors only attempt to identify responsive documents was to look at the indexes which they claimed was "far beyond what was required by the rule."  (Wood Decl. ¶¶ 23 and 43, Ex. GG at pp. 12-13.)  However, by Debtors' counsel's own admission, the indexes were not very precise and Debtors' counsel could not ascertain from them which boxes of documents would be relevant and/or responsive.  (Wood

<div align="center">27</div>

A 01526

Decl. ¶ 23.)  Furthermore, Debtors' counsel admitted that they did not know what the various

designations referenced in the indexes meant because they were drafted by former employees of

the Debtors.  (Wood Decl. Ex. GG at pp. 9-11.)  Despite the unreasonable state of Debtors'

documents, Debtors' counsel was making all of the thousands of boxes of documents available,

whether relevant or not, for inspection by Parus.  (Wood Decl. ¶ 23.)

      62.    Such an attempt at a production is exactly the type of voluminous dump of

non-responsive documents that courts prohibit.  Furthermore, under New York precedent, the

disorganized state of Debtors' records, demonstrated by the indecipherable indexes, placed the

burden on the Debtors and not Parus to review the boxes for responsiveness.

      63.    In *Chemtex*, 2004 WL 764781, a case virtually on all fours with the case at

bar, the defendants objected to document requests on the ground that they placed undue burden

and expense upon them because they sought the production of certain documents by customers

and the defendant did not archive its documents by customers.  In an effort to compromise,

defendant offered to provide access to plaintiff's counsel to all of its files that might contain such

information.  *See id.*  However, the New York District Court held that the defendant's offer did

not satisfy the obligation to produce documents "as they are kept in the usual course of business"

because the state of the defendant's records would make it unreasonably burdensome for the

plaintiff to locate the sought-after documents on their own.  *See id.*  Consequently, the Court

directed defendant to search their documents for documents responsive to plaintiff's requests or,

at the plaintiff's option, the defendant can make the documents available for inspection and

provide such reasonable assistance as plaintiff required.  *See id.*

      64.    Despite repeated representations to Parus and this Court that Debtors had

fulfilled their obligations under Federal Rule 34(b) and were not obliged to review their

A 01527

documents for responsiveness, only hours after the June 29, 2005 Court conference regarding various discovery issues, Debtors for the first time made a proposal to Parus' counsel, in part, to review the thousands and thousands of boxes for documents responsive to Parus' Document Request. (Wood Decl. ¶ 45.) However, Debtors would not agree to a date certain by which such a review and production would be completed of these as well as all other responsive documents to Parus' Document Request. (*Id.*) In addition, Debtors' insisted that Parus and Debtors split the costs associated with pulling and returning the boxes that were to be reviewed to their shelves. (*Id.*) As a result of these outstanding issues, Parus could not agree to Debtors' latest proposal and was forced to file this Motion to Compel. (Wood Decl. ¶ 47.)

        65.    A date certain by which Debtors will produce responsive documents is necessary to determine and set the other deadlines in this case. Debtors have yet to make a significant production in the more than five months since Parus served its Document Request and have represented in recent correspondences that it may take them months to produce documents. Parus must have Debtors' documents far enough in advance of the deadline to disclose experts to review these documents, depose Debtors' witnesses, and provide Debtors' documents to Parus' experts for review. Currently the disclosure deadline is 120 days from June 20, 2005. (Wood Decl. ¶ 44, Ex. GG at 16.) Parus requests this Court enter a date certain by which Debtors as well as Parus will be required to produce responsive documents to each others' discovery requests pursuant to Federal Rule 34(b) as well as exchange privilege logs pursuant to Local Bankruptcy Rule 7034-1(c). Furthermore, Parus requests that the Court revise its expert disclosure deadline as well all subsequent discovery deadlines accordingly from the date certain.

A 01528

**C.    Debtors Cannot Shift the Burden of the Costs Associated With their Obligation to Review Boxes of Documents for Responsiveness under Federal Rule 34(b)**

66.    In addition to attempting to have Parus review poorly indexed boxes of documents, Debtors' also sought to improperly shift costs associated with physically pulling and returning the boxes to their shelves that Debtors are obliged to review for responsiveness. (Wood Decl. ¶¶ 38, 45 and 48.)  First and foremost, there is a presumption that "the responding party must bear the expense of complying with discovery requests . . ." See *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978).  Debtors in this case cannot shift the expenses associated with reviewing the boxes of documents for responsiveness, such as pulling and returning the boxes to their shelves, since it's their burden and obligation under New York law to review the documents because of the unreasonable state of Debtors' records.

67.    Furthermore, Parus has undertaken significant time and expense to produce documents responsive to Debtors' discovery requests and will continue to do so to the extent it is necessary to supplement its responses.  (Wood Decl. ¶¶ 32 and 44.)  Therefore, it would be inequitable to shift costs associated with reviews that the Debtor is obligated to perform under New York law.  Parus requests that this Court direct the costs of production be born by the producing parties.

**III.    Parus' Present Motion to Compel Does not Address Electronic Documents**

68.    "Computer records and other electronically stored data are clearly within the permissible scope of discovery." 7 *JAMES WM MOORE ET. AL., MOORE'S FEDERAL PRACTICE* § 34.12[3][a] (3d ed. 2005). *See also Zubulake v. UBS Warburg LLC*, 217 F.R.D. 309, 316-17 (S.D.N.Y. 2003).  Parus' Discovery Request clearly seeks the production of responsive electronic documents, in particular e-mails, and Parus' counsel has repeatedly requested the status of locating electronic documents from Debtors' counsel.  (Wood Decl. ¶¶ 28, 30 and 34.)

30

A 01529

To date, however, Debtors have produced a grand total of 13 e-mails and none since March 25, 2005. (Wood Decl. ¶¶ 15 and 17.)

69.    Parus' counsel also recognizes that the scope and burden of costs related to the production of electronic documents is frequently a contested matter and Debtors' counsel has briefly raised who would be responsible for costs related to "some very expensive searches of electronic documents" before this Court on June 29, 2005. (Wood Decl. Ex. GG at p. 8.)

70.    Resolving disputes regarding the scope and cost of electronic document discovery requires a three-step analysis. *Zubulake,* 217 F.R.D. at 324. "*First,* it is necessary to thoroughly understand the responding party's computer system . . . *Second,* because cost-shifting analysis is so fact-intensive , it is necessary to determine what data may be found on the inaccessible media . . . *Third,* and finally, in conducting the cost-shifting analysis," the court will consider a seven-factor test. *Id.*

71.    Debtors' counsel informed Parus' counsel for the first time two weeks ago, on June 30, 2005, that Debtors had located potentially responsive and non-privileged electronic documents stored on an estimated 250 back up tapes. (Wood Decl. ¶ 46.) Debtors' counsel did not provide any other information concerning these electronic documents nor the back up tapes. (*Id.*) The only information provided was an estimate that it would cost approximately $900,000 to have the electronic documents restored and searched and asserted that these costs should be shifted to Parus. (*Id.*) Since that time, Debtors' counsel has provided Parus' counsel with two additional pieces of correspondence addressing the electronic documents, but failing to offer any facts supporting Debtors cost-shifting claim. (Wood Decl. ¶¶ 48 and 50.)

