one (1) percent per month or (b) the maximum percentage permitted by law shall be assessed on the delinquent balance of undisputed usage not paid by the Due Date.

4.5.1 Deposit. Intermedia has provided EffectNet with a fully refundable deposit in anticipation of this Agreement in the amount of minimum subscriber commitment multiplied times $17.50 (US dollars) for a total of $175,000. This deposit shall be refunded to Intermedia in whole on or before the Ramp Date as long as Intermedia has met the Minimum Commitment as of such date. If Intermedia has not met the Minimum Commitment as of the Ramp Date, EffectNet shall refund to Intermedia the full amount of the deposit less the Reconciliation Payment then due. The amount of such Reconciliation Payment shall remain on deposit until such time as the Minimum Commitment is met.

4.5.2 In the event that Intermedia disputes any charge assessed by EffectNet, the Parties agree to cooperate to resolve the dispute at the earliest practicable date. The late charges set forth in Section of this Agreement shall not apply to payments that are the subject of a good faith dispute between EffectNet and Intermedia. If there is a good faith dispute, EffectNet cannot demand a late payment deposit.

## 5.    TERM AND TERMINATION.

5.1    Term. Unless otherwise terminated as provided herein, this Agreement shall be in force for an initial term of three (3) years after the Effective Date (the "Initial Term"). This agreement shall continue automatically for successive one year terms under the same terms and conditions contained herein together with any subsequent amendments hereto, unless either Party has sent written notice of its intent not to renew the Term at least thirty (30) days prior to the expiration of the Initial Term or the renewal period then in effect.

5.2    Termination. Either Party may terminate this Agreement: (a) if the other Party fails to fulfill any of its material obligations under this Agreement; (b) if the other Party is in breach of Section 7 (Confidentiality); (c) if the other Party becomes insolvent or admits in writing its inability to pay debts as they mature, or makes an assignment for the benefit of creditors; or (d) if a petition under any foreign, state or United States bankruptcy act, receivership statute, or the like is filed by the other Party and is not dismissed within sixty (60) days after such filing. Termination due to default under this Section shall be effective thirty (30) days after written notice to the defaulting Party if the default has not been cured within such thirty (30) day period. 5.3    Effect of Termination. Upon termination of this Agreement for any reason, each Party shall remain liable for those obligations that accrued prior to the date of such termination; provided, however, that nothing herein shall be construed to obligate EffectNet to offer Services to Intermedia after the termination of this Agreement.

5.4    Early Termination. If prior to the end of the Initial Term this Agreement is terminated for any reason by Intermedia other than pursuant to Section 5.2, Intermedia shall pay EffectNet, as liquidated damages and as the sole remedy of EffectNet and the exclusive liability of Intermedia, a one-time early termination fee equal to $270,400 times the lesser of (i) 12 months, or (ii) the number of months remaining in the contract term.

6.    SURVIVAL. The following provisions shall survive the expiration or termination, for any reason, of this Agreement: (Subscriber Information), (Charges and Billing

A 01640

Statements);  (Term and Termination);  (Confidentiality); (Warranties); (Intellectual Property); (Indemnification); (Limitation of Liability);  (General Provisions).

7.    <u>CONFIDENTIALITY.</u>   All information disclosed to the other party shall be deemed confidential and proprietary (hereinafter referred to as "Proprietary Information"). Such information includes, but is not limited to, trade secrets, know-how, technical specifications, processes, functional descriptions, architectural specifications, development plans, schedules, design information, customer lists, pricing and financial information concerning the parties' products or services, or other information relating to business development, operations, marketing, sales, performance, and any other information disclosed hereunder, which, by its nature, might reasonably be presumed to be proprietary in nature.

7.1    Each party agrees to use the Proprietary Information received from the other party only for the purposes of analyzing the business arrangement between the parties, and in accordance with this Agreement.  No patent, copyright, trademark, invention, service mark, or other proprietary rights are implied or granted under this Agreement.

7.2    Proprietary information supplied pursuant to this Agreement shall not be reproduced in any form by the receiving party except as required to accomplish the intent of this Agreement.

7.3    The receiving party shall provide, at a minimum, the same care to avoid disclosure or unauthorized use of the Proprietary Information as is provided to protect its own Proprietary Information, but in no event less than a reasonable standard of care.  It is agreed that all Proprietary Information shall be retained by the receiving party in a secure place with access limited to the receiving party's employees or agents who need to know of the content of such information for purposes of fulfilling its obligations pursuant to this Agreement. The receiving party shall be fully responsible for any breach of this Agreement by its employees or agents.  The receiving party will promptly report to the disclosing party any actual or suspected violation of the terms of this Agreement, and will take all reasonable steps requested by the disclosing party to prevent, control or remedy any such violation.

