**REQUEST NO. 30:** All documents concerning Intermedia Communications, Inc.'s product suite "IntermediaOne".

**RESPONSE:**    In response to request number 30, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 31:** All    documents    concerning    the    launch    of    Intermedia Communications, Inc.'s "IntermediaOne".

**RESPONSE:**    In response to request number 31, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 32:** All documents concerning Debtors' communications among each other regarding Intermedia Communications, Inc.'s "IntermediaOne".

**RESPONSE:**    In response to request number 32, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

A 01750

Debtors further object on the grounds that the request is overly broad, unduly burdensome and seeks documents which are not relevant and not calculated to lead to the discovery or relevant or admissible evidence.

**REQUEST NO. 33:** All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to Claimant, Claimant's finances, Claimant's business, Claimant's technology, Claimant's products, Intermedia Communications, Inc.'s "IntermediaOne", or Unified Communications.

**RESPONSE:**    In response to request number 33, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated. Debtors further object to request number 33 on the grounds that it is otherwise overly broad, is burdensome and calls for the production of documents that are neither relevant nor likely to lead to the discovery of admissible evidence.

**REQUEST NO. 34:** All documents concerning the merger of Intermedia Communications, Inc. with WorldCom, Inc. that relate to the development, obtaining, marketing or launching of a Unified Communications product or service.

**RESPONSE:**    In response to request number 34, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that request number 34 is overbroad because it is not limited as to time.

25

A 01751

Debtors further object that request number 34 is otherwise overbroad, is burdensome and calls for the production of documents not relevant or likely to lead to the discovery of admissible evidence.

**REQUEST NO. 35:** All documents concerning Debtors' efforts to develop, obtain, market, or launch Unified Communications product or service for their use or for sale to customers.

**RESPONSE:**    In response to request number 35, Debtors incorporate all of Debtors' General Objections, Objections to Definitions, and Objections to Instructions as if fully here restated.

Debtors further object that this request is overbroad in that in that it is not limited as to time.

Debtors further object that this request is otherwise overbroad, is burdensome and calls for the production of documents not relevant or likely to lead to the discovery of admissible evidence.

Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas  66210
Telephone:  (913) 451-8600
Facsimile:  (913) 451-6352
*Attorneys for Debtors and Debtors-in-Possession*

A 01752

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 25th day of March, 2005, Debtors' Responses to Claimant's First Request for Production of Documents (Claim Nos. 9291, 9293, 11173 and 11242 filed by Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC) pursuant to Fed. R. P. 7026(a)(1) were placed in the U.S. mail, postage prepaid, addressed to:

Stephen A. Wood
Robert S. Friedman
Robert L. LeHane
Kevin J. Smith
Kelley Drye & Warren LLP
101 Park Avenue
New York, New York 10178
*Attorneys for Parus Holdings, Inc.,*
*Successor-by-Merger to EffectNet, Inc.*

Lawrence W. Bigus, Esq.

CWDDOCS 144022v5

A 01753

# EXHIBIT I

A 01754

**KELLEY DRYE & WARREN LLP**
Stephen A. Wood (SW 6270)
Robert S. Friedman (RF 1538)
Robert L. LeHane (RL 9422)
101 Park Avenue
New York, New York  10178
Attorneys for Parus Holdings, Inc.,
Successor to EffectNet, Inc.

        and

**STINSON MORRISON HECKER LLP**
Lawrence W. Bigus, Esq.
Sharon L. Stolte, Esq.
Mark A. Shaiken, Esq.
9200 Indian Creek Pkwy., Ste. 450
Overland Park, KS 66210
Attorney for Debtors and
Debtors-In-Possession


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re<br><br>    WORLDCOM, INC., et al.,<br><br>                Debtors. | **CHAPTER 11 CASE**<br>**NO. 02-13533 (AJG)**<br>**(Jointly Administered)** |

## AMENDED SCHEDULING ORDER

Pursuant to Rule 7026 of the Federal Rules of Bankruptcy Procedure, the

following amended scheduling order shall govern with respect to discovery in this contested

matter and/or adversary proceeding regarding Claim Nos. 9291, 9293, 11173 and 11242 filed by

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC ("Claimant").

1.    The Parties shall exchange, no later than January 26, 2005, those documents
referred to in their initial disclosure statements pursuant to Rule 26(a)(1), Fed. R.
Civ. P., incorporated into bankruptcy proceedings pursuant to Rule 7026, Federal
Rules of Bankruptcy Procedure;

2.    The Parties shall complete fact and expert discovery no later than September 15,
2005;

1506

A 01755

3.  The Parties shall file amendments, if any, to the Claims, the Claims objection, and/or the response to the Claims objection no later than May 15, 2005. If an amended pleading is filed to which there is normally a responsive pleading, the other party shall have thirty (30) days to file an amended responsive pleading;

4.  Claimant shall disclose the identity of its expert witness(es), if any, and provide his/her expert report(s) no later than June 20, 2005;

5.  Debtors shall disclose the identity of their expert witness(es), if any, and provide his/her expert reports(s) no later than August 8, 2005;

6.  The deadline for filing dispositive motions, if any, is October 15, 2005;

7.  The pre-trial conference shall be set by the court at a time after filing dispositive motions.

8.  The parties reserve all rights to, either individually or jointly, seek to amend all deadlines set forth in the stipulation.

