Stephen A. Wood
May 31, 2005
Page 2

3.    Proposed Procedures:

After considering several means of producing the responsive non-privileged documents, we would like to propose what we consider to be the most efficient means.  We are open to proposals from you concerning other possible means of efficiently producing the large number of documents that have been located. Intermedia/MCI proposes to produce the documents pursuant to the procedures and limitations contained in Exhibit A attached hereto.

4.    Objections Not Waived:

Intermedia and MCI will not, by following the attached procedures, have waived any of the objections previously made to the written discovery.

5.    Production Supplements Interrogatory Answers:

Any production of documents pursuant to these procedures will be both a supplemental production responsive to your Request for Production of Documents and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing appropriate further response to your written discovery and for producing any documents which might have any relevancy to this adversary proceeding.  Please advise whether you would agree to this procedure and the stated limitations.  If so, we will immediately forward the indexes for your review.  The procedure is, of course, open for discussion.  If there are alternatives that you would like to discuss please advise of that as well.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

Enclosure

6590719.2

**A 01830**

# EXHIBIT HH

A 01831

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 29, 2005 3:19 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** Production by MCI/Intermedia

We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34 (b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

1.   Review by MCI/Intermedia:  MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

   a.   what should not be produced because it is protected by the attorney client privilege

   b.   If you desire what is responsive to your requests.  If you want to review everything and make this determination yourself that is acceptable to us.

2.  Handing Over Documents:   MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

3.   Costs:

   a.   Handling of Boxes:  As you have been advised there is a cost to removing the boxes from the documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection.  This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes.  It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive.  This cost is from one storage location, was a mere estimate, and may vary from location to location.  We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf.  We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute.  We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

   b.   Copying:  The cost of copying belongs to the requesting party.  Therefore, your Client's will bear this entire expense.

4.   Location:  You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

A 01832

5.  Timing:  In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time.  MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way.  We do not understand how you can object to the rest of the proposal.  We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia.  There is not much more a producing party can do other than give you these options.  Rule 34(b) is very clear that a party has two options.  We have selected one of the options as is our right.  You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business).  We are having a hard time determining what is it you really want.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                                        Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

**A 01833**

# EXHIBIT II

A 01834

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Thursday, June 30, 2005 9:42 AM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** production of electronic documents

As you have been informed on many occasions MCI/Intermedia has continued to look for electronic documents. We have now located the back up tapes that would contain responsive electronic documents if such documents exist.

We have contacted third party vendors in the last couple of days to determine the costs to have the data moved from the tapes to servers so that the data can be searched and then searching the data to try and determine what is relevant. The current estimate is around nine hundred thousand dollars ($900,000.00). This estimate is based on an estimate of 250 back up tapes. At this time the number of tapes is only an estimate. We are working on trying to determine the exact number of tapes. As soon as we get that answer we will provide you with the number of tapes. At that time we can get updated estimates from the vendors.

As you are aware the case law on electronic data indicates that the costs for these searches is imposed on the requesting party under certain circumstances. We believe that those circumstances apply to this case. You have indicated on more than one occasion that you have no direct evidence to prove your tort theories. While you may have a legal right to go on a fishing expedition your client should bear the costs of that fishing expedition.

If the search of electronic documents is performed it will be at your client's costs. Please advise as to whether your client want the search performed. Either you need to have your client make a cash deposit with our firm to cover these costs or your client needs to contract directly with the vendor so that MCI/Intermedia is not liable for these costs. If your client contracts directly with the vendor the results of the searches will be delivered to us for review\, and not to you or your client, so that we can determine what should not be produced and what should be produced.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                          Email:  lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.


