```
 1              Proceedings
 2   obviously has to go through the boxes at some
 3   level.  It is a question of how many of those
 4   boxes then get handed over to the claimants.
 5   It is a question of who pays to take them off
 6   the shelf, which could be $30,000 to $50,000;
 7   and it is a question of who does some very
 8   expensive searches of electronic documents.
 9   It will probably end up being outside vendors
10   who have the technology available to do it.
11   I don't think setting an artificial deadline
12   resolves the real world practicality.  We
13   want to produce the documents.  We have
14   offered to produce documents beyond what the
15   claimants have requested.  The claimants have
16   objected to that as a means to hide what is
17   really responsive.  I didn't mean it that
18   way.  We really are letting them, if they
19   want, to go review all of these documents.
20              In order to solve the problem of
21   the 120-day deadline to name experts and what
22   has been reviewed by them, I offered to put a
23   statement in the amended scheduling order
24   that we are going to propose to you that says
25   (1) we need to review all of these documents
```

1              Proceedings

2    before they can name experts, (2) that it may

3    take time to accomplish the review and there

4    are disagreements over how to do the review

5    and the costs, and (3) that if the review

6    wasn't completed by 120 days, that they could

7    seek an additional extension of time in order

8    to try to solve the issue.

9              I think to set an artificial

10   deadline to produce this volume of documents

11   absolutely accomplishes nothing for either

12   side, and that Mr. Wood has to wake up to the

13   fact that even if we review all of them

14   first, he is going to have thousands and

15   thousands of boxes to get through that he is

16   going to have to undertake.

17             MR. WOOD:  Your Honor, we thought

18   it reasonable to request a date certain by

19   which the parties would turn over all

20   responsive documents.  That is, produce them

21   to the other side.  We have received some

22   indexes from the Debtors, but the indexes are

23   indecipherable to us.  They were created by

24   them.  There are alphanumeric designations in

25   there that don't mean anything to us.  We

```
 1              Proceedings
 2   can't tell whether or not the boxes that are
 3   reflected in the indexes contain responsive
 4   documents or not.
 5              Now, we served our request for
 6   production of documents on the Debtors back
 7   in February, on February 7th, and we are
 8   still waiting for the bulk of their documents
 9   to be produced.  We received about 400, but
10   no less than 500, pages of documents.  But
11   that is it.  It seems reasonable to me to ask
12   the Court to impose a deadline for document
13   production to be completed in advance of the
14   deadline for disclosing expert witnesses, and
15   that is what we were seeking here.
16              MR. BIGUS:  Your Honor, this is
17   Larry Bigus.  The documents have been legally
18   produced under Rule 34(b).  We filed a
19   response to their requests timely.  We have
20   told them where the documents are.  We have
21   told them, "Tell us when you want to go, and
22   we will tell the warehouses to show them to
23   you."  We have legally produced the
24   documents.  The question is how in the
25   practical, real world to enable them to
```

1          Proceedings

2    review the documents and who pays the costs

3    for taking the box off the shelf, which gets

4    expensive when you are dealing with tens of

5    thousands of boxes.

6          So the documents have been legally

7    produced.  It is a question of real world,

8    how do you review them?  We want to help them

9    to do it.  We don't know what the

10   alphanumeric designations mean either.  The

11   people who made these indexes were employees

12   of Intermedia.  As the Court knows,

13   Intermedia has been shut down.  These

14   employees who would know this information are

15   no longer with us.

16          MR. WOOD:  Your Honor, there is an

17   interesting thing about one of these indexes

18   that was produced by the other side.  There

19   were 10 indexes, and the longest of these

20   indexes contains references to a number of

21   boxes.  Some of these boxes have been

22   highlighted.  If you look at the general

23   descriptions of the contents, they don't mean

24   anything to us.  I can't tell what is in

25   these boxes.  But at the end of the index

```
 1              Proceedings
 2    there is a key that someone has created, and
 3    the key identifies the highlighted boxes and
 4    describes what is in those highlighted boxes
 5    and describes the contents that are
 6    responsive to our requests.  So it appears as
 7    though someone has gone through that index
 8    and identified boxes that have responsive
 9    documents.  If they can do that for one
10    index, I don't know why they can't do that
11    for the rest of the indexes, and I don't know
12    why those boxes and those documents haven't
13    been produced.
14              MR. BIGUS:  Your Honor, those boxes
15    have been produced.  We made an attempt to
16    try to identify what we thought was
17    responsive.  As the Court can tell, we sent
18    what we were able to determine to Mr. Wood.
19    We do not know for sure whether or not there
20    might be responsive documents in other boxes.
21    We simply gave Mr. Wood our indication of
22    what we thought was probably responsive, but
23    that doesn't mean it defines the entire
24    universe.  We looked at all of the indexes
25    and did our best, as Mr. Wood just pointed
```

```
 1              Proceedings
 2   out to the Court, to give Mr. Wood as much
 3   information as we could give him, far beyond
 4   what is required by the rule.
 5              If Mr. Wood wants to come down
 6   tomorrow morning and look at those boxes that
 7   have been highlighted, we will call the
 8   warehouse and tell the warehouse that
 9   Mr. Wood will be at the warehouse where these
10   documents are located tomorrow morning.  It
11   is up to Mr. Wood to go to the documents and
12   look at them.  We have made them available.
13   We have told him where they are.  I don't
14   know what more we can do to have them legally
15   produced, than tell them where they are and
16   tell them all you have to do is call us and
17   we will tell the warehouse to let them in.
18              Now, we do want to go at the same
19   time he does, so that as each box is pulled,
20   we can look in the box to make sure there is
21   no privileged communication.  But other than
22   that, he can go look at them right now.
23              MR. WOOD:  The only other thing I
24   would say, Your Honor, is that we did produce
25   23,000 pages of documents.  We undertook
```

1                    Proceedings

2    considerable effort and expense to locate

3    these documents and review them and produce

4    them, and we are asking for the Debtors to do

5    no more and no less.  These are their

6    documents in these depositories and their

7    indexes.  Certainly they know them better

8    than we do.  Someone has gone through one of

9    these indexes and identified boxes with

10   responsive documents, and I think they can do

11   that with regard to the rest of them.

12          Your Honor, if the Court would

13   like, we can present a motion to compel and

14   we can brief these issues, and I think that

15   might be the appropriate thing to do.

16          JUDGE GONZALEZ:  I think you are

17   going to have to, because I believe what I am

18   going to need is some form of affidavit

19   regarding the motion to be filed in response

20   to it to set forth what has been done and

21   what the legal arguments are regarding what

22   has to be done.

