# EXHIBIT C

A 01950

## Gagliardi, Lisa

**From:** Wood, Stephen [SWood@KelleyDrye.com]

**Sent:** Monday, June 20, 2005 4:56 PM

**To:** Bigus, Lawrence

**Cc:** Friedman, Robert; Krolewski, Martin A.

**Subject:** RE: Parus Request for Scheduling Order Extension

As I indicated on Thursday, it is difficult to be precise regarding expert requirements when we have yet to look at the debtors' documents or take the depositions of their current and former employees. Some of our expert witnesses may be obviated by testimony from WorldCom employees.

The subjects of testimony include but are not limited to, as I've indicated before, the value of the take-or-pay minimum obligation in the contract, the value of the contract beyond the take-or-pay, the WorldCom business model for Unified Communications, projections regarding the market for Unified Communications products, the EffectNet/Webley business model, the investment climate at the relevant time generally and in the telecom industry specifically, and the impact of contract breach and other actions on the EffectNet/Webley business (which encompasses damages and causation).

I would estimate that we may need 4 to 5 experts to cover these subjects, but this is a rough estimate since we need to review the documents and take depositions of WorldCom personnel regarding those documents to accurately assess our expert witness requirements. As I said above, some of these topics may be covered by WorldCom employees.

As for timing, that depends to a very large degree on you and how long it takes you to produce documents. As we've discussed before, document production should be complete before we take depositions to avoid unnecessarily redeposing witnesses. Once your document production is complete, I need a minimum of 75 days to take depositions of WorldCom employees before we have to disclose experts, assuming we can efficiently locate witnesses and take their depositions. Assuming hypothetically that your production is essentially complete by the end of August, an optimistic estimate since you have 10,000 boxes of documents, we would like until mid-November to disclose experts. If you were able to complete your document production by the end of July, I would need until mid-October. This is comparable to the time frame envisioned under the scheduling order entered in January 2005.

We are in the process of reviewing your indexes and have not yet determined whether they are helpful. We will advise you shortly regarding this review.

-----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Sunday, June 19, 2005 10:25 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Befort, Jeff
**Subject:** Parus Request for Scheduling Order Extension

You have failed to provide us information which is absolutely pertinent and necessary in order to analyze your request for an extension of deadlines contained in the amended scheduling order. We do not understand how you can expect either the Court or our client to consider an extension to the deadlines in the amended scheduling order without providing such basic information as the proposed new date and/or what experts you may designate by the new date. Please provide this information ASAP.

As you have been aware for sometime I will be out of the office on a business trip for MCI on Monday and Tuesday. I will try to stay in touch by email and voice mail so that if you decide to provide the necessary information our client can consider your request before the hearing on Wednesday. Please provide the necessary information by return email.

7/18/2005

**Exhibit C**

A 01951

Thank you for your attention to this matter.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                          Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

7/18/2005

A 01952

# EXHIBIT D

A 01953

## Gagliardi, Lisa

**From:** Bigus, Lawrence
**Sent:** Wednesday, June 29, 2005 10:16 AM
**To:** Wood, Stephen
**Cc:** Ramsay, Donald; Bigus, Lawrence; Befort, Jeff
**Subject:** Extension of Scheduling Order Deadlines

This email is to confirm the discussion that we had this morning concerning the issue of extending scheduling order deadlines. We proposed that the deadline for your clients to name experts be extended 120 days and that the amended scheduling order contain a statement indicating that: 1) you need to review documents being produced by MCI/Intermedia prior to naming experts; 2) it may take time to accomplish the review given disagreements as to the method of review, who pays the costs of the review, and related issues which might delay review; and 3) that if the review is not completed in time to name experts the deadline may need to be extended again. You indicated that you needed to consider this proposal. Obviously, the other deadlines in the scheduling order will need to be extended accordingly.

As you are aware we have produced the documents by making them available for your review and telling you where they are located. You may go to the depositories at any time and review these documents. The depositories will charge you to pull the boxes from the shelves and then to return the boxes to the shelves (we currently believe this cost will be around $2.00 per box but do not have firm estimates). Please advise as to the dates that you want to go to the depositories and review the documents. Upon receiving your selected dates we will instruct the depositories to expect you and to allow you to review the documents. We will review the documents as they are given to you in order to make sure that nothing is being produced which is protected by the attorney client privilege and/or work product doctrines.

We would like to continue to discuss with you the cost shifting issues. As we have indicated to you we will write you a letter on this issue in the near future. After receiving our letter we expect that you will give us the courtesy of writing a return letter with your position. After that we can determine whether there is room for agreement or this is an issue that needs presenting to the court. We both need to keep an open mind on the cost shifting issue until we each have the benefit of receiving in writing a full analysis of each other's position.

Please be assured that it is our intention to allow you to review all of the documents except for documents which are protected as indicated above. MCI/Intermedia is actually willing to produce more documents then you have requested. We are not trying to hide anything but rather are willing to allow you to review everything.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                    Email: lbigus@stinsonmoheck.com

# EXHIBIT E

A 01955

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Lawrence W. Bigus, Esq.
1201 Walnut, Suite 2900
Kansas City, MO  64106
Attorney for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | CHAPTER 11 CASE |
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

## DECLARATION OF DONALD C. RAMSAY

I, Donald C. Ramsay, of lawful age and having been duly sworn, depose and state as follows:

1.      I am an attorney with the law firm of Stinson Morrison Hecker LLP.  I am one of the attorneys responsible for locating documents responsive to Claimant's First Request for Documents and for dealing with cost issues relating to the production of those documents.  I have personal knowledge of the matters set forth herein.

