Mr. Brett Bacon
Page 3 of 3
March 25, 2002

Total Amount Past Due on invoice #1018,
dated March 5, 2002, and delivered to
Intermedia on March 6, 2002
(for the February 2002 billing cycle):                    $279,757.02

**Required Payment:**                                     $827,844.27

The total amount past due is as of March 21, 2002.  EffectNet gives notice that
all provisions of default will be strictly enforced.  As indicated above, Intermedia
has until the expiration of thirty (30) days after the March 12 Letter or this
written notice, as the case may be, to remit the Required Payment.   The
Required Payment should be made payable and delivered by wire transfer to
Wells Fargo Bank, Tempe, Arizona; ABA Routing Number 1221-05278; EffectNet
Operations Account; Account Number 046-4657220; attn: Stephanie Jordan at
480-644-8396.

If Intermedia fails to cure the Intermedia Defaults and the February Payment
Default and if the Agreement is terminated as aforesaid, EffectNet may claim
damages for all amounts due pursuant to the Agreement.

Nothing in this letter is intended to be a waiver or release of any rights or
remedies, or an election thereof, that EffectNet has under the Agreement or
applicable law, and all such rights and remedies are hereby expressly reserved in
their entirety.

Very truly yours,

Robert C. McConnell
General Counsel

CC: Mr. Rich Black

MCTWC000244

**A 01990**

02/12/02 08. A P.009

# Invoice

**EffectNet**
10230 S. 50th Place
Phoenix, AZ 85044

| DATE | INVO |
|---|---|
| 2/6/2002 | 1011 |

BILL TO
WorldCom Purchasing, LLC
PO Box 7
Clinton, MS 39060-0007
Attn: Accounts Payable

| P.O. NO. | TERMS | PROJECT |
|---|---|---|
| 4570182205 | Net 15 | |

| QUANTITY | DESCRIPTION | RATE | AMOUNT |
|---|---|---|---|
| | January 2002 Billing Cycle | | |
| 46 | Unified Messaging Mailbox- Unlimited | 27.40 | 1,260.40 |
| 1 | Unified Messaging Mailbox- Basic | 11.45 | 11.45 |
| 370 | Outbound Calling Originated (Minutes) | 0.10 | 37.00 |
| | Reconciliation Payment as of January 31, 2002 | | |
| 9,953 | Volume Shortfall (Minimum Monthly Commitment of 10,000) | 27.40 | 272,712.20 |
| | Late Fees at 1% per month | | |
| 1,833 | September Invoice # 1006 | 0.01 | 18.33 |
| 1,373 | October Invoice # 1007 | 0.01 | 13.73 |
| 1,309 | November Invoice # 1008 | 0.01 | 13.09 |
| | For billing inquiries, please call Richard Jeffers, 877.551.9365. | | |

PO# 4570182205

| | Total | $274,06 6.20 |
|---|---|---|

MCIWC000245

03/07/02 07  1A P.002

## EffectNet

10230 S. 50th Place
Phoenix, AZ 85044

# Invoice

| DATE | INVOICE # |
|------|-----------|
| 3/5/2002 | 101B |

**BILL TO**

WorldCom Purchasing, LLC
PO Box 7
Clinton, MS 39060-0007
Attn: Accounts Payable

| P.O. NO. | TERMS | PROJECT |
|----------|-------|---------|
|  | Net 15 |  |

| QUANTITY | DESCRIPTION | RATE | AMOUNT |
|----------|-------------|------|--------|
|  | February 2002 Billing Cycle |  |  |
| 42 | Unified Messaging Mailbox-Unlimited | 27.40 | 1,150.80 |
| 2,810 | Outbound Calling Originated (Minutes) | 0.10 | 231.00 |
|  | Reconciliation Payment as of February 28, 2002 ( |  |  |
| 9,958 | Volume Shortfall (Minimum Monthly Commitment is 10,000) | 27.40 | 272,849.20 |
|  | State Fees at 1% per month |  |  |
| 1,833 | September Invoice # 1006 | 0.01 | 18.33 |
| 1,373 | October Invoice # 1007 | 0.01 | 13.73 |
| 1,309 | November Invoice # 1008 | 0.01 | 13.09 |
| 274,021.05 | December Invoice #1010 | 0.01 | 2,740.21 |
| 274,066.2 | January Invoice # 1010 | 0.01 | 2,740.66 |

PO# 4570182205

| Total | $279,757.02 |
|-------|-------------|

MCIWC000246

A 01992

# EXHIBIT N

A 01993

## Gagliardi, Lisa

| | |
|---|---|
| **From:** | Gagliardi, Lisa |
| **Sent:** | Friday, July 08, 2005 2:40 PM |
| **To:** | 'SWood@KelleyDrye.com' |
| **Cc:** | Bigus, Lawrence |
| **Subject:** | WorldCom, Inc. - Claim of Parus Holdings, Inc. |
| **Attachments:** | Ltr to Steve Wood re electronic discovery.DOC¤; Ltr to Steve Wood re discovery.DOC¤ |

Attached hereto please find two (2) letters from Larry Bigus regarding the above-named case.


**Lisa Gagliardi**
**Legal Secretary**
Stinson Morrison Hecker LLP
9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS  66210-2008
Direct Dial Phone:  (913)344-8051
Direct Dial Fax:  1(888)759-6979


**Exhibit N**

7/19/2005

A 01994

## STINSON
## MORRISON
## HECKER LLP

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 7, 2005

VIA ELECTRONIC MAIL

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

      Re:    Electronic Document Production by Debtors
            In re WorldCom, Inc. - Chapter 11
            Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

As you are aware Debtors have located a substantial number of back up tapes and other electronic documents in connection with your Request for Production of Documents. You have not responded to the e-mail we sent you concerning cost shifting issues in connection with electronic discovery. Prior to filling a motion for protective order on this subject we want to make an attempt to resolve the issues.

