```
 1              Proceedings
 2   considerable effort and expense to locate
 3   these documents and review them and produce
 4   them, and we are asking for the Debtors to do
 5   no more and no less.  These are their
 6   documents in these depositories and their
 7   indexes.  Certainly they know them better
 8   than we do.  Someone has gone through one of
 9   these indexes and identified boxes with
10   responsive documents, and I think they can do
11   that with regard to the rest of them.
12              Your Honor, if the Court would
13   like, we can present a motion to compel and
14   we can brief these issues, and I think that
15   might be the appropriate thing to do.
16              JUDGE GONZALEZ:  I think you are
17   going to have to, because I believe what I am
18   going to need is some form of affidavit
19   regarding the motion to be filed in response
20   to it to set forth what has been done and
21   what the legal arguments are regarding what
22   has to be done.
23              MR. WOOD:  Your Honor, Parus
24   Holdings will file a motion to compel.  I
25   would like 14 days to get that on file
```

1                  Proceedings

2   because of the upcoming July 4th holiday.

3            JUDGE GONZALEZ:  That is all right.

4            MR. BIGUS:  Your Honor, I am going

5   to assume when he does that, you want an

6   informal letter request pursuant to the

7   procedures and the local rules or at this

8   point you want a formal motion that we

9   actually come to New York and argue?

10            JUDGE GONZALEZ:  I think at this

11   point it has dragged on a little bit longer

12   than it should have from my end, so you might

13   as well do a formal motion.  I don't think we

14   are going to get very far with informal

15   letter responses at this stage.

16            MR. BIGUS:  I would like to inform

17   the Court that I am out the 8th through the

18   18th of July, and that any hearing that we

19   need on this needs to be after that date, so

20   that I don't get stuck trying to move a

21   hearing during the time period when I am

22   already scheduled to be out of the office.

23            MR. WOOD:  We will obviously work

24   with counsel.

25            JUDGE GONZALEZ:  Work through that.

A 02031

```
 1              Proceedings
 2    I think you can check the Court's docket and
 3    see what dates are available early in August
 4    for WorldCom, and you may pick one of those
 5    dates.
 6              MR. BIGUS:  Mr. Wood, I am telling
 7    you right now that if you want to start by
 8    reviewing document boxes which have been
 9    highlighted, tell me when you want to be at
10    which depository, and you can start
11    reviewing.
12              MR. WOOD:  We will prepare our
13    motion and submit it to the Court.
14              Your Honor, as far as the deadline
15    for disclosing expert witnesses is concerned,
16    the parties had agreed to a new deadline of
17    120 days beyond the original deadline.
18              JUDGE GONZALEZ:  Let's leave it at
19    that for now, and then ultimately I guess it
20    gets addressed at that hearing
21              MR. WOOD:  Thank you, Your Honor.
22              MR. BIGUS:  Thank you, Your Honor.
23              (Time noted:  3:28 p.m.).
24
25
```

```
 1
 2                      C E R T I F I C A T E
 3    STATE OF NEW YORK        )
                                : SS:
 4    COUNTY OF NEW YORK       )
 5
 6           I, DEBORAH HUNTSMAN, a Shorthand
 7    Reporter and Notary Public within and for the
 8    State of New York, do hereby certify:
 9                  That the within is a true and
10    accurate transcript of the proceedings taken
11    on the 29th day of June, 2005.
12           I further certify that I am not
13    related by blood or marriage to any of the
14    parties and that I am not interested in the
15    outcome of this matter.
16           IN WITNESS WHEREOF, I have hereunto
17    set my hand this 1st day of July, 2005.
18
19           DEBORAH HUNTSMAN
20
21
22
23
24
25
```

# Exhibit L

A 02034

1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

--------------------------------x

In re

WORLDCOM, INC., et al,    Case No.

02-13533

Reorganized Debtors.    ORIGINAL

--------------------------------x

August 9, 2005

10:40 a.m.

United States Custom House

One Bowling Green

New York, New York    10004

E X C E R P T

(Parus Holdings, Inc.)

10:30 Motion by Parus Holdings, Inc. to

compel production of documents and to extend

discovery deadlines.

Response filed.

B E F O R E:

THE HONORABLE ARTHUR J. GONZALEZ

United States Bankruptcy Judge

BENJAMIN REPORTING    (212)374-1138    DOYLE REPORTING    (212)867-8220
A VERITEXT COMPANY

A 02035

2

1

2

A P P E A R A N C E S :

3

WEIL, GOTSHAL & MANGES LLP

4    Attorneys for Reorganized Debtors
          700 Louisiana, Suite 1600

5          Houston, Texas   77002

6    BY:  ALFREDO R. PEREZ, ESQ.

7

STINSON MORRISON HECKER LLP

8    Attorneys for Stinson Morrison Hecker
          1201 Walnut Street

9          Kansas City, Missouri   64106

10    BY:  ROBERT DRISCOLL, ESQ.

                         (via telephone)
11          JENNIFER COLEMAN, ESQ.

                         (via telephone)
12          DARRELL W. CLARK, ESQ.

                         (via telephone)
13          SHANE MECHAM, ESQ.

                         (via telephone)
14          PATRICIA KONOPKA, ESQ.

                         (via telephone)
15            -and-
          NORMAN BEAL, ESQ.

16                         (via telephone)
17    KELLEY DRYE & WARREN LLP

      Attorneys for Parus Holdings
18          333 West Wacker Drive
          Chicago, Illinois   60606

19

BY:  STEPHEN A. WOOD, ESQ.

20

21

22

23

24

25

A 02036

3

1                    Proceedings

2                    (Whereupon, the following is an

3          excerpt from the proceedings taken on 8/9/05

4          in re WorldCom, Inc., et al, Case No.

5          02-13533)

6                    JUDGE GONZALEZ:  I will take a

7          brief recess so that the parties on Parus

8          Holdings, who are present in the courtroom,

9          may set themselves up.  I will return at

10         10:30.

11                   (Whereupon, from 10:25 p.m. to

12         10:40 a.m. a recess was taken.)

