**Motors** 20:23
**move** 7:10 21:18
**multiple** 6:13

**N**

N 2:2
**necessary** 27:16
**need** 25:17,18 26:21
**Nevertheless** 6:5
**New** 1:3,10,10 11:20
  31:3,4,8
**nonresponsive** 19:3 20:3
**NORMAN** 2:15
**Notary** 31:7
**notification** 27:7
**number** 7:15 17:18 20:9
  25:6

**O**

O 1:18
**object** 5:17
**objected** 4:8
**objection** 23:17,21 24:8
**objections** 11:3
**obviously** 20:3
**occurred** 17:13
**offer** 10:10,24 13:16
  19:13
**offered** 7:25 18:16,19
  19:5,7
**ongoing** 20:22
**opportunity** 24:22
**opposition** 15:2 17:25
  19:17
**options** 18:17
**order** 5:9 7:5,22 15:20
  16:3
**organize** 12:22
**organized** 12:8
**original** 26:7
**outcome** 31:15
**outside** 24:14
**overlapping** 20:5

**P**

P 1:11 2:2,2
**page** 16:18 19:21
**pages** 4:11
**papers** 17:17

**pare** 26:23
**particular** 12:11
**particularly** 4:3 14:24
**parties** 3:7 7:6 11:23
  14:15 15:20,22,25 16:4
  20:22 23:11,12 31:14
**parts** 17:21
**party** 12:20 21:2,3,4
**Parus** 1:12,13 2:17 3:7
  3:14,17,18 7:2 16:19
  17:6,14 18:15,17 19:8
  19:10,18,23 20:19
  23:16 26:3
**PATRICIA** 2:14
**pay** 9:5,8
**people** 22:22 24:2
**Perez** 2:6 28:14,17,22
  29:10
**permissible** 21:9
**permission** 14:6
**person** 25:19
**personal** 28:2
**personally** 7:14
**personnel** 18:10 20:13
  22:19
**pertinent** 4:3
**place** 18:5 23:14
**plaintiffs** 12:7,10,13
  13:8
**Please** 3:13 29:9
**point** 4:17 6:17 12:5
  16:12 24:3,11,24 25:3
  25:15 26:17,20
**position** 5:14 8:5,14 11:9
  11:21
**possible** 29:23
**precise** 6:2
**predecessor** 17:7
**premotion** 14:16
**prepared** 13:12 26:15
**present** 3:8 4:22 14:6
  22:9
**presented** 18:13
**presenting** 14:9
**pretty** 22:23 28:19
**principle** 13:4
**prior** 8:12 29:11
**privilege** 6:10 16:2 19:7

19:9
**probably** 4:15 18:9 26:9
**problem** 23:5
**problems** 7:5
**Procedure** 11:22 17:5
**procedures** 8:20
**proceeding** 11:23
**proceedings** 3:1,3 4:1
  5:1 6:1 7:1 8:1 9:1 10:1
  11:1 12:1 13:1 14:1
  15:1 16:1 17:1 18:1
  19:1 20:1 21:1 22:1
  23:1 24:1 25:1 26:1
  27:1 28:1 29:1 30:1
  31:10
**process** 7:11 19:23
**produce** 4:25 6:10 8:9
  9:23 11:23 13:13,16
  14:4 15:21 16:2 18:23
  24:5,18
**produced** 8:15,19,23
  9:25 11:8 13:7
**producing** 9:17 10:21,23
  11:10 20:22 21:2 23:23
  24:7
**production** 1:13 3:19 4:6
  4:10,12 5:22 8:20 9:14
  15:9,15 16:5 17:3
  18:18 25:3
**progress** 10:20 13:21
**proposal** 5:21,24 6:11,18
  6:21 10:19 15:24 19:18
  23:17 26:13
**provide** 6:6 16:14 18:20
  18:20 19:8,10
**provided** 17:4 26:9
**provides** 11:23
**Public** 31:7
**pull** 20:4
**pulled** 27:8
**put** 27:10 28:4
**p.m** 3:11

**Q**

**question** 22:2,4 29:20
**quite** 11:12 14:17 17:11

**R**

R 1:11,18 2:2,6 31:2
**raised** 7:4
**Ramsay** 17:23 18:3
**Ramsay's** 19:22
**react** 26:12
**really** 7:14 9:15 17:2
**reasonable** 11:16 12:23
  13:8 16:6 26:23
**reasons** 10:24
**receive** 5:5
**received** 4:7,10 5:12,20
  7:24 8:16 9:13 10:10
  11:2,5
**recess** 3:7,12 29:7
**recitation** 3:22 22:11
**recited** 6:11
**record** 15:7
**records** 12:18
**reflected** 17:22 18:24
  19:16,19
**refusal** 11:10
**refused** 8:11 19:24
**regard** 9:16 10:3 15:9,15
  16:24 23:4
**regarding** 4:24 6:19 7:21
  23:22
**regards** 17:6
**rejected** 18:19,23 19:18
**related** 25:13 31:13
**relationships** 20:6
**relevant** 12:11 24:15
**relief** 15:19
**remaining** 11:8 19:9
**remains** 17:19
**removing** 9:5
**Reorganized** 1:6 2:4
**repeatedly** 13:15
**reply** 15:12
**Reporter** 31:7
**repositories** 17:21 20:12
**represent** 11:14
**representation** 26:3
**representations** 10:14,16
**represented** 5:11
**request** 4:5 9:14 12:7
  14:15 16:6 17:14 18:12
  19:12,14 21:19
**requests** 4:9 6:9 11:4

24:20 25:25
**required** 10:15 16:2
**requirements** 20:17
**requires** 14:15
**resisted** 6:21
**resolution** 15:14
**respond** 11:7 25:25
**response** 1:15 4:7,12
9:13 10:19 11:2 13:2
13:11 15:2 17:24 18:4
18:24 19:17,20
**responsive** 6:5,8 7:18
9:22 10:18 13:6 15:21
19:11 24:7,19
**responsiveness** 10:13
24:6
**result** 7:8
**return** 3:9
**returning** 9:6
**review** 6:7,9 8:25 9:3
10:12 12:13 13:12 14:4
18:10 19:2,5,12,25 20:8
22:20 23:9 24:5,12,22
26:18,18
**reviewed** 6:16 18:6 25:7
**reviewing** 9:8,17 19:15
21:6 24:6
**right** 21:22 29:23
**ripe** 15:17
**Robert** 2:10 16:11
**rule** 11:21 17:4 20:2,18
**rules** 10:15 11:17,21
12:17 14:15 17:5 21:12
21:16

**S**

S 2:2
**saw** 10:20
**schedule** 5:16,18 7:7
**scheduled** 8:7 27:14
**scheduling** 5:9 7:5,22
**screen** 19:6,9
**search** 12:20
**Sears** 20:23
**seated** 3:13 29:9
**see** 15:14 22:11 24:21
26:4,6 28:24
**seeking** 12:10 15:19

**seen** 5:2
**select** 18:21
**send** 23:25
**sense** 24:10 26:20
**sent** 8:18
**September** 28:4,12,16,19
**served** 4:5 12:7
**set** 3:9 27:15,18 31:17
**SHANE** 2:13
**shelves** 9:6,7
**shifting** 15:9
**shipped** 20:11
**Shorthand** 31:6
**shortly** 29:4
**side** 21:6
**sides** 15:22 26:11
**similar** 20:25
**single** 4:8 11:3
**Sir** 28:6
**six** 4:4 22:21,22,25 26:4
**soon** 26:12
**sort** 25:22
**sought** 12:20
**Southern** 1:3 11:19
**spite** 10:13
**split** 19:14
**SS** 31:3
**stand** 24:21
**starting** 19:20
**state** 12:18 31:3,8
**stated** 8:17
**states** 1:3,9,19 14:18
17:22
**status** 25:2
**Stephen** 2:19 3:16
**steps** 11:15
**Stinson** 2:7,8
**storage** 9:6,7
**stored** 5:23 6:13,17 9:16
17:13 21:4 25:21
**Street** 2:8
**subject** 9:2
**submit** 4:24
**subsequently** 5:16
**sufficient** 15:7 25:12
**suggested** 4:23
**suggestion** 24:9
**Suite** 2:4

**summary** 14:11,17,22,23
21:8
**supplemental** 11:2
**supply** 22:8 27:6 29:21
**supports** 11:20
**sure** 27:23 28:19
**surrounding** 3:23
**suspect** 11:13
**systematically** 18:6

**T**

T 1:11 31:2,2
**take** 3:6 7:9 8:14 13:23
22:21 24:20 25:9,18
28:22
**taken** 3:3,12 5:13 11:15
22:17 29:7 31:10
**talked** 8:19
**talking** 21:21
**team** 20:13
**teleconference** 4:21 14:3
**telephone** 2:10,11,12,13
2:14,16 4:16 7:21,24
8:12 10:9 16:16
**tell** 10:17
**terms** 23:12
**Texas** 2:5
**Thank** 16:8
**thing** 7:12 14:10 25:22
**think** 4:2 13:21 14:23
15:6,16 23:12,18 24:10
25:4 26:3,12,17,25
27:12
**thinking** 25:16
**thousands** 4:13 5:22
6:12
**three** 20:12
**Thursday** 28:4
**time** 5:19 10:11 17:11
20:5 23:2,6 24:15,17
27:16
**today** 15:18 16:25
**told** 17:18
**trained** 18:10 22:22
**transcript** 16:17 31:10
**transmitted** 7:13
**troubled** 13:19
**true** 31:9

