**KELLEY DRYE & WARREN LLP**
John M. Callagy (JC 8166)
Robert S. Friedman (RF 1538)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
Attorneys for Claimant Parus Holdings, Inc.
Successor-By-Merger to EffectNet, Inc. and
EffectNet, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re:** | **Case No. 02-13533 (AJG)** |
| **WORLDCOM, INC., *et al.*,** | **Chapter 11** |
| **Debtors.** | **(Jointly Administered)** |

**AFFIDAVIT OF ROBERT C. MCCONNELL IN SUPPORT OF CLAIMANT PARUS HOLDINGS, INC.'S RESPONSE AND OPPOSITION TO DEBTORS' MOTION FOR SUMMARY JUDGMENT**

STATE OF ILLINOIS )
SS.:
COUNTY OF LAKE )

**ROBERT C. MCCONNELL**, being duly sworn, deposes and says:

1. I make this Affidavit in support of Claimant Parus Holdings, Inc.'s response and opposition to Debtors' motion for summary judgment seeking dismissal of Parus' claims. I make this Affidavit based upon personal knowledge and my review of documents in Parus' files.

2. I am the General Counsel of Parus Holdings, Inc., a successor by merger to EffectNet, Inc. and EffectNet, LLC. Since 1997, I have been an executive with Webley

Systems, Inc., acting at various times as General Counsel and/or Chief Financial Officer. I joined EffectNet after its integration with Webley Systems, Inc. in 2001.

3. I became involved in issues concerning Intermedia Communications, Inc. ("Intermedia") and the Unified Communications Services General Agreement, dated as of November 20, 2000 ("UC Contract"), shortly after joining EffectNet in 2001.

4. By March, 2002, Intermedia had cancelled all of the accounts under the UC Contract. By this date, Intermedia had breached the UC Contract and all of the Reconciliation Payments due under the contract through December, 2003 had accrued.

5. Due to Intermedia's breach and its failure to pay the outstanding invoices, on March 12, 2002, I sent a letter to Intermedia setting forth Parus' position that Intermedia breached the UC Contract and was liable for, *inter alia*, the outstanding invoices in the amount of $548,087.25 and the Minimum Commitment through December 2003. In the letter, I requested immediate payment for the outstanding invoices and that Intermedia cure its breach. I also specifically reserved rights and remedies EffectNet had under the UC Contract and other law. (A copy of the March 12, 2002 letter is annexed hereto as Exhibit A.)

6. Intermedia neither paid the outstanding invoices nor cured the breach. I therefore wrote a second letter, dated March 25, 2005, again requesting payment of the invoices, which were now $827,844.27, and further requesting that Intermedia cure its breach. Again, I advised Intermedia that EffectNet may claim damages for all amounts due under the UC Contract, which included the Minimum Commitment through the end of the Initial Term. Once again I reiterated EffectNet's reservation of its rights and remedies. (A copy of the March 25, 2002 letter is annexed hereto as Exhibit B.)

7. Intermedia never cured, nor did Intermedia pay the outstanding invoices.

8. I have read Debtors' summary judgment motion and, in particular, their claim that the March 12th and March 25th letters operated to terminate the UC Contract and somehow limited Debtors' obligations under the UC Contract to the amounts outstanding as of April 2002. This claim is frankly preposterous and ignores the words of the letters as well as the understanding and intention of the parties.

9. My sole and clear intention in sending the letters was to receive payment of the invoices and provide notice of the breach in an effort to encourage Intermedia's cure and ultimate performance of its obligations under the UC Contract. I never intended to terminate the UC Contract nor limit Intermedia's obligations in any manner.

10. This is confirmed by the subsequent discussions with Intermedia representatives in which they never expressed the view that the contract was terminated. In fact, I had several discussions with Jeffrey Hsu, an attorney with Intermedia. In these discussions, Mr. Hsu expressed his understanding that my letters of March 12th and March 25th were notices of the breach and not termination letters.

