

CONFIDENTIAL

MASTER AGREEMENT for SOFTWARE LICENSES

between

MCI WORLDCOM NETWORK SERVICES, INC.,

and

WEBLEY SYSTEMS, INC.

Agreement Number: 2582-0    Effective Date: September 14, 2001

## TABLE OF CONTENTS

| | | |
|---|---|---|
| 1.0 | DEFINITIONS | 1 |
| 2.0 | LICENSES | 2 |
| 3.0 | MAINTENANCE SERVICES | 3 |
| 4.0 | OTHER SERVICES | 6 |
| 5.0 | TERM; TERMINATION | 6 |
| 6.0 | CONSIDERATION; PRICING; PAYMENT | 7 |
| 7.0 | MOST FAVORED CUSTOMER | 7 |
| 8.0 | ORDERING; DELIVERY; ACCEPTANCE | 7 |
| 9.0 | AFFILIATES AND ALLIANCE PARTNERS | 8 |
| 10.0 | CONFIDENTIAL INFORMATION | 8 |
| 11.0 | WARRANTIES | 9 |
| 12.0 | INDEMNIFICATION | 11 |
| 13.0 | LIMITATION OF LIABILITY | 11 |
| 14.0 | FORCE MAJEURE | 11 |
| 15.0 | SOURCE CODE ESCROW | 12 |
| 16.0 | ARBITRATION | 12 |
| 17.0 | INSURANCE | 13 |
| 18.0 | MISCELLANEOUS | 13 |
| APPENDIX A | ORDER SUMMARY | APPENDIX A – 1 |
| APPENDIX B | PRICE LIST | APPENDIX B – 1 |
| APPENDIX C | PROGRAM FEATURES | APPENDIX C – 1 |
| APPENDIX D | SOURCE CODE ESCROW AGREEMENT | APPENDIX D – 1 |
| APPENDIX E | HARDWARE PLATFORM | APPENDIX E – 1 |
| APPENDIX F | STATEMENT OF WORK: BRANDING | APPENDIX F – 1 |
| APPENDIX G | STATEMENT OF WORK: TRAINING | APPENDIX G – 1 |

THIS MASTER AGREEMENT FOR SOFTWARE LICENSES ("Agreement"), dated September 14, 2001, is by and between MCI WorldCom Network Services, Inc., a Delaware corporation with offices at 2424 Garden of the Gods Road, Colorado Springs, Colorado 80919 ("WorldCom"), and Webley Systems, Inc., a Delaware corporation with offices at 570 Lake Cook Road, Suite 406, Deerfield, Illinois 60015 ("Webley").

WHEREAS Webley is a unified communications service provider that offers private label unified communications solutions and licensing, staging and hosting platforms enabling a wide variety of applications based on natural speech recognition and licenses computer software and related maintenance and support services in connection therewith; and

WHEREAS Webley wishes to sell to WorldCom and WorldCom wishes to purchase from Webley licenses to certain computer software products of Webley, together with related maintenance and support services, all in accordance with the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the covenants and undertakings contained in this Agreement and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

CONFIDENTIAL   PH 00017

A 02594

CONFIDENTIAL

## 1.0 DEFINITIONS

For purposes of this Agreement, the capitalized terms used herein shall have the respective meanings set forth either below, within the body of the Agreement or the Appendices. All definitions shall be applicable to both the singular and plural forms of the defined terms.

1.1. "Action(s)" means any claim, action, allegation, law suit or other proceeding.

1.2. "Affiliate" means a corporation, partnership, joint venture or other entity controlling, controlled by or under common control with the named Party. For the purposes of this definition, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of an entity whether through the ownership of voting securities of such entity, by contract or otherwise.

1.3. "Agreement" means the terms and conditions contained herein, all attached schedules and exhibits and any other documents incorporated herein by reference, including any written amendments which have been signed by the authorized representatives of the Parties.

1.4. "Agreement Term" shall have the meaning specified in Section 5.1.

1.5. "Alliance Partner" means any legal entity: (a) in which WorldCom or a WorldCom Affiliate has an equity ownership of at least 20%; (b) which has an equity ownership of at least 20% in WorldCom or a WorldCom Affiliate; or (c) with which WorldCom or a WorldCom Affiliate has an agreement requiring or permitting: (i) the large scale licensing of technology to such entity; or (ii) the exclusive distribution of one or more products or services by such entity.

1.6. "Authorized User(s)" means a user, including Customers, who is authorized to use or operate the licensed Program(s) pursuant to the terms of this Agreement.

1.7. "Authorized User License" means a license for an Authorized User to use and operate a licensed Program.

1.8. "Confidential Information" means this Agreement and information that is transmitted or otherwise provided by or on behalf of Discloser pursuant to this Agreement and that may be reasonably understood from notices or legends, the nature of such information itself or the circumstances of such information's disclosure to be confidential or proprietary to Discloser, Discloser's Affiliates or to third parties to which Discloser owes a duty of non-disclosure. Confidential Information can be disclosed in any form, whether now or later to be known, including, but not limited to, written or other tangible form, magnetic media or oral, visual or other means.

1.9. "Connection" means a secured, private connection provided by WorldCom by which Webley may access WorldCom's system upon which the Programs reside and operate. The Parties agree that any such access shall be: (a) permitted only upon prior approval of such access by WorldCom; (b) on a view only basis, with the exceptions of correction of Defects and optimization of the operation of the licensed Program, both to be done only with the permission of WorldCom; (c) controlled by WorldCom; and (d) provided by WorldCom at such time, place and method as dictated by WorldCom within its sole discretion. The Parties further agree that any knowledge or information Webley may be exposed to or acquire as a result of such access shall be considered Confidential Information of WorldCom.

1.10. "CPU" means any number of processing units capable of operating under the control of a single operating system image.

1.11. "CPU License" means a license to operate a licensed Program on a single CPU.

1.12. "Critical Situation" means a situation where an Defect causes one or more licensed Programs to be inoperable or materially impacts WorldCom's or a Customer's productivity or service levels.

1.13. "Current Release" means any new Release or Version.

1.14. "Customer" means any third party that obtains products or services directly or indirectly from WorldCom or a WorldCom Affiliate.

1.15. "Date Data" means date data or date dependent data, including data reflecting values for any past or future date, such dates to include all leap-year dates and dates both before and after December 31, 1999, through December 31, 2030, as well as the then-current date.

1.16. "Defect" means any malfunction, defect, bug or other deficiency in a licensed Program that prevents it from performing in accordance with the applicable Specifications.

1.17. "Discloser" means any Party to this Agreement who discloses Confidential Information.

1.18. "Documentation" means all or any portion of the following materials which are related to the Programs: system summaries, user guides, manuals, operator guides, installation guides, technical reference manuals, implementation materials, data dictionaries, system designs, flow charts, functional or technical specifications, logical models, plans, implementation guides, user instructions and any other supporting materials therefor.

1.19. "Effective Date" means the date set forth in the preamble of this Agreement.

1.20. "Escrow Materials" means the then-current designs, Documentation, Specifications and Source Code in effect as of the date of Webley's deposit into Escrow for each Program of Webley licensed by WorldCom.

1.21. "Export Item(s)" means certain United States-origin goods and technology, including, but not limited to, Software, technical data, instructions and Documentation.

1.22. "Feature(s)" means a Program component, other than a Version or Release, which component is separable from the Program without impacting the overall Program performance, but which imparts a separate functionality to the Program and for which a separate license fee is assessed.

1.23. "Indemnified Party" means, as may be applicable herein, individually or collectively, WorldCom or any WorldCom Affiliate or Alliance Partner, or Webley or any Webley Affiliate, and any of their respective directors, officers and employees.

1.24. "Maintenance Services" means the support for the correction of Defects, the provision of Releases and Versions to WorldCom by Webley and any other Maintenance Services set forth in this Agreement.

WorldCom: _[signature]_   Webley: _[signature]_   1

**CONFIDENTIAL   PH 00018**

A 02595

CONFIDENTIAL

1.25. "**Moderate Situation**" means a situation in which WorldCom's or a Customer's operations are not interrupted, but an Defect impairs one or more functions of a licensed Program or the performance of services based on the licensed Program.

1.26. "**Object Code**" means Software either directly written or translated from Source Code, which when presented on a suitable medium may be directly executed by a CPU.

1.27. "**Order**" means the then standard purchase order form used by WorldCom which is properly executed by a duly authorized representative of WorldCom and including all incorporated exhibits, attachments, change orders and delivery orders thereto, if any.

1.28. "**Other Situation**" means a situation that is not a Critical Situation or a Moderate Situation, but where an Defect is present in a licensed Program.

1.29. "**Party**" means, as appropriate, WorldCom or Webley, or both, in its plural form.

1.30. "**Platform Hardware**" means the Webley supplied or recommended hardware required to support the Program(s), including without limitation the hardware identified on APPENDIX E.

1.31. "**Price List**" means the price list as of the Effective Date which is attached hereto and incorporated herein by reference as APPENDIX B.

1.32. "**Program(s)**" means Webley's product offering(s) consisting of one or more Object Code programs, associated Documentation and media therefor and applicable Releases and Versions thereto.

1.33. "**Recipient**" means any Party to this Agreement who receives Confidential Information.

1.34. "**Release**" means a modification to a Program usually intended to correct a Defect and that may not include additional features, levels of performance or functionalities. Typically, a Release is identified by the numeral(s) one or more places to the right of the first decimal point from the left of the designation for such Release with the newer Release having the larger numeral. A Release shall also include any new or modified related Documentation.

1.35. "**Services**" means, collectively, the Maintenance Services, training services, consulting services and any and all other services made available to or obtained by WorldCom pursuant to this Agreement.

1.36. "**Software**" means the instructions for a computer whether in Source Code, Object Code, executable form, firmware or otherwise and whether in tangible or intangible form, including, but not limited to, the Programs and third party software related to, supporting or otherwise associated with the use or maintenance of the Programs.

1.37. "**Source Code**" means the underlying computer programs which comprise a Program and which are readable by human beings when displayed on a monitor or printed on paper. In order to be processed by a computer, Source Code must be translated (using off-the-shelf commercially available software compilers, linkers and assemblers or other items delivered to or reasonably available to WorldCom, including documentation) into a form that is directly executable by a computer by a process generally known as compiling.

1.38. "**Source Code Escrow Agreement**" means an agreement which is separate and apart from, but supplemental to and understood in conjunction with, this Agreement and which sets forth the terms and conditions mutually agreeable to the Parties to govern Escrow Materials as set forth in Article 15.0.

