# REPLY BRIEF

# EXHIBIT A

A 02780

# Delaware

PAGE  1

### The First State

I, HARRIET SMITH WINDSOR, SECRETARY OF STATE OF THE STATE OF DELAWARE, DO HEREBY CERTIFY THE ATTACHED ARE TRUE AND CORRECT COPIES OF ALL DOCUMENTS ON FILE OF "EFFECTNET, INC." AS RECEIVED AND FILED IN THIS OFFICE.

THE FOLLOWING DOCUMENTS HAVE BEEN CERTIFIED:

CERTIFICATE OF INCORPORATION, FILED THE TWENTY-EIGHTH DAY OF DECEMBER, A.D. 2000, AT 1 O'CLOCK P.M.

CERTIFICATE OF MERGER, FILED THE TWENTY-EIGHTH DAY OF DECEMBER, A.D. 2000, AT 1:01 O'CLOCK P.M.

CERTIFICATE OF DESIGNATION, FILED THE EIGHTH DAY OF FEBRUARY, A.D. 2001, AT 12:30 O'CLOCK P.M.

CERTIFICATE OF AMENDMENT, FILED THE THIRTIETH DAY OF APRIL, A.D. 2001, AT 9 O'CLOCK A.M.

CERTIFICATE OF AMENDMENT, FILED THE THIRTIETH DAY OF APRIL, A.D. 2001, AT 9:05 O'CLOCK A.M.

CERTIFICATE OF MERGER, FILED THE EIGHTH DAY OF APRIL, A.D. 2003, AT 9 O'CLOCK A.M.

RESTATED CERTIFICATE, FILED THE EIGHTH DAY OF APRIL, A.D. 2003, AT 9 O'CLOCK A.M.

CERTIFICATE OF OWNERSHIP, FILED THE FIFTH DAY OF FEBRUARY,

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3337277  8100H

050962209

AUTHENTICATION: 4323307

DATE: 11-28-05

A 02781

# Delaware

*PAGE   2*

## The First State

A.D. 2004, AT 6:48 O'CLOCK P.M.

    AND I DO HEREBY FURTHER CERTIFY THAT THE AFORESAID
CERTIFICATES ARE THE ONLY CERTIFICATES ON RECORD OF THE
AFORESAID CORPORATION.

*Harriet Smith Windsor*
Harriet Smith Windsor, Secretary of State

3337277   8100H

050962209

AUTHENTICATION: 4323307

DATE: 11-28-05

A 02782

## CERTIFICATE OF MERGER

The undersigned corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware, for the purpose of effecting in accordance with Delaware law the merger of EffectNet L.L.C., a Nevada limited liability company, with and into EffectNet, Inc., a Delaware corporation,

DOES HEREBY CERTIFY pursuant to Section 264(c) of the General Corporation Law of the State of Delaware as follows:

1.  The name and state of domicile of each of the constituent entities in the merger is as follows:

EffectNet L.L.C., a limited liability company organized in Nevada,

and

EffectNet, Inc., a corporation organized in Delaware

2.  A Plan and Agreement of Merger by and between EffectNet L.L.C., a Nevada limited liability company, and EffectNet, Inc., a Delaware corporation, has been approved, adopted, certified, executed and acknowledged (a) by EffectNet L.L.C. in accordance with the Operating Agreement of EffectNet L.L.C. and the laws of the State of Nevada and (b) by EffectNet, Inc. in accordance with Sections 251 and 264 of Title 8 of the General Corporation Law of the State of Delaware.

3.  The name of the surviving entity in the merger is EffectNet, Inc., a Delaware corporation.

4.  The Certificate of Incorporation of EffectNet, Inc. as of the date preceding the merger, shall be the Certificate of Incorporation of EffectNet, Inc. following the merger.

5.  The executed Plan and Agreement of Merger is on file at the principal place of business of EffectNet, Inc. at 10230 South 50th Place, Phoenix, Arizona 85044.

6.  A copy of the Plan and Agreement of Merger will be furnished by EffectNet, Inc., the surviving entity in the merger, on request and without cost to any member of EffectNet L.L.C. or any shareholder of EffectNet, Inc.

Dated the 27th day of December, 2000.

EFFECTNET, INC.

