STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Allison M. Murdock, Esq.
Jodi M. Hoss, Esq.
1201 Walnut Street
Kansas City, MO  64106
Telephone:  (816) 842-8600
Facsimile:  (816) 691-3495
Attorneys for Reorganized Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                                    :
                                                         :     Chapter 11 Case No. 02-13533 (AJG)
WORLDCOM, INC., et al.,                                  :
                                                         :     (Jointly Administered)
            Reorganized Debtors.                         :
-------------------------------------------------------x

# MOTION TO STRIKE PORTIONS OF AFFIDAVITS SUBMITTED IN SUPPORT OF CLAIMANT PARUS HOLDINGS, INC.'S RESPONSE AND OPPOSITION TO WORLDCOM'S MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56(e), Fed. R. Bankr. P. 7056 and Fed. R. Bankr. P. 9014, the above-captioned debtors ("Reorganized Debtors" or "WorldCom") respectfully request that the Court strike from the record of this case portions of the affidavits of Robert C. McConnell and Taj Reneau submitted in support of Claimant's Response and Opposition to Debtors' Motion for Summary Judgment.

**I.     Rule 56(e) Requirements.**

Pursuant to Rule 56(e), affidavits submitted either supporting or opposing a motion for summary judgment "shall be made on personal knowledge, shall set for such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  "[U]ltimate and conclusory facts and conclusions

**A 02811**

of law . . . cannot be utilized on a summary judgment motion." BellSouth Telecomms. Inc. v. W.R. Grace & Co., 77 F.3d 603, 615 (2d Cir. 1996). Affidavits stating the affiant's subjective intent should not be considered. In re Chateaugay Corp., 116 B.R. 887, 904 (S.D.N.Y. Bankr. 1990) (affidavits containing post hoc, self-serving statements of affiant's view of parties' intent held to be either inadmissible or not entitled to any weight). Moreover, the parol evidence rule prohibits extrinsic evidence to vary or contradict an agreement. Taylor v. State Farm Mut. Auto. Ins. Co., 854 P.2d 1134, 1138 (Ariz. 1993); see also In re Chateaugay Corp., 116 B.R. at 905 ("Where proof is to be made of a fact which is recorded in a writing, the best evidence of the contents of the writing consists of the document itself." (citation omitted)).

Portions of the affidavits of Robert C. McConnell and Taj Reneau contain impermissible characterizations of unambiguous contractual terms, misrepresentations of the underlying documents submitted by Parus Holdings, and post hoc, self-serving statements about the parties' subjective intent. These statements are inadmissible and should be stricken and disregarded.

**II.    The Inadmissible Portions of Robert C. McConnell's Affidavit Should Be Stricken.**

In his affidavit, Robert C. McConnell, General Counsel of Parus Holdings, mischaracterizes two letters that he sent on behalf of EffectNet, Inc. to Intermedia Communications, Inc. in March of 2002.[1] In Paragraphs 8 and 9, Mr. McConnell now states that he did not mean what he said in 2002 about termination of the UC Contract, and he draws the legal conclusion that the UC Contract was therefore not terminated. Specifically, Mr. McConnell states:

> 8.   I have read Debtors' summary judgment motion and, in particular, their claim that the March 12th and March 25th letters operated to terminate the UC Contract and somehow limited Debtors' obligations under the UC Contract to the amounts outstanding as of April 2002. This claim is

---

[1] The March 12 and 25, 2002 letters are attached as Exs. D and E to WorldCom's Motion for Summary Judgment (Docket No. 17402)

2

> frankly preposterous and ignores the words of the letters as well as the understanding and intentions of the parties
>
> 9.  My sole and clear intention in sending the letters was to receive payment of the invoices and provide notice of the breach in an effort to encourage Intermedia's cure and ultimate performance of its obligations under the UC Contract. I never intended to terminate the UC Contract nor limit Intermedia's obligations in any manner.

These statements are impermissible and inadmissible and should therefore be stricken. Mr. McConnell's ultimate conclusions of law are not proper support for opposing a summary judgment motion. BellSouth Telecomms. Inc., 77 F.3d at 615. Further, as noted above, Mr. McConnell is an executive employee of Parus Holdings, and his post hoc, self-serving statements regarding his subjective intent should not be considered. In re Chateaugay Corp, 116 B.R. at 905 (affidavits containing post hoc, self-serving statements of affiant's view of the parties' intent held to be either inadmissible or not entitled to any weight).

The March 12 and 25, 2002 letters have been submitted and are part of the record. "Where proof is to be made of a fact which is recorded in a writing, the best evidence of the contents of the writing consists of the document itself." Id. (citing 29 Am.Jur.2d *Evidence* § 448 (1967)). "The elementary wisdom of the best evidence rule rests on the fact that the document is a more reliable, complete and accurate source of information as to its contents and meaning than anyone's description." Id. (quoting Gordon v. United States, 344 U.S. 414, 421 (1953)). Accordingly, Paragraphs 8 and 9 of Mr. McConnell's affidavit should be stricken and disregarded.

### III.    The Inadmissible Portions of Taj Reneau's Affidavit Should Be Stricken.

Like Mr. McConnell, Taj Reneau's affidavit attempts to offer inadmissible statements; however, Mr. Reneau's statements relate to language in the UC Contract itself. Mr. Reneau impermissibly attempts to offer ultimate or conclusory facts and conclusions of law to contradict

and vary the terms of the contract, as well as self-serving, post hoc statements of the contracting parties' intent.  As stated above, ultimate or conclusory facts and conclusions of law cannot be utilized on a summary judgment motion.  BellSouth Telecomms., 77 F.3d at 615.  Moreover, the parol evidence rule prohibits extrinsic evidence to vary or contradict an agreement.  Taylor, 854 P.2d at 1138 (parol evidence rule prohibits extrinsic evidence to vary or contradict agreement); see also Readco, Inc. v Marine Midland Bank, 81 F.3d 295, 299 (2d Cir. 1996) (construction of contract is question of law and parol evidence is not admissible to create ambiguity) (citations omitted).  The UC Contract itself is a more reliable, complete and accurate source of information as to its contents and meaning than Mr. Reneau's description.  In re Chateaugay Corp, 116 B.R. at 905 (best evidence of content of writing is document itself) (citing Gordon, 344 U.S. at 421).  And, as stated in Reorganized Debtors' Memorandum and Reply briefs, "the plain language of the contract must control."  Memorandum at 14 and Reply at 16 (quoting Campisano v. Phillips, 547 P.2d 26, 30 (Ariz. Ct. App. 1993)).  Accordingly, the following statements should be stricken from the affidavit of Taj Reneau and disregarded:

1.      From Paragraphs 15 and 16, the following legal conclusions and post hoc statements of subjective intent should be stricken and disregarded:

> 15.     The only price negotiated as the 'base monthly price' was the 'Unlimited Service' rate of $27.40.  This is the price the parties intended to be used for the calculation of Minimum Commitment and Reconciliation Payment.  The "Basic Service' was included in Appendix P merely as an expedient service for those few end-users or customers that just wanted to try the UC Service on a temporary or initial basis.  Indeed, the parties intended to use the Basic Service only as an introductory low-price marketing option for customers who were primarily testing or trialing the service. . . .

> 16.     In addition, the statement 'base monthly price' was used by the parties and understood by them to mean the fixed monthly fee in contrast to the variable usage-based per minute pricing in the $ 27.40 'Unlimited Service' price plan.  Here 'base' served to distinguish between fixed

A 02814

monthly fees and variable usage based fees –a commonly understood distinction and phraseology in the telecommunications industry. The word 'base' never had anything to do with the term 'Basic' as applied to the Pricing, either 'Unlimited Service' or 'Basic Service,' for accounts between EffectNet and Intermedia.

3.  From Paragraphs 17, 44, 45, 46, 47, 48 and 49, the following legal conclusions should be stricken and disregarded:

> 17. Thus, the 'Unlimited Service' rate of $27.40 was to be the base monthly price used in calculating any Reconciliation Payment.
>
> 44. The total amount due EffectNet during the December 2001 billing cycle was $274,021.05.
>
> 45. The total amount due EffectNet during the January 2002 billing cycle was $274,066.20.
>
> 46. The total amount due EffectNet during the February 2002 billing cycle was $279,757.02.
>
> 47. Beginning with the March 2002 billing cycle, and for the 20 months thereafter- until expiration of the term of the UC Contract – the Volume Shortfall was 100,000 customers. . . . Therefore, the monthly amount due ($274,000.00) for the remainder of the term of the UC Contract, beginning in March 2002 (21 months), equals $5,754,000.00.
>
> 48. Intermedia's obligations under the UC Contract included at a minimum, the requirements under the "take or pay" provision" to meet 10,000 accounts annually.
>
> 49. Accordingly, simply applying the minimum 'take or pay' provisions of the UC Contract, the 'Reconciliation Payment" and EffectNet's direct damages are $6,307,844.27 ($5,754,000 + $827,844.27=$6,307,844.27) plus interest.

## CONCLUSION

For the above and foregoing reasons, Reorganized Debtors request that the Court strike and disregard each of the referenced statements which appear in the affidavits of Robert C. McConnell and Taj Reneau.

A 02815

                Respectfully submitted,

                STINSON MORRISON HECKER LLP

                By:   *s/Robert L. Driscoll*
                      Robert L. Driscoll, Esq.
                      Allison M. Murdock, Esq.
                      Jodi M. Hoss, Esq.
                      1201 Walnut Street, Suite 2900
                      Kansas City, MO  64106
                      (816) 842-8600 – Telephone
                      (816) 691-3495 – Facsimile

                ATTORNEYS FOR REORGANIZED DEBTORS

## **CERTIFICATE OF SERVICE**

     I hereby certify that on December 2, 2005, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all parties receiving electronic means.

                                      *s/Robert L. Driscoll*
                                    Attorney for Reorganized Debtors