KELLEY DRYE & WARREN LLP
John M. Callagy (JC 8166)
Robert S. Friedman (RF 1538)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897
Attorneys for Claimant Parus Holdings, Inc.
Successor-By-Merger to EffectNet, Inc. and
EffectNet, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| In re: | Case No. 02-13533 (AJG) |
|---|---|
| WORLDCOM, INC., *et al.*, | Chapter 11 |
| Debtors. | (Jointly Administered) |

### PARUS HOLDINGS, INC.'S RESPONSE AND OPPOSITION TO DEBTORS' MOTION TO STRIKE PORTIONS OF AFFIDAVITS SUBMITTED IN SUPPORT OF CLAIMANT PARUS HOLDINGS, INC.'S RESPONSE AND OPPOSITION TO WORLDCOM'S MOTION FOR SUMMARY JUDGMENT

Claimant Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC ("Claimant," "EffectNet" or "Parus"), by and through its attorneys, Kelley Drye & Warren LLP, submits this response and opposition to the above-captioned Debtors' Motion to Strike Portions of Affidavits Submitted in Support of Claimant Parus Holdings, Inc.'s Response and Opposition to WorldCom's Motion for Summary Judgment, dated December 2, 2005 ("Motion to Strike").

### PRELIMINARY STATEMENT

Debtors' Motion to Strike is based on the extraordinary premise that Parus should not be permitted to introduce testimonial evidence in response to Debtors' summary judgment motion, a premise completely contrary to the Federal Rules of Civil Procedure. Even more

incredible, Debtors made their summary judgment motion without the benefit of such evidence. Instead of producing evidence, Debtors have continued their efforts to misdirect the focus from the merits of Parus' claims. Debtors' Motion to Strike, like their summary judgment motion, is simply one more step in Debtors' strategy to delay and avoid discovery and adjudication of Parus' legitimate claims. This strategy should be summarily rejected.

I. **PARUS' AFFIDAVITS COMPLY WITH FED.R.CIV.P. 56(E) AND SHOULD BE CONSIDERED BY THE COURT IN OPPOSITION TO DEBTORS' SUMMARY JUDGMENT MOTION**

Federal Rule of Civil Procedure 56(e) states, in pertinent part,

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial…

Fed.R.Civ.P. 56(e). While conclusory legal allegations unsupported by fact are not considered, assertions of an affidavit supported by facts can be considered. *See* 11 JAMES WM. MOORE ET AL., ¶ 56.14[1][d] (3d ed. 1997); *cf. Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 922-923 (2d Cir. 1985). The Reneau and McConnell Affidavits[1] are based on the affiants' personal knowledge, and the affiants are competent to testify to the matters asserted and state facts as would be admissible at trial, in compliance with this Rule. (*See* Reneau Aff. ¶ 1; McConnell Aff. ¶ 1).

---

[1] The "Reneau Affidavit" refers to the Affidavit of Taj Reneau, sworn to November 18, 2005. The "McConnell Affidavit" refers to the Affidavit of Robert C. McConnell, sworn to November 18, 2005.

A 02827

II.  **THE AFFIDAVIT OF TAJ RENEAU**

A.  **The Reneau Affidavit Sets Forth Admissible Facts That the "Base Monthly Price" in the UC Contract Means The "Unlimited Service" Rate of $27.40**

Debtors argue, purportedly relying on the "plain language" of the UC Contract,[2] that "base monthly price" means the "Basic Service" rate of $11.45 and that rate should be used to calculate the Minimum Commitment Reconciliation Payment. *See* Debtors' Reply Memo at 16-17.[3] Unfortunately for Debtors, however, the term "base monthly price" is nowhere defined in the UC Contract. *See* Reneau Affidavit, Ex. F. Under Arizona law, not only is evidence admissible to explain undefined, ambiguous terms, but it is typically necessary. *See Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1138-39 (Ariz. 1993). As noted in *Taylor*, a case relied upon by Debtors, Arizona follows the Corbin view of contract interpretation, which requires the Court to examine "all of the proffered evidence to determine its relevance to the parties' intent and then appl[y] the parol evidence rule to exclude from the fact finder's consideration only the evidence that contradicts or varies the meaning of the agreement." *Taylor*, 854 P.2d at 1139. The *Taylor* Court warned against the hasty application of the term "unambiguous" to contract language:

> The meaning that appears plain and unambiguous on the first reading of a document may not appear nearly so plain once the judge considers the evidence. In such a case, the parol evidence rule is not violated because the evidence is not being offered to contradict or vary the meaning of the agreement. To the contrary, it is being offered to explain what the parties truly may have intended.

---

[2]  "UC Contract" refers to that certain Unified Communications Services General Agreement, dated as of November 20, 2000, between EffectNet and Intermedia Communications, Inc.

[3]  "Debtors' Reply Memo" refers to the Reply Memorandum in Support of WorldCom's Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC, dated December 2, 2005. "Debtors' Memo" refers to the Memorandum in Support of WorldCom's Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC, dated October 18, 2005.

3

A 02828

*Id.* at 1140.

Here, the undefined term requiring explanation - "base monthly price" - obviously necessitates evidence of the parties' intent and meaning. Thus, in responding to Debtors' summary judgment motion, Parus has done just that by providing testimonial evidence, based on personal knowledge, to explain the meaning of this undefined term. Debtors, on the other hand, fail to present any evidence to counter the Reneau Affidavit on this issue. *See* Debtors' Reply Memo at 16-17. It is now understandable why Debtors made this Motion to Strike: they cannot dispute Parus' evidence.

While Debtors correctly recite hornbook law that "the parol evidence rule prohibits extrinsic evidence to vary or contradict an agreement," (Motion to Strike at 4, citing *Taylor,* 854 P.2d at 1138), Debtors fail to point to a single statement in the Reneau Affidavit that varies or contradicts the terms of the UC Contract. Rather, the affidavit statements identified by Debtors are offered to interpret and explain non-existent and ambiguous terms of the UC Contract. (*See* Reneau Affidavit ¶¶ 15-17; Motion to Strike at 4-5). Such evidence does not violate the parol evidence rule. *See Taylor,* 854 P.2d at 1140, n. 2 ("the parol evidence rule does not apply to exclude evidence unless the evidence varies or contradicts the agreement"); *Christmas v. Turkin,* 716 P.2d 59, 61 (Ariz.App. 1986) (evidence did not violate parol evidence rule where it was offered "to explain the reason for wanting an installment sale").[4]

---

[4] In support of their Motion to Strike, Debtors cite a Second Circuit case applying New York law for the proposition that the construction of a contract is a question of law and parol evidence is not admissible to create an ambiguity. (*See* Motion to Strike at 4, citing *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 299 (2d Cir. 1996)). This case is inapplicable for two reasons. First, Parus has not offered the Reneau Affidavit evidence to "create" an ambiguity; indeed, the ambiguity exists already and Parus has offered the evidence to explain the parties' intent with respect to an undefined term. Second, the parol evidence rule is not a procedural rule of evidence subject to the forum jurisdiction's rules but a doctrine of substantive law; therefore, the law of Arizona applies. *See Ness v. Greater Arizona Realty, Inc.,* 572 P.2d 1195, 1200 (Ariz.App. 1977) ("The parol evidence rule is a doctrine of substantive law and not merely an exclusionary rule of evidence").

4

A 02829

Thus, under Arizona law, the Reneau Affidavit is admissible to explain the parties' intentions and determine whether the language of the UC Contract is "reasonably susceptible to more than one interpretation so that extrinsic evidence is admissible." *Taylor* at 1144-45.[5]

Accordingly, the Reneau Affidavit establishes – based on Mr. Reneau's personal involvement in the UC Contract negotiations (as well as the negotiations involving the Memorandum of Understanding and Interim Agreement, which are the predecessor agreements to the UC Contract) - the only price negotiated as the "base monthly price" was the "Unlimited Service" rate of $27.40 to calculate the Minimum Commitment Reconciliation Payment. (Reneau Aff. at ¶¶ 15-16). This evidence is undisputed by Debtors and not contradicted by any language of the UC Contract. *See* Reneau Aff., *supra*, at 4.

Finally, Debtors' argument that paragraphs 15 and 16 contain inadmissible "post hoc statements of subjective intent" is off-base. (*See* Motion to Strike at 4). As discussed, Mr. Reneau's explanation concerning the parties' intentions regarding "base monthly price" and "Unlimited Service" rate demonstrates (a) the ambiguity of the term "base" and (b) the reasonableness of Mr. Reneau's interpretation (Reneau Affidavit, ¶¶ 15-16), which is relevant on a summary judgment motion—and thus admissible—since the presence of an ambiguity creates a question of fact. *Cf. Taylor*, 854 P.2d at 1140 ("The better rule is that the judge first considers the offered evidence and, if he or she finds that the contract language is 'reasonably susceptible'

---

[5] *Campisano v. Phillips*, 547 P.2d 26, 30 (Ariz.App. 1976), cited by Debtors in Debtors' Memo at 14 and Debtors' Reply Memo at 16 and referred to in their Motion to Strike at 4, for the proposition that "the plain language of the contract must control," actually says nothing about the admissibility of extrinsic evidence. *Id.* Significantly, *Campisano v. Phillips* was decided March 23, 1976, not in 1993 as indicated by Debtors in their Motion to Strike at 4: to the extent *Campisano* indicates that extrinsic evidence should not be admitted to demonstrate the existence of an ambiguity, it has been superceded by subsequent decisions. *See Smith v. Melson, Inc.*, 659 P.2d 1264 (Ariz. 1983); *See Taylor*, 854 P.2d at 1139-40.

A 02830

to the interpretation asserted by its proponent, the evidence is admissible to determine the meaning intended by the parties"). Mr. Reneau's unchallenged explanation is supported with objective facts based on his personal knowledge and involvement at the time (Reneau Affidavit at ¶¶ 15-16); thus, it is admissible. *See* Fed.R.Civ.P. 56(e). A genuine issue of material fact therefore exists and Debtors' motion for summary judgment should be denied.

    **B.**    **The Challenged Portions of ¶¶ 17 and 44-49 of the Reneau Affidavit Are Supported by Specific Facts**

Paragraphs 17 and 44-49 of the Reneau Affidavit, challenged by Debtors as inadmissible "legal conclusions," consist entirely of statements that explain Mr. Reneau's interpretation of the language of the UC Contract, which also is supported by documentary evidence and Mr. Reneau's objective statements of fact. For example, Debtors argue that the following sentence in Paragraph 44 of the Reneau Affidavit is inadmissible: "The total amount due EffectNet during the December 2001 billing cycle was $274,021.05." (Motion to Strike at 5). However, this sentence does not exist in a vacuum: it is supported by explanations of the negotiations of the "base monthly price" (Reneau Affidavit at ¶ 15), the purpose of the "Basic Service" (*id.*), the common industry usage of the term "base" (*id.* at ¶ 16), the widespread use of "take or pay" provisions (*id.* at ¶ 18), Intermedia's failure to make payments (*id.* at ¶ 30), the rates applicable to most customers (*id.* at ¶¶ 39 and 43), and the Volume Shortfall in December 2001 (*id.* at ¶ 44), as well as documentary evidence. (Exs. F, Appendix P, and CC to the Reneau Affidavit). Likewise, paragraphs 45-49 are similarly supported by documentary evidence and objective facts contained either in the same paragraphs or earlier paragraphs of the Affidavit. (*See, e.g., id.*; *see also* ¶¶ 31-32, and Exs. F, CC, DD, EE to the Reneau Affidavit). Thus, these explanations and documentary evidence contained in the Reneau Affidavit are admissible and *do* raise a triable issue of fact. *See Taylor*, 854 P.2d at 1139 (Arizona permits the introduction of

extrinsic evidence to "explain" the parties' intentions). Moreover, affidavit evidence of the calculations and losses suffered by the Plaintiff (Reneau Aff., ¶¶ 44-49) is admissible where the affiant has personal knowledge. *See, e.g., F:A.J. Kikson v. Underwriters Laboratories,* No. 02 C 8265, 2005 WL 736651 (N.D. Ill. March 31, 2005).[6]

### III.    THE AFFIDAVIT OF ROBERT C. McCONNELL

Debtors' Motion to Strike also makes the tenuous argument that an individual cannot introduce evidence to explain **his own letters.** Not surprisingly, Debtors offer no authority for this argument. Each of the cases cited on this point relate to a parties' intentions interpreting a contract, not a letter. (*See* Motion to Strike at 3). Debtors' argument on summary judgment - that they are relieved of their clear contractual obligation because of Parus' alleged termination of the UC Contract – is based on language Debtors mischaracterize from the March 2002 Letters.[7] (*See* Debtors' Memo at 15-16; Debtors' Reply Memo at 10-12; *see also* Exs. A and B to McConnell Aff.). Indeed, Debtors have selected a single passage of the March 2002 Letters and use it completely out of context. (*Id.*)

To rebut such mischaracterizations, the McConnell Affidavit identifies and highlights specific language of the March 2002 Letters ignored by Debtors. Mr. McConnell further establishes in his affidavit that his sole and clear intention in sending the March 2002 Letters was to receive payment, provide notice of Intermedia's failures, and encourage Intermedia's cure and performance of its obligations under the UC Contract, but not to terminate

---

[6]    To the extent Mr. Reneau's statements could be construed as his interpretation or opinion concerning the negotiations between the parties as to what was intended by the price terms of the UC Contract and the resulting calculations based on the price terms, his testimony would be admissible at trial even on that basis. *See* Fed.R.Evid. 701 (an opinion is admissible if it is rationally based on the witness's own perceptions and helpful to a clear understanding of the witness's testimony).

[7]    "March 2002 Letters" refer collectively to the March 12, 2002 letter from Robert C. McConnell to Mr. Rich Black and the March 25, 2002 letter from Robert C. McConnell to Mr. Brett Bacon, annexed to the McConnell Affidavit as exhibits A and B, respectively.

A 02832

the UC Contract. (McConnell Aff. ¶ 9, Exs. A and B). Under these circumstances, there is clearly no basis to exclude any portion of the McConnell Affidavit. In addition, the McConnell Affidavit, which is actually entirely un-rebutted, shows that WorldCom's agent expressed his understanding that the March 2002 Letters did *not* terminate the UC Contract. (*See* McConnell Aff. ¶ 10).

Debtors' reliance on *BellSouth Telecommunications, Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) for the proposition that "ultimate conclusions of law are not proper support for opposing a summary judgment motion" is misplaced. (Motion to Strike at 3). In *BellSouth*, after extensive discovery had taken place in the case, the executive's affidavits disclaiming knowledge of required lead abatement was discounted in the face of conclusive evidence including several non-party reports and memoranda indicating "that BellSouth was unquestionably aware of the essential elements of its cause of action." *BellSouth*, 77 F.3d at 615.

In the present case, however, essentially no discovery has occurred, including the deposition of Mr. McConnell or any other witness, and the March 2002 Letters, are at most ambiguous on the issue of termination, especially considering the language they ignore. (*See* McConnell Aff., ¶¶ 8-9, Exs. A and B). Debtors' ignorance of the most important provisions of the March 2002 Letters is telling. For example, both letters demanded immediate payment for the past due amount and state, in pertinent part, "EffectNet ... hereby gives Intermedia written notice that EffectNet **may** (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice ..." (Exs. A and B to McConnell Aff.)(emphasis added). In addition, both letters state, "[i]f Intermedia fails to cure the Intermedia Defaults and **if EffectNet terminates** the Agreement as aforesaid, EffectNet **may** claim damages for all amounts due pursuant to the Agreement. . ." (*Id.*) (emphasis added). The very fact that the

March 2002 Letters use the words "if" and "may" show they are preliminary and conditional and not termination letters, as confirmed by Mr. McConnell's unchallenged evidence. (McConnell Affidavit ¶¶ 8-10).

Moreover, the March 2002 Letters state, in pertinent part, "Nothing in this letter is intended to be a waiver or release of any rights or remedies, or an election thereof, that EffectNet has under the Agreements or applicable law, and all such rights and remedies are hereby expressly reserved in their entirety." (*See* Exs. A and B to McConnell Aff.) Notwithstanding EffectNet's demands and some preliminary discussions with Debtors to try to resolve the issues, the outstanding amounts were never paid.

Instead of introducing their own evidence on this issue, Debtors purport to rely on the "plain language" of the documents to support their argument that there is no ambiguity (*see, e.g.,* Motion to Strike at 3) and completely fail to inform the Court of the other above-quoted language. The McConnell Affidavit highlights the language which Debtors fail to identify, clarifies any ambiguity about McConnell's intentions in writing the March 2002 Letters and clearly sets forth the parties' understanding of the meaning of the letters. (*See* McConnell Aff. ¶¶ 8-10).[8] Under Arizona law, the court is permitted to consider such evidence to explain the

---

[8] Debtors cite *In re Chateaugay Corporation*, 116 B.R. 887, 905 (S.D.N.Y. Bankr. 1990), to argue further that paragraphs 8 and 9 of the McConnell Affidavit are "either inadmissible or not entitled to any weight." (Motion to Strike at 3). However, the Court in that case was applying Pennsylvania law interpreting surety bonds and referring to the specific affidavits before it, which "[g]enerally speaking . . . contain[ed] post hoc, self-serving statements," about the surety bonds with little else to support those statements. *Id.* Here, by Debtors' own admission, only two paragraphs in the McConnell Affidavit are disputed. (*See* Motion to Strike at 2-3; McConnell Aff. ¶¶ 8-9). Those two paragraphs are supported fully by Mr. McConnell's personal knowledge and the background facts set forth in the preceding seven paragraphs, as well as the evidence set forth in the last paragraph. (McConnell Aff. ¶¶ 1-7, 10). None of the statements in the McConnell Affidavit contradict the March 2002 Letters and, indeed, the McConnell Affidavit highlights the specific language of the March 2002 Letters to demonstrate Debtors' mischaracterization of the contents and meaning of the two letters.

A 02834

parties' intentions. (*See* McConnell Aff., *supra*, at 3-5); *Taylor*, 854 P.2d at 1140, n. 2. Accordingly, Debtors' spurious motion should be denied and the McConnell Affidavit admitted.

**WHEREFORE,** Parus respectfully requests that this Court enter an order denying Debtor's Motion to Strike and granting such other and further relief as this court deems just and proper.

Dated: New York, New York  
       January 11, 2006

Respectfully submitted,

**KELLEY DRYE & WARREN LLP**

By:   /s/ Robert S. Friedman_____  
     John M. Callagy (JC 8166)  
     Robert S. Friedman (RF 1538)

     101 Park Avenue  
     New York, New York 10178  
     T: (212) 808-7800  
     F: (212) 808-7897

     Attorneys for Claimant  
     Parus Holdings, Inc., Successor-By-Merger  
     to EffectNet, Inc. and EffectNet, LLC

KELLEY DRYE & WARREN LLP
John M. Callagy (JC 8166)
Robert S. Friedman (RF 1538)
101 Park Avenue
New York, New York 10178
Tel: (212) 808-7800
Fax: (212) 808-7897

Attorneys for Parus Holdings, Inc.,
Successor-by-Merger to EffectNet, Inc. and EffectNet, LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| **In re:** | |
|---|---|
| WORLDCOM, INC., et al.<br><br>Debtors. | **Chapter 11 Case No.**<br>**02-13533 (AJG)**<br><br>**(Jointly Administered)** |

## CERTIFICATE OF SERVICE

  I hereby certify that on January 11, 2006, I electronically filed the foregoing with the Clerk of the Bankruptcy Court using the CM/ECF system which sent notification of such filing to all parties receiving electronic means.

                       */s/ Robert S. Friedman*
                        Robert S. Friedman

NY01/FELDR/1076262.1

A 02836