31

A 01530

72.     Clearly, the factual record does not currently exist to even began the type of analysis that the *Zubulake* Court sets forth.  Therefore, Parus' present Motion to Compel does not address the production of electronic documents.  Parus will confer with Debtors regarding the electronic document production and make a good faith effort to resolve any disputes without the intervention of this Court.  However, if Parus is unsuccessful, it may be forced to bring this issue before this Court at a future date once a more substantive factual record is established.

## NO PRIOR REQUEST

73.     No prior motion to the Court for the relief requested herein has been made.

## WAIVER OF MEMORANDUM OF LAW

74.     Given the nature of the relief requested in the Motion, Parus respectfully requests that this Court dispense with and waive the requirement for submission of a memorandum of law contained in Local Bankruptcy Rule 9013-1(b).

## NOTICE

75.     Notice of the Motion has been given to the Debtors' counsel and to other parties pursuant to this Court's First Amended Case Management Order entered in the above captioned WorldCom, Inc., et al. bankruptcy.

## CONCLUSION

For the foregoing reasons, Parus respectfully requests this Court to enter an order, substantially in the form annexed hereto as Exhibit 1, (a) directing Debtors to produce documents responsive to Parus' First Request for Documents, dated February 7, 2005, by a date certain provided by this Court; (b) directing Parus' to produce documents responsive to Debtors' discovery requests, dated September 30, 2004, by the same date certain provided by this Court; (c) directing Debtors and Parus to produce a privilege log regarding any documents either party

32

A 01531

is withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule 7034-1(c), by the same date certain provided by this Court; (d) directing Debtors and Parus to bear their own costs of production; and (e) directing Debtors to pay the reasonable costs and expenses incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule 37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, and such other relief as the Court deems appropriate.  In addition, Parus requests that all discovery deadlines, including, but not limited to Parus' expert disclosure deadline, are extended appropriately by this Court from the date certain provided by this Court governing the responsive document and privilege log productions.

Dated:  New York, New York
       July 13, 2005

<div style="margin-left:40%">

KELLEY DRYE & WARREN LLP


By:     */s/ Robert L. LeHane*
        Stephen A. Wood (SW 6270)
        Robert S. Friedman (RF 1538)
        Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
(212) 808-7800

Attorneys for Parus Holdings, Inc.
Successor-by-Merger to EffectNet,
Inc. and EffectNet, LLC

</div>

A 01532

# EXHIBIT 1

A 01533

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

        **WORLDCOM, INC., et al.**

                    **Debtors.**

Chapter 11 Case No.
02-13533 (AJG)

(Jointly Administered)

## ORDER COMPELLING DEBTORS TO PRODUCE DOCUMENTS
## AND FOR AN AWARD OF ATTORNEYS' FEES

Upon consideration of the motion dated July 13, 2005 (the "Motion"), filed by

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC (collectively,

"Parus") and the supporting Declaration of Stephen A. Wood, dated July 13, 2005, together with

the exhibits attached thereto, seeking entry of an order compelling Debtors to produce documents

and for an award of attorneys fees; and good and sufficient cause appearing; and adequate notice

of the Motion and the hearing having been given to all parties entitled thereto in accordance with

the Bankruptcy Rules and this Court's First Amended Case Management Order entered in the

above captioned WorldCom, Inc., et al. bankruptcy, and this Court having taken into

consideration any responses filed hereto; and this Court having convened a hearing to consider

the relief requested in the Motion; and at the hearing, this Court having heard all parties who

sought to be heard; and for good cause shown, it is hereby

ORDERED that the Motion is GRANTED in all respects; It is further

ORDERED that Debtors review their own documents and produce documents

responsive to Parus' Document Requests by a date certain;

ORDERED that Debtors cover their own costs of retrieving their boxes from their storage facilities;

ORDERED that Debtors shall produce a privilege log regarding any documents Debtors are withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule _____.

ORDERED that Parus' deadline to disclose experts is extended by 75 days from the document production date certain;

ORDERED that, pursuant to Rule 37(a)(4) of the FRCP, made applicable to these proceedings by Bankruptcy Rules 7037, Debtors shall pay Parus its attorneys' fees and other reasonable expenses incurred, the amount of which to be set forth by separate order of the Court.

Dated: New York, New York
_____, 2005


_____
HONORABLE ARTHUR J. GONZALEZ
UNITED STATES BANKRUPTCY COURT

2

A 01535

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

WORLDCOM, INC., et al.

Debtors.

Chapter 11 Case No.
02-13533 (AJG)

(Jointly Administered)

## DECLARATION OF STEPHEN A. WOOD

**STEPHEN A. WOOD**, declares the following is true and correct under the

penalties of perjury pursuant to 28 U.S.C. § 1746:

1.      I am a member of the law firm of Kelley Drye & Warren LLP ("Kelley

Drye"), attorneys for Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet,

LLC (collectively, "Parus"), a creditor and party-in-interest in a contested matter regarding

proofs of claim, bearing claim numbers 9291, 9293, 11173 and 11242, filed by Parus, against

Intermedia Communications, Inc. ("Intermedia") and MCI WorldCom Communications, Inc.

("MCI WorldCom") (collectively, "Debtors") in the above captioned WorldCom, Inc., et al.

bankruptcy pending before this Court.

2.      In this case, Kelley Drye is the successor counsel to Mintz, Levin, Cohn,

Ferris, Glovsky and Popeo, P.C. ("Mintz, Levin").  A true and accurate copy of the Notice of

Substitution of Counsel and Consent to Substitution of Counsel, dated December 16, 2004, is

attached as Exhibit A hereto.

3.      I make this declaration in support of Parus' motion to compel production

by the Debtors of responsive documents to Parus' First Request for Documents, dated February

7, 2005 by date certain provided by this Court (the "Motion").  Specifically, I make this

A 01536

declaration to provide the factual background to the Motion and to describe Parus' extensive efforts to resolve these matters before resorting to court intervention.

      4.      I make this declaration based upon personal knowledge and upon my review of the Court filings and Kelley Drye's files related to this contested matter.

## Parus' Claims Against the Debtors

      5.      On or about January 8, 2003, EffectNet, Inc.,[1] through their counsel Mintz, Levin, filed proofs of claim in the United States Bankruptcy Court for the Southern District of New York against MCI WorldCom, claim no. 9291, and Intermedia, claim no. 9293. Subsequently, on or about January 15, 2003, Parus filed amended proofs of claim against Intermedia, claim no. 11173, and MCI WorldCom, claim no. 11242. *See* Exhibit B and C. These proofs of claim amended and superceded the proofs of claim that were filed with this Court on or about January 8, 2003.

      6.      EffectNet's claims against the Debtors relate to Intermedia's total breach and repudiation of its duties under a Unified Communications Services General Agreement between EffectNet and Intermedia dated as of November 20, 2000 (the "UC Contract"). *See* Exhibits B and C and the UC Contract attached thereto.

      7.      Pursuant to the UC Contract, EffectNet was obligated to supply unified messaging, wholesale communications and related services ("Services") to Intermedia for marketing and resale to its end users and customers. *See* the UC Contract attached to Exhibit B and C hereto. The UC Contract included an unconditional minimum take-or-pay obligation for the Services. *See id.* at §§ 2.12 and 2.13. The take-or-pay obligations of the UC Contract

---

[1]     EffectNet, Inc. is the successor in interest to EffectNet, LLC (collectively, "EffectNet"). *See* EffectNet, Inc.'s Proof of Claim 11173 against Intermedia, dated January 15, 2003, attached as Exhibit B hereto; and EffectNet, Inc.'s Proof of Claim 11242 against MCI WorldCom, dated January 15, 2003, attached as Exhibit C hereto.

A 01537

required Intermedia to compensate EffectNet as if Intermedia had at least 10,000 subscribers for the Services for all periods on or after December 18, 2001 through the expiration of the contract on November 20, 2003. *See id.* The pricing for these Services was provided in Appendix P to the UC Contract. *See id.* at Appendix P.

8.    Intermedia breached the UC Contract by failing to pay amounts due under it for Services provided by EffectNet, and by purposefully failing to purchase and market the Services supplied by EffectNet under the UC Contract. *See* Exhibits B and C. In March of 2002, EffectNet formally notified Intermedia that it was in default of its obligations under the UC Contract. *See* March 12, 2002 Letter attached as Exhibit F to the Response and Opposition of Parus Holdings, Inc. to Debtors' Objection to Proofs of Claim Filed By EffectNet, Inc., dated July 30, 2004, attached as Exhibit D hereto; and March 25, 2002 Letter attached to Exhibits B and C hereto. Intermedia failed and refused to cure its default under the UC Contract despite EffectNet's demands. *See* Exhibit D at ¶ 20. The EffectNet notices state that EffectNet "may" terminate the UC Contract if Intermedia did not cure the default. *See* March 12, 2002 Letter attached to Exhibit D hereto; and March 25, 2002 Letter attached to Exhibits B and C hereto. However, EffectNet at no time terminated the UC Contract as a result of the default. On July 21, 2002 and November 8, 2002, the Debtors and various affiliates filed separate voluntary Chapter 11 bankruptcy petitions. *See* Exhibit D at ¶ 21. Intermedia has never cured its default. *See id.* at ¶ 22.

9.    As a result of Intermedia's breach of the UC Contract, EffectNet suffered damages, at a minimum, equal to unpaid invoices for the period ending March 20, 2002, approximately $828,000, and Intermedia's remaining minimum monthly take-or-pay

3

commitment under the UC Contract for the period March 21, 2002 through November 20, 2003, approximately $5.5 million. *See* Exhibit D at ¶¶ 23-26.

10.    Moreover, EffectNet contends that Intermedia and MCI WorldCom, on or before July 1, 2001 (MCI WorldCom completed its acquisition of and/or merger with Intermedia in July 2001), acted in concert to breach the UC Contract. *See* Exhibit D at ¶¶ 1, 14-15 and 27-28. EffectNet contends that these actions were made with knowledge that a breach of the UC Contract would impose financial distress on EffectNet, a competitor of MCI WorldCom, as well as create leverage to obtain better terms under a separate Master Agreement for Software Licenses ("MASL") that MCI WorldCom was at this time negotiating with Webley Systems, Inc. ("Webley"), a company that supplied technology to EffectNet that EffectNet was, at this same time, merging with. *See id.* In fact, last minute price concessions were demanded regarding the MASL. *See id.* Furthermore, EffectNet contends that as part of this process, MCI WorldCom made improper use of confidential financial and other disclosures it obtained from EffectNet and Webley as part of MCI WorldCom's due diligence requests negotiating the MASL as well as disclosures made to WorldCom Ventures as part of a separate inquiry by Webley concerning whether MCI WorldCom might have an interest in investing in Webley. *See id.*

11.    As a result, EffectNet has additional claims against Intermedia for unfair and deceptive trade practices, a breach of the implied covenant of good faith and fair dealing, and conspiracy. *See* Exhibit B and Exhibit D at ¶¶ 27-38. EffectNet also has separate claims against MCI WorldCom for interference with EffectNet's contractual relations under the UC Contract, unfair and deceptive trade practices, and civil conspiracy in procuring Intermedia's breach of the UC Contract. *See* Exhibit C and Exhibit D at ¶¶ 27-38. EffectNet contends that its

4

A 01539

damages as a result of the Debtors' concerted action were foreseeable and estimates that its damages attributable to the foregoing may exceed $20 million. *See* Exhibit D at ¶ 38.

      12.    On or about February 23, 2004 EffectNet, Inc. served and filed a notice of name change. A true and accurate copy of the Notice of Name Change for EffectNet, Inc., dated February 23, 2004, is attached as Exhibit E hereto. The notice stated that on or about January 28, 2004 EffectNet, Inc. was merged into Parus Holdings, Inc. *See id.*

      13.    On or about June 10, 2004, the Debtors served and filed their objection to Parus' proofs of claim. A true and accurate copy of the Debtors' Objection to all Proofs of Claim Filed by EffectNet, Inc. Which is Now Merged Into Parus Holdings, Inc., Including but Not Limited to Claim Numbers 9291, 11242, 9293 and 11173, dated June 10, 2004, is attached as Exhibit F hereto. In turn, on or about July 30, 2004, Parus timely served and filed its response and opposition to Debtors' objection. *See* Exhibit D.

      14.    On or about October 8, 2004, the Debtors and Parus timely exchanged their initial disclosures pursuant to Rule 26(a)(1) of the Federal Rules of Civil Procedure ("Federal Rule/s") and Rule 7026 of the Federal Rules of the Bankruptcy Procedure ("Bankruptcy Rule/s").

### Current Discovery Dispute

      15.    On February 7, 2005, Parus served its First Request for Documents on Debtors' counsel ("Parus' Document Request"), pursuant to Federal Rules 26 and 34 and made applicable to these proceedings by Bankruptcy Rules 7026 and 7034. *See* Feb. 7, 2005 Cover Letter from K. Smith to L. Bigus and attached Claimant's First Request for Documents, attached as Exhibit G hereto. Parus' Document Request focused on documents pertinent to the contract and tort claims set forth in its amended proofs of claim (*see* Exhibits B and C attached hereto) as

A 01540

well as the assertions and defenses set forth in the Debtors' objection to Parus' proofs of claim (*see* Exhibit F attached hereto). Thus, each of Parus' requests are proper and calculated to lead to the discovery of relevant and admissible evidence as required by the Federal Rules 26 and 34 and Bankruptcy Rules 7026 and 7034. *See* Exhibit G.

16.    Debtors' counsel requested and were granted an extension of time to respond to Parus' Document Request to March 25, 2005. On or about March 25, 2005, Debtors' counsel served on Parus Debtors' written responses to Parus' Document Request ("Debtors' Document Responses"). *See* Debtors' Responses to Claimant's First Request for Production of Documents, dated March 25, 2005, attached as Exhibit H hereto.

17.    Simultaneously with the Debtors' Document Responses, Debtors' made a minimal production consisting of approximately 33 documents (a total of 343 pages). These documents were produced to Parus' counsel and were organized by individual document requests as set forth in Federal Rule 34 and Bankruptcy Rule 7034. However, the bulk of this production consisted of copies of executed contracts and agreements as well as communications already in the possession of both parties. Consequently, little of substance was actually produced.

18.    Debtors' March 25, 2005 production was made up of:

10 letters (total of 30 pages);

11 e-mails (total of 39 pages);

4 contracts/agreements (total of 64 pages);

3 reports (total of 37 pages);

2 manuals (total of 166 pages); and

3 approval forms (total of 7 pages).

6

19.     What made the March 25, 2005 production even less substantive was the fact that Debtors had previously produced a number of these documents in January of 2005. Pursuant to an amended scheduling order, the parties exchanged documents referred to in their Federal Rule 26 and Bankruptcy Rule 7026 disclosures on or about January 26, 2005. A true and accurate copy of the Amended Scheduling Order signed by this Court on January 24, 2005, is attached as Exhibit I hereto. Parus produced approximately 750 pages of documents and the Debtors produced approximately 247 pages of documents.

20.     Debtors' January 26, 2005 production was made up of:

3 letters (total of 11 pages);

2 e-mails (total of 4 pages);

8 contracts/agreements (total of 161 pages);

6 reports (total of 45 pages);

Parus' proof of claim (total of 22 pages); and

1 chart (total of 4 pages).

21.     The Debtors' Document Responses included multiple meritless general and specific objections as well as modifications and limitations to Parus' Document Requests. *See* Exhibit H. However, subject to those objections, modifications and/or limitations, Debtors' agreed to produce non-privileged documents responsive to requests 6 – 7 and 11 – 27 in addition to the attached limited document production. *See id.* Indeed, the Debtors acknowledged that much remained to be done regarding document production. *See id.* The Debtors' Document Responses set forth a long and detailed narrative under the heading "Continuing Effort to Locate Documents" regarding the vast quantities of potentially responsive documents that the Debtors had yet to locate and/or review as of March 25, 2005 for production. *Id.* at pp. 7-8. Based on

7

these representations, the Debtors' production of responsive documents to date would be dwarfed by responsive documents yet to be produced.

22.     Having heard nothing further on this issue or receiving any additional responsive documents from Debtors during the ensuing weeks, Parus' counsel contacted Debtors' counsel telephonically on May 12, 2005 requesting, under the circumstances, that Debtors agree to amend the current amended scheduling order which required Parus to designate its experts on or before June 20, 2005. *See* Exhibit I. In a May 17, 2005 e-mail, Debtors' counsel indicated that they would not agree to extending the expert disclosure deadline. *See* May 17, 2005 e-mail from D. Ramsay to S. Wood, attached as Exhibit J hereto.

23.     A telephone conference was held between counsel for the parties on May 18, 2005 wherein Parus explained the unfairness of requiring it to disclose experts when none of Debtors' witnesses had been deposed and the vast majority of its responsive documents remained to be produced. However, nothing was resolved in this conference call. In a subsequent e-mail, dated May 24, 2005, Debtors again indicated they would object to any extension of deadlines in the amended schedule. *See* May 24, 2005 e-mail from D. Ramsay to S. Wood, attached as Exhibit K hereto.

24.     On May 25, 2005, in an effort to resolve this issue and avoid bringing it before the Court, Parus again requested, that in light of the Debtors' acknowledged failure to produce the overwhelming bulk of their documents, that Debtors agree to extend the deadline for Parus to disclose experts in this case. *See* May 25, 2005 letter from S. Wood to L. Bigus, attached as Exhibit L hereto. Another telephone conference was held between counsel for Parus and counsel for Debtors on May 31, 2005 in an effort to reach an agreement on extending the deadline for Parus to disclose experts. Again, no resolution was reached.

A 01543

25.    On May 31, 2005, more than two months after serving their Document Responses and nearly four months after receiving Parus' Document Requests, Debtors' counsel sent Parus a "proposal" for producing responsive documents. *See* May 31, 2005 letter from L. Bigus to S. Wood, attached as Exhibit M hereto. This proposal borrowed verbatim from statements in Debtors' Document Responses, to wit, that Debtors had located "thousands of boxes" of documents in "multiple locations around the country." *Id.* That this proposal used the same language as the Debtors' Document Responses suggested that Debtors had expended no new effort to locate, review or produce documents beyond that expended prior to service of the Debtors' Document Responses. In fact, Debtors admitted in their letter that all they had done was review the indexes and that Debtors' counsel's "office had not reviewed or examined any of these additional documents." *Id.*

26.    In the May 31, 2005 letter, Debtors proposed providing Parus with copies of the indexes to the thousands and thousands of boxes for Parus to review, letting Parus select from these indexes boxes to be reviewed and produced by Debtors. *See id.* These were the same indexes that the Debtors characterized in the very letter as "not being very precise" and which Debtors' counsel themselves were not able to "determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for [Parus'] review." *Id.* In essence, the Debtors having reviewed only the indexes, and not a single document from these boxes, and finding the indexes useless, now proposed that Parus review the indexes and decide which of the thousands and thousands of boxes it wanted to review for potentially responsive documents to Parus' Document Request. The proposal went onto say that once Parus identified the boxes of interest, Debtors would have to review them for privilege, confidentiality and responsiveness, making the remaining documents available for inspection at a suitable

A 01544

location.  *See id.*  Aside from the unfair and improperly burden-shifting nature of this proposal, it

would take weeks if not months for Parus to actually receive, let alone review, Debtors'

documents.  This was clearly not enough time to provide the Debtors' documents to Parus'

experts prior to the current June 20, 2005 expert disclosure deadline.

        27.    On May 31, 2005, Parus' counsel wrote the Debtors to address the

shortcomings in Debtors' Document Responses, in particular the meritlessness of various general

and specific objections, modifications and limitations made in Debtors' Document Responses,

demanding their immediate withdrawal and confirmation that Debtors would not be withholding

any documents from Parus on those bases.  *See* May 31, 2005 letter from S. Wood to L. Bigus,

attached as Exhibit N thereto.  Furthermore, to the extent that Debtors were withholding any

documents on the basis of privilege, the letter demanded a prompt production of a privilege log

pursuant to Local Bankruptcy Rule 7034-1(c).  *See id.*  To date, no privilege log has been

produced.

        28.    Among other issues, Parus' May 31, 2005 letter advised Debtors that

Debtors' general objection in Paragraph 3 and the objection to the definition of "Debtor" in

paragraph 4 of the Debtors' Document Response were improper.  *Id.  See also* Exhibit H at pp.

1-2 and 4-5.  The Debtors could not limit their responses to Parus' Document Request to

documents in the possession, custody or control of only Intermedia Communications, Inc. and

MCI WorldCom Communications, Inc.  Parus pointed out that, pursuant to section 5.1 of the

Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code dated October 21, 2004 ("WorldCom Plan"), the WorldCom Debtors (as

defined in section 1.118 and Exhibit A1 of the WorldCom Plan) have been substantively

consolidated.  Therefore, "each and every Claim filed or to be filed in the Chapter 11 case of any

<div align="center">10</div>

A 01545

of the WorldCom Debtors shall be deemed filed against the WorldCom Debtors, and shall be one

Claim against and obligation of the WorldCom Debtors." *See* WorldCom Plan at § 5.1.

WorldCom Debtors include, but are not limited to, Intermedia Communications, Inc., MCI

WorldCom Communications, Inc. as well as MCI WorldCom Network Services, Inc. Therefore,

Debtors had an obligation to produce any and all responsive documents to Parus' Document

Request in the possession, custody or control of any and all of the WorldCom Debtors as well as

their "officers, directors, employees, partners, corporate parent subsidiaries or affiliates." *See*

Local Federal Rule 26.3(c)(5) (made applicable to this contested matter pursuant to Local

Bankruptcy Rule 7026-1).

29.     On June 1, 2005, Debtors' counsel yet again rejected extending any

deadlines. *See* June 1, 2005 letter from L. Bigus to S. Wood, attached as Exhibit O hereto.

Dismissive of their failure to produce documents, the Debtors asserted that Parus did not need

any of the Debtors' documents or testimony from their witnesses prior to disclosing its experts

and providing expert reports in this litigation. *See id.* Furthermore, Debtors stated that they

needed to "get this case tried and behind them . . . as expeditiously as possible," and "extending

deadlines [would] not accomplish that goal." *Id.*

30.     On June 1, 2005, Debtors sent another letter in response to Parus' May 31,

2005 letter. *See* June 1, 2005 letter from L. Bigus to S. Wood, attached as Exhibit P hereto.

Despite the detailed objections to the Debtors' Document Responses, the Debtors did not

respond to any of them and stated that their May 31, 2005 letter containing the index "proposal"

made most of Parus' May 31, 2005 letter "moot" and "[e]ven though our initial responses

contained objections we have now proposed sending [Parus] indexes and opening all of the files

up for [Parus'] review . . . ." *Id.*

11

A 01546

31.    Parus' counsel also sent a letter to Debtors' counsel on June 1, 2005 setting forth questions and concerns that Parus had with the Debtors' May 31, 2005 "proposal" and informing the Debtors that Parus was unable to accept the proposal as stated. *See* June 1, 2005 letter from S. Wood to L. Bigus, attached as Exhibit Q hereto.  First, Parus wanted Debtors to respond to all of the objections raised by Parus in its May 31, 2005 letter to Debtors' Document Responses, in particular, to the issue of which entities would be producing documents as a result of the substantive consolidation of the Debtors' bankruptcy proceeding. *See id.* Second, Parus wanted to know whether Debtors were proposing that Parus sift through a large number of non-responsive documents (thousands and thousands of boxes) to locate responsive documents. *See id.*  Third, Parus questioned the utility of reviewing indexes that were by Debtors own admission "not very precise" in an effort to identify responsive documents. *See id.* Finally, Parus noted that the proposal made no mention of documents stored in electronic form and inquired as to their production status. *See id.*

32.    In response to Parus' June 1, 2005 letter, Debtors' counsel inexplicably lashed out at Parus' counsel for summarily rejecting Debtors' "serious proposal." *See* e-mail dated June 1, 2005 from L. Bigus to S. Wood, attached as Exhibit R hereto.  Debtors' counsel stated that they "do not have an obligation to review all possible documents to determine if they are relevant. [Debtors] have a right to make the documents available to [Parus] for [Parus'] review and determination." *Id.*  In fact, Debtors' admitted in their May 31, 2005 proposal that they did not review a single document from the thousands of boxes that they were now making available to Parus. *See* Exhibit M.  Furthermore, Debtors' counsel accused Parus' counsel of asserting in Parus' June 1, 2005 letter that Debtors had not produced any emails and boasting that Debtors had produced "hundreds of pages of documents that contain[ed] emails." *See*

12

A 01547

Exhibit R. In truth, Debtors actually produced a grand total of 13 emails (consisting of a total of 43 pages) and the May 31, 2005 proposal did not mention any e-mails or other documents stored in electronic form which the Debtors were obliged to review and produce under the Federal and Bankruptcy Rules. Debtors' counsel also indicated that they were not in a position to respond to "the issue that all MCI entities that are included in the substantive consolidation have an obligation to search for the documents that [Parus is] seeking," and would respond to the issue as soon as they had finished researching the issue. *See id.* Debtors' counsel never responded to this issue. Finally, Debtors' counsel again admitted that the indexes that they had offered to make available to Parus for review were "not very useful," and stated "[i]f the indexes were useful we would have narrowed the number of boxes down by using the indexes. Since we have no means to identify what is responsive other than by examining all documents we are simply making the documents available to you subject to a few normal stipulations." *Id.*

33.    Parus' counsel responded to the points raised in Debtors' counsel's e-mail. *See* June 1, 2005 e-mail from S. Wood to L. Bigus, attached as Exhibit S hereto. First, Parus' counsel noted that Parus did not reject the May 31, 2005 proposal outright but asked for clarity regarding certain issues. *See id.* Second, Parus' counsel pointed out the inadequate production of documents to date by the Debtors in response to Parus' Document Request and questioned Debtors' efforts to locate, identify and produce responsive documents beyond reviewing the indexes set forth in the Debtors' proposal. Finally, Parus' counsel noted that its inquiry into the status of an e-mail production were valid since, contrary to Debtors' assertion, Debtors had only produced 13 emails (total of 43 pages) to date and made no reference to e-mails in their May 31, 2005 proposal.

A 01548

34.     As a result of the Debtors' repeated refusals to agree to extend discovery deadlines because of their failure to produce responsive documents, on June 6, 2005, Parus' counsel was forced to request an informal conference before this Court pursuant to Local Bankruptcy Rule 7007-1(b) to consider Parus' request to amend the current scheduling order. *See* June 6, 2005 letter from S. Wood to the Honorable Arthur J. Gonzalez and exhibits attached thereto, attached as Exhibit T hereto.  Parus suggested in this letter that the informal conference be held on June 14, 2005 as the parties were scheduled to appear before the Court on another motion. *See id.*

35.     On June 10, 2005, Parus produced to Debtors' counsel approximately 23,000 pages documents in response to Debtors' document requests.  Unlike the Debtors, Parus invested substantial time and resources to locate, review and produce responsive documents to the Debtors as required under the Federal and Bankruptcy Rules.  Parus also had the responsive documents scanned at its own expense to make their review and production more efficient. Furthermore, Parus promptly provided Debtor a list of the topics or subjects of the documents produced as well as a chart correlating the bates numbers of the produced documents with the Debtors' requests pursuant to Parus' obligation to produce documents organized to correspond to the categories in the numbered requests. *See* June 15, 2005 e-mail from L. Bigus. to S. Wood; June 17, 2005 e-mail from S. Wood to L. Bigus and June 21 e-mail from S. Wood to L. Bigus, attached as Exhibit U hereto.

36.     During the hearing held on June 14, 2005 before this Court on another motion brought by Parus, this Court instructed the parties to discuss and attempt to resolve their various discovery and scheduling disputes and to arrange a conference call with the Court for June 22, 2005.  This Court also extended all discovery deadlines in the interim until after the

A 01549

June 22, 2005 conference call. This conference call was later continued by the Court to June 29, 2005 and Parus' deadline to disclose experts was extended by the Court to July 5, 2005.

37.     Pursuant to the Court's direction, in an effort to compromise and to keep discovery moving, Parus' counsel agreed to review the indexes set forth in Debtors' counsel's proposal of May 31, 2005. Parus also agreed to Debtors' request that nothing contained in the indexes would result in any waiver of a privilege. *See* June 14, 2005 e-mail form S. Wood to L. Bigus, attached as Exhibit V hereto. During the discussions of June 14, 2005, the subject of electronic documents was also raised. Debtors' counsel represented to Parus' counsel that Debtors did not have electronic documents because e-mail messages were not stored in a central location by Debtors and were instead stored on local PCs which Debtors no longer possessed.

38.     On June 15, 2005 Debtors forwarded copies of the indexes to Parus' counsel for review. *See* June 15, 2005 e-mail from D. Ramsay to S. Wood, attached as Exhibit W hereto (Parus has not attached the actual indexes to this declaration because of their voluminous nature and difficulty of printing out in a readable hard document form, however, Parus can and will make these indexes available if the Court desires to inspect them).

39.     On June 16, 2005, two days after the Court directed the parties to make an effort to work out their disputes, Debtors' counsel sent an e-mail regarding Parus' request for an extension of time to disclose experts. Despite Debtors' failure to produce their documents, Debtors requested additional information from Parus before they would consider agreeing to an extension: how long of an extension Parus was seeking, the subjects on which Parus intended to have experts testify and how many experts Parus intended to testify. *See* June 16, 2005 e-mail from L. Bigus to S. Wood, attached as Exhibit X hereto. Parus' counsel responded to each of the Debtors' counsel's requests for information: Parus was agreeable to working with Debtors on the

15

deadline as long as it permitted some time to review Debtors' documents and take some

depositions of Debtors' witnesses, Parus did not know how many experts it would need since

some of them may be obviated by discovery of Debtors, and the subject matters of expert

testimony were addressed in the Parus' June 6, 2005 letter to the Court. *See* June 16, 2005 e-

mail from S. Wood to L. Bigus, attached as Exhibit Y hereto; *see also* Exhibit T.

      40.    On June 19, 2005, apparently unsatisfied with Parus' response, Debtors'

counsel accused Parus of refusing to provide information necessary for Debtors to analyze Parus'

request for extension of deadlines. *See* June 19, 2005 e-mail from L. Bigus to S. Wood, attached

as Exhibit Z hereto. Although believing its previous response to be both reasonable and

responsive, Parus nevertheless attempted to respond with greater specificity. *See* June 20, 2005

e-mail from S. Wood to L. Bigus, attached as Exhibit AA hereto. Parus, despite the difficulties

presented by not having access to Debtors' documents or witnesses, estimated the number of

experts and the subjects of expert testimony. *See id.* As to the length of the extension, Parus'

counsel offered to produce expert reports 75 days from the date Debtors' document production

would be completed. *See id.*

      41.    Again, this was not satisfactory to Debtors. In response to Parus'

counsel's June 20, 2005 e-mail, Debtors' counsel asserted for the first time that "[w]e have

already produced our documents." *See* June 21, 2005 e-mail from L. Bigus to S. Wood, attached

as Exhibit BB hereto. Debtors' counsel continued in this vein:

> On May 31, 2005 we sent you a letter which produced the documents and
> talked about the procedures for production. We have advised you as to the
> location of the documents. You have an index of the documents. The
> documents have been produced and it is up to you to inform us as to when
> you want to view the documents. Additionally there is the subject of the
> cost of review. Since you want to examine the documents we expect that
> you will pay the cost of removing them from the storage shelves and
> returning them to the storage shelves.

16

*Id.* This was the first time Debtors had taken the position that they had produced documents by providing useless indexes and the first time they demanded that Parus pay the costs associated with document retrieval. Debtors also continued to accuse Parus of not cooperating with their request for information on Parus' experts. *See id.*

42. On June 27, 2005, Parus counsel sent another letter setting forth its concerns regarding the May 31, 2005 "proposal" and Debtors' counsel's June 21, 2005 e-mail. *See* June 27, 2005 letter from S. Wood to L. Bigus, attached as Exhibit CC hereto. Parus' counsel advised the Debtors that the indexes forwarded on June 15, 2005 were not helpful in identifying whether the boxes described therein contained responsive documents. *See id.* Furthermore, Parus took issue with Debtors' counsel's assertion that they produced documents on May 31, 2005. *See id.* The only productions of documents by the Debtors to date were the documents produced in January and March of 2005, described *supra* at paragraphs 17-20. Since March 25, 2005 it appeared that Debtors had done nothing except to send a proposal with essentially useless indexes and insist that Parus bear the burden and expense of culling through Debtors' boxes to identify responsive documents, if any. In contrast, Parus had undertaken a time-consuming effort to find, review and produce over 23,000 pages of responsive documents to date. Therefore, Parus expected Debtors to comply with the discovery rules and review their documents and produce or make available for inspection documents responsive to Parus' Document Request and bear the expense of complying with the discovery requests. *See id.* Finally, Parus requested, yet again, an update on responsive electronic documents which Debtors' counsel had previously indicated did not exist. *See id.*

43. Debtors' counsel wasted no time in lashing out once again, accusing Parus' counsel repeatedly of making "allegations" that were "false" and "inaccurate". *See* June

17

27, 2005 e-mail form L. Bigus to S. Wood, attached as Exhibit DD hereto. Debtors' counsel stated, in part, that they had located many electronic documents but most involved legal counsel and therefore were privileged. *See id.* However, to date, Debtors had yet to provide a privilege log to Parus as required under Local Bankruptcy Rule 7034-1(c). Debtors continued to assert that they had produced the documents listed on the indexes. *See id.* Debtors interestingly also indicated that they had located additional documents "beyond those reflected in the indexes" and were waiting to receive them at their offices before producing them. *See id.* The Debtors provided no further details as to what types of documents, why it took five months to locate them, and when the documents would be produced.

44.    Parus' counsel quickly responded on June 28, 2005 to the Debtors' counsels assertions in its June 27, 2005 e-mail. *See* June 28, 2005 e-mail from S. Wood to L. Bigus, attached as Exhibit EE hereto. Parus counsel stated that all statements made in its June 27, 2005 letter were true and accurate. *See id.* Parus' counsel reminded Debtors' counsel that they had represented after the June 14, 2005 Court hearing that Debtors had no electronic documents because e-mail messages were not kept in a central location and were stored on local PCs which Debtors no longer had. *See id.* Furthermore, Parus' counsel again pointed out that Debtors had only produced roughly 500 pages of documents to date and the production of indecipherable indexes to thousands of potentially responsive boxes of documents did not comply with the Federal and Bankruptcy Rules. *See id.*

45.    Since raising this request for the first time approximately six weeks prior on May 12, 2005 and after endless discussions, correspondence and repeated rejections by Debtors' counsel of any extension to the Parus' expert disclosure deadline, Debtors' counsel suddenly and for the first time on June 29, 2005, only hours prior to a conference call before this

18

A 01553

Court on this very issue, proposed a 120 day extension. *See* June 29, 2005 e-mail from L. Bigus to S. Wood, attached as Exhibit FF hereto. It is unclear what if anything had changed during the six weeks that led to Debtors' new position except for the simple fact that within hours Debtors' counsel would have to defend their position before this Court. Notwithstanding this change in position, Debtors continued to assert that they had produced the documents set forth in the indexes and that it was Parus' obligation to pay the various fees associated with document retrieval. *See id.*

46.    Shortly thereafter, counsel for both parties participated in a conference call before this Court. *See* June 29, 2005 Transcript of the Conference Call before this Court re: Parus Holdings, attached as Exhibit GG hereto. Parus counsel informed the Court that the parties had agreed to a tentative 120 day extension of Parus' expert disclosure deadline and requested that the Court also provide an intermediate deadline for all parties to produce their remaining responsive documents. *See* Exhibit GG at pp. 6-7. In response, Debtors' counsel represented to this Court that they had "legally produced the documents. We have given them indexes to tens of thousands of boxes. We have given them the location where those boxes are kept. Under Rule 34(b) we have chosen to produce those as they are kept in the usual course of business." Exhibit GG at p. 7. Furthermore, Debtors' counsel represented to the Court that they had done "far beyond what is required by the rule" and actually looked at all the indexes they provided to Parus and made an attempt to identify what was responsive. Exhibit GG at pp. 12-13. However, at the same time, Debtors' counsel admitted to the Court that the indexes that they had provided to Parus as part of their "legal production" were useless for trying to determine which of the thousands of boxes actually contained responsive documents, Exhibit GG at p. 11, a

A 01554

fact that had been represented by Debtors' counsel multiple times before and confirmed by

Parus' counsel after reviewing the indexes themselves.

47.    Despite the fact that Debtors represented that they had produced the

documents, Debtors' counsel objected to any interim deadline for producing its documents, and

raised the issues of cost-shifting regarding the boxes.  Exhibit GG at pp. 7-8.  Interestingly,

Debtors made no mention at this hearing and had not yet advised Parus that Debtors had located

additional responsive non-privileged electronic documents.  Parus' counsel reminded the Court

that Parus had undertaken considerable efforts and expenses to locate, review and produce

responsive documents as was required by the Federal and Bankruptcy Rules.  Exhibit GG at pp.

13-14.  The Court gave permission to Parus to file a motion to compel and noted that it required

an affidavit to be filed by the Debtors in response to the Motion "set[ting] forth what has been

done and what the legal arguments are regarding what has to be done."  *Id.* at p. 14.  Finally, in

the interim, the Court extended Parus' expert disclosure by 120 days from June 20, 2005.  *Id.* at

p. 16.

48.    Within approximately one hour of the June 29, 2005 conference call with

the Court, Debtors made an offer for the first time to review their hard documents for responsive

documents and make those responsive documents available for review and copying by Parus.

*See* June 29, 2005 e-mail from L. Bigus to S. Wood, attached hereto as Exhibit HH.  This offer

was made despite Debtors having represented to this Court that Debtors had legally produced

their documents and had done "far beyond what is required by the rule," and despite having

previously represented that they had "no means to identify what is responsive."  However,

Debtors still expected Parus to pay for half the costs associated with document retrieval.  *See id.*

20

Importantly too, the Debtors made no commitment to producing documents by a date certain.
*See id.*

49.    In addition, on June 30, 2005, after multiple inquiries by Parus on the
status of Debtors' electronic documents, Debtors' counsel for the first time informed Parus that
they had located 250 back up tapes that might contain responsive electronic documents. *See*
June 30, 2005 e-mail from L. Bigus to S. Wood, attached as Exhibit II hereto. Debtors' counsel
provided no further details as to those back up tapes and merely informed Parus that "the costs to
have the data moved from the tapes to servers so that the data could be searched and then
searching the data to try to determine what is relevant" would be approximately $900,000 and,
despite the fact that Debtors had only produced a total of 13 emails to date, it was Parus'
obligation to cover any and all costs associated with the search of the electronic documents.

50.    On July 1, 2005, Parus' counsel informed debtors that Parus could not
agree to the proposal set forth by the Debtors on June 29, 2005 because Debtors did not commit
to producing the responsive documents by a date certain even though Debtors have had Parus'
Document Request for approximately five months and because Debtors continued to insist that
Parus bear half the costs associated with the retrieval of the boxes from its warehouses. *See* July
1, 2005 email from S. Wood to L. Bigus, attached as Exhibit JJ hereto.

51.    Three months after the service of Debtors' Document Responses, Debtors
served upon Parus Debtors' Supplemental Responses to Claimant's First Request for Production
of Documents ("Debtors' Supplemental Document Responses"). *See* July 1, 2005 e-mail from L.
Bigus to S. Wood attaching Debtors' Supplemental Responses to Claimant's First Request for
Production of Documents, attached as Exhibit KK hereto. Not surprisingly, Debtors'
Supplemental Document Responses did not attach a single responsive document. Instead,

21

A 01556

Debtors object to *all* of Parus' Document Requests on the ground that they are unduly

burdensome and they object to producing any documents immediately. *See id.* The Debtors now

represent that they have found a new set of documents, the "MCI Documents", from which it

"may be possible to produce responsive documents." *Id.* The Supplemental Document

Responses further offer the same litany regarding the thousands of stored boxes of documents:

indexes have been provided to Parus, these documents have therefore been produced pursuant to

Rule 34(b), and Parus may inspect the stored boxes at any time. *Id.* With regard to these stored

documents, this explanation is no different then that offered in Debtors' Document Responses

served in March of 2005, so the clear inference is that Debtors have done nothing with these

stored documents since that time. Debtors also indicate they located 250 back up tapes of e-

mails that Debtors had informed Parus of the first time on June 30, 2005. Debtors did not set

forth any further details about the additional documents or back up tapes and did not set forth

why it took them approximately five months to locate these documents. What is clear from the

Supplemental Document Response is that Debtors had not reviewed any of these documents for

responsiveness and that regardless they would insist that any discovery costs regarding these

documents to be shifted to Parus.

52.    Amazingly, the same day Debtors served their Supplemental Document

Responses in which they object to any deadlines for their own production of documents,

Debtors' counsel sent a letter to Parus' counsel demanding that Parus produce all of its

remaining responsive documents to Debtors' document requests within the next ten days. *See*

July 1, 2005 letter from L. Bigus to S. Wood, attached as Exhibit LL hereto. Debtors modified

this deadline unilaterally when on July 8, 2005, Debtors' counsel demanded that Parus produce

all of its remaining responsive documents as well as serve revised discovery responses by July

22

31, 2005. *See* July 8, 2005 e-mail from L. Gagliardi to S. Wood attaching two letters from L. Bigus to S. Wood, attached as Exhibit MM hereto. The amendment of the deadline did little to lessen the Debtors' hypocrisy. These letters are astonishing in light of the fact that the parties had appeared before this Court only a week earlier to address various discovery disputes and during that conference Debtors' counsel not only failed to raise these issues but actually objected to Parus' counsel's request that this Court provide a deadline by which both parties would be required to produce the remaining responsive documents.

53.    Just when Parus thought it had seen it all, Debtors' counsel sent another letter on July 8, 2005 threatening to file a motion for a protective order in connection with newly discovered back up tapes. *See* Exhibit MM. The Debtors had informed Parus only a week prior that they had located these back up tapes and provided no further information except that they expected Parus to cover the allegedly nearly million dollar in costs involved in searching these electronic documents. *See id.* Furthermore, the Debtors made an opaque proposal regarding these electronic documents. They apparently requested that Parus stay electronic discovery pending Debtors' filing of a partial summary judgment motion which Debtors claim, if granted, would eliminate some but not all of Parus' claims and obviate the need for electronic documents. *See id.* As far as Parus is concerned responsive electronic documents are relevant to all the claims against the Debtors and not only the tort claims. Curiously, while the proposal suggested that Parus agree to staying electronic discovery, Debtors requested that Parus agree to pay the costs of searching the electronic documents and that reasonable parameters be set in connection with searching the electronic documents. *See id.* The proposal as written is nonsensical since the first element of the proposal is mutually exclusive of the next two elements. Notwithstanding

23

Debtors confusing proposal regarding the back up tapes, Parus is unable to respond because the factual record is completely undeveloped on this issue.

54.    It is interesting to note that Debtors' counsel waited until the afternoon of Friday, July 8th to transmit the letter regarding electronic discovery and back up tapes.  During the June 29, 2005 conference call before this Court Debtors' counsel informed the Court that he would be out of the office on vacation from July 8th through the 18th and requested that no hearings be scheduled during that time period.  *See* Exhibit GG at p. 15.  Nonetheless, Debtors' counsel had his secretary forward this letter after he had left on vacation knowing that Parus would be unable to discuss these issues with Debtors' counsel prior to having to file this Motion to Compel on July 13, 2005.

### **Parus' Good Faith Efforts to Resolve These Discovery Disputes**

55.    As set forth in great detail above, Parus' counsel made a good faith effort to resolve these discovery related disputes with Debtors' counsel as required by Federal Rule 37, Bankruptcy Rule 7037 and the Local Bankruptcy Rule 7007-1(a).  However, despite Parus' counsel's efforts to resolve the disputes raised in this Motion without motion practice, Parus has been unable to do so and this Court has granted permission for Parus to submit the present Motion on or before July 13, 2005.

I declare under penalty of perjury that the foregoing is true and correct. Executed on July 13, 2005.

*/s/ Stephen A. Wood*
Stephen A. Wood

24

**A 01559**

# EXHIBIT A

A 01560

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>WORLDCOM, INC., et al.<br><br>Debtors. | Chapter 11<br><br>Case No. 02-13533 (AJG)<br>(Jointly Administered) |

<u>**NOTICE OF SUBSTITUTION OF COUNSEL**</u>

PLEASE TAKE NOTICE that upon the Consent to Substitution of Counsel, a true copy of which is

attached, Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C. hereby withdraws and Kelley Drye & Warren LLP

("Kelley Drye") enters its appearance as counsel on behalf of Parus Holdings, Inc., successor-by-merger to EffectNet,

Inc. and EffectNet, LLC ("EffectNet"). All notices, pleadings, applications, motions, and other documents served and

filed in the contested matter between the Debtors and EffectNet should be served on:

KELLEY DRYE & WARREN LLP
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
Tel: 212-808-7800

Dated: New York, New York
       December 16, 2004

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY
and POPEO, P.C.

By: */s/ Ian A. .Hammel*
    Ian A. Hammel (IH 8267)
1 Financial Center
Boston, Massachusetts 02111

and

Stephanie K. Hoos (SH 9871)
Chrysler Center
666 Third Avenue
New York, New York 10017

KELLEY DRYE & WARREN LLP

By:  */s/ Robert L. LeHane*
    Stephen A. Wood (SW 6270)
    Robert S. Friedman (RF 1538)
    Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
Tel: 212-808-7800

**A 01561**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WORLDCOM, INC., et al.<br><br>                  Debtors. | Chapter 11<br><br>Case No. 02-13533 (AJG)<br>(Jointly Administered) |

### CONSENT TO SUBSTITUTION OF COUNSEL

IT IS HEREBY STIPULATED, CONSENTED AND AGREED, that as of the date hereof,

the firm of Kelley Drye & Warren LLP is hereby substituted as attorneys of record for Parus Holdings, Inc.,

successor-by-merger to EffectNet, Inc. and EffectNet, LLC., in place of Mintz, Levin, Cohen, Ferris,

Glovsky and Popeo, P.C.

KELLEY DRYE & WARREN LLP

Dated:  New York, New York
         December 16, 2004

By:  */s/ Robert L. LeHane*
    Stephen A. Wood (SW 6270)
    Robert S. Friedman (RF 1538)
    Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York 10178
Tel:  212-808-7800

MINTZ, LEVIN, COHN, FERRIS, GLOVSKY and
POPEO, P.C.

By: */s/ Ian A. Hammel*
    Ian A. Hammel (IH 8267)
1 Financial Center
Boston, Massachusetts 02111

and

Stephanie K. Hoos (SH 9871)
Chrysler Center
666 Third Avenue
New York, New York 10017

**A 01562**

## CERTIFICATE OF SERVICE

I, Robert L. LeHane, hereby certify that on this 16th day of December 2004, I caused a true and correct copy of the foregoing **NOTICE OF SUBSTITUTION OF COUNSEL** to be upon the parties identified below by overnight mail.

> Lawrence W. Bigus, Esq.
> Sharon L. Stolte, Esq.
> Mark A. Shaiken, Esq.
> Stinson Morrison Hecker, LLP
> 9 Corporate Woods, Suite 450
> 9200 Indian Creek Parkway
> Overland Park, KS 66210

> _/s/ Robert L. LeHane_
> Robert L. LeHane

A 01563