7.4    All Proprietary Information, unless otherwise specified in writing, shall remain the property of the disclosing party.  Such information shall be used by the receiving party only for the purpose set forth in this Agreement.  In addition, such Proprietary Information, including all copies thereof, shall be returned to the disclosing party or, at the request of the disclosing party, may be destroyed by the receiving party and certified as destroyed by an officer of the receiving party after the Receiving party's need for it has expired, upon request of the disclosing party; and, in any event, upon termination of the Agreement.

7.5    <u>Exceptions to confidentiality:</u>  It is understood that the parties have no obligation to maintain the confidentiality of Proprietary Information which:

7.5.1    has been published or is now otherwise in the public domain through no fault of the receiving party.

7.5.2    prior to disclosure hereunder is within the legitimate possession of the receiving party without obligation of confidentiality as can be demonstrated by written documentation.

A 01641

7.5.3   subsequent to disclosure hereunder is lawfully received from a third party having rights to such Proprietary Information without restriction of the third party's right to disseminate the Proprietary Information and without notice of any restriction against its further disclosure, is disclosed with the written approval of the other party as can be proven by documentation.

7.5.4   is obligated to be produced by a Party under order of a court of competent jurisdiction or other government authority; provided however, that the receiving party shall immediately provide notice to the disclosing party such that the disclosing party may seek injunctive relief and/or a protective order; and further provided that the disclosing party shall use best efforts to ensure that the information shall be treated as confidential by the party to whom it is disclosed.

7.5.5   is independently developed by the receiving party without reference to or reliance upon the confidential information.

In the event of a disputed disclosure, the receiving party shall bear the burden of proof of demonstrating that the information falls under one of the above exceptions.

8.      **WARRANTIES.**

8.1.    <u>Authorization</u>.  Each Party represents and warrants to the other Party that the execution and delivery of this Agreement and the performance of such Party's obligations under this Agreement have been duly authorized, and that the Agreement is a valid and binding agreement, enforceable in accordance with its terms.

8.2.    <u>Legal Compliance</u>.  Each Party represents and warrants that it has obtained, or will obtain prior to offering the Services hereunder, all licenses, approvals and/or regulatory authority necessary to provide the Services described herein. This Agreement is made expressly subject to all present and future valid orders and regulations of any regulatory body having jurisdiction over the subject matter of this Agreement.

8.3     <u>No Other Warranties</u>.  With respect to the UC Services to be provided in, and to users accessing these services from the United States and Canada, EffectNet warrants that it will exercise commercially reasonable care in the performance of its obligations under this Agreement

EFFECTNET DOES NOT WARRANT THAT THE EFFECTNET SERVICES OR THE PLATFORM THAT IT PROVIDES TO INTERMEDIA IS ERROR-FREE.  IN ADDITION, THE EFFECTNET SERVICES OR INTERMEDIA PLATFORM IS PROVIDED "AS IS" AND WITHOUT ANY WARRANTY OF ANY KIND.  EFFECTNET DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING BUT NOT LIMITED TO THE WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE.  NEITHER PARTY SHALL BE LIABLE FOR ANY DAMAGES ARISING FROM THE OTHER PARTY'S OR ANY THIRD PARTY'S USE OF THE EQUIPMENT, INCLUDING WITHOUT LIMITATION INDIRECT, INCIDENTAL, SPECIAL, OR CONSEQUENTIAL DAMAGES, EVEN IF IT HAS BEEN ADVISED OF THE POSSIBILTY OF SUCH DAMAGES.  THE PARTIES AGREE TO THE ALLOCATION OF LIABILITY RISK SET FORTH IN THIS SECTION.  THIS LIMITATION ON LIABILITY IS INTENDED ITO APPLY WITHOUT REGARD TO

A 01642

WHETHER OTHER PROVISIONS OF THIS CONTRACT HAVE BEEN BREACHED OR PROVEN INEFFECTIVE. "AS IS" means the As Is condition of the EffectNet Services to be provided as Intermedia UC Services, including such customer support, software and hardware as required in the condition as of the Initial Launch Date agreed upon between the Parties and including any planned enhancement as well as any other changes mutually agreed upon. These products may as of the Initial Launch Date include works for hire for the benefit of Intermedia as further described in Section 9.2.

9.    INTELLECTUAL PROPERTY.

9.1    General. Except as otherwise agreed in writing between the Parties, EffectNet shall own any Patent applications and Patents issued on inventions under this Agreement. All Inventions that are not the subject of patents or applications will be considered Confidential Information of EffectNet. Nothing in this Agreement shall be construed to transfer any right title or interest in EffectNet's designs, inventions, copyrights, trade secrets, trade names or other intellectual property.

10.    INDEMNIFICATION. Each Party ("Indemnitor") will defend, indemnify and hold harmless the other Party and such Party's affiliates, directors, officers, employees, proprietors, independent contractors, consultants, partners, shareholders, representatives, customers, agents, predecessors, successors, and permitted assigns (collectively, "Indemnitees") from and against any claim, suit, demand, loss, damage, expense (including reasonable attorneys' fees and costs) or liability that may result from, arise out of or relate to:  (a) acts or omissions arising out of or in connection with this Agreement resulting in property damage; by Indemnitor and (b) intentional or negligent violations by Indemnitor of any applicable laws or governmental regulation.

Intermedia shall indemnify and hold harmless EffectNet from and against any and all claims, expenses, judgments, liabilities, damages or losses, including reasonable attorney's fees and expenses, and shall defend all third-party actions and proceedings arising from any infringement or alleged infringement of any patent, copyright, trade secret, mask work, trade marks or service marks of any third party to the extent such claims are caused by the acts or omissions of Intermedia with respect to the marketing and/or provision of the Intermedia UC Services, but not including any claims, expenses, judgments, liabilities, damages or losses to the extent attributable to the EffectNet Services. EffectNet shall indemnify and hold harmless Intermedia from and against any and all claims, expenses, judgments, liabilities, damages or losses, including reasonable attorneys' fees and expenses, and shall defend all third-party actions and proceedings arising from any infringement or alleged infringement of any patent, copyright, trade secret, mask work or other intellectual property right of any third party, to the extent such claims are caused by use of the EffectNet Services.  In the event that an injunction or restraining order is obtained against the use or distribution of any product or deliverable pursuant to this Agreement because of any infringement or alleged infringement of any patent, copyright, trade secret, mask work or other intellectual property right or any proprietary, contract or other right of any third party, or if in EffectNet's reasonable judgment any product or deliverable is likely to become the subject of a successful claim of such infringement, then EffectNet's sole obligation to Intermedia (in addition to its obligations of indemnification set forth above) shall be to promptly: (i) procure for Intermedia the right to use the product or deliverable as provided in this Agreement, (ii)

A 01643

replace or modify the EffectNet product or deliverable so it becomes non-infringing without materially affecting the performance thereof, or if options (i) and (ii) are not available despite commercially reasonable efforts, (iii) terminate the licenses granted hereunder, and accept the return of all copies of all products.

**11.    LIMITATION OF LIABILITY.**  EXCEPT FOR DAMAGES ARISING UNDER SECTION  , IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OF ANY KIND INCLUDING WITHOUT LIMITATION, LOSS OF PROFITS, LOSS OF BUSINESS OR INTERRUPTION OF BUSINESS, WHETHER SUCH LIABILITY IS PREDICATED ON CONTRACT, STRICT LIABILITY OR ANY OTHER THEORY WITHOUT REGARD TO WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

**12.    GENERAL PROVISIONS.**

12.1    <u>Monetary Values</u>.  All monetary values in the Agreement refer to U.S. dollars.

12.2    <u>Assignment</u>.  Either Party may assign its rights or obligations under this Agreement with written notice to the other Party, and after obtaining written approval by the other party, which shall not be unreasonably withheld or delayed.  In the event that Intermedia is acquired by WorldCom no such written approval shall be required.  In the event of a restructuring, merger, or acquisition of either party, in which such party retains at least 25 percent control of the resulting entity such notice and approval shall not be required.

12.3    <u>Governing Law</u>. This Agreement will be interpreted in accordance with the laws of the state of Arizona, excluding its conflict of law rules.  The Parties agree that the federal and state courts located in Arizona and/or Florida shall be the proper forum for any action brought against the other Party, and each Party shall take all necessary actions to consent to the jurisdiction of such courts. 12.4    <u>Notices</u>.  All notices or other communications between EffectNet and Intermedia under this Agreement shall be in writing and delivered personally, sent by confirmed facsimile, by confirmed e-mail, by certified mail, postage prepaid and return receipt requested, or by a nationally recognized express delivery service addressed to the Parties at the addresses first set forth below or at such other addresses, facsimile numbers or e-mail addresses or to such individuals as either Party may specify by notice to the other Party pursuant to this Section. All notices shall be in English and shall be effective upon receipt. As a courtesy, Parties are encouraged to send duplicate copies of notice, demands, or other by facsimile. Issuance of a facsimile copy of a notice, request, demand or other communication shall not replace the requirements for delivery by mail or overnight courier in the manner provided in this Section, nor shall the date the facsimile received constitute the official receipt date. Any Party may change the address to which notices, requests, demands or other to such Party shall be delivered or mailed by giving notice of the change to the other Party in the manner provided in this Section. The addresses for the Parties for the purposes of this Agreement are:

A 01644

*For EffectNet:*

Taj Reneau

Chief Executive Officer

EffectNet

Phone:  602.296.3300

Fax:    602.296.3311

*For Intermedia Communications, Inc.*

Kathleen A. Victory

VP Product Line Management

Intermedia Communications Inc.

Phone:  813.829.6703

Fax:    813.829.2359

12.5    Independent Contractors. This Agreement and the relations hereby established do not constitute a partnership, joint venture, franchise or agency between the Parties. Both parties are independent contractors acting for their own accounts and neither is authorized to bind, or attempt to bind, the other to any contract, general warranty, covenant or undertaking of any nature whatsoever unless authorized in writing. Neither party shall have the authority to accept delivery, collect or otherwise take possession of any funds or other property of the other party, and if done so inadvertently, shall immediately notify the other party, shall hold same in trust and shall immediately deliver same to the other party.  In all matters relating to this Agreement neither party nor such party's employees or agents are, or will act, as employees of the other party within the meaning of any federal or state laws.

12.6    Severability. If any provision of this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other term or provision hereof.  The Parties agree that they will negotiate in good faith or will permit a court to replace any provision hereof so held invalid, illegal or unenforceable with a valid provision, which is as similar as possible in substance to the invalid, illegal or unenforceable provision.

12.7    Entire Agreement And Modifications.  This Agreement together with any appendices, exhibits and attachments constitute the entire agreement between the Parties with regard to the subject matter hereof and supersedes all prior, agreements and understandings, whether written or oral, relating to the subject matter hereof.  This Agreement may only be modified by a written instrument duly executed by each Party, making specific reference to this Agreement and to the clause to be modified.

12.8    Captions.  Where provided, captions of the sections and subsections of this Agreement are for reference purposes only and do not constitute terms or conditions of this Agreement, and shall not limit or affect the terms and conditions hereof.

12.9    Waiver.  No provision of right, power or privilege under this Agreement shall be deemed to have been waived by any act, delay, omission or acquiescence on the part of either Party, its agents, or employees, but only by an instrument in writing signed by an authorized officer of each Party.  No waiver by either Party of any breach or default of any provision of this Agreement by the other Party shall be effective as to any other breach or default, whether of the same or any other provision and whether occurring prior to, concurrent with, or subsequent to the date of such waiver.

A 01645

**APPENDIX P (Pricing)**

EffectNet shall offer the following products to Intermedia at the prices attached thereto as follows:

1.    **Basic**

$11.45 per month for each basic account with all platform usage and inbound call times on the EffectNet platform an additional $.10 per minute. The basic account includes unlimited free on-line usage including checking e-mails, faxes, etc... Outbound calling will be $.10 per minute.  This package includes customer service and technical support.  All basic accounts will be billed a base subscription price of $ 6.00 for the first calendar month of activation partial or full, and $11.45 for any calendar month thereafter partial or full.

2.    **Unlimited**

$27.40 per month for each unlimited account with unlimited free platform usage and inbound call time included. Outbound calling will be $.10 per minute. The unlimited account includes unlimited free on-line usage including checking e-mails, faxes, etc. Outbound calls include: conference calls (per member), outbound long distance, outbound fax, follow me, notification, return calls, etc. All unlimited accounts will be billed a base subscription price of $ 14.00 for the first calendar month of activation partial or full, and $27.40 for any calendar month thereafter partial or full.

Intermedia shall be responsible for any and all expenses incurred related to the completion of the Virtual Private Network ("VPN").   No expenses shall be incurred on behalf of Intermedia for the VPN without prior consent from Intermedia.

A 01646

*Exhibit B*

A 01647

**From:** Faust, Jimmy J. [mailto:JJFaust@intermedia.com]
**Sent:** Tuesday, March 12, 2002 8:50 AM
**To:** 'support@intermediamail.com'; 'rjeffers@webley.com'
**Cc:** Mellon, Cheryl D.
**Subject:** FW: Cancel Accounts

On Friday March 1st, I requested that all accounts (Mailboxes) for Intermedia be canceled. I have not received conformation that these accounts have been turned off.

As of this morning I can still call into the mailboxes.

Please advise.

*Jimmy J. Faust*
Sr. Product Manager
(813) 829-4327

-----Original Message-----
**From:**  Faust, Jimmy J.
**Sent:**  Friday, March 01, 2002 9:44 AM
**To:**    'support@intermediamail.com'
**Subject:**    Cancel Accounts

My records indicate that we have 47 active mailboxes on this account.

Please cancel all mailboxes as of today (03-01-02).

Thanks

*Jimmy J. Faust*
Sr. Product Manager
(813) 829-4327
**WorldCom, Inc.**
Jimmy.faust@wcom.com

A 01648

*Exhibit C*

A 01649

EffectNet

10230 S. 50th Place
Phoenix, AZ 85044

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/6/2002 | 1010 |

**Bill To**

WorldCom Purchasing, LLC
PO Box 7
Clinton, MS 39060-0007
Attn: Accounts Payable

| P.O. No. | Terms | Project |
|----------|-------|---------|
| 4570182205 | Net 15 | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | December 2001 Billing Cycle | | |
| 46 | Unified Messaging Mailbox- Unlimited | 27.40 | 1,260.40 |
| 1 | Unified Messaging Mailbox- Basic | 11.45 | 11.45 |
| 370 | Outbound Calling Originated (Minutes) | 0.10 | 37.00 |
| | Reconciliation Payment as of Ramp Date (12/18/01) | | |
| 9,953 | Volume Shortfall (Minimum Monthly Commitment is 10,000) | 27.40 | 272,712.20 |
| | For billing inquiries, please call Richard Jeffers, 877.551.9365 | | |

PO# 4570182205

| Total | $274,021.05 |
|-------|-------------|

A 01650

*Exhibit D*

A 01651

EffectNet

10230 S. 50th Place
Phoenix, AZ 85044

# Invoice

| Date | Invoice # |
|------|-----------|
| 2/6/2002 | 1011 |

| Bill To |
|---------|
| WorldCom Purchasing, LLC<br>PO Box 7<br>Clinton, MS 39060-0007<br>Attn: Accounts Payable |

| P.O. No. | Terms | Project |
|----------|-------|---------|
| 4570182205 | Net 15 | |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | January 2002 Billing Cycle | | |
| 46 | Unified Messaging Mailbox- Unlimited | 27.40 | 1,260.40 |
| 1 | Unified Messaging Mailbox- Basic | 11.45 | 11.45 |
| 370 | Outbound Calling Originated (Minutes) | 0.10 | 37.00 |
| | Reconciliation Payment as of January 31, 2002 | | |
| 9,953 | Volume Shortfall (Minimum Monthly Commitment of 10,000) | 27.40 | 272,712.20 |
| | Late Fees at 1% per month | | |
| 1,833 | September Invoice # 1006 | 0.01 | 18.33 |
| 1,373 | October Invoice # 1007 | 0.01 | 13.73 |
| 1,309 | November Invoice # 1008 | 0.01 | 13.09 |
| | For billing inquiries, please call Richard Jeffers, 877.551.9365. | | |

PO# 4570182205

| **Total** | $274,066.20 |
|-----------|-------------|

A 01652

*Exhibit E*

A 01653

EffectNet

10230 S. 50th Place
Phoenix, AZ 85044

# Invoice

| Date | Invoice # |
|------|-----------|
| 3/5/2002 | 1018 |

**Bill To**

WorldCom Purchasing, LLC
PO Box 7
Clinton, MS 39060-0007
Attn: Accounts Payable

| P.O. No. | Terms | Project |
|----------|-------|---------|
| 4570182205 | Net 15 | . |

| Quantity | Description | Rate | Amount |
|----------|-------------|------|--------|
| | February 2002 Billing Cycle | | |
| 42 | Unified Messaging Mailbox-Unlimited | 27.40 | 1,150.80 |
| 2,310 | Outbound Calling Originated (Minutes) | 0.10 | 231.00 |
| | Reconciliation Payment as of February 28, 2002 ( | | |
| 9,958 | Volume Shortfall (Minimum Monthly Commitment is 10,000) | 27.40 | 272,849.20 |
| | Late Fees at 1% per month | | |
| 1,833 | September Invoice # 1006 | 0.01 | 18.33 |
| 1,373 | October Invoice # 1007 | 0.01 | 13.73 |
| 1,309 | November Invoice # 1008 | 0.01 | 13.09 |
| 274,021.05 | December Invoice #1010 | 0.01 | 2,740.21 |
| 274,066.2 | January Invoice # 1010 | 0.01 | 2,740.66 |

PO# 4570182205

| **Total** | **$279,757.02** |
|-----------|-----------------|

A 01654

*Exhibit F*

A 01655



10230 S. 50th Place
Phoenix, AZ 85044
Office: 602.296.3300
Fax: 602.296.3311

Writer's Direct No.
(888)-387-3481

March 12, 2002

**Via Federal Express Mail**
Mr. Rich Black
Senior Vice President
of Sales and Marketing
One Intermedia Way
Tampa, Florida 33647

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) ("**EffectNet**") and Intermedia Communications, Inc. ("**Intermedia**") (the "**Agreement**")

Dear Mr. Black:

Pursuant to the terms of the referenced Agreement, Intermedia agreed to market the UC Services to Intermedia customers and end users, including wholesale and retail customers. Intermedia agreed to provide periodic forecasts of expected mailbox activations, the first of such forecasts to be provided on or before November 30, 2000. Intermedia also agreed to deliver a minimum number of current active subscribers on or before certain dates up to a minimum of 10,000 such subscribers on or before December 18, 2001 and at the end of each calendar month thereafter for the Term of the Agreement. Intermedia also agreed to pay the agreed pricing for activated mailboxes pursuant to the Agreement. Intermedia further agreed to pay all invoices within 15 calendar days of receipt. Intermedia also agreed to pay a Reconciliation Payment as of the Ramp Date and the end of each calendar month thereafter during the Term. On February 12, 2002, Intermedia received an invoice for the pricing applicable to subscribers and for the Reconciliation Payment with respect to the

A 01656

Mr. Rich Black
Page 2 of 3
March 12, 2002

month of December 2001 (including the Ramp Date) and the month of January 2002. Each of the forgoing obligations has not been fulfilled by Intermedia as required by the Agreement ("**Intermedia Defaults**") and each such obligation is a material obligation of Intermedia under the Agreement. The forgoing is not intended to be a full and complete statement of all material obligations under the Agreement that remain unfulfilled by Intermedia. Capitalized terms used in this letter without definition have the meaning assigned to such term in the Agreement.

EffectNet hereby gives Intermedia written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults and EffectNet further hereby gives Intermedia written notice that EffectNet may (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice if each of the Intermedia Defaults has not been cured within such thirty (30) day period, and (ii) further exercise all available remedies pursuant to the terms of the Agreement and as otherwise may be available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of the Agreement, of the amounts itemized below:

Total Amount Past Due on invoice 1010,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the December 2001 billing cycle):                $274,021.05

Total Amount Past Due on invoice 1011,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the January 2002 billing cycle):                 $274,066.20

**Required Payment:**                                 $548,087.25

The total amount past due is as of March 12, 2002. EffectNet gives notice that all provisions of default will be strictly enforced. As indicated above, Intermedia has until the expiration of thirty (30) days after this written notice to remit the Required Payment. The Required Payment should be made payable and delivered by wire transfer to Wells Fargo Bank, Tempe, Arizona; ABA Routing Number 1221-05278; EffectNet Operations Account; Account Number 046-4657220; attn: Stephanie Jordan at 480-644-8396.

A 01657

Mr. Rich Black
Page 3 of 3
March 12, 2002

Intermedia should also take notice of the Due Date of invoice #1018, dated March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on March 6, 2002. Payment of this amount is due on or before March 21, 2002.

If Intermedia fails to cure the Intermedia Defaults and if EffectNet terminates the Agreement as aforesaid, EffectNet may claim damages for all amounts due pursuant to the Agreement, including, without limitation, the following:

| | |
|---|---|
| Required Payment | $   548,087.25 |
| Invoice # 1018 | $   279,757.02 |
| Reconciliation Payments for the unexpired Term | $5,662,667.58 |
| Forfeiture of Deposit | $   175,000.00 |

Nothing in this letter is intended to be a waiver or release of any rights or remedies, or an election thereof, that EffectNet has under the Agreement or applicable law, and all such rights and remedies are hereby expressly reserved in their entirety.


Very truly yours,



Robert C. McConnell
General Counsel

A 01658

*Exhibit G*

A 01659

# Delaware

PAGE  1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE CERTIFICATE OF OWNERSHIP, WHICH MERGES:

"EFFECTNET, INC.", A DELAWARE CORPORATION,

WITH AND INTO "PARUS HOLDINGS, INC." UNDER THE NAME OF "PARUS HOLDINGS, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, WAS RECEIVED AND FILED IN THIS OFFICE THE FIFTH DAY OF FEBRUARY, A.D. 2004, AT 6:48 O'CLOCK P.M.

AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID CORPORATION SHALL BE GOVERNED BY THE LAWS OF THE STATE OF DELAWARE.



Harriet Smith Windsor
Harriet Smith Windsor, Secretary of State

3361348  8330

040534366

AUTHENTICATION: 3246598

DATE: 07-21-04

**A 01660**

*Exhibit H*

A 01661

*State of Delaware*

## Office of the Secretary of State

PAGE   1

---

I, EDWARD J. FREEL, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"EFFECTNET L.L.C.", A NEVADA LIMITED LIABILITY COMPANY,

WITH AND INTO "EFFECTNET, INC." UNDER THE NAME OF "EFFECTNET, INC.", A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE THE TWENTY-EIGHTH DAY OF DECEMBER, A.D. 2000, AT 1:01 O'CLOCK P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE NEW CASTLE COUNTY RECORDER OF DEEDS.

*Edward J. Freel, Secretary of State*

3337277   8100M

001656793

AUTHENTICATION: 0886563

DATE: 12-29-00

A 01662

# EXHIBIT E

A 01663

MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY and POPEO, P.C.
Chrysler Center
666 Third Avenue
New York, New York 10017
Michael L. Schein (MS-0241)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 Case No. |
| WORLDCOM, INC., et al. | ) | 02-13533 (AJG) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## NOTICE OF NAME CHANGE FOR EFFECTNET, INC.

Parus Holdings, Inc., as successor to EffectNet, Inc., represents, by its undersigned attorneys, that:

1.    In January 2003, EffectNet, Inc. filed with this Court various proofs of claim, true and accurate copies of which are attached as Exhibit A (the "Claims").

2.    On or about January 28, 2004, EffectNet, Inc. was merged into Parus Holdings, Inc., as evidenced by materials on file with the office of the Secretary of State for the State of Delaware, true and accurate copies of which are attached as Exhibit B.

3.    All correspondence, notices and other documents pertaining to EffectNet, Inc. and/or the Claims should be addressed as follows:

Parus Holdings, Inc.
c/o Robert Duggan, Esq.
Mintz, Levin, Cohn, Ferris, Glovsky & Popeo
1 Financial Center
Boston, MA 02111
*Fax: 617-542-2241*
*Tel: 617-542-6000*

Date:   New York, New York
         February 23, 2004

               Respectfully submitted,

               By:     /s/ Michael L. Schein
                   Michael L. Schein (MS-0241
                   MINTZ, LEVIN, COHN, FERRIS,
                     GLOVSKY & POPEO
                   Chrysler Center
                   666 Third Avenue
                   New York, New York 10017

                   and

                   Ian A. Hammel
                   MINTZ, LEVIN, COHN, FERRIS,
                     GLOVSKY & POPEO
                   1 Financial Center
                   Boston, Massachusetts 02111

                   Attorneys for Parus Holdings, Inc., successor to
                   EffectNet, Inc.

TRA 1887344v1

A 01665

# Exhibit A

A 01666

Form B10 (Official Form 10)  (Rev. 4.01)

| United States Bankruptcy Court | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>MCI Worldcom Communications, Inc. | Case Number<br>02-42223 | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.

| Name of Creditor (The person or entity to whom the debtor owes money or property):<br>EffectNet, Inc. | ☐ Check box if you are awa... anyone else has filed a pr... relating to your claim. At... of statement giving partic... | Filed: USBC - Southern District of New York<br>Worldcom, Inc., Et Al.<br>02-13533 (AJG)     0000009291 |
|---|---|---|
| Name and Addresses Where Notices Should be Sent:<br>EffectNet, Inc.<br>c/o Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.<br>Attn: George B. Hofmann<br>One Financial Center<br>Boston, MA 02111<br>Telephone No.  617-542-6000 | ☐ Check box if you have ne... received any notices from... bankruptcy court in this case.<br>☒ Check box if the address differs from the address on the envelope sent to you by the court. | THIS SPACE IS FOR COURT USE ONLY |
| Account or other number by which creditor identifies debtor: N/A | Check here ☐ replaces<br>if this claim ☐ amends   a previously filed claim, dated: | |

| 1. Basis for Claim | |
|---|---|
| ☐ Goods sold<br>☒ Services performed<br>☐ Money loaned<br>☐ Personal injury/wrongful death<br>☐ Taxes<br>☒ Other        See Addendum | ☐ Retiree benefits as defined in 11 U.S.C. §1114(a)<br>☐ Wages, salaries and compensation (Fill out below)<br>   Your SS #: _ _ _ - _ _ - _ _ _ _<br>   Unpaid compensation for services performed<br>   from _____ to _____<br>         (date)              (date) |

| 2. Date debt was incurred:<br>December 2001 and thereafter | 3. If court judgment, date obtained: |
|---|---|

4. Total Amount of Claim at Time Case Filed:        $6,855,844.27 plus unliquidated amounts
If all or part of your claim is secured or entitled to priority, also complete Item 5 or 6 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim.  Attach itemized statement of all interest or additional charges.

| 5. Secured Claim. | 6. Unsecured Priority Claim. |
|---|---|
| ☐ Check this box if your claim is secured by collateral (including a right of setoff).<br>Brief Description of Collateral:<br><br>☐ Real Estate   ☐ Motor Vehicle<br>☐ Other (See Addendum)<br><br>Value of Collateral: $<br><br>Amount of arrearage and other charges at time case filed included in secured claim, if any: $ | ☐ Check this box if you have an unsecured priority claim<br>   Amount entitled to priority $_____<br>   Specify the priority of the claim:<br>☐ Wages, salaries, or commissions (up to $4,650),* earned within 90 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507(a)(3)<br>☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(4)<br>☐ Up to $2,100* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507(a)(6)<br>☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. §507(a)(7)<br>☐ Taxes or penalties of governmental units - 11 U.S.C. §507(a)(8)<br>☐ Other - Specify applicable paragraph of 11 U.S.C. §507(a) (_1_).<br>     *Amounts are subject to adjustment on 4/1/04 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. |

| 7. Credits:  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.<br>8. Supporting Documents: *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien.  DO NOT SEND ORIGINAL DOCUMENTS. If the document... are not available, explain.  If the documents are voluminous, attach a summary.<br>9. Date-Stamped Copy:  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim. | THIS SPACE IS FOR COURT USE ONLY<br><br>JAN - 8 2003<br><br>U.S. BANKRUPTCY COURT<br>S.O. DIST. OF NEW YORK |
|---|---|
| Date<br>December 12, 2002 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>*[signature]*<br>EffectNet, Inc. BY TAJS REVEAU, CHIEF EXECUTIVE OFFICER |

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§152 and 3571.

TRA 1742227v2

**A 01667**

**Addendum to Proof of Claim**

Debtor:        MCI Worldcom Communications, Inc. (the "Debtor")

Case No.:      02-42223 (AJG) (Jointly administered under case no. 02-13533 (AJG))

Creditor:      EffectNet, Inc. ("EffectNet")

     EffectNet, LLC[1] and Intermedia Communications, Inc. ("Intermedia") were parties to a certain Unified Communications Services General Agreement dated as of November 20, 2000 (the "Agreement"). A copy of the Agreement is attached to this Proof of Claim. Intermedia and the Debtor are affiliated bankrupt companies, whose bankruptcy cases are jointly administered. Pursuant to the Agreement, EffectNet was obligated to provide services to Intermedia for resale. Section 2.12 of the Agreement specified the minimum monthly commitment of Intermedia to purchase EffectNet's services, and the pricing for these services was provided in Appendix P to the Agreement.

     Intermedia breached the Agreement by failing to pay amounts due under it for services provided by EffectNet, and by purposefully failing to purchase the services supplied by EffectNet under the Agreement. As a result of Intermedia's breach of the Agreement, EffectNet sent a letter dated March 25, 2002 (the "Letter"), a copy of which is attached to this Proof of Claim. The Letter details the amounts owing by Intermedia to EffectNet prior to March 2002.

     In addition to the amounts described in the Letter, as a result of Intermedia's breach of the Agreement, EffectNet suffered damages equal to Intermedia's remaining minimum monthly commitment under the Agreement, multiplied by the number of months remaining in the term of the Agreement. These damages are summarized in the spreadsheet which is attached to this Proof of Claim.

     The Debtor caused damages to EffectNet, which are included but not limited to those damages summarized in the spreadsheet. EffectNet has claims against the Debtor for tortious interference with contractual relations, unfair and deceptive trade practices, and conspiracy based on the Debtor's actions in concert with Intermedia. The Debtor and Intermedia agreed to cause

---

[1] EffectNet Inc. is the sucessor in interest to EffectNet LLC.

**A 01668**

Intermedia to breach the Agreement, in an effort to wrongfully improve the Debtor's bargaining position with respect to a certain Master Agreement for Software Licenses ("MASL") with Webley Systems, Inc. ("Webley"), a company which is affiliated with EffectNet. The Debtor and Intermedia knew that the termination of the Agreement would place EffectNet and Webley in a position of severe financial distress, and would therefore force Webley to accept onerous terms in the negotiation of the MASL that favored the Debtor to a much greater degree than would have been possible had the Agreement been in full force and effect. The damages suffered by Webley and EffectNet as a result of the concerted action are substantial, but unliquidated in amount.

EffectNet expressly reserves its right to amend or supplement this Proof of Claim, including, but not limited to, for the purpose of quantifying the damages suffered as a result of the actions of Intermedia and the Debtor described in the preceeding paragraph. This proof of claim is made without prejudice to the filing by EffectNet of additional proofs of claim with respect to any other indebtedness or liability of the Debtor to EffectNet.

TRA 1742230v2