Dated:  New York, New York.
        January 21, 2005

STINSON MORRISON HECKER LLP                KELLEY DRYE & WARREN LLP


/s/ Lawrence W. Bigus                      By:  /s/ Robert L. LeHane
Lawrence W. Bigus, Esq.                         Stephen A. Wood (SW 6270)
Sharon L. Stolte, Esq.                          Robert S. Friedman (RF 1538)
Mark A. Shaiken, Esq.                           Robert L. LeHane (RL 9422)

9200 Indian Creek Pkwy., Ste. 450          101 Park Avenue
Overland Park, KS 66210                    New York, New York 10178
Telephone: (913) 344-8009                  Telephone: (212) 808-7800
Facsimile: (913) 451-6352                  Facsimile: (212) 808-7897

*Attorney for Debtors and*                 *Attorneys for Parus Holdings, Inc., successor to*
*Debtors-in-Possession*                    *EffectNet, Inc.*


                                           SO ORDERED:

                                             /s/ Arthur J. Gonzalez        1/24/05
                                           Hon. Arthur J. Gonzalez
                                           United States Bankruptcy Court

2

**A 01756**

# EXHIBIT J

A 01757

-----Original Message-----
**From:** Ramsay, Donald [mailto:dramsay@stinsonmoheck.com]
**Sent:** Tuesday, May 17, 2005 3:13 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence
**Subject:** KELLEY DRYE.DOC

Steve - I understood you were going to call Monday to discuss deadlines and modification of the protective order. I want to get a response to you.

1.    I am informed we cannot agree to extensions of the deadlines set for designation of experts etc.
2.    We would like dates for depositions of the Reneau brothers.
3.    Attached is the a slightly revised proposed version of the protective order.  I would have sent you a redline version but we have just converted to new software and for some reason it will not activate.  The changes are in paragraphs 6, 7 and 15.  I have bolded the additions in and in paragraph 7 the word "whomsoever" has been deleted.  The only substantive change is that we could have experts who were shown docs attest that they had been destroyed in stead of returning them.  Let me know if you can agree to these changes.


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

7/12/2005

A 01758

# EXHIBIT K

A 01759

-----Original Message-----
**From:** Ramsay, Donald [mailto:dramsay@stinsonmoheck.com]
**Sent:** Tuesday, May 24, 2005 3:24 PM
**To:** Wood, Stephen
**Subject:**

  Steve - I intended to respond re: the discovery issue but have been tied up with depositions. You asked whether we would object, as opposed to simply not agreeing, to extension of deadlines for naming experts. Yes, we would object.
  Steve, also, when we last spoke you were going to check on dates for depositions of the Reneau brothers. Have you identified dates when those might be taken?

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

7/12/2005

# EXHIBIT L

A 01761

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

333 WEST WACKER DRIVE

SUITE 2600

CHICAGO, ILLINOIS 60606

———

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

May 25, 2005

**VIA FACSIMILE**

Lawrence W. Bigus
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008

Re:    **Parus Holdings/WorldCom; Amended Scheduling Order**

Dear Mr. Bigus:

I received an email from Don Ramsay of your firm on May 17, 2005 regarding amending the scheduling order where Mr. Ramsay indicated "I am informed we cannot agree to extensions of the deadlines set for designation of experts etc." I spoke with Mr. Ramsay on May 18th by telephone regarding this issue.

I pointed out to Mr. Ramsay we had yet to receive the bulk of your document production and, accordingly, were unable to take depositions of WorldCom fact witnesses. In light of this, I asked Mr. Ramsay whether WorldCom was intending to object to or actively oppose our request to amend the scheduling order. He indicated that he was not exactly sure and would get back to me. Yesterday I received another email from him indicating that you would object to extending the deadlines. Mr. Ramsay offered no explanation of the basis for your objection. One deadline, for filing amendments, has already passed. Another deadline, for Parus to disclose experts, is set for June 20, 2005.

I would like to make the following points in an effort to avoid taking a dispute regarding this issue to the court. We served a request for production of documents on you on February 8, 2005. To date, you have produced only 732 pages of documents in this case,

CH01/WOODS/196861.1

**A 01762**

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Two

approximately 247 pages in your Rule 26 disclosures and 485 pages in response to our request for production of documents. Combined, this is a 4 inch stack of documents. The bulk of these 700 odd pages consist of copies of the UC Services Agreement, the Master Agreement for Software Licensing, other agreements and communications already in the possession of both parties. To date, little if any substance has been produced by you.

Indeed, you acknowledge much remains to be done by you regarding document production. In your written response to our request for production of documents you have stated the following:

> Intermedia is no longer actively engaged in business. Most of the Intermedia documents have been boxed up and sent to storage ("Stored Documents"). Debtors have aggressively undertaken an investigation to locate the Intermedia documents including the Stored Documents and those documents that were still in the possession of the current employees. The Intermedia documents are referred to herein as "Intermedia Documents".

> Debtors have located and reviewed some of the Intermedia Documents ("Located and Reviewed Documents") and are still working to locate the remaining Intermedia Documents. It appears that the Stored Documents are contained in several different storage locations and are in thousands of boxes ("Stored Documents"). Some of the storage locations are known and Debtors are still conducting due diligence to determine the location of the remaining storage locations. None of the documents at storage locations are included in Located and Reviewed Documents.

> In response to this Request for Production Debtors have indicated that certain documents will be produced ("Responsive Documents"). To the extent that Located and Reviewed Documents are also Responsive Documents they are attached hereto.

> The Stored Documents located to date are poorly indexed. As it relates to the Claims at issue the Stored Documents contained in these thousands of boxes can be described as follows:  1) Documents which have no relevancy to the Claims at issue, which Claimant has not requested and which Debtors have no desire to review in connection with the Claims at issue ("Irrelevant Documents"); 2) Documents which Debtors would like to review

CH01/WOODS/196861.1

**A 01763**

**KELLEY DRYE & WARREN** LLP

Lawrence Bigus
May 25, 2005
Page Three

in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents"). Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

In the foregoing Response you have admitted that you have not even located let alone reviewed or produced all of your documents in this case. The documents you have located are contained in "several locations" and are in "thousands of boxes." It appears, therefore, once you locate all of your documents, your production of documents to date will be dwarfed by documents yet to be produced. Not only have you failed to produce all responsive documents, you have not explained why you have failed to produce these documents to date, or why, despite that failure, Parus should be expected to disclose its experts' opinions.

Moreover, I note that because your documents have not been produced, not a single fact witness deposition has been taken in this case. So there has been no opportunity to examine WorldCom witnesses regarding your documents. Needless to say, depositions without documents would probably be completely useless. As you know, Intermedia breached a contract with EffectNet and Parus, successor-by-merger to EffectNet, has incurred damages. The measure of contract damages is certain to be a subject of expert testimony. Contract damages will depend, *inter alia*, on negotiations between the parties and expectations regarding performance. The Debtor's documents and the testimony of its witnesses are necessary for Parus' experts to form their opinions in this case.

KELLEY DRYE & WARREN LLP

Lawrence Bigus
May 25, 2005
Page Four

In addition, we are claiming that the Debtors engaged in tortious conduct that had a devastating impact on the business of EffectNet and its merger partner, Webley Systems. We will need experts, likely with industry expertise, to review Debtors documents and the testimony of its witnesses regarding Debtors' products, targeted markets, marketing strategy, and business plans to reach conclusions about liability for these tortious claims as well as damages. We believe that Debtors were developing products that competed with the EffectNet product sold to Intermedia. This undoubtedly involved market assessments and business plans that would be relevant to the opinions of Parus's expert witnesses.

In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. I would remind you that when you requested an extension of time to produce your documents, we readily agreed. Please reconsider your position on this matter and get back to me as soon as possible. If you insist on maintaining an objection to amending the scheduling order, I would like an explanation of the basis for your objection.

Very truly yours,

Stephen A. Wood

SAW:ds

# KELLEY
## DRYE

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Lawrence W. Bigus |
| **FIRM** | Stinson Morrison Hecker LLP |
| **CITY** | |
| **FAX** | 913-451-6352 |
| **PHONE** | 913-451-8600 |
| **NO. OF PAGES** | 5 |
| **DATE** | May 25, 2005 |

**KELLEY DRYE & WARREN LLP**
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, ILLINOIS 60606
(312) 857-7070
FAX (312) 857-7095

**MESSAGE:**

| | |
|---|---|
| **FROM** | Stephen A. Wood |
| **PHONE** | (312) 857-2311 |
| **E-MAIL** | swood@kelleydrye.com |
| **TIMEKEEPER ID** | 04206 |
| **CLIENT NO.** | 015749.0058 |

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ
BRUSSELS

AFFILIATE OFFICES
JAKARTA
MUMBAI

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (312) 857-7070.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

CH01/WOODS/192364.1

**A 01766**

# EXHIBIT M

A 01767



STINSON
MORRISON
HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

May 31, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606

Re:     In re World Com - Chapter 11
        Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Stephen:

As you are aware, Intermedia and MCI have been working diligently to locate documents responsive to your Request for Production and/or which are relevant to the pending adversary case.  In our responses to certain of you requests for production of documents, we agreed to produce responsive documents, subject to objections as stated, and advised you that that we are continuing to search for additional documents that might be responsive.  As previously indicated, the search has been complicated by the fact that Intermedia no longer exists as a separate entity, offices have been moved to different states and certain of the people involved no longer work for MCI.

1.      Located Documents:

We have located boxes of documents in multiple locations around the country, some of which are independent storage facilities, that could possibly include responsive documents.  Our client has advised that there are in excess of 10,000 boxes of documents.  Our office has not reviewed or examined any of these additional documents.

2.      Imprecise Indexes:

Unfortunately, the indexes for these documents are not very precise.  We have searched the indexes but have not been able to satisfy ourselves that we can determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for your review. This is in part because of the imprecise descriptions in the indexes and, in part, because of the very broad nature of your alleged tort claims.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**A 01768**

Stephen A. Wood
May 31, 2005
Page 2

3.    Proposed Procedures:

After considering several means of producing the responsive non-privileged documents, we would like to propose what we consider to be the most efficient means. We are open to proposals from you concerning other possible means of efficiently producing the large number of documents that have been located. Intermedia/MCI proposes to produce the documents pursuant to the procedures and limitations contained in Exhibit A attached hereto.

4.    Objections Not Waived:

Intermedia and MCI will not, by following the attached procedures, have waived any of the objections previously made to the written discovery.

5.    Production Supplements Interrogatory Answers:

Any production of documents pursuant to these procedures will be both a supplemental production responsive to your Request for Production of Documents and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing appropriate further response to your written discovery and for producing any documents which might have any relevancy to this adversary proceeding. Please advise whether you would agree to this procedure and the stated limitations. If so, we will immediately forward the indexes for your review. The procedure is, of course, open for discussion. If there are alternatives that you would like to discuss please advise of that as well.

                    Sincerely,

                    **STINSON MORRISON HECKER** LLP



                    Lawrence W. Bigus

LWB:lag

Enclosure

6590719.2

**A 01769**

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

## PROPOSED PRODUCTION PROCEDURES

1.    Intermedia/MCI will provide claimants with a complete set of the indexes for the documents.

2.    Claimants will review the indexes and identify those specific boxes it wishes to review.

3.    Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.    In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.    Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

      a.    Those documents identified as privileged.

      b.    Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

      c.    Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

6590719.2

**A 01770**

# EXHIBIT N

A 01771

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

———

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

———

BRUSSELS, BELGIUM

———

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

May 31, 2005

<u>Via Facsimile and U.S. First Class Mail</u>

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, Kansas  66210

Re:    <u>**In re WorldCom, Inc., Chapter 11 Case No. 02-13533**</u>
       *Claims of Parus Holdings, Inc.*

Dear Mr. Bigus:

I am writing regarding Debtors' Responses to Claimant's First Request For Production of Documents dated March 25, 2005 ("Debtors' Response to Parus' Document Requests").

First and foremost, the Debtors' Response to Parus' Document Requests sets forth a long and detailed narrative under the heading "Continuing Effort to Locate Documents" regarding the vast quantities of potentially responsive documents that the Debtors were to review as of March 25, 2005 for production. However, to date, the Debtors have not produced a single document since March 25, 2005 in response to the Claimant's First Request for Documents dated February 7, 2005 ("Parus' Document Requests"). Therefore, we request that Debtors immediately indicate where their "Continued Efforts to Locate Documents" currently stand and provide us with additional productions and/or a date certain by which we can expect additional responsive documents.

CH01/WOODS/197039.1

A 01772

**KELLEY DRYE & WARREN LLP**

Lawrence W. Bigus, Esq.
May 31, 2005
Page Two

In addition, Debtors' Responses to Parus' Document Requests include multiple general and specific objections as well as modifications and limitations that are meritless and should be withdrawn immediately. Parus' Document Requests focus on documents pertinent to Parus Holdings, Inc.'s, successor-by-merger to EffectNet, Inc. and EffectNet, LLC, ("Parus") claims set forth in its proofs of claim 11173 and 11242 as well as Debtors' objections and defenses set forth in the Debtors' Objection to All Proofs of Claim Filed by EffectNet, Inc. Which is Now Merged into Parus Holdings, Inc., Including, but Not Limited to Claim Numbers 9291, 11242, 9293 and 11173, dated June 10, 2004, and the First Amendment thereto, dated May 16, 2005. Thus, each of Parus' Document Requests are proper and calculated to lead to the discovery of relevant and admissible evidence and shall be responded to as drafted.

First, Debtors' general objection in paragraph 3 and the objection to the definition of "Debtor" in paragraph 4 are completely without merit. The Debtors cannot limit their responses to Parus' Document Requests to merely documents in the possession, custody or control of Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.

Pursuant to section 5.1 of the Debtors' Modified Second Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code dated October 21, 2004 ("WorldCom Plan"), the WorldCom Debtors (as defined in section 1.118 and Exhibit A1 of the WorldCom Plan) have been substantively consolidated. Therefore, "each and every Claim filed or to be filed in the Chapter 11 case of any of the WorldCom Debtors shall be deemed filed against the WorldCom Debtors, and shall be one Claim against and obligation of the WorldCom Debtors." *See* WorldCom Plan at § 5.1. WorldCom Debtors include, but are not limited to, Intermedia Communications, Inc., MCI WorldCom Communications, Inc. as well as MCI WorldCom Network Services, Inc.

This is further highlighted by the fact that Debtors filed their initial disclosures pursuant to Fed. R. Bankr. P. 7026(a)(1), dated October 8, 2004, in this matter on behalf of "WorldCom, Inc. et al., ("Debtors")" and not only MCI WorldCom Communications, Inc. and Intermedia Communications, Inc. As such, this Court has jurisdiction and Debtors have an obligation to produce any and all responsive documents to Parus' Document Requests in the possession, custody or control of any and all of the WorldCom Debtors as well as their "officers, directors, employees, partners, corporate parent subsidiaries or affiliates." *See* Rule 26.3(c)(5) of the Local Rules for the Southern District of New York ("Local Rule") (made applicable to this contested matter pursuant to Rule 7026-1 of the Local Rules for the United States Bankruptcy Court for the Southern District of New York("Local Bankruptcy Rule")).

Second, Debtors' objection to the definition of "Claimant" and the re-definition of that term is improper. Contrary to the Debtors' position, Webley Systems, Inc. ("Webley') is properly included in the definition of "Claimant." Webley merged into what is currently known as Parus prior to this litigation and, at a minimum, was an affiliate of Parus and its predecessors

CH01/WOODS/197039.1

**A 01773**

KELLEY DRYE & WARREN LLP

Lawrence W. Bigus, Esq.
May 31, 2005
Page Three

during the contested time period.  Local Rule 26.3(c)(5) clearly defines party to include "its officers, directors, employees, partners, corporate parent subsidiaries or affiliates."

Furthermore, Debtors' re-definition of "Claimant" improperly leaves out EffectNet, LLC.  As stated in Parus' proofs of claim, EffectNet, Inc. was the successor in interest to EffectNet, LLC.  Therefore, "Claimant" was and continues to be defined as "Parus Holdings, Inc., Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC, EffectNet LLC, EffectNet, Inc., Webley Systems, Inc.," and, at a minimum, as set forth in Local Rule 26.3(c)(5) their "officers, directors, employees, partners, corporate parent subsidiaries or affiliates" for purposes of Parus' Document Requests.

Third, Debtors' general objection in paragraph 4 to the term "concerning" is improper under the Local Rules governing this contested matter.  "Concerning" is a proper term commonly used in discovery requests and is specifically defined in Local Rule 26.3(c)(7).

Fourth, Debtors improperly object to producing any documents in response to requests 1-5 and 8-10.  In making this objection, Debtors' simply incorporate all the General Objections, Objections to Definitions and Objections to Instructions.  However, this does not satisfy the requirements set forth in Local Bankruptcy Rule 7034.1(b) which requires an objection to a specific request to be stated with specificity.  Therefore, Parus demands the production of all non-privileged and responsive documents to these requests.

Fifth, Debtors improperly modify and limit their production in response to requests number 6 and 7.  Request number 6, in part, seeks checks, drafts or evidence of wire transfers constituting payments but it also seeks all other documents concerning Debtors' alleged payment to Claimant.  Request number 7, in part, seeks the letters set forth in the objection, but it also seeks all other documents concerning the assertion that the contract was terminated.  As a result, the Debtors' unilateral modification and limitation is inappropriate and Parus demands the production of all non-privileged and responsive documents to requests number 6 and 7 as drafted.

Sixth, Debtors' specific objection to request number 11 is improper.  Request number 11 seeks all documents concerning the General Agreement, including documents concerning the negotiation, drafting and execution of the General Agreement.  This request also seeks documents regarding all aspects of performance and Parus directs Debtors to Section 2 of the General Agreement setting forth, in part, what constitutes performance under the General Agreement.  Furthermore, there are no specific objections raised to producing documents concerning the negotiations and drafting.  As such, it is clear, this request is not limited to copies of checks constituting payment under the General Agreement.  Therefore, Parus demands that Debtors produce all non-privileged and responsive documents to request number 11.

A 01774

**KELLEY DRYE & WARREN LLP**

Lawrence W. Bigus, Esq.
May 31, 2005
Page Four

Seventh, Debtors' specific objections to requests number 12, 13 and 22 are improper. Requests number 12, 13 and 22 seek all documents concerning the Memorandum of Understanding, the Interim Agreement and the Master License Agreement, including documents concerning the negotiation, drafting and execution of the Memorandum of Understanding, the Interim Agreement and the Master License Agreement. These requests also seek documents regarding all aspects of performance. Furthermore, there are no specific objections raised to documents concerning the negotiations and drafting. As such, it is clear, these requests are not simply limited to a copy of the Memorandum of Understanding, the Interim Agreement and the Master License Agreement. Therefore, Parus demands that Debtors produce all non-privileged and responsive documents to requests number 12, 13 and 22.

Eight, Debtors improperly modify and limit their production in response to requests number 14 and 15. Requests number 14 and 15 are not limited to documents "constituting notice." Instead, they request documents concerning Debtors' decision to give notice, a much broader request. As a result, the Debtors' unilateral modification and limitation is inappropriate and Parus demands the production of all non-privileged and responsive documents to requests number 14 and 15 as drafted.

Ninth, Debtors improperly modify and limit their production in response to requests number 17 and 26. Requests number 17 and 26, in part, seek checks, drafts or evidence of wire transfers constituting payments but they also seek all other documents concerning Debtors' payments to Claimant, under the General Agreement. As a result, the Debtors' unilateral modification and limitation is inappropriate and Parus demands the production of all non-privileged and responsive documents to requests number 17 and 26 as drafted.

Tenth, Debtors improperly limit their response to requests number 16, 18-19, 23-24, and 27. The applicable definitions of Debtors and Claimant are set forth above and are not limited to the entities that Debtors have set forth. Therefore, Parus demands that Debtors produce all non-privileged and responsive documents in the possession, custody or control of the Debtors, as defined above, and concerning the Claimant, as defined above.

Eleventh, Debtors improperly object to producing any documents in response to requests number 28 and 29. In Parus' Response and Opposition to Debtors' Objection to Proofs of Claim Filed by EffectNet, Inc. dated June 30, 2004 ("Parus' Response to Debtors' Objection"), Parus sets forth its allegations concerning the Debtors' total breach of the General Agreement. In part, Parus points to the fact that Debtors terminated and/or reassigned many of their employees in 2001 who were performing the obligations under the General Agreement as evidence of the breach. Requests 28 and 29 seek documents concerning the ceasing of employment for two such senior employees whose job titles were set froth in the General Agreement itself. Therefore, these requests are proper and calculated to lead to the discovery of

A 01775

KELLEY DRYE & WARREN LLP

Lawrence W. Bigus, Esq.
May 31, 2005
Page Five

relevant and admissible evidence to Parus' claims and Parus demands that Debtors produce all such non-privileged documents.

Twelfth, Debtors improperly object to producing any documents in response to requests 30-35. In Parus' Response to Debtors' Objection, Parus sets forth that the General Agreement was underpinning of a major Debtors' initiative suite branded "IntermediaOne." Since this litigation is centered around the General Agreement, requests 30-35 properly seek various documents concerning IntermediaOne. Therefore, these requests are proper and calculated to lead to the discovery of relevant and admissible evidence to Parus' claims and Parus demands that Debtors produce all such non-privileged documents.

Please promptly confirm that Debtors will not withhold from production any documents on the basis of the objections, modifications and/or limitations identified above but will, instead, produce all non-privileged and responsive documents. To the extent that Debtors are withholding any documents on the basis of a privilege, please promptly provide Parus with a privilege log pursuant to Local Bankruptcy Rule 7034-1(c). We note that the limited number of documents produced by you are Bates labeled with two different schemes and the numbers are not in sequence. There is a MCIWC prefix on some of the documents and an MCI prefix on others. This suggests that certain documents were collected and labeled, but not produced for some reason. Please explain this discrepancy.

Finally, Debtors served their First Amended Initial Disclosures on or about November 23, 2004, wherein you stated that "any contact with management employees, current or former, must be through counsel for Debtors." Debtors cite no authority as to their position as it relates to former employees. Moreover, Debtors' position is wrong under New York law. The case law is clear that counsel has the right to interview former employees of an adverse party in private without the presence or consent of opposing counsel. *See G-I Holdings, Inc. v. Baron & Budd*, 199 F.R.D. 529, 533 (S.D.N.Y. 2001); *Polycast Tech. Corp. v. Uniroyal, Inc.*, 129 F.R.D. 621, 628 (S.D.N.Y. 1990). Therefore, Parus and its counsel are free to approach and interview any willing former employees of the WorldCom and Intermedia Debtors. If you have any authority to the contrary, please advise us immediately.

Very truly yours,

*Stephen A. Wood*

Stephen A. Wood

CH01/WOODS/197039.1

A 01776

# EXHIBIT O

A 01777



STINSON
MORRISON
HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008

*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

      Re:     Extension of Deadlines
               In re WorldCom, Inc. - Chapter 11
               Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

      You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

      As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

      The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

      Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

                Sincerely,

                **STINSON MORRISON HECKER LLP**

                Lawrence W. Bigus

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS         LWB:lag
OMAHA
JEFFERSON CITY    6593760.1

**A 01778**

# EXHIBIT P

A 01779



STINSON
MORRISON
HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

> Re:    Document Production by Debtors
>        In re WorldCom, Inc. - Chapter 11
>        Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

Your letter of May 31, 2005 complains about the failure of Debtor to produce documents when Debtors have produced hundreds of pages of documents and your clients have not produced a single document despite Requests for Production having been served on them on September 30, 2005. The original response date for Claimant's Request for Production directed to Debtors was March 2005 and documents were produced in March 2005. It appears to us that this was a timely response.

Additionally, your letter is written as if you do not know the status of Debtor's continuing efforts to locate and produce additional documents. We have advised you several times by phone as to the status of these efforts. On the very date that you wrote and sent the letter we advised you that you would shortly be receiving a letter offering to produce over ten thousand boxes of documents that have been located. Why would you send a letter asking us to advise you as to the status of these efforts when we have continually advised you as to the status of the efforts and informed you that a letter was coming shortly setting forth a proposed means for producing over ten thousand boxes of documents? It appears to us that you should have waited to receive our letter before writing your letter and that the only purpose of your letter is one-sided posturing in view of the upcoming hearing concerning your client's total failure to respond to discovery timely and/or provide any meaningful information when responding with extensive objections.

Please review our letter and proposal which you have verified that you have received. Our letter and proposal make most of your letter moot. Even though our initial responses contained objections we have now proposed sending you indexes and opening all of the files up for your review subject to normal limitations as set forth in our letter.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

Stephen A. Wood
June 1, 2005
Page 2

        As you have indicated on more than one occasion you have no direct evidence to establish the facts necessary to prove any of the alleged tortuous conduct and you will be relying on documents from Debtors.  It appears to the Debtors that you are on a fishing expedition to determine whether the facts exist to establish the tort claims that have already been filed (Debtors also believe that the tort claims have no legal basis even if your fishing expedition is somehow able to establish a factual basis).  It appears to Debtors that your clients are the Plaintiff's and have the duty to come forward with evidence.  Despite the fact that Claimants have not produced a single document in response to Requests which have been pending for over 220 days the Debtors have spent considerable time, effort and money to locate documents and then produce them for your review.   We do not understand what more you could reasonably want or expect.

        Sincerely,

        **STINSON MORRISON HECKER LLP**

        Lawrence W. Bigus

LWB:lag

A 01781

# EXHIBIT Q

A 01782

**KELLEY DRYE & WARREN LLP**

A LIMITED LIABILITY PARTNERSHIP

333 WEST WACKER DRIVE

SUITE 2600

CHICAGO, ILLINOIS 60606

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ
———
BRUSSELS, BELGIUM
———
AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

June 1, 2005

<u>VIA FACSIMILE AND U.S. FIRST CLASS MAIL</u>

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, Kansas  66210

Re:   <u>In re WorldCom, Inc., Chapter 11 Case No. 02-13533</u>
      *Claims of Parus Holdings, Inc.*

Dear Mr. Bigus:

Thank you for your letter of May 31, 2005 proposing to supplement your earlier written response to our request for production of documents.  We have considered your proposal and have a number of questions.  Because of these questions and concerns we are unable to agree to the proposal as stated.

First, you indicate that you are not waiving objections.  You objected more than once in your written response to our request for production of documents to producing documents in the possession of entities other than Intermedia Communications, Inc. and MCI WorldCom Communications, Inc.  We sent you a letter yesterday around the time of your E-mail and advised you that this objection was improper due to the substantive consolidation of the bankruptcy proceeding.  We would like you to respond to all of our concerns raised in that letter, but with regard to your current proposal, what is the anticipated universe of documents?  In other words, are you expressly excluding from your proposal documents in the custody or control of other WorldCom entities?

CH01/WOODS/197075.1

**A 01783**

KELLEY DRYE & WARREN LLP

Lawrence W. Bigus, Esq.
June 1, 2005
Page Two

      Second, the paragraph "Located Documents" is quite confusing.  It states that you have located documents in multiple locations "that could possibly include responsive documents."  Are you suggesting that we sift through a large number of nonresponsive documents?  Furthermore, you state "[o]ur client has advised that there are in excess of 10,000 boxes of documents.  Our office has not reviewed or examined any of these additional documents."  Does "additional documents" refer to the 10,000 boxes or something else?

      Third, you have indexes, but you admit they are not very precise.  Because of this we are concerned that the indexes will not be useful in identifying boxes that contain responsive documents.

      Finally, your proposal makes no mention of documents stored in electronic form, e.g., E-mail.  Where are those documents stored and when are you planning to produce them?

      We ask that you address these issues no later than Friday June 3, 2005.  In the meantime, you apparently have indexes to at least some documents that you believe are responsive.  These should have been produced and we request that they be produced as soon as possible so we may examine them and move this process forward.

      We anticipate making an initial production of our documents prior to the hearing on June 14, 2005.

      Very truly yours,

      Stephen A. Wood

SAW/ds

CH01/WOODS/197075.1

A 01784

# EXHIBIT R

A 01785

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 01, 2005 5:11 PM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence
**Subject:** your response to our proposal to produce documents

In a little over three months from your Request for Production MCI has produced hundreds of pages of documents and located ten thousand plus boxes of documents for your review. We have made you a serious proposal to produce all of the documents you want to review subject to review for a few items such as privileged documents. Everything you select to review we will have to review in order to assure that privilege and confidentiality issues are not waived. Therefore, we are not getting out of any work ourselves by the proposal that we have made.

Rather than attempting to modify our proposal to make it workable you simply send a letter rejecting our proposal to produce documents for a variety of reasons. This rejection can within one day of our offer. We question how seriously you have considered our offer. We do not have an obligation to review all possible documents to determine if they are relevant. We have a right to make the documents available to you for your review and determination. What more could you want for your fishing expedition then total access to a large volume of documents.

You demand a response no later than two days from your letter. We find your time demands to be ironic in view of the fact that your clients have not produced one single document and our clients have produced hundreds of pages.

You assume in your response that we have not produced emails. Why would you simply make such an assumption when you have hundred of pages of documents that contain emails?

Just yesterday you raised the issue that all MCI entities that are included in the substantive consolidation have an obligation to search for the documents that you are seeking. We are researching the issue of what entities have a duty to produce documents. You have had our response since March 2005, raise the issue for the first time yesterday, and then demand a response from us within two days. That is simply not reasonable on your part. We will reply to that issue when the legal research is finished.

You refer in your response to the objections contained in the initial reply to your request for production. The objections to categories of documents is certainly moot when we offer to produce all documents that can be located without having reviewed those documents ourselves. The objections concerning what entities have a duty to search for documents is addressed above.

You claim the letter is confusing as to what documents our firm has not reviewed. The additional documents we

7/6/2005

**A 01786**

have not reviewed refers to the ten thousand plus boxes that are referenced earlier in the letter. These are the same set of documents.

You are correct in your conclusion that the indexes are not very useful. If the indexes were useful we would have narrowed the number of boxes down by using the indexes. Since we have no means to identify what is responsive other than by examining all documents we are simply making the documents available to you subject to a few normal stipulations.

I am leaving town early tomorrow morning for several days. Please review our proposal in more detail and revise it as you deem necessary rather than simply rejecting it out of hand. We will consider reasonable revisions to our proposal. In fact, the proposal invited your creative thinking on this issue. We are open to creative ideas on how to allow you to review a large number of documents. Your request are very broad and probably objectionable on that grounds. Despite this belief we are willing to allow you to review a large number of documents. If you want to go on a fishing expedition then you need to be prepared to spend time and resources doing the fishing. That is not MCI's obligation.

You request immediate production of the indexes. We have no obligation to produce indexes of documents. We are willing to produce the indexes if you would be reasonable in your approach to your fishing expedition.

We hope that we have a more reasoned response to our proposal when I return next week.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                        Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 01787

# EXHIBIT S

A 01788

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Wednesday, June 01, 2005 8:29 PM
**To:** Bigus, Lawrence
**Subject:** RE: your response to our proposal to produce documents

I would like to respond to the points you make.

First of all, we didn't reject your proposal outright. Your proposal has problems and lacks clarity which we addressed in the letter I sent you today posing certain questions that you still have not answered completely. The problems in your proposal were readily identifiable and thus several days were not necessary to consider it. We asked for a response to our letter in two days because we don't perceive the issues raised to require a great deal of time to consider. You asked us to advise you as to whether we could agree to your proposal subject to the stated limitations and, responding to this request, we advised that we could not.

You have produced exactly 732 pages of documents. So that number isn't made to sound like more than it is, the documents stack up about 4 inches high, a fraction of what will be ultimately produced in this case. The bulk of the documents you have produced consist of copies of the UC Services Agreement, the Master Agreement for Software Licensing, other agreements and communications already in the possession of both parties. Very little if any substance has been produced by you to date. In contrast, we anticipate producing thousands of pages of documents prior to the hearing on June 14, 2005 and unlike you we are reviewing our documents in an effort to ensure we are producing responsive documents.

You have only given vague assurances that you have been working hard to locate, identify, and produce documents. We do not know the extent of your efforts. Your client knows of many locations of boxes. You have reviewed indexes. Beyond this, you have said little. You say you don't have an obligation to review all possible documents to determine if they are relevant. You cannot, however, produce responsive documents buried under a mountain of nonresponsive documents. You have an obligation to produce responsive documents in the manner in which they are kept in the ordinary course of business or organized to correspond to particular requests.

I asked about documents stored in electronic form. You have produced a few pages of E-mails in paper form, not hundreds. I would anticipate that companies like WorldCom and Intermedia would have relied on E-mail extensively and would have volumes of E-mail communications stored in various formats. The question in my letter about electronic documents seems to me therefore to be valid. I would also expect that electronic media would be more easily searchable than rummaging through warehouses of paper.

If the indexes fall within the scope of the documents requested and they lead to the discovery of admissible evidence, they should be produced now and I propose that this be done.

Lastly, there is one other issue I did not mention in my letter today. You indicate you will not produce your documents for which you have a confidentiality obligation to a third party. I don't believe this is an appropriate limitation given we have a protective order in this case. I propose therefore the this limitation be deleted.

You want us to work with you on this and we will attempt to do so. Please respond to my questions in today's letter. In addition, aside from referring us to vague indexes, what can you do to direct us to responsive documents?

7/12/2005

A 01789