7/1/2005                                                                                    A 01835

# EXHIBIT JJ

A 01836

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Friday, July 01, 2005 4:03 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: Production by MCI/Intermedia

I have conferred with my client. There are some problems with your proposal. First, we are not interested in sharing the cost of retrieving boxes from your storage facilities. My client undertook significant time and expense to produce documents to you. We expect you to do the same. As I've said before, this is your obligation under the rules. In addition, your proposal does not indicate when you will turn over your documents. You have had our request since early February. We must have your documents to be able to depose your witnesses and to provide to our experts prior to the deadline to disclose expert opinions. Because you do not commit to turning over responsive documents by a deadline that is well in advance of the expert disclosure deadline, and because you want us to bear half the cost of retrieving boxes from your warehouses, we cannot agree to your proposal.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 29, 2005 3:19 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
**Subject:** Production by MCI/Intermedia

We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34(b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

1.   Review by MCI/Intermedia: MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

    a.   what should not be produced because it is protected by the attorney client privilege

    b.   If you desire what is responsive to your requests. If you want to review everything and make this determination yourself that is acceptable to us.

2.   Handing Over Documents:   MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

3.   Costs:

    a.   Handling of Boxes:  As you have been advised there is a cost to removing the boxes from the

7/6/2005

**A 01837**

documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection. This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes. It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive. This cost is from one storage location, was a mere estimate, and may vary from location to location. We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf. We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute. We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

    b.    Copying: The cost of copying belongs to the requesting party. Therefore, your Client's will bear this entire expense.

4.    Location: You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

5.    Timing: In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time. MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way. We do not understand how you can object to the rest of the proposal. We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia. There is not much more a producing party can do other than give you these options. Rule 34(b) is very clear that a party has two options. We have selected one of the options as is our right. You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business). We are having a hard time determining what is it you really want.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                          Email: lbigus@stinsonmoheck.com



This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

# EXHIBIT KK

A 01839

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Friday, July 01, 2005 11:52 AM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence; Befort, Jeff; Ramsay, Donald
**Subject:** supplemental responses to first request for production (Bigus).DOC


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                        Email:  lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 01840

**STINSON MORRISON HECKER LLP**
**Lawrence W. Bigus, Esq.**
**Donald C. Ramsay, Esq.**
**9200 Indian Creek Pkwy., Ste. 450**
**Overland Park, KS 66210**
**Attorney for Debtors and**
**Debtors-in-Possession**


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **In re** | : | **CHAPTER 11 CASE** |
| | : | **NO. 02-13533 (AJG)** |
| **WORLDCOM, INC., et al.,** | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| | : | |


## DEBTORS' SUPPLEMENTAL RESPONSES TO CLAIMANT'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

As set forth in Debtor's Responses to Claimant's First Request for Production of Documents Debtors have aggressively undertaken an investigation to locate documents responsive to the Request for Production. These efforts have continued and did not stop at the time that Debtor's Responses to the Request were filed. These efforts are continuing at this time. Debtors have regularly kept Claimant's advised as to the results of the continuing search for additional documents.

Since Debtor's Responses to the Request were filed Debtor's have located: 1) additional hard documents (Stored Boxes) which are in storage; 2) the back up tapes for electronic documents (Back Up Tapes); and 3) another group of documents, separately maintained from the Stored Boxes, which appear to relate to the MCI-Webley contract (MCI Documents).

A.    **STATUS OF ADDITIONAL DOCUMENTS**.

1.    **MCI Documents**.  Debtors are in the process of putting the MCI Documents onto computer discs for review.  Debtors expect to deliver the MCI Documents to their counsel within the next two weeks.  Counsel will review the MCI Documents to determine the scope of the documents and whether it is economically reasonable to make a determination as which of the MCI Documents are responsive to the Request for Production.

2.    **Stored Boxes**:  The Stored Boxes are made up by in excess of ten thousand boxes.  The indexes for the Stored Boxes have been provided to Claimants.  The location of the storage facilities for the Stored Boxes has been provided to Claimants.  The Stored Boxes have been produced by making them available to Claimants as they are kept in the usual course of business.  Claimants have been told that they may inspect the Stored Boxes at any time they desire but that Claimants need to pay the third party charges that will be associated with inspection of the documents in the Stored Boxes.  Therefore, these documents have been legally produced in accordance with Rule 34(b).

3.    **Back Up Tapes**:  It currently appears that there are in excess of 250 Back Up Tapes.  These tapes probably contain information which is privileged, confidential, responsive, and non-responsive.  In order to determine what is on the Back Up Tapes the information must be transferred to searchable servers and then the information must be searched by electronic means.

048629:0094\6669304.1

A 01842

B.   **OBJECTIONS: DEBTOR'S HEREBY OBJECT TO ALL REQUESTS FOR PRODUCTION OF DOCUMENTS ON THE GROUNDS THAT THE REQUESTS ARE UNDULY BURDENSOME AS SET FORTH BELOW.**

1.   **MCI Documents**: Debtors need to determine the extent of the MCI Documents and the cost of searching the documents. After that determination has been made it may be possible to inspect the MCI Documents and then produce the responsive documents contained in the MCI Documents without undue cost in which case this objection will be removed as to the MCI Documents.

2.   **Stored Boxes**. The burden and expense of production of the Stored Boxes outweighs the likely benefit. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. This position by Claimant's makes Debtor's objections based on the production being unduly burdensome even stronger.

3.   **Back Up Tapes**. The burden and expense of reviewing the Back Up Tapes to determine what to produce is substantial - possibly in excess of one million dollars. Claimant has stated on more than one occasion that it does not have any direct evidence of its tort claims and will be relying on evidence in the possession of Debtor's to prove its tort claims. To require Debtor's to expend in excess of one million dollars to enable Claimants to engage in a fishing expedition is not reasonable. This anticipated cost is based on estimates received from third party vendors to move the information from the back up tapes to servers so that the documents can be searched and then to search the documents for the documents requested by Claimants.

048629:0094\6669304.1

A 01843

4.      **Timing of Inspection**.  It is obvious that even with the utmost effort inspection of the documents to determine what is responsive to Claimants Requests is very time consuming and cannot be accomplished in a short period of time.  Therefore, any inspection of the documents will require a process over several months.  Debtors object to Claimants Request for Production on the grounds that the Requests require immediate production and do not allow for reasonable inspection to determine what documents are responsive.

Lawrence W. Bigus, Esq.
Donald C. Ramsay, Esq.
Stinson Morrison Hecker LLP
9200 Indian Creek Parkway, Suite 450
Overland Park, Kansas  66210
Telephone:  (913) 451-8600
Facsimile:  (913) 451-6352
*Attorneys for Debtors and Debtors-in-Possession*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 1st day of July, 2005, Debtors' Supplemental Responses to Claimant's First Request for Production of Documents served by Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC was served on counsel for Claimant via electronic mail and U.S. mail, postage prepaid, addressed to:

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606
swood@kelleydrye.com
*Attorneys for Parus Holdings, Inc.*
*Successor-by-Merger to EffectNet, Inc.*

Lawrence W. Bigus, Esq.

048629:0094\6669304.1

**A 01844**

# EXHIBIT LL

A 01845

# EXHIBIT LL

A 01846

-----Original Message-----
**From:** Mercer, Theresa [mailto:TMercer@stinsonmoheck.com]
**Sent:** Friday, July 01, 2005 11:58 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence; Befort, Jeff
**Subject:** ltr to Stephen Wood re: Production of Documents by Claimants.DOC

Sent on behalf of Lawrence W. Bigus, Esq.


Theresa Mercer
Legal Secretary
Stinson Morrison Hecker LLP
1201 Walnut Street
Kansas City, MO 64106
(816) 691-2335 (telephone)
(816) 691-3495 (facsimile)
tmercer@stinsonmoheck.com



This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 01847

STINSON
MORRISON
HECKER llp

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 1, 2005

VIA ELECTRONIC MAIL

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:    Production of Documents by Claimants in Parus v.
        MCI/Intermedia

Dear Mr. Wood:

As you are aware the Court has ruled that your clients have waived all objections to the Request for Production and the Interrogatories propounded on them in this case. Based on that ruling we are hereby formally requesting that your client:

1) serve revised discovery responses which eliminate all objections;

2) provide full and complete answers to all of the interrogatories which answers are not subject to any objections;

3) provide full and complete responses to all requests for production; and

4) produce all requested documents which have not been produced to date.

We request that this task be accomplished in the next ten days. If there is a logistical reason which makes the 10 day time period unreasonable please let us know what those logistical reasons are and we will be willing to work with you on a reasonable time frame.

We appreciate your immediate attention to this matter.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

LWB:tlm

048629:0094\6669444.1

**A 01848**

# EXHIBIT MM

A 01849

-----Original Message-----
**From:** Gagliardi, Lisa [mailto:LGagliardi@stinsonmoheck.com]
**Sent:** Friday, July 08, 2005 2:40 PM
**To:** Wood, Stephen
**Cc:** Bigus, Lawrence
**Subject:** WorldCom, Inc. - Claim of Parus Holdings, Inc.

Attached hereto please find two (2) letters from Larry Bigus regarding the above-named case.


**Lisa Gagliardi**
**Legal Secretary**
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008
Direct Dial Phone:  (913)344-8051
Direct Dial Fax:  1(888)759-6979


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 01850

**STINSON**

**MORRISON**

**HECKER** llp

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450

9200 Indian Creek Parkway

Overland Park, KS 66210-2008

*Tel* (913) 451-8600

*Fax* (913) 451-6352

July 7, 2005

VIA ELECTRONIC MAIL

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

     Re:    Electronic Document Production by Debtors
              In re WorldCom, Inc. - Chapter 11
              Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

     As you are aware Debtors have located a substantial number of back up tapes and other electronic documents in connection with your Request for Production of Documents. You have not responded to the e-mail we sent you concerning cost shifting issues in connection with electronic discovery. Prior to filling a motion for protective order on this subject we want to make an attempt to resolve the issues.

     At this time we are making the following proposal concerning electronic discovery:

     1.    The discovery be postponed until after the Court rules on the summary judgment motion that we plan to file in the near future. The summary judgment motion will assume that all allegations in your pleadings are accurate. The summary judgment motion will be more in the nature of a traditional motion for failure to state a cause of action. We will basically be saying that even if you can prove everything you have alleged that your client does not have a cause of action against Debtors for tort, that the alleged damages are not legally recoverable, and that the contract damages are limited. If the motion is granted as to the tort claims then there will be no need to obtain the electronic discovery. You do not need the electronic discovery to respond to the summary judgment motion because the motion will assume that all of your allegations are correct.

     2.    That Claimants pay the cost of searching the electronic files. Case law makes it clear that the Court has the authority to shift the costs in this manner.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

048629:0094_0019\6679423.1

**A 01851**

Stephen A. Wood
July 7, 2005
Page 2

      3.     That reasonable parameters be set in connection with searching the electronic discovery. Parameters such as only searching the files of agreed upon individuals, only searching certain back up tapes (the back up tapes are largely duplicative since each tape backs up everything that the particular servers being backed up contain) rather than every single back up tape and other similar parameters. The court decisions on this issue indicate that reasonable parameters designed to search the data most likely to produce information and which greatly reduce the costs can be adopted by the courts.

      By offering to produce electronic documents subject to the above we are not waiving the objections set forth in response to your clients request for production.

      If you are willing to compromise and work on these issues please let me know. If you cannot agree to the above proposal please respond with a particular proposal of your own rather than your usual outright rejection without any constructive proposals. If you are not willing to work together toward a reasonable solution to the issue of electronic production then we will have no choice but to file a motion for a protective order. We hope that this motion does not become necessary.

      Sincerely,

      **STINSON MORRISON HECKER** LLP

      Lawrence W. Bigus

LWB:lag

048629:0094_0019\6679423.1

**A 01852**

STINSON

MORRISON

HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 7, 2005

**VIA ELECTRONIC MAIL**

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

Re:    Production by Parus/EffectNet
In re WorldCom, Inc. - Chapter 11
Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

As you are aware your clients have failed to respond to the Court's order indicating that all of its objections are waived. Further, the documents that your client has produced indicate that your client's production was not a full and complete production, even if the objections stand – which they do not, contrary to the representations that you have made on many occasions.

A.    Waiver of Objections:  As you are aware the Court has ruled that all of your client's objections to the Request for Production and the Interrogatories propounded by Debtors are waived.  On July 1, 2005 we sent you a letter asking you to:  1) serve revised discovery responses which eliminate all objections;  2) provide full and complete answers and responses not subject to objections;  3) provide full and complete responses to all requests for production; and 4) produce all requested documents which have not been produced to date.  At this time you have not even given us the courtesy of a response to our letter.

B.    Full and Complete Production:  Your client has produced a volume of documents.  We have reviewed all of the documents and read all but a handful of the documents.  The following is clear from the documents that your client has produced:  1) the documents are from the files of one individual and do not include files from any other individual;  2) while the volume of documents is large, many of the documents are duplicative of each other and therefore the production is not as big as you keep claiming;  3) there are no documents from the individuals involved in the negotiations between Webley and MCI;  4) many of the documents are non-responsive documents which simply increase the count you keep using for the number

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

048629:0094_0019\6679360.1

**A 01853**

Stephen A. Wood
July 7, 2005
Page 2

of documents produced. These conclusions are clear because there are no copies of contracts, no negotiating notes, no documents from anyone's files except one person, no copies of the termination letters, no drafts of the contracts, no negotiating notes, and a lack of many other documents that should have obviously been included in a full production. You claim that your clients have gone to a lot of trouble, effort and expense to produce documents. It is clear that this is not the case.

Please comply with the requests set forth above in paragraph A on or before July 31, 2005. As you are aware the Request for Production has been outstanding now for over nine months. You keep complaining that Debtors have not produced their documents in connection with a request that has been outstanding for a little over four months, yet your clients have not fully responded in connection with requests that have been outstanding for over nine months.

If we do not receive acceptable amended responses together with a full document production by July 31, 2005, we will have no choice but to ask the Court for an informal conference on these issues.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

**A 01854**

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

## <u>PROPOSED PRODUCTION PROCEDURES</u>

1.    Intermedia/MCI will  provide claimants with a complete set of the indexes for the documents.

2.    Claimants will review the indexes and identify those specific boxes it wishes to review.

3.    Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.   In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.    Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

      a.    Those documents identified as privileged.

      b.    Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

      c.    Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

6590719.2

# EXHIBIT D

A 01856

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

——

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

——

BRUSSELS, BELGIUM

AFFILIATE OFFICES

JAKARTA, INDONESIA

MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: swood@kelleydrye.com

May 25, 2005

<u>**VIA FACSIMILE**</u>

Lawrence W. Bigus
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008

Re:    <u>**Parus Holdings/WorldCom**</u>; Amended Scheduling Order

Dear Mr. Bigus:

I received an email from Don Ramsay of your firm on May 17, 2005 regarding amending the scheduling order where Mr. Ramsay indicated "I am informed we cannot agree to extensions of the deadlines set for designation of experts etc." I spoke with Mr. Ramsay on May 18th by telephone regarding this issue.

I pointed out to Mr. Ramsay we had yet to receive the bulk of your document production and, accordingly, were unable to take depositions of WorldCom fact witnesses. In light of this, I asked Mr. Ramsay whether WorldCom was intending to object to or actively oppose our request to amend the scheduling order. He indicated that he was not exactly sure and would get back to me. Yesterday I received another email from him indicating that you would object to extending the deadlines. Mr. Ramsay offered no explanation of the basis for your objection. One deadline, for filing amendments, has already passed. Another deadline, for Parus to disclose experts, is set for June 20, 2005.

I would like to make the following points in an effort to avoid taking a dispute regarding this issue to the court. We served a request for production of documents on you on February 8, 2005. To date, you have produced only 732 pages of documents in this case,

CH01/WOODS/196861.1

**A 01857**

KELLEY DRYE & WARREN LLP

Lawrence Bigus
May 25, 2005
Page Two

approximately 247 pages in your Rule 26 disclosures and 485 pages in response to our request
for production of documents. Combined, this is a 4 inch stack of documents. The bulk of these
700 odd pages consist of copies of the UC Services Agreement, the Master Agreement for
Software Licensing, other agreements and communications already in the possession of both
parties. To date, little if any substance has been produced by you.

Indeed, you acknowledge much remains to be done by you regarding document
production. In your written response to our request for production of documents you have stated
the following:

> Intermedia is no longer actively engaged in business. Most of the
> Intermedia documents have been boxed up and sent to storage
> ("Stored Documents"). Debtors have aggressively undertaken an
> investigation to locate the Intermedia documents including the
> Stored Documents and those documents that were still in the
> possession of the current employees. The Intermedia documents
> are referred to herein as "Intermedia Documents".
>
> Debtors have located and reviewed some of the Intermedia
> Documents ("Located and Reviewed Documents") and are still
> working to locate the remaining Intermedia Documents. It appears
> that the Stored Documents are contained in several different
> storage locations and are in thousands of boxes ("Stored
> Documents"). Some of the storage locations are known and
> Debtors are still conducting due diligence to determine the location
> of the remaining storage locations. None of the documents at
> storage locations are included in Located and Reviewed
> Documents.
>
> In response to this Request for Production Debtors have indicated
> that certain documents will be produced ("Responsive
> Documents"). To the extent that Located and Reviewed
> Documents are also Responsive Documents they are attached
> hereto.
>
> The Stored Documents located to date are poorly indexed. As it
> relates to the Claims at issue the Stored Documents contained in
> these thousands of boxes can be described as follows: 1)
> Documents which have no relevancy to the Claims at issue, which
> Claimant has not requested and which Debtors have no desire to
> review in connection with the Claims at issue ("Irrelevant
> Documents"); 2) Documents which Debtors would like to review

CH01/WOODS/196861.1

A 01858

**KELLEY DRYE & WARREN LLP**

Lawrence Bigus
May 25, 2005
Page Three

in connection with the Claims ("Potential Documents"); and 3) Documents which Debtors have indicated in their Reply to the Request for Production that Debtors are willing to produce ("Requested Stored Documents"). Documents which are contained in the description of Potential Documents and in the description of Requested Stored Documents may overlap.

Debtors intend to continue to take steps to locate the remaining storage locations and seek indexes for all Stored Documents. As soon as this task is completed Debtors will determine whether they can identify the Responsive Documents and produce them or whether Debtors will comply with its obligations pursuant to this Request for Production by allowing Claimant to review some or all of the Stored Documents pursuant to Rule 34 Fed. R. Civ. P. (or do a combination of these two approaches).

Debtors reserve the right to object to the production of Stored Documents which are responsive to this Request for Production to the extent they contain Attorney Work Product, are protected by the Attorney Client Privilege, or there are other grounds to object to the production of such documents, once said documents have been reviewed.

In the foregoing Response you have admitted that you have not even located let alone reviewed or produced all of your documents in this case. The documents you have located are contained in "several locations" and are in "thousands of boxes." It appears, therefore, once you locate all of your documents, your production of documents to date will be dwarfed by documents yet to be produced. Not only have you failed to produce all responsive documents, you have not explained why you have failed to produce these documents to date, or why, despite that failure, Parus should be expected to disclose its experts' opinions.

Moreover, I note that because your documents have not been produced, not a single fact witness deposition has been taken in this case. So there has been no opportunity to examine WorldCom witnesses regarding your documents. Needless to say, depositions without documents would probably be completely useless. As you know, Intermedia breached a contract with EffectNet and Parus, successor-by-merger to EffectNet, has incurred damages. The measure of contract damages is certain to be a subject of expert testimony. Contract damages will depend, *inter alia*, on negotiations between the parties and expectations regarding performance. The Debtor's documents and the testimony of its witnesses are necessary for Parus' experts to form their opinions in this case.

KELLEY DRYE & WARREN LLP

Lawrence Bigus
May 25, 2005
Page Four

        In addition, we are claiming that the Debtors engaged in tortious conduct that had a devastating impact on the business of EffectNet and its merger partner, Webley Systems. We will need experts, likely with industry expertise, to review Debtors documents and the testimony of its witnesses regarding Debtors' products, targeted markets, marketing strategy, and business plans to reach conclusions about liability for these tortious claims as well as damages. We believe that Debtors were developing products that competed with the EffectNet product sold to Intermedia. This undoubtedly involved market assessments and business plans that would be relevant to the opinions of Parus's expert witnesses.

        In view of the foregoing circumstances, it is neither appropriate nor fair to expect Parus to disclose expert witnesses and produce complete reports by the current deadline of June 20, 2005. I would remind you that when you requested an extension of time to produce your documents, we readily agreed. Please reconsider your position on this matter and get back to me as soon as possible. If you insist on maintaining an objection to amending the scheduling order, I would like an explanation of the basis for your objection.

                        Very truly yours,

                        Stephen A. Wood

                        Stephen A. Wood

SAW:ds

CH01/WOODS/196861.1

A 01860

# EXHIBIT E

A 01861



STINSON
MORRISON
HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

Re:    Extension of Deadlines
       In re WorldCom, Inc. - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS         LWB:lag
OMAHA
JEFFERSON CITY    6593760.1

A 01862

# EXHIBIT U

A 01863

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 15, 2005 1:46 PM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald; Bigus, Lawrence
**Subject:** production by Parus

It appears that the documents produced by Parus are all scanned documents. This means that Parus has not produced electronic documents. Please advise concerning the production of electronic documents. Additionally, please send assurances that the documents produced in scanned format are exact copies of the actual hard copies, that if there is anything on the back of documents that the back was scanned, and that if there was anything on file folders that the file folders have been scanned.

You have not identified which documents are responsive to which request. This is a problem that applies to both sides in this case. Based on the manner in which you produced documents I suspect you are willing to agree that neither side in this case will be held to a requirement of identifying specific documents produced back to specific requests for production. Please confirm this understanding.

We look forward to further discussions with you concerning the production issues.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                    Email: lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

A 01864

-----Original Message-----
**From:** Wood, Stephen
**Sent:** Friday, June 17, 2005 1:03 PM
**To:** Bigus, Lawrence
**Cc:** Friedman, Robert; Krolewski, Martin A.
**Subject:** RE: production by Parus

We actually have produced electronic documents. The E-mail communications you have with the attachments were in electronic form originally. They have not been altered and they have been produced in complete form. You will see several file folders that have been scanned and instead of identifying specific requests, we have organized the documents into subjects or topics. These are identified by file folders as follows:

PPM (April 2000) General
SSB Forecast
Bankruptcy Issues May/June 2002 ACP
PPM (April 2001) Investor Specific
Bankruptcy Issues May/June 2002
PPM (April 2001) Roadshow Presentations & Calendars
PPM (April 2001) Financial
PPM (April 2001) PPM
APAX (Patricof) Apax Term Sheet 9/19/01
APAX (Patricof) General
AOL
SSB Due Diligence
PPM (August 2001) Roadshow Presentations
PPM (August 2001) PPM
PPM (August 2001) General
Bridge Financing (November 2001) General/Drafts ACP
Bridge Financing (September 2001) General/Drafts ACP
Bridge Financing (January 2002) General/Drafts ACP
Bridge Financing (January 2002) Term Sheet/Issues ACP
Bridge Financing (September 2001) General/Drafts
Bridge Loan (June 2001) ACP
Equity Fund Raising Misc 2001-2002
Revolver (June 2002)
Bridge Financing (January 2002 Term Sheet/Issues

We will be happy to relate the bates numbers of these documents to specific requests for you and will undertake to do that immediately. Since we are undertaking this effort, I would expect the debtors to produce documents in the same fashion.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Wednesday, June 15, 2005 1:46 PM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald; Bigus, Lawrence
**Subject:** production by Parus

A 01865

It appears that the documents produced by Parus are all scanned documents. This means that Parus has not produced electronic documents. Please advise concerning the production of electronic documents. Additionally, please send assurances that the documents produced in scanned format are exact copies of the actual hard copies, that if there is anything on the back of documents that the back was scanned, and that if there was anything on file folders that the file folders have been scanned.

You have not identified which documents are responsive to which request. This is a problem that applies to both sides in this case. Based on the manner in which you produced documents I suspect you are willing to agree that neither side in this case will be held to a requirement of identifying specific documents produced back to specific requests for production. Please confirm this understanding.

We look forward to further discussions with you concerning the production issues.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                    Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

7/6/2005

-----Original Message-----
**From:**        Wood, Stephen
**Sent:**        Tuesday, June 21, 2005 5:50 PM
**To:**          'Bigus, Lawrence'
**Subject:**     Parus/WorldCom

Attached is a chart which correlates our recent document production by bates number with the number of your document requests. This is being provided pursuant to our obligation under Rule 34 to produce documents organized to correspond to the categories in the numbered requests.

In addition I have reviewed the indexes you provided on June 15, 2005. As you yourself indicated, they are not searchable for responsive documents and we are not able to determine on our own whether the boxes referenced contain responsive documents.



Document
oduction organized

Stephen A. Wood
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, Illinois 60606
(312) 857-7070

A 01867

PARUS HOLDINGS, INC. DOCUMENT PRODUCTION TO MCI WORLDCOM

**Categories of Requests:**

Request 1:     Financial Statements
Request 2:     Income Statements
Request 3:     Balance Sheets
Request 4:     Correspondence between Parus and MCI
Request 5:     Correspondence between EffectNet and Intermedia
Request 6:     Confidential Information given to WorldCom
Request 7:     Representation that Intermedia had hundreds of sales personnel
Request 8:     Intermedia & WorldCom's election to breach and repudiate UC Contract
Request 9:     WorldCom initiative to offer products similar to EffectNet services under UC Contract
Request 10:    WorldCom products were based on an incompatible business model
Request 11:    Invoice # 1010
Request 12:    Invoice # 1011
Request 13:    Invoice # 1018
Request 14:    Invoices issued to Intermedia pursuant to the Agreement
Request 15:    Two pricing options to calculate Minimum Commitment
Request 16:    Attempt by EffectNet/Webley to raise equity funding from investors
Request 17:    Financial and other disclosures to WorldCom
Request 18:    Cost per customer to provide services to Intermedia
Request 19:    Versions of agreement negotiated by and between MCI and Webley
Request 20:    Correspondence concerning agreement negotiated between MCI and Webley
Request 21:    All calculations used to compute invoices issued to Intermedia
Request 22:    Any transactions between Claimants and Debtors

A 01868

| Bates Numbers | File Folders | Description | Corresponding Requests |
|---|---|---|---|
| PH 00758-00908 | PPM (April 2001) General | | 1, 16 |
| PH 00909-05653 | SSB Forecast | | 1, 2, 3, 16 |
| PH 05654-05658 | Bankruptcy Issues May/June 2002 | | 1 |
| PH 05659-06275 | PPM (April 2001) Investor Specific | | 1, 16 |
| PH 06276-06323 | Bankruptcy Issues May/June 2002 | | 1 |
| PH 06324 -06708 | PPM (April 2001) Roadshow Presentation & Calendars | | 1, 2, 3, 16 |
| PH 06709-06785 | PPM (April 2001) Financials | | 1, 2, 3, 16 |
| PH 06786-11742 | PPM (April 2001) PPM | | 1, 2, 3, 16 |
| PH 11743-13747 | APAX (Patricof) Apax Term Sheet 9-19-01 | | 1, 2, 3, 16 |
| PH 13748-16489 | APAX (Patricof) General | | 1, 2, 3, 16 |
| PH 16489-16690 | AOL APAX | | 1, 2, 3, 16 |
| PH 16691-17267 | SSB Due Diligence | | 1, 2, 3, 16 |
| PH 17268-17821 | PPM (August 2001) Roadshow Presentations | | 1, 2, 3, 16 |
| PH 17822-19126 | PPM (August 2001) PPM | | 1, 2, 3, 16 |
| PH 19127-20055 | PPM (August 2001) Investor Specific | | 1, 2, 3, 16 |
| PH 20056-20264 | PPM (August 2001) General | | 16 |
| PH 20265-20275 | Bridge Financing (November 2001) General – Drafts | | 1, 16 |
| PH 20276-20278 | Bridge Financing (September 2001) General – Drafts ACP | | 16 |
| PH 20279-20280 | Bridge Financing (January 2001) General – Drafts ACP | | 1 |
| PH 20281-20329 | Bridge Financing | | 1, 16 |

A 01869