23          MR. WOOD:  Your Honor, Parus

24   Holdings will file a motion to compel.  I

25   would like 14 days to get that on file

| | |
|---|---|
| 1 | Proceedings |
| 2 | because of the upcoming July 4th holiday. |
| 3 | JUDGE GONZALEZ:  That is all right. |
| 4 | MR. BIGUS:  Your Honor, I am going |
| 5 | to assume when he does that, you want an |
| 6 | informal letter request pursuant to the |
| 7 | procedures and the local rules or at this |
| 8 | point you want a formal motion that we |
| 9 | actually come to New York and argue? |
| 10 | JUDGE GONZALEZ:  I think at this |
| 11 | point it has dragged on a little bit longer |
| 12 | than it should have from my end, so you might |
| 13 | as well do a formal motion.  I don't think we |
| 14 | are going to get very far with informal |
| 15 | letter responses at this stage. |
| 16 | MR. BIGUS:  I would like to inform |
| 17 | the Court that I am out the 8th through the |
| 18 | 18th of July, and that any hearing that we |
| 19 | need on this needs to be after that date, so |
| 20 | that I don't get stuck trying to move a |
| 21 | hearing during the time period when I am |
| 22 | already scheduled to be out of the office. |
| 23 | MR. WOOD:  We will obviously work |
| 24 | with counsel. |
| 25 | JUDGE GONZALEZ:  Work through that. |

```
 1            Proceedings
 2    I think you can check the Court's docket and
 3    see what dates are available early in August
 4    for WorldCom, and you may pick one of those
 5    dates.
 6            MR. BIGUS:  Mr. Wood, I am telling
 7    you right now that if you want to start by
 8    reviewing document boxes which have been
 9    highlighted, tell me when you want to be at
10    which depository, and you can start
11    reviewing.
12            MR. WOOD:  We will prepare our
13    motion and submit it to the Court.
14            Your Honor, as far as the deadline
15    for disclosing expert witnesses is concerned,
16    the parties had agreed to a new deadline of
17    120 days beyond the original deadline.
18            JUDGE GONZALEZ:  Let's leave it at
19    that for now, and then ultimately I guess it
20    gets addressed at that hearing
21            MR. WOOD:  Thank you, Your Honor.
22            MR. BIGUS:  Thank you, Your Honor.
23            (Time noted:  3:28 p.m.).
24
25
```

```
 1
 2                C E R T I F I C A T E
 3   STATE OF NEW YORK      )
                            : SS:
 4   COUNTY OF NEW YORK     )
 5
 6         I, DEBORAH HUNTSMAN, a Shorthand
 7   Reporter and Notary Public within and for the
 8   State of New York, do hereby certify:
 9              That the within is a true and
10   accurate transcript of the proceedings taken
11   on the 29th day of June, 2005.
12         I further certify that I am not
13   related by blood or marriage to any of the
14   parties and that I am not interested in the
15   outcome of this matter.
16         IN WITNESS WHEREOF, I have hereunto
17   set my hand this 1st day of July, 2005.
18
19              DEBORAH HUNTSMAN
20
21
22
23
24
25
```

# Exhibit I

A 01920

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Lawrence W. Bigus, Esq.
1201 Walnut, Suite 2900
Kansas City, MO 64106
Attorney for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | CHAPTER 11 CASE |
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

### WORLDCOM'S RESPONSE AND OPPOSITION TO CLAIMANT'S MOTION TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS AND TO EXTEND DISCOVERY DEADLINES

WorldCom, Inc. ("WorldCom") provides the following response and opposition to

Claimant Parus Holdings, Inc.'s ("Parus Holdings") Motion to Compel and to Extend Discovery

Deadlines ("Motion") (Docket No. 16423), which was filed on July 13, 2005.

### INTRODUCTION

WorldCom served timely objections and responses to Parus Holdings' document requests

and has made good faith efforts to locate documents maintained by its subsidiary Intermedia

Communications, Inc. ("Intermedia"), which ceased doing business long before Parus Holdings

ever filed its claims in this proceeding. See Parus Holdings' Motion, Ex. D at 6 (¶ 16)

(WorldCom began dismantling Intermedia in July of 2001). Over 10,000 boxes of Intermedia

documents have been located in depositories in four states, and the estimated cost of just

retrieving those documents for review is $149,000. WorldCom has proposed reasonable and cost

efficient methods for retrieving the Intermedia documents, all of which have been rejected by

Parus Holdings. Rather than offer reasonable counter-proposals, Parus Holdings seeks an order

**A 01921**

from this Court requiring WorldCom to retrieve and review all of the Intermedia documents at its own cost.

Parus Holdings' Motion is without merit and should be denied.  Given Parus Holdings' refusal to agree to any compromise position, WorldCom has retrieved and is reviewing boxes of Intermedia documents that, based on its review of the available document indexes, are most likely to contain responsive documents.  This review coupled with WorldCom's offer to make the Intermedia boxes available for Parus Holdings' own review at any time more than fulfills WorldCom's obligation to produce documents.  If the Court determines that WorldCom is required to retrieve and review all of the over 10,000 boxes of Intermedia documents, then discovery should be stayed until the Court rules on WorldCom's pending motion for summary judgment.  If WorldCom prevails on its motion, then most if not all of the documents Parus Holdings now seeks will be outside the proper scope of discovery.  If it later becomes necessary to continue discovery, then Parus Holdings should be ordered to share in the costs of WorldCom's production.

## BACKGROUND

**I.   THE NON-CONTRACT CLAIMS OF PARUS HOLDINGS FAIL AS A MATTER OF LAW AND NO DISCOVERY IS REQUIRED FROM DEBTORS REGARDING THE REMAINING CONTRACT CLAIM.**

Parus Holdings seeks recovery from Intermedia in this proceeding for breach of contract (Parus Holdings' Motion at 4 (¶ 6)) and recovery from Intermedia and WorldCom under multiple theories sounding in tort – civil conspiracy, tortious interference with contract, breach of an implied covenant of good faith and fair dealing, and alleged violation of trade practice acts.  Id. at 4-5 (¶ 8).  However, as explained in WorldCom's Motion for Summary Judgment (Docket Nos. 16645 and 16646), the non-contract claims of Parus Holdings fail as a matter of law.

2

- The tort theories of civil conspiracy and tortious interference with contract fail because the assertedly conspiratorial and/or interfering conduct was between a parent corporation (WorldCom) and its wholly owned subsidiary (Intermedia), a unified interest relationship that precludes such claims as a matter of law.

- The claim for breach of an implied covenant of good faith and fair dealing fails because the UC Contract at issue was an ordinary private commercial agreement between two business entities, whose contractual relationship did not embrace public interest, arise from a position of adhesion or involve fiduciary responsibilities.

- The claim for purported violation of deceptive trade practice acts fails because neither WorldCom nor Intermedia sold any service or product to EffectNet. Indeed, it was the other way around. Moreover, EffectNet was not the target of any deceptive advertising, and claimant therefore cannot maintain an action under the Arizona Consumer Fraud Act.

See Memorandum in Support of WorldCom's Motion for Summary Judgment (Docket No. 16646). If the Court grants WorldCom's Motion for Summary Judgment, as WorldCom believes it should, the remaining breach of contract claim can be decided by the Court without resort to evidence outside the contract, other than Parus Holdings' own accounting records. This is because the parties' contract contains provisions (1) specifying the methodology for determining the monetary consequences of contract termination such as occurred here, and that yields a recovery to Parus Holdings of no more than $460,442.30, and (2) prohibiting any other form of damages. See Appendix to WorldCom's Motion for Summary Judgment at Ex. A (Docket No. 16645).[1]

---

[1] The damage limitation provision of the parties' contract is comprehensive and reads as follows:

LIMITATION OF LIABILITY. EXCEPT FOR DAMAGES ARISING UNDER SECTION [left blank in original], IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, INDIRECT, SPECIAL, PUNITIVE, CONSEQUENTIAL OR SIMILAR DAMAGES OF ANY KIND INCLUDING WITHOUT LIMITATION, LOSS OF PROFITS, LOSS OF BUSINESS OR INTERRUPTION OF BUSINESS, WHETHER SUCH LIABILITY IS PREDICATED ON CONTRACT, STRICT LIABILITY OR
(footnote continued)

3

## II.     MOST OF THE DOCUMENTATION SOUGHT BY PARUS HOLDINGS RELATES TO ITS DEFICIENT NON-CONTRACT CLAIMS.

Parus Holdings' extremely broad document requests primarily seek documents related to the liability and damage aspects of its tort claims.  For example, Parus Holdings seeks documents concerning:

1) the finances, business, technology and products, and any financial evaluation or analysis of EffectNet and Webley Systems, Inc. ("Webley," the focus of Parus Holdings' allegations of tortious conduct by WorldCom; Motion at 4, ¶ 7) (Request Nos. 11 and 12);

2) negotiations, drafting and execution of the Webley Master Agreement for Software Licenses Contract ("MASL") (Request No. 13);

3) communications between WorldCom and Webley regarding the MASL Contract (Request No. 23);

4) communications from September 1, 2000, to the present regarding products and services offered to WorldCom under the MASL Contract (Request No. 24);

5) the prices to be paid for licenses obtained from Webley under the MASL Contract (Request No. 25);

6) payments under the MASL Contract (Request No. 26);

7) the merger between Intermedia and WorldCom that relate to unified communications products (the type of products sold by EffectNet to Intermedia) (Request No. 34); and

8) WorldCom and Intermedia's efforts to develop, market and obtain their own unified communications product (Request No. 35).

None of these document requests would be within the proper scope of discovery if WorldCom's Motion for Summary Judgment is granted.[2]

---

ANY OTHER THEORY WITHOUT REGARD TO WHETHER SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

Id. at Ex. A, UC Contract § 11.

[2] Parus Holdings further contends that WorldCom must search the files of all Debtors involved in this proceeding for responsive documents even though WorldCom and Intermedia are the only

(footnote continued)

4

A 01924

<u>ARGUMENT</u>

I.    **PARUS HOLDINGS HAS REFUSED TO CONSIDER ANY REASONABLE PROPOSAL FOR THE RETRIEVAL AND REVIEW OF WORLDCOM'S DOCUMENTS.**

    A.    **WorldCom Disagrees With Parus Holdings' Characterization Of Counsels' Communications Regarding Document Production.**

Over 15 pages of Parus Holdings' motion is dedicated almost exclusively to a detailed recitation of telephone calls, emails and letters that counsel for the parties exchanged regarding WorldCom's document production. See generally Parus Holdings' Motion at 5-23. WorldCom disagrees with Parus Holdings' characterization of the parties' counsel's communications, but also believes that a recitation of its version of the communications would be counter-productive. The correspondence between the parties' counsel speaks for itself and demonstrates that WorldCom at all times has acted in good faith in an effort to resolve the issues related to its document production.[3]

---

two Debtors with any relationship to Parus Holdings' claims. See Parus Holdings' Motion at 10 (¶ 25) ("Debtors had an obligation to produce any and all responsive documents . . . [from] any and all of the WorldCom Debtors as well as their officers, directors, employees, partners, corporate parent subsidiaries or affiliates.") This unreasonable demand for irrelevant information only broadens the scope of Parus Holdings' requests.

[3]  Although resolved before Parus Holdings filed its Motion, Parus Holdings complains at length that WorldCom would not agree to an extension of Parus Holdings' deadline to designate experts until after WorldCom completed its document production. See, e.g., Parus Holdings' Motion at 8 (¶¶ 19-21). WorldCom's position was based on its understanding that Parus Holdings' experts would opine solely regarding EffectNet's alleged damages, and it was therefore unclear how WorldCom's or Intermedia's documents could relate to this issue. See June 1, 2005, letter from Mr. Bigus to Mr. Wood (Ex. A). WorldCom requested that Parus Holdings provide further information regarding the requested extension including the proposed new deadline, the subjects on which the Parus Holdings' experts will testify and the number of its experts. See June 16, 17 and 19, 2005, emails from Mr. Bigus to Mr. Wood (Ex. B). Parus Holdings eventually provided information generally describing the subjects on which its experts will testify. See June 20, 2005, email from Mr. Wood to Mr. Bigus (Ex. C). WorldCom then proposed a 120-day extension for Parus to designate its experts with the understanding that, if the extension were inadequate, the deadline could be revisited towards the end of the 120 days. See June 29, 2005,

(footnote continued)

5

A 01925

**B. WorldCom Has Made Good Faith Proposals For Resolving Issues Related To The Retrieval And Review Of Responsive Documents.**

Parus Holdings' Motion ignores that Intermedia's documents were boxed and its computer system dismantled long before Parus Holdings filed its document requests in this proceeding. The Intermedia documents are warehoused in over 10,000 boxes in Florida, Mississippi, Virginia and Colorado. See Declaration of Donald C. Ramsay ("Ramsay Declaration") ¶ 2 (Ex. E). Based on a written estimate by Iron Mountain, WorldCom's warehouse provider, it would cost $149,000 to retrieve the 10,000 boxes, ship them to the Kansas City Iron Mountain facility, obtain space in that facility for review of the documents and return them to storage. Id. This bid covers only the logistical costs for making the boxed documents available for review. Id. It does not cover the costs of reviewing those documents by qualified personnel, sorting any responsive documents into appropriate categories and preparing a privilege log. Id. The costs associated with these substantive tasks could easily approximate or exceed the $149,000 cost for the logistical aspects of the document production. Id.

1. **WorldCom offered Parus Holdings the opportunity to select boxes from the indexes for WorldCom's review or access to the depositories so that Parus Holdings could conduct its own review.**

Given the costs associated with the retrieval and review of the Intermedia documents, WorldCom offered to provide Parus Holdings with the indexes for the boxes and allow Parus Holdings to select which of the boxes it would like WorldCom to review. See May 31, 2005, and June 9, 2005, letters from Mr. Bigus to Mr. Wood (Exs. F and G). Parus Holdings' counsel eventually agreed to review the indexes. See June 14, 2005, email from Mr. Wood to Mr. Bigus

---

email from Mr. Bigus to Mr. Wood (Ex. D). Thus, Parus Holdings' complaints regarding this extension were moot before it filed the current motion to compel. See Parus Holdings' Motion at 18 (¶ 43).

A 01926

(Ex. H).  Although the indexes are not overly detailed or precise, they certainly are not "useless," as Parus Holdings now suggests.  See Parus Holdings' Motion at 16 (¶ 38).  On the contrary, as Parus Holdings' counsel previously acknowledged, the indexes can be used, at a minimum, to identify and rule out many boxes that are unrelated to this action.  See June 27, 2005, letter from Mr. Wood to Mr. Bigus (Ex. I) (stating that the content descriptions in the index are "either too general, *obviously nonresponsive*, or otherwise meaningless to [Parus Holdings]." (emphasis added)).  Parus Holdings' counsel, however, refused to identify any boxes on the index for WorldCom to review.  Id.  WorldCom then offered Parus Holdings access to all of the Intermedia boxes so that it could conduct its own review.  See June 28, 2005, email from Mr. Bigus to Mr. Wood (Ex. J).  Parus Holdings refused this offer as well.  Id.

   WorldCom's offers to Parus Holdings were made in good faith, and were reasonable under the circumstances and appropriate under the law.  Pursuant to Fed. R. Civ. P. 34, WorldCom is permitted to produce documents as they are maintained in the normal course of business.  Parus Holdings cites to several cases claiming that documents may not be produced by simply making files available for the requesting party's review.  Parus Holdings' Motion at 25-28 (¶¶ 58-59, 63).  But only one of those cases, Hagemeyer North America v. Gateway Data Science Corporation, 222 F.R.D. 594 (E.D. Wis. 2004), see Parus Holdings' Motion at 26 (¶ 58), is relevant, and it actually supports WorldCom's position.  In Hagemeyer, the court held, under circumstances similar to those presented here, that a company may simply make its boxes of documents available for the requesting party's review.  The court in Hagemeyer noted that a producing party may not attempt to "hide a needle in a haystack." Id. at 598.  However, the court found that, because the producing party's documents were stored in a storage facility for a number of years in labeled boxes (as is the situation here), the producing party had not

7

A 01927

deliberately attempted to hide responsive documents among non-responsive documents. Id. The court then concluded that the producing party properly had produced the documents as they were kept in the usual course of business by making the boxes of documents available for the requesting party's inspection. Id. A similar conclusion was reached in Dangler v. New York City Off Track Betting, No. 95CV8495, 2000 WL 1510090 (S.D.N.Y. Oct. 11, 2000). The court in Dangler refused to make the defendants organize responsive documents finding that, at the time of the request, "the defendants were keeping the documents in dozens of boxes, and if the documents were disorganized it was not because the defendants maliciously messed them up." Id. at *1.[4]

Thus, even under the relevant authority Parus Holdings cites, WorldCom's proposed methods for producing documents were legally supported and appropriate under the circumstances.

2.    **WorldCom offered to retrieve and review the Intermedia documents provided that Parus Holdings shared in the cost of retrieval.**

Although WorldCom produced its documents in accordance with Rule 34 by providing Parus Holdings access to the Intermedia documents, it continued to search for a method of production that would be acceptable to both parties. WorldCom next offered to retrieve and review the Intermedia documents itself provided that Parus Holdings split the costs of retrieving the documents. See June 29, 2005, email from Mr. Bigus to Mr. Wood (Ex. K); July 1, 2005,

---

[4]  Parus Holdings asserts that the court's ruling in Chemtex, LLC v. St. Anthony Enterprises, No. 03Civ4263, 2004 WL 764781 (S.D.N.Y. 2004 April 9, 2004), is "virtually on all fours with the case at bar." See Parus Holdings' Motion at 28 (¶ 63). However, the court's opinion does not reflect whether the responding party was an ongoing company or defunct like Intermedia. Without this information, there is no basis to assume that Chemtex is on point. The court's holding in Hagemeyer, which Parus Holdings cites with approval, provides the more helpful analysis under the facts presented.

8

A 01928

emails from Mr. Wood to Mr. Bigus (Ex. L). Parus Holdings refused this proposal too, and filed its motion to compel. See Parus Holdings' Motion at 19-20 (¶ 45). But, as discussed *infra* pp. 13-17, if WorldCom is required to review the over 10,000 boxes of Intermedia documents, then the application of Fed. R. Civ. P. 26(c), which protects a party from undue burden or expense, and applicable case law require that Parus Holdings share in the cost of WorldCom's document production.

C.    **WorldCom Has Selected And Will Review Those Intermedia Boxes That May Contain Responsive Documents.**

As further evidence of its good faith, WorldCom is undertaking one more attempt to offer a reasonable compromise with regard to the Intermedia documents. Using the document indexes, WorldCom has identified 387 of the over 10,000 boxes of documents in the Florida, Virginia and Colorado depositories that – either based on the date or subject matter description listed on the index or the lack thereof – may contain responsive documents.[5] Ramsay Declaration ¶ 3 (Ex. E). These boxes are being shipped to WorldCom's counsel's office to avoid the costs associated with using depository space for review and travel, and to ensure that the

---

[5] The contract at issue is dated November 20, 2000. See Parus Holdings' Motion at 2 (¶ 6). The contract was terminated by EffectNet on April 12, 2002. See March 25, 2002, letter from Mr. McConnell to Mr. Bacon (Ex. M). WorldCom has not retrieved boxes that are dated before January 1, 2000, unless it appears based on their description that they may contain potentially responsive documents. Ramsay Declaration ¶ 3 (Ex. E).

A 01929

boxes will remain easily accessible throughout this case. Id. ¶ 4.[6] WorldCom's counsel already

has received some of these boxes and is reviewing them. Id.[7]

The use of the date and subject matter (or the lack thereof) as selection criteria should

ensure that all potentially responsive documents are reviewed. Parus Holdings could have

selected boxes for WorldCom to review using this same criteria months ago, but declined to

make any selection at all. There is no basis to assume that a search of the thousands of

remaining boxes of Intermedia documents, which are either outside the relevant time frame or

are unrelated to the subject of Parus Holdings' claims, will likely unearth any truly relevant

information. As a result, WorldCom should not be required to undertake a burdensome and

costly search of these boxes. See Fletcher v. Atex, Inc., 156 F.R.D. 45, 54-55 (S.D.N.Y. 1994)

(holding that it is a rare case where a litigant will be required to go through the "proverbial

haystack in search of a needle"). The Court should determine that the review of the 387 boxes

coupled with WorldCom's offer to make all Intermedia documents available for Parus Holdings'

own review constitutes a good faith production of Intermedia's documents.

## II.    IF WORLDCOM IS REQUIRED TO REVIEW ALL INTERMEDIA BOXES, THEN DISCOVERY SHOULD BE STAYED PENDING THE COURT'S RULING ON WORLDCOM'S MOTION FOR SUMMARY JUDGMENT.

WorldCom should not be required to retrieve and review all of the Intermedia boxes

given that the indexes provide a reasonable basis for selecting the boxes that should be reviewed.

If, however, the Court believes that a review of all Intermedia documents may be necessary, the

---

[6] Consistent with its discovery objections, WorldCom does not intend at this time to retrieve and review Intermedia boxes that, based on the subject matter and/or time period described on the indexes, are unrelated to this action. Id. ¶ 3.

[7] WorldCom also is continuing its efforts to locate any additional sources of its own paper and electronic documents that may be responsive to Parus Holdings' document requests. Ramsay Declaration ¶ 7 (Ex. E).

A 01930

Court should stay discovery pending its ruling on WorldCom's Motion for Summary Judgment.[8]

As explained in WorldCom's motion, Parus Holdings' tort claims fail as a matter of law and no

discovery is required from WorldCom regarding the remaining contract claim. See supra pp. 2-

4; see also WorldCom's Motion for Summary Judgment and Memorandum in Support (Docket

Nos. 16645 and 16646). Most of Parus Holdings' document requests seek documents related to

the liability and damages aspects of its tort claims. See supra pp. 4-5 (identifying Parus

Holdings' document requests). These requests will be outside the scope of proper discovery if

WorldCom prevails on its Motion for Summary Judgment. In light of the costs associated with

the retrieval and review of all Intermedia documents, a stay of discovery is warranted until the

Court determines whether Parus Holdings' tort claims may even proceed.[9]

Fed. R. Civ. P. 26(c) authorizes the Court to stay discovery upon a finding of good cause.

See Johnson v. New York Univ. School of Education, 205 F.R.D. 433, 434 (S.D.N.Y. 2002)

---

[8]  WorldCom proposed to Parus Holdings that the parties seek a stay pending the Court's ruling. See July 7, 2005, letter from Mr. Bigus to Mr. Wood (Ex. N).

[9]  A stay is particularly warranted given the costs WorldCom also faces with respect to Intermedia's electronic documents. WorldCom has located 483 monthly backup tapes for Intermedia, which includes 378 monthly backup tapes for the period January 1, 2000, through December 31, 2002, and 105 email backup tapes for the same period. Declaration of Julio O. Valdes ¶ 4 (Ex. O). It is estimated that there may be 15 gigabytes of data per backup tape, for a total of approximately 7,245 gigabytes of data. Id. ¶ 4. This would be the equivalent of approximately 7.245 terabytes of data. Id. Just a single terabyte of data is the equivalent of 500 billion typewritten pages. See Hagemeyer, 222 F.R.D. at 601. Based on the assumptions that all 483 of the backup tapes will be searched, that only 2% of the stored data will be responsive to Parus Holdings' document requests and that electronic searches will be conducted by name of individual and key words, WorldCom received bids from vendors ranging from $496,140 to $2,188,825 to perform the work. Ramsay Declaration ¶ 6 (Ex. E). None of these bids account for review of the retrieved documents and preparation of necessary logs by qualified legal personnel. Id. Although Parus Holdings' Motion states that it does not address electronic discovery, Parus Holdings' document requests do seek discovery of electronically stored documents. See Parus Holdings' Motion at 30-31 (¶ 68), and Ex. G (Request No. 2). The costs WorldCom faces in producing electronic discovery would be staggering.

A 01931

(granting stay, and considering "the breadth of discovery sought and the burden of responding to it"); <u>Spencer Trask Software and Information Services LLC v. RPost Int'l Ltd.</u>, 206 F.R.D. 367, 368 (S.D.N.Y. 2002). "Good cause may be shown where a party has filed a dispositive motion, the stay is for a short period of time, and the opposing party will not be prejudiced by the stay." <u>Spencer Trask</u>, 206 F.R.D. at 368 (holding that proceeding with discovery during pendency of a motion to dismiss "would unnecessarily drain the parties' resources"). The Court also may control the timing and sequence of discovery under Fed. R. Civ. P. 26(d). <u>Johnson</u>, 205 F.R.D. at 434. Relying on these provisions, courts have held "that a stay of discovery is appropriate pending resolution of a potentially dispositive motion where the motion 'appear[s] to have substantial grounds' or, stated another way, 'do[es] not appear to be without foundation in law.'" <u>Johnson</u>, 205 F.R.D. at 434 (quoting <u>In re Currency Conversion Fee Antitrust Litigation</u>, 2002 U.S. Dist. LEXIS 974, 2002 WL 88278, at *1 (S.D.N.Y. Jan. 22, 2002) (internal quotations omitted)). Here, as explained in WorldCom's Motion for Summary Judgment, there are indeed substantial grounds for holding that the non-contract claims of Parus Holdings' fail as a matter of law.

Absent these tort claims, the only issue in this case is the amount of damages allegedly owed by Intermedia for its breach of the contract. Based on the express provision for the dollar value of those obligations in the parties' contract, WorldCom's liability for breach of that contract is no more than $460,422.30. <u>See</u> WorldCom's Memorandum in Support of Motion for Summary Judgment at 12-15 (Docket No. 16646). This amount is far less than it will cost to undertake the production of Intermedia's documents, particularly when electronic discovery is included in the analysis. Thus, a stay of discovery pending the Court's ruling on WorldCom's Motion for Summary Judgment is in the interest of both parties because, as discussed below, if

12

discovery is required to proceed, the costs for retrieving WorldCom's documents should be shared by Parus Holdings.

### III. IF IT BECOMES NECESSARY FOR WORLDCOM TO REVIEW ALL OF INTERMEDIA'S DOCUMENTS, THEN PARUS HOLDINGS SHOULD SHARE IN THE COSTS.

Parus Holdings asserts that it has incurred substantial expense in producing 23,000 pages of documents to WorldCom and, consequently, WorldCom should bear the entire cost of retrieving its own paper documents. See Parus Holdings' Motion at 16-17, 30 (¶¶ 39, 67). Parus Holdings overstates the breadth of its production by failing to note that it produced the equivalent of only 10 boxes of documents containing numerous duplicates, and that the documents appear to be from a single employee. More importantly, however, the efforts undertaken by Parus Holdings to produce 10 boxes of documents are not determinative of whether Parus Holdings should share in the costs if WorldCom is required to retrieve and review the over 10,000 boxes of Intermedia documents.

Fed. R. Civ. P. 26(c) gives the Court broad authority to protect a party from undue burden or expense by ordering relief ranging from a complete bar of the discovery to reasonable restrictions. Under Rule 26(c), the Court may impose limits on the scope of the discovery by weighing the benefits against the burden of the discovery, and may shift the costs of discovery. Mitchell v Fishbein, 227 F.R.D. 239 (S.D.N.Y. 2005); Zubulake v UBS Warburg, 217 F.R.D. 309 (S.D.N.Y. 2003) (Zubulake I); see also Hagemeyer, 222 F.R.D. at 601 (holding that Rule 26 gives the court broad discretion to create any order that would spare a party undue burden or expense, including orders shifting the cost of production).

Cost-shifting should be considered when discovery imposes an undue burden or expense on the requesting party. Zubulake I, 217 F.R.D. at 318. Whether production of documents is unduly burdensome or expensive turns primarily on whether the documents are kept in an

13

A 01933

accessible or inaccessible format, "a distinction that corresponds closely to the expense of production." Id. at 318.  Here, there is no question that the Intermedia documents are "inaccessible" as that term is defined in Zubulake I because they are not indexed in a manner that matches the issues in this action.  See id. at 318 (paper documents may be inaccessible when the indexing or lack of thereof makes searches impractical).  The electronic documents are similarly inaccessible because they cannot be retrieved and restored without incurring substantial costs. See id. at 319 (holding that backup tapes are inaccessible); see also Ramsay Declaration ¶ 6 (Ex. E).

Parus Holdings has indicated a willingness to discuss cost-shifting as to WorldCom's electronic documents, but refuses to share in the costs of retrieving WorldCom's paper documents.  See Parus Holdings' Motion at 30 (¶ 66).  Cost-shifting, however, may be ordered with respect to paper documents too.  In fact, although electronic discovery was at issue in Zubulake I, the court did not limit cost-shifting to electronic data.  Id.  The court noted that paper documents also may be inaccessible if, among other things, the documents are "in storage in a difficult to reach place," or "kept haphazardly with no indexing system, in quantities that make page-by-page searches impracticable."  Id.; see Multitechnology Services, L.P. v Verizon Southwest, No. 4:02-CV-702, 2004 WL 1553480, at *1-2 (N.D. Tex. July 12, 2004) (holding that the court has authority to shift costs regardless of whether the information sought is available on paper or electronically).

A.    **Application of the Zubulake I Factors to the Present Circumstances Favors Shifting a Substantial Portion of Discovery Costs to Parus Holdings.**

In Zubulake I, the court held that the following factors should be considered in determining whether discovery costs should be shifted to or shared by the requesting party:

1.    The extent to which the request is specifically tailored to discover relevant information;

14

A 01934

2.      The availability of such information from other resources;

3.      The total cost of production compared to the amount in controversy;

4.      The total costs of production compared to the resources available to each party;

5.      The relative ability of the parties to pay the costs and their incentive to do so;

6.      The importance of the issues at stake in the litigation; and

7.      The relative benefits to the parties of obtaining the information.

Zubulake I, 217 F.R.D. at 321-24.[10]  Applying the Zubulake I factors to the inaccessible

documents in this case demonstrates that cost-shifting is warranted:

Factors 1 and 2 -- The extent to which the requests are tailored to discover relevant

information and the availability of such information from other resources.  The court identified

these as the two most important factors in determining the cost-shifting issue.  Zubulake I, 217

F.R.D. at 318.  The less likely it is that the documents contain information relevant to a claim or

defense, the more unjust it would be to make the responding party search for the documents at its

own expense.  Id.  In this case, Parus Holdings' document requests relate primarily to its tort

claims and can fairly be described as a "fishing expedition."  For as Parus Holdings concedes, its

tort claims of civil conspiracy and tortious interference with contract are simply based on the

"juxtaposition" of the timing of Intermedia's breach of the UC Contract and WorldCom's

---

[10]  Zubulake modified a list of factors previously articulated by the court in Rowe Entertainment, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421 (S.D.N.Y. 2002).  Courts in other jurisdictions have used the factors articulated in Rowe and Zubulake to resolve cost-shifting issues, often resulting in cost-shifting for the costs of restoring and searching backup tapes.  See, e.g., Wiginton v CB Richard Ellis, Inc., No. 02C6832, 2004 WL 1895122, at *8 (N.D. Ill. Aug. 10, 2004) (holding that plaintiff required to pay 75% of costs restoring backup tapes, searching data and transferring data to electronic viewer); Murphy Oil v Fluor Daniel, Inc., Case No. 99-3564, 2002 WL 246439, at *8-9 (E.D. La. Feb. 19, 2002) (holding that costs of restoring email backup tapes shifted to requesting party); Byers v. Illinois State Police, No. 99C8105, 2002 WL 1264004, at *10-12 (N.D. Ill. June 3, 2002) (holding that plaintiffs were entitled to archived email only if they were willing to pay the costs).

15

A 01935

negotiations of the MASL with EffectNet's sister company, Webley. See Response and
Opposition of Parus Holdings, Inc. to Debtors' First Amended Objection to All Proofs of Claim
by EffectNet, Inc. at 2-3 (¶¶ 3-7) (Docket No. 16247). Nevertheless, Parus Holdings seeks broad
discovery on all documents concerning the MASL and all efforts by WorldCom to develop or
obtain unified messaging products. See supra pp. 4-5 (describing Parus Holdings' document
requests).

In addition, by reviewing those boxes identified on the indexes that may contain
responsive documents, WorldCom already will have reviewed the likely sources of documents.

Factors 3, 4 and 5 – Cost issues. The court's ruling in Zubulake I groups factors 3, 4 and
5 together into a category referred to as "cost issues:" "'How expensive will this production be?'
and, 'Who can handle that expense?'" Zubulake I, 217 F.R.D. at 323. These factors also mitigate
in favor of cost-shifting in this case. WorldCom is responding to claims as a debtor in a
bankruptcy proceeding. The estimated costs responding to Parus Holdings' document requests
are extremely high (see supra pp. 6, 11 n.9)–equaling or exceeding the probable amount of
recovery to be obtained by Parus Holdings under its single, viable contract claim. See Parus
Holdings' Response ¶ 38; WorldCom's Memorandum in Support of Motion for Summary
Judgment at 12-15 (Docket No. 16646).

Factors 6 and 7 – The importance of the issues at stake in the litigation and the benefit to
the parties of retrieval. These factors also favor cost-shifting. This action involves a business
dispute and nothing more. Compare Zubulake I, 217 F.R.D. at 321 (describing actions involving
"important issues" as including toxic tort class actions, environmental actions, and "so called
'impact' or social reform litigation"). Also, WorldCom has no business purpose for retrieving

16

A 01936

these documents. Any benefit of retrieval will be derived solely by Parus Holdings, which hopes to use the documents in the litigation.

Application of the Zubulake factors to the circumstances of this case overwhelmingly favors shifting to Parus Holdings a substantial percentage of the costs related to responding to its document requests.[11]

## IV.    PARUS HOLDINGS IS NOT ENTITLED TO AN AWARD OF ATTORNEY'S FEES.

Parus Holdings has failed to provide any factual or legal support for its request for an award of the attorney's fees incurred in filing its motion. See Parus Holdings' Motion at 32-33 (requesting an award of attorney's fees without discussion of the factual or legal basis that would support such an award). WorldCom has not disregarded any orders of this Court. It timely responded to Parus Holdings' document requests. It has attempted in good faith to resolve issues related to the complicated process of identifying, retrieving and reviewing the large quantities of documents belonging to a company that ceased doing business long before Parus Holdings filed its claim. Under these circumstances, there is no basis for awarding Parus Holdings its attorney's fees. See, e.g., Zappia Middle East Constr. Co. v. Emirate of Abu Dhabi, No. 94CIV1942, 1995 WL 686715, at *9 (S.D.N.Y. Nov. 17, 1995) (holding that the opposition to the plaintiff's motion to compel was plainly justified in light of the circumstances and, thus, sanctions were not warranted); New Colt Holding Corp. v. RJG Holdings of Florida, Inc., No. 3:02 CIV173, 2003 WL22327167, at *3 (D. Conn. June 17, 2003) (holding that sanctions are appropriate for "especially serious disregard of the obligations imposed by the discovery rules" and that,

---

[11]  WorldCom does not seek a determination of that percentage at this time. Instead, it respectfully suggests that such a determination await the Court's ruling on whether discovery is to be stayed. If the Court determines that discovery is to proceed, allocation of costs to undertake that discovery would then be ripe for decision.

A 01937

although defendants' objection to interrogatories were overruled, they did not provide a basis for sanctions).

## CONCLUSION

For the reasons set forth herein, Parus Holdings' Motion to Compel and to Extend Discovery Deadlines should be denied. WorldCom has fulfilled its obligations to produce documents by making the Intermedia documents available for Parus Holdings' review and, further, by using the document indexes to identify and review those boxes of Intermedia documents that may contain responsive documents. If WorldCom is required to retrieve and review all of the over 10,000 boxes of Intermedia documents, then discovery should be stayed until the Court determines whether Parus Holdings' tort claims may proceed as a matter of law. Further, if it becomes necessary to undertake such a review, then Parus Holdings should be ordered to share in the costs of that production. Finally, Parus Holdings' request for an award of attorney's fees should be denied because WorldCom has not disregarded any discovery order of this Court nor has it refused to produce documents.

Respectfully submitted,

STINSON MORRISON HECKER LLP

By:   _s/Robert L. Driscoll_____
      Robert L. Driscoll
      Lawrence W. Bigus
      1201 Walnut Street, Suite 2800
      Kansas City, MO  64106
      (816) 842-8600 – Telephone
      (816) 691-3495 – Facsimile

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION

18

A 01938

**CERTIFICATE OF SERVICE**

I hereby certify that on August 4, 2005, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all parties receiving electronic means.

_s/Robert L. Driscoll_
Attorney for Debtors

DB02/048629 0094/6730218.2

A 01939

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Lawrence W. Bigus, Esq.
1201 Walnut Street
Kansas City, MO  64106
Telephone:  (816) 842-8600
Facsimile:  (816) 691-3495
Attorneys for Debtors and Debtors in Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                                  :
                                                       :        Chapter 11 Case No. 02-13533 (AJG)
WORLDCOM, INC., et al.,                                :
                                                       :        (Jointly Administered)
                              Debtors.                 :
-------------------------------------------------------x

### APPENDIX OF EXHIBITS TO WORLDCOM'S RESPONSE AND OPPOSITION TO CLAIMANT'S MOTION TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS AND TO EXTEND DISCOVERY DEADLINES

| Exhibit | Description |
| --- | --- |
| A. | June 1, 2005 letter from Mr. Bigus to Mr. Wood |
| B. | June 16, 17 and 19, 2005 e-mails from Mr. Bigus to Mr. Wood |
| C. | June 20, 2005 e-mail from Mr. Wood to Mr. Bigus |
| D. | June 29, 2005 e-mail from Mr. Bigus to Mr. Wood |
| E. | Declaration of Donald C. Ramsay |
| F. | May 31, 2005 letter from Mr. Bigus to Mr. Wood |
| G. | June 9, 2005 letter from Mr. Bigus to Mr. Wood |
| H. | June 14, 2005 e-mail from Mr. Wood to Mr. Bigus |
| I. | June 27, 2005 letter from Mr. Wood to Mr. Bigus |
| J. | June 28, 2005 e-mail from Mr. Wood to Mr. Bigus |
| K. | June 29, 2005 e-mail from Mr. Bigus to Mr. Wood |
| L. | July 1, 2005 e-mails from Mr. Wood to Mr. Bigus |

A 01940

M.        March 25, 2002 letter from Mr. McConnell to Mr. Bacon

N.        July 7, 2005 letter from Mr. Bigus to Mr. Wood

O.        Declaration of Julio Valdes

A 01941

# EXHIBIT A

A 01942



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 1, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

Re:    Extension of Deadlines
       In re WorldCom, Inc. - Chapter 11
       Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

You have written and called with a request that the deadlines set in the scheduling order be extended for a second time. As you are aware these deadlines were extended once before due to the needs of your clients. You are now requesting that the deadline for Claimants to name experts be extended and have verbally indicated that all scheduling order deadlines should be extended.

As we indicated to you we do not understand why the deadline to name experts needs to be extended. You have indicated that the experts are primarily on the subject of your clients damages. It appears to us that your client should be able to determine its damages without the need to examine the documents that Intermedia and MCI are in the process of producing for your review. Part of your client's claim is based on breach of contract. The contract involved contains terms which allow the damages to be calculated from the face of the contract. The remaining part of your client's damages is based on tort theories most of which relate back to the breach of the contract. It seems to us that your client's records establish their lost profits and damages rather than the Debtor's records.

The Debtors need to get this case tried and behind them. At this time it is our desire to move this case to trial as expeditiously as possible. Continually extending deadlines will not accomplish that goal. Furthermore, your clients have had plenty of time to pursue hiring experts on the issue of damages.

Based on the above we are not able to agree to your request to extend the applicable deadlines. If you file a motion to extend deadlines we will oppose the motion.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

LWB:lag

6593760.1

**Exhibit A**

**A 01943**

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Gagliardi, Lisa |
| **Sent:** | Wednesday, June 01, 2005 2:54 PM |
| **To:** | 'swood@kelleydrye.com' |
| **Cc:** | Bigus, Lawrence; Ramsay, Donald |
| **Subject:** | WorldCom, Inc. - Parus Holdings, Inc. |
| **Attachments:** | Ltr to Steve Wood re extension of expert witness deadline.DOC¤; Ltr to Steve Wood re doc production by debtors - MCI _ EffectNet.DOC¤ |

Attached hereto please find two (2) letters from Larry Bigus regarding the above.


**Lisa Gagliardi**
**Legal Secretary**
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008
Direct Dial Phone:  (913)344-8051
Direct Dial Fax:  1(888)759-6979

7/19/2005

A 01944

# EXHIBIT B

A 01945

## Gagliardi, Lisa

**From:**   Wood, Stephen [SWood@KelleyDrye.com]

**Sent:**   Thursday, June 16, 2005 12:58 PM

**To:**   Bigus, Lawrence

**Cc:**   Friedman, Robert; Krolewski, Martin A.

**Subject:** RE: Scheduling Order Deadlines in Parus v. MCI

I appreciate your consideration of this request. With regard to the time, its more a matter of properly sequencing discovery and setting up the deadline for expert disclosures once fact discovery, to include depositions of the current/former employees of debtors, is substantially underway. So, the deadline should allow sufficient time to review debtors' documents and take some of the depositions of the current/former employees of debtors. I am happy to discuss with you a reasonable time period.

I am not absolutely certain of the number of experts I would like to call at trial. However many there are, the issue again is permitting them access to the factual record to include debtors' documents and witnesses in advance of the disclosure deadline. Again, I could better assess the requirement after conducting fact discovery. Whatever estimate I give you now is subject to change after I have reviewed your documents and taken depositions of persons involved in the events.

With regard to subject matters, we have addressed this to some degree in our June 6th letter to the court requesting an informal conference. Do you need more information than this?

I am likely out most of tomorrow, but will be in the office Monday morning.

> -----Original Message-----
> **From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
> **Sent:** Thursday, June 16, 2005 9:13 AM
> **To:** Wood, Stephen
> **Cc:** Befort, Jeff; Ramsay, Donald
> **Subject:** Scheduling Order Deadlines in Parus v. MCI
>
> You have asked for an extension of time to name experts in the above referenced case. You have not indicated how much time you want. At this time we are considering your request. You claim that you need the extension because you cannot name experts on the subject of Claimant's damages until you review Debtor's documents. In order to help us understand why you need the additional time please provide us with the following information:
>
> 1.   How much time you are seeking.
>
> 2.   The subjects on which you intend to have experts testify.
>
> 3.   How many experts you intend to have testify.
>
> Upon receipt of the above information we will discuss the request for extended deadlines with our client. If we receive the information today we should be in a position to discuss your request with you either tomorrow or early Monday. Thank you in advance for sending the information.
>
> Lawrence W. Bigus
> 9200 Indian Creek Parkway Suite 450
> Overland Park, KS. 66210
> Direct Dial: 913 344 8026
> Fax: 888 873 4847                              Email: lbigus@stinsonmoheck.com

7/18/2005                                                                    **Exhibit B**

A 01946

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender. This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use. * * * * * * * * * For more information about KELLEY DRYE & WARREN LLP please visit our website at http://www.kelleydrye.com.

7/18/2005

A 01947

**Gagliardi, Lisa**

**From:** Bigus, Lawrence
**Sent:** Friday, June 17, 2005 2:02 PM
**To:** swood@kelleydrye.com
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** scheduling order extensions

Please respond to my email from yesterday so that we can make a decision on whether we are willing to agree to an extension of these deadlines. It is impossible to agree to something when we do not know what the something is: i.e. what is the new deadline and the experts that you want this extension to apply to.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                     Email: lbigus@stinsonmoheck.com

A 01948

**Gagliardi, Lisa**

| | |
|---|---|
| **From:** | Bigus, Lawrence |
| **Sent:** | Sunday, June 19, 2005 10:25 AM |
| **To:** | swood@kelleydrye.com |
| **Cc:** | Ramsay, Donald; Befort, Jeff |
| **Subject:** | Parus Request for Scheduling Order Extension |

You have failed to provide us information which is absolutely pertinent and necessary in order to analyze your request for an extension of deadlines contained in the amended scheduling order. We do not understand how you can expect either the Court or our client to consider an extension to the deadlines in the amended scheduling order without providing such basic information as the proposed new date and/or what experts you may designate by the new date. Please provide this information ASAP.

As you have been aware for sometime I will be out of the office on a business trip for MCI on Monday and Tuesday. I will try to stay in touch by email and voice mail so that if you decide to provide the necessary information our client can consider your request before the hearing on Wednesday. Please provide the necessary information by return email.

Thank you for your attention to this matter.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                              Email:  lbigus@stinsonmoheck.com

7/18/2005

**A 01949**