2.      The paper documents of Intermedia Communications, Inc. ("Intermedia") are warehoused in over 10,000 boxes in Florida, Mississippi, Virginia and Colorado. Based on a written estimate by Iron Mountain, WorldCom's warehouse provider, it would cost $149,000 to retrieve the 10,000 boxes, ship them to the Kansas City Iron Mountain facility, obtain space in that facility for review of the documents and return them to storage.  This bid covers only the logistical costs for making the boxed documents available for review.  It does not cover the costs of reviewing those documents by

**Exhibit E**

**A 01956**

qualified personnel, sorting any responsive documents into appropriate categories and preparing a privilege log. The costs associated with these substantive tasks could easily approximate or exceed the $149,000 cost for the logistical aspects of the document production.

3.    Using document indexes for the Intermedia boxes that were prepared at the time the boxes were stored, we have identified 387 of the over 10,000 boxes of documents in the Florida, Virginia and Colorado depositories that – either based on the date or subject matter description listed on the index or the lack thereof – may contain responsive documents. We have not retrieved boxes that are dated before January 1, 2000, unless it appears based on their description that they may contain potentially responsive documents. Consistent with WorldCom's discovery objections, we do not intend at this time to retrieve and review Intermedia boxes that, based on the subject matter and/or time period described on the indexes, are unrelated to this action.

4.    The 387 boxes of documents mentioned above are being shipped to the Kansas City, Missouri, office of Stinson Morrison Hecker LLP to avoid the costs associated with using depository space for review and travel, and to ensure that the boxes will remain easily accessible throughout this case. We already have received some of these boxes and are reviewing them.

5.    Julio Valdes, the Senior Manager for Production Operation of MCI and the person responsible for all Windows backup tapes for Intermedia, has advised me that there are 483 monthly backup tapes for Intermedia, which includes 378 monthly backup tapes for the period January 1, 2000, through December 31, 2002, and 105 email backup tapes for the same period. Mr. Valdes also has advised that MCI does not currently have

A 01957

the ability to search data on the Intermedia backup tapes. In order to search information on the backup tapes, the data must first be restored to a server comparable to the server from which the data was taken.

6.    We have obtained bids from third-party vendors for the retrieval of data from the Intermedia backup tapes. Based on the assumptions that all 483 of the backup tapes will be searched, that only 2% of the stored data will be responsive to Parus Holdings, Inc.'s document requests and that electronic searches will be conducted by name of individual and key words, we have received bids from vendors ranging from $496,140 to $2,188,825 to perform the work. None of these bids account for review of the retrieved documents and preparation of necessary logs by qualified legal personnel.

7.    We also are continuing our efforts to locate any additional sources of WorldCom's own paper and electronic documents that may be responsive to Parus Holdings, Inc.'s document requests.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 4, 2005.

Donald C. Ramsay

3

# EXHIBIT F

A 01959



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

May 31, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606

   Re: In re World Com - Chapter 11
      Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Stephen:

As you are aware, Intermedia and MCI have been working diligently to locate documents responsive to your Request for Production and/or which are relevant to the pending adversary case. In our responses to certain of you requests for production of documents, we agreed to produce responsive documents, subject to objections as stated, and advised you that that we are continuing to search for additional documents that might be responsive. As previously indicated, the search has been complicated by the fact that Intermedia no longer exists as a separate entity, offices have been moved to different states and certain of the people involved no longer work for MCI.

1.  Located Documents:

We have located boxes of documents in multiple locations around the country, some of which are independent storage facilities, that could possibly include responsive documents. Our client has advised that there are in excess of 10,000 boxes of documents. Our office has not reviewed or examined any of these additional documents.

2.  Imprecise Indexes:

Unfortunately, the indexes for these documents are not very precise. We have searched the indexes but have not been able to satisfy ourselves that we can determine which of the boxes of documents would be relevant and/or responsive and therefore appropriately produced for your review. This is in part because of the imprecise descriptions in the indexes and, in part, because of the very broad nature of your alleged tort claims.

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**Exhibit F**

**A 01960**

Stephen A. Wood
May 31, 2005
Page 2

3.    Proposed Procedures:

After considering several means of producing the responsive non-privileged
documents, we would like to propose what we consider to be the most efficient
means. We are open to proposals from you concerning other possible means of
efficiently producing the large number of documents that have been located.
Intermedia/MCI proposes to produce the documents pursuant to the procedures and
limitations contained in Exhibit A attached hereto.

4.    Objections Not Waived:

Intermedia and MCI will not, by following the attached procedures, have waived any
of the objections previously made to the written discovery.

5.    Production Supplements Interrogatory Answers:

Any production of documents pursuant to these procedures will be both a
supplemental production responsive to your Request for Production of Documents
and supplemental answers to interrogatories pursuant to F.R.C.P. 33(d).

As indicated, this appears to us to be the most efficient means of providing
appropriate further response to your written discovery and for producing any
documents which might have any relevancy to this adversary proceeding. Please
advise whether you would agree to this procedure and the stated limitations. If so, we
will immediately forward the indexes for your review. The procedure is, of course,
open for discussion. If there are alternatives that you would like to discuss please
advise of that as well.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

LWB:lag

Enclosure

A 01961

Stephen A. Wood
May 31, 2005
Page 3

## EXHIBIT A

## PROPOSED PRODUCTION PROCEDURES

1.      Intermedia/MCI will  provide claimants with a complete set of the indexes for the documents.

2.      Claimants will review the indexes and identify those specific boxes it wishes to review.

3.      Intermedia/MCI will then pull the boxes identified by claimants (provided they are within the relevant time frame) and review the documents for privilege and for any confidentiality obligation MCI might owe to a third party.  In some instances, the indexes themselves indicate the documents would be clearly outside the relevant time frame.

4.      Intermedia will then make available and/or produce for your review and inspection all of the documents in the designated boxes, at a suitable location, except:

        a.      Those documents identified as privileged.

        b.      Those documents, if any, for which MCI/Intermedia has a confidentiality obligation to a third party.

        c.      Those documents which, upon review of the documents themselves, are determined to be outside the relevant time frame, again January 1, 2000 to December 31, 2002.

A 01962

**Gagliardi, Lisa**

| | |
|---|---|
| **From:** | Bigus, Lawrence |
| **Sent:** | Tuesday, May 31, 2005 4:32 PM |
| **To:** | swood@kelleydrye.com |
| **Cc:** | Bigus, Lawrence |
| **Subject:** | 6590719_2.DOC |
| **Attachments:** | 6590719_2.DOC¤ |

Attached is a letter to you concerning production of the additional documents that Intermedia and MCI have located. As you are aware Intermedia and MIC have already produced hundreds of pages of documents. Please let me know your thoughts on this matter.

7/18/2005

A 01963

# EXHIBIT G

A 01964



**STINSON**
**MORRISON**
**HECKER** LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

June 9, 2005

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Ste. 2600
Chicago, IL 60606

      Re:    Document Production by Debtors
               In re WorldCom, Inc. - Chapter 11
               Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

      You complain about the lack of production by MCI and Intermedia. You first propounded discovery in February 2005 and we initially responded in March 2005. We are barley three months past the date you first propounded the discovery. It seems to us that timely producing what was immediately available, and then locating extensive additional documents less than two months later, is a diligent response to your requests for production despite your efforts to assert otherwise.

      Despite objections that we have asserted we have made it clear that we are willing to produce a large volume of documents and even let you review indexes to determine what documents you want to review. Your client's initial responses to the request for production served on them was made over seven months after the requests were served. You did not complain of the short time lapse until a hearing date was set on your Client's failure to respond for approximately 222 days. It appears to us that your complaints about the time it has taken MCI and Intermedia to produce documents is designed to take the heat off your own Client's failure to respond rather than being legitimate complaints. There is a big distinction between a total failure to respond for over 222 days and a response which produces what is available and then within two months thereafter offers to produce additional documents. We will continue to try and cooperate with you concerning this very large document production but the cooperation must go both ways in order to accomplish the task at hand.

      In the spirit of cooperation we are willing to send you the indexes to the additional documents located to date. In our opinion the indexes themselves are not discoverable and are not responsive to any of the requests made to date. Despite these beliefs we are willing to produce the indexes, based on the limited caveats set

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

**Exhibit G**

**A 01965**

Stephen A. Wood
June 9, 2005
Page 2

forth below, concerning format and issues involving attorney client privilege and work product doctrine.

The indexes themselves are very lengthy and best examined in electronic format. Therefore, we propose to send you the indexes via electronic transmission rather than in hard copy. You can always print the indexes if you desire. Because of the length of the indexes we have attempted to review them by performing electronic searches rather than reading hard copies on a line by line basis. Therefore, we are not aware of each and every entry contained in the indexes. It is our belief that there is nothing in the indexes which would waive the attorney client privilege and/or work product doctrine. Because of the fact that we are not aware of each and every line entry we ask for your agreement that producing the indexes will not waive the attorney client privilege and/or work product doctrine. If you are not willing to make such an agreement we will have no choice but to withhold the indexes until such time as our office can examine each and every line entry. Upon receipt of your agreement as set forth in the preceding paragraph we will send the indexes to you via electronic format.

We hope and trust that you will take the time to examine, review and search the indexes before demanding further action on the part of MCI and Intermedia. We also hope that you will be flexible and cooperative in proposing means by which to reasonably review the additional documents that have been located.

We are continuing to search for additional documents including both hard documents and electronic documents. As soon as we are able to determine what if any additional documents are available we will advise you accordingly. This continued search should not delay this case since there are already over ten thousand boxes of documents to deal with at the present moment.

You have filed claims against MCI and Intermedia and only these two entities. You argue that substantive consolidation means that we have a duty to produce documents in the possession of all the Debtors involved in the bankruptcy proceeding. We respectfully disagree with your position. Substantive consolidation means that the cases have been consolidated for administrative purposes. The various entities remain liable for their own debts and are not liable for each others' debts. The bankruptcy plan further establishes that the entities remain separate for purposes of assets and liabilities. Unless you can provide us with persuasive case authority, indicating that you have the right to seek discovery from all of the Debtors involved in the bankruptcy proceeding, we intend to produce those documents that MCI and/or Intermedia would have an obligation to produce in a lawsuit filed outside of the bankruptcy proceeding. The obligation does not include documents in the possession of third parties, even if the third parties are somehow related to the entities being sued.

You claim that we have a duty to review all documents before producing them for your review. We disagree with your assertion. Please review the indexes and advise as to what documents you would propose that we produce at this time. Based

6615797.1

**A 01966**

Stephen A. Wood
June 9, 2005
Page 3

on your request, after review of the indexes, we can jointly discuss the best means by which to proceed.

You have indicated that your client does not have any direct evidence of its tort allegations and that in fact the only evidence your client has at all is that MCI demanded price concessions during negotiations. Given the lack of evidence that your client has to support its tort allegations it is apparent that you are on a fishing expedition. Under the circumstances it does not seem appropriate that MCI and Intermedia should bear the costs of the fishing expedition and that your clients should be able to avoid such costs. This is basically what you are asking for when asking MCI and Intermedia to review all of the documents. MCI and Intermedia do not have an obligation to create and then produce evidence to support your client's tort claims.

You have asserted that MCI and Intermedia have an obligation to produce documents even if they have a confidentiality obligation to third parties concerning such documents. In order to produce documents protected by confidentiality agreements with third parties we will need a court order to protect the interests of MCI and Intermedia. If such documents are identified we can discuss the best means by which to obtain such an order. There is a possibility that there will be no such documents.

Rather than simply rejecting our proposal with a lot of criticisms we would have appreciated an alternative proposal that took everyone's interests into account. We look forward to receiving your agreement as set forth above concerning production of the indexes. Once you have the indexes we can discuss how to proceed from that point forward. Hopefully, we can reach agreement as to an acceptable process for production of the large volume of documents already located and any additional documents located in the future.

Sincerely,

**STINSON MORRISON HECKER LLP**

Lawrence W. Bigus

LWB:lag

6615797.1

A 01967

# EXHIBIT H

A 01968

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Wood, Stephen [SWood@KelleyDrye.com] |
| **Sent:** | Tuesday, June 14, 2005 6:05 PM |
| **To:** | Bigus, Lawrence |
| **Cc:** | Friedman, Robert; Krolewski, Martin A. |
| **Subject:** | Parus/WorldCom |

Larry – Pursuant to our discussions today regarding production of the Debtors' documents, you have indexes you will produce in electronic form.  You have not had the opportunity to review them all in detail and you are concerned about the possibility of some type of privileged matter contained in these indexes.  We will agree that in the event there is some privileged matter contained in these indexes, production of the indexes will not constitute a waiver of the privilege.  This agreement pertains to indexes only and does not have any bearing on production of debtors' documents.  Please provide the indexes as soon as possible.

Stephen A. Wood
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, Illinois 60606
(312) 857-7070

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender. This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use. * * * * * * * * * For more information about KELLEY DRYE & WARREN LLP please visit our website at http://www.kelleydrye.com.

**Exhibit H**

7/18/2005

**A 01969**

# EXHIBIT I

A 01970



# KELLEY
## DRYE

# FACSIMILE TRANSMISSION

| | |
|---|---|
| **TO** | Lawrence W. Bigus |
| **FIRM** | Stinson Morrison Hecker LLP |
| **CITY** | |
| **FAX** | 913-451-6352 |
| **PHONE** | 913-451-8600 |
| **NO. OF PAGES** | 3 |
| **DATE** | June 27, 2005 |

**KELLEY DRYE & WARREN LLP**
333 WEST WACKER DRIVE
SUITE 2600
CHICAGO, ILLINOIS 60606
(312) 857-7070
FAX (312) 857-7095

**MESSAGE:**

| | |
|---|---|
| **FROM** | Stephen A. Wood |
| **PHONE** | (312) 857-2311 |
| **E-MAIL** | swood@kelleydrye.com |
| **TIMEKEEPER ID** | 04206 |
| **CLIENT NO.** | 015749.0058 |

NEW YORK, NY
WASHINGTON, DC
TYSONS CORNER, VA
CHICAGO, IL
STAMFORD, CT
PARSIPPANY, NJ
BRUSSELS

AFFILIATE OFFICES
JAKARTA
MUMBAI

**IF PROBLEMS OCCUR DURING TRANSMISSION PLEASE CALL (312) 857-7070.**

The information contained in this facsimile message is intended for the use of the individual or entity to which it is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivery to the intended recipient, you are hereby notified that any use, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction.

CJ01/WOODS/192364.1

**Exhibit I**

A 01971

**KELLEY DRYE & WARREN** LLP

A LIMITED LIABILITY PARTNERSHIP

**333 WEST WACKER DRIVE**

**SUITE 2600**

**CHICAGO, ILLINOIS 60606**

(312) 857-7070

NEW YORK, NY

WASHINGTON, DC

TYSONS CORNER, VA

STAMFORD, CT

PARSIPPANY, NJ

BRUSSELS, BELGIUM

AFFILIATE OFFICES
JAKARTA, INDONESIA
MUMBAI, INDIA

FACSIMILE

(312) 857-7095

www.kelleydrye.com

DIRECT LINE: (312) 857-2311

EMAIL: awood@kelleydrye.com

June 27, 2005

**VIA FACSIMILE and U.S. MAIL**

Lawrence W. Bigus, Esq.
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Prkway
Overland Park, Kansas 66210

Re:     In re WorldCom -- Chapter 11
        <u>Case No. 02-13533 -- Claim of Parus Holdings, Inc.</u>

Dear Mr. Bigus:

        We have carefully reviewed your letters of May 31, 2005 and June 1, 2005 and your email of June 22, 2005 regarding your proposal for producing the Debtors' documents. We have some significant concerns about your proposal, some of which are addressed in my E-mail to you on June 1, 2005. I will expand on those comments.

        First, I looked at the 10 indexes you forwarded on June 15, 2005. As you yourself predicted, we were not able to discern whether boxes described therein contained responsive documents. The contents descriptions are either too general, obviously nonresponsive, or otherwise meaningless to us.

        You also assert in your June 22, 2005 E-mail, that you have produced documents. To set the record straight, you produced an extremely limited number of documents in response to our Request for Production of Documents. Most of the documents were already in our possession. Approximately 30 pages of the 485 pages you produced were documents we had not seen before. Half of these were E-mails apparently printed on your secretary's computer. So your production of new information has been almost nonexistent. All you have done beyond that is send us a proposal with essentially useless indexes, insisting that we bear the burden and expense of culling through your clients' files to identify responsive documents. This proposal appears to be an effort to either conceal responsive documents or shift your obligations under the discovery rules to us.

CH01/WOODS/197275.1

A 01972

**KELLEY DRYE & WARREN LLP**

Lawrence W. Bigus, Esq.
June 27, 2005
Page Two

We have produced documents to you, nearly 23,000 pages, that you requested. We have undertaken a time-consuming effort to find, review, and produce these documents. We undertook the effort because the rules require it. *See Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340 (1978) (the general presumption under the discovery rules is that the responding party must bear the expense of complying with discovery requests). These are your client's indexes and documents. Your client knows them better than we do. Your client is in a better position than we are to cull responsive documents. We expect compliance with the rules and an expeditious production of responsive documents.

As for the deadline for Parus to disclose experts, I need a commitment from you as to when we can expect to receive all of your responsive documents. Once that is done, I have offered to disclose my experts 75 days from that date.

Finally, there is one other outstanding issue. You indicated to me in an earlier conversation that responsive Intermedia documents were missing because they had been placed in a depository and the depository could not be found. You also indicated to me that you have no electronic documents, a fact that I find very difficult to accept. If documents have in fact been lost or destroyed, there can be consequences as I'm sure you are aware. Your client had an obligation to preserve such documents, particularly since it was aware at the time of the negotiation of the Master Agreement for Software Licensing that the contract with EffectNet was breached by Intermedia. Sanctions may be imposed even if documents were destroyed or lost through ordinary negligence. *See Zubulake v. UBS Warburg, LLC*, 2004 WL 1620866 (July 20, 2004). Please provide me with any information you have regarding this matter.

Sincerely,

Stephen A. Wood

SAW/

A 01973

# EXHIBIT J

A 01974

## Gagliardi, Lisa

**From:**    Bigus, Lawrence
**Sent:**    Tuesday, June 28, 2005 5:02 PM
**To:**    Wood, Stephen
**Cc:**    Bigus, Lawrence; Ramsay, Donald
**Subject:** RE: Accurate statements in my letter of June 27, 2005

The depositories have been located. You should know this because we gave you the location of the depositories prior to your letter of June 27, 2005.

Electronic documents have been produced. You are well aware of this fact. The fact that the number of documents is less than you wanted does not mean that there are more documents. You have been informed that we are still looking for both additional hard documents and additional electronic documents. The fact that we have not been able to locate certain hard drives to date does not lead to the conclusion that you have reached concerning whether we will ever be able to locate the documents you seek. You were also told as you well know that we have many electronic documents which involved legal counsel and therefore are protected by the attorney client privilege.

We have legally produced the Intermedia documents by advising you as to their location and telling you that you may examine them. You have objected to the manner in which we have produced the documents but the fact remains that production is providing documents for review which we have done. I understand we are working on procedures to examine the documents and issues concerning the manner in which they have been produced. We will continue to work with you on procedures to examine the documents. A letter analyzing the law on cost shifting and production of a large volume of documents will be sent to you shortly. It would be helpful if you would approach these issues as mutual concerns rather than attempting to set our client up for sanctions. Your less than veiled attempts to set our client up for sanctions rather than attempting to deal with how to review the documents in the real world is not helpful to accomplishing your ultimate goals in this litigation and/or to the goals of figuring out how to handle the documents.

We are continuing to consider the issue concerning extending scheduling order deadlines. There is a chance that we might be in a position tomorrow morning to try and resolve these issues.

---

**From:** Wood, Stephen [mailto:SWood@KelleyDrye.com]
**Sent:** Tuesday, June 28, 2005 4:34 PM
**To:** Bigus, Lawrence
**Subject:** Accurate statements in my letter of June 27, 2005

Everything in my letter was true and accurate. If you didn't want your statements repeated in a letter, you should have obtained my agreement not to repeat your statements in writing.

You did tell me, in February I believe, that when Intermedia was acquired a lot of its employees were fired and their documents were put in a depository which you had been unable to locate. If you are now saying you have found the depository, that is new information. If that is not what you are saying and there is still an issue with regard to missing Intermedia documents, please tell me.

You also told me in court in New York on June 14, 2005 that you had no electronic documents because E-mail messages were not kept in a central location and were stored on local PCs which your client no longer had. I am not now and never have misrepresented your statements or the facts in this case. On the contrary, it is you who has done so, in papers submitted to the court no less. I refer to the fictional February 18th letter you claimed we sent you acknowledging receipt of your discovery and promising to respond by March 18th.

7/18/2005

**Exhibit J**

A 01975

You keep saying you have produced your documents, but that is simply not so and your saying it doesn't make it so. You have actually turned over to us 485 pages of documents in response to our document requests. Producing indecipherable indexes to 10,000 boxes of documents is not compliance with the rules and could easily and reasonably be construed as an attempt by the producing party to avoid compliance with rules and production of responsive documents. At this point the court will draw its own conclusions.

If you wish to have all future communications in this case in writing that is fine with me. I don't appreciate being accused of false statements when I am speaking the truth.

I am obtaining dates for the René au brothers depositions and will provide them shortly. I don't have a problem producing them for deposition between the dates you suggested, assuming they are available then.

    -----Original Message-----
**From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
**Sent:** Monday, June 27, 2005 5:31 PM
**To:** Wood, Stephen
**Cc:** Befort, Jeff; Ramsay, Donald
**Subject:** inaccurate and false assumptions in your letter

Your letter, sent a few minutes ago, is highly disturbing because it contains allegations which are false, inaccurate, and misleading and because it contains threats which are designed to bully our clients into taking certain action.

We will respond to the bulk of your letter in more detail later in the week. I have been in an all day meeting today and will be in an all day CLE tomorrow. I wanted, however, to immediately respond to the false and inaccurate allegations.

I have **never** indicated "that responsive Intermedia documents were missing because they had been placed in a depository and the depository could not be found." I did indicate that it took us a brief period of time to locate the depository. As you are more than aware the depositories have been located. That is the reason you have indexes to a large volume of documents.

I have **never** indicated that MCI has "no electronic documents." I did indicate that many electronic documents involved legal counsel and therefore were privileged documents. I also indicated that the search for electronic documents was continuing. We have produced electronic documents for your review. If we had no electronic documents how could we have produced some electronic documents.

The fact that you might already have many of the documents produced does not mean that MCI and Intermedia have failed to follow the rules. There is no rule requiring us to make up documents so that we can produce something which either you do not already have and/or supports your case. We are not trying to hide any documents from you. An examination of the record indicates just the opposite. We have made indexes available to you which refer to documents far beyond what you requested. We are willing to allow you to review all of the documents to see what you can find on your fishing expedition. Opening up all documents, whether or not requested, is certainly not evidence of an intent to hide anything.

Based on the above alleged statements, which are totally false, you threaten sanctions. This type of threat is totally inappropriate at this point in litigation. We would like to work with you but if you are going to continually allege that we have made statements which we have never made, and then threaten sanctions based on the fabricated statements, we will not be very productive in our dealings. I hope we do not reach a point where all of my communications with you have to be in writing in order to stop such bold, broad and inaccurate statements. It is now apparent that at a minimum I need another attorney present during all of my conversations with you. Therefore, when you call I will put the call on hold until I can obtain the presence of another attorney.

We will send you further correspondence concerning how you are going to review the large volume of Intermedia documents which we have now produced. We have located additional documents (beyond those reflected in the indexes) which are being sent to our office. As soon as we receive the additional documents we will deal with producing those documents. Our future correspondence will analyze and set

7/18/2005

A 01976

forth applicable case law concerning the cost burden involved in these types of production. The law is not as simple as you attempt to make it in your letter. I believe that our response to the cost sharing issue raised in your letter requires a detailed explanation of current applicable law. After we have set forth the legal basis for our position then you can respond. After that we can determine if we are going to be able to resolve the current dispute.

Since we have not received dates for the depositions that we have requested we will be sending out notices and if necessary subpoenas later this week. It is imperative that we obtain the two depositions that we have requested.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847

Email: lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

7/18/2005

A 01977

# EXHIBIT K

A 01978

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Bigus, Lawrence |
| **Sent:** | Wednesday, June 29, 2005 3:19 PM |
| **To:** | Wood, Stephen |
| **Cc:** | Bigus, Lawrence; Ramsay, Donald; Befort, Jeff |
| **Subject:** | Production by MCI/Intermedia |

We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34 (b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

1.    Review by MCI/Intermedia:  MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

    a.    what should not be produced because it is protected by the attorney client privilege

    b.    If you desire what is responsive to your requests.  If you want to review everything and make this determination yourself that is acceptable to us.

2.  Handing Over Documents:  MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

3.    Costs:

    a.    Handling of Boxes:  As you have been advised there is a cost to removing the boxes from the documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection.  This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes.  It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive.  This cost is from one storage location, was a mere estimate, and may vary from location to location.  We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf.  We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute.  We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

    b.    Copying:  The cost of copying belongs to the requesting party.  Therefore, your Client's will bear this entire expense.

4.    Location:  You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

5.    Timing:  In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time.  MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way.  We do not understand how you can object to the rest of the proposal.  We are proposing to allow you to inspect everything or just those

**Exhibit K**

**A 01979**

documents which are responsive as identified by MIC/Intermedia. There is not much more a producing party can do other than give you these options. Rule 34(b) is very clear that a party has two options. We have selected one of the options as is our right. You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business). We are having a hard time determining what is it you really want.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax: 888 873 4847                     Email: lbigus@stinsonmoheck.com


7/18/2005

A 01980

# EXHIBIT L

A 01981

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Bigus, Lawrence |
| **Sent:** | Friday, July 01, 2005 8:54 AM |
| **To:** | Wood, Stephen |
| **Cc:** | Bigus, Lawrence; Ramsay, Donald; Befort, Jeff |
| **Subject:** | RE: Production by MCI/Intermedia |

You have attempted to restate our proposal and then ask if you have accurately restated our proposal.

Our proposal is one proposal with each part dependent on the other part. It is not a proposal where you can pick and choose various elements of the proposal.

Your statement is basically a restatement of my proposal less some of the explanation. Additionally, your restatement omits the option that we gave you that allows you to elect to inspect everything which is not protected by the attorney client privilege or just inspect what we determine to be responsive. Basically, we are giving you the option as to who makes the determination as to what documents are responsive. Even if we make the determination as to which documents are responsive there is the possibility that you will be reviewing thousands of boxes because of the fact that your requests are very broad.

The estimate to remove the boxes from the shelves is $1.75 and the estimate to put the box back on the shelve is $1.75. Therefore, based on this estimate the total cost every time a box is moved is $3.50 per box.

This proposal applies to hard documents and not to electronic documents which were dealt with in a separate email.

At this time it appears that inspection will be more efficient for everyone if the documents are moved to a central location in Kansas City rather than having to travel to several depositories in different states. Having the documents in one location would enable a continuous review, cut down on travel time, cut down on travel and lodging expenses, and put them in a location that is easier to get to from Chicago (K.C. is easy to get to from Chicago, is less expensive to get to then Jackson Miss or Tampa Fla, and is quicker to get to then Jackson Miss or Tampa Fla). The warehouse space in K.C. has conference room accommodations that we can utilize to review the documents. I have not personally inspected these facilities. Further, our firm has office facilities in K.C. that we could allow your team to utilize.

---

**From:** Wood, Stephen [mailto:SWood@KelleyDrye.com]
**Sent:** Thursday, June 30, 2005 6:41 PM
**To:** Bigus, Lawrence
**Subject:** RE: Production by MCI/Intermedia

I want to be clear on what you are proposing.

Please confirm that you are (1) offering to review the boxes in the depositories for responsive documents, (2) producing responsive documents to us at the depository or a mutually agreeable location, (3) whereupon we may designate documents we wish copied and (4) that we pay for copying costs.

You also propose that we split the cost of retrieving the boxes from storage, which cost was quoted by one

7/18/2005

**Exhibit L**

depository to be $1.75 per box for removal and $1 per box for transport to another location.

You also propose that we have personnel available on site to review the documents you are producing at the same time they are produced so boxes will only need to be retrieved from storage once.

Is the foregoing a correct statement of your proposal?

> -----Original Message-----
> **From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
> **Sent:** Wednesday, June 29, 2005 3:19 PM
> **To:** Wood, Stephen
> **Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
> **Subject:** Production by MCI/Intermedia
>
> We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34(b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.
>
> Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:
>
> 1.   Review by MCI/Intermedia: MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:
>
>     a.   what should not be produced because it is protected by the attorney client privilege
>
>     b.   If you desire what is responsive to your requests. If you want to review everything and make this determination yourself that is acceptable to us.
>
> 2.   Handing Over Documents:  MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.
>
> 3.   Costs:
>
>     a.   Handling of Boxes: As you have been advised there is a cost to removing the boxes from the documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection. This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes. It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive. This cost is from one storage location, was a mere estimate, and may vary from location to location. We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf. We believe that this burden should fall on Claimants but make this proposal in an effort to compromise the pending dispute. We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.
>
>     b.   Copying: The cost of copying belongs to the requesting party. Therefore, your Client's will bear this entire expense.
>
> 4.   Location: You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.
>
> 5.   Timing: In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time. MCI/Intermedia

would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way. We do not understand how you can object to the rest of the proposal. We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia. There is not much more a producing party can do other than give you these options. Rule 34(b) is very clear that a party has two options. We have selected one of the options as is our right. You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business). We are having a hard time determining what is it you really want.


Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial:  913 344 8026
Fax:  888 873 4847                          Email:  lbigus@stinsonmoheck.com


This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.


Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

A 01984

## Gagliardi, Lisa

**From:**    Wood, Stephen [SWood@KelleyDrye.com]

**Sent:**    Friday, July 01, 2005 3:03 PM

**To:**      Bigus, Lawrence

**Cc:**      Friedman, Robert; Krolewski, Martin A.

**Subject:** RE: Production by MCI/Intermedia

I have conferred with my client. There are some problems with your proposal. First, we are not interested in sharing the cost of retrieving boxes from your storage facilities. My client undertook significant time and expense to produce documents to you. We expect you to do the same. As I've said before, this is your obligation under the rules. In addition, your proposal does not indicate when you will turn over your documents. You have had our request since early February. We must have your documents to be able to depose your witnesses and to provide to our experts prior to the deadline to disclose expert opinions. Because you do not commit to turning over responsive documents by a deadline that is well in advance of the expert disclosure deadline, and because you want us to bear half the cost of retrieving boxes from your warehouses, we cannot agree to your proposal.

    -----Original Message-----
    **From:** Bigus, Lawrence [mailto:lbigus@stinsonmoheck.com]
    **Sent:** Wednesday, June 29, 2005 3:19 PM
    **To:** Wood, Stephen
    **Cc:** Bigus, Lawrence; Ramsay, Donald; Befort, Jeff
    **Subject:** Production by MCI/Intermedia

    We have spoken with our client and obtained authority to make a formal on the record proposal to you concerning inspection of the documents that have been produced by MCI/Intermedia pursuant to the requirements of Rule 34(b). As you are aware the documents have been produced pursuant to Rule 34(b) "for inspection" "as they are kept in the usual course of business." We want to be clear that we have repeatedly told you that you may inspect the documents which have been produced at any time.

    Our proposal to try and help with the inspection of the documents that have been produced to date is as follows:

    1.    Review by MCI/Intermedia: MCI/Intermedia will have its legal representatives review all of the hard documents and determine the following:

        a.    what should not be produced because it is protected by the attorney client privilege

        b.    If you desire what is responsive to your requests. If you want to review everything and make this determination yourself that is acceptable to us.

    2.    Handing Over Documents: MCI/Intermedia will then give to your team the documents which are not privileged and at your option either just the documents which are responsive or all of the documents.

    3.    Costs:

        a.    Handling of Boxes: As you have been advised there is a cost to removing the boxes from the documents. It is approximately one dollar to move the boxes to a different storage location and $1.75 to have them removed from the shelf and then put back on the shelf at what ever storage location they are at during inspection. This is reasonable per box but we will be producing at least thousands of boxes if not tens of thousands of boxes. It is probable that there will be this number of boxes to produce even if you select to inspect on those documents that MCI/Intermedia deems responsive. This cost is from one storage location, was a mere estimate, and may vary from location to location. We propose that Debtor and Claimant split the costs involved to move the boxes and/or remove them from the shelf and return them to the shelf. We believe that this burden should fall on Claimants but make this proposal in an effort

7/18/2005

A 01985

to compromise the pending dispute. We hope that you are willing to compromise rather than forcing the Judge to decide which side bears all of the costs.

   b.   Copying: The cost of copying belongs to the requesting party. Therefore, your Client's will bear this entire expense.

4.   Location: You may view the documents at the current warehouse locations or they can be moved to a mutually agreeable location.

5.   Timing: In order to minimize the costs that would be involved in removing the produced documents from the shelf twice (once for MCI/Intermedia to review and a second time for Claimants to review) we propose that both parties have teams present at the inspection site at the same time. MCI/Intermedia would review the documents and then immediately turn over the appropriate boxes (depending on the decision you make per the above) to your team for inspection.

We understand you might disagree with the cost split proposal but hope that you will realize that parties need to attempt to compromise these disputes rather than insisting on having everything their way. We do not understand how you can object to the rest of the proposal. We are proposing to allow you to inspect everything or just those documents which are responsive as identified by MIC/Intermedia. There is not much more a producing party can do other than give you these options. Rule 34(b) is very clear that a party has two options. We have selected one of the options as is our right. You have complained that we have produced a small number of documents (i.e. the documents produced by physically delivering them to you) and at the same time that we have produced an unreasonably large number of documents (i.e. the documents that we have produced as they are kept in the usual course of business). We are having a hard time determining what is it you really want.

Lawrence W. Bigus
9200 Indian Creek Parkway Suite 450
Overland Park, KS. 66210
Direct Dial: 913 344 8026
Fax:  888 873 4847                      Email:  lbigus@stinsonmoheck.com

This communication is from a law firm and may contain confidential and/or privileged information. If it has been sent to you in error, please contact the sender for instructions concerning return or destruction, and do not use or disclose the contents to others.

Pursuant to Treasury Regulations, any U.S. federal tax advice contained in this communication, unless otherwise stated, is not intended and cannot be used for the purpose of avoiding tax-related penalties.

The information contained in this E-mail message is privileged, confidential, and may be protected from disclosure; please be aware that any other use, printing, copying, disclosure or dissemination of this communication may be subject to legal restriction or sanction. If you think that you have received this E-mail message in error, please reply to the sender.

This E-mail message and any attachments have been scanned for viruses and are believed to be free of any virus or other defect that might affect any computer system into which it is received and opened. However, it is the responsibility of the recipient to ensure that it is virus free and no responsibility is accepted by Kelley Drye & Warren LLP for any loss or damage arising in any way from its use.

7/18/2005

A 01986

# EXHIBIT M

A 01987



One Parkway North
Fourth Floor North
Deerfield, Illinois 60015
Office: 888.444.6400

Writer's Direct No.
(888)-387-3481

March 25, 2002

**Via Federal Express Mail**
Mr. Brett Bacon
MCI/WorldCom
1945 Old Gallows Road
Vienna, Virginia 22182

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) (**"EffectNet"**) and Intermedia Communications, Inc. (**"Intermedia"**) (the **"Agreement"**)

Dear Mr. Bacon:

EffectNet, by letter to the attention of Mr. Rich Black, dated March 12, 2002, issued a written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults, as defined in the March 12 letter (the **"March 12 Letter"**). I understand from you that Mr. Black referred the March 12 letter to your attention upon receipt. As you know, the Agreement in Section 5.2 provides that "[t]ermination due to default under this Section shall be effective thirty (30) days after written notice to the defaulting Party if the default has not been cured within such thirty (30) day period." Accordingly, the Agreement will be terminated for default by Intermedia on or about April 12, 2002 if the Intermedia Defaults are not cured prior thereto.

I spoke with you on or about March 13 and you indicated that Intermedia and/or its affiliates were interested in pursuing immediate settlement discussions. I also understand that you spoke with Mr. Jim Calandra, Chief Financial Officer of EffectNet on March 18 and that you told Mr. Calandra that Mr. Barry Zip would

**Exhibit M**

A 01988

Mr. Brett Bacon
Page 2 of 3
March 25, 2002

be handling settlement discussions.   Further, I understand that you told Mr.
Calandra that you would provide Mr. Zip with contact information of Mr.
Calandra.   On March 20, Mr. Calandra exchanged voice messages with you
whereby Mr. Calandra inquired of Mr. Zip and the lack of communication from
him and you responded by giving Mr. Calandra, for the first time, contact
information for Mr. Zip.  Mr. Calandra called Mr. Zip the same day, March 20, and
left a voice message for Mr. Zip requesting that Mr. Zip return the call.   Neither
Mr. Calandra nor anyone else has since received any communications from
Intermedia or its affiliates regarding this matter.   As you might imagine,
EffectNet is becoming increasingly concerned that Intermedia and/or its affiliates
fail to understand the gravity of this matter and the urgency with which it must
be addressed.

Intermedia should also take notice of the Due Date of invoice #1018, dated
March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on
March 6, 2002.  Payment of this amount was due on or before March 21, 2002.
EffectNet has not received this past due payment (the **"February Payment
Default"**).

Accordingly, EffectNet hereby gives Intermedia written notice of default under
Section 5.2 of the Agreement with respect to the February Payment Default and
EffectNet further hereby gives Intermedia written notice that EffectNet may (i)
terminate the Agreement under Section 5.2 due to default effective thirty (30)
days after this written notice (if the Agreement is not sooner terminated
pursuant to the March 12 Letter) if the February Payment Default has not been
cured within such thirty (30) day period, and (ii) further exercise all available
remedies pursuant to the terms of the Agreement and as otherwise may be
available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of
the Agreement, of the amounts itemized below:

Total Amount Past Due on Invoice 1010,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the December 2001 billing cycle):                    $274,021.05

Total Amount Past Due on Invoice 1011,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the January 2002 billing cycle):                     $274,066.20

A 01989