At this time we are making the following proposal concerning electronic discovery:

1.    The discovery be postponed until after the Court rules on the summary judgment motion that we plan to file in the near future. The summary judgment motion will assume that all allegations in your pleadings are accurate. The summary judgment motion will be more in the nature of a traditional motion for failure to state a cause of action. We will basically be saying that even if you can prove everything you have alleged that your client does not have a cause of action against Debtors for tort, that the alleged damages are not legally recoverable, and that the contract damages are limited. If the motion is granted as to the tort claims then there will be no need to obtain the electronic discovery. You do not need the electronic discovery to respond to the summary judgment motion because the motion will assume that all of your allegations are correct.

2.    That Claimants pay the cost of searching the electronic files. Case law makes it clear that the Court has the authority to shift the costs in this manner.

KANSAS CITY

OVERLAND PARK

WICHITA

WASHINGTON, D.C.

PHOENIX

ST. LOUIS

OMAHA

JEFFERSON CITY

048629:0094_0019\6679423.1

A 01995

Stephen A. Wood
July 7, 2005
Page 2

3.    That reasonable parameters be set in connection with searching the electronic discovery. Parameters such as only searching the files of agreed upon individuals, only searching certain back up tapes (the back up tapes are largely duplicative since each tape backs up everything that the particular servers being backed up contain) rather than every single back up tape and other similar parameters. The court decisions on this issue indicate that reasonable parameters designed to search the data most likely to produce information and which greatly reduce the costs can be adopted by the courts.

By offering to produce electronic documents subject to the above we are not waiving the objections set forth in response to your clients request for production.

If you are willing to compromise and work on these issues please let me know. If you cannot agree to the above proposal please respond with a particular proposal of your own rather than your usual outright rejection without any constructive proposals. If you are not willing to work together toward a reasonable solution to the issue of electronic production then we will have no choice but to file a motion for a protective order. We hope that this motion does not become necessary.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

A 01996



**STINSON**
**MORRISON**
**HECKER** ᴸᴸᴾ

Lawrence W. Bigus
(913) 344-8026
lbigus@stinsonmoheck.com
www.stinsonmoheck.com

9 Corporate Woods, Suite 450
9200 Indian Creek Parkway
Overland Park, KS 66210-2008
*Tel* (913) 451-8600
*Fax* (913) 451-6352

July 7, 2005

Vɪᴀ Eʟᴇᴄᴛʀᴏɴɪᴄ Mᴀɪʟ

Stephen A. Wood
Kelley Drye & Warren LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606

> Re:     Production by Parus/EffectNet
> In re WorldCom, Inc. - Chapter 11
> Case No. 02-13533 - Claim of Parus Holdings, Inc.

Dear Mr. Wood:

As you are aware your clients have failed to respond to the Court's order indicating that all of its objections are waived. Further, the documents that your client has produced indicate that your client's production was not a full and complete production, even if the objections stand – which they do not, contrary to the representations that you have made on many occasions.

A.     **Waiver of Objections:** As you are aware the Court has ruled that all of your client's objections to the Request for Production and the Interrogatories propounded by Debtors are waived. On July 1, 2005 we sent you a letter asking you to: 1) serve revised discovery responses which eliminate all objections; 2) provide full and complete answers and responses not subject to objections; 3) provide full and complete responses to all requests for production; and 4) produce all requested documents which have not been produced to date. At this time you have not even given us the courtesy of a response to our letter.

B.     **Full and Complete Production:** Your client has produced a volume of documents. We have reviewed all of the documents and read all but a handful of the documents. The following is clear from the documents that your client has produced: 1) the documents are from the files of one individual and do not include files from any other individual; 2) while the volume of documents is large, many of the documents are duplicative of each other and therefore the production is not as big as you keep claiming; 3) there are no documents from the individuals involved in the negotiations between Webley and MCI; 4) many of the documents are non-responsive documents which simply increase the count you keep using for the number

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

048629:0094_0019\6679360.1

**A 01997**

Stephen A. Wood
July 7, 2005
Page 2

of documents produced. These conclusions are clear because there are no copies of contracts, no negotiating notes, no documents from anyone's files except one person, no copies of the termination letters, no drafts of the contracts, no negotiating notes, and a lack of many other documents that should have obviously been included in a full production. You claim that your clients have gone to a lot of trouble, effort and expense to produce documents. It is clear that this is not the case.

Please comply with the requests set forth above in paragraph A on or before July 31, 2005. As you are aware the Request for Production has been outstanding now for over nine months. You keep complaining that Debtors have not produced their documents in connection with a request that has been outstanding for a little over four months, yet your clients have not fully responded in connection with requests that have been outstanding for over nine months.

If we do not receive acceptable amended responses together with a full document production by July 31, 2005, we will have no choice but to ask the Court for an informal conference on these issues.

Sincerely,

**STINSON MORRISON HECKER** LLP

Lawrence W. Bigus

LWB:lag

048629:0094_0019\6679360.1

A 01998

# EXHIBIT O

A 01999

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Lawrence W. Bigus, Esq.
1201 Walnut, Suite 2900
Kansas City, MO 64106
Attorney for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re | : | CHAPTER 11 CASE |
|---|---|---|
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

## DECLARATION OF JULIO O. VALDES

I, Julio O. Valdes, of lawful age and being duly sworn, depose and state as follows:

1. I am the Senior Manager for Production Operation of MCI. My duties include managing a team of technical engineers in the support of MCI's Intel environment. This includes computer hardware and operating system support for approximately 2000 servers located all across United States. I have personal knowledge of the facts stated in this declaration.

2. I began working at Intermedia Communications, Inc. ("Intermedia") in 1996. I became Director of Operations for Intermedia in 2000 and, after the Intermedia/WorldCom, Inc. merger, I continued my employment with WorldCom, Inc. I am in charge of all Windows backup tapes for Intermedia and the two remaining active Intermedia Windows servers.

3. The Intermedia backup tapes are stored in boxes in Ashburn, Virginia. At the request of MCI's counsel, Donald Ramsay, and with the assistance of others working

**Exhibit O**

A 02000

P.2

with me, I prepared a complete list of all Intermedia backup tapes. On the list of all Intermedia backup tapes, I identified all monthly backup tapes for the period January 1, 2000, through December 31. 2002.

4.    There are a total of 483 monthly backup tapes for Intermedia for the time period January 1, 2000, through December 31, 2002, which includes 378 monthly backup tapes and 105 email backup tapes. I estimate that there may be 15 gigabytes of data per backup tape, which would be a total of approximately 7,245 gigabytes of data. This would be the equivalent of approximately 7.245 terabytes of data.

5.    MCI does not currently have the ability to search data on the Intermedia backup tapes. In order to search information on the backup tapes, the data must first be restored to a server comparable to the server from which the data was taken.

6.    I also, at the request of Mr. Ramsay, have run searches for key words and individual names on the two remaining active Intermedia servers. The search of one of the servers did not yield any responsive data. The search of the other server was unsuccessful. Because of the volume of data on the server, the searches have stalled or the server has failed during the search process.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 4, 2005.

_Julio O. Valdes_

**A 02001**

Exhibit J

A 02002

**KELLEY DRYE & WARREN LLP**
**Stephen A. Wood (SW 6270)**
**Robert S. Friedman (RF 1538)**
**Robert L. LeHane (RL 9422)**
**101 Park Avenue**
**New York, New York 10178**
**Tel: (212) 808-7800**
**Fax: (212) 808-7897**

**Attorneys for Parus Holdings, Inc.,**
**Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:**<br><br>    **WORLDCOM, INC., et al.**<br><br>                                    **Debtors.** | **Chapter 11 Case No.**<br>**02-13533 (AJG)**<br><br>**(Jointly Administered)** |

### REPLY OF CLAIMANT, PARUS HOLDINGS, INC., IN FURTHER SUPPORT OF ITS MOTION TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS AND TO EXTEND DISCOVERY DEADLINES

Parus Holdings, Inc., successor-by-merger to EffectNet, Inc. and EffectNet, LLC (collectively, "Parus"), by their undersigned attorneys Kelley Drye & Warren LLP ("Kelley Drye"), hereby submits this Reply to WorldCom's Response and Opposition to Claimant's Motion to Compel Production of Responsive Documents and To Extend Discovery Deadlines, submitted on August 4, 2005 ("WorldCom's Response"), and in further support of its Motion pursuant to Rules 7026, 7034, 7037 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule/s"), Rule 26, 34 and 37 of the Federal Rules of Civil Procedure ("Civil Rule/s"), and section 105(a) of Title 11 of the United States Code ("Bankruptcy Code"), for an

A 02003

order, compelling debtors, Intermedia Communications, Inc. ("Intermedia") and MCI WorldCom

Communications Inc. ("MCI WorldCom") (collectively, "Debtors") to produce documents

responsive to Parus' First Request for Documents, dated February 7, 2005 ("Parus' Document

Request), by a date certain provided by this Court.  In further support of its Motion, Parus shows

as follows:

## PRELIMINARY STATEMENT

1.    Debtors have endeavored to thwart Parus' legitimate discovery efforts at

every stage of this case.  To show this, Parus painstakingly and exhaustively set forth in its

Motion the discovery chronology and communications between its and Debtors' counsel.

Debtors do not respond to this showing but instead argue in their response that they should be

allowed to do a "document dump" and shift costs of discovery in violation of the Federal Rules,

merely because they filed for bankruptcy.  They cite no authority, however, for their unique

position that a bankruptcy petition excuses obligations under the Federal Rules.

2.    In March of 2005, Debtors formally notified Parus that they had boxes of

documents which were warehoused and which may contain responsive documents.  To date,

more than six months after Parus served its document requests, none of these documents have

been produced.  On May 31, 2005 Debtors made a proposal for producing these documents, even

though they still did not produce any documents.  This proposal amounted to nothing more than

a massive document dump aided by indexes which Debtors admitted were "not very precise."

When Parus resisted this obviously unfair proposal, Debtors represented that they had "no

means to identify what is responsive."  Debtors subsequently changed tactics and pronounced

that they had complied with the rules, that their documents had been produced and they had gone

"far beyond what is required by the rule."

2

3.      On June 29, 2005, within one hour of the conclusion of a telephone conference with this Court wherein Parus was given leave to present this motion to compel, Debtors made a proposal whereby they finally offered to review their own hard documents for responsiveness and produce responsive documents to Parus.  Because they insisted that Parus absorb part of their costs and refused to commit to a mutual deadline to produce responsive documents, Parus rejected this proposal.  Now Debtors resort to still another tactic arguing that Parus is not entitled to discovery because its claims lack merit.  Debtors cite a motion for summary judgment they have filed and claim that this motion obviates the need for discovery by Parus.

4.      Debtors motion for summary judgment, which was filed in violation of local rules, should be recognized as nothing more than the latest attempt to stymie Parus' legitimate and reasonable discovery of the Debtors.  They are now seeking a stay without filing a motion for a stay.  This effort along with Debtors' other arguments in opposition to Parus' document requests should be rejected by this Court.  Further delay and failure to comply with the rules cannot be condoned.

## ARGUMENT

**I.      Debtors Must Be Required to Produce Documents At Their Expense By A Deadline Which Applies To The Production Of The Documents Of All Parties**

**A.      Debtor's Proposals To Date Have Been Neither Reasonable Nor In Compliance With The Rules**

5.      As noted in Parus' Motion to Compel, Debtors proposed providing their own indexes to Parus for use in determining which of the 10,000 boxes of Debtor's own documents were responsive to Parus' document requests.  Dumping large quantities of documents in this fashion on a party opponent does not satisfy the obligation of litigants under the Rules.  Federal Rule of Civil Procedure 34(b) requires that a party producing documents for

3

A 02005

inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request." However, a party electing to produce documents for inspection as they are kept in the usual course of business still has a burden to select and produce the items requested. It is not permissible to dump large quantities of unrequested material onto the discovering party along with the items actually sought under Rule 34." 8A Wright, Miller & Marcus, *Federal Practice and Procedures* § 2213 (2005 Pocket Part).

   6.      Contrary to the arguments of Debtors, *Chemtex LLC, v. St. Anthony Enterprises, Inc.*, No. 03 Civ. 4263(RWS), 2004 WL 764781 (S.D.N.Y. April 9, 2004) is on point and should be controlling in this dispute. In ordering the defendant to produce documents in the manner requested by the plaintiff, the court recognized that the defendant's proposal to permit plaintiff access to all files which might contain the sought after information was substantively unfair and did not comply with Rule 34(b). These were defendant's documents which defendant chose to maintain in such a state that access to relevant documents by others was very difficult. Debtors cite no authority for its desperate attempt to distinguish *Chemtex* because Intermedia is allegedly "defunct."

   7.      As the defendant's proposal in *Chemtex* was unreasonable, so is the Debtors' proposal here. The storage method was chosen by Debtors, just as the defendant in *Chemtex* consciously chose its storage method. The Debtors clearly know their documents better than Parus and are in a far better position than Parus to identify responsive documents. Debtors note that Intermedia ceased operations long before Parus filed its proofs of claim as though this should excuse the state of their document storage and their obligations under the Rules. In fact, it is undisputed that Intermedia breached its contract with Parus' predecessor EffectNet within

4

days of its merger with WorldCom. When Debtors stored their documents, they were fully

aware of their wrongful conduct. In view of this, Debtors should not be permitted to use

Intermedia's defunct status to insulate themselves from discovery.

8.    The Debtors argument that the *Hagemeyer North America v. Gateway Data Science Corporation*, 222 F.R.D. 594 (E.D. Wis. 2004) supports their position is incorrect

and misleading. In *Hagemeyer* the defendant had produced 10,000 pages of documents to the

plaintiff. What's more, the plaintiff had unfettered access to the document storage facilities.

Finally, there was no showing that the documents were stored in a disorganized manner. The

defendant produced photographs of the storage facility to demonstrate to the court that the boxes

were clearly labeled and organized so the plaintiff could locate relevant documents. Unlike

*Hagemeyer*, here the storage facilities and indexing are completely disorganized and in disarray.

Debtors improperly seek to shift the burden and consequences for their dilatory record-keeping

to Claimants.

**B.    It Is Inappropriate For Debtors To Argue An Improperly Filed Motion for Summary Judgment In Response To The Instant Motion**

9.    Notwithstanding the various efforts of Debtors aimed at hindering Parus'

access to relevant documents, the Debtors have found a new ploy, an apparently improperly filed

motion for summary judgment which boldly asserts that Parus is entitled to no discovery

whatsoever. Rule 7056-1(a) of the Local Bankruptcy Rules for the Southern District of New

York states:

> Unless the Court ordered otherwise, no party shall file a motion for
> summary judgment without first seeking a pre-motion conference.
> The request for a pre-motion conference shall be made by letter,
> filed on the CM/ECF system, setting forth the issues to be
> presented in the motion and the grounds for relief.

5

**A 02007**

A search of the docket on this case reveals that the Debtors did not follow the proper procedure. There is no Court order or letter filed with the Court requesting a pre-motion conference.

10.     Parus has informed the Debtors that they have improperly filed their Motion for Summary Judgment and requested that they withdraw their motion. The summary judgment motion, filed on August 1, 2005, was clearly intended to impact the instant Motion. The arguments raised by Debtors are purely legal arguments; that is, Debtors have argued that Parus has failed to state a claim in any manner except for a breach of written contract claim that can be decided, conveniently, without resort to extracontractual evidence. Obviously, Debtors' motion could have been brought months if not years ago in this contested matter. It is no coincidence therefore that the motion has been brought one week prior to hearing on Parus' Motion to Compel. Indeed, Debtors reargue much of their motion for summary judgment in their Response to the Motion to Compel. Under these circumstances it would be patently unfair to allow an 11th hour, partially briefed, improperly filed motion for summary judgment to have any bearing whatsoever on this Motion to Compel. Parus should not be forced to respond to Debtors one-sided, misleading, and erroneous summary judgment arguments in the context of this Motion to Compel. Parus' legitimate and reasonable discovery has been held up long enough and Debtors' tactics should not cause discovery to be denied any longer.

11.     By way of example only, without arguing the merits of the issues raised in Debtors' motion, Debtors state as uncontested fact in their motion that Parus terminated the contract with Intermedia and that such action capped Parus' damages at $460,442.30. Parus previously brought before this court a motion to amend deemed admissions so that it could deny requests to admit stating that Parus had terminated the UC Contract. This motion to amend was aggressively opposed by Debtors. On June 29, 2005, this Court granted Parus' motion

6

permitting it to amend and deny the requests to admit that Parus terminated the contract. Contract termination is plainly a contested fact issue. As for the amount of contract damages, the figure offered by Debtors, $460,442.30, again stated in their motion as uncontested fact, is low by a factor of at least 13. The UC Contract with Intermedia was a multiyear contract that was worth eight figures to Parus and its predecessors EffectNet and Webley Systems, Inc. The invoices sent by EffectNet to Intermedia pursuant to this Contract, which were attached to Parus' proofs of claim, total approximately $828,000. It is outrageous for Debtors to state in their motion for summary judgment, as though it was established fact, that the contract damages are no more than $460,442.30.

12.    Furthermore, the law regarding the claims of tortious interference, civil conspiracy and unfair trade practices does not clearly favor the Debtors as they argue in their motion. Again, by way of example only, Debtors devote the first section of their argument to a choice of law analysis and conclude that Arizona law controls the resolution of all claims brought by Parus. In the very next section, Debtors argue that Parus' tortious interference and conspiracy claims fail as a matter of law. Tellingly, Debtors cite not a single Arizona case in support of their arguments on these claims.

13.    Finally, Debtors suggest that Parus' discovery requests relate only to the tort claims, but this is not the case. In their Response to the Motion to Compel, Debtors list eight of Parus' Document Requests that Debtors claim would be obviated by Debtors' motion for summary judgment. What then is to be done with Parus' remaining 27 Document Requests? These are focused on documents pertinent to the contract claims set forth in its proofs of claim (Wood Decl. ¶ 15, Ex. B and C.) as well as the assertions and defenses set forth in the Debtors' Objection to Parus' proofs of claim (Wood Decl. ¶ 15, Ex. F.) Thus, Parus' requests are proper

7

A 02009

and calculated to lead to the discovery of relevant and admissible evidence regarding *both* the contract claims and tort claims. For these reasons, the Court should not stay discovery any further.

**C.    Costs Shifting Does Not Apply To The Debtors' Production Of Hard Copy Documents**

14.    The Debtors seek to improperly shift costs associated with physically pulling and returning the boxes to their shelves that Debtors are obliged to review for responsiveness. (Wood Decl. ¶¶ 38,45 and 48.)  First, there is a presumption that "the responding party must bear the expense of complying with discovery requests..."  See *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340 (1978).  Since it is the Debtors burden and obligation under New York law to review the documents because of the unreasonable state of Debtors' records, the Debtors should not be allowed to shift their costs associated with reviewing the boxes of documents for responsiveness.

15.    Furthermore, Parus did not ask the Debtors to share costs in producing its documents.  Parus has undertaken significant time and expense to produce documents responsive to Debtor's discovery requests. (Wood Decl. 32 and 44.)  To date, Parus has produced 23,000 pages of documents in response to Debtors' Requests, an amount that dwarfs Debtors production to date of a few hundred pages.  Parus has continued its efforts to collect, review, and produce responsive documents and intends to produce as many as an additional 50,000 pages of documents within 30 days of the date of the hearing on this Motion to Compel.  Parus has also filed supplemental responses to Debtors' Interrogatories and Discovery Requests on August 5, 2005.  It would be unfair and contrary to controlling law to shift costs associated with the Debtors obligation to review and produce responsive documents.

A 02010

16.    In support of their argument on cost shifting, Debtors discuss extensively

the case of *Zubulake v. UBS Warburg*, 217 F.R.D. 309 (S.D.N.Y. 2003). It is well known that

*Zubulake* was concerned with the unique problems posed by production of electronic documents.

Parus is aware of no case where the *Zubulake* factors were applied to a production of hard

documents and application of the *Zubulake* analysis with regard to the Debtors' obligations to

produce responsive hard documents is just as inappropriate here. First, Debtors discussion of

*Zubulake* on the cost shifting issue actually highlights the insincere and misleading character of

their argument. In relying on the *Hagemeyer* case, Debtors suggest that their documents are

readily accessible, clearly labeled, and not disorganized. In their next breath, Debtors make and

about-face and argue in support of cost-shifting, based on *Zubulake*, that their documents are

inaccessible. Second, Debtors state that their documents are "'inaccessible' as that term is

defined in *Zubulake I*." Yet, the Debtors offer to review and produce 387 boxes of documents

they have determined to be responsive to Parus' Document Requests. It is apparent therefore

that Debtors are being neither forthright nor consistent in their Response to Parus' Motion to

Compel and based on this alone, this Court should reject Debtors' cost shifting argument.

**D.    Parus' Motion Does Not Address Production of Electronic Documents**

17.    Parus' Discovery Requests clearly seek the production of responsive

electronic documents, in particular e-mails, and Parus' counsel has repeatedly requested the

status of locating electronic documents from Debtors' counsel. (Wood Decl. ¶¶ 28, 30 and 34.)

However, the issue of electronic documents cannot be addressed in this motion because there is

an insufficient factual record to make a cost-shifting analysis. Parus' counsel was informed for

the first time on June 30, 2005, that Debtors had located potentially responsive and non-

privileged electronic documents stored on an estimated 250 back up tapes. (Wood Decl. ¶ 46.)

The only information provided was an estimate that it would cost approximately $900,000 to

9

A 02011

have the electronic documents restored and searched. (*Id.*) The WorldCom's Response now states that it has located 483 backup tapes and that they have received bids from vendors ranging from $496, 140 to $2,188,825 to perform the work. *See* WorldCom's Response at 11 n.9.) Clearly, the factual record does not currently exist to even begin the type of analysis that the *Zubulake* Court sets forth. This issue is therefore not ripe for decision by this Court. As set forth in its Motion to Compel, Parus will in good faith confer with the Debtors regarding the electronic document production and work to resolve any disputes without the intervention of this Court.

### Parus Is Entitled to Attorney's Fees

18.    The Debtors should pay reasonable costs and expenses incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule 37, made applicable to these proceeding by Bankruptcy Rules 7037 and 9014. To begin with, Parus served its Document Requests on Debtors on February 7, 2005. Approximately six weeks later, Parus received a written response replete with objections and containing a paltry 343 pages of documents many of which were duplicative of documents produced in January by Debtors under Rule 26 and Bankruptcy Rule 7026. To date, no additional documents have been produced. Debtors have not even committed to a date certain to produce additional documents. Debtors made a proposal to produce their documents on May 31, 2005, more than two months after they submitted their written response. No documents were produced at that time. No offer was made by Debtors to review their own documents for responsiveness. Rather, Debtors invited Parus to fish around among 10,000 boxes of documents aided only by indexes that by Debtors own admission were "not very precise." When Parus resisted this proposal, Debtors accused it and its counsel of outrageous and unreasonable conduct. Only after this court gave Parus permission to

A 02012

present a motion to compel did Debtors offer for the first time to review their hard documents for responsiveness.

19.    This offer, which is no more or less than the Rules require, should have been made in March when Debtors responded to Parus' Document Requests. Parus should never have been put through the exercise, expense, and delay of bringing the instant Motion. The history of this dispute establishes that Debtors will take no action until faced with the possibility of court-imposed sanction. For these reasons, this Court should award Parus reasonable costs and attorneys' fees in connection with the presentation of this motion.

## CONCLUSION

For the foregoing reasons, Parus respectfully requests this Court to enter an order, substantially in the form annexed to Parus' Motion as Exhibit 1, (a) directing Debtors to produce documents responsive to Parus' First Request for Documents, dated February 7, 2005, by a date certain provided by this Court; (b) directing Parus' to produce documents responsive to Debtor's discovery request, dated September 30, 2004, by the same date certain provided by this Court; (c) directing Debtors and Parus to produce a privilege log regarding any documents either party is withholding pursuant to any alleged privilege as required by Local Bankruptcy Rule 7034-1(c), by the same date certain provided by this Court; (d) directing Debtors and Parus to bear their own costs of production; and (e) directing Debtors to pay the reasonable cost and expenses incurred in bringing this Motion, including reasonable attorney's fees, pursuant to Federal Rule 37, made applicable to these proceedings by Bankruptcy Rules 7037 and 9014, and such other relief as the Court deems appropriate. In addition, Parus requests that all discovery deadlines, including, but no limited to Parus' expert disclosure deadline, are extended appropriately by this

11

A 02013

Court from the date certain provided by this Court governing the responsive document and

privilege log productions.

Dated:        New York, New York
              August 8, 2005

                                              KELLEY DRYE & WARREN LLP

                                              By:  */s/ Stephen A. Wood*
                                                   Stephen A. Wood (SW 6270)
                                                   Robert S. Friedman (RF 1538)
                                                   Robert L. LeHane (RL 9422)

                                              101 Park Avenue
                                              New York, New York 10178
                                              Telephone:  (212) 808-7800
                                              Facsimile:  (212) 808-7897

                                              *Attorneys for Parus Holdings, Inc.,*
                                              *Successor-by-Merger to EffectNet,*
                                              *Inc. and EffectNet, LLC*

12

**A 02014**

## CERTIFICATE OF SERVICE

On the 8th day of August, 2005, I caused to be served Reply of Claimant, Parus Holdings, Inc., In Further Support of Its Motion to Compel Production of Responsive Documents And To Extend Discovery Deadlines, via Overnight Mail and/or via e-mail as indicated upon:

WorldCom, Inc. et al.                                    By Overnight Mail
1133 19th Street
Washington, D.C. 20036,
Attn: Anatasia Kelly, Esq., General Counsel

Weil, Gotshal & Manges                                   By Hand
767 Fifth Avenue
New York, New York 10153
Attn: Marcia L. Goldstein, Esq.
Attorneys for the Reorganized Debtors

Stinson Morrison Hecker, LLP                             By Overnight Mail & E-Mail
9200 Indian Creek Parkway
Suite 450
Overland Park, KS 66210
Attn: Lawrence W. Bigus, Esq.
Attorneys for the Reorganized Debtors

Office of the United States Trustee                      By Hand
33 Whitehall Street, 21st Floor
New York, New York 10004
Attn: Mary Elizabeth Tom, Esq.

Akin, Gump, Strauss, Hauer & Feld, LLP                   By Hand
590 Madison Avenue
New York, NY 10022
Attn: Ira S. Dizengoff, Esq.
Attorneys for the Official Committee of
Unsecured Creditors of WorldCom, Inc.


                                    */s/ Michelle Navarro*
                                    Michelle Navarro

# Exhibit K

A 02016

# ORIGINAL

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------x

In re

                        Case No.

WORLDCOM, INC., et al,      02-13533

          Reorganized Debtors.

-------------------------------x


          June 29, 2005

          3:13 p.m.

          United States Custom House

          One Bowling Green

          New York, New York    10004


     (Proceedings -- Entire Day)


3:00 02-13533 WORLDCOM, INC., et al


Conference call re Parus Holdings.


B E F O R E:

     THE HONORABLE ARTHUR J. GONZALEZ

     United States Bankruptcy Judge

1

2  A P P E A R A N C E S:

3      STINSON MORRISON HECKER LLP
       Attorneys for Reorganized Debtors

4          1201 Walnut Street
           Kansas City, Missouri    64106

5

       BY:  LAWRENCE BIGUS, ESQ.

6                              (via telephone)
                   -and-

7          DONALD RAMSAY, ESQ.
                               (via telephone)

8

9      KELLEY DRYE & WARREN LLP
       Attorneys for Parus Holdings

10         101 Park Avenue
           New York, New York    10178

11

       BY:  STEPHEN WOOD, ESQ.

12                             (via telephone)

13

14

15

16

17

18

19

20

21

22

23

24

25

A 02018

```
 1              Proceedings
 2              JUDGE GONZALEZ:  This is Judge
 3    Gonzalez.
 4              MR. WOOD:  Your Honor, Stephen Wood
 5    on behalf of the claimant Parus Holdings.
 6              MR. BIGUS:  Larry Bigus on behalf
 7    of the Debtors WorldCom.
 8              JUDGE GONZALEZ:  Originally I was
 9    going to do this conference call in my
10    chambers, but I realized that if my intention
11    was then to rule on the motion before me,
12    that I should do it on the record.
13              With respect to Parus Holdings'
14    motion to withdraw and/or amend deemed
15    admissions and to serve late responses and
16    objections to Debtors' discovery requests in
17    connection with the Debtors' objections to
18    the claims of Parus Holdings, Inc., the Court
19    finds that the appropriate analysis for
20    purposes of the admissions is Rule 36(b), and
21    under those standards the Court finds that it
22    would be appropriate to grant Parus Holdings'
23    request and enable them to then withdraw
24    and/or amend the deemed admissions.  However,
25    with respect to the objections to the
```

```
 1              Proceedings
 2  interrogatories and the requests for
 3  productions, the Court finds that the
 4  standard there is excusable neglect under
 5  9006.  The Court thus finds that Parus
 6  Holdings has not established excusable
 7  neglect and, therefore, the Court finds that
 8  such objections to interrogatories and
 9  requests for productions are waived.
10          Now, my recollection is that at the
11  last conference, I know there was a
12  discussion about when the production would
13  take place.  I am not sure where that
14  discussion ended with respect to both the
15  request for the Debtors to produce documents,
16  as well as the production for Parus, as to
17  whether or not that production had taken
18  place?
19          MR. BIGUS:  Judge, Larry Bigus.  My
20  recollection is that you ordered us to have
21  further discussions concerning the production
22  by both sides.  At this point, we have had
23  conversations.  Parus has produced about
24  23,000 pages.  WorldCom is in the process of
25  reviewing those.
```

```
 1              Proceedings
 2          Now that you have said that their
 3     objections are not valid, we would anticipate
 4     further production of documents, because
 5     there were a lot of objections to the
 6     requests.
 7          We have had discussions concerning
 8     the production by WorldCom.  We have agreed
 9     that the contents of those discussions would
10     be kept confidential between Mr. Wood, and
11     Mr. Ramsay of my firm, and myself, except for
12     discussions with the clients, if we came to
13     an agreement.  We haven't reached agreement.
14          I have told Mr. Wood that I would
15     send him a proposal as to how he might
16     proceed to review that volume of documents
17     and dealing with the cost-sharing issue where
18     we have substantial disagreement on who
19     should bear the burden of the cost of
20     producing that volume of documents, some
21     electronic and some hard.
22          MR. WOOD:  Your Honor, Mr. Wood on
23     behalf of Parus.  We have raised the issue of
24     amending the schedule with the Court, because
25     we were waiting to receive the bulk of the
```

1          Proceedings

2  documents to be produced by the Debtors.  We

3  were coming up on a deadline for us to

4  disclose our expert witnesses.  That deadline

5  was June 20th under the current scheduling

6  order that is in place.  The Court has

7  extended that deadline to July 5th, pending

8  the conduct of this hearing.  I have had some

9  conversations with counsel for the Debtors

10  about a date to extend the deadline for our

11  disclosing of expert witnesses, and we were

12  in agreement that an appropriate deadline

13  would be 120 days out.

14          There was an issue that I raised

15  with counsel for the Debtors concerning their

16  production of documents, because we have

17  received a proposal from them to produce

18  documents but no documents yet.  I believe

19  that is in part because there is a

20  disagreement between the parties as to the

21  manner in which the documents should be

22  produced.  So I was going to seek from the

23  Court to include in the amended scheduling

24  order an intermediate deadline for all the

25  parties to produce their responsive

```
 1              Proceedings
 2   documents, which would also apply to us,
 3   which would include any additional documents
 4   that we had to produce in light of the
 5   Court's ruling on our motion.  So that is the
 6   only other issue that I would raise at this
 7   time.
 8              JUDGE GONZALEZ:  How does that then
 9   resolve the dispute or does it just leave it
10   to the parties to resolve it and then for me
11   to be involved, if it is not resolved?
12              MR. BIGUS:  Your Honor, this is
13   Larry Bigus.  In my opinion we have legally
14   produced the documents.  We have given them
15   indexes to tens of thousands of boxes.  We
16   have given them the location where those
17   boxes are kept.  Under Rule 34(b) we have
18   chosen to produce those as they are kept in
19   the usual course of business.
20              Now, I acknowledge there are real
21   world practicalities that WorldCom has an
22   obligation to deal with and I think so do the
23   claimants.  I think creating an artificial
24   deadline, that Your Honor is right on point,
25   that it doesn't solve anything.  WorldCom
```

```
 1              Proceedings
 2   obviously has to go through the boxes at some
 3   level.   It is a question of how many of those
 4   boxes then get handed over to the claimants.
 5   It is a question of who pays to take them off
 6   the shelf, which could be $30,000 to $50,000;
 7   and it is a question of who does some very
 8   expensive searches of electronic documents.
 9   It will probably end up being outside vendors
10   who have the technology available to do it.
11   I don't think setting an artificial deadline
12   resolves the real world practicality.  We
13   want to produce the documents.  We have
14   offered to produce documents beyond what the
15   claimants have requested.  The claimants have
16   objected to that as a means to hide what is
17   really responsive.  I didn't mean it that
18   way.  We really are letting them, if they
19   want, to go review all of these documents.
20              In order to solve the problem of
21   the 120-day deadline to name experts and what
22   has been reviewed by them, I offered to put a
23   statement in the amended scheduling order
24   that we are going to propose to you that says
25   (1) we need to review all of these documents
```

```
 1              Proceedings
 2   before they can name experts, (2) that it may
 3   take time to accomplish the review and there
 4   are disagreements over how to do the review
 5   and the costs, and (3) that if the review
 6   wasn't completed by 120 days, that they could
 7   seek an additional extension of time in order
 8   to try to solve the issue.
 9              I think to set an artificial
10   deadline to produce this volume of documents
11   absolutely accomplishes nothing for either
12   side, and that Mr. Wood has to wake up to the
13   fact that even if we review all of them
14   first, he is going to have thousands and
15   thousands of boxes to get through that he is
16   going to have to undertake.
17              MR. WOOD:  Your Honor, we thought
18   it reasonable to request a date certain by
19   which the parties would turn over all
20   responsive documents.  That is, produce them
21   to the other side.  We have received some
22   indexes from the Debtors, but the indexes are
23   indecipherable to us.  They were created by
24   them.  There are alphanumeric designations in
25   there that don't mean anything to us.  We
```

```
 1              Proceedings
 2    can't tell whether or not the boxes that are
 3    reflected in the indexes contain responsive
 4    documents or not.
 5              Now, we served our request for
 6    production of documents on the Debtors back
 7    in February, on February 7th, and we are
 8    still waiting for the bulk of their documents
 9    to be produced.  We received about 400, but
10    no less than 500, pages of documents.  But
11    that is it.  It seems reasonable to me to ask
12    the Court to impose a deadline for document
13    production to be completed in advance of the
14    deadline for disclosing expert witnesses, and
15    that is what we were seeking here.
16              MR. BIGUS:  Your Honor, this is
17    Larry Bigus.  The documents have been legally
18    produced under Rule 34(b).  We filed a
19    response to their requests timely.  We have
20    told them where the documents are.  We have
21    told them, "Tell us when you want to go, and
22    we will tell the warehouses to show them to
23    you."  We have legally produced the
24    documents.  The question is how in the
25    practical, real world to enable them to
```

```
 1              Proceedings
 2   review the documents and who pays the costs
 3   for taking the box off the shelf, which gets
 4   expensive when you are dealing with tens of
 5   thousands of boxes.
 6              So the documents have been legally
 7   produced.  It is a question of real world,
 8   how do you review them?  We want to help them
 9   to do it.  We don't know what the
10   alphanumeric designations mean either.  The
11   people who made these indexes were employees
12   of Intermedia.  As the Court knows,
13   Intermedia has been shut down.  These
14   employees who would know this information are
15   no longer with us.
16              MR. WOOD:  Your Honor, there is an
17   interesting thing about one of these indexes
18   that was produced by the other side.  There
19   were 10 indexes, and the longest of these
20   indexes contains references to a number of
21   boxes.  Some of these boxes have been
22   highlighted.  If you look at the general
23   descriptions of the contents, they don't mean
24   anything to us.  I can't tell what is in
25   these boxes.  But at the end of the index
```

```
 1              Proceedings
 2    there is a key that someone has created, and
 3    the key identifies the highlighted boxes and
 4    describes what is in those highlighted boxes
 5    and describes the contents that are
 6    responsive to our requests.  So it appears as
 7    though someone has gone through that index
 8    and identified boxes that have responsive
 9    documents.  If they can do that for one
10    index, I don't know why they can't do that
11    for the rest of the indexes, and I don't know
12    why those boxes and those documents haven't
13    been produced.
14              MR. BIGUS:  Your Honor, those boxes
15    have been produced.  We made an attempt to
16    try to identify what we thought was
17    responsive.  As the Court can tell, we sent
18    what we were able to determine to Mr. Wood.
19    We do not know for sure whether or not there
20    might be responsive documents in other boxes.
21    We simply gave Mr. Wood our indication of
22    what we thought was probably responsive, but
23    that doesn't mean it defines the entire
24    universe.  We looked at all of the indexes
25    and did our best, as Mr. Wood just pointed
```

```
 1              Proceedings
 2    out to the Court, to give Mr. Wood as much
 3    information as we could give him, far beyond
 4    what is required by the rule.
 5              If Mr. Wood wants to come down
 6    tomorrow morning and look at those boxes that
 7    have been highlighted, we will call the
 8    warehouse and tell the warehouse that
 9    Mr. Wood will be at the warehouse where these
10    documents are located tomorrow morning.  It
11    is up to Mr. Wood to go to the documents and
12    look at them.  We have made them available.
13    We have told him where they are.  I don't
14    know what more we can do to have them legally
15    produced, than tell them where they are and
16    tell them all you have to do is call us and
17    we will tell the warehouse to let them in.
18              Now, we do want to go at the same
19    time he does, so that as each box is pulled,
20    we can look in the box to make sure there is
21    no privileged communication.  But other than
22    that, he can go look at them right now.
23              MR. WOOD:  The only other thing I
24    would say, Your Honor, is that we did produce
25    23,000 pages of documents.  We undertook
```

BENJAMIN REPORTING   (212)374-1138    DOYLE REPORTING   (212)867-8220
A VERITEXT COMPANY

A 02029