13                   JUDGE GONZALEZ:  Please be seated.

14                   Parus Holdings?

15                   MR. WOOD:  Good morning, Your

16         Honor.  Stephen Wood on behalf of the

17         Claimant Parus Holdings.

18                   This is Parus Holdings' motion to

19         compel production of documents from the

20         Debtors Intermedia Communications and MCI

21         Worldcom Communications, Inc.  Our motion

22         contains an exhaustive recitation of the

23         circumstances surrounding this discovery

24         dispute.  I don't intend this morning to wade

25         through all of the details.  I would like to

A 02037

4

1          Proceedings

2    highlight certain facts that I think are

3    particularly pertinent to the motion.

4              On February 7, 2005, over six

5    months ago, we served our request for

6    production of documents.  On March 25, 2005,

7    we received a written response from the

8    Debtors.  They objected to every single one

9    of our requests.  Along with this, we

10   received the production of 33 documents

11   consisting of over 343 pages.  In this

12   production in their written response the

13   Debtors indicated that they had thousands of

14   boxes of documents within warehouses.  We had

15   been informed about this probably a couple of

16   weeks before that by telephone.  We don't

17   know at this point exactly how long it is the

18   Debtors had known about these boxes in

19   warehouses.

20             Interestingly, during the

21   teleconference with the Court on June 29th,

22   where we were given leave to present this

23   motion to compel, the Court suggested that

24   the Debtors submit an affidavit regarding

25   their efforts to produce documents.  I

A 02038

5

<pre>
                    Proceedings
</pre>

1
2   haven't seen such an affidavit so far, Your

3   Honor.

4           Now, after March 25th, for several

5   weeks we didn't receive any further

6   communication or documents from the Debtors,

7   so on May 12th I contacted Debtors' counsel

8   to inquire about documents, but also about

9   the scheduling order because we had a June

10  20th deadline for disclosing experts.  I

11  represented to Debtors' counsel that since we

12  hadn't received the documents and we hadn't

13  taken depositions of any of their witnesses,

14  we weren't in a position to disclose our

15  experts.  I asked them to agree to amend the

16  schedule.  They subsequently informed me that

17  they would object and would not agree to

18  amending the schedule allowing us additional

19  time to disclose experts.

20          Finally, on May 31st I received,

21  not documents, but a proposal from Debtors'

22  counsel for production of these thousands of

23  boxes of documents that were stored in

24  warehouses.  The essence of the proposal was

25  that there were indexes for these documents.

A 02039

6

1                        Proceedings

2    The indexes were not very precise.  In fact,

3    Debtors' counsel admitted they were not able

4    to use these indexes to help them identify

5    responsive documents.  Nevertheless, they

6    wanted to provide us with these indexes and

7    they invited us to review them to identify

8    boxes of documents that were responsive to

9    our requests, that they would then review for

10   privilege and confidentiality and produce it

11   to us.  This proposal again recited the

12   litany we had heard earlier about thousands

13   of boxes of documents stored in multiple

14   locations around the country.

15          Now, the letter also interestingly

16   indicated that they hadn't actually reviewed

17   any of the stored documents at that point.

18   There was no mention in this proposal

19   regarding electronic documents.  Now, we

20   wrote them back the next day and, frankly, we

21   resisted this proposal.  I didn't feel that

22   if their own indexes were not helpful to

23   them, they would be of any use to us.

24          Now, there was a hearing before

25   Your Honor on June 14th on another motion.

A 02040

1                   Proceedings

2      Parus had brought a motion to amend that was

3      argued on that day.  During the argument on

4      that motion, I raised the issue of the

5      scheduling order and the discovery problems,

6      and the Court directed the parties to confer

7      about the schedule and about these discovery

8      issues.  As a result of that conference with

9      counsel, we agreed to take a look at their

10     indexes and they were going to try to move

11     the process forward.

12           The next thing is the indexes were

13     transmitted to us.  I looked at them

14     personally and they really were not of any

15     help to us.  There are a number of codings

16     that are used in these indexes that are

17     meaningless to us, and we were not able to

18     identify boxes of responsive documents with

19     these indexes.

20           Now, as I said, this Court held a

21     telephone conference on June 29th regarding

22     the scheduling order and these discovery

23     issues.  Interestingly, that morning I

24     received a telephone call from Debtors'

25     counsel where they offered to agree to a

Proceedings

1    120-day extension to our deadline to

2    disclosure experts.  I don't know what

3    happened in the interim to cause them to

4    change their position, but it may have had

5    something to do with the fact that a

6    conference was scheduled with the Court that

7    afternoon.  I asked them if they would then

8    agree to produce the documents by a date

9    certain in advance of the disclosure deadline

10   for our experts and they refused to.

11            Now, prior to the telephone

12   conference with the Court on June 29th, the

13   Debtors also began to take the position that

14   they had, in fact, produced their documents.

15   I received an e-mail communication from

16   Debtors' counsel which stated the following:

17   "On May 31, 2005 we sent you a letter which

18   produced the documents and talked about the

19   procedures for production.  We have advised

20   you as to the location of the documents.  You

21   have an index of the documents.  The

22   documents have been produced and it is up to

23   you to inform us as to when you want to

24   review the documents."

Proceedings

1

2          Additionally, there is the subject

3    of the cost of review.  "Since you want to

4    examine the documents we expect that you will

5    pay the cost of removing them from the

6    storage shelves and returning them to the

7    storage shelves."  Now, they are asking us to

8    also pay for the costs of reviewing their

9    documents.

10          We advised the Debtors on the 27th

11   of June that their indexes were not helpful.

12   Frankly, since the 25th of the March, when we

13   received their written response to our

14   request for production of documents, it

15   appeared as though the Debtors really hadn't

16   done anything with regard to these stored

17   documents and reviewing and producing them to

18   us.

19          Now, in an e-mail to the Debtors'

20   counsel on the 27th of June, we found out

21   that there were still more documents that

22   evidently were responsive that they were

23   intending to produce.  I don't know where

24   these documents were kept or where they were

25   coming from or why they hadn't been produced

1          Proceedings

2    earlier.  There was no explanation with

3    regard to that in the e-mail communication

4    from Debtors' counsel.

5          Now, as I said, there was an

6    informal conference with Your Honor on the

7    29th of June, where we were granted leave to

8    file a motion to compel.  Within an hour

9    after that telephone conference had

10   concluded, we received an offer from Debtors'

11   counsel where for the first time they agreed

12   to review their boxes of documents for

13   responsiveness.  This was made in spite of

14   earlier representations from the Debtors that

15   they had done more than the rules required,

16   and despite earlier representations by the

17   Debtors, that they had no way to tell which

18   boxes of documents were responsive.

19          Now, in response to this proposal,

20   I saw this as progress, Your Honor, but they

21   still wanted us to absorb costs for producing

22   these documents, and they would not commit to

23   producing the documents by a date certain.

24   For those reasons, I declined their offer.

25          Amazingly, a few days later we

### Proceedings

1
2  received a supplemental document response,
3  which contained objections to every single
4  one of our document requests with no
5  documents.  On that same day we also received
6  correspondence from Debtors' counsel wherein
7  they demanded that we respond with all of our
8  remaining documents to be produced within 10
9  days.  In light of their position and their
10  refusal to commit to producing their own
11  documents by a date certain, I found this
12  demand to be quite astounding.
13          I suspect that counsel for the
14  Debtors will represent to the Court that all
15  of the steps that they have taken so far have
16  been reasonable and in compliance with the
17  rules.  I don't agree with that, Your Honor.
18          In our motion we have cited the
19  Chemtex case, which is a Southern District of
20  New York case, which I believe supports our
21  position.  Rule 34 of the Federal Rules of
22  Civil Procedure, which is applicable to this
23  proceeding, provides that parties may produce
24  documents in the manner in which they are
25  kept in the usual course of business.

Proceedings

1    

2    However, I believe that the usual course of

3    business does not cut it, if you will, when

4    that claim has the effect of affording

5    legitimate discovery.  This is the point that

6    is made by the Court in the Chemtex case.  In

7    that case the plaintiffs served a request for

8    documents.  The documents were organized

9    chronologically, rather than by customers.

10   The plaintiffs were seeking documents

11   relevant to a couple of particular customers.

12   The defendant in that case invited the

13   plaintiffs to come in and review the

14   documents in the manner in which they were

15   allegedly kept in the usual course of

16   business.  The Court held that that was

17   insufficient under the rules, because the

18   state of the corporation's records would make

19   it unreasonably burdensome for the

20   discovering party to search for the sought

21   after documents, the burden falls to the

22   discoveree to organize the documents so that

23   the discoverer can make reasonable use of

24   them.

25            Now, the cases that have been cited

Proceedings

1
2  by the Debtors in their response to our

3  motion, I believe, Your Honor, are actually

4  not inconsistent with this principle.  I

5  believe the courts in those cases came to the

6  conclusion that responsive documents were, in

7  fact, produced in those cases and that

8  plaintiffs had been given reasonable access

9  to those documents.  That is not the case

10  here.

11          Now, in the response the Debtors

12  indicate that they are prepared to review and

13  produce 387 boxes of documents from these

14  warehouses that they have been discussing

15  repeatedly throughout this discovery dispute.

16  I don't know why they didn't offer to produce

17  these 387 boxes of documents back in March.

18  I don't understand.  My client is frankly

19  troubled, Your Honor, because he had to go to

20  the expense of bringing a motion to compel to

21  get progress in discovery.  I think the

22  history of discovery in this case is that the

23  Debtors won't take action until there is

24  imminent Court involvement.  They wouldn't

25  agree to extend the deadline for expert

A 02047

1           Proceedings

2    disclosure until we were on the cusp of a

3    teleconference with the Court, and they

4    wouldn't agree to review and produce

5    documents from these warehouses until we were

6    given permission to present a motion to

7    compel.  I believe that that justifies an

8    award of fees and costs incurred in

9    presenting this motion this morning.

10        I would say one last thing about

11    this motion for summary judgment that the

12    Debtors have filed.  It was filed one week

13    ago on August 1st.  I believe, Your Honor,

14    that it was filed without compliance with the

15    local rules which requires parties to request

16    an informal premotion conference.  Frankly,

17    the motion for summary judgment quite

18    extraordinarily states that if it is granted,

19    we would be entitled to no discovery

20    whatsoever, which I certainly don't agree

21    with and I don't agree with the merits for

22    the motion for summary judgment.  I don't

23    think that the motion for summary judgment

24    should be considered, frankly, particularly

25    in light of the fact that it was improperly

|  |  |
|--|--|
| 1 | **Proceedings** |
| 2 | filed in response to our opposition to this |
| 3 | motion to compel. |
| 4 | In our motion to compel, Your |
| 5 | Honor, we didn't address the issue of |
| 6 | electronic documents.  Frankly, I don't think |
| 7 | there is a sufficient factual record before |
| 8 | the Court to deal with the issue of |
| 9 | production or cost shifting with regard to |
| 10 | the Debtors' electronic documents.  We |
| 11 | indicated in our motion and in the brief |
| 12 | reply, which we filed yesterday, that we |
| 13 | would like to work with the Debtors' counsel |
| 14 | to see if there was some resolution that we |
| 15 | can work out with regard to the production of |
| 16 | their electronic documents.  I don't think |
| 17 | that that is an issue that is completely ripe |
| 18 | for consideration by this Court today. |
| 19 | The relief that we are seeking, |
| 20 | Your Honor, is an order directing the parties |
| 21 | to produce their responsive documents.  It is |
| 22 | applicable to both parties by both sides by a |
| 23 | date certain.  I am willing to listen to the |
| 24 | proposal of the Debtors' counsel concerning |
| 25 | the date.  We would also like both parties to |

Proceedings

1

2  be required to produce a privilege log by

3  that same date.  The order should direct the

4  parties to bear their own costs of

5  production.  As I said earlier, I would

6  request an award of reasonable fees and costs

7  in connection with bringing this motion.

8          Thank you.

9          JUDGE GONZALEZ:  The Debtors?

10         MR. DRISCOLL:  Your Honor, this is

11  Robert Driscoll for the Debtors.

12         Initially, as a point of

13  clarification, counsel advised the Court that

14  the Debtors were to provide an affidavit to

15  the Court per the Court's advice.  I forget

16  the date.  June 29, 2005 was the telephone

17  conference.  I have the transcript in front

18  of me and at page 14 the Court advised

19  counsel for Parus Holdings to file an

20  affidavit in connection with his anticipated

21  motion to compel, which, in fact, counsel

22  did.  The Court was not directing the Debtors

23  to do that.

24         With regard to the motion to

25  compel, which is in front of the Court today,

A 02050

Proceedings

1    Proceedings
2    I believe it really all just centers on what
3    constitutes production of documents in the
4    usual course of business as provided by Rule
5    34 of the Federal Rules of Civil Procedure.
6    Here it regards a contract between Parus
7    Holdings' predecessor company EffectNet and
8    one of the Debtors, Intermedia, Inc.
9            As the Court knows, Intermedia is a
10   bankrupt entity that ceased functioning as a
11   going concern quite some time ago and, as we
12   have discovered, its documents have been
13   boxed up and stored.  All this occurred long
14   before the current discovery request by Parus
15   Holdings.
16           As counsel has advised and the
17   papers in front of the Court advise, we are
18   told that the number of boxes of material in
19   Intermedia's documentary remains are in
20   excess of 10,000.  They are located in four
21   different repositories in various parts of
22   the United States.  All this is reflected in
23   the declaration of Attorney Ramsay from our
24   law firm, which is Exhibit E to our response
25   in opposition to the current motion to

1          Proceedings

2    compel.

3          As Mr. Ramsay explained in his

4    response, just to gather the over 10,000

5    documents in one place, so that they could be

6    systematically reviewed, based on a vendor's

7    bid, it would cost approximately $149,000.

8    That is just for logistics.  It does not

9    count the cost probably double that for

10   actual review by trained personnel.

11          As to the efforts the Debtors have

12   made to deal with the document request that

13   it has presented, after the existence of

14   those documents was learned, as counsel

15   acknowledges, Parus Holdings was advised of

16   that and the Debtors offered at least two

17   options to Parus Holdings on how to deal with

18   the production of documents, both of which

19   were rejected.  The first we offered to

20   provide and did provide indexes to those

21   boxes to counsel so that counsel could select

22   which boxes they wanted WorldCom to examine

23   and then produce.  That was rejected as

24   reflected in Exhibit I to our response by

25   counsel on June 27th, advising that after his

Proceedings

1
2    review of the indexes they were too general

3    and that nonresponsive documents were

4    involved and were meaningless.

5          Next WorldCom offered to review all

6    of the documents itself and to screen those

7    for privilege.  It also offered to either

8    provide to Parus Holdings all of the

9    remaining documents after a privilege screen

10   or, if Parus Holdings chose, to provide all

11   documents that we believed were responsive to

12   the document request after that review.  In

13   connection with that offer, there was a

14   request for a split of the logistical costs,

15   not the cost of reviewing the documents.  All

16   of that is reflected on Exhibit K to the

17   Debtors' response in opposition.  Again, this

18   proposal was rejected by Parus Holdings and

19   that is reflected in Exhibit L.

20         Finally, as our response starting

21   at page 9, I indicated this along with

22   Mr. Ramsay's declaration Exhibit E, WorldCom

23   is in the process of doing now what Parus

24   Holdings initially refused to do, and that

25   is, based on a review of the very same

1          Proceedings

2    document indexes to first rule out those

3    obviously nonresponsive boxes of documents

4    based on the index and then to pull others

5    within the time frame overlapping and before

6    and after the contractual relationships

7    between Intermedia and WorldCom and then to

8    review those.  As you have been advised, the

9    number of those document boxes that we have

10   identified is 387.  They are currently

11   located in Kansas City, having been shipped

12   to three different repositories, and we have

13   a team of legal personnel looking through

14   them.

15          Counsel is correct, I do believe,

16   that that constitutes a good faith effort to

17   be in compliance with the requirements of

18   Rule 34.  I also believe that none of the

19   authorities cited by Parus Holdings are to

20   the contrary.  All except one, the Hagemeyer

21   case from the Eastern District of Wisconsin

22   involved producing parties which were ongoing

23   concerns -- General Motors, Sears, and the

24   like.  All they wanted in the Hagemeyer case

25   involved an entity that was factually similar

Proceedings

1     

2     to Intermedia.  There that producing party

3     was also going bankrupt.  That party also had

4     its documents boxed and stored.  That party

5     also made those documents available to the

6     other side, which the Court upon reviewing

7     all of that, deemed compliant.  If the Court

8     now deems WorldCom's motion for summary

9     judgment as permissible, which I believe it

10     is --

11           JUDGE GONZALEZ:  It was filed,

12     apparently, in violation of the local rules.

13           MR. DRISCOLL:  It was filed without

14     a conference, Your Honor.

15           JUDGE GONZALEZ:  It was filed in

16     violation of the local rules.

17           MR. DRISCOLL:  Yes, Your Honor.

18           JUDGE GONZALEZ:  Move on.

19           MR. DRISCOLL:  May we request leave

20     to file such?

21           JUDGE GONZALEZ:  Are you talking

22     about whether or not I would grant it right

23     now?

24           MR. DRISCOLL:  If the Court doesn't

25     wish to entertain this now, then I will

22

1

2    withraw the question?

3       JUDGE GONZALEZ:  Yes.  You may

4    withdraw the question.

5       Go ahead.

6       MR. DRISCOLL:  At this juncture I

7    believe WorldCom has made a good faith effort

8    to supply the documents that it has given the

9    circumstances present.

10       JUDGE GONZALEZ:  You went through

11    the recitation of the facts as you see them.

12    What do you anticipate happening and when and

13    where will the documents be available?

14       MR. DRISCOLL:  The boxes of the 387

15    that WorldCom has identified are in an

16    auxiliary facility of this law firm in Kansas

17    City now.  It has taken weeks to get them

18    here, but they are now here.  They are

19    currently being examined by legal personnel.

20    I am advised that a review of those boxes

21    will take approximately six to eight weeks,

22    involving approximately six trained people

23    pretty much fulltime.

24       JUDGE GONZALEZ:  Where does that

25    six to eight weeks fit into the discovery

A 02056

1              Proceedings

2    time frame?

3          MR. DRISCOLL:  Your Honor, it would

4    not fit in at all.  In that regard, we would

5    have no problem at all extending that

6    discovery time frame.

7          JUDGE GONZALEZ:  Then the documents

8    would be made available in Kansas following

9    your review?

10          MR. DRISCOLL:  They would be made

11    available, as the parties agreed under

12    whatever terms the parties think are

13    appropriate.  Certainly, here in Kansas City

14    would be one such place.  If that is not

15    agreeable, then whatever is.

16          JUDGE GONZALEZ:  Parus Holdings,

17    what is your objection to that proposal,

18    other than you may think it took too long to

19    get there?

20          MR. WOOD:  I don't have any

21    objection, Your Honor, to concurring with

22    counsel regarding the appropriate location

23    for producing these documents to us.  It may

24    be, in fact, depending on the circumstances,

25    more cost effective for us to send some

A 02057

1                     Proceedings

2     people to Kansas City.  I just don't know at

3     this point, but I am happy to discuss that

4     with counsel.  As far as their agreeing to

5     review and produce 387 boxes of documents and

6     reviewing them for responsiveness or

7     producing responsive documents to us at their

8     cost, I have no objection to that whatsoever.

9               I was going to make a suggestion,

10    Your Honor.  I think it might make sense at

11    this point and I don't want Debtors' counsel

12    to review all 10,000 boxes of documents.  If

13    there are documents in there or boxes of

14    documents that are clearly outside the

15    relevant time frame or clearly unrelated to

16    the issues in this case, I don't want to

17    waste time looking at all 10,000 boxes of

18    documents.  I do want them to produce

19    documents that are responsive to our

20    requests.  We can take a look at the 387

21    boxes of documents and see where we stand

22    after we have had an opportunity to review

23    them.  It may be appropriate, Your Honor, at

24    that point for us to have a informal

25    conference with the Court and advise the

1          Proceedings

2    Court as to the status of the document

3    production at that point.

4          JUDGE GONZALEZ:  I think it would,

5    because it would seem to me if you get to the

6    300 number, the descriptions on the boxes

7    were reviewed and certain boxes were

8    eliminated, and I would imagine that you may

9    take issue with the elimination of certain

10   boxes based on the information contained in

11   the inventory as to whether that was

12   sufficient enough to make the judgment that

13   these boxes were not related.  I imagine that

14   may be an issue.

15         MR. WOOD:  That is a good point,

16   Your Honor.  As I have been thinking about

17   these issues, what I anticipate that may need

18   to happen here is that we may need to take

19   the deposition of the person most

20   knowledgeable for the Debtors concerning how

21   these documents were stored and how these

22   indexes were created and that sort of thing,

23   so that we can better understand exactly what

24   efforts the Debtors have undertaken to

25   respond to our document requests.

1          Proceedings

2          JUDGE GONZALEZ:   Based on the

3    Debtors' representation, I don't think Parus

4    is going to see these documents for six or

5    eight weeks, but I guess you would be able to

6    see the list of the 300 or so boxes and match

7    that up against the original list you have?

8          MR. WOOD:   Yes.   I would imagine

9    that that probably could be provided

10   forthwith.

11         JUDGE GONZALEZ:   Do both sides

12   think that August 30th is too soon to react

13   to the proposal that is before me now?

14         MR. WOOD:   Do you mean that is the

15   date by which they should be prepared?

16         JUDGE GONZALEZ:   No.   I mean at

17   that point, I think if you were able to

18   review the list of the 10,000 boxes or review

19   the list of the 300 boxes, you may get a

20   sense at that point as to whether or not you

21   are going to need any further discovery on

22   the whole issue as to whether it was

23   reasonable to pare them down from 10,000 to

24   the 300.

25         MR. WOOD:   I think we can do that

1                   Proceedings

2    by the end of August.

3              JUDGE GONZALEZ:   The Debtors?

4              MR. DRISCOLL:   Yes.   Your Honor,

5    counsel already has the indexes to the

6    documents.   We can certainly supply within

7    this week some form of notification for which

8    those were chosen to be pulled and are being

9    examined.

10             JUDGE GONZALEZ:   I am going to put

11   off then any further consideration of this

12   until August 30th, and, hopefully, I think

13   what I will do is ask when August 30th is

14   scheduled for this matter, that 45 minutes

15   may be set aside on the calendar in case that

16   time might be necessary.

17             MR. WOOD:   The Court is going to

18   set a hearing in this matter for August 30th?

19             JUDGE GONZALEZ:   I am going to

20   continue this hearing until August 30th.

21             MR. WOOD:   I don't have my calendar

22   in front of me, Your Honor.

23             JUDGE GONZALEZ:   I am sure it is a

24   Tuesday.

25             MR. DRISCOLL:   My apologies, Your

Proceedings

1
2    Honor, I do have a conflict.  It is personal.

3             JUDGE GONZALEZ:  I believe we can

4    put it on sometime on Thursday, September

5    1st.  Do you have a conflict then?

6             MR. WOOD:  Yes, Sir.

7             JUDGE GONZALEZ:  When are you out

8    of conflict?

9             MR. WOOD:  After Labor Day, Your

10   Honor.

11            JUDGE GONZALEZ:  Labor Day, I

12   assume is September 5th?

13            MR. DRISCOLL:  I believe it is.

14            JUDGE GONZALEZ:  Mr. Perez, do you

15   know if we have WorldCom hearings on

16   September 6th?

17            MR. PEREZ:  Your Honor, I don't

18   know whether we have WorldCom hearings on

19   September 6th.  I am pretty sure we have them

20   the following week.

21            JUDGE GONZALEZ:  On the 13th?

22            MR. PEREZ:  It would take me two

23   minutes to check.

24            JUDGE GONZALEZ:  Check to see if we

25   have WorldCom on the 6th; and if not the 6th,

Proceedings

1    then it would be the 13th.

2

3        We will begin the next matter.  We

4    will get an answer shortly as to whether it

5    will be the 6th or the 13th.

6        (Whereupon, the two matters were

7    called in re WorldCom and a recess was taken

8    until 11:20 a.m.)

9        JUDGE GONZALEZ:  Please be seated.

10        MR. PEREZ:  Your Honor, just to

11    clean up from, not the last, but the prior

12    matter, I am informed that there is no

13    hearing on the 6th and that the next one is

14    on the 13th.

15        JUDGE GONZALEZ:  We will leave it

16    for the 13th.  It will be adjusted on the

17    calendar on the 13th.  In all likelihood, it

18    will be towards the end.  If not late

19    morning, early afternoon.

20        MR. WOOD:  I have one question.  It

21    might be advantageous to actually supply the

22    Court with these indexes.  They are in e-mail

23    form right now, so is it possible to e-mail

24    them to the Court?

25        JUDGE GONZALEZ:  Yes.  Just check

Proceedings

1
2   with my chambers on the way out and they will
3   give you an e-mail address.
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1

2                    C E R T I F I C A T E

3  STATE OF NEW YORK     )

                            : SS:

4  COUNTY OF NEW YORK    )

5

6         I, DEBORAH HUNTSMAN, a Shorthand

7  Reporter and Notary Public within and for the

8  State of New York, do hereby certify:

9         That the within is a true and

10 accurate transcript of the proceedings taken

11 on the 9th day of August, 2005.

12        I further certify that I am not

13 related by blood or marriage to any of the

14 parties and that I am not interested in the

15 outcome of this matter.

16        IN WITNESS WHEREOF, I have hereunto

17 set my hand this 18th day of August, 2005.

18                    *Deborah Huntsman* (signature)

19                    DEBORAH HUNTSMAN

20

21

22

23

24

25

A 02066

## A

**able** 6:3 7:17 26:5,17
**absorb** 10:21
**access** 13:8
**accurate** 31:10
**acknowledges** 18:15
**action** 13:23
**actual** 18:10
**additional** 5:18
**Additionally** 9:2
**address** 15:5 30:3
**adjusted** 29:16
**admitted** 6:3
**advance** 8:10
**advantageous** 29:21
**advice** 16:15
**advise** 17:17 24:25
**advised** 8:20 9:10 16:13
  16:18 17:16 18:15 20:8
  22:20
**advising** 18:25
**affidavit** 4:24 5:2 16:14
  16:20
**affording** 12:4
**afternoon** 8:8 29:19
**ago** 4:5 14:13 17:11
**agree** 5:15,17 7:25 8:9
  11:17 13:25 14:4,20,21
**agreeable** 23:15
**agreed** 7:9 10:11 23:11
**agreeing** 24:4
**ahead** 22:5
**al** 1:5 3:4
**ALFREDO** 2:6
**allegedly** 12:15
**allowing** 5:18
**Amazingly** 10:25
**amend** 5:15 7:2
**amending** 5:18
**answer** 29:4
**anticipate** 22:12 25:17
**anticipated** 16:20
**apologies** 27:25
**apparently** 21:12
**appeared** 9:15
**applicable** 11:22 15:22
**appropriate** 23:13,22
  24:23

**approximately** 18:7
  22:21,22
**argued** 7:3
**argument** 7:3
**ARTHUR** 1:19
**aside** 27:15
**asked** 5:15 8:8
**asking** 9:7
**assume** 28:12
**astounding** 11:12
**Attorney** 17:23
**Attorneys** 2:4,8,17
**August** 1:8 14:13 26:12
  27:2,12,13,18,20 31:11
  31:17
**authorities** 20:19
**auxiliary** 22:16
**available** 21:5 22:13
  23:8,11
**award** 14:8 16:6
**a.m** 1:8 3:12 29:8

## B

**B** 1:18
**back** 6:20 13:17
**bankrupt** 17:10 21:3
**Bankruptcy** 1:3,19
**based** 18:6 19:25 20:4
  25:10 26:2
**BEAL** 2:15
**bear** 16:4
**began** 8:14
**behalf** 3:16
**believe** 11:20 12:2 13:3,5
  14:7,13 17:2 20:15,18
  21:9 22:7 28:3,13
**believed** 19:11
**better** 25:23
**bid** 18:7
**blood** 31:13
**Bowling** 1:10
**boxed** 17:13 21:4
**boxes** 4:14,18 5:23 6:8
  6:13 7:18 10:12,18
  13:13,17 17:18 18:21
  18:22 20:3,9 22:14,20
  24:5,12,13,17,21 25:6,7
  25:10,13 26:6,18,19

**brief** 3:7 15:11
**bringing** 13:20 16:7
**brought** 7:2
**burden** 12:21
**burdensome** 12:19
**business** 11:25 12:3,16
  17:4

## C

**C** 1:11 2:2 31:2,2
**calendar** 27:15,21 29:17
**call** 7:24
**called** 29:7
**case** 1:5 3:4 11:19,20
  12:6,7,12 13:9,22 20:21
  20:24 24:16 27:15
**cases** 12:25 13:5,7
**cause** 8:4
**ceased** 17:10
**centers** 17:2
**certain** 4:2 8:10 10:23
  11:11 15:23 25:7,9
**certainly** 14:20 23:13
  27:6
**certify** 31:8,12
**chambers** 30:2
**change** 8:5
**check** 28:23,24 29:25
**Chemtex** 11:19 12:6
**Chicago** 2:18
**chose** 19:10
**chosen** 27:8
**chronologically** 12:9
**circumstances** 3:23 22:9
  23:24
**cited** 11:18 12:25 20:19
**City** 2:9 20:11 22:17
  23:13 24:2
**Civil** 11:22 17:5
**claim** 12:4
**Claimant** 3:17
**clarification** 16:13
**CLARK** 2:12
**clean** 29:11
**clearly** 24:14,15
**client** 13:18
**codings** 7:15
**COLEMAN** 2:11

**come** 12:13
**coming** 9:25
**commit** 10:22 11:10
**communication** 5:6 8:16
  10:3
**Communications** 3:20
  3:21
**company** 17:7
**compel** 1:13 3:19 4:23
  10:8 13:20 14:7 15:3,4
  16:21,25 18:2
**completely** 15:17
**compliance** 11:16 14:14
  20:17
**compliant** 21:7
**concern** 17:11
**concerning** 15:24 25:20
**concerns** 20:23
**concluded** 10:10
**conclusion** 13:6
**concurring** 23:21
**confer** 7:6
**conference** 7:8,21 8:7,13
  10:6,9 14:16 16:17
  21:14 24:25
**confidentiality** 6:10
**conflict** 28:2,5,8
**connection** 16:7,20
  19:13
**consideration** 15:18
  27:11
**considered** 14:24
**consisting** 4:11
**constitutes** 17:3 20:16
**contacted** 5:7
**contained** 11:3 25:10
**contains** 3:22
**continue** 27:20
**contract** 17:6
**contractual** 20:6
**contrary** 20:20
**corporation's** 12:18
**correct** 20:15
**correspondence** 11:6
**cost** 9:3,5 15:9 18:7,9
  19:15 23:25 24:8
**costs** 9:8 10:21 14:8 16:4
  16:6 19:14

counsel 5:7,11,22 6:3 7:9
  7:25 8:17 9:20 10:4,11
  11:6,13 15:13,24 16:13
  16:19,21 17:16 18:14
  18:21,21,25 20:15
  23:22 24:4,11 27:5
count 18:9
country 6:14
COUNTY 31:4
couple 4:15 12:11
course 11:25 12:2,15
  17:4
Court 1:3 4:21,23 7:6,20
  8:7,13 11:14 12:6,16
  13:24 14:3 15:8,18
  16:13,15,18,22,25 17:9
  17:17 21:6,7,24 24:25
  25:2 27:17 29:22,24
courtroom 3:8
courts 13:5
Court's 16:15
created 25:22
current 17:14,25
currently 20:10 22:19
cusp 14:2
Custom 1:9
customers 12:9,11
cut 12:3

——— D ———
DARRELL 2:12
date 8:9 10:23 11:11
  15:23,25 16:3,16 26:15
day 6:20 7:3 11:5 28:9
  28:11 31:11,17
days 10:25 11:9
deadline 5:10 8:2,10
  13:25
deadlines 1:14
deal 15:8 18:12,17
DEBORAH 31:6,19
Debtors 1:6 2:4 3:20 4:8
  4:13,18,24 5:6,7,11,21
  6:3 7:24 8:14,17 9:10
  9:15,19 10:4,10,14,17
  11:6,14 13:2,11,23
  14:12 15:10,13,24 16:9
  16:11,14,22 17:8 18:11

18:16 19:17 24:11
  25:20,24 26:3 27:3
declaration 17:23 19:22
declined 10:24
deemed 21:7
deems 21:8
defendant 12:12
demand 11:12
demanded 11:7
depending 23:24
deposition 25:19
depositions 5:13
descriptions 25:6
despite 10:16
details 3:25
different 17:21 20:12
direct 16:3
directed 7:6
directing 15:20 16:22
disclose 5:14,19
disclosing 5:10
disclosure 8:3,10 14:2
discovered 17:12
discoveree 12:22
discoverer 12:23
discovering 12:20
discovery 1:14 3:23 7:5,7
  7:22 12:5 13:15,21,22
  14:19 17:14 22:25 23:6
  26:21
discuss 24:3
discussing 13:14
dispute 3:24 13:15
District 1:3 11:19 20:21
document 11:2,4 18:12
  19:12 20:2,9 25:2,25
documentary 17:19
documents 1:13 3:19 4:6
  4:10,14,25 5:6,8,12,21
  5:23,25 6:5,8,13,17,19
  7:18 8:9,15,19,21,22,23
  8:25 9:4,9,14,17,21,24
  10:12,18,22,23 11:5,8
  11:11,24 12:8,8,10,14
  12:21,22 13:6,9,13,17
  14:5 15:6,10,16,21 17:3
  17:12 18:5,14,18 19:3,6
  19:9,11,15 20:3 21:4,5

22:8,13 23:7,23 24:5,7
  24:12,13,14,18,19,21
  25:21 26:4 27:6
doing 19:23
double 18:9
Driscoll 2:10 16:10,11
  21:13,17,19,24 22:6,14
  23:3,10 27:4,25 28:13
Drive 2:18
DRYE 2:17

——— E ———
E 1:11,11,18,18 2:2,2
  17:24 19:22 31:2,2
earlier 6:12 10:2,14,16
  16:5
early 29:19
Eastern 20:21
effect 12:4
effective 23:25
EffectNet 17:7
effort 16:10 22:7
efforts 4:25 18:11 25:24
eight 22:21,25 26:5
either 19:7
electronic 6:19 15:6,10
  15:16
eliminated 25:8
elimination 25:9
entertain 21:25
entitled 14:19
entity 17:10 20:25
ESQ 2:6,10,11,12,13,14
  2:15,19
essence 5:24
et 1:5 3:4
evidently 9:22
exactly 4:17 25:23
examine 9:4 18:22
examined 22:19 27:9
excerpt 3:3
excess 17:20
exhaustive 3:22
Exhibit 17:24 18:24
  19:16,19,22
existence 18:13
expect 9:4
expense 13:20

expert 13:25
experts 5:10,15,19 8:3,11
explained 18:3
explanation 10:2
extend 1:13 13:25
extending 23:5
extension 8:2
extraordinarily 14:18
e-mail 8:16 9:19 10:3
  29:22,23 30:3

——— F ———
F 1:18 31:2
facility 22:16
fact 6:2 8:6,15 13:7
  14:25 16:21 23:24
facts 4:2 22:11
factual 15:7
factually 20:25
faith 20:16 22:7
falls 12:21
far 5:2 11:15 24:4
February 4:4
Federal 11:21 17:5
feel 6:21
fees 14:8 16:6
file 10:8 16:19 21:20
filed 1:15 14:12,12,14
  15:2,12 21:11,13,15
Finally 5:20 19:20
firm 17:24 22:16
first 10:11 18:19 20:2
fit 22:25 23:4
following 3:2 8:17 23:8
  28:20
forget 16:15
form 27:7 29:23
forthwith 26:10
forward 7:11
found 9:20 11:11
four 17:20
frame 20:5 23:2,6 24:15
frankly 6:20 9:12 13:18
  14:16,24 15:6
front 16:17,25 17:17
  27:22
fulltime 22:23
functioning 17:10

further 5:5 26:21 27:11
    31:12

**G**

gather 18:4
general 19:2 20:23
give 30:3
given 4:22 13:8 14:6 22:8
go 13:19 22:5
going 7:10 17:11 21:3
    24:9 26:4,21 27:10,17
    27:19
GONZALEZ 1:19 3:6
    3:13 16:9 21:11,15,18
    21:21 22:3,10,24 23:7
    23:16 25:4 26:2,11,16
    27:3,10,19,23 28:3,7,11
    28:14,21,24 29:9,15,25
good 3:15 20:16 22:7
    25:15
GOTSHAL 2:3
grant 21:22
granted 10:7 14:18
Green 1:10
guess 26:5

**H**

Hagemeyer 20:20,24
hand 31:17
happen 25:18
happened 8:4
happening 22:12
happy 24:3
heard 6:12
hearing 6:24 27:18,20
    29:13
hearings 28:15,18
Hecker 2:7,8
held 7:20 12:16
help 6:4 7:15
helpful 6:22 9:11
hereunto 31:16
highlight 4:2
history 13:22
Holdings 1:12,13 2:17
    3:8,14,17,18 16:19 17:7
    17:15 18:15,17 19:8,10
    19:18,24 20:19 23:16

Honor 3:16 5:3 6:25 10:6
    10:20 11:17 13:3,19
    14:13 15:5,20 16:10
    21:14,17 23:3,21 24:10
    24:23 25:16 27:4,22
    28:2,10,17 29:10
HONORABLE 1:19
hopefully 27:12
hour 10:8
House 1:9
Houston 2:5
HUNTSMAN 31:6,19

**I**

identified 20:10 22:15
identify 6:4,7 7:18
Illinois 2:18
imagine 25:8,13 26:8
imminent 13:24
improperly 14:25
inconsistent 13:4
incurred 14:8
index 8:22 20:4
indexes 5:25 6:2,4,6,22
    7:10,12,16,19 9:11
    18:20 19:2 20:2 25:22
    27:5 29:22
indicate 13:12
indicated 4:13 6:16
    15:11 19:21
inform 8:24
informal 10:6 14:16
    24:24
information 25:10
informed 4:15 5:16
    29:12
initially 16:12 19:24
inquire 5:8
insufficient 12:17
intend 3:24
intending 9:23
interested 31:14
interestingly 4:20 6:15
    7:23
interim 8:4
Intermedia 3:20 17:8,9
    20:7 21:2
Intermedia's 17:19

inventory 25:11
invited 6:7 12:12
involved 19:4 20:22,25
involvement 13:24
involving 22:22
issue 7:4 15:5,8,17 25:9
    25:14 26:22
issues 7:8,23 24:16 25:17

**J**

J 1:19
JENNIFER 2:11
Judge 1:19 3:6,13 16:9
    21:11,15,18,21 22:3,10
    22:24 23:7,16 25:4
    26:2,11,16 27:3,10,19
    27:23 28:3,7,11,14,21
    28:24 29:9,15,25
judgment 14:11,17,22,23
    21:9 25:12
juncture 22:6
June 4:21 5:9 6:25 7:21
    8:13 9:11,20 10:7
    16:16 18:25
justifies 14:7

**K**

K 19:16
Kansas 2:9 20:11 22:16
    23:8,13 24:2
KELLEY 2:17
kept 9:24 11:25 12:15
know 4:17 8:3 9:23
    13:16 24:2 28:15,18
knowledgeable 25:20
known 4:18
knows 17:9
KONOPKA 2:14

**L**

L 19:19
Labor 28:9,11
late 29:18
law 17:24 22:16
learned 18:14
leave 4:22 10:7 21:19
    29:15
legal 20:13 22:19
legitimate 12:5

letter 6:15 8:18
light 11:9 14:25
likelihood 29:17
list 26:6,7,18,19
listen 15:23
litany 6:12
LLP 2:3,7,17
local 14:15 21:12,16
located 17:20 20:11
location 8:21 23:22
locations 6:14
log 16:2
logistical 19:14
logistics 18:8
long 4:17 17:13 23:18
look 7:9 24:20
looked 7:13
looking 20:13 24:17
Louisiana 2:4

**M**

MANGES 2:3
manner 11:24 12:14
March 4:6 5:4 9:12
    13:17
marriage 31:13
match 26:6
material 17:18
matter 27:14,18 29:3,12
    31:15
matters 29:6
MCI 3:20
mean 26:14,16
meaningless 7:17 19:4
MECHAM 2:13
mention 6:18
merits 14:21
minutes 27:14 28:23
Missouri 2:9
months 4:5
morning 3:15,24 7:23
    14:9 29:19
Morrison 2:7,8
motion 1:13 3:18,21 4:3
    4:23 6:25 7:2,4 10:8
    11:18 13:3,20 14:6,9,11
    14:17,22,23 15:3,4,11
    16:7,21,24 17:25 21:8