**try** 7:10
**Tuesday** 27:24
**two** 18:16 28:22 29:6

**U**

**understand** 13:18 25:23
**undertaken** 25:24
**United** 1:3,9,19 17:22
**unreasonably** 12:19
**unrelated** 24:15
**use** 6:4,23 12:23
**usual** 11:25 12:2,15 17:4

**V**

**various** 17:21
**vendor's** 18:6
**violation** 21:12,16

**W**

W 2:12
**Wacker** 2:18
**wade** 3:24
**Walnut** 2:8
**want** 8:24 9:3 24:11,16
24:18
**wanted** 6:6 10:21 18:22
20:24
**warehouses** 4:14,19 5:24
13:14 14:5
**WARREN** 2:17
**waste** 24:17
**way** 10:17 30:2
**week** 14:12 27:7 28:20
**weeks** 4:16 5:5 22:17,21
22:25 26:5
**WEIL** 2:3
**went** 22:10
**weren't** 5:14
**West** 2:18
**whatsoever** 14:20 24:8
**WHEREOF** 31:16
**willing** 15:23
**Wisconsin** 20:21
**wish** 21:25
**withdraw** 22:2,4
**WITNESS** 31:16
**witnesses** 5:13
**Wood** 2:19 3:15,16 23:20
25:15 26:8,14,25 27:17

27:21 28:6,9 29:20
**work** 15:13,15
**WorldCom** 1:5 3:4,21
  18:22 19:5,22 20:7
  22:7,15 28:15,18,25
  29:7
**WorldCom's** 21:8
**wouldn't** 13:24 14:4
**written** 4:7,12 9:13
**wrote** 6:20

---
**X**
---
**x** 1:4,7,11

---
**Y**
---
**yesterday** 15:12
**York** 1:3,10,10 11:20
  31:3,4,8

---
**$**
---
**$149,000** 18:7

---
**0**
---
**02-13533** 1:5 3:5

---
**1**
---
**1st** 14:13 28:5
**10** 11:8
**10,000** 17:20 18:4 24:12
  24:17 26:18,23
**10:25** 3:11
**10:30** 1:13 3:10
**10:40** 1:8 3:12
**10004** 1:10
**11:20** 29:8
**12th** 5:7
**120-day** 8:2
**1201** 2:8
**13th** 28:21 29:2,5,14,16
  29:17
**14** 16:18
**14th** 6:25
**1600** 2:4
**18th** 31:17

---
**2**
---
**20th** 5:10
**2005** 1:8 4:4,6 8:18 16:16
  31:11,17

**25** 4:6
**25th** 5:4 9:12
**27th** 9:10,20 18:25
**29** 16:16
**29th** 4:21 7:21 8:13 10:7

---
**3**
---
**3lst** 5:20
**30th** 26:12 27:12,13,18
  27:20
**300** 25:6 26:6,19,24
**31** 8:18
**33** 4:10
**333** 2:18
**34** 11:21 17:5 20:18
**343** 4:11
**387** 13:13,17 20:10 22:14
  24:5,20

---
**4**
---
**45** 27:14

---
**5**
---
**5th** 28:12

---
**6**
---
**6th** 28:16,19,25,25 29:5
  29:13
**60606** 2:18
**64106** 2:9

---
**7**
---
**7** 4:4
**700** 2:4
**77002** 2:5

---
**8**
---
**8/9/05** 3:3

---
**9**
---
**9** 1:8 19:21
**9th** 31:11

# Exhibit M

A 02073

1

2

3    UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

4    ------------------------------x                ORIGINAL

In re

5                                    Case No.

WORLDCOM, INC., et al,          02-13533

6

            Reorganized Debtors.

7    ------------------------------x

            September 13, 2005

8            12:25 p.m.

9            United States Custom House

            One Bowling Green

10            New York, New York    10004

11

        E X C E R P T

12

11:55 02-13533 WORLDCOM, INC., ET AL

13

Motion by Parus Holdings, Inc. to compel

14    production of documents and to extend

discovery deadlines.

15

response filed.

16

17

18    B E F O R E:

19        THE HONORABLE ARTHUR J. GONZALEZ

        United States Bankruptcy Judge

20

21

22

23

24

25

1

2      A P P E A R A N C E S:

3        STINSON MORRISON HECKER LLP

         Special Counsel for Reorganized

4        Debtors

                 1201 Walnut Street

5                Kansas City, Missouri    64106

6        BY:   ROBERT L. DRISCOLL, ESQ.

               MARK A. SHAIKEN, ESQ.

7                    -and-

               BLAKE PRYOR, ESQ.

8                              (via telephone)

9        KELLEY DRYE & WARREN LLP

         Attorneys for JP Morgan Chase

10               101 Park Avenue

         New York, New York    10178

11

         BY:   STEPHEN A. WOOD, ESQ.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              Proceedings

2              (Whereupon, the following is an

3    excerpt from the proceedings taken on 9/13/05

4    in re Enron Corp., et al, Case No. 02-13533.)

5              JUDGE GONZALEZ:  Please be seated.

6         MR. WOOD:  Good afternoon, Your

7    Honor.  Stephen Wood on behalf of the

8    claimant Parus Holdings.

9              We are before the Court this

10   afternoon on the continued hearing on Parus

11   Holdings' motion to compel the Debtors'

12   production of documents and other relief.

13             The motion was necessitated by our

14   inability to get documents from the Debtors,

15   and it wasn't until we were actually given

16   leave by this Court to present our motion to

17   compel that the Debtors offered to review

18   their warehouses of documents for

19   responsiveness and to produce them to us.  We

20   rejected their offer because --

21             JUDGE GONZALEZ:  Just speak louder,

22   please.

23             MR. WOOD:  We rejected their offer

24   because they sought to have us pay for a

25   portion of their costs in producing their

```
 1              Proceedings
 2    documents and they would not commit to
 3    producing documents by a date certain.
 4              Now, we were before Your Honor on
 5    this motion in August, and at that time the
 6    Debtors indicated that they had identified
 7    387 boxes that may contain responsive
 8    documents and they intend to view these boxes
 9    and to produce these documents that were
10    responsive, but that they would require
11    several weeks to complete that task.
12              In the interim, the Court directed
13    the Debtors to produce to us copies of the
14    indexes that they have of these thousands of
15    boxes of documents that were maintained in
16    multiple warehouses around the country.  The
17    Court also directed the Debtors to produce to
18    us lists of the boxes of documents that had
19    been selected for review by the Debtors.
20              The Court indicated last time that
21    the claimant might take issue with the
22    Debtors' elimination of certain boxes from
23    the list of boxes that were being reviewed.
24    That is, whether the information in the
25    indexes were sufficient to make a judgment
```

| | |
|---|---|
| 1 | Proceedings |
| 2 | that the excluded boxes were not responsive. |
| 3 | In addition, Your Honor, the Court |
| 4 | indicated that we should review the two |
| 5 | lists, the indexes and the lists of documents |
| 6 | to be reviewed, to get sense of whether we |
| 7 | would need any additional discovery on the |
| 8 | issue of whether it was reasonable to pare |
| 9 | the list down from 10,000 boxes of documents |
| 10 | to some number around 300 and 400. |
| 11 | So the Debtors produced the indexes |
| 12 | and the lists of documents that they had |
| 13 | identified from the indexes, and we reviewed |
| 14 | those.  The lists are problematic for a few |
| 15 | reasons.  Of the boxes that had been |
| 16 | identified for review by the Debtors, 14 of |
| 17 | them have descriptions -- from what I can |
| 18 | tell -- that are adequate for us to determine |
| 19 | that they may contain responsive documents. |
| 20 | The remainder of the boxes on the lists that |
| 21 | have been selected for review, either have no |
| 22 | description or the descriptions are |
| 23 | indecipherable to me or they are vague, and I |
| 24 | can't really tell why those particular boxes |
| 25 | were selected for review. |

                        Proceedings

1
2                    Now, I asked for some clarification
3       from the Debtors in my letter last week to
4       Mr. Driscoll, and he responded that the boxes
5       had been selected based on the time period
6       that was described in the indexes and also on
7       the subject matter descriptions indicating
8       possible responsiveness for unknown content.
9                    Now, one of the problems with
10      regard to time period, Your Honor, is that
11      some of the boxes that are listed on the
12      indexes don't have a particular time period
13      identified.
14                   With regard to unknown content,
15      many of the boxes on these indexes have
16      alphanumeric designations for their contents,
17      and I don't know exactly what those
18      alphanumeric designations stand for.  So it
19      is impossible for me to determine what may or
20      may not be contained in those boxes.  I don't
21      know if that information is available to the
22      Debtors or not.
23                   I don't know if the Debtors have
24      reviewed all boxes that have unknown content.
25      It also appears to me, Your Honor, that the

```
                        Proceedings
```

1
2     Debtors may have used some sort of sampling

3     technique when their records contained

4     insufficient information to either exclude or

5     include the boxes of documents from the list,

6     and I have some concerns about the sampling

7     technique that was used.  How were the

8     sampled boxes chosen?  How many boxes were

9     sampled?  Was it one percent?  Ten percent?

10    Fifty percent?  What is the basis for

11    assuming that non-reviewed boxes have the

12    same documents or the same types of documents

13    in them?

14              Now, with regard to the indexes

15    themselves, Your Honor, it was the Debtors

16    who first raised concern about the utility of

17    these indexes.  I have a question about the

18    integrity of the indexes themselves, their

19    accuracy, their reliability, and whether or

20    not the information contained therein is

21    consistent.  I don't know anything about the

22    circumstances under which these indexes were

23    created, who put them together, what rules,

24    if any, were followed, when they were created

25    and by whom.

1                    Proceedings

2          I don't have any background

3    information regarding Intermedia's document

4    retention policy, what was retained, when,

5    and under what circumstances.

6          I also have a question, Your Honor,

7    about whether the indexes that we have been

8    provided are complete.  I would like to

9    mention specifically, there was one index

10   that describes "HR files from relevant

11   Intermedia employees."  Someone has made a

12   determination that these employees' names who

13   are listed there are relevant, I believe, to

14   our claims or their defenses.  There are

15   seven names that are listed on that index,

16   Your Honor.  That is only a portion of the

17   individuals who I believe would be relevant

18   to the claims and defenses in this particular

19   contested matter.  There are more names that

20   are listed in the Debtors' Rule 26

21   disclosures that we provided several months

22   ago in this case.

23          That summarizes, Your Honor, our

24   concerns about the indexes and the boxes of

25   documents that have been selected from these

```
 1                    Proceedings
 2    indexes or reviewed by the Debtors.
 3            JUDGE GONZALEZ:  All right.
 4        Let me hear then from the Debtors?
 5        MR. DRISCOLL:  Robert Driscoll on
 6    behalf of the Debtors, Your Honor.
 7            I might just say preliminarily,
 8    counsel for Parus Holdings was provided the
 9    indexes involved in this matter under date of
10    May 31, 2005.  The document evidencing that
11    is Exhibit F to our opposition papers.  It
12    was not just recently.  He was provided with
13    those indices several months ago.
14            With regard to the selection of
15    documents, as I advised the Court by
16    telephone at the last hearing, 387 boxes were
17    selected under the criteria that are
18    specified in the Affidavit of Donald Ramsey,
19    which is Exhibit F to our opposition, and
20    that sets out what the criteria were that
21    were followed to select the several hundred
22    boxes that we did receive.
23            As the Court advised in the August
24    9th hearing at the conclusion, we did provide
25    to Mr. Wood on August 12th by Federal Express
```

Proceedings

1
2    highlighted document appendices indicating

3    which of those many thousands of boxes we had

4    selected for review, and we also provided

5    Mr. Wood with a list of those boxes.  As I

6    said, that was on the date of August 12th.

7        Thereafter, we proceeded with our

8    document examination and until today have not

9    heard a question concerning our box

10    selection.  We did complete the review of the

11    boxes that we had received earlier than

12    anticipated, about two weeks ago.  Under the

13    date of September 1st, I advised counsel that

14    that review had been completed, and that the

15    documents were being Bates numbered at that

16    time and that a privilege log was being

17    prepared.  That was my letter dated September

18    1st.

19        By the way, I have copies of these

20    correspondence, if the Court is interested in

21    seeing it.

22        I anticipate by next week those

23    documents, along with the privilege log, will

24    be ready for production.

25        In my letter of August 12th, the

Proceedings

1
2    initial letter between the transmittal of the
3    lists of appendices, I advised that some
4    groupings of boxed documents had been sampled
5    and that if review of those sampled groups
6    revealed further review was indicated, that
7    we would do that.
8         On September 1st I advised Mr. Wood
9    that we had, indeed, concluded our review and
10   concluded that some of those document box
11   samples required further review and advised
12   him that we had requested for review an
13   additional 70 boxes of documents.  We have
14   done that and provided him with a list of
15   those boxes.
16        Those additional boxes of documents
17   and other materials are being reviewed, and I
18   am advised that we can anticipate reasonably
19   production of those additional documents in
20   approximately four weeks.
21        As counsel for Parus advised, he
22   did write me last Wednesday, which I received
23   Wednesday afternoon on the 7th of September,
24   in which he inquired about the criteria that
25   we had used to select boxes.  I responded on

```
 1                    Proceedings
 2    Friday, September 9th, describing that
 3    criteria, and the criteria are as set out in
 4    the Affidavit or Declaration of Mr. Ramsey,
 5    Exhibit F to our original opposition
 6    concering the original 387 boxes documents.
 7    With regard to the additional 70 boxes of
 8    documents, I advised Mr. Wood what they were
 9    comprised of -- the remainder of boxes in the
10    sampled categories that had yielded some
11    responsive documents and boxes bearing the
12    names of individuals involved in some manner
13    with other responsive documents.
14              Under these circumstances, Your
15    Honor -- a defunct party to a contract, whose
16    documents long ago were boxed and stored, are
17    extraordinarily numerous, and are being
18    stored in various locations -- I believe the
19    Reorganized Debtors have and are reasonably
20    acting under the circumstances to provide
21    document discovery.
22              No order of this Court has been
23    violated with regard to discovery.  The
24    Debtors timely filed their response to their
25    original document request, and I believe
```

<pre>
 1                    Proceedings
 2    under all of these circumstances the motion
 3    to compel is moot.
 4            Thank you, Your Honor.
 5            JUDGE GONZALEZ:  All right.
 6            MR. WOOD:  I don't know how many
 7    documents we are talking about, Your Honor,
 8    that are intended to be produced next week.
 9    We will have to take a look at that and see
10    what we have.  I haven't gotten any
11    indication from counsel for the Debtors
12    exactly how many documents they have.
13            JUDGE GONZALEZ:  How many documents
14    are we talking about?  Debtors' counsel, the
15    question is directed to you.  Do you mean 300
16    something boxes or are you talking about
17    another group of boxes that may be produced?
18    What is your estimate of the number of
19    documents?
20            MR. DRISCOLL:  With regard to the
21    document boxes that we have already examined,
22    387, I am advised that approximately 8 boxes
23    of documents have been deemed responsive.  I
24    do not know the number of documents that are
25    being deemed privileged.
</pre>

1          Proceedings

2               We are in the process of examining

3     the other 70 boxes.  I don't know the numbers

4     there.

5               MR. WOOD:  That was question number

6     one that I had, Your Honor.

7               JUDGE GONZALEZ:  Go ahead.

8               MR. WOOD:  Apart from that, I think

9     we raised some fair questions about the

10    manner in which the Debtors have been seeking

11    to produce documents to us in this case.

12    They have 10,000 boxes of documents that have

13    been warehoused.  They were warehoused at a

14    time prior to the filing of the bankruptcy

15    petition and concurrently with or after the

16    time that the contract that gave rise to the

17    claim was actually breached.  I think that it

18    is reasonable and consistent with the motion

19    to compel the Debtors' obligations under the

20    Federal Rules and the Bankruptcy Rules to

21    require the Debtors to provide additional

22    information regarding the method in which

23    they are reviewing and producing documents.

24    So that we can be assured that they have

25    discharged their obligations under the rules.

1                    Proceedings

2              JUDGE GONZALEZ:  I think what we

3    are going to do is let's get the production

4    done and then I will figure out what to do

5    with the motion.  Once you get the

6    production, I think we can hone in on what

7    deficiencies, if any, existed either in the

8    description or in the actions by the Debtors.

9    So we have estimated time.  I believe the

10   outside time frame is four weeks from now; is

11   that correct?

12             MR. DRISCOLL:  Yes, Your Honor.

13             JUDGE GONZALEZ:  I will put this

14   off until -- six or seven weeks from now

15   should bring us to November 1st.  Adjourn

16   this until November 1st and see where we are

17   with respect to this motion.  November 1st

18   and I will schedule it for 10:00, but I am

19   sure it will be adjusted on the calendar.

20             MR. WOOD:  I assume that is a

21   Tuesday, Your Honor?

22             JUDGE GONZALEZ:  Yes.  I say "yes,"

23   but I intended it to be a Tuesday and it is a

24   Tuesday.

25             MR. WOOD:  The Scheduling Order

```
 1              Proceedings
 2    that was in place in this matter is no longer
 3    viable.  There were deadlines that had come
 4    and gone while this motion to compel has been
 5    pending.  I believe it was raised earlier in
 6    the informal conferences with the Court and
 7    also during the original hearing on our
 8    motion to compel.  At some point in time we
 9    will have to address with the Court the entry
10    of a new schedule.  I don't know if the Court
11    wants to set new dates now or hold this until
12    the 1st?
13              JUDGE GONZALEZ:  No.  I would like
14    the both of you to work through the schedule
15    and then just bring it to me on the 1st or by
16    telephone, if there is any disagreement on
17    working through that schedule.  It is
18    probably better to do it by telephone and not
19    put it off until the 1st.  Make an attempt to
20    mutually agree upon a schedule.  If it is
21    subject to what happens after production,
22    then provide for that in the schedule as
23    well, and relief can be sought to further
24    modify the schedule.
25              MR. WOOD:  You said by the 10th,
```

1                    Proceedings
2    Your Honor?
3              JUDGE GONZALEZ:  No.  I think it is
4    good to do it telephonically, if you have a
5    dispute.  If you can submit a consensual
6    schedule, fine.  But I didn't think it was
7    worth waiting until November 1st to address
8    it.
9              MR. WOOD:  All right.  Thank you,
10   Your Honor.
11             JUDGE GONZALEZ:  All right.  Thank
12   you.
13             MR. DRISCOLL:  Your Honor, there is
14   one other item for discussion regarding Parus
15   Holdings, and that is the Debtors' request to
16   file a motion for summary judgment.
17             JUDGE GONZALEZ:  Yes.  I see that
18   letter.
19             MR. DRISCOLL:  We advised the Court
20   of that request in our letter of August 12th,
21   and counsel for Parus Holdings, I believe, on
22   Friday, September 9th, supplied that in
23   opposition response to that request.
24             We are requesting on behalf of the
25   Debtors that we be permitted to file a

1                        Proceedings

2    summary judgment, because we believe that the

3    claimants' tort-based claims, not the

4    contract claims, but the tort-based claims

5    fail as a matter of law.  We believe there

6    are no genuine issues of material fact that

7    would preclude issuing a summary judgment and

8    deciding the tort-based claims as a matter of

9    law.  We also think that it would be far more

10   cost effective to proceed in this manner,

11   rather than as we are currently proceeding.

12        There are two claims presented by

13   Parus Holdings.  One is for a breach of a

14   contract between Intermedia and Parus

15   Holdings' predecessor Effectnet that is dated

16   in November of 2000.

17        The other claim of Parus Holdings,

18   is what is characterized in Parus Holdings'

19   motion to compel as the acts of WorldCom and

20   Intermedia acting in concert to breach the

21   November 2000 account.  For the reasons that

22   we have stated in my letter to the Court of

23   August 12th in synoptic form, we believe

24   those tort-based claims are subject to

25   summary disposition because they are

1                    Proceedings

2    deficient as a matter of law.  I believe it

3    would be cost effective also, because the

4    great bulk of the current discovery is

5    directed at the tort-based claims of Parus

6    Holdings.  If, in fact, those claims or if

7    this Court determined that those claims are

8    legally deficient, then there is no need to

9    address the kinds of vast document discovery

10   that we are currently looking at or even more

11   complicated electronic discovery on that.  If

12   it is a contract claim, and there is no

13   question about the existence of the contract,

14   and there is no question about anything

15   pertaining to the contract.  It speaks for

16   itself and can fully be determined by this

17   Court as a matter of law whether it has been

18   breached and the amount of damages owed,

19   because the contract specifies how in a

20   situation like this monetary damages are to

21   be assessed.

22             Thank you, Your Honor.

23             JUDGE GONZALEZ:  All right.

24             Go ahead.

25             MR. WOOD:  On behalf of Parus

```
 1                    Proceedings
 2      Holdings, Your Honor, I disagree with just
 3      about everything that Mr. Driscoll said.
 4                 The Debtors' letter to the Court
 5      requesting an informal conference on the
 6      motion for summary judgment is misleading and
 7      certainly one-sided and incomplete.  As far
 8      as the tort claims are concerned, the Debtors
 9      have given some advance notice about what
10      cases they are going to cite because they
11      actually filed a motion for summary judgment
12      improperly originally.  But the basis for
13      concluding that the tort claims fail as a
14      matter of law is that it is a parent
15      subsidiary relationship between WorldCom and
16      Intermedia and that that precludes the tort
17      claim.  The problem, Your Honor, is that
18      there are exceptions to those rules that are
19      omitted in the papers that have been filed by
20      the Debtors that would permit these claims to
21      go forward.  The law is not as clear and as
22      one-sided as the Debtors have indicated, and
23      we believe, in fact, that our claims cannot
24      be barred as a matter of law with any of the
25      claimants.  We also believe, Your Honor, that
```

```
 1              Proceedings
 2   it is unfair and that it would unnecessarily
 3   consume the resources of this Court and the
 4   parties to have this motion for summary
 5   judgment be filed now, when we haven't been
 6   given an opportunity to look at any of the
 7   documents that should be produced by the
 8   Debtors in this case.  So we would oppose the
 9   filing --
10              JUDGE GONZALEZ:  What is the
11   relationship of the documents to the
12   exceptions that you reference?
13              MR. WOOD:  There is an exception,
14   Your Honor, for tortious interference claims
15   when a parent is alleged to have interfered
16   with a contract of its subsidiary, and it can
17   be shown that it was contrary to the economic
18   interests of the subsidiary.  We believe
19   there is already some evidence to indicate
20   that the breach of Intermedia's contract with
21   my clients was contrary to the economic
22   interests of Intermedia.  There was some
23   evidence to indicate that already, but we
24   believe that there would be more detail
25   supporting that exception that would be seen
```

1          Proceedings

2    in discovery in this case.

3              There also are some timing issues,

4    Your Honor, with regard to the exceptions.

5    The relevant time period for our claims, even

6    conceded by the Debtors, precedes the merger

7    between WorldCom and Intermedia.  The

8    interfering conduct precedes the July 2001

9    merger of the companies.  So we think that

10   there are fact issues there as well that

11   would result in a denial of a motion for

12   summary judgment.

13             JUDGE GONZALEZ:  All right.

14   WorldCom?

15             MR. DRISCOLL:  I don't know of any

16   fact questions inherent in the allegations of

17   that tort.  Counsel has asserted on behalf of

18   Parus a civil conspiracy, they claim, with

19   the parent corporation WorldCom, and its

20   wholly owned subsidiary Intermedia just can't

21   exist under the laws of any state.

22             Tortious interference by a parent

23   corporation of the contract of its

24   subsidiary, to my knowledge, is universally

25   regarded as incapable of occurring.

A 02095

```
 1                    Proceedings
 2          The other tort-based claims are for
 3     reasons that are synoptically reflected in
 4     the letter of August 12th defficient and go
 5     by the board also as matters of law.
 6             Not mentioned in my letter, and it
 7     was an oversight and I apologize for that,
 8     but contained in the improvidently filed
 9     motion for summary judgment by the debtor is
10     a further basis for summary judgment which
11     would knock out the damage claims of the
12     tort-based allegations on its face.
13             In the contract in section 11, the
14     parties provided a comprehensive limitation
15     of liability provision, which prohibits all
16     consequential damages that might result to
17     either party as a matter law.  That would
18     take care of the pre-merger situation that
19     counsel just alluded to.  In any event, I
20     believe there are solid legal grounds to get
21     rid of the tort-based claims.
22             JUDGE GONZALEZ:  All right.  What I
23     will do is I will allow the filing of the
24     summary judgment motion.  You can get a
25     hearing date.  Use as a hearing date Tuesday,
```

1                    Proceedings

2    December 6th, and work back from that date.

3                MR. DRISCOLL:  Thank you, Your

4    Honor.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2        C E R T I F I C A T E

3    STATE OF NEW YORK        )

                              : SS:

4    COUNTY OF NEW YORK       )

5

6            I, DEBORAH HUNTSMAN, a Shorthand

7    Reporter and Notary Public within and for the

8    State of New York, do hereby certify:

9            That the within is a true and

10   accurate transcript of the proceedings taken

11   on the 13th day of September, 2005.

12           I further certify that I am not

13   related by blood or marriage to any of the

14   parties and that I am not interested in the

15   outcome of this matter.

16           IN WITNESS WHEREOF, I have hereunto

17   set my hand this 28th day of September, 2005.

18

19                DEBORAH HUNTSMAN

20

21

22

23

24

25

A 02099

## A

account 18:21
accuracy 7:19
accurate 25:10
acting 12:20 18:20
actions 15:8
acts 18:19
addition 5:3
additional 5:7 11:13,16
  11:19 12:7 14:21
address 16:9 17:7 19:9
adequate 5:18
Adjourn 15:15
adjusted 15:19
advance 20:9
advised 9:15,23 10:13
  11:3,8,11,18,21 12:8
  13:22 17:19
Affidavit 9:18 12:4
afternoon 3:6,10 11:23
ago 8:22 9:13 10:12
  12:16
agree 16:20
ahead 14:7 19:24
al 1:5,12 3:4
allegations 22:16 23:12
alleged 21:15
allow 23:23
alluded 23:19
alphanumeric 6:16,18
amount 19:18
anticipate 10:22 11:18
anticipated 10:12
Apart 14:8
apologize 23:7
appears 6:25
appendices 10:2 11:3
approximately 11:20
  13:22
ARTHUR 1:19
asked 6:2
asserted 22:17
assessed 19:21
assume 15:20
assuming 7:11
assured 14:24
attempt 16:19

Attorneys 2:9
August 4:5 9:23,25 10:6
  10:25 17:20 18:23 23:4
available 6:21
Avenue 2:10

## B

B 1:18
back 24:2
background 8:2
bankruptcy 1:3,19 14:14
  14:20
barred 20:24
based 6:5
basis 7:10 20:12 23:10
Bates 10:15
bearing 12:11
behalf 3:7 9:6 17:24
  19:25 22:17
believe 8:13,17 12:18,25
  15:9 16:5 17:21 18:2,5
  18:23 19:2 20:23,25
  21:18,24 23:20
better 16:18
BLAKE 2:7
blood 25:13
board 23:5
Bowling 1:9
box 10:9 11:10
boxed 11:4 12:16
boxes 4:7,8,15,18,22,23
  5:2,9,15,20,24 6:4,11
  6:15,20,24 7:5,8,8,11
  8:24 9:16,22 10:3,5,11
  11:13,15,16,25 12:6,7,9
  12:11 13:16,17,21,22
  14:3,12
breach 18:13,20 21:20
breached 14:17 19:18
bring 15:15 16:15
bulk 19:4

## C

C 1:11 2:2 25:2,2
calendar 15:19
care 23:18
case 1:5 3:4 8:22 14:11
  21:8 22:2

cases 20:10
categories 12:10
certain 4:3,22
certainly 20:7
certify 25:8,12
characterized 18:18
Chase 2:9
chosen 7:8
circumstances 7:22 8:5
  12:14,20 13:2
cite 20:10
City 2:5
civil 22:18
claim 14:17 18:17 19:12
  20:17 22:18
claimant 3:8 4:21
claimants 18:3 20:25
claims 8:14,18 18:3,4,4,8
  18:12,24 19:5,6,7 20:8
  20:13,20,23 21:14 22:5
  23:2,11,21
clarification 6:2
clear 20:21
clients 21:21
come 16:3
commit 4:2
companies 22:9
compel 1:13 3:11,17 13:3
  14:19 16:4,8 18:19
complete 4:11 8:8 10:10
completed 10:14
complicated 19:11
comprehensive 23:14
comprised 12:9
conceded 22:6
concering 12:6
concern 7:16
concerned 20:8
concerning 10:9
concerns 7:6 8:24
concert 18:20
concluded 11:9,10
concluding 20:13
conclusion 9:24
concurrently 14:15
conduct 22:8
conference 20:5

conferences 16:6
consensual 17:5
consequential 23:16
consistent 7:21 14:18
conspiracy 22:18
consume 21:3
contain 4:7 5:19
contained 6:20 7:3,20
  23:8
content 6:8,14,24
contents 6:16
contested 8:19
continued 3:10
contract 12:15 14:16
  18:4,14 19:12,13,15,19
  21:16,20 22:23 23:13
contrary 21:17,21
copies 4:13 10:19
Corp 3:4
corporation 22:19,23
correct 15:11
correspondence 10:20
cost 18:10 19:3
costs 3:25
counsel 2:3 9:8 10:13
  11:21 13:11,14 17:21
  22:17 23:19
country 4:16
COUNTY 25:4
Court 1:3 3:9,16 4:12,17
  4:20 5:3 9:15,23 10:20
  12:22 16:6,9,10 17:19
  18:22 19:7,17 20:4
  21:3
created 7:23,24
criteria 9:17,20 11:24
  12:3,3
current 19:4
currently 18:11 19:10
Custom 1:9

## D

damage 23:11
damages 19:18,20 23:16
date 4:3 9:9 10:6,13
  23:25,25 24:2
dated 10:17 18:15
dates 16:11

**day** 25:11,17
**deadlines** 1:14 16:3
**DEBORAH** 25:6,19
**debtor** 23:9
**Debtors** 1:6 2:4 3:11,14
3:17 4:6,13,17,19,22
5:11,16 6:3,22,23 7:2
7:15 8:20 9:2,4,6 12:19
12:24 13:11,14 14:10
14:19,21 15:8 17:15,25
20:4,8,20,22 21:8 22:6
**December** 24:2
**deciding** 18:8
**Declaration** 12:4
**deemed** 13:23,25
**defenses** 8:14,18
**defficient** 23:4
**deficiencies** 15:7
**deficient** 19:2,8
**defunct** 12:15
**denial** 22:11
**described** 6:6
**describes** 8:10
**describing** 12:2
**description** 5:22 15:8
**descriptions** 5:17,22 6:7
**designations** 6:16,18
**detail** 21:24
**determination** 8:12
**determine** 5:18 6:19
**determined** 19:7,16
**directed** 4:12,17 13:15
19:5
**disagree** 20:2
**disagreement** 16:16
**discharged** 14:25
**disclosures** 8:21
**discovery** 1:14 5:7 12:21
12:23 19:4,9,11 22:2
**discussion** 17:14
**disposition** 18:25
**dispute** 17:5
**DISTRICT** 1:3
**document** 8:3 9:10 10:2
10:8 11:10 12:21,25
13:21 19:9
**documents** 1:14 3:12,14

3:18 4:2,3,8,9,15,18 5:5
5:9,12,19 7:5,12,12
8:25 9:15 10:15,23
11:4,13,16,19 12:6,8,11
12:13,16 13:7,12,13,19
13:23,24 14:11,12,23
21:7,11
**Donald** 9:18
**Driscoll** 2:6 6:4 9:5,5
13:20 15:12 17:13,19
20:3 22:15 24:3
**DRYE** 2:9

**E**

**E** 1:11,11,18,18 2:2,2
25:2,2
**earlier** 10:11 16:5
**economic** 21:17,21
**effective** 18:10 19:3
**Effectnet** 18:15
**either** 5:21 7:4 15:7
23:17
**electronic** 19:11
**elimination** 4:22
**employees** 8:11,12
**Enron** 3:4
**entry** 16:9
**ESQ** 2:6,6,7,11
**estimate** 13:18
**estimated** 15:9
**et** 1:5,12 3:4
**event** 23:19
**evidence** 21:19,23
**evidencing** 9:10
**exactly** 6:17 13:12
**examination** 10:8
**examined** 13:21
**examining** 14:2
**exception** 21:13,25
**exceptions** 20:18 21:12
22:4
**excerpt** 3:3
**exclude** 7:4
**excluded** 5:2
**Exhibit** 9:11,19 12:5
**exist** 22:21
**existed** 15:7
**existence** 19:13

**Express** 9:25
**extend** 1:14
**extraordinarily** 12:17

**F**

**F** 1:18 9:11,19 12:5 25:2
**face** 23:12
**fact** 18:6 19:6 20:23
22:10,16
**fail** 18:5 20:13
**fair** 14:9
**far** 18:9 20:7
**Federal** 9:25 14:20
**Fifty** 7:10
**figure** 15:4
**file** 17:16,25
**filed** 1:15 12:24 20:11,19
21:5 23:8
**files** 8:10
**filing** 14:14 21:9 23:23
**fine** 17:6
**first** 7:16
**followed** 7:24 9:21
**following** 3:2
**form** 18:23
**forward** 20:21
**four** 11:20 15:10
**frame** 15:10
**Friday** 12:2 17:22
**fully** 19:16
**further** 11:6,11 16:23
23:10 25:12

**G**

**genuine** 18:6
**given** 3:15 20:9 21:6
**go** 14:7 19:24 20:21 23:4
**going** 15:3 20:10
**GONZALEZ** 1:19 3:5
3:21 9:3 13:5,13 14:7
15:2,13,22 16:13 17:3
17:11,17 19:23 21:10
22:13 23:22
**good** 3:6 17:4
**gotten** 13:10
**great** 19:4
**Green** 1:9
**grounds** 23:20

**group** 13:17
**groupings** 11:4
**groups** 11:5

**H**

**hand** 25:17
**happens** 16:21
**hear** 9:4
**heard** 10:9
**hearing** 3:10 9:16,24
16:7 23:25,25
**HECKER** 2:3
**hereunto** 25:16
**highlighted** 10:2
**hold** 16:11
**Holdings** 1:13 3:8,11 9:8
17:15,21 18:13,15,17
18:18 19:6 20:2
**hone** 15:6
**Honor** 3:7 4:4 5:3 6:10
6:25 7:15 8:6,16,23 9:6
12:15 13:4,7 14:6
15:12,21 17:2,10,13
19:22 20:2,17,25 21:14
22:4 24:4
**HONORABLE** 1:19
**House** 1:9
**HR** 8:10
**hundred** 9:21
**HUNTSMAN** 25:6,19

**I**

**identified** 4:6 5:13,16
6:13
**impossible** 6:19
**improperly** 20:12
**improvidently** 23:8
**inability** 3:14
**incapable** 22:25
**include** 7:5
**incomplete** 20:7
**indecipherable** 5:23
**index** 8:9,15
**indexes** 4:14,25 5:5,11
5:13 6:6,12,15 7:14,17
7:18,22 8:7,24 9:2,9
**indicate** 21:19,23
**indicated** 4:6,20 5:4 11:6

20:22
**indicating** 6:7 10:2
**indication** 13:11
**indices** 9:13
**individuals** 8:17 12:12
**informal** 16:6 20:5
**information** 4:24 6:21
   7:4,20 8:3 14:22
**inherent** 22:16
**initial** 11:2
**inquired** 11:24
**insufficient** 7:4
**integrity** 7:18
**intend** 4:8
**intended** 13:8 15:23
**interested** 10:20 25:14
**interests** 21:18,22
**interfered** 21:15
**interference** 21:14 22:22
**interfering** 22:8
**interim** 4:12
**Intermedia** 8:11 18:14
   18:20 20:16 21:22 22:7
   22:20
**Intermedia's** 8:3 21:20
**involved** 9:9 12:12
**issue** 4:21 5:8
**issues** 18:6 22:3,10
**issuing** 18:7
**item** 17:14

### J

**J** 1:19
**JP** 2:9
**Judge** 1:19 3:5,21 9:3
   13:5,13 14:7 15:2,13,22
   16:13 17:3,11,17 19:23
   21:10 22:13 23:22
**judgment** 4:25 17:16
   18:2,7 20:6,11 21:5
   22:12 23:9,10,24
**July** 22:8

### K

**Kansas** 2:5
**KELLEY** 2:9
**kinds** 19:9
**knock** 23:11

**know** 6:17,21,23 7:21
   13:6,24 14:3 16:10
   22:15
**knowledge** 22:24

### L

**L** 2:6
**law** 18:5,9 19:2,17 20:14
   20:21,24 23:5,17
**laws** 22:21
**leave** 3:16
**legal** 23:20
**legally** 19:8
**letter** 6:3 10:17,25 11:2
   17:18,20 18:22 20:4
   23:4,6
**let's** 15:3
**liability** 23:15
**limitation** 23:14
**list** 4:23 5:9 7:5 10:5
   11:14
**listed** 6:11 8:13,15,20
**lists** 4:18 5:5,5,12,14,20
   11:3
**LLP** 2:3,9
**locations** 12:18
**log** 10:16,23
**long** 12:16
**longer** 16:2
**look** 13:9 21:6
**looking** 19:10
**louder** 3:21

### M

**maintained** 4:15
**manner** 12:12 14:10
   18:10
**MARK** 2:6
**marriage** 25:13
**material** 18:6
**materials** 11:17
**matter** 6:7 8:19 9:9 16:2
   18:5,8 19:2,17 20:14,24
   23:17 25:15
**matters** 23:5
**mean** 13:15
**mention** 8:9
**mentioned** 23:6

**merger** 22:6,9
**method** 14:22
**misleading** 20:6
**Missouri** 2:5
**modify** 16:24
**monetary** 19:20
**months** 8:21 9:13
**moot** 13:3
**Morgan** 2:9
**MORRISON** 2:3
**motion** 1:13 3:11,13,16
   4:5 13:2 14:18 15:5,17
   16:4,8 17:16 18:19
   20:6,11 21:4 22:11
   23:9,24
**multiple** 4:16
**mutually** 16:20

### N

**N** 2:2
**names** 8:12,15,19 12:12
**necessitated** 3:13
**need** 5:7 19:8
**new** 1:3,10,10 2:10,10
   16:10,11 25:3,4,8
**non-reviewed** 7:11
**Notary** 25:7
**notice** 20:9
**November** 15:15,16,17
   17:7 18:16,21
**number** 5:10 13:18,24
   14:5
**numbered** 10:15
**numbers** 14:3
**numerous** 12:17

### O

**O** 1:18
**obligations** 14:19,25
**occurring** 22:25
**offer** 3:20,23
**offered** 3:17
**omitted** 20:19
**Once** 15:5
**one-sided** 20:7,22
**opportunity** 21:6
**oppose** 21:8
**opposition** 9:11,19 12:5

17:23
**order** 12:22 15:25
**original** 12:5,6,25 16:7
**originally** 20:12
**outcome** 25:15
**outside** 15:10
**oversight** 23:7
**owed** 19:18
**owned** 22:20

### P

**P** 1:11 2:2,2
**papers** 9:11 20:19
**pare** 5:8
**parent** 20:14 21:15
   22:19,22
**Park** 2:10
**particular** 5:24 6:12
   8:18
**parties** 21:4 23:14 25:14
**party** 12:15 23:17
**Parus** 1:13 3:8,10 9:8
   11:21 17:14,21 18:13
   18:14,17,18 19:5,25
   22:18
**pay** 3:24
**pending** 16:5
**percent** 7:9,9,10
**period** 6:5,10,12 22:5
**permit** 20:20
**permitted** 17:25
**pertaining** 19:15
**petition** 14:15
**place** 16:2
**please** 3:5,22
**point** 16:8
**policy** 8:4
**portion** 3:25 8:16
**possible** 6:8
**precedes** 22:6,8
**preclude** 18:7
**precludes** 20:16
**predecessor** 18:15
**preliminarily** 9:7
**prepared** 10:17
**present** 3:16
**presented** 18:12
**pre-merger** 23:18

prior 14:14
privilege 10:16,23
privileged 13:25
probably 16:18
problem 20:17
problematic 5:14
problems 6:9
proceed 18:10
proceeded 10:7
proceeding 18:11
proceedings 3:1,3 4:1
  5:1 6:1 7:1 8:1 9:1 10:1
  11:1 12:1 13:1 14:1
  15:1 16:1 17:1 18:1
  19:1 20:1 21:1 22:1
  23:1 24:1 25:10
process 14:2
produce 3:19 4:9,13,17
  14:11
produced 5:11 13:8,17
  21:7
producing 3:25 4:3
  14:23
production 1:14 3:12
  10:24 11:19 15:3,6
  16:21
prohibits 23:15
provide 9:24 12:20 14:21
  16:22
provided 8:8,21 9:8,12
  10:4 11:14 23:14
provision 23:15
PRYOR 2:7
Public 25:7
put 7:23 15:13 16:19
p.m 1:8

## Q

question 7:17 8:6 10:9
  13:15 14:5 19:13,14
questions 14:9 22:16

## R

R 1:11,18 2:2 25:2
raised 7:16 14:9 16:5
Ramsey 18:8 12:4
ready 10:24
really 5:24

reasonable 5:8 14:18
reasonably 11:18 12:19
reasons 5:15 18:21 23:3
receive 9:22
received 10:11 11:22
records 7:3
reference 21:12
reflected 23:3
regard 6:10,14 7:14 9:14
  12:7,23 13:20 22:4
regarded 22:25
regarding 8:3 14:22
  17:14
rejected 3:20,23
related 25:13
relationship 20:15 21:11
relevant 8:10,13,17 22:5
reliability 7:19
relief 3:12 16:23
remainder 5:20 12:9
Reorganized 1:6 2:3
  12:19
Reporter 25:7
request 12:25 17:15,20
  17:23
requested 11:12
requesting 17:24 20:5
require 4:10 14:21
required 4:11 11:11
resources 21:3
respect 15:17
responded 6:4 11:25
response 1:15 12:24
  17:23
responsive 4:7,10 5:2,19
  12:11,13 13:23
responsiveness 3:19 6:8
result 22:11 23:16
retained 8:4
retention 8:4
revealed 11:6
review 3:17 4:19 5:4,16
  5:21,25 10:4,10,14 11:5
  11:6,9,11,12
reviewed 4:23 5:6,13
  6:24 9:2 11:17
reviewing 14:23

rid 23:21
right 9:3 13:5 17:9,11
  19:23 22:13 23:22
rise 14:16
Robert 2:6 9:5
Rule 8:20
rules 7:23 14:20,20,25
  20:18

## S

S 2:2
sampled 7:8,9 11:4,5
  12:10
samples 11:11
sampling 7:2,6
schedule 15:18 16:10,14
  16:17,20,22,24 17:6
Scheduling 15:25
seated 3:5
section 23:13
see 13:9 15:16 17:17
seeing 10:21
seeking 14:10
seen 21:25
select 9:21 11:25
selected 4:19 5:21,25 6:5
  8:25 9:17 10:4
selection 9:14 10:10
sense 5:6
September 1:7 10:13,17
  11:8,23 12:2 17:22
  25:11,17
set 12:3 16:11 25:17
sets 9:20
seven 8:15 15:14
SHAIKEN 2:6
Shorthand 25:6
shown 21:17
situation 19:20 23:18
six 15:14
solid 23:20
sort 7:2
sought 3:24 16:23
SOUTHERN 1:3
speak 3:21
speaks 19:15
Special 2:3
specifically 8:9

specified 9:18
specifies 19:19
SS 25:3
stand 6:18
state 22:21 25:3,8
stated 18:22
States 1:3,9,19
Stephen 2:11 3:7
STINSON 2:3
stored 12:16,18
Street 2:4
subject 6:7 16:21 18:24
submit 17:5
subsidiary 20:15 21:16
  21:18 22:20,24
sufficient 4:25
summarizes 8:23
summary 17:16 18:2,7
  18:25 20:6,11 21:4
  22:12 23:9,10,24
supplied 17:22
supporting 21:25
sure 15:19
synoptic 18:23
synoptically 23:3

## T

T 1:11 25:2,2
take 4:21 13:9 23:18
taken 3:3 25:10
talking 13:7,14,16
task 4:11
technique 7:3,7
telephone 2:8 9:16 16:16
  16:18
telephonically 17:4
tell 5:18,24
Ten 7:9
Thank 13:4 17:9,11
  19:22 24:3
think 14:8,17 15:2,6 17:3
  17:6 18:9 22:9
thousands 4:14 10:3
time 4:5,20 6:5,10,12
  10:16 14:14,16 15:9,10
  16:8 22:5
timely 12:24
timing 22:3

today 10:8
tort 20:8,13,16 22:17
tortious 21:14 22:22
tort-based 18:3,4,8,24
   19:5 23:2,12,21
transcript 25:10
transmittal 11:2
true 25:9
Tuesday 15:21,23,24
   23:25
two 5:4 10:12 18:12
types 7:12

### U
unfair 21:2
United 1:3,9,19
universally 22:24
unknown 6:8,14,24
unnecessarily 21:2
Use 23:25
utility 7:16

### V
vague 5:23
various 12:18
vast 19:9
viable 16:3
view 4:8
violated 12:23

### W
waiting 17:7
Walnut 2:4
wants 16:11
warehoused 14:13,13
warehouses 3:18 4:16
WARREN 2:9
wasn't 3:15
way 10:19
Wednesday 11:22,23
week 6:3 10:22 13:8
weeks 4:11 10:12 11:20
   15:10,14
WHEREOF 25:16
wholly 22:20
WITNESS 25:16
Wood 2:11 3:6,7,23 9:25
   10:5 11:8 12:8 13:6

14:5,8 15:20,25 16:25
   17:9 19:25 21:13
work 16:14 24:2
working 16:17
WorldCom 1:5,12 18:19
   20:15 22:7,14,19
worth 17:7
write 11:22

### X
x 1:4,7,11

### Y
yielded 12:10
York 1:3,10,10 2:10,10
   25:3,4,8

### 0
02-13533 1:5,12 3:4

### 1
1st 10:13,18 11:8 15:15
   15:16,17 16:12,15,19
   17:7
10th 16:25
10,000 5:9 14:12
10:00 15:18
10004 1:10
101 2:10
10178 2:10
11 23:13
11:55 1:12
12th 9:25 10:6,25 17:20
   18:23 23:4
12:25 1:8
1201 2:4
13 1:7
13th 25:11
14 5:16

### 2
2000 18:16,21
2001 22:8
2005 1:7 9:10 25:11,17
26 8:20
28th 25:17

### 3
300 5:10 13:15

31 9:10
387 4:7 9:16 12:6 13:22

### 4
400 5:10

### 6
6th 24:2
64106 2:5

### 7
7th 11:23
70 11:13 12:7 14:3

### 8
8 13:22

### 9
9th 9:24 12:2 17:22
9/13/05 3:3

# Exhibit N

A 02105

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Allison M. Murdock, Esq.
Jodi M. Hoss, Esq.
1201 Walnut, Suite 2900
Kansas City, MO 64106
Attorney for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | CHAPTER 11 CASE |
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

## WORLDCOM'S SUPPLEMENTAL OPPOSITION TO CLAIMANT'S MOTION TO COMPEL PRODUCTION OF RESPONSIVE DOCUMENTS <u>AND TO EXTEND DISCOVERY DEADLINES</u>

WorldCom, Inc. ("WorldCom") provides the following supplemental opposition to

Claimant Parus Holdings, Inc.'s ("Parus Holdings") Motion to Compel and to Extend Discovery

Deadlines ("Motion") (Docket No. 16423).

## <u>INTRODUCTION</u>

On July 13, 2005, Parus Holdings filed a motion to compel related solely to the

production of WorldCom's paper documents. Parus Holdings' Motion specifically excludes the

production of electronic documents. <u>See</u> Parus Holdings' Motion at 32 (Docket No. 16423);

Parus Holdings' Reply at 9 (Docket No. 16715).

The Court heard argument on Parus Holdings' Motion on August 9 and September 13,

2005, and continued the hearing for November 1, 2005. As discussed herein, WorldCom's

counsel has spent over 350 attorney hours reviewing over 450 boxes of documents to produce

documents responsive to Parus Holdings' document requests. In addition, WorldCom's counsel

A 02106

has interviewed numerous present and former WorldCom and Intermedia Communications, Inc. ("Intermedia") employees in an effort to locate responsive documents. From these efforts, WorldCom has culled and produced to Parus Holdings 12 ½ boxes, consisting of 29,303 pages, of documents, including some documents that were maintained in electronic form. WorldCom has complied with its obligations to produce paper documents responsive to Parus Holdings' requests. Therefore, Parus Holdings' motion to compel should be denied.

## ARGUMENT

Set forth below is a recitation of WorldCom's efforts to locate documents responsive to Parus Holdings' document requests and WorldCom's production of documents. Attached hereto as Exhibit 1 is the Supplemental Declaration of Donald C. Ramsay, the attorney who has had primarily responsibility for locating documents responsive to Parus Holdings' requests and coordinating the document production. As set forth in Mr. Ramsay's supplemental declaration, all of the facts set forth herein regarding WorldCom's efforts to locate documents and its production of documents are true and correct. See Supplemental Ramsay Declaration ¶ 2 (Ex. 1).

## I.    WorldCom's Search for Documents and Initial Productions.

WorldCom's counsel began their search for documents related to Parus Holdings' claims months before Parus Holdings served its document request on WorldCom. WorldCom's counsel contacted *via* email those current WorldCom employees who, based on the allegations in the proofs of claim, might have relevant information and/or documents. These employees were provided information regarding Parus Holdings' proofs of claim, and asked to advise WorldCom's counsel of any information and documents they possessed regarding the claims and to identify any other persons who might have relevant information or documents. As a result of

A 02107

these searches, WorldCom produced 255 pages of documents to Parus Holdings on January 26, 2005. Parus Holdings subsequently served Claimants' Request for Documents in February of 2005.

WorldCom's counsel continued its search for documents related to Parus Holdings' claims as well as documents responsive to Parus Holdings' document requests. WorldCom's counsel telephoned the employees who did not provide documents in response to the earlier emails to determine whether they had responsive documents and/or information regarding where such documents might be located. WorldCom's counsel also telephoned certain former WorldCom and Intermedia employees to determine whether they possessed responsive documents or information or knew where responsive documents might be located. As part of this process, WorldCom's counsel has interviewed over 20 current or former WorldCom and/or Intermedia employees (in addition to WorldCom's in-house counsel) for the purpose of locating documents that might be responsive to Parus Holdings' claims and document requests.

During the course of these telephone interviews, WorldCom's counsel learned that when Intermedia ceased doing business (which was long before Parus Holdings filed its claims), Intermedia's employees were directed to box their documents for storage. Through WorldCom's records information management function, WorldCom's counsel located over 10,000 boxes of Intermedia documents stored in depositories in Florida, Virginia, Colorado and Mississippi. WorldCom's counsel was provided with the indexes of these boxes, and the operator of the depositories, Iron Mountain, provided counsel with cost estimates for the retrieval of the boxes. WorldCom advised Parus Holdings of the existence of the stored Intermedia documents in Debtors' Response to Claimant's Request for Documents, which was timely served on March 25, 2005. WorldCom further produced to Parus Holdings on that date an additional 229 pages of

A 02108

documents that were located as a result of WorldCom's continued search for responsive documents.

Based on Iron Mountain's written estimate, it would have cost approximately $149,000 to retrieve the 10,000 boxes, ship them to the Kansas City Iron Mountain facility, obtain space in that facility for review and return the boxes to storage. Because of the cost associated with the retrieval and review of the Intermedia stored documents, WorldCom's counsel made several proposals to Parus Holdings for the review of these documents. WorldCom offered to allow Parus Holdings to designate which of the 10,000 boxes WorldCom should review; offered to arrange for Parus Holdings to review all of the boxes (with an agreement that no privilege would be waived); or offered to review the boxes if Parus Holdings would share in the costs of retrieving them. Parus Holdings would not agree to any of these methods for review and made no reasonable counter-proposals. See WorldCom's Opposition at 6-9 (Docket No. 16687). Instead, Parus Holdings filed its motion to compel.

## II.    WorldCom's Review of WorldCom Documents and Intermedia Stored Documents.

WorldCom's counsel continued its efforts to locate WorldCom documents responsive to Parus Holdings' requests. We obtained from current WorldCom employees electronic documents regarding the Master Licensing Agreement between Webley and WorldCom, WorldCom's financial analysis of Webley, and documents concerning the integration of Intermedia and WorldCom and the significant reduction in force that occurred after the WorldCom/Intermedia merger. WorldCom's counsel has located only a limited number of documents in WorldCom's files related to the UC Contract between Intermedia and Parus Holdings' predecessor, EffectNet, at issue in this action because beginning in September of 2001, the entire voice product line of business known as IntermediaOne was terminated. Based on the

A 02109

documents reviewed (and produced), IntermediaOne never migrated over to WorldCom and it was never integrated into WorldCom. See *infra* p. 7-8 (stating that the aforementioned documents were produced as part of WorldCom's September and October 2005 productions).

In addition, because Parus Holdings declined to agree on a method for retrieving and reviewing the Intermedia stored documents, WorldCom proceeded with its own review of the documents using the indexes to select those boxes that might contain responsive documents. Using the document indexes, WorldCom identified 387 of the over 10,000 boxes of documents in the Florida, Virginia and Colorado depositories that – either based on the date or subject matter description listed on the index or the lack thereof – might contain responsive documents.[1] Consequently, if the description of a box on the index suggested that the box might contain responsive documents, WorldCom retrieved the box for review. Similarly, if the indexes did not describe the contents of a box and the documents were listed as being in the relevant time frame or no time frame was listed, WorldCom retrieved the box for review. In a few instances, it appeared from the description on indexes that certain categories of boxes were unlikely to contain responsive documents, but counsel could not be certain. In these instances, WorldCom's counsel selected a sample of approximately five boxes for review. If after review of the sample, it was possible that the remaining similarly described boxes could contain responsive documents, then counsel retrieved all of the similarly described boxes for review. These boxes were shipped to WorldCom's counsel's office to avoid the costs associated with using depository space for

---

[1] The contract at issue in this action is dated November 20, 2000. See Parus Holdings' Motion at 2 (¶ 6). The contract was terminated by EffectNet on April 12, 2002. See March 25, 2002, letter from Mr. McConnell to Mr. Bacon (WorldCom's Opposition, Ex. M) (Docket No. 16687). WorldCom did not retrieve boxes that dated before January 1, 2000, unless it appeared based on their description that they might contain potentially responsive documents.

A 02110

review and travel, and to ensure that the boxes will remain easily accessible throughout this case.[2]

WorldCom described the aforementioned selection method in its opposition to Parus Holdings' motion to compel and WorldCom's counsel also explained the selection method during the hearing on August 9, 2005.  WorldCom's Opposition at 9-10 (Docket No. 16687).  On August 12, 2005, WorldCom provided Parus Holdings a list of all of the boxes WorldCom selected from the indexes for review and invited Parus Holdings to advise of any additional boxes it believed WorldCom should review.  See August 12, 2005, letter from Robert Driscoll to Steven Wood (attached hereto as Ex. 2).  For ease of reference, WorldCom also provided Parus Holdings on this same date a highlighted copy of the indexes showing the boxes selected for review.  Id.  Parus Holdings never identified any additional boxes that it believed WorldCom should have reviewed.

After reviewing the boxes originally retrieved from the depositories, WorldCom's counsel re-examined the indexes in light of documents found during the initial review to determine whether additional boxes should be retrieved from the depositories.  Based on this re-examination, WorldCom's counsel retrieved an additional 77 boxes from the depositories for review.  Once again, WorldCom provided Parus Holdings a list of the additional boxes it intended to review.  See September 1, 2005, letter from Robert Driscoll to Steven Wood (attached hereto as Ex. 3).  And, again, Parus Holdings did not identify any additional boxes it believed WorldCom should review.

---

[2]  Consistent with its discovery objections, WorldCom did not retrieve and review Intermedia boxes that, based on the subject matter and/or time period described on the indexes, are unrelated to this action.

A 02111

III.    <u>WorldCom's September 2005 and October 2005 Document Productions.</u>

Over an approximately six week period, seven lawyers (from outside counsel's office) reviewed the approximately 380 boxes of Intermedia documents initially retrieved from the depositories.  Some of these lawyers also reviewed electronically stored documents obtained from a current WorldCom and former Intermedia employee.  From this review, the lawyers culled 25,427 pages, or 11 ½ boxes, of documents responsive to Parus Holdings' requests.  These documents were Bates numbered and produced to Parus Holdings on September 22, 2005.  With its production, WorldCom provided to Parus Holdings an index showing by Bates number the document requests to which the produced documents were responsive and, where applicable, the number of the box in which the documents were found.  <u>See</u> Index of MCI's Response to First Request for Documents – September 22, 2005 (attached hereto as Ex. 4).  WorldCom also provided to Parus Holdings a privilege log identifying those responsive documents that were withheld from production on the basis of the attorney-client privilege and/or the litigation work product doctrine.

Six lawyers (from outside counsel's office) reviewed the additional 77 boxes of documents retrieved from the depositories.  From this review, WorldCom's counsel culled an additional 3,876 pages, or 1½ boxes, of responsive documents.  WorldCom's counsel Bates numbered these documents and produced them to Parus Holdings on October 7, 2005.  WorldCom again produced an index showing by Bates number the document requests to which the produced documents are responsive and, where applicable, the number of the box in which the documents were found.  <u>See</u> Index of MCI's Supplemental Response to First Request for

A 02112

Documents – October 7, 2005 (attached hereto as Ex. 5).  WorldCom also provided to Parus Holdings an amended privilege log.

WorldCom's outside counsel has spent over 350 hours of attorney time reviewing documents for the productions on September 22 and October 7, 2005.  These 350 hours do not include time spent interviewing current and former employees to locate documents, identifying boxes from the indexes to review, arranging for the transfer of the Intermedia boxes to Kansas City or preparation of the indexes provided to Parus Holdings.

WorldCom's productions have included printed versions of electronically stored documents relating to the Master Licensing Agreement with Webley; personnel files of individuals who dealt with the UC Contract; the Unified Communications Services General Agreement; Intermedia's payment of the $175,000 deposit to EffectNet; termination of Intermedia's operations and its integration with WorldCom; the finances of EffectNet and Webley; and documents concerning Intermedia and WorldCom's unified voice products.

As reflected in the indexes produced by WorldCom with its documents productions (which show by Bates number the documents requests to which the produced documents are responsive), WorldCom's September and October 2005 productions have included documents responsive to all but six of Parus Holdings' 35 document requests.  As to five of these requests (Request Nos. 5 and 7-10), WorldCom produced responsive documents in its earlier productions or the requests relate to WorldCom's legal theories based on the language of the UC Contract.[3]

---

[3]  Request Nos. 5, 8, 9 and 10 request documents related to WorldCom's contentions that Parus Holdings is not entitled to a double recovery, seeks an unenforceable penalty, has calculated damages using amount per commitment higher than the contract specifies and the contract prohibits assignment.  These all are legal issues related to the language of the contract.  Request No. 7 requests documents concerning WorldCom's contention that Parus Holdings' terminated the contract.  Parus Holdings' letters to Intermedia terminating the contract were produced in WorldCom's earlier document productions.

As to the remaining request (Request No. 18), WorldCom has not located any documents regarding communications between WorldCom and Intermedia regarding the General Agreement between Intermedia and Parus Holdings' predecessor, EffectNet.

WorldCom is making continuing efforts to ensure that its document production is complete. If additional non-privileged and responsive documents are located, they will be produced.

## IV.    WorldCom's Production of Electronic Documents.

Parus Holdings' Motion specifically excludes the production of electronic documents. See Parus Holdings' Motion at 32 (Docket No. 16423) (stating that the parties had not yet conferred regarding electronic document production and the factual record does not exist for the Court to undertake a cost-shifting analysis); see also Parus Holdings' Reply at 9 (Docket No. 16715) (same). However, as discussed above, WorldCom already has printed, reviewed and produced some of its electronic documents.

On October 5, 2005, Parus Holdings' counsel advised for the first time that Parus Holdings is willing to propose search terms for electronic discovery. On October 24, 2005, Parus Holdings provided WorldCom a list of proposed search terms including names of individuals. WorldCom is currently obtaining an estimate of the cost for conducting the scope of search now proposed by Parus Holdings.

## CONCLUSION

For the reasons set forth herein and in WorldCom's opposition to Parus Holdings' motion to compel, Parus Holdings' Motion to Compel and to Extend Discovery Deadlines should be denied. WorldCom has complied with its obligations to produce paper documents responsive to Parus Holdings' requests – which is the only subject of Parus Holdings' Motion.

A 02114

Respectfully submitted,

STINSON MORRISON HECKER LLP


By:  _s/Robert L. Driscoll_____
             Robert L. Driscoll
             Lawrence W. Bigus
             1201 Walnut Street, Suite 2800
             Kansas City, MO  64106
             (816) 842-8600 – Telephone
             (816) 691-3495 – Facsimile

ATTORNEYS FOR DEBTORS
AND DEBTORS IN POSSESSION


## CERTIFICATE OF SERVICE

I hereby certify that on October 27th, 2005, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all parties receiving electronic means.

        _s/Robert L. Driscoll_____
           Attorney for Debtors

A 02115

**EXHIBIT 1**

A 02116

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Allison M. Murdock, Esq.
Jodi M. Hoss, Esq.
1201 Walnut, Suite 2900
Kansas City, MO 64106
Attorney for Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | CHAPTER 11 CASE |
| | : | NO. 02-13533 (AJG) |
| WORLDCOM, INC., et al., | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

## SUPPLEMENTAL DECLARATION OF DONALD C. RAMSAY

I, Donald C. Ramsay, of lawful age and having been duly sworn, depose and state as follows:

1.     I am an attorney with the law firm of Stinson Morrison Hecker LLP.  I am the attorney who has had primarily responsibility for locating documents responsive to Claimant's First Request for Documents and coordinating WorldCom's document production.  I have personal knowledge of the matters set forth herein.

2.     All of the facts set forth in WorldCom's Supplemental Opposition to Claimant's Motion to Compel Production of Responsive Documents and to Extend Deadlines regarding WorldCom's efforts to locate documents responsive to Parus Holdings' document requests and WorldCom's production of documents are true and correct.

DB02-048629

EXHIBIT

1

**A 02117**

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 27, 2005.

Donald C. Ramsay

2

A 02118

**EXHIBIT 2**

A 02119