[signature]
ROBERT C. MCCONNELL

Sworn to before me
this 18th day of November 2005.

[signature]
Notary Public

"OFFICIAL SEAL"
DIAN E. DZIUBINSKYJ
NOTARY PUBLIC STATE OF ILLINOIS
My Commission Expires 02/15/2009

# EXHIBIT A



10230 S. 50th Place
Phoenix, AZ 85044
Office: 602.296.3300
Fax: 602.296.3311

Writer's Direct No.
(888)-387-3481

March 12, 2002

**Via Federal Express Mail**
Mr. Rich Black
Senior Vice President
of Sales and Marketing
One Intermedia Way
Tampa, Florida 33647

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) ("**EffectNet**") and Intermedia Communications, Inc. ("**Intermedia**") (the "**Agreement**")

Dear Mr. Black:

Pursuant to the terms of the referenced Agreement, Intermedia agreed to market the UC Services to Intermedia customers and end users, including wholesale and retail customers. Intermedia agreed to provide periodic forecasts of expected mailbox activations, the first of such forecasts to be provided on or before November 30, 2000. Intermedia also agreed to deliver a minimum number of current active subscribers on or before certain dates up to a minimum of 10,000 such subscribers on or before December 18, 2001 and at the end of each calendar month thereafter for the Term of the Agreement. Intermedia also agreed to pay the agreed pricing for activated mailboxes pursuant to the Agreement. Intermedia further agreed to pay all invoices within 15 calendar days of receipt. Intermedia also agreed to pay a Reconciliation Payment as of the Ramp Date and the end of each calendar month thereafter during the Term. On February 12, 2002, Intermedia received an invoice for the pricing applicable to subscribers and for the Reconciliation Payment with respect to the

month of December 2001 (including the Ramp Date) and the month of January 2002. Each of the forgoing obligations has not been fulfilled by Intermedia as required by the Agreement (**"Intermedia Defaults"**) and each such obligation is a material obligation of Intermedia under the Agreement. The forgoing is not intended to be a full and complete statement of all material obligations under the Agreement that remain unfulfilled by Intermedia. Capitalized terms used in this letter without definition have the meaning assigned to such term in the Agreement.

EffectNet hereby gives Intermedia written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults and EffectNet further hereby gives Intermedia written notice that EffectNet may (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice if each of the Intermedia Defaults has not been cured within such thirty (30) day period, and (ii) further exercise all available remedies pursuant to the terms of the Agreement and as otherwise may be available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of the Agreement, of the amounts itemized below:

| | |
|---|---|
| Total Amount Past Due on invoice 1010, dated February 6, 2002, and delivered to Intermedia on February 12, 2002 (for the December 2001 billing cycle): | $274,021.05 |
| Total Amount Past Due on invoice 1011, dated February 6, 2002, and delivered to Intermedia on February 12, 2002 (for the January 2002 billing cycle): | <u>$274,066.20</u> |
| **Required Payment:** | $548,087.25 |



Intermedia should also take notice of the Due Date of invoice #1018, dated March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on March 6, 2002. Payment of this amount is due on or before March 21, 2002.

If Intermedia fails to cure the Intermedia Defaults and if EffectNet terminates the Agreement as aforesaid, EffectNet may claim damages for all amounts due pursuant to the Agreement, including, without limitation, the following:

| | |
|---|---|
| Required Payment | $ 548,087.25 |
| Invoice # 1018 | $ 279,757.02 |
| Reconciliation Payments for the unexpired Term | $5,662,667.58 |
| Forfeiture of Deposit | $ 175,000.00 |

Nothing in this letter is intended to be a waiver or release of any rights or remedies, or an election thereof, that EffectNet has under the Agreement or applicable law, and all such rights and remedies are hereby expressly reserved in their entirety.

Very truly yours,

Robert C. McConnell
General Counsel

# EXHIBIT B



One Parkway North
Fourth Floor North
Deerfield, Illinois 60015
Office: 888.444.6400

Writer's Direct No.
(888)-387-3481

March 25, 2002

**Via Federal Express Mail**
Mr. Brett Bacon
MCI/WorldCom
1945 Old Gallows Road
Vienna, Virginia 22182

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) ("**EffectNet**") and Intermedia Communications, Inc. ("**Intermedia**") (the "**Agreement**")

Dear Mr. Bacon:

EffectNet, by letter to the attention of Mr. Rich Black, dated March 12, 2002, issued a written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults, as defined in the March 12 letter (the "**March 12 Letter**"). I understand from you that Mr. Black referred the March 12 letter to your attention upon receipt. As you know, the Agreement in Section 5.2 provides that "[t]ermination due to default under this Section shall be effective thirty (30) days after written notice to the defaulting Party if the default has not been cured within such thirty (30) day period." Accordingly, the Agreement will be terminated for default by Intermedia on or about April 12, 2002 if the Intermedia Defaults are not cured prior thereto.

I spoke with you on or about March 13 and you indicated that Intermedia and/or its affiliates were interested in pursuing immediate settlement discussions. I also understand that you spoke with Mr. Jim Calandra, Chief Financial Officer of EffectNet on March 18 and that you told Mr. Calandra that Mr. Barry Zip would

be handling settlement discussions. Further, I understand that you told Mr. Calandra that you would provide Mr. Zip with contact information of Mr. Calandra. On March 20, Mr. Calandra exchanged voice messages with you whereby Mr. Calandra inquired of Mr. Zip and the lack of communication from him and you responded by giving Mr. Calandra, for the first time, contact information for Mr. Zip. Mr. Calandra called Mr. Zip the same day, March 20, and left a voice message for Mr. Zip requesting that Mr. Zip return the call. Neither Mr. Calandra nor anyone else has since received any communications from Intermedia or its affiliates regarding this matter. As you might imagine, EffectNet is becoming increasingly concerned that Intermedia and/or its affiliates fail to understand the gravity of this matter and the urgency with which it must be addressed.

Intermedia should also take notice of the Due Date of invoice #1018, dated March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on March 6, 2002. Payment of this amount was due on or before March 21, 2002. EffectNet has not received this past due payment (the "**February Payment Default**").

Accordingly, EffectNet hereby gives Intermedia written notice of default under Section 5.2 of the Agreement with respect to the February Payment Default and EffectNet further hereby gives Intermedia written notice that EffectNet may (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice (if the Agreement is not sooner terminated pursuant to the March 12 Letter) if the February Payment Default has not been cured within such thirty (30) day period, and (ii) further exercise all available remedies pursuant to the terms of the Agreement and as otherwise may be available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of the Agreement, of the amounts itemized below:

| | |
|---|---|
| Total Amount Past Due on invoice 1010, dated February 6, 2002, and delivered to Intermedia on February 12, 2002 (for the December 2001 billing cycle): | $274,021.05 |
| Total Amount Past Due on invoice 1011, dated February 6, 2002, and delivered to Intermedia on February 12, 2002 (for the January 2002 billing cycle): | $274,066.20 |

PH 00609

| | |
|---|---|
| Total Amount Past Due on invoice #1018, dated March 5, 2002, and delivered to Intermedia on March 6, 2002 (for the February 2002 billing cycle): | $279,757.02 |
| **Required Payment:** | $827,844.27 |



If Intermedia fails to cure the Intermedia Defaults and the February Payment Default and if the Agreement is terminated as aforesaid, EffectNet may claim damages for all amounts due pursuant to the Agreement.

Nothing in this letter is intended to be a waiver or release of any rights or remedies, or an election thereof, that EffectNet has under the Agreement or applicable law, and all such rights and remedies are hereby expressly reserved in their entirety.

Very truly yours,

Robert C. McConnell
General Counsel

CC: Mr. Rich Black