1.39. "**Specifications**" means, with respect to a particular Program, the Documentation, technical and functional specifications, provided to WorldCom or to a WorldCom Affiliate which describes the features, functions, performance or other attributes of such Program; and also means the requirements for any Program as set forth in an Order, attachments, exhibits or any jointly approved modification to this Agreement. No changes to the Specifications after provision thereof to WorldCom will alter or adversely affect WorldCom's rights hereunder without the written agreement of the Parties hereto.

1.40. "**Standard Coverage**" shall have the meaning specified in Section 3.4.1.

1.41. "**24 x 7 Coverage**" shall have the meaning specified in Section 3.4.2.

1.42. "**Version**" means a new version of a licensed Program that contains significant new functionality or level of performance, but excluding Features, for which there is a published fee charged to commercial customers of Webley. Typically, a Version is identified by the numeral(s) to the left of the first decimal point from the left in the designation with the newer Version having the larger numeral. A Version also includes any new or modified related Documentation.

1.43. "**Webley**" means the entity named in the preamble to this Agreement and identified as Webley and the Affiliates, successors and assigns of such entity.

1.44. "**Webley Personnel**" means the employees, agents, contractors and other representatives of Webley.

1.45. "**WorldCom**" means MCI WorldCom Network Services, Inc. The term "WorldCom" may also refer to Affiliates of MCI WorldCom Network Services, Inc., or Alliance Partners as provided in Article 9.0.

1.46. "**WorldCom Personnel**" means the employees, agents, contractors and other representatives of WorldCom, WorldCom Affiliates or Alliance Partners.

2.0 **LICENSES**

2.1. **License Grants.** For each Program license ordered and paid for by WorldCom, Webley grants to WorldCom and WorldCom Affiliates the following non-exclusive, fully paid, non-transferable (except as otherwise provided herein), irrevocable (except as otherwise provided herein), worldwide, perpetual license rights without limitation to use the licensed Program (including any subsequent Versions and Releases provided by Webley pursuant to Maintenance Services or otherwise):

2.1.1. Copying or transmitting any portion of the Program into a CPU or into the dynamic memory of a CPU for processing of the machine instructions contained in the Program;

2.1.2. Copying the Program to and from a shared direct access storage device or network file server subject to the number of

WorldCom _/s/_     Webley _/s/_     2

CONFIDENTIAL

licenses licensed, plus a reasonable number of copies for the purposes of network software program distribution, back-up and recovery;

2.1.3. Operating the Program in connection with the provision of telecommunications, information technology and related products and services of WorldCom, WorldCom Affiliates, Alliance Partners and Customers;

2.1.4. Operating the Program in connection with or ancillary to computer software application programs owned or licensed by WorldCom, WorldCom Affiliates, Alliance Partners and Customers in furtherance of the rights granted pursuant to this Agreement;

2.1.5. Maintaining, modifying and making derivative works of the Program pursuant to an Escrow Materials release and in accordance with Section 15.3;

2.1.6. Using the Program in a test and/or development environment at no charge (other than charges for Services provided by Webley in accordance with a separate and independent agreement therefor between the Parties);

2.1.7. Allowing contractors, agents and consultants who agree in writing to be bound by obligations consistent with the non-disclosure obligations hereof to use the Program and related Documentation, including, but not limited to, Documentation and Escrow Materials, presuming an Escrow Materials release, in furtherance of the rights granted pursuant to this Agreement;

2.1.8. Outsourcing the use and operation of the Program and Documentation to any third party who agrees in writing to be bound by terms protecting Webley's proprietary interests consistent with those of this Agreement and only to use the Programs and Documentation for the benefit of WorldCom, WorldCom Affiliates, Alliance Partners and Customers;

2.1.9. Allowing third parties to access the Program used and/or operated in accordance with the other rights granted pursuant to this Article 2.0 in association with the products and services of WorldCom, WorldCom Affiliates, Alliance Partners and Customers;

2.1.10. Using the Program and related Documentation for any other purpose(s) specifically identified in the applicable Order(s) or in the applicable Documentation;

2.1.11. Allowing any Authorized User to use and operate the licensed Program in connection with the provision of telecommunications, information technology and related products and services provided by WorldCom, WorldCom Affiliates and Alliance Partners to the Authorized User; and

2.1.12. Reselling the Program and related Documentation to Customers for use and operation by Customers in connection with the provision of telecommunications, information technology and related products and services provided by WorldCom, WorldCom Affiliates and Alliance Partners to the Customers.

2.2. **Documentation.**

2.2.1. **Copies.** For each Program license, Webley shall deliver to WorldCom at no charge an electronic copy of the applicable Documentation as requested by WorldCom. Webley grants WorldCom the right to make a reasonably necessary number of copies of the Documentation only for internal use and distribution, and WorldCom agrees to appropriately mark any such Documentation copies as limited to internal use and distribution.

2.2.2. **Branding.** WorldCom shall have the right to revise, to eliminate any Webley brands from and to brand with any applicable WorldCom trademark, service mark, trade name, logo or other marking (as determined within WorldCom's sole discretion) all or any portions of the Documentation as is reasonably necessary for WorldCom to provide any and all information to its Customers regarding the operation and use of the licensed Program. WorldCom agrees that any such branded information shall be provided to its Customers in electronic format.

2.3. **Transfers of Licenses.** WorldCom may transfer any license to a successor CPU and may use the Program simultaneously on both the prior CPU and the successor CPU for up to 90 days at no charge, after which time WorldCom shall remove the Program from the prior CPU.

2.4. **Reservation of Rights.** The Programs are and shall remain the exclusive property of Webley.

2.5. **Platform Hardware License Grants.** All grants of rights and licenses set forth in this Article 2.0 with respect to Program(s) include a grant of rights and licenses of the same scope in the patents and other intellectual property that cover or are required by Platform Hardware to the extent that the Platform Hardware supports the Object Code or Documentation of any Program, any portion of the foregoing, or any derivative work of the foregoing, alone or in combination with other Object Code or hardware.

2.6. **Additional Terms and Conditions.** The Program licenses are pursuant to a CPU license and may be used on any CPU at any site, existing now or established in the future, in accordance with the number of licenses for which WorldCom has license rights for the applicable Program. Notwithstanding anything in this Agreement to the contrary, WorldCom may use the Program licenses on any CPU which is used solely for testing and/or development purposes.

3.0 **MAINTENANCE SERVICES**

3.1. **Provision of Maintenance Services.** During any 12 month period for which WorldCom desires to obtain or continue Maintenance Services for any Program license, WorldCom shall be entitled to purchase Maintenance Services, in its sole discretion, and Webley shall be obligated to provide such Maintenance Services upon payment by WorldCom pursuant to Article 6.3 of the applicable Maintenance Services fee as determined pursuant to Section 3.3 and APPENDIX A.

3.2. **Maintenance Services Period.** The Maintenance Services period for each Program license shall commence on the later of: (a) the date the affected Program license and Documentation therefor are received by WorldCom pursuant to an Order; or (b) the date of acceptance by WorldCom pursuant to Section 8.5, and shall continue for 12 months thereafter or until such date agreed upon by the Parties for a coterminous Maintenance Services period pursuant to Section 3.8.3. Thereafter the Maintenance Services period shall be renewable for successive 12 month periods at the fees specified in APPENDIX A.

3.3. **Fees for Maintenance Services.** The annual fee for Maintenance Services at the Standard Coverage level for a 12-month period shall be calculated as 15% percent of the license

3

CONFIDENTIAL   PH 00020

A 02597

CONFIDENTIAL

fee for a Program license or feature thereof to be covered by Standard Coverage Maintenance Services as determined by APPENDIX A or APPENDIX B, as applicable. WorldCom may elect to pay Webley a Maintenance Services uplift fee to 24 x 7 Coverage; wherein the annual uplift fee for Maintenance Services at the 24 x 7 Coverage level for a 12-month period shall be calculated as 5% percent of the license fee for a Program license or feature thereof to be covered by 24 x 7 Coverage Maintenance Services as determined by APPENDIX A or APPENDIX B, as applicable. Accordingly, the total annual Maintenance Services fee for 24 x 7 Coverage would be 20% percent of the license fee paid (15% percent for Standard Coverage + 5% percent for the uplift to 24 x 7 Coverage).

3.4. **Coverage Options.**

3.4.1. **Designated Contact.** WorldCom agrees to provide Webley with no more than 12 designated WorldCom Personnel contacts who will coordinate the delivery of Maintenance Services from Webley to WorldCom. WorldCom reserves the right to change the designated WorldCom Personnel contacts from time to time and agrees to notify Webley of any such change. Likewise, Webley agrees to provide WorldCom with designated Webley Personnel contacts who will coordinate the delivery of Maintenance Services from Webley to WorldCom. Webley reserves the right to change the designated Webley Personnel contacts from time to time and agrees to notify WorldCom of any such change.

3.4.2. **Standard Coverage.** As part of Standard Coverage for a Program license covered by Maintenance Services at the Standard Coverage level, Webley shall provide facsimile, email, web and toll-free telephone assistance to WorldCom to correct Defects and to answer questions regarding the implementation and use of the Program licenses; wherein such assistance is provided eight (8) hours per day by five (5) days per week from 9:00 a.m. to 5:00 p.m., Central Time, Monday through Friday, excluding Webley's holidays. WorldCom will provide Webley with reasonably required Connections to assist with the delivery of Maintenance Services. In the event of a Defect which cannot be corrected remotely through the Connection or with facsimile, email, web or telephone assistance and which gives rise to either a Critical Situation or a Moderate Situation, then Webley shall provide on-site support to WorldCom pursuant to Section 3.5 without cost, except for reimbursable expenses pursuant to Section 4.3. Maintenance Services at the Standard Coverage level shall also include, pursuant to Section 3.6, the provision of new Releases and Versions released during the contracted period for Maintenance Services.

3.4.3. **24 x 7 Coverage.** Where WorldCom has paid the uplift fee for 24 x 7 Coverage for a Program license and provided Webley with reasonably required Connections to assist with the delivery of Maintenance Services, Webley shall provide 24 x 7 Coverage with toll-free telephone and toll-free pager assistance to WorldCom on a 24 hours per day by 7 days per week basis. 24 x 7 Coverage shall include all of the features of Standard Coverage; however Defect correction shall be governed by Section 3.5.

3.5. **Defect Correction.**

3.5.1. **Severity Levels.** Upon receipt of a notice from WorldCom specifying a Defect in the Current Release of a Program license and upon receipt of such additional information as Webley may reasonably request to substantively characterize the Defect, Webley shall provide to WorldCom without cost, except for reimbursable expenses pursuant to Section 4.3, on-site support, if requested by WorldCom, in the event of a Defect that cannot be corrected through the Connection, facsimile, email, web or toll-free telephone assistance and which gives rise to either a Critical Situation or a Moderate Situation. Defect resolution will be provided according to the following severity levels as assigned to such Defect by WorldCom:

3.5.1.1. **Critical Situation.** Upon receipt of notification of a Critical Situation by Webley's support organization, Webley will work with WorldCom and the Customer, as appropriate, on a continuous, 24 hours per day basis, begin working with the WorldCom technical representative within 30 minutes after the notification and resolve the Critical Situation within five (5) calendar days after such notification. Webley may respond to and resolve a Critical Situation by providing a Release, patch, revision or temporary work-around solution, by replacing the affected Program license with a Defect-free Program license, or by any other means reasonably necessary to resolve the Critical Situation. Webley shall be deemed to have resolved a Critical Situation if it has either corrected the Defect(s) or reduced the severity of the situation to either a Moderate Situation or Other Situation.

3.5.1.2. **Moderate Situation.** Upon receipt of notification of a Moderate Situation by Webley's support organization, Webley will work with WorldCom and the Customer, as appropriate, during the hours Standard Coverage, begin working with the WorldCom technical representative within four (4) hours after the notification and resolve the Moderate Situation within 14 calendar days after such notification. Webley may respond to and resolve a Moderate Situation by providing a Release, patch, revision or temporary work-around, by replacing the affected Program license with a Defect-free Program license, or by any other means reasonably necessary to resolve the Moderate Situation. Webley shall be deemed to have resolved a Moderate Situation if it has either corrected the Defect(s) or reduced the severity of the situation to an Other Situation.

3.5.1.3. **Other Situation.** Upon receipt of notification of an Other Situation by Webley's support organization, Webley will provide a solution to a reported Defect within a time frame reasonably determined by Webley.

3.5.1.4. **Resolution.** If the resolution provided by Webley to either an Other Situation, a Moderate Situation or a Critical Situation (including a Critical Situation that has been reduced to a Moderate Situation) is not permanent, then Webley must provide a permanent solution as a part of the next Release or Version.

3.5.1.5. **Liquidated Damages.** The Parties agree that it would be difficult to ascertain the damages which might be incurred by WorldCom as the result of the failure of Webley to resolve a Critical Situation as required pursuant to Section 3.5.1.1. Therefore, Webley acknowledges and agrees that for each Defect giving rise to a Critical Situation in a Program license which Webley fails to

WorldCom _[initials]_   Webley _[initials]_   4

CONFIDENTIAL PH 00021

A 02598

CONFIDENTIAL

resolve within the time frame specified in Section 3.5.1.1, then Webley must pay to WorldCom as liquidated damages, but not as a penalty, the amount of U.S.$1,000.00 (One Thousand Dollars and No Cents) per day for each day, or part thereof, the resolution is late. Any such liquidated damages shall be paid by Webley to WorldCom, in WorldCom's sole discretion, by way of either: (a) a payment or payments to be made by Webley to WorldCom from time-to-time as specified by WorldCom until the Critical Situation is resolved; (b) one or more offsets against any then-outstanding or subsequent invoices submitted by Webley to WorldCom pursuant to this Agreement; or (c) a combination of the foregoing methods of payment, but in any event until all liquidated damages are paid in full.

3.5.2. Defect Correction Limitations. Webley is not obligated to perform investigation or corrections of Defects to the extent reasonably found by Webley to be: (a) in other than a Current Release; provided, however, that the newer Release still complies with the applicable Specifications; (b) caused by WorldCom's negligence; (c) caused by a modification to the Program license by WorldCom or any WorldCom Personnel (other than a modification to the Program which is intended and enabled by Webley); or (d) due to external causes, including, without limitation, power failure or electrical surges.

3.5.3. Escalation Procedure. In the event that Webley has responded to a request to resolve a Critical Situation or a Moderate Situation, but has been unable to provide either a temporary or permanent resolution for either a Critical Situation or a Moderate Situation at least 48 hours before the applicable resolution deadline provided in Sections 3.5.1.1 or 3.5.1.2, then the following escalation procedures shall apply:

3.5.3.1. The appropriate Webley and WorldCom second-level managers shall meet by teleconference and thoroughly discuss the situation's current status and resolution plan. From that point forward until the situation is resolved, Webley Personnel attempting to correct the situation will notify WorldCom's designated manager in on-going four (4) hour intervals during WorldCom's normal business hours and provide that manager with an evaluation of the existing Defect correction efforts and an estimated cure time.

3.5.3.2. If the situation remains unresolved 24 hours before the applicable resolution deadline, then the appropriate Webley and WorldCom third-level managers or their designees shall jointly review the status of the situation.

3.5.3.3. If the situation remains unresolved 12 hours before the applicable resolution deadline, then the appropriate Webley and WorldCom fourth-level managers or their designees shall jointly review the status of the situation. WorldCom's fourth-level manager, if after evaluating the circumstances finds that Webley is working in good faith toward a solution to the situation, such finding not to be unreasonably withheld, then WorldCom's fourth-level manager will grant Webley a mutually agreed upon extension of the applicable resolution deadline. Any such extension must be in a writing signed by WorldCom's fourth-level manager.

3.6. Version Upgrades and Follow-on Programs.

3.6.1. Provision of Releases and Versions. During any period when WorldCom has Maintenance Services in effect for any Program license, WorldCom shall be entitled to receive any new Releases to or Versions of such licenses. Immediately upon the release of a new Release or Version of a Program license for which Maintenance Services are in effect, Webley shall provide to WorldCom at no charge one (1) complete copy of each new Program Release or Version for each license so affected and such Release or Version shall be incorporated into each license for said Program. Any new Release or Version shall conform to the Specifications therefor. Webley shall provide all Releases and Versions necessary to ensure that the Program licenses will be compatible with the most current version of the applicable operating system within 90 days after the release of the new operating system.

3.6.2. Exchange of Program Licenses. WorldCom shall have the option, at no charge and with no increase in Maintenance Services fees, to exchange any Program license for a license for (a) the same Program intended for use on another platform or operating system supported by Webley at the time the exchange is requested, or (b) a license for another Program. In the case of (a) above, the exchange shall be at no charge and there shall be no increase in the annual Maintenance Services fee. In the case of (b) above, the license fee paid for the original Program license shall be credited towards the purchase price of the replacement Program license, and any Maintenance Services fees paid shall likewise be credited toward the Maintenance Services fees for the replacement Program license.

3.6.3. Discontinued Programs. For purposes of this Agreement, a Program will be deemed discontinued if Webley ceases to provide any portion of Maintenance Services for said Program. If any Program for which WorldCom has Maintenance Services in effect is discontinued and replaced by another Program, then WorldCom shall have the right to exchange any license for such discontinued and replaced Program for the equivalent license for the replacement Program at no charge and at no increase in the Maintenance Services fee. If any Program for which WorldCom has Maintenance Services in effect is discontinued and not replaced, then WorldCom shall have the right to exchange any or all of its licenses for the discontinued Program for licenses to any other Program(s) at the price(s) specified in this Agreement, less a credit of the license fees paid for the discontinued Program license(s) to be surrendered; and/or retain any or all of its licenses for the discontinued Program and to receive the Source Code in accordance with Article 15.0 for any Program: (a) for which Webley ceases to provide any portion of Maintenance Services; or (b) for which WorldCom does not purchase Maintenance Services and thereby assumes the responsibility of providing its own maintenance services and for which Webley does not provide, at no charge, required Source Code technical support necessary for WorldCom to meet the maintenance requirements of said Program.

3.6.4. Renamed Programs. During any time that any Program license is covered by Maintenance Services, if Webley revises its Price List so that such Program is: (a) offered

WorldCom: _____   Webley: _____                    5

CONFIDENTIAL   PH 00022

A 02599

CONFIDENTIAL

under a different name; (b) split into two or more separately named or separately priced Programs; and/or (c) combined with one or more other Programs, then such Program license shall be deemed to include such renamed, separated or combined Program(s) without additional charge to WorldCom and the Maintenance Services fee for such Program license shall not increase.

3.7. **User Groups and Newsletters.** At WorldCom's sole expense, WorldCom's designated contacts may participate at no attendance charge by Webley and with full privileges in all meetings and other activities of any Webley user groups which are appropriate and applicable to any Program license. At WorldCom's request, WorldCom may receive any Webley newsletter free of charge which is appropriate and applicable to any Program licensed by WorldCom.

3.8. **Renewal/Termination of Maintenance Services.**

3.8.1. **Renewal.** After the end of any Maintenance Services period, WorldCom may renew Maintenance Services for any Program licenses on a per-license basis for successive 12-month periods at the applicable annual Maintenance Services fee as determined pursuant to Section 3.3 and APPENDIX A.

3.8.2. **Termination.** WorldCom may terminate Maintenance Services at any time for a Program license or any features thereof on sixty (60) days prior written notice to Webley, in which event Webley shall refund to WorldCom, on a prorated, per diem basis, an amount equal to the prepaid fees for the unused Maintenance Services.

3.8.3. **Coterminous Maintenance Services.** At WorldCom's request, Webley will prorate Maintenance Services fees so that Maintenance Services for all Program licenses designated by WorldCom are renewable on the same date, even if all the Program licenses or Maintenance Services were not ordered or delivered on the same date.

3.8.4. **Reinstatement of Maintenance Services.** WorldCom shall have the option to reinstate Maintenance Services for the Current Release of a licensed Program which have been terminated or allowed to lapse by payment of: (a) a reinstatement fee equal to lesser of either: (i) the fee for 12 months of Maintenance Services at the last rate paid; or (ii) the fee applicable to the actual time that Maintenance Services were not in effect at the last rate paid and prorated to the nearest day; and (b) a renewal fee applicable to the 12-month Maintenance Services period beginning on the date of reinstatement. If it is necessary for WorldCom to upgrade to the Current Release of a licensed Program at the time of renewal, then WorldCom may purchase the Current Release of such Program for a license fee equal to the difference between the fee paid for the Program license and the then-current fee for such Current Release; and such license fee shall be subject to any discounts available hereunder or as otherwise negotiated by the Parties.

3.8.5. **Maintenance Services Renewal Notice.** Webley shall provide WorldCom with notice of the impending expiration of the Maintenance Services period at least 30 days, but no more than 60 days, prior thereto.

4.0 **OTHER SERVICES**

Webley, upon receipt of an Order, may provide to WorldCom the applicable Services requested in accordance with the terms and conditions set forth in this Article 4.0. Any such Order placed pursuant to this Article 4.0 shall be subject to the terms and conditions of Article 6.0.

4.1. **Consulting Services.** Upon acceptance of an Order from WorldCom, Webley shall provide consulting services (such as installation and implementation), or shall hire a third party to provide such services, to WorldCom at one or more sites at the rates specified in APPENDIX A, plus reimbursable expenses in accordance with Section 4.3. In the event Webley hires a third party to provide such services, the third party shall be considered Webley Personnel for the purposes of this Agreement.

4.2. **Training Services.** Upon acceptance of an Order from WorldCom, Webley shall provide training services at the rates specified in APPENDIX A, plus reimbursable expenses in accordance with Section 4.3.

4.3. **Expense Reimbursement.** In accordance with and subject to WorldCom's then-current policies regarding reimbursement of WorldCom Personnel expenses, a current copy of which shall be provided to Webley in writing upon execution of this Agreement, WorldCom will reimburse Webley for reasonable and necessary travel and out-of-pocket business expenses incurred by Webley in the performance of on-site Services pursuant to this Agreement. Upon request by Webley, WorldCom will provide Webley with a written copy of the then-current WorldCom policies regarding reimbursement of WorldCom Personnel expenses.

4.4. **Exclusion of Software Development.** The Parties agree and stipulate that software development is not part of the scope of this Agreement. Webley shall not provide software development services of any type to WorldCom, any WorldCom Affiliate or Alliance Partner, except pursuant to a properly executed software development agreement between Webley and WorldCom, such WorldCom Affiliate or Alliance Partner to whom software development services are being provided.

5.0 **TERM; TERMINATION**

5.1. **Term.** The term of this Agreement shall commence on the Effective Date and shall continue for three (3) years after the Effective Date. The Parties may renew this Agreement upon mutual, written agreement for subsequent one (1) year terms.

5.2. **Termination.**

5.2.1. **Termination for Breach.** Upon 30 days prior written notice, either Party may terminate this Agreement for the other Party's material breach, provided that such breach has not been cured by the end of such 30-day period.

5.2.2. **Effects of Termination.** In the event of a termination:

5.2.2.1. The Parties shall continue performance of any portion of the Agreement not terminated; and

5.2.2.2. Confidential Information shall be returned or destroyed with a written confirmation of that fact from the Recipient to the Discloser in accordance with Article 10.0.

5.2.2.3. Termination by either Party pursuant to this Article 5.0 does not waive any rights or remedies it may have under this Agreement.

WorldCom _[signature]_   Webley _[signature]_    6

CONFIDENTIAL  PH 00023

A 02600

CONFIDENTIAL

5.2.2.4. All licenses granted under Article 2.0 shall be revoked, subject to the provisions of Sections 11.4.6 and 18.2, on the effective date of any arbitration award granted pursuant to the provisions of Article 16.0 wherein such award expressly or implicitly finds a material breach by WorldCom and a termination of this Agreement.

6.0 CONSIDERATION; PRICING; PAYMENT

6.1. **Consideration.** As consideration for the Program licenses and rights granted by Webley pursuant to this Agreement, WorldCom shall pay the fees set forth in APPENDIX A, which shall become due and payable pursuant to Section 6.3.

6.2. **Pricing.** The applicable fees and discounts for Program licenses and Services are set forth in APPENDIX A, as applicable; provided, however, that the pricing in APPENDIX A shall apply only to the first quantity of 10,000 Block Seat Licenses ordered by WorldCom, and, the Parties shall, before December 31, 2001, diligently and in good faith negotiate mutually agreeable modifications and amendments to the Block Seat License pricing in APPENDIX A and such other modifications or amendments to the other terms of this Agreement that the Parties, or either of them, reasonably believe to be materially relevant to such negotiations. Upon request by WorldCom, Webley shall provide to WorldCom copies of Webley's then-current Price List(s), if any, for all Programs and Services covered under this Agreement.

6.3. **Payment.** Undisputed invoices or portions thereof are due and payable 2% 10 days, net 30 days from the later of receipt of the invoice by WorldCom or the date Program licenses or Services, other than Maintenance Services, are accepted or rendered, respectively. Invoices for Services shall be forwarded upon completion of the applicable Services. However, Maintenance Services shall be invoiced annually in advance. Invoices for Platform Hardware as set forth in APPENDIX E shall be invoiced upon the later of execution of this Agreement or the issuance of a order therefor by Webley to the manufacturer or other provider of Platform Hardware components and such invoices shall be due and payable net 10 business days from the receipt of the invoice by WorldCom. Undisputed invoices or portions thereof for Maintenance Services will be due and payable 2% 10 days, net 30 days from the later of receipt of the invoice by WorldCom or the initial date of the Maintenance Services period, but in no case shall payment be due earlier than 30 days prior to the start of the Maintenance Services period.

6.4. **Invoice Submission.** Unless otherwise specified in an Order, the original invoice, which must include the WorldCom Order number, and one copy thereof must be submitted, together with proof of delivery, to: WorldCom Purchasing, LLC (as agent for WorldCom), Post Office Box 7, Clinton, MS 39060-0007; Telephone: (800) 876-0459 – Accounts Payable Customer Service.

6.5. **Taxes.** The prices listed in this Agreement are exclusive of applicable sales, use or value-added; other federal, state or local taxes; or import duties or tariffs imposed on WorldCom by law and for which WorldCom shall be responsible. Webley shall be responsible for any franchise taxes and taxes based on Webley's net income or gross receipts and all taxes based on its ownership of the Programs.

6.6. **Price Protection.** Subject to Section 6.2, the contracted discounts for Programs and Services set forth in this Agreement shall remain fixed for the original Agreement Term. Subject to Section 6.2, the Price List fees for Programs and Services set forth in this Agreement shall remain fixed for three (3) years following the Effective Date; however, if Webley should decrease any of the Price List fees, then the fees charged to WorldCom pursuant to this Agreement shall be modified to reflect the decrease. Subject to Section 6.2, thereafter, the Price List fees may increase annually on the anniversary of the Effective Date of this Agreement; however, an increase in any of the Price List fees shall not exceed the lesser of: (a) three percent (3%) of the previous fee; (b) the annual percentage increase during the previous 12 months in the U.S. Consumer Price Index (All Cities Average), as determined by the Bureau of Labor Statistics and as applied to the previous fee; or (c) the percentage increase Webley has generally announced to its other customers during the prior year. With regard to the foregoing, in no event shall the fee charged to WorldCom for any Program or Service exceed the fee for such Program or Service set forth in Webley's then-current, published Price List. Additionally, should Webley introduce new pricing model(s) for any of its Programs or Services, Webley agrees, upon WorldCom's request, to negotiate new prices based on such new pricing model(s) for all such Programs and Services thereafter acquired by WorldCom.

7.0 MOST FAVORED CUSTOMER

Webley represents and warrants that the prices charged and discounts available from time to time pursuant to this Agreement for Program licenses and for Services are and shall be no less favorable than the prices proposed and/or charged and discounts offered to any other customer of Webley for substantially similar volumes of such Program licenses or Services under similar terms and conditions. If Webley breaches the foregoing representation and warranty, then the prices charged to WorldCom for such Program licenses or Services and the discount available to WorldCom, as the case may be, shall automatically be retroactively adjusted to reflect the more favorable prices and/or discounts effective as of the date that the same were made available to such other customer of Webley and Webley shall give WorldCom a credit for the price differential. For the purpose of verifying Webley's compliance with this Article 7.0, WorldCom, at its expense, shall have the right to audit Webley once annually with respect to said compliance. If Webley is found to be in breach of its obligations pursuant to this Article 7.0, then Webley shall reimburse WorldCom for audit expenses incurred by WorldCom.

8.0 ORDERING; DELIVERY; ACCEPTANCE

8.1. **Ordering.** WorldCom may order licenses for Programs and Services by means of individual Orders and may issue an Order(s) to Webley to facilitate payment of the applicable fees. The provisions of this Agreement shall supersede any provisions on or attached to Orders or Webley's acknowledgements, order forms, price quotations or the like. WorldCom shall issue an Order for Platform Hardware as set forth in APPENDIX E promptly upon execution of this Agreement.

8.2. **Order Acceptance.** Webley shall be deemed to accept each Order placed in accordance with this Agreement ten (10) days after Webley's receipt thereof, unless rejected in writing within the ten (10) day acceptance period.

8.3. **Order Cancellation.** WorldCom may cancel any Order submitted hereunder, in whole or in part, without any liability of any kind whatsoever, by providing written notice prior to: (a) the

WorldCom: _[initials]_   Webley: _[initials]_   7

**CONFIDENTIAL  PH 00024**

*CONFIDENTIAL*

start of the provision of Services as to line items in Orders for Services; or (b) the applicable date of acceptance by WorldCom for line items in Orders for Program licenses.

8.4. **FOB Destination Point.** Webley shall deliver each licensed Program, including any Releases or Versions, FOB domestic United States destination point, inside delivery, as specified on the applicable Order.

8.5. **Acceptance by WorldCom.** WorldCom, at its expense and with its facilities and equipment, may test each Program license for a period of 60 days following receipt thereof. During such acceptance period, or any extension thereof mutually agreed upon in writing by WorldCom and Webley, WorldCom may reject the Program license(s) for any reason. Upon such rejection, WorldCom in its sole discretion may elect to: (a) permit Webley 30 days from receipt of notice of rejection to correct any Defects or other nonconformities that are the basis for rejection at no charge to WorldCom; or (b) terminate and surrender to Webley all licenses for the rejected Program and promptly receive a full refund of all payments made to Webley in connection with the rejected Program and any Services related thereto. WorldCom shall retain the rights set forth in (b) above throughout any 30-day correction period granted pursuant to (a) above.

9.0 **AFFILIATES AND ALLIANCE PARTNERS**

9.1. **Orders.** Subject to the terms and conditions of this Agreement, any WorldCom Affiliate or Alliance Partner may order any Programs or Services by issuing to Webley an Order therefor and will acquire the same rights in connection with such Programs and Services as WorldCom would have acquired pursuant to this Agreement if it had placed such Order.

9.2. **Agreements.** In the event an Order is issued by a WorldCom Affiliate or Alliance Partner, then:

9.2.1. **Reference.** Each reference to WorldCom in this Agreement shall be deemed to refer to the ordering WorldCom Affiliate or Alliance Partner with respect to the Programs and Services so ordered.

9.2.2. **Terms and Conditions.** The terms and conditions of this Agreement shall be enforceable as between Webley and any ordering WorldCom Affiliate or Alliance Partner for an Order pursuant to this Article 9.0 to the same extent such terms and conditions are enforceable between Webley and WorldCom when an Order is issued by WorldCom pursuant to this Agreement.

9.2.3. **Separate Agreement.** An Order submitted by an Affiliate or Alliance Partner of WorldCom pursuant to the terms and conditions of this Agreement shall constitute a separate agreement between the Affiliate or Alliance Partner and Webley or Webley's Affiliate.

9.2.4. **Liability.** If an Order is placed by an Affiliate or Alliance Partner, then Webley or Webley's Affiliate agrees to look solely to the ordering WorldCom Affiliate or Alliance Partner for payment and for redress of other liability, if any, caused by such WorldCom Affiliate's or Alliance Partner's breach of its contractual obligations thereunder and to no other WorldCom legal entity.

9.2.5. **Information.** Prior to entering into any separate agreement with an Affiliate or Alliance Partner, Webley agrees to make a bona fide effort to inform the Affiliate or Alliance Partner of its rights pursuant to this Agreement in a writing provided to the Affiliate's or Alliance Partner's representatives duly authorized to conduct contract negotiations.

9.3. **Benefits.** All purchases pursuant to this Agreement or pursuant to any such separate agreements shall accrue to the benefit of each and all of WorldCom, WorldCom Affiliates and Alliance Partners for the purpose of determining any volume discounts and pricing set forth in this Agreement.

10.0 **CONFIDENTIAL INFORMATION**

10.1. **Agreement Terms.** The Parties agree that the fact of the existence of this Agreement and all other business arrangements between WorldCom and Webley, the terms and conditions hereof and thereof and all activities contemplated or performed hereunder or thereunder are the Confidential Information of the Parties and shall not be disclosed to any third party in any manner whatsoever, including, without limitation by way of news articles, public announcements or disclosures, advertising, marketing brochures or other similar materials, speeches or any other information releases, whether such disclosures reference WorldCom or Webley by name, by description or otherwise, without the prior written approval of the Party to whom the Confidential Information is proprietary. Notwithstanding the foregoing, the Parties agree that either Party may disclose to: (a) their respective actual investors and financial advisors the terms and conditions of this Agreement; and (b) bona fide potential investors the existence of this Agreement and the contents of APPENDIX A as it exists as of the Effective Date; provided any and all such investors or advisors pursuant to (a) and (b) above are under a written contractual duty of confidentiality consistent with the terms of this Article 10.0.

10.2. **Use and Disclosure of Confidential Information.** With respect to any Confidential Information that may be disclosed by Discloser to Recipient, Recipient agrees:

10.2.1. To protect such Confidential Information from disclosure to others, using the same degree of care used to protect Recipient's Confidential Information, but in any case using no less than a reasonable degree of care. Recipient may disclose Confidential Information received hereunder to its employees and subcontractors, and its Affiliates' employees and subcontractors, who have a need to know for the purpose of this Agreement and who are bound in writing prior to disclosure to protect the received Confidential Information from unauthorized use and disclosure pursuant to the terms of this Agreement. Confidential Information shall not otherwise be disclosed to any third party without the prior written consent of the Discloser;

10.2.2. To use such Confidential Information only for the purposes of this Agreement or as otherwise expressly permitted by this Agreement;

10.2.3. Not to make copies of any such Confidential Information or any part thereof except for the purposes of this Agreement;

10.2.4. To reproduce and maintain on any copies of any Confidential Information such proprietary legends or notices, whether of Discloser or a third party, as are contained in or on the original or as the Discloser may otherwise reasonably request; and

8

CONFIDENTIAL   PH 00025

A 02602

CONFIDENTIAL

10.2.5. Not to modify, prepare derivative works from, decompile, disassemble, or reverse engineer any Confidential Information or otherwise reduce to a human-perceivable form Object Code owned by Webley (whether or not licensed under this Agreement) to which WorldCom is not granted by Webley a license to and the current right to use the corresponding Source Code. The Parties acknowledge and agree that elements of Webley Source Code may be inadvertently exposed to WorldCom in the normal course of performance of this Agreement without any intentional action by WorldCom to expose Source Code, and that, in any such event, WorldCom shall not be liable to Webley nor be in breach of this Agreement merely by virtue of WorldCom's exposure to Source Code under such circumstances; provided, however, that WorldCom remains obligated under this Article 10.0 to treat any Source Code as Confidential Information of Webley, and provided, further, however, that Source Code shall not be further disclosed by WorldCom under Section 10.2.1 except as is otherwise permitted under Article 15.0.

10.3. Exceptions. The Parties agree that the restrictions of this Article 10.0 regarding the use and disclosure of Confidential Information shall not apply to information that:

10.3.1. Was publicly known at the time of Discloser's communication thereof to Recipient;

10.3.2. Becomes publicly known through no fault of Recipient subsequent to the time of Discloser's communication thereof to Recipient;

10.3.3. Was in Recipient's possession free of any obligation of confidence at the time of Discloser's communication thereof to Recipient;

10.3.4. Is developed by Recipient independently of and without reference to any of Discloser's Confidential Information or other information that Discloser disclosed in confidence to any third party;

10.3.5. Is rightfully obtained by Recipient from third parties authorized to make such disclosure without restriction; or

10.3.6. Is identified by Discloser as no longer proprietary or confidential.

10.4. Legally Compelled Disclosure. In the event Recipient is required by law, regulation or court order to disclose any of Discloser's Confidential Information, Recipient will promptly notify Discloser in writing prior to making any such disclosure in order to facilitate Discloser seeking a protective order or other appropriate remedy from the proper authority. Recipient agrees to cooperate with Discloser in seeking such order or other remedy. Recipient further agrees that if Discloser is not successful in precluding the requesting legal body from requiring the disclosure of the Confidential Information, then Recipient will furnish only that portion of the Confidential Information which is legally required and will exercise all reasonable efforts to obtain reliable assurances that confidential treatment will be accorded the Confidential Information.

10.5. Remedies. The Parties acknowledge that their respective Confidential Information is unique and valuable and that breach by either Party of the obligations of this Agreement regarding such Confidential Information and intellectual property rights will result in irreparable injury to the affected Party for which monetary damages alone would not be an adequate remedy. Therefore, the Parties agree that in the event of a breach or threatened breach of such provisions, the affected Party shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach or anticipated breach without the necessity of posting a bond. Any such relief shall be in addition to and not in lieu of any appropriate relief in the way of monetary damages as limited by Article 13.0.

10.6. Proprietary Notices. Recipient shall reproduce and maintain on all copies of Discloser's Confidential Information received hereunder such proprietary legends or notices as are contained on the original. The absence of a proprietary notice or legend on disclosed information shall not deem such disclosed information to be non-confidential; but, rather, the determination of whether disclosed information is Confidential Information shall be determined pursuant to this Article 10.0 and Section 1.8.

10.7. Return of Confidential Information. All Confidential Information disclosed pursuant to this Agreement, including information in computer software or held in electronic storage media, shall be and remain the property of Discloser. All such information in any computer memory or data storage apparatus shall be erased or destroyed and all such information in tangible form shall be promptly returned to Discloser upon the earlier of: (a) the written request of the Discloser; or (b) termination or expiration of this Agreement; and, thereafter, shall not be retained in any form by Recipient.

11.0 WARRANTIES

11.1. Program Warranties. Webley represents, warrants and agrees that with respect to the Programs licensed pursuant to this Agreement:

11.1.1. Ownership or Right to License. Webley is the sole owner of all patent, copyright, trade secret, trademark and other intellectual property rights in the Programs, or if the Programs contain third party software or other materials, Webley has, to the best of its knowledge, the right to grant to WorldCom all of the licenses and other rights granted pursuant to this Agreement; and, in any event, has the full power and authority to grant, sell, convey and deliver a license to the Programs free from any liens and encumbrances of any kind whatsoever;

11.1.2. No Infringement. Webley owns or has obtained all necessary license rights or acquired all necessary approvals for WorldCom to use all trademarks, copyrights, images and any other intellectual or proprietary property. To the best of Webley's knowledge, the Programs do not and shall not infringe any third party rights anywhere in the world;

11.1.3. No Adverse Claims. There exist no adverse claims to or in the Programs;

11.1.4. Compliance with Specifications. The Programs shall comply in all material respects with any Specifications or other requirements set forth in this Agreement and any associated Order; and

11.1.5. Performance. All Services will be performed in a workmanlike manner, in conformity with the professional standards for comparable services in the industry and in

WorldCom: _____    Webley: _____    9

CONFIDENTIAL   PH 00026

A 02603

CONFIDENTIAL

Party for which monetary
ate remedy. Therefore,
a breach or threatened
Party shall be entitled to
ther equitable relief as a
ated breach without the
elief shall be in addition to
f in the way of monetary

I reproduce and maintain
tial information received
notices as are contained
ietary notice or legend on
ich disclosed information
determination of whether
l Information shall be
and Section 1.8.

tion. All Confidential
is Agreement, including
eld in electronic storage
ty of Discloser. All such
r data storage apparatus
ich information in tangible
:loser upon the earlier of:
er; or (b) termination or
after, shall not be retained

ents, warrants and agrees
icensed pursuant to this

Webley is the sole owner
ret, trademark and other
ograms, or if the Programs
materials, Webley has, to
o grant to WorldCom all of
granted pursuant to this
has the full power and
d deliver a license to the
encumbrances of any kind

vns or has obtained all
ed all necessary approvals
ts, copyrights, images and
/ property. To the best of
ms do not and shall not
ere in the world;

t no adverse claims to or in

ns. The Programs shall
with any Specifications or
this Agreement and any

will be performed in a
ity with the professional
es in the industry and in

ebley: [signature] 9

---

II material respects with any Specifications,
quirements of this Agreement.

Warranty. Webley warrants for the useful
licensed pursuant to this Agreement that the
ate Compliant. "Date Compliant" means the
(a) must not cease to function, malfunction
ruption of any kind because of the receipt,
r transmitting of Date Data; and (b) must, if
ifications, produce and display accurate and
: in any processing of Date Data. Webley
tation or warranty in respect of the Date
hird-party software or data not provided by

No Viruses. Webley represents, warrants
material portion of the Programs licensed
ement will be intended to, other than under
rol of WorldCom:

interfere with the operation of the Programs
sing or incorporating the Programs at some
or upon a specific instruction or occurrence
ent;

materially alter or render inaccessible the
any other hardware, Software or data which
s are designed to process or use, or any
re, Software or data attached to, resident on,
to the system on which the Programs may
or stored;

eature which would materially impair in any
ration of the Programs including, but not
oftware locks or drop-dead devices, date or
on codes, or serial number dependent
r

terially impair the present or future operation
ms by means of a signal or absence of a
ther Webley or Webley's agents.

The Parties represent, warrant and agree

h Party has full power and authority to enter
this Agreement and the representative of
ig this Agreement on behalf of such Party
/ authorized and empowered to do so;

Entering into this Agreement by a Party does
agreements, rights or obligations existing
arty and any other person, entity, firm or

ia on which the Programs licensed pursuant
it are delivered will be free of defects in
rkmanship during the Agreement Term and
eplace any defective media without charge,
j and handling, within ten (10) business days
otification from WorldCom to Webley of any
edia;

A Party shall not knowingly make any
is in connection with the other Party's
es that are in violation of any local, state or

---

CONFIDENTIAL

11.4.5. Usage and Approval. A Party will not improperly and without right use the other Party's Confidential Information or claim a connection with the other Party without the prior written approval of the other Party; and

11.4.6. Disputes. Webley warrants and agrees that a dispute over a specific license(s) of a Program or any Services to be provided pursuant to this Agreement will have no material affect on and Webley shall not materially interfere with WorldCom's rights to any other license of a Program or any other Services provided pursuant to this Agreement.

11.5. Remedies for Breach of a Program Warranty. The remedies contained in this Section 11.5 are in addition to Webley's obligations set forth in Article 12.0. The remedies contained in this Section 11.5 shall not apply to and Webley shall have no liability for any claim to the extent the claim is based upon the use, operation or combination of the licensed Program with non-Webley Software, data or equipment, if such infringement would have been avoided but for such use, operation or combination. In the event of: (a) a breach of any Program Warranty set forth in Sections 11.1.1, 11.1.2, or 11.1.3; (b) the filing of an Action, or in Webley's opinion, the likely filing of an Action against an Indemnified Party of any infringement claims regarding any Program licensed pursuant to this Agreement; or (b) an Indemnified Party being enjoined in connection with a claim of infringement of any patent, copyright, trade secret or other intellectual property right from the use of any Program licensed pursuant to this Agreement or any product or service based upon any Program licensed pursuant to this Agreement; then Webley shall, at its own expense and sole discretion, take either of the following actions listed:

11.5.1. License Rights. Obtain for the Indemnified Party license rights permitting the continued use of the affected Program licenses or any portion thereof licensed pursuant to this Agreement; or

11.5.2. Replace or Modify. Replace or modify and redeliver the affected Program licenses or any portion thereof licensed pursuant to this Agreement so that they become non-infringing, but still provide the equivalent functional capabilities and performance characteristics and otherwise comply with the applicable Specifications and other requirements of this Agreement; or

11.5.3. Refund. If neither of the foregoing remedies can be accomplished within forty-five (45) days without impacting the economic viability of Webley, then the Indemnified Party may terminate without liability the licenses or Services for the affected Program and Webley shall promptly refund to the Indemnified Party the full price paid for any licenses, Services or other fees for the affected Program, except that the refund for Maintenance Services shall be pro-rated for the unused portion thereof.

11.6. Remedies for Breach of a Warranty Other Than a Program Warranty. The remedies contained in this Section 11.6 are in addition to each Party's obligations set forth in Article 12.0. Webley shall, at its expense, cure any breach of its warranties set forth in Sections 11.2, 11.3, or 11.4. WorldCom, shall at its expense, cure any breach of its warranties set forth in Sections 11.4.1, 11.4.2, 11.4.4, or 11.4.5. Such cure shall be accomplished within fifteen (15) days or such longer period as the Indemnified Party may agree to in writing. If such cure is not

WorldCom: [signature]  Webley: [signature]  10

CONFIDENTIAL PH 00027

A 02604

CONFIDENTIAL

made within the applicable cure period, then the Indemnified Party may terminate this Agreement without liability.

## 12.0 INDEMNIFICATION

### 12.1. Indemnification.

12.1.1. **Indemnification by Webley.** Webley, at its expense, shall defend, indemnify and hold harmless WorldCom, WorldCom Affiliates or Alliance Partners as an Indemnified Party and their respective employees, directors, officers, agents, advisors and assigns from any and all Actions arising out of or incidental to:

12.1.1.1. **General Indemnification.** A breach by Webley of its obligations or warranties pursuant to this Agreement; the acts, errors, omissions or negligence of Webley or Webley Personnel; damage to or loss of tangible property or death of or injury to any person to the extent caused by the intentional or negligent acts or omissions of Webley or Webley Personnel in connection with the performance of this Agreement; or Webley's independent contractor status being denied or changed and Webley or Webley Personnel being declared to have employee status with respect to the Services performed for an Indemnified Party; and

12.1.1.2. **Infringement Indemnification.** The exercise by an Indemnified Party of any rights purported to be granted to the Indemnified Party by Webley; or a claim of infringement against an Indemnified Party, Webley or Webley Personnel which alleges that any Program licensed pursuant to this Agreement or any internal use of a Program licensed pursuant to this Agreement by the Indemnified Party, infringes any patent, copyright, trade secret, trademark, service mark or other intellectual property or proprietary right, unless such claim is based upon the use, operation or combination of the licensed Program with non-Webley Software, data or equipment, if such infringement would have been avoided but for such use, operation or combination.

12.1.2. **Indemnification by WorldCom.** WorldCom, at its expense, shall defend, indemnify and hold harmless Webley or Webley Personnel as an Indemnified Party and their respective employees, directors, officers, agents, advisors and assigns from any and all Actions arising out of or incidental to a breach by WorldCom of its obligations or warranties pursuant to this Agreement; the acts, errors, omissions or negligence of WorldCom or WorldCom Personnel; the exercise by an Indemnified Party of any rights purported to be granted to the Indemnified Party by WorldCom; or damage to or loss of tangible property or death of or injury to any person to the extent caused by the intentional or negligent acts or omissions of WorldCom or WorldCom Personnel in connection with the performance of this Agreement.

12.2. **Indemnifying Party's Rights and Obligations.** Pursuant to the applicable indemnity set forth in Section 12.1, the applicable indemnifying Party shall be responsible for any and all losses, damages, liabilities, expenses and costs, including, without limitation, reasonable attorney fees and allocated in-house legal expenses, incurred by or awarded against any Indemnified Party in connection with any Action against an Indemnified Party. The indemnifying Party further agrees, at its sole expense, to do whatever is commercially reasonable and necessary to dispose of any Action, including defending the Indemnified Party if the Indemnified Party is sued or paying any amounts required to eliminate any Action against the Indemnified Party. The indemnifying Party shall be accorded control of the defense and all negotiations for settlement or compromise of any Action. Notwithstanding the foregoing, the indemnifying Party agrees to consult with the Indemnified Party prior to settling any Action, provided however, that the indemnifying Party cannot bind the Indemnified Party to pay any settlement or do any act without the Indemnified Party's prior written consent. Except as otherwise provided herein, the indemnifying Party also agrees to pay the reasonable attorney fees and costs, including allocable costs of in-house counsel, incurred by the Indemnified Party in enforcing the provisions of this Article 12.0.

12.3. **Indemnified Party's Rights and Obligations.** Pursuant to the applicable indemnity set forth in Section 12.1, the Indemnified Party shall reasonably promptly notify the indemnifying Party in writing of any Action. The Indemnified Party shall cooperate fully with the indemnifying Party in the defense of any Action, including providing to the indemnifying Party, at the expense of the indemnifying Party, such information and assistance as the indemnifying Party may reasonably request. The Indemnified Party, at its own expense and with its separate, chosen legal counsel, shall have the right to: (a) participate in the negotiation, investigation, defense, settlement or compromise of and any Action against the Indemnified Party; (b) take any other steps proper to protect the right, title and interest of the Indemnified Party; (c) settle, compromise or in any other manner dispose of any Action; provided, such settlement or compromise is without prejudice to the interests or position of the indemnifying Party; and (d) satisfy any judgment against the Indemnified Party.

## 13.0 LIMITATION OF LIABILITY

Under no circumstances shall either Party be liable for any special, incidental, indirect, statutory, exemplary, punitive or consequential damages of any kind whatsoever. The limitation specified in this Article 13.0 shall survive and apply even if any limited remedy specified in this Agreement is determined to have failed of its essential purpose.

Notwithstanding the foregoing, Sections 11.1.2 (No Infringement Warranty) and 12.1.1.2 (Infringement Indemnification) shall not be subject to the limitation of liability set forth in this Article 13.0.

## 14.0 FORCE MAJEURE

"Force Majeure" means any act of God; weather conditions; inevitable accident; fire; lockout, strike or other labor dispute; act of public enemy; war, riot or civil commotion; law, regulation, rule, order or any other act of any government, including, but not limited to, any agency, branch, department, ministry, division or level thereof acting in its sovereign capacity; or any other cause beyond the control of either of the Parties. Either Party's time of performance will be extended, if and to the extent reasonably necessary, in the event of Force Majeure which prevents either Party's timely performance pursuant to this Agreement; provided, however, that such failure to perform or delay could not have been prevented through the use of reasonable precautions and such delay or non-performance cannot be reasonably circumvented by the non-performing Party. The affected Party will promptly notify the other Party of the circumstances causing

WorldCom: _____   Webley: _____    11

CONFIDENTIAL   PH 00028

A 02605

CONFIDENTIAL

its delay or failure to perform and its plans and efforts to implement a work-around solution.

### 15.0 SOURCE CODE ESCROW

15.1. <u>Escrow Deposits</u>. To secure WorldCom's rights hereunder, within thirty (30) days of the Effective Date and annually thereafter, Webley shall deposit copies of the then-current Escrow Materials to which WorldCom then has rights pursuant to this Agreement with the designated escrow agent, the designated escrow agent's successor or a replacement escrow agent who is mutually agreed upon by the Parties and subject to the terms and conditions of the Source Code Escrow Agreement set forth in APPENDIX D and consistent with this Article 15.0. The Parties agree that the initial escrow agent shall be DSI Technology Escrow Services, Inc., having an address of 9265 Sky Park Court, Suite 202, Attention: Contract Administration, San Diego, California 92123; Telephone: (858) 499-1600; Facsimile: (858) 694-1919; Email: ca@dsiescrow.com, and that the initial Source Code Escrow Agreement shall be the "FlexSAFE Agreement" of DSI Technology Escrow Services, Inc. Such escrow shall be established and maintained at the expense of Webley. The deposit made with the escrow agent shall be kept current so as to accurately reflect the then-current version of the Escrow Materials and promptly updated by Webley following each material upgrade, modification, enhancement, Release or Version thereto. Webley shall designate a mutually acceptable neutral third party who, at the expense and request of WorldCom as may be made annually, shall audit the materials deposited with the escrow agent for purposes of determining whether Webley has fulfilled its obligations pursuant to this Agreement and the Source Code Escrow Agreement. Webley shall promptly correct any deficiency disclosed by the audit.

15.2. <u>Release of Escrow Materials</u>. Licensor shall assist WorldCom with and effect the release of Escrow Materials in accordance with this Section 15.2; wherein a release of the Escrow Materials to WorldCom shall be granted whenever:

15.2.1. Webley applies for or consents to the appointment or the taking of possession by a receiver, custodian, trustee or liquidator of Webley or of all or a substantial part of Webley's property; makes a general assignment for the benefit of creditors; commences a voluntary case pursuant to the Federal Bankruptcy Code, as now or hereafter in effect; or fails to contest in a timely or appropriate manner or acquiesces in writing to any petition filed against Webley in an involuntary case pursuant touch Bankruptcy Code or any application filed against Webley for the appointment of a receiver, custodian or trustee, or the reorganization, dissolution or liquidation of Webley or all or a substantial part of Webley's property; or

15.2.2. WorldCom is entitled to receive Source Code pursuant to Article 3.6.3.

15.3. <u>License To Use Escrow Materials</u>. Upon a release of the Escrow Materials to Worldcom, WorldCom is hereby granted irrevocable, perpetual and worldwide license rights to use the Escrow Materials to authorize and exercise the license rights granted pursuant to Section 2.1.5 and to authorize and perform Services as consistent with Webley's obligations pursuant to this Agreement.

15.4. <u>Bankruptcy</u>. The obligations of Webley pursuant to this Article 15.0 shall extend to any trustee in bankruptcy, receiver, administrator or liquidator appointed for Webley, Webley as debtor-in-possession and any other successor in interest to Webley. Notwithstanding anything in this Agreement to the contrary, WorldCom reserves all rights available to it pursuant to the Federal Bankruptcy Code, 11 U.S.C. § 365(n) or any equivalent successor provision thereto.

15.5. <u>No Interference</u>. Webley shall not interfere with the rights of WorldCom as provided in this Agreement or the Source Code Escrow Agreement to obtain the Escrow Materials from the trustee, escrow agent or any other person or entity having possession thereof; and if requested under the conditions specified in the Source Code Escrow Agreement for release of the Escrow Materials, then Webley shall cause the Escrow Materials or copy thereof to be made available to WorldCom.

15.6. <u>Disputes</u>. Any dispute or disagreement between the Parties arising out of this Article 15.0 shall be resolved by arbitration in accordance with Article 16.0.

### 16.0 ARBITRATION

Any dispute arising out of or related to this Agreement which cannot be resolved by negotiation shall be settled by binding arbitration in Washington, D.C., in accordance with the J.A.M.S./Endispute Arbitration Rules and Procedures, as may be amended by this Agreement. The costs of arbitration, including the fees and expenses of the arbitrator, shall be shared equally by the Parties unless the arbitration award provides otherwise. Each Party shall bear the cost of preparing and presenting its case. The Parties agree that this provision and the arbitrator's authority to grant relief shall be subject to the United States Arbitration Act, 9 U.S.C. §§ 1 - 16, or any equivalent successor provisions thereto, the provisions of this Agreement, New York substantive law and the ABA/AAA Code of Ethics for Arbitrators in Commercial Disputes. The Parties agree that the arbitrator shall have no power or authority to make awards or issue orders of any kind except as expressly permitted by this Agreement and in no event shall the arbitrator have the authority to make any award that provides for punitive or exemplary damages. The arbitrator's decision shall follow the plain meaning of the relevant documents and shall be final and binding. The award may be confirmed and enforced in any court of competent jurisdiction. All post proceedings shall be governed by the United States Arbitration Act. Notwithstanding anything in this Agreement to the contrary, provided that WorldCom has paid all applicable Program license and Maintenance Services fees which are due and undisputed, WorldCom shall retain quiet enjoyment of all license rights granted pursuant to this Agreement to use the Program licenses and all rights to receive Services pursuant to this Agreement until such time as the dispute is resolved whether by negotiation or arbitration. Webley's liability arising in connection with a breach of the immediately preceding sentence shall not be subject to the limitation of liability set forth in Article 13.0. In addition, in the event of a breach or threatened breach of this Agreement that has or is imminently likely to result in an interruption of use of a Program license or the misuse of a Party's Confidential Information, then either Party may seek from any court of competent jurisdiction equitable relief, including injunctive relief, and the other Party will not allege in any such proceeding that the first Party's remedy at law is adequate. The Party seeking such equitable relief shall not be deemed to have made an election of remedies.

WorldCom: _____  Webley: _____  12

CONFIDENTIAL

### 17.0 INSURANCE

Without limiting any other obligation or liability of Webley pursuant to this Agreement, Webley agrees that it shall comply with the requirements of this Article 17.0 with regard to the provision of any on-site Services to be performed pursuant to this Agreement and prior to and during provision of any such on-site Services, Webley shall procure and maintain at its cost insurance coverage with limits and conditions not less than those specified in this Article 17.0. A combination of primary and excess or umbrella liability policies will be acceptable as a means to meet the limits specifically required pursuant to this Article 17.0.

17.1. **Commercial General Liability Insurance.** Webley shall have coverage for liability for bodily injury or property damage arising from its premises, operations, independent contractors, products-completed operations, personal injury, advertising injury and liability assumed under an insured contract with minimum limits of U.S.$1,000,000.00 (One Million Dollars and No Cents) per occurrence or U.S.$2,000,000.00 (Two Million Dollars and No Cents) aggregate. The completed operations coverage shall be provided for a period of at least two (2) years after completion by Webley of any duty of performance pursuant to this Agreement. Such policy shall be written on an occurrence form. Claims-made policies are not acceptable.

17.2. **Workers Compensation and Employers Liability Insurance.** Webley shall have coverage with statutory limits for workers compensation insurance as applicable in any state in which Webley is required to carry such insurance, and employers liability limits as follows:

17.2.1. Bodily injury by accident at U.S.$500,000.00 (Five Hundred Thousand Dollars and No Cents) each accident;

17.2.2. Bodily injury by disease at U.S.$500,000.00 (Five Hundred Thousand Dollars and No Cents) policy limit; and

17.2.3. Bodily injury by disease at U.S.$500,000.00 (Five Hundred Thousand Dollars and No Cents) each employee.

17.3. **Business Automobile Liability.** Webley shall have coverage for business automobile liability, including, owned, hired, leased, rented and non-owned vehicles of U.S.$1,000,000.00 (One Million Dollars and No Cents) combined single limit per accident.

17.4. **Professional Liability Insurance.** Webley shall have coverage for the effects of errors and omissions in the performance of professional duties with a minimum limit of U.S.$2,000,000.00 (Two Million Dollars and No Cents) each occurrence and aggregate, if applicable, associated with Services performed pursuant to this Agreement.

17.5. **Insurance Certificate.** Webley must submit to WorldCom a standard "ACORD" insurance certificate, or comparable form acceptable to WorldCom signed by an authorized representative of such insurance company(ies), certifying that the insurance coverage(s) required pursuant to this Agreement are in effect for the purposes of this Agreement. Said insurance certificate shall certify that no material alteration, modification or termination of such coverage(s) shall be effective without at least 30 days prior written notice to WorldCom.

17.6. **Policy Examination.** Webley shall permit any authorized representative of WorldCom to examine Webley's original insurance policies should WorldCom so reasonably request. Should Webley at any time neglect or refuse to provide the insurance required herein, or should such insurance be cancelled or non-renewed, WorldCom may elect in its sole discretion to terminate all or any part of this Agreement or to deduct costs of securing substitute coverages from payments owed Webley.

17.7. **Qualified Companies.** Each insurance policy which is required pursuant to this Article 17.0 shall be from a company(ies) qualified to conduct business in those United State(s) in which Webley conducts business pursuant to this Agreement and having at least an A.M. Best's rating of A8, a Standard & Poor's rating of AA, or a Moody's rating of Aa2.

### 18.0 MISCELLANEOUS

18.1. **Relationship of the Parties.** This Agreement does not constitute, designate or authorize any Party to be the agent of the other Party; or create a partnership, joint venture or similar relationship between the Parties; and neither Party shall have the power to obligate or bind the other Party in any manner whatsoever. The Parties agree that Webley and Webley Personnel are independent contractors with respect to any Services performed pursuant to this Agreement and Webley shall file all forms and make all payments necessary or appropriate to preserve or support such independent contractor status.

18.2. **Survival.** The Parties agree that the provisions of Article 10.0 (Confidential Information), Article 11.0 (Warranties), Article 12.0 (Indemnification) and Article 13.0 (Limitation of Liability) shall survive the expiration or any earlier termination of this Agreement along with any other provisions of this Agreement which by their nature should reasonably survive such expiration or termination. For the avoidance of doubt, the rights to use and enjoy the Programs licensed pursuant to this Agreement shall survive the expiration or termination of this Agreement, subject only to revocation pursuant to a final arbitration decision in accordance with Article 16.0 or an order from a court of competent jurisdiction applying the law of the State of New York.

18.3. **Assignment.** This Agreement is binding upon and shall inure to the benefit of the Parties hereto and their respective successors and assigns. Neither Party may assign this Agreement without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed; provided, however, that either Party may, without the consent of the other Party, assign any or all of its rights and obligations pursuant to this Agreement to an Affiliate, a successor in interest, or a purchaser of that portion of such Party's business as to which such assigned rights and obligations pertain. Any prohibited assignment shall be null and void. However, without limiting any rights of WorldCom, WorldCom Affiliates or Alliance Partners pursuant to this Agreement, upon the transfer to a third party of either: (a) direct or indirect control of Webley; (b) substantially all of the assets of Webley; or (c) title to any one or more of the Programs licensed pursuant to this Agreement, whether by sale, asset or stock purchase, merger or other transaction, then this Agreement will automatically and mandatorily be assigned to Webley's successor in interest and WorldCom, WorldCom Affiliates or Alliance Partners and their respective successors and permitted assigns will retain unfettered all rights acquired pursuant to this Agreement and at no further charge therefor by either Webley or Webley's successor in interest.

WorldCom: _____  Webley: _____   13

**CONFIDENTIAL   PH 00030**

A 02607

CONFIDENTIAL

18.4. Export of Software. The Parties acknowledge that the United States government restricts the export and re-export of Export Items. The disclosure of an Export Item to a third-country nation or national is deemed to be an export of such Export Item. Each Party agrees that it shall: (a) identify by means of a legend or other writing each Export Item subject to export or re-export restrictions that it provides to the other Party ; and (b) work diligently to obtain any necessary export or re-export licenses. Notwithstanding the foregoing, each Party agrees that it is responsible for obtaining any required licenses from the U.S. government prior to exporting controlled Export Items.

18.5. Headings. The headings in this Agreement are for convenience only and shall not affect in any way the meaning of any provisions of this Agreement.

18.6. Governing Law. This Agreement shall be governed by and construed in accordance with the law of the State of New York applicable to contracts made and wholly performed in the State of New York and without regard to its conflict-of-laws provisions.

18.7. Severability. The determination that any provision of this Agreement is invalid or unenforceable shall not invalidate this Agreement and this Agreement shall be construed and performed in all respects as if such invalid or unenforceable provisions were omitted to the extent of such invalidity or unenforceability. Any invalid or unenforceable provisions shall be replaced by mutually acceptable valid and enforceable provisions that most closely reflect the intention of the Parties underlying the invalid or unenforceable provisions.

18.8. Notices. All notices required or permitted to be made pursuant to this Agreement shall be in writing addressed as follows:

If to WorldCom:

WorldCom Corporation
Attention: Procurement Department 0668/117
2424 Garden of the Gods Road
Colorado Springs, Colorado 80919
Facsimile: (719) 535-5478

With a Copy to:

WorldCom Corporation
Attention: Legal Department – Technology Law Group
1133 19th Street, N.W.
Washington, DC 20036-3695
Facsimile: (202) 736-6824

If to Webley:

Webley Systems, Inc.
Attention: Robert C. McConnell
570 Lake Cook Road
Suite 406
Deerfield, Illinois 60015
Facsimile: (888) 387-3481

With a Copy to:

Webley Systems, Inc.
Attention: Darius Reneau
570 Lake Cook Road
Suite 406
Deerfield, Illinois 60015
Facsimile: (877) 574-4831

Or such other address as each Party may designate in writing to the other Party for this purpose. Such notice shall be deemed to have been duly given and received: (a) on the day of delivery if hand delivered or delivered by overnight courier; (b) on the fifth (5th) day after the date sent if sent by prepaid, certified mail; or (c) on the calendar day following the date of transmission if sent by facsimile or electronic mail.

18.9. No Limitations. Nothing herein shall limit the right of WorldCom or any WorldCom Affiliate to obtain at any time from any third party the same or similar Programs as may be obtained or available pursuant to this Agreement or to obtain from Webley more favorable pricing and discounts than the pricing and discounts otherwise available pursuant to this Agreement.

18.10. Permission to Contract. Webley agrees to provide notice to WorldCom as provided in Section 18.8 prior to entry into any contract related to the provision of Programs or Services to WorldCom, WorldCom Affiliates or Alliance Partners, including, without limitation, Software license agreements, amendments to this Agreement, trial agreements, software development services agreements and related non-disclosure agreements and not to enter into any of the foregoing agreements other than through or with the prior written consent of WorldCom. Webley acknowledges and agrees that only a duly authorized representative of WorldCom may bind or obligate WorldCom in any manner whatsoever pursuant to any agreements with Webley of the types described in this Section 18.10.

18.11. Third Party Beneficiaries. Each WorldCom Affiliate or Alliance Partner whether now existing or having such status, or hereafter created or coming within the definition of "Affiliate" or "Alliance Partner", as applicable, is an intended third party beneficiary of this Agreement.

18.12. Waiver, Amendment or Modification. Any waiver, amendment or modification to this Agreement shall not be effective unless and until made in a writing in which such intent to waive, amend or modify is clearly and prominently indicated and which writing is signed by the Parties. The failure or delay of either Party in exercising any right pursuant to this Agreement shall not constitute a waiver thereof.

18.13. Counterparts. This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which taken together shall constitute one and the same instrument. The Parties agree that an execution of this Agreement by facsimile will be valid and binding; provided, however, that for purposes of evidentiary proof, production of an original execution copy will be required.

18.14. Order of Precedence. In the event of any ambiguity or inconsistency between this Agreement and any Order, this Agreement shall control.

18.15. Entire Agreement. This Agreement contains the entire understanding between the Parties relating to the subject matter herein and supersedes all prior oral and written understandings, arrangements and agreements between the Parties, other than that Evaluation Agreement, as amended, between the Parties originally executed on February 6, 2001, and any of their respective predecessors in interest relating to the subject matter herein. Notwithstanding the foregoing, if WorldCom acquired Program licenses or Services pursuant to any such understanding, arrangement or agreement, then any such

WorldCom: /s/   Webley: /s/   14

CONFIDENTIAL   PH 00031

A 02608

CONFIDENTIAL

Program licenses or Services shall be continued in force and effect, incorporated into and governed by the terms and conditions of this Agreement.

18.16. **Bankruptcy Proceedings.** All licenses granted under or pursuant to this Agreement are, and shall otherwise be deemed to be, for purposes of Section 365(n) of the U.S. Bankruptcy Code (or successor, equivalent provision thereto), licenses of rights to "intellectual property" as defined under Section 101(35A) of the U.S. Bankruptcy Code (or successor, equivalent provision thereto). Each Party agrees that the other Party shall retain and may fully exercise all of its rights and elections under the U.S. Bankruptcy Code. The Parties agree that WorldCom shall retain and may fully exercise any and all of its rights and elections under the U.S. Bankruptcy Code, including without limitation the right to continue to exercise the rights licensed under this Agreement following the bankruptcy of Webley.

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed by their duly authorized representatives as of the Effective Date.

| WEBLEY SYSTEMS, INC. | MCI WORLDCOM NETWORK SERVICES, INC. |
|---|---|
| By: _(Authorized Signature)_ | By: _(Authorized Signature)_ |
| Name: ROBERT C MCCASWELL _(Type or Print)_ | Name: Scott E Posoichel _(Type or Print)_ |
| Title: SVP & GENERAL COUNSEL _(Type or Print)_ | Title: Manager, IT Strategic Procurement _(Type or Print)_ |
| Date: SEPTEMBER 14, 2001 _(Type or Print)_ | Date: September 14, 2001 _(Type or Print)_ |

WorldCom: _____ Webley: _____   15

CONFIDENTIAL  PH 00032

A 02609

CONFIDENTIAL

APPENDIX A   ORDER SUMMARY

1.0   FEE SUMMARY OF INITIAL ORDER

| PROGRAM LICENSES [a] *(first installment only)* | $125,000.00 |
|---|---|
| MAINTENANCE SERVICES | $9,735.00 |
| CONSULTING SERVICES | $78,000.00 |
| TRAINING SERVICES | $75,000.00 |
| GRAND TOTAL | $287,735.00 |

2.0   PROGRAM LICENSES FEES - CALCULATION DETAIL [a]

| PROGRAM | LICENSE TYPE | LIST FEE | DISCOUNT RATE | NET FEE | QUANTITY | EXTENDED FEE |
|---|---|---|---|---|---|---|
| Master Licensed Program | Master CPU License | $N/C | % | $N/C | One (1) | $N/C |
| Block Seat Licenses | Authorized User | $37.50 | % | $37.50 | 10,000 | $375,000.00 |
| | | | | | GRAND TOTAL | $375,000.00 |

(a) The initial pricing for the first quantity of Block Seat Licenses shall be $37.50 per seat and is payable in three (3) equal installments as follows: one-third, or $125,000, upon invoicing therefor after testing and acceptance thereof by WorldCom pursuant to the Agreement; one-third, or $125,000, upon invoicing therefor on or after September 14, 2002; and one-third, or $125,000, upon invoicing therefor on or after September 14, 2003. The Parties agree that should WorldCom accept the Block Seat Licenses after testing, then the first license fee payment shall be mandatory, but that the second and third license fee payments are optional and within WorldCom's sole discretion. Should WorldCom pay all of the three foregoing license fee payments, then WorldCom shall have acquired a fully paid, perpetual license to the Block Seat Licenses pursuant to Article 2.0. Notwithstanding the foregoing, should WorldCom pay less than all of the three foregoing license fee payments, then the Block Seat Licenses shall be deemed term licenses and the term of the license grant therefor shall expire, as applicable pursuant to the license fee installment which has been paid, on either September 14, 2002; September 14, 2003; or September 14, 2004. If the licenses are deemed term licenses, then WorldCom agrees to uninstall and surrender to Webley the Block Seat Licenses.

3.0   SERVICES FEES - CALCULATION DETAIL

3.1.   MAINTENANCE SERVICES FEES

| PROGRAM | COVERAGE LEVEL | COVERAGE RATE | LICENSE FEE | COVERAGE FEE | QUANTITY | EXTENDED FEE |
|---|---|---|---|---|---|---|
| First twelve (12) months, including first six (6) months at no charge | Standard | 15% | $125,000.00 (first installment) | $18,750.00 | 0.5 | $9,735.00 |
| | | | | | GRAND TOTAL | $9,735.00 |

3.2.   CONSULTING SERVICES FEES

| SERVICE | RATE UNIT | LIST FEE | DISCOUNT RATE | NET FEE | QUANTITY | EXTENDED FEE |
|---|---|---|---|---|---|---|
| Platform Installation | 15 billable days | $1,200.00 per diem | N/A | $18,000.00 | 1 | $18,000.00 |
| Product Development and Integration – Branding | Per agreed specifications APPENDIX F | $50,000.00 | N/A | $50,000.00 | 1 | $50,000.00 |
| Product Development and Integration – User Documentation and Customer Service Training | Per agreed specifications APPENDIX G | $10,000.00 | N/A | $10,000.00 | 1 | $10,000.00 |
| | | | | | GRAND TOTAL | $78,000.00 |

WorldCom: _____   Webley: _____

APPENDIX A – 1

CONFIDENTIAL   PH 00033

A 02610

CONFIDENTIAL

### 3.3. TRAINING SERVICES FEES

| SERVICE | RATE UNIT | LIST FEE | DISCOUNT RATE | NET FEE | QUANTITY | EXTENDED FEE |
|---|---|---|---|---|---|---|
| Operations Documentation and Training | Per agreed specifications APPENDIX G | $75,000.00 | N/A | $75,000.00 | 1 | $75,000.00 |
| | | | | GRAND TOTAL | | $75,000.00 |

WorldCom: [signature]   Webley: [signature]   APPENDIX A – 2

CONFIDENTIAL   PH 00034

A 02611