By:

Name: Taj Reneau
Title: Chief Executive Officer

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 01:01 PM 12/28/2000
001656793 - 3337277

A 02783

STATE OF DELAWARE
SECRETARY OF STATE
DIVISION OF CORPORATIONS
FILED 09:00 AM 04/08/2003
030230830 - 3337277

# CERTIFICATE OF MERGER

## OF

## EFFECTNET ACQUISITION CORP.
(a Delaware Corporation)

## INTO

## EFFECTNET, INC.
(a Delaware Corporation)

(Under Section 251 of the General Corporation Law of the State of Delaware)

The undersigned corporation organized and existing under and by virtue of the General Corporation Law of Delaware,

**DOES HEREBY CERTIFY:**

**FIRST:** That the name and state of incorporation of each of the constituent corporations of the merger is as follows:

| NAME | STATE OF INCORPORATION |
|------|------------------------|
| EffectNet Acquisition Corp. | Delaware |
| EffectNet, Inc. | Delaware |

**SECOND:** That an Agreement and Plan of Merger between the parties to the merger has been approved, adopted, certified, executed and acknowledged by each of the constituent corporations in accordance with the requirements of Section 251(c) of the General Corporation Law of Delaware.

**THIRD:** That the name of the surviving corporation of the merger is EffectNet, Inc., a Delaware corporation.

**FOURTH:** That the Certificate of Incorporation of the surviving corporation shall be as set forth on Exhibit A hereto.

**FIFTH:** That the executed Agreement and Plan of Merger is on file at the office of the surviving corporation, the address of which is 10230 South 50th Place, Phoenix, Arizona 85044.

A 02784

**SIXTH:**     That a copy of the Agreement of Merger will be furnished by the surviving corporation, on request and without cost, to any stockholder of any constituent corporation.

**SEVENTH:**  That this Certificate of Merger shall be effective on the date it is filed with the Secretary of State of Delaware.

Dated as of this 7th day of April, 2003.

**EffectNet, Inc.**
a Delaware corporation


By: /s/ Taj Reneau
 Taj Reneau
**Chief Executive Officer**

**EffectNet Acquisition Corp.**
 a Delaware corporation


By: /s/ Taj Reneau
Taj Reneau
**Chief Executive Officer**

2

A 02785

# REPLY BRIEF

# EXHIBIT B

A 02786

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>      Plaintiff, | ) <br> ) <br> ) <br> ) <br> ) <br> ) |
|           v. | ) <br> )   Civil Case No. 1:00CV02789(RWR) <br> ) |
| WORLDCOM, INC.,<br>INTERMEDIA COMMUNICATIONS, INC.,<br><br>      Defendants. | ) <br> )   **FILED** <br> ) <br> )   AUG 2 9 2001 <br> ) <br> )   CLERK, U.S. DISTRICT COURT<br>DISTRICT OF COLUMBIA |

## MEMORANDUM IN SUPPORT OF JOINT MOTION
## TO MODIFY HOLD SEPARATE STIPULATION AND ORDER

Through undersigned counsel, the parties to this action move for modification of the

Hold Separate Stipulation and Order ("HSO") entered by this Court on May 30, 2001, in

connection with WorldCom's acquisition of Intermedia Communications, Inc. ("Intermedia").

Specifically, the parties propose three principal modifications to the HSO:

(1)    to limit the assets to be held separate to Intermedia's stand-alone Internet business
unit, IBI;

(2)    to appoint a trustee to hold separate and manage IBI; and

(3)    to provide this trustee with sufficient flexibility to operate IBI rationally under

1

MCIWC030329
A 02787

today's market conditions, in order to improve the profitability and, therefore, the marketability of IBI.

This request to modify the HSO is proposed for the purpose of enhancing the prospect of a rapid and successful divestiture of the IBI business as a viable competitor. The proposed modifications are limited and do not interfere with the remediation of the competitive concern identified in the United States' complaint -- namely, the preservation of competition in the provision of Internet backbone and access services. The requested modifications are necessitated by unforeseen and substantial changes in the telecommunications marketplace which the parties reasonably could not have anticipated when they agreed to the HSO. At the same time, the modifications sought are modest ones which, in no way, undermine the core principle of maintaining and ultimately divesting a separate and viable IBI business. The proposed modifications are designed to help ensure that the purpose and intention of the Final Judgment are effectuated on a timely basis.

## I.    BACKGROUND

WorldCom executed a definitive agreement to acquire Intermedia on September 5, 2000. In response to concerns raised by the United States regarding the transaction's effect on the competitive provision of Internet backbone and access services, WorldCom and Intermedia agreed to divest all of Intermedia except for its holdings of capital stock in Digex, Inc. ("Digex"). A proposed Final Judgment and HSO were filed with the Court on November 17, 2000, and the HSO was entered on May 30, 2001. The Final Judgment was entered on June 27, 2001, and WorldCom and Intermedia closed the transaction a few days later, on July 1, 2001.

In relevant part, the HSO requires WorldCom to hold separate all of the Intermedia

2

MCIWC030330
A 02788

Assets and binds Intermedia during the HSO period to continue to operate its business according to the business plan put in place in 1999, when conditions in the telecommunications marketplace were markedly different than they are today. These restrictions have impeded WorldCom's ability to divest the IBI business by tying it to Intermedia's competitive local exchange carrier ("CLEC") business and by preventing Intermedia's management from attempting to put IBI on a path to profitability.[1]

Growth in telecommunications services markets has slowed dramatically since the fourth quarter of 2000. Significant capital investments made by competitive telecommunications carriers in anticipation of future growth have proved difficult to pay for when the projected revenues were not achieved. Since WorldCom agreed to divest the Intermedia assets, no fewer than 14 competitive providers have filed for bankruptcy,[2] resulting in a glut of carrier businesses and assets becoming available at distressed prices. Many remaining competitors have been forced to restructure or substantially downsize their operations.

While Intermedia's Internet backbone business remains an attractive asset, efforts to divest the business have been hampered by both the lack of interest by buyers in the non-Internet Intermedia assets and the need to revise the IBI business plans and operations in light of current market conditions.

---

[1]    The Final Judgment requires WorldCom to divest the "Intermedia Assets," as defined therein within 180 calendar days from the closing of the merger. Although the Final Judgment defines "Intermedia Assets" broadly to include all of Intermedia's assets except the Digex stock, it expressly anticipates that less than all of Intermedia's assets actually might be appropriate or necessary to divest in order to effectuate the desired relief, in that it permits a smaller subset of the assets to be sold if the United States consents in writing. Final Judgment, IV.G. This proposal accordingly does not require any modification to the Final Judgment.

[2]    These companies include American Metrocomm, NETtel, ICG, Northpoint, Rhythms NetConnections, e.spire, Teligent, Winstar, Advanced Radio Telecom, 360networks, PSINet, Convergent, World Access, and Metricom.

3

MCIWC030331

A 02789

## II.    PROPOSED CHANGES TO THE HOLD SEPARATE ORDER

The parties propose to address the marketability problems encountered thus far by untethering IBI from Intermedia's non-Internet assets and providing the flexibility to alter IBI's operations in such a way as to make it a more viable and marketable business in today's environment. The proposal in no way derogates from the fundamental purpose and intent of either the Final Judgment or the HSO. The modifications are expressly designed to improve the chances for accomplishing the divestiture of a viable and ongoing Internet business to an acceptable purchaser. The trustee will insure that IBI would remain fully separate from the operations and influence of WorldCom, as currently provided in the HSO, and any business changes would be made by the trustee, in consultation with IBI's current independent management.

### A.    <u>Limit the Scope of the Hold Separate Order to IBI</u>

Under the Final Judgment, defendants are obligated to divest all the non-Digex portions of Intermedia, although with the written consent of the United States, defendants would be permitted to divest something less than this. The United States anticipates consenting to defendants' request to divest only the IBI assets, because the divestiture of IBI alone appears to be sufficient to remedy the harm alleged in the Complaint, and the unsuccessful efforts to divest the Intermedia Assets indicate that the divestiture of IBI is being hindered, rather than aided, by the requirement that other business units besides IBI be divested. Accordingly, there is no longer any need for other business units besides IBI to be covered by the HSO.

The proposed revised HSO is limited in scope to IBI. The IBI assets, employees, revenue, and customer base would continue to be held separately from WorldCom. IBI would

4

MCIWC030332

A 02790

continue to operate independently, with management under the supervision and control of the trustee, without any control by or direction from WorldCom. The divestiture of IBI as a stand-alone business will resolve any competitive issues in the provision of Internet backbone and access services, the affected market alleged by the United States, and the HSO is geared to ensuring that IBI remains a separate, viable, competitive entity until the divestiture is accomplished.

**B.    Appoint an Independent Trustee to Manage the IBI Business**

As discussed further below, certain business decisions regarding IBI need to be taken in order to enhance the prospects of a successful divestiture. Rather than commit these decisions to employees of defendants, the proposed revised HSO contemplates the selection of an impartial, independent trustee by the United States, and his or her appointment by the Court. The trustee will be tasked with carrying out the purposes of the Final Judgment, and given necessary and appropriate powers to do so. The fact that this trustee is independent, selected by the United States, and approved by this Court helps guarantee that IBI will be operated in a manner best calculated to enhance its viability and attractiveness to potential purchasers.

**C.    Give the Trustee Sufficient Flexibility to Manage IBI Rationally**

In addition, the parties request that the HSO be modified to enable the independent trustee to undertake rational business measures to make IBI a viable business. The HSO currently requires WorldCom to cause IBI to maintain at 2000 levels or previously approved levels for 2001, whichever are higher, all promotional, advertising, sales, technical assistance, network capacity configurations and expansions, marketing and merchandising support for the Intermedia Assets. Hold Separate Stipulation and Order V.A.2. It also requires WorldCom to

5

MCIWC030333

A 02791

cause IBI to maintain "projected capacity expansions . . . planned prior to negotiations between defendants relating to the Merger. . . ." Hold Separate Stipulation and Order V.B.5, and prohibits the termination of any Intermedia employee during the pendency of the HSO. Hold Separate Stipulation and Order V.B.9. Because of these restrictions, Intermedia's management has been unable to undertake appropriate measures to reduce costs or otherwise respond to conditions in the telecommunications/CLEC marketplace. However, to operate an Internet business today as though the market is as was expected and hoped in 1999 and 2000 is not only irrational, but makes it more difficult to package IBI as a desirable business to prospective purchasers.

To enable WorldCom to promptly divest IBI, the parties urge the Court to amend the HSO in the following ways:

- As provided in Section V of the Proposed Modified Hold Separate Stipulation and Order, the United States will select an independent Hold Separate Trustee to serve as manager of the IBI business from the time of his or her appointment until the IBI business is sold. Working with IBI's existing management team, the Trustee will have the responsibility, and flexibility, to ensure that IBI is managed so as to maximize its revenue and cash flow so as to permit its expeditious divestiture in a manner consistent with the Final Judgment. It will monitor the organization of the IBI business; control and operate the IBI business to ensure as much as possible that it is an ongoing, economically viable competitor in the provision of Internet backbone and access services; maintain the independence of the IBI business from WorldCom; manage the IBI business in order to maximize its value and effect its expeditious divestiture in a manner consistent with the Final Judgment; and assure the defendants' compliance with their obligations pursuant to the Modified HSO. See Para. V.C.2. of the Proposed Modified Hold Separate Stipulation and Order.

6

MCIWC030334

A 02792

- As provided in Section VI of the Proposed Modified Hold Separate Stipulation and Order, defendants shall offer to provide IBI with certain services and products currently provided by Intermedia to the IBI business which are not included within the IBI business, such as human resources administrative services, preparation of tax returns, and the like.

A full copy of the Proposed Modified Hold Separate Stipulation and Order is attached to this Memorandum, in both a clean form and a form marked to show differences between the original and proposed modified order. Attachment A is the clean version, and Attachment B is the version marked to show differences.

## III.    MODIFYING THE HOLD SEPARATE ORDER IS IN THE PUBLIC INTEREST

The central purpose of the HSO, to ensure that the divestiture assets remain "an independent, ongoing, economically viable competitive business," is served by the proposed modifications and, therefore, is in the public interest.

For the foregoing reasons, the parties respectfully request that this Court grant this Joint Motion to Modify Hold Separate Stipulation and Order entered in this action on May 30, 2001.

Dated:    August 29, 2001

Respectfully submitted,

Parker Erkmann

Hillary Burchuk, Trial Attorney
(DC Bar #366755)
J. Parker Erkmann, Trial Attorney
Telecommunications Task Force
Antitrust Division
United States Department of Justice
1401 H St. N.W.
Suite 8000
Washington, DC 20530
(202) 514-5621

Michael H. Salsbury

Michael H. Salsbury (DC Bar #365888)
Executive Vice President & General
    Counsel WorldCom, Inc.
1133 19th Street, N.W.
Washington, DC 20036
(202) 736-6000

7

MCIWC030335

A 02793

_Deborah A Garza_
Deborah A. Garza (DC Bar #395295)
Fried Frank Harris Shriver & Jacobson
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2505
(202) 639-7270
Counsel for Intermedia Communications, Inc.

8

MCIWC030336

A 02794

# REPLY BRIEF

# EXHIBIT C

A 02795

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,          )
                    Plaintiff,     )
                                   )
                                   )    Case No. 1:00CV02789 (RWR)
          v.                       )
                                   )
WORLDCOM, INC.,                    )
INTERMEDIA COMMUNICATIONS, INC.    )
                    Defendants.    )
                                   )

## MODIFIED HOLD SEPARATE STIPULATION AND ORDER

This matter came before the Court on the parties' Joint Motion to Modify Hold Separate

Stipulation and Order. This Court, having considered the Motion and the memorandum in support

thereof and being fully advised of its premise, hereby grants this Motion and modifies the Hold

Separate Stipulation and Order, entered on May 30, 2001. It is hereby stipulated and agreed by

and between the undersigned parties, subject to approval and entry by the Court, that:

### I.   DEFINITIONS

As used in this Hold Separate Stipulation and Order:

A.   "Acquirer" means the entity to whom defendants divest the IBI business.

B.   "WorldCom" means defendant WorldCom, Inc., a Georgia corporation with its

headquarters in Clinton, Mississippi, its successors and assigns, and its subsidiaries, divisions,

groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents



1



MCIWC030337

**A 02796**

and employees.

C.    "Intermedia" means defendant Intermedia Communications, Inc., a Delaware Corporation with its headquarters in Tampa, Florida, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships and joint ventures, and their directors, officers, managers, agents and employees.

D.    "Intermedia Business Internet" or "IBI business" means Intermedia's Internet backbone and access services business and includes:

1.    All tangible assets that comprise Intermedia's Internet backbone and access services business, including research and development activities, all networking equipment and fixed assets, personal property, office furniture, materials, supplies, and other tangible property and all assets used exclusively in connection with the IBI business; all licenses, permits and authorizations issued by any governmental organization relating to the IBI business; all contracts, teaming arrangements, agreements, leases, commitments, certifications, and understandings, relating to the IBI business, including supply agreements; all customer lists, contracts, accounts, and credit records; all repair and performance records and all other records relating to the IBI business;

2.    All intangible assets used in the development, production, servicing and sale of the IBI business, including, but not limited to all patents, licenses and sublicenses, intellectual property, copyrights, trademarks, trade names, service marks, service names, technical information, computer software and related documentation, know-how, trade

2

MCIWC030338

A 02797

secrets, drawings, blueprints, designs, design protocols, specifications for materials,

specifications for parts and devices, safety procedures for the handling of materials and

substances, all research data concerning historic and current research and development

relating to the IBI business, quality assurance and control procedures, design tools and

simulation capability, all manuals and technical information defendants provide to their

own employees, customers, suppliers, agents or licensees, and all research data

concerning historic and current research and development efforts relating to the IBI

business, including, but not limited to designs of experiments, and the results of

successful and unsuccessful designs and experiments.

## II.    OBJECTIVES

The Final Judgment filed in this case is meant to ensure the prompt divestiture of

Intermedia's assets for the purpose of preserving a viable competitor in the provision of Internet

backbone and access services and to remedy the effects that the United States alleges would

otherwise result from WorldCom's acquisition of Intermedia.  The parties believe this goal can

be best accomplished through this modification to the original Hold Separate Stipulation and

Order.  This Modified Hold Separate Stipulation and Order ensures, prior to such divestiture,

that the IBI business remains an economically viable, and ongoing business concern that will

remain independent and uninfluenced by WorldCom, and that competition is maintained during

the pendency of the ordered divestiture .

## III.    JURISDICTION AND VENUE

This Court has jurisdiction over each of the parties hereto and over the subject matter of

3

MCIWC030339

A 02798

this action, and venue of this action is proper in the United States District Court for the District of Columbia. The Complaint states a claim upon which relief may be granted against defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## IV.    COMPLIANCE WITH THE FINAL JUDGMENT

A.    Defendants shall continue to abide by and comply with the provisions of the Final Judgment, entered in this matter on June 27, 2001.

B.    Defendants shall not take any steps in contravention of the original Hold Separate Stipulation and Order before the Court has entered this Modified Hold Separate Stipulation and Order.

C.    This Modified Hold Separate Stipulation and Order shall apply with equal force and effect to any amended Final Judgment agreed upon in writing by the parties and submitted to the Court.

D.    Defendants represent that the divestiture ordered in the Final Judgment can and will be made, and that defendants will later raise no claim of mistake, hardship or difficulty of compliance as grounds for asking the Court to modify any of the provisions contained therein.

E.    The United States and defendants WorldCom and Intermedia, by their respective attorneys, have consented to the entry of this Modified Hold Separate Stipulation and Order without trial or adjudication of any issue of fact or law, and without this Modified Hold Separate Stipulation and Order constituting any evidence against or admission by any party regarding any issue of fact or law.

4

MCIWC030340

**A 02799**

## V.   APPOINTMENT OF HOLD SEPARATE TRUSTEE

The United States will select and the Court will approve and appoint a Hold Separate

Trustee to serve as manager of the IBI business from the time of his or her appointment until the

IBI business is sold. This Modified Hold Separate Stipulation and Order shall not be interpreted

to prevent the Hold Separate Trustee from becoming the divestiture trustee pursuant to Section

V of the Final Judgment.

A.   As soon as practicable, the United States will identify to defendants the individual

or entity it proposes to select as the Hold Separate Trustee. Defendants shall not object to the

selection of the trustee on any grounds other than irremediable conflict of interest. Defendants

must make any such objection within five (5) business days after plaintiff notifies defendants of

the trustee's selection. Upon application of the United States, the Court shall approve and

appoint a Hold Separate Trustee to manage the IBI business in anticipation of an expeditious sale

of the IBI business.

B.   Promptly after the appointment of the Hold Separate Trustee by the Court,

defendants shall enter into a trustee agreement with the Hold Separate Trustee subject to the

approval of the United States that will grant the rights, powers, and authorities necessary to

permit the Hold Separate Trustee to perform his or her duties and responsibilities, pursuant to

this Modified Hold Separate Stipulation and Order. The trustee agreement shall require the

following:

1.   The Hold Separate Trustee shall serve, without bond or other security, at

the cost and expense of defendants, on such terms and conditions as the United States approves

5

MCIWC030341

A 02800

with a fee arrangement that is reasonable in light of the person's experience and responsibilities;

    2.    The defendants shall indemnify the Hold Separate Trustee and hold him or her harmless against any losses, claims, damages, liabilities, or expenses arising out of, or in connection with, the performance of the Hold Separate Trustee's duties, including all reasonable fees of counsel and other expenses incurred in connection with the preparation for, or defense of any claim, whether or not resulting in any liability, except to the extent that such liabilities, losses, damages, claims, or expenses result from misfeasance, gross negligence, willful or wanton acts, or bad faith by the Hold Separate Trustee;

    3.    When the United States approves the trustee agreement, the Hold Separate Trustee will assume all rights, powers, and authorities necessary to permit the Hold Separate Trustee to perform his or her duties and responsibilities, pursuant to this Modified Hold Separate Stipulation and Order and consistent with the purposes of the Final Judgment;

    4.    The Hold Separate Trustee will assume the powers and responsibilities listed in Section V.C of this Modified Hold Separate Stipulation and Order;

    5.    Limitations shall be placed on the powers of the Hold Separate Trustee pursuant to Section V.D of this Modified Hold Separate Stipulation and Order.

    C.    The Hold Separate Trustee will have the following powers and responsibilities with respect to the IBI business:

    1.    Thirty (30) days after the Hold Separate Trustee has been approved by the Court, and every thirty (30) days thereafter until the termination of this order, the Hold Separate Trustee shall report in writing to the United States concerning the efforts to accomplish the

6

MCIWC030342

A 02801

purposes of this Modified Hold Separate Stipulation and Order and the Final Judgment. Included within that report shall be the Hold Separate Trustee's assessment of the extent to which the IBI business is meeting (or exceeding) its projected goals as are reflected in existing or revised operating plans, budgets, projections or any other regularly prepared financial statements;

2.      The Hold Separate Trustee shall have a duty to, consistent with the terms of this Modified Hold Separate Stipulation and Order and the Final Judgment, monitor the organization of the IBI business; control and operate the IBI business to ensure that the IBI business remains an ongoing, economically viable competitor in the provision of Internet backbone and access services; maintain the independence of the IBI business from WorldCom; manage the IBI business in order to maximize its value so as to permit its expeditious divestiture in a manner consistent with the Final Judgment; and assure defendants' compliance with their obligations pursuant to this Modified Hold Separate Stipulation and Order and the Final Judgment;

3.      The Hold Separate Trustee will ensure that the IBI business shall be staffed with sufficient employees to maintain its viability and competitiveness. To the extent that any employees of the IBI business leave or have left the IBI business prior to the divestiture of the IBI business, the Hold Separate Trustee may replace departing or departed employees with persons who have similar experience and expertise or determine not to replace such departing or departed employees.

4.      The Hold Separate Trustee shall have the authority to employ, at the cost and expense of Defendants, such consultants, accountants, attorneys, and other representatives

7

MCIWC030343

A 02802

and assistants as are reasonably necessary to carry out the Hold Separate Trustee's duties and
responsibilities.

        5.      The Hold Separate Trustee and any consultants, accountants, attorneys,
and any other persons retained by the trustee, shall have full and complete access to all
personnel, books, records, documents and facilities of the IBI business or to any other relevant
information as the Hold Separate Trustee may reasonably request, including, but not limited to,
all documents and records kept in the normal course of business that relate to the IBI business.
Defendants shall develop such financial or other information as the Hold Separate Trustee may
request and shall cooperate with the Hold Separate Trustee. Defendants shall take no action to
interfere with or impede the Hold Separate Trustee's ability to monitor defendants' compliance
with this Modified Hold Separate Stipulation and Order and the Final Judgment or otherwise to
perform his/her duties and responsibilities consistent with the terms of this Modified Hold
Separate Stipulation and Order.

        6.      The Hold Separate Trustee will have the power to manage the IBI
business in the ordinary course of business consistent with this Modified Hold Separate
Stipulation and Order. Only with the prior written approval of the United States may the Hold
Separate Trustee make any decision, take any action, or enter any transaction that is outside the
ordinary course of business.

        D.      The following limitations shall apply to the Hold Separate Trustee:

        1.      The Hold Separate Trustee shall not be involved, in any way, in the
operations of the other businesses of defendants during the term of this Modified Hold Separate

8

MCIWC030344

A 02803

Stipulation and Order;

        2.      The Hold Separate Trustee shall have no financial interests affected by defendants' revenues, profits or profit margins, except that the Hold Separate Trustee's compensation for managing the IBI business may include economic incentives dependent on the financial performance of the IBI business provided that those incentives are consistent with the objectives of this Modified Hold Separate Stipulation and Order and the Final Judgment and are approved by the United States;

        3.      The Hold Separate Trustee shall be prohibited from performing any further work for WorldCom for two (2) years after the close of the divestiture.

        E.      Defendants, defendants' employees, and the Hold Separate Trustee will take all reasonable efforts to preserve the confidentiality of information that is material to the operation of either the IBI business or defendants' businesses.

        1.      The United States may require the Hold Separate Trustee and his agents and employees to sign an appropriate confidentiality agreement relating to materials belonging to and in the custody of the United States and information received in connection with performance of the Hold Separate Trustee's duties.

        2.      Defendants may require the Hold Separate Trustee and his agents and employees to sign a confidentiality agreement prohibiting the disclosure of any material confidential information gained as a result of his or her role as Hold Separate Trustee to anyone other than the United States.

        3.      Defendants' personnel supplying services or products to the IBI business

9

MCIWC030345

A 02804

pursuant to Section VI.A must retain and maintain the confidentiality of any and all confidential information material to the IBI business. Except as permitted by this Modified Hold Separate Stipulation and Order, such persons shall be prohibited from providing, discussing, exchanging, circulating or otherwise furnishing the confidential information of the IBI business to or with any person whose employment involves any of defendants' businesses.

   F.  If the Hold Separate Trustee ceases to act or fails to act diligently and consistent with the purposes of this Modified Hold Separate Stipulation and Order, if the Hold Separate Trustee resigns, or if for any other reason the Hold Separate Trustee ceases to serve in his or her capacity as Hold Separate Trustee, the United States may select and the Court may appoint a substitute Hold Separate Trustee in the same manner as provided in Paragraph V.A of this Order.

## VI.  DEFENDANTS' PROVISION OF SERVICES TO THE IBI BUSINESS

   A.  In connection with support services not included within the IBI business, defendants shall provide to the IBI business at no cost to IBI the following services and products from the Defendants:

     1.  Federal and state regulatory policy development and compliance;

     2.  Human resources administrative services;

     3.  Environmental health and safety services, which develops corporate policies and insures compliance with federal and state regulations and corporate policies;

     4.  Preparation of tax returns;

     5.  Financial accounting and reporting services;

     6.  Audit services; and

10

MCIWC030346

A 02805

7.    Legal services.

B.    If in the judgment of the Hold Separate Trustee, WorldCom fails to provide the services listed in VI.A to the satisfaction of the Hold Separate Trustee, upon notification to WorldCom and approval by the United States, the Hold Separate Trustee may engage third parties unaffiliated with the defendants to provide those services for the IBI business, provided, however, that WorldCom may satisfy itself that the IBI business is in compliance with all applicable laws, rules, and regulations.

C.    At the option of the Hold Separate Trustee, defendants may also provide other products and services, including but not limited to local access and backbone services, on an arms-length basis provided that IBI is not obligated to obtain any other service from defendants and may acquire such services from third parties unaffiliated with defendants.

## VII.    HOLD SEPARATE PROVISIONS

After this Modified Hold Separate Stipulation and Order is approved by the Court and until the divestiture required by the Final Judgment have been accomplished, except as otherwise approved in advance in writing by the United States:

A.    Defendants and the Hold Separate Trustee shall preserve, maintain, and continue to support the IBI business as an independent, ongoing, economically viable competitive business, with management, sales and operations of such assets held entirely separate, distinct and apart from those of defendants' other operations.  Within twenty (20) days after the entry of the Modified Hold Separate Stipulation and Order, defendants will inform the United States of the steps defendants have taken to comply with this Modified Hold Separate Stipulation and

11

MCIWC030347

A 02806

Order.

    B.      Defendants and the Hold Separate Trustee shall take all steps necessary to ensure that (1) the IBI business will be maintained and operated as independent, ongoing, economically viable and active competitors in the market for Internet backbone and access services; (2) management of the IBI business will not be influenced by Defendants; and (3) the books, records, competitively sensitive sales, marketing and pricing information, and decision-making concerning production, distribution or sales of products by or under any of the IBI business will be kept separate and apart from Defendants' other operations.

    C.      The Hold Separate Trustee and Defendants shall use all reasonable efforts to increase revenues, profitability, and the competitive viability of the IBI business.

    D.      Defendants shall provide sufficient working capital and lines and sources of credit as deemed necessary by the Hold Separate Trustee to continue to maintain the IBI business as economically viable and competitive ongoing business, consistent with the requirements of this Modified Hold Separate Stipulation and Order.

    E.      The Hold Separate Trustee, with the Defendants' cooperation consistent with this Modified Hold Separate Stipulation and Order and the Final Judgment, shall take all steps necessary to manage the IBI business in order to maximize its revenue, profitability, and the competitive viability so as to permit its expeditious divestiture in a matter consistent with the Final Judgment including, without limitation by maintaining and adhering to normal repair and maintenance schedules for the assets of the IBI business.

    F.      Defendants shall not, except 1) as recommended by the Hold Separate Trustee

12

MCIWC030348

A 02807

and approved by the United States, or 2) as part of a divestiture approved by the United States in accordance with the terms of the Final Judgment, remove, sell, lease, assign, transfer, pledge or otherwise dispose of any of the assets of the IBI business.

  G. The Hold Separate Trustee, with the Defendants' cooperation consistent with this Modified Hold Separate Stipulation and Order and the Final Judgment, shall maintain, in accordance with sound accounting principles, separate, accurate and complete financial ledgers, books and records that report on a periodic basis, such as the last business day of every month, consistent with past practices, the assets, liabilities, expenses, revenues and income of the IBI business.

  H. Defendants shall take no action that would jeopardize, delay, or impede the sale of the IBI business.

  I. Defendants shall take no action that would interfere with the ability of any trustee appointed pursuant to the Final Judgment to complete the divestitures pursuant to the Final Judgment to an Acquirer acceptable to the United States.

  L. Except for support services employees involved in providing services to the IBI business pursuant to subparagraph VI.A, defendants shall not permit any other of its employees, officers, or directors to be involved in the operations of the IBI business.

  M. Except as required by law in the course of 1) complying with this Modified Hold Separate Stipulation and Order or the Final Judgment; 2) overseeing compliance with policies and standards concerning the safety, health and environmental aspects of the operations of the IBI business and the integrity of the IBI business financial controls; 3) defending legal claims,

13

investigations or enforcement actions threatened or brought against the IBI business; or 4)

obtaining legal advice, defendants' employees (excluding support services employees involved in

providing support to the IBI business pursuant to subparagraph VI.A) shall not receive, or have

access to, or use or continue to use any material confidential information, not in the public

domain, of the IBI business. Defendants may receive aggregate financial information relating to

the IBI business to the extent necessary to allow defendants to prepare the defendants'

consolidated financial reports, tax returns, reports required by securities laws, and personnel

reports. Any such information that is obtained pursuant to this subparagraph shall be used only

for the purposes set forth in this subparagraph.

     N.    Defendants may offer a bonus or severance to employees included in the IBI

business that continue their employment with the IBI business until the divestiture (in addition to

any other bonus or severance to which the employees would otherwise be entitled).

14

MCIWC030350

A 02809

O.    This Modified Hold Separate Stipulation and Order shall remain in effect until

consummation of the divestiture required by the Final Judgment or until further order of the

Court.

Done and Ordered this 29th day of August, 2001 in Washington, D.C.

_United States District Judge_

Approved as to form and
    Substance:


Hillary Burchuk (DC Bar #366755)
J. Parker Erkmann, Trial Attorney
Telecommunications Task Force
Antitrust Division
United States Department of Justice
1401 H St. N.W.
Suite 8000
Washington, DC 20530
(202) 514-5621


Michael H. Salsbury (DC Bar #365888)
Executive Vice President & General Counsel WorldCom, Inc.
1133 19th Street, N.W.
Washington, DC 20036
(202) 736-6000


Deborah A. Garza (DC Bar #395295)
Fried Frank Harris Shriver & Jacobson
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004-2505
(202) 639-7270
Counsel for Intermedia Communications, Inc.

15

MCIWC030351

A 02810