**Request No. 71:**      Admit that MCI's 78 Back Up Tapes do not include information from MCI's file servers, back up servers, or individual employees' hard drives.

RESPONSE:  Denied.

**Request No. 72:**      Admit that Intermedia's 29 Back Up Tapes do not include information from MCI's file servers, back up servers, or individual employees' hard drives.

RESPONSE:  Admitted.

**Request No. 73:**      Admit that MCI did not archive or otherwise copy any of the emails that were processed through its email servers.

RESPONSE:  Denied.

**Request No. 74:**      Admit that Intermedia did not archive or otherwise copy any of the emails that were processed through its email servers.

RESPONSE:  Denied.

**Request No. 75:**      Admit that MCI did not create back up tapes for any of MCI's archived or copied emails.

RESPONSE:  Denied.

**Request No. 76:**      Admit that Intermedia did not create back up tapes for any of Intermedia's archived or copied emails.

RESPONSE:  Denied.

**Request No. 77:**      Admit that MCI's 78 Back Up Tapes are the only back up tapes MCI has that contain information relevant to the Claimant's Claim.

RESPONSE:  Denied.

**Request No. 78:**      Admit that Intermedia's 29 Back Up Tapes are the only back up tapes Intermedia has that contain information relevant to the Claimant's Claim.

RESPONSE:  Denied.

**Request No. 79:**      Admit that 8 of MCI's 78 Back Up Tapes have been restored by Kroll Ontrack.

18

A 03540

RESPONSE:  Denied.

**Request No. 80:**    **Admit that none of Intermedia's 29 Back Up Tapes has been restored by Kroll Ontrack or any other Person.**

RESPONSE:  Based upon the definition of "29 Back Up Tapes" in Claimant's Second Request for the Production of Documents, Debtors admit Request No. 80.

**Request No. 81:**    **Admit that Knoll [sic] Ontrack is unable to restore Intermedia's 29 Back Up Tapes.**

RESPONSE:  Based upon the definition of "29 Back Up Tapes" in Claimant's Second Request for the Production of Documents, Debtors admit Request No. 81, but deny that other document specialists retained by Kroll Ontrack are unable to restore the 29 back up tapes that are the subject of this request.

**Request No. 82:**    **Admit that the Debtors have not obtained quotes or estimates of the cost to restore Intermedia's 29 Back Up Tapes.**

RESPONSE:  Denied.

**Request No. 83:**    **Admit that the Debtors have not obtained quotes or estimates of the cost to restore the 71 of MCI's 78 Back Up Tapes that have not been restored.**

RESPONSE:  Denied.

**Request No. 84:**    **Admit that the Debtors do not know what steps are required to restore Intermedia's 29 Back Up Tapes.**

RESPONSE:  Denied.

**Request No. 85:**    **Admit that 71 of MCI's 78 Back Up Tapes have not been restored.**

RESPONSE:  As detailed in correspondence to counsel for Parus Holdings, none of MCI's back up tapes has been restored.  Consistent with the legal precedent, the tapes are being held pending resolution of Debtors' cost shifting motion.  Accordingly, Debtors admit Request No. 85.

**Request No. 86:**    **Admit that 71 of MCI's 78 Back Up Tapes are inaccessible or unreadable in their present form.**

DB02/048629 0094_0019/7336339.5

A 03541

RESPONSE:   Debtors admit that MCI's back up tapes are inaccessible and unreadable in their present form and must be restored in order to access and read the information contained on them.

**Request No. 87:**     **Admit that none of Intermedia's 29 Back Up Tapes has been restored.**

RESPONSE:   Based upon the definition of "29 Back Up Tapes" in Claimant's Second Request for the Production of Documents, Debtors admit Request No. 87, but deny any inference that there are only 29 Intermedia back up tapes, that all "29 Back Up Tapes" fall within the relevant time, or that none of Intermedia's other back up tapes has been restored. Consistent with the legal precedent, the "29 Back Up Tapes" are being held pending resolution of Debtors' cost shifting motion.

**Request No. 88:**     **Admit that all 29 of Intermedia's 29 Back Up Tapes are inaccessible or unreadable in their present form.**

RESPONSE:   Debtors deny that there are only 29 Intermedia back up tapes and admit that all of Intermedia's back up tapes (except those that have already been restored for purposes of cost shifting) are inaccessible and unreadable in their present form and must be restored in order to access and read the information contained on them.

**Request No. 89:**     **Admit that only 8 of the MCI's 78 Back Up Tapes have been searched or reviewed by the Debtors' for Documents responsive to the Claimant's Discovery Requests.**

RESPONSE:   Debtors deny Request No. 89. As detailed in correspondence with the Court and counsel for Parus Holdings, nine Intermedia back up tapes (not eight MCI back up tapes) were restored and searched for purposes of Debtors' cost shifting motion. Debtors produced the small percentage of responsive documents located on the nine tapes that were restored, searched, and reviewed.

**Request No. 90:**     **Admit that none of Intermedia's 29 Back Up Tapes has been searched or reviewed for Documents responsive to the Claimant's Discovery Requests.**

RESPONSE:   Based upon Parus Holdings' definition of the phrase "29 Back Up Tapes," Debtors admit Request No. 90, but deny any inference that there are only 29 Intermedia back up tapes, that all "29 Back Up Tapes" fall within the relevant time, or that none of Intermedia's back up tapes has been restored, searched, or reviewed. Consistent with the legal precedent, the "29 Back Up Tapes" are being held pending resolution of Debtors' cost shifting motion.

DB02/048629 0094_0019/7336339.5

A 03542

**Request No. 91:**    **Admit that MCI does not have indices for all of the Hard Copy Documents that are responsive to the Claimant's Discovery Requests.**

        RESPONSE:    Debtors provided indices with the production of their responsive hard copy documents and, therefore, deny Request No. 91.

**Request No. 92:**    **Admit that Intermedia does not have indices for all of the Hard Copy Documents that are responsive to the Claimant's Discovery Requests.**

        RESPONSE:    Debtors provided indices with the production of their responsive hard copy documents and, therefore, deny Request No. 92.

**Request No. 93:**    **Admit that MCI does not have indices for all of the electronic Documents that are stored on MCI's 78 Back Up Tapes.**

        RESPONSE:    Debtors state that the "78 Back Up Tapes" are being held pending their cost shifting motion and, therefore, have not been indexed to reflect all electronic documents stored on those tapes.  Accordingly, Debtors admit Request No. 93.

**Request No. 94:**    **Admit that Intermedia does not have indices for all of the electronic Documents that are stored on Intermedia's 29 Back Up Tapes.**

        RESPONSE:    Debtors state that the "29 Back Up Tapes" are being held pending their cost shifting motion and, therefore, have not been indexed to reflect all electronic documents stored on those tapes.  Accordingly, Debtors admit Request No. 94.

**Request No. 95:**    **Admit that MCI has not reviewed or searched all Hard Copy Documents that exist that are responsive to the Claimant's Claim.**

        RESPONSE:    Debtors object to Request No. 95 on the grounds that it is ambiguous and nonsensical because documents are "responsive" to document requests not claims.  Debtors further object to the extent that Request No. 95 presumes an obligation different from that imposed under the applicable rules of procedure.  Subject to their objections, Debtors deny Request No. 95.

**Request No. 96:**    **Admit that MCI has not reviewed or searched all Hard Copy Documents that exist that are responsive to the Claimant's Claim.**

        RESPONSE:    Debtors object to Request No. 96 on the grounds that it is ambiguous and nonsensical because documents are "responsive" to document requests not claims.  Debtors further object to the extent that Request No. 95 presumes

A 03543

an obligation different from that imposed under the applicable rules of procedure. Subject to their objections, Debtors deny Request No. 96.

**Request No. 97:    Admit that MCI does not know the location of all electronic Documents that are responsive to the Claimant's Claim.**

RESPONSE:  Debtors object to Request No. 97 on the grounds that it is ambiguous and nonsensical because documents are "responsive" to document requests not claims. Subject to their objection, Debtors deny Request No. 97.

**Request No. 98:    Admit that Intermedia does not know the location of all electronic Documents that are responsive to the Claimant's Claim.**

RESPONSE:  Debtors object to Request No. 98 on the grounds that it is ambiguous and nonsensical because documents are "responsive" to document requests not claims. Subject to their objection, Debtors deny Request No. 98.

**Request No. 99:    Admit that MCI does not know the location of all Hard Copy Documents that are responsive to the Claimant's Claim.**

RESPONSE:  Debtors object to Request No. 99 on the grounds that it is ambiguous and nonsensical because documents are "responsive" to document requests not claims. Subject to their objection, Debtors deny Request No. 99.

**Request No. 100:    Admit that Intermedia does not know the location of all Hard Copy Documents that are responsive to the Claimant's Claim.**

RESPONSE:  Debtors object to Request No. 100 on the grounds that it is ambiguous and nonsensical because documents are "responsive" to document requests not claims. Subject to their objection, Debtors deny Request No. 100.

**Request No. 101:    Admit that MCI did not image any hard drives (whether on servers or individual computers) in connection with the Claimant.**

RESPONSE:  Debtors object to this request because it is vague, ambiguous and nonsensical, overbroad, seeks an admission of facts that are neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence, and improperly attempts to impose or assume a legal obligation to image hard drives "in connection with the Claimant" when no such obligation existed. Subject to their objections, Debtors deny Request No. 101.

22

A 03544

**Request No. 102:      Admit that Intermedia did not image any hard drives (whether on servers or individual computers) in connection with the Claimant.**

RESPONSE:  Debtors object to this request because it is vague, ambiguous and nonsensical, overbroad, seeks an admission of facts that are neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence, and improperly attempts to impose or assume a legal obligation to image hard drives "in connection with the Claimant" when no such obligation existed.  Subject to their objections, Debtors deny Request No. 102.

**Request No. 103:      Admit that Kroll Ontrack did not cleanse or redact any of the back up tapes it restored in connection with the Litigation.**

RESPONSE:  Debtors object to Request No. 103 because they do not understand it. Kroll did not erase or delete the backup tapes, if that is what Debtors intend to ask.

**Request No. 104:      Admit that Kroll Ontrack has not altered in any way any of the 78 Back Up Tapes.**

RESPONSE:  Admitted.

**Request No. 105:      Admit that Kroll Ontrack has not altered in any way any of the 29 Back Up Tapes.**

RESPONSE:  Admitted.

**Request No. 106:      Admit that Documents exist in which MCI and Intermedia discussed the treatment or possible treatment of the UC Agreement in connection with the MCI/Intermedia Merger.**

RESPONSE:  Debtors object to Request No. 106 because it is vague and ambiguous. Subject to their objections, Debtors deny Request No. 106.

**Request No. 107:      Admit that as part of the discussions regarding the MCI/Intermedia Merger, MCI and Intermedia discussed the UC Agreement.**

RESPONSE:  Debtors object to Request No. 107 because it is vague and ambiguous. Subject to their objections, Debtors deny Request No. 107.

**Request No. 108:      Admit that as part of the discussions regarding the MCI/Intermedia Merger, MCI and Intermedia discussed the Master License Agreement.**

DB02/048629 0094_0019/7336339.5

A 03545

RESPONSE:   Debtors object to Request No. 108 because it is vague and ambiguous. Subject to their objections, Debtors deny Request No. 108.

**Request No. 109:    Admit in or before August 2001, MCI prepared Documents or engaged in Communications regarding Webley's financial health.**

RESPONSE:   Debtors object to Request No. 109 because it is vague and ambiguous. Subject to their objections, Debtors state that Paragraph 18.16 of the Master License Agreement provides for the exercise of certain rights following the bankruptcy of Webley.  Accordingly, Debtors admit Request No. 109.

**Request No. 110:    Admit in or before August 2001, Intermedia prepared Documents or engaged in Communications regarding EffectNet's financial health.**

RESPONSE:   Based upon information presently available, Debtors deny Request No. 110.

**Request No. 111:    Admit that prior to the execution of the Mater [sic] License Agreement, MCI and Intermedia discussed the financial health of Webley.**

RESPONSE:   Based upon information presently available, Debtors deny Request No. 111.

**Request No. 112:    Admit that prior to the Master License Agreement, MCI and Intermedia discussed the financial health of EffectNet.**

RESPONSE:   Based upon information presently available, Debtors deny Request No. 112.

**Request No. 113:    Admit that in or before August 2001, MCI believed or suspected that it was possible that Webley would file for bankruptcy.**

RESPONSE:   Paragraph 18.16 of the Master License Agreement provides for the exercise of certain rights following the bankruptcy of Webley. Accordingly, Debtors admit Request No. 113.

**Request No. 114:    Admit that in or before August 2001, MCI believed or suspected that it was possible that EffectNet would file for bankruptcy.**

RESPONSE:   Based upon the discovery completed to date, Debtors deny Request No. 114.

24

A 03546

**Request No. 115:**    Admit that one reason that MCI entered into the Master License Agreement with Webley is that MCI believed that it was possible that Webley would file for bankruptcy on a date after the execution of the Master License Agreement.

RESPONSE:  Denied.

**Request No. 116:**    Admit that when MCI executed the Master License Agreement, MCI knew that Intermedia did not intend to perform under the UC Agreement.

RESPONSE:  Denied.

**Request No. 117:**    Admit that as of the date of the MCI/Intermedia Merger, MCI never intended for Intermedia to perform under the UC Agreement.

RESPONSE:  Denied.

**Request No. 118:**    Admit that as of the date of the MCI/Intermedia Merger, MCI intended to terminate the sales of the Intermedia*One* Products.

RESPONSE:  Denied.

**Request No. 119:**    Admit that as of the date of the MCI/Intermedia Merger, MCI intended for the GenD Products to replace the Intermedia*One* Products.

RESPONSE:  Denied.

**Request No. 120:**    Admit that prior to the date of the MCI/Intermedia Merger, MCI and Intermedia discussed whether the Intermedia*One* Products would continue to be sold and/or offered.

RESPONSE:  Denied.

**Request No. 121:**    Admit that prior to the date of the MCI/Intermedia Merger, MCI and Intermedia discussed whether the Intermedia*One* Products would be replaced or superseded by the GenD Products.

RESPONSE:  Denied.

**Request No. 122:**    Admit that Intermedia never sold the Intermedia*One* Products to anyone other than Intermedia's own employees.

RESPONSE:  Denied.

25

A 03547

**Request No. 123:** **Admit that in or prior to November 20, 2001, MCI and Intermedia agreed that the Intermedia*One* Products would be discontinued and/or terminated.**

      RESPONSE: Denied.

**Request No. 124:** **Admit that in or prior to May of 2001, MCI and Intermedia agreed that the Intermedia*One* Products would be discontinued and/or terminated.**

      RESPONSE: Denied.

**Request No. 125:** **Admit that MCI received confidential information from WorldCom Ventures, Inc. regarding Webley pursuant to a Confidential Private Placement Memorandum distributed by Webley through Salomon Smith Barney.**

      RESPONSE: Debtors object to this request because it seeks an admission concerning facts that are neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. Debtors also object to Request No. 125 as vague, circular, and meaningless because "MCI" by definition includes "WorldCom Ventures, Inc." Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 125.

**Request No. 126:** **Admit that Intermedia received confidential information from WorldCom Ventures, Inc. regarding Webley pursuant to a Confidential Private Placement Memorandum distributed by Webley through Salomon Smith Barney.**

      RESPONSE: Debtors object to this request because it is vague as to time and because it seeks an admission concerning facts that are neither relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 126.

**Request No. 127:** **Admit that MCI received confidential information from WorldCom Ventures, Inc. regarding EffectNet pursuant to a Confidential Private Placement Memorandum distributed by Webley through Salomon Smith Barney.**

      RESPONSE: Debtors object to Request No. 127 as vague, circular and meaningless because "MCI" by definition includes "WorldCom Ventures, Inc." Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 127.

DB02/048629 0094_0019/7336339.5

A 03548

**Request No. 128:      Admit that Intermedia received confidential information from WorldCom Ventures, Inc. regarding EffectNet pursuant to a Confidential Private Placement Memorandum distributed by Webley through Salomon Smith Barney.**

RESPONSE:  Based upon the discovery completed to date, Debtors deny Request No. 128.

**Request No. 129:      Admit that as of March 2001, MCI was engaged in negotiations with Webley regarding the Master License Agreement.**

RESPONSE:  Admitted.

**Request No. 130:      Admit that as of April 2001, Webley had made certain disclosures regarding itself as well as EffectNet to MCI in connection with due diligence conducted by MCI in connection with the negotiation of the Master License Agreement.**

RESPONSE:  Debtors object to Request No. 130 because the phrase "certain disclosures" is undefined and ambiguous.  Subject to their objections, Debtors deny Request No. 130 because Debtors do not know to what disclosures Claimant is referring in this request.

**Request No. 131:      Admit that the disclosures identified in Request No. 130 included information about the UC Agreement.**

RESPONSE:  Debtors object to Request No. 131 because the "disclosures" referenced are undefined and ambiguous.  Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 131.

**Request No. 132:      Admit that MCI obtained confidential information about EffectNet as part of its due diligence in connection with the negotiation of the Master License Agreement.**

RESPONSE:  Debtors object to Request No. 132 because it is vague and ambiguous.  Subject to their objections and based upon the discovery completed to date, Debtors deny Request No.132.

**Request No. 133:      Admit that MCI obtained confidential information about Webley as part of its due diligence in connection with the negotiation of the Master License Agreement.**

RESPONSE:  Debtors object to Request No. 133 because it is vague and ambiguous.  Subject to their objections and based upon the discovery complete to date, Debtors admit Request No. 133.

DB02/048629 0094_0019/7336339.5

A 03549

**Request No. 134:**    **Admit that Intermedia formed committees and/or sub-committees to discuss the impact of the MCI/Intermedia Merger on Intermedia.**

    RESPONSE:    Debtors object to this request because it seeks an admission concerning facts that are not relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. Debtors also object because the request is vague and ambiguous. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 134.

**Request No. 135:**    **Admit that the committees and/or sub-committees identified in Request No. 134 discussed the UC Agreement.**

    RESPONSE:    Debtors object to Request No. 135 because the request is vague and ambiguous. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 135.

**Request No. 136:**    **Admit that the committees and/or sub-committees identified in Request No. 134 prepared and/or disseminated Documents (including, but not limited to, reports, studies, summaries, and/or presentations) describing or discussing the impact of the MCI/Intermedia Merger on the Intermedia*One* Products.**

    RESPONSE:    Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. Debtors also object because this request is vague and ambiguous. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 136.

**Request No. 137:**    **Admit that the committees and/or sub-committees identified in Request No. 134 prepared and/or disseminated Documents (including, but not limited to, reports, studies, summaries, and/or presentations) describing or discussing the impact of the MCI/Intermedia Merger on the UC Agreement.**

    RESPONSE:    Debtors object to Request No. 137 because the request is vague and ambiguous. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 137.

**Request No. 138:**    **Admit that MCI formed committees and/or sub-committees to discuss the impact of the MCI/Intermedia Merger on MCI.**

    RESPONSE:    Debtors object to this request because it seeks an admission concerning facts that are not relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence.

DB02/048629 0094_0019/7336339.5

A 03550

Debtors also object because this request is vague and ambiguous. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 138.

**Request No. 139:    Admit that the committees and/or sub-committees identified in Request No. 138 discussed the UC Agreement.**

RESPONSE:    Debtors object to Request No. 139 because the request is vague and ambiguous. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 139.

**Request No. 140:    Admit that the committees and/or sub-committees identified in Request No. 138 prepared and/or disseminated Documents (including, but not limited to, reports, studies, summaries, and/or presentations) describing or discussing the impact of the MCI/Intermedia Merger on the Intermedia*One* Products.**

RESPONSE:    Debtors object to this request because it is vague, ambiguous, overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of the parties nor reasonably calculated to lead to the discovery of admissible evidence. Subject to their objections and based upon information available at this time, Debtors deny Request No. 140.

**Request No. 141:    Admit that the committees and/or sub-committees identified in Request No. 138 prepared and/or disseminated Documents (including, but not limited to, reports, studies, summaries, and/or presentations) describing or discussing the impact of the MCI/Intermedia Merger on the UC Agreement.**

RESPONSE:    Debtors object to Request No. 141 because it is vague and ambiguous. Subject to their objections and based upon the discovery completed to date, Debtors deny Request No. 141.

**Request No. 142:    Admit that Intermedia prepared or created or caused to be prepared or created Documents regarding the expected number of subscribers of the Intermedia*One* Products prior to entering into the UC Agreement.**

RESPONSE:    Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action. Subject to their objections, Debtors admit Request No. 142, but deny any inference that the range of Intermedia*One* Products can be equated with the unified messaging service contemplated under the UC Agreement.

DB02/048629 0094_0019/7336339.5

A 03551

**Request No. 143:    Admit that Intermedia prepared or created or caused to be prepared or created Documents regarding the expected number of subscribers of the Intermedia*One* Products after entering into the UC Agreement.**

>    RESPONSE:    Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action.  Subject to their objections, Debtors admit Request No. 143, but deny any inference that the range of Intermedia*One* Products can be equated with the unified messaging service contemplated under the UC Agreement.

**Request No. 144:    Admit that Intermedia prepared or created or caused to be prepared or created Documents regarding the expected monthly fees of subscribers of the Intermedia*One* Products prior to entering into the UC Agreement.**

>    RESPONSE:    Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action.  Subject to their objections, Debtors admit Request No. 144, but deny any inference that the range of Intermedia*One* Products can be equated with the unified messaging service contemplated under the UC Agreement.

**Request No. 145:    Admit that Intermedia prepared or created or caused to be prepared or created Documents regarding the expected monthly fees of subscribers of the Intermedia*One* Products after entering into the UC Agreement.**

>    RESPONSE:    Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action.  Subject to their objections, Debtors admit Request No. 145, but deny any inference that the range of Intermedia*One* Products can be equated with the unified messaging service contemplated under the UC Agreement.

**Request No. 146:    Admit that Intermedia believed that that the Intermedia*One* Products would achieve at least 100,000 account subscribers.**

>    RESPONSE:    Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action.  Subject to their objections, Debtors deny Request No. 146.

**Request No. 147:    Admit that Documents exist that projected or forecasted that the Intermedia*One* Products would achieve at least 100,000 account subscribers.**

DB02/048629 0094_0019/7336339.5

RESPONSE: Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action. Subject to their objections, Debtors deny Request No. 147.

**Request No. 148:**    **Admit that at the time of the execution of the UC Agreement, Intermedia had a sales force of approximately 700 people in 20 different markets.**

RESPONSE: Admitted.

**Request No. 149:**    **Admit that Intermedia intended that the sales force identified in Request No. 148 would implement a national rollout of the Intermedia*One* Products within the United States.**

RESPONSE: Debtors object to this request because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action. Subject to their objections, Debtors deny Request No. 149.

**Request No. 150:**    **Admit that Intermedia failed to make payments to EffectNet as required by the terms of the UC Agreement.**

RESPONSE: Debtors deny Request No. 150 as written because Intermedia did make payments to EffectNet as required by the terms of the UC Agreement. However, Debtors admit that in April 2002 Intermedia failed to make certain reconciliation payments that EffectNet claimed were required under the UC Agreement.

**Request No. 151:**    **Admit that Intermedia anticipatorily repudiated the UC Agreement.**

RESPONSE: Denied.

**Request No. 152:**    **Admit that Intermedia breached the UC Agreement.**

RESPONSE: Debtors object to Request No. 152 because it seeks admission of an abstract conclusion of law, as opposed to application of law to stated facts, or simply facts. Debtors additionally object to Request No. 152 because it is vague as to time. Subject to their objections, Debtors admit that Intermedia failed to make the reconciliation payments called for by Section 2.13 of the UC Agreement for the months of December 2001 and January through March 2002, that EffectNet gave notice that the UC Agreement would terminate on or about April 12, 2002 if Intermedia failed to make reconciliation payments for those months, that Intermedia

31

failed to make those reconciliation payments, and that the UC Agreement terminated on April 12, 2002 in accordance with EffectNet's notice and by the terms of the UC Agreement. However, Debtors deny that Claimant has calculated the proper amount owed for the reconciliation payments that it invoiced and for which it asserts claims in this bankruptcy proceeding.

**Request No. 153:**    **Admit that on or around January 21, 2001, Intermedia issued a press release regarding the Intermedia*One* Products.**

RESPONSE:    Debtors deny that Intermedia issued a press release regarding Intermedia*One* Products on or around January 21, 2001, but state that Intermedia issued a press release on January 30, 2001 concerning Intermedia Unified Messaging, a web and telephone-based unified messaging service for business and government customers, being offered independently of the company's Intermedia*One* platform.

**Request No. 154:**    **Admit that on or around January 21, 2001, MCI issued a press release regarding the GenD Products.**

RESPONSE:    Debtors object to the term "GenD Products" as defined by Parus Holdings because the definition does not accurately describe what is known as MCI's "generation d" initiative to extend its data and Internet network and transport services to facilitate e-commerce and e-business for its customers. Subject to their objection, Debtors deny that MCI issued a press release regarding "GenD Products" on or around January 21, 2001, but state that MCI issued several press releases in December 2000 and January 2001 (in addition to other press releases from early 2000 and continuing beyond January 2001) relating to its generation d initiative, announcing various services offered by MCI, including but not limited to web-based services such as streaming conference calls via the internet and webcast events, an on-line searchable Spanish and English glossary featuring high-tech and Internet-related terms, high speed wireless internet access services, anticipated commercial IP Communications services, and IP networking offerings such as VPN.

**Request No. 155:**    **Admit that MCI obtained price concessions from Webley in connection with the Master License Agreement.**

RESPONSE:    Denied.

**Request No. 156:**    **Admit that MCI obtained price concessions from Webley by causing Intermedia to cancel all of the subscriber contracts related to the Intermedia*One* Products.**

32

A 03554

RESPONSE:  Denied.

**Request No. 157:        Admit that the Intermedia*One* Products offered similar services as the GenD Products.**

RESPONSE:  Debtors object to Request No. 157 because it is overbroad and seeks an admission concerning facts that are not relevant to the claims or defenses of any party in this action.  Debtors further object because this request is vague, ambiguous, and relies upon a flawed definition of "GenD Products" that misconstrues MCI's generation d initiative.  Subject to their objection, Debtors admit that at a general level, some of the telecommunications services offered to Intermedia*One* customers were similar to some of the services marketed to customers as part of MCI's generation d campaign, but deny that all of the services were similar and further state that even similar services had significant differentiations and features.

**Request No. 158:        Admit that Intermedia*One* Products and the GenD Products were competing products.**

RESPONSE:  Denied.

**Request No. 159:        Admit that EffectNet provided training to Intermedia employees for a national rollout of Intermedia*One* Products.**

RESPONSE:  Debtors deny Request No. 159 as written.  Debtors admit that EffectNet provided training to some Intermedia employees on the unified messaging services offered under the UC Agreement, but deny that EffectNet provided training on other Intermedia*One* products.  Debtors also deny that there was a national rollout of either Intermedia*One* Products or the unified messaging services EffectNet offered under the UC Agreement.

**Request No. 160:        Admit that on or around July 1, 2001, MCI consummated its acquisition of Intermedia.**

RESPONSE:  Admitted.

**Request No. 161:        Admit that in July 2001, Intermedia informed EffectNet that there would be no new customers under the UC Agreement.**

RESPONSE:  Denied.

**Request No. 162:        Admit that in July 2001, Intermedia terminated the employment of James Renforth.**

DB02/048629 0094_0019/7336339.5

A 03555

RESPONSE:  Denied.

**Request No. 163:     Admit that in July 2001, Intermedia terminated or reassigned those employees dedicated to selling products under the UC Agreement.**

RESPONSE:  Denied.

**Request No. 164:     Admit that on or around September 10, 2001, Intermedia canceled 682 out of the 729 remaining accounts it had with EffectNet under the UC Agreement.**

RESPONSE:  Admitted.

**Request No. 165:     Admit that on or around September 14, 2001, MCI executed the Master License Agreement with Webley.**

RESPONSE:  Debtors admit that MCI Network Services, Inc. executed the Master
License Agreement on or about September 14, 2001.

**Request No. 166:     Admit that Intermedia made its last payment to EffectNet under the UC Agreement on or around December 7, 2001.**

RESPONSE:  Denied.  Debtors continued to pay EffectNet until at least March 2002.

**Request No. 167:     Admit that in March, 2002, Intermedia requested the cancellation of all the remaining accounts it had with EffectNet under the UC Agreement.**

RESPONSE:  Admitted.

**Request No. 168:     Admit that as early as January, 2001, MCI had no intention of permitting Intermedia to continue Intermedia's performance under the UC Agreement.**

RESPONSE:  Denied.

**Request No. 169:     Admit that as of July, 2001, MCI had no intention of permitting Intermedia to continue Intermedia's performance under the UC Agreement.**

RESPONSE:  Denied.

**Request No. 170:     Admit that as of September 10, 2001, MCI had no intention of permitting Intermedia to continue Intermedia's performance under the UC Agreement.**

RESPONSE:  Denied.

34

A 03556

**Request No. 171:** **Admit that as of December 7, 2001, MCI had no intention of permitting Intermedia to continue Intermedia's performance under the UC Agreement.**

RESPONSE: Denied.

**Request No. 172:** **Admit that Documents exist regarding James Renforth's role responsibilities, and/or duties in connection with the UC Agreement.**

RESPONSE: Admitted.

**Request No. 173:** **Admit that Documents exist regarding James Faust's role responsibilities, and/or duties in connection with the UC Agreement.**

RESPONSE: Admitted.

**Request No. 174:** **Admit that Intermedia discussed with MCI the amount of damages that would be asserted by EffectNet if Intermedia breached the UC Agreement.**

RESPONSE: Debtors object to Request No. 174 because it is vague as to time. Subject to their objection, Debtors admit that there were discussions concerning the possible assertion of damages after the UC Agreement was terminated on April 12, 2002.

**Request No. 175:** **Admit that Intermedia's board of directors discussed the UC Agreement.**

RESPONSE: Debtors object to Request No. 175 because it is vague as to time. Subject to their objection and based upon the information available to date, Debtors deny Request No. 175.

**Request No. 176:** **Admit that MCI's board of directors discussed the UC Agreement.**

RESPONSE: Debtors object to Request No. 176 because it is vague as to time. Subject to their objection and based upon the information available to date, Debtors deny Request No. 176.

**Request No. 177:** **Admit that Intermedia's Senior Management discussed the UC Agreement.**

RESPONSE: Debtors object to Request No. 177 because it is vague as to time. Subject to their objection, based upon the definition of "Senior Management of Intermedia" imposed by Claimant in Case-Specific Definition No. 36 to mean "any and all persons in a managerial position who reported to, were

consulted by, or appeared before the Board of Directors of Intermedia
Communications, Inc.," and based upon the information available to date,
Debtors deny Request No. 177.

**Request No. 178:    Admit that MCI's Senior Management discussed the UC Agreement.**

RESPONSE:    Debtors object to Request No. 178 because it is vague as to time.  Subject
to their objection, based upon the definition of "Senior Management of
MCI" imposed by Claimant in Case-Specific Definition No. 37 to mean
"any and all persons in a managerial position who reported to, were
consulted by, or appeared before the Board of Directors of MCI
WorldCom Communications, Inc.," and based upon the information
available to date, Debtors deny Request No. 178.

**Request No. 179:    Admit that schedules, lists, or Documents exist in connection with the
MCI/Intermedia Merger identifying the UC Agreement.**

RESPONSE:  Admitted.

**Request No. 180:    Admit that MCI's financial advisors reviewed the terms of the UC
Agreement as part of the MCI/Intermedia Merger.**

RESPONSE:    Debtors object to Request No. 180 because it is vague as to time and
because the phrase "financial advisors" is ambiguous.  Subject to their
objection and based upon information available to date, Debtors deny
Request No. 180.

**Request No. 181:    Admit that pro formas or other financial projections were created by
Intermedia regarding the anticipated revenue generated by the Intermedia*One* Products.**

RESPONSE:    Debtors object to Request No. 181 because it is vague as to time and
because the phrase "pro formas or other financial projections" is
ambiguous.  Debtors further object to this request because it is overbroad
and seeks an admission to facts that are not relevant to the claims or
defenses of the parties.  Subject to their objections, Debtors state that
Intermedia likely prepared forecasts regarding the number of customers
and revenues that might be generated by its Intermedia*One* suite of
products, but deny any implication that equates Intermedia*One* products
and the component unified messaging service that EffectNet offered
pursuant to the UC Agreement.

**Request No. 182:    Admit that Intermedia's board of directors reviewed the pro formas
or other financial information identified in Request No. 181.**

36

A 03558

RESPONSE:  Debtors object to Request No. 182 because it is vague as to time and because the phrase "pro formas or other financial information" is ambiguous. Debtors further object to this request because it is overbroad and seeks an admission to facts that are not relevant to the claims or defenses of the parties. Subject to their objections and based upon information available to date, Debtors deny Request No. 182.

**Request No. 183:    Admit that Intermedia created pro formas or other financial projections regarding the anticipated revenue that would be generated pursuant to the UC Agreement.**

RESPONSE:  Debtors object to Request No. 183 because it is vague as to time and because the phrase "pro formas or other financial projections" is ambiguous. Subject to their objections and based upon information available to date, Debtors deny Request No. 183.

**Request No. 184:    Admit that Intermedia's board of directors reviewed the pro formas or other financial information identified in Request No. 183.**

RESPONSE:  Debtors object to Request No. 184 because it is vague as to time and because the phrase "pro formas or other financial information" is ambiguous. Subject to their objection and based upon information available to date, Debtors deny Request No. 184.

Respectfully submitted,

STINSON MORRISON HECKER LLP

By: _____

Mark A. Shaiken
Robert L. Driscoll
Allison M. Murdock
1201 Walnut Street, Suite 2900
Kansas City, MO  64106
(816) 842-8600 – Telephone
(816) 691-3495 – Facsimile

ATTORNEYS FOR DEBTORS

37

A 03559

## Certificate of Service

I hereby certify that on this 22nd day of December, 2006, I served a copy of the foregoing by regular United States mail directed to:

Jill L. Murch
Joanne Lee
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL  60610

_____
Attorney for Debtors

DB02/048629 0094_0019/7336339.5

A 03560

**STINSON**
**MORRISON**
**HECKER** LLP

Jeffrey A. Befort
(816) 691-3130
jbefort@stinsonmoheck.com
www.stinsonmoheck.com

1201 Walnut, Suite 2900
Kansas City, MO 64106-2150

**VIA FEDERAL EXPRESS**

Tel (816) 842-8600
Fax (888) 571-0930

November 4, 2005

Kevin J. Smith
Kelley Drye & Warren LLP
101 Park Avenue
New York, NY 10178

> Re:    In Re WorldCom, Inc., Chapter 11 - Case No. 02-13533, Parus
> Holdings

Dear Mr. Smith:

I am writing in response to your letter to Robert L. Driscoll, dated October 26, 2005, concerning the log of privileged documents provided by MCI in the above matter. Per your request, a review of the documents withheld as privileged has been performed.

As a result, MCI has revised certain of its entries to more clearly state the basis of the privilege claimed and a revised log is enclosed. MCI, however, restates its claim that each of the documents listed on the privilege log are protected from disclosure by the attorney-client privilege and/or the work product doctrine. MCI has also identified five attachments to privileged documents that are being produced. In particular, MCI is producing the attachments to the following privileged documents:

| Date | Author | Recipient | Document No. of Attachment Being Produced |
|------|--------|-----------|------------------------------------------|
| 07/17/03 | **Matthew Harthun** | Teresa Hastings, Steve Hooper | MCIWC030353-359 |
| 04/29/04 | **Jeannie Yim Figer** | **Brian Benjet, Matthew Harthun,** Steve Hooper, Carol Thedford, Steven Walters | MCIWC030360-368 |
| 06/22/04 | **Jeannie Yim Figer** | Steve Hooper, Coy Chezem, Carol Thedford, Steven Walters, **Matthew Harthun, Brian Benjet** | MCIWC030369-378 |

KANSAS CITY
OVERLAND PARK
WICHITA
WASHINGTON, D.C.
PHOENIX
ST. LOUIS
OMAHA
JEFFERSON CITY

DB02/048629 0094/6904949.1

Exhibit E

**A 03561**

Kevin J. Smith
November 4, 2005
Page 2

| Date | Author | Recipient | Document No. of Attachment Being Produced |
|------|--------|-----------|-------------------------------------------|
| 08/06/04 | **Jeannie Yim Figer** | Steven Walters, Steve Hooper, Carol Thedford, Coy Chezem | MCIWC030379-380 |
| 09/27/04 | **Jeannie Yim Figer** | Carol Thedford, Coy L. Chezem, **Matthew Harthun, Brian Benjet**, Steve Hooper | MCIWC030381-391 |

(The names of counsel are bolded.)

In addition, MCI has withdrawn its claim of privilege regarding document no. MCIWC000363, a letter from David Lum to Laurie Adams. A copy of this document, although not responsive to your requests, is attached.

MCI has also located certain additional documents including pleadings filed in the antitrust case concerning the WorldCom and Intermedia merger and business plans from the 2000-2001 time frame that discuss IntermediaOne, all of which are also being produced at this time. Enclosed is the Second Supplemental Index of MCI's Response to First Request for Documents dated November 4, 2004, related to these documents.

As a final note, each of the counsel identified in bold print on the privilege log worked as either in-house or outside counsel for WorldCom and/or Intermedia. Please call me if you would like to discuss any of the above issues.

Very truly yours,

**STINSON MORRISON HECKER LLP**

*Jeffrey A. Befort*

Jeffrey A. Befort

JAB:sew
Enclosure
cc:    Robert L. Driscoll
        David Wachen

DB02/048629 0094/6904949.1

**A 03562**

.

In re: WorldCom, Inc., et al.
02-13555
Parus Holdings/EffectNet Claim

**MCI'S SECOND SUPPLEMENTAL RESPONSE
TO FIRST REQUEST FOR DOCUMENTS**
November 4, 2005

**Parus Holdings' Requests for Documents**

1.    Documents concerning objection to Claim No. 9291

2.    Documents concerning  objection to Claim No. 9293.

3.    Documents concerning objection to Claim No. 11173.

4.    Documents concerning objection to Claim No. 112242.

5.    Documents concerning objection on ground that Claimant is not entitled to double recovery.

6.    Documents concerning Debtors' alleged payment.

7.    Documents concerning Debtors' contention that Claimant terminated the UC contract.

8.    Documents concerning allegation that Claimant seeks an unenforceable penalty.

9.    Documents concerning allegation that Claimant has calculated its damages using amount per commitment higher than contract specifies.

10.   Documents concerning allegation that UC Contract prohibits assignment.

11.   Documents concerning the General Agreement.

12.   Documents concerning the Memorandum of Understanding.

13.   Documents concerning the Interim Agreement.

14.   Documents concerning decision to give notice to cancel accounts in September 2001.

15.   Documents concerning decision to give notice to cancel accounts in March 2002.

16.   Communication between Debtor and Claimant re: General Agreement.

17.   Documents concerning payment under General Agreement.

18.   Communication among Debtors concerning General Agreement.

1

A 03563

19.   Documents concerning communications among Debtors re: cancellation of accounts created pursuant to the General Agreement.

20.   Documents concerning Claimant.

21.   Documents concerning analysis of Claimants' finances, business, technology, or products.

22.   Documents concerning Master Licensing Agreement ("MLA").

23.   Documents concerning communication between Debtors and Claimant re: MLA.

24.   Documents concerning communication between Debtors and Claimant from September 1, 2000 to present re: products and services provided under MLA.

25.   Documents concerning price to be paid under MLA.

26.   Documents concerning Debtors' payments under MLA.

27.   Documents concerning Debtors' communications among each other re: MLA.

28.   Documents concerning Jim Renforth's ceasing employment.

29.   Documents concerning Jimmy Faust's ceasing employment.

30.   Documents concerning product suite IntermediaOne.

31.   Documents concerning launch of IntermediaOne.

32.   Communications among debtors re: IntermediaOne.

33.   Documents re: merger that relate to Claimant.

34.   Documents re: merger that relate to Unified Messaging Product.

35.   Documents concerning efforts to develop, obtain, market or launch Unified Communications product or service.

2

A 03564

## DOCUMENT INDEX BY REQUEST NUMBER

| BOX NO. | BATES NO. | CORRESPONDING REQUEST NO. |
|---|---|---|
|  | MCIWC000363 | Not Responsive |
|  | MCIWC030181-030352 | 1, 2, 3, 4, 19 |
|  | MCIWC030353-030359 | 16, 23 |
|  | MCIWC030360-030368 | 22, 23, 24, 25, 26, 27 |
|  | MCIWC030369-030391 | 22, 23 |
| 273701031 | MCIWC030392-030460 | 22, 23, 24, 25 |
| 273701031 | MCIWC030461-030463 | 22 |
| 235563256 | MCIWC030464-030466 | 1, 2, 3, 4, 30, 31, 35 |
| 235563256 | MCIWC030467-030379 | 1, 2, 3, 4, 30, 31 |
| 235563256 | MCIWC030480-030485 | 1, 2, 3, 4, 30, 31, 35 |
| 235563256 | MCIWC030486-030490 | 1, 2, 3, 4, 31, 35 |
| 235563256 | MCIWC030491-030497 | 1, 2, 3, 4, 30, 31, 35 |
| 235563256 | MCIWC030498-030532 | 1, 2, 3, 4, 30, 35 |
| 235563256 | MCIWC030533 | 1, 2, 3, 4, 31, 35 |
| 235563256 | MCIWC030534-030536 | 1, 2, 3, 4, 35 |
| 235563256 | MCIWC030537-030596 | 1, 2, 3, 4, 30, 31, 35 |
| 235563243 | MCIWC030597-030728 | 1, 2, 3, 4, 35 |
| 235563243 | MCIWC030729-030912 | 1, 2, 3, 4, 30, 31, 35 |
| 235563231 | MCIWC030913-030916 | 30, 31 |
| 235563231 | MCIWC030917-030935 | 1, 2, 3, 4, 30, 35 |
| 235563231 | MCIWC030936-030939 | 30, 31 |

DB02/048629 0094/6904733.1

**A 03565**

| BOX NO. | BATES NO. | CORRESPONDING REQUEST NO. |
|---|---|---|
| 235563231 | MCIWC030940-030957A | 1, 2, 3, 4, 30, 35 |
| 235563231 | MCIWC030958-031091 | 1, 2, 3, 4, 30, 31, 35 |
| 235563231 | MCIWC031092-031171 | 1, 2, 3, 4 |
| 235563231 | MCIWC031172-031244 | 1, 2, 3, 4, 30, 31, 35 |
| 235563231 | MCIWC031245-031310 | 1, 2, 3, 4, 35 |

4

A 03566

In re: WorldCom, Inc., et al.
02-13555
EffectNet Claim

Privilege Log
(Attorney Names in Bold)
Supplemented as of November 4, 2005.

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 03/13/02 | MCIWC000184 | Cheryl Mellon | **Brett Bacon** | | Fax cover sheet to in-house counsel re: Memorandum of Understanding and providing information to assist in-house counsel in providing legal advice. | Attorney-Client Communication |
| 03/06/02 | MCIWC000198-200 | Cheryl Mellon | **Brett Bacon** | | Fax to in-house counsel forwarding information concerning Webley acquisition of EffectNet to assist in-house counsel in providing legal advice. | Attorney-Client Communication |
| 10/03/02 | MCIWC000287 | **Jeffrey Hsu** | Carleen Mitchell, Megan Lawless, Timothy Vogel | Jennifer Carroll | E-Mail from in-house counsel explaining EffectNet and Webley claims. | Attorney-Client Communication

Attorney Work Product |

A 03567

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 10/03/02 | MCIWC00287 | Carleen Mitchel | Megan Lawless, **Jeffrey Hsu,** Timothy Vogel | Jennifer Carroll | E-mail providing in-house counsel and others information re: nature of Webley claim and appropriate reporting line for claims. | Attorney-Client Communication |
| 10/03/02 | MCIWC00287 | Megan Lawless | **Jeffrey Hsu,** Carleen Mitchel, Timothy Vogel | Jennifer Carroll | E-mail providing in-house counsel and others information re: persons and entities handling claims and request for legal advice re: offset. | Attorney-Client Communication |
| 10/02/02 | MCIWC000288 | Carleen Mitchel | **Jeffrey Hsu** | | E-mail to in-house counsel asking for information and legal advice re: claims by Webley Systems. | Attorney-Client Communications |
| 06/21/02 | MCIWC000289-292 | **Jeffrey Hsu** | **Thomas O'Neil** | **David Smorodin Laurie Adams** | Memorandum by in-house counsel analyzing legal aspects and potential liability issues relating to EffectNet claims. | Attorney-Client Communication

Attorney Work Product |
| 02/28/02 | MCIWC000293-306 | Cheryl Mellon | **Brett Bacon** | | Fax cover requesting review of EffectNet contract by in-house counsel and seeking advice re: liability and strategy.  Contract copy has hand written notes in margin attached. | Attorney-Client Communication

Attorney Work Product |

2

DB02/048629.0094_0019/6733688.2

**A 03568**

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 05/02/02 | MCIWC000307-308 | Cheryl Mellon | Brett Bacon | | Fax re: EffectNet February Invoice forwarded to in-house counsel as information to be used in providing legal advice. | Attorney-Client Communication |
| 03/14/02 | MCIWC000309-313 | Brett Bacon | Paul Eskildsen | | Fax between in-house counsel re: EffectNet invoices for 2/6/02 and 3/5/02 and handling of claims arising therefrom. (Invoices produced separately) | Attorney-Client Communication<br><br>Attorney Work Product |
| 03/06/02 | MCIWC000314-317 | Cheryl Mellon | Brett Bacon | | Fax to in-house counsel forwarding information on the Webley/EffectNet merger to be used in providing legal advice. | Attorney-Client Communication |
| 03/29/02 | MCIWC000318 | Laurie Adams | Jeffrey Hsu | | E-mail from and to in-house counsel re: status of payments on EffectNet Accounts and claims made regarding same. | Attorney-Client Communication<br><br>Attorney Work Product |
| 03/27/02 | MCIWC000318 | Brett Bacon | Laurie Adams | | E-mail from and to in-house counsel summarizing conversation concerning status of accounts with Webley under Entrust agreement and claims made regarding same. | Attorney-Client Communication<br><br>Attorney Work Product |

DB02/048629.0094_0019/6733688.2

A 03569

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 03/27/02 | MCIWC000322 | **Laurie Adams** | **Jeff Hsu** | | E-mail from and to in-house counsel forwarding copy of e-mail from Pamela Dunnam re: re-assessment from Webley and claims by Webley/EffectNet. | Attorney-Client Communication<br><br>Attorney Work Product |
| 03/27/02 | MCIWC000322 | Pamela Dunnam | Pamela Dunnam, Teresa Hastings, **Laurie Adams** Barry Zipp, **Brett Bacon**, Patrice C. | Steven Mccann, Suresh Koshy, **Paul Eskildsen**, Robert Laird | E-mail advising of revise date for reassessment of Webley and others sent to in-house counsel for the purpose of requesting legal advice. | Attorney-Client Communication |
| 03/25/02 | MCIWC000322 | Pamela Dunnam | Teresa Hastings, **Laurie Adams,** Barry Zipp, **Brett Bacon**, Patrice C. | Steven Mccann, Suresh Koshy, **Paul Eskildsen**, Robert Laird | E-mail advising of information (EMEA assessment) to be provided for contract sent to in-house counsel and others for the purpose of obtaining legal advice. | Attorney-Client Communication |
| 03/23/01 | MCIWC000322 | Teresa Hasting | **Laurie Adams** Barry Zipp, **Brett Bacon**, Patrice C | Steven Mccann, Suresh Koshy, **Paul Eskildsen**, Pamela Dunnam, Robert Laird | E-mail to in-house counsel and others describing claims by EffectNet for the purpose of obtaining legal advice. | Attorney-Client Communication |

4

A 03570

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|----|-------------|-----------|
| 03/21/02 | MCIWC00323 | **Laurie Adams** | Teresa Hastings, Barry Zipp, **Brett Bacon** | Steven Mccann, Suresh Koshy, **Paul Eskildsen** | E-mail from and to-in-house counsel and others re: conference call to discuss legal issues relating to EffectNet/Intermedia contract and providing information concerning one of those legal issues. | Attorney-Client Communication Attorney Work Product |
| 03/20/02 | MCIWC000323 | Teresa Hastings | Barry Zipp, **Brett Bacon  Laurie Adams** | Steven Mccann, Suresh Koshy, **Paul Eskildsen,** Teresa Hastings | E-mail to in-house counsel and others re: scheduling conference call with legal counsel to obtain legal advice. | Attorney-Client Communication |
| 03/20/02 | MCIWC000323 | Barry Zipp | **Brett Bacon Laurie Adams** | Steven Mccann, Suresh Koshy, **Paul Eskildsen,** Teresa Hastings | E-mail to in-house counsel re: scheduling conference call and describing efforts to obtain information to provide in-house counsel to assist them in providing legal advice. | Attorney-Client Communication |
| 03/21/02 | MCIWC000324 | **Brett Bacon** | **Laurie Adams** | Barry Zipp, Steve McCann, Koshy Suresh, **Paul Eskildsen** | E-mail from and to in-house counsel re: conference call and providing information to in-house counsel for the purpose of obtaining legal advice. | Attorney-Client Communication Attorney Work Product |

5

A 03571

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 03/20/02 | MCIWC000324 | **Laurie Adams** | **Brett Bacon** | Steve McCann, Suresh Koshy | E-mail from and to in-house counsel re: legal issues to be considered in resolving claim by EffectNet and proposing conference call re: same. | Attorney-Client Communication<br><br>Attorney Work Product |
| 03/20/02 | MCIWC000324 | **Brett Bacon** | **Laurie Adams** | Barry Zipp, Steve McCann, Suresh Koshy, **Paul Eskildsen** | E-mail from and to in-house counsel providing information for the purpose of giving legal advice. | Attorney-Client Communication<br><br>Attorney Work Product |
| 03/20/02 | MCIWC00324 | Cheryl Mellon | **Laurie Adams** | | E-mail forwarding copy of previous e-mail to in-house counsel for the purpose of obtaining legal advice. | Attorney-Client Communication |
| 03/20/02 | MCIWC000324-000325 | **Paul Eskildsen** | **Brett Bacon** | Cheryl D. Mellon, Barry Zipp, Richard Black | E-mail from and to in-house counsel responding to in-house counsel's description of conversation with Robert McConnell and strategy to resolve claim of EffectNet. | Attorney-Client Communication |
| 03/14/02 | MCIWC000325 | **Brett Bacon** | **Paul Eskildsen** | Cheryl D. Mellon, Barry Zipp, Richard Black | E-mail from and to in-house counsel advising of his discussions with Robert McConnell of EffectNet about EffectNet's demand letter and describing options for resolution. | Attorney-Client Communication |

6

DB02/048629.0094_0019/6733688.2

**A 03572**

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 03/27/02 | MCIWC000326 | **Laurie Adams** | **Brett Bacon** | **Jeffrey Hsu** | E-mail from and to in-house counsel forwarding information to Jeffrey Hsu concerning status of accounts under EffectNet contract to assist counsel in providing legal advice. | Attorney-Client Communication |
| 03/27/02 | MCIWC000326 | **Brett Bacon** | **Laurie Adams** | | E-mail from and to in-house counsel advising of status of accounts under EffectNet contract for the purpose of providing legal advice. | Attorney-Client Communication |
| 03/27/02 | MCIWC000326 | Cheryl Mellon | **Brett Bacon** | | E-mail to in-house counsel re: status of active accounts left with Webley for the purpose of obtaining legal advice. | Attorney-Client Communication |
| 03/27/02 | MCIWC000328 | **Laurie Adams** | **Jeffery Hsu** | | E-mail from and to in-house counsel forwarding e-mail from Richard Moore sent to provide assessment to "Legal Team" re: potential resolution of EffectNet claim. | Attorney-Client Communication |

DB02/048629 0094_0019/6733688.2

A 03573

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 03/25/02 | MCIWC000328 | Richard Moore | Suresh Koshy, Steven Mccann, **Brett Bacon** | Richard Moore, Robert Laird, Donna Byington, Pamesa Dunnam, Barry Zipp, Teresa Hastings, Donald Fergus | E-mail providing advice to in-house counsel and others re: assessment of potential resolution of EffectNet claim for the purpose of obtaining legal advice. | Attorney-Client Communication |
| 03/26/02 | MCIWC000332-337 | **Brett Bacon** | **Laurie Adams** | | Fax from and to in-house counsel re: EffectNet 3/25/02 notice of default letter sent for the purpose of obtaining legal advice. | Attorney-Client Communication |
| 03/25/02 | MCIWC000346 | Don Ferguson | **Brett Bacon,** Scott Converse, Barry Zipp, **Laurie Adams,** Teresa Hastings, Patrice Carroll, Brenda Speer | Scott Pospichel, Robert Laird, Pamela Dunnam, **Paul Eskildsen,** Suresh Koshy, Steven McCann | E-mail re: EffectNet/Intermedia Contract and potential for resolution of contract dispute sent to in-house counsel and others to obtain legal advice. | Attorney-Client Communication |
| 03/25/02 | MCIWC000346 | **Brett Bacon** | Donald Fergus, Scott Coverse, Barry Zipp, **Laurie Adams,** Teresa Hastings, Patrice Carroll, Brenda Speer | Scott Pospichel, Robert Laird, Pamela Dunnam, **Paul Eskildsen ,** Suresh Koshy, Steven Mccann | E-mail re option for resolution of EffectNet claim sent to in-house counsel and others for the purpose of assisting them in providing legal advice. | Attorney-Client Communication<br><br>Attorney Work Product |

DB02/048629.0094_0019/6733688.2

A 03574

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 03/25/02 | MCIWC000346 | Patrice Carroll | Teresa Hastings, **Laurie Adams,** Barry Zipp, **Brett Bacon,** Scott Converse, Donald Fergus | Steven McCann, Suresh Koshy, **Paul Eskildsen,** Pamela Dunnam, Robert Laird | E-mail to in-house counsel and others providing information to assist consideration of potential for resolution of EffectNet claim. | Attorney-Client Communication<br><br>Attorney Work Product |
| 03/24/02 | MCIWC000358 | Robert Laird | Teresa Hastings, **Laurie Adam,** Barry Zipp, **Brett Bacon,** Patrice Carroll | Steven McCann, Suresh Koshy, **Paul Eskildsen,** Pamela Dunnam | E-mail re: potential option for resolution of EffectNet contract claim sent to in-house counsel and others to obtain legal advice. | Attorney-Client Communication |
| 03/20/02 | MCIWC000382-383 | **Laurie Adams** | **Brett Bacon** | Steven Mccann, Suresh Koshy | E-mail from and to in-house counsel re: seeking legal advice on strategy to resolve EffectNet/Intermedia Contract dispute. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/25/02 | MCIWC000412-419 | **Jessica Fotinos** | **Jeffrey Hsu** | | Memo by outside counsel re: EffectNet/Intermedia Potential Issues and providing legal analysis of contract dispute issues. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/22/02 | MCIWC000420-451 | | | | Legal research performed by **Jeffrey Hsu.** | Attorney Work Product |

DB02/048629.0094_0019/6733688.2

A 03575

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 07/15/03 | Not Numbered | Ed Tolliver | **Matthew Harthun** | Coy Chezem, Chris Blunt, Jim Bynum | E-mail to in-house counsel re: letter seeking legal advice on contract with Webley. | Attorney Client Communication |
| 07/17/03 | Not Numbered | **Matthew Harthun** | Teresa Hastings, Steve Hooper | Carol Thedford, James Tolliver | E-mail from in-house counsel requesting assistance re: response to Webley's letter with attached 7/11/03 letter from Webley (7/11/03 letter has been produced). | Attorney-Client Communication  Attorney Work Product |
| 07/16/03 | Not Numbered | Jim Bynum | **Matthew Harthun** | Ed Tolliver, Chris Blunt, Coy Chezem | E-mail to in-house counsel re: phone call from Robert McConnell and Ed Karas seeking legal advice. | Attorney Client Communication |
| 07/17/03 | Not Numbered | **Matthew Harthun** | Steve Hooper, James Tolliver, James Bynum, Thomas Healy | Carol Thedford, Coy Chezem, Nasser Sheikh, Thomas Bush, Christopher Blunt, Teresa Hastings, Lara Carpenter | E-mail from in-house counsel re: response to Webley's demand letter providing legal advice and options. Attached to e-mail is Steve Hooper e-mail to **Matthew Harthun** requesting legal advice re: response to the Webley demand letter. | Attorney-Client Communication  Attorney Work Product |

10

A 03576

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 07/18/03 | Not Numbered | Teresa Hastings | **Matthew Harthun**, Steve Hooper, James Tolliver, James Bynum, Thomas Healy | Carol Thedford, Coy Chezem, Nasser Sheikh, Thomas Bush, Christopher Blunt, Lara Carpenter | E-mail to in-house counsel and others responding to advice given by legal counsel re: response to Webley's demand letter. | Attorney-Client Communication |
| 07/18/03 | Not Numbered | Lara Carpenter | **Matthew Harthun**, Steve Hooper, James Tolliver, James Bynum, Thomas Healy | Carol Thedford, Coy Chezem, Nasser Sheikh, Thomas Bush, Christopher Blunt, Teresa Hastings, Charles McMahon | E-mail to in-house counsel and others responding to legal advice re: response to Webley's demand letter. | Attorney-Client Communication |
| 07/24/03 | Not Numbered | **Matthew Harthun** | Teresa Hastings, Steve Hooper, James Bynum, **Jeannie Yim Figer**, Coy Chezem | Carol Thedford, Nasser Sheikh, Thomas Bush, Christopher Blunt, Lara Carpenter, Robert Rodrigues, James Tolliver, Thomas Healy, Michael Bass | E-mail from in-house counsel re: status of Webley claim, including legal advice and evaluation of issues. | Attorney-Client Communication<br><br>Attorney Work Product |

DB02/048629.0094_0019/6733688.2

A 03577

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 07/24/03 | Not Numbered | James Bynum | **Matthew Harthun**, Teresa Hastings, Steve Hooper, **Jeannie Yim Figer**, Coy Chezem | Carol Thedford, Nasser Sheikh, Thomas Bush, Christopher Blunt, Lara Carpenter, Robert Rodriguez, James Tolliver, Thomas Healy, Michael Bass | E-mail to in-house counsel and others summarizing letter received from Robert McConnell of EffectNet and providing legal counsel information to as a part of seeking legal advice. | Attorney-Client Communication |
| 07/24/03 | Not Numbered | Coy Chezem | **Matthew Harthun**, Teresa Hastings, Steve Hooper, James Bynum, **Jeannie Yim Figer** | Carol Thedford, Nasser Sheikh, Thomas Bush, Christopher Blunt, Lara Carpenter, Robert Rodriguez, James Tolliver, Thomas Healy, Michael Bass, Don Wilmoth | E-mail to in-house and outside counsel and others re: whether and when to pursue claim against Webley. | Attorney-Client Communication |

DB02/048629.0094_0019/6733688.2

**A 03578**

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 07/24/03 | Not Numbered | Steve Hooper | Coy Chezem, **Matthew Harthun**, Teresa Hastings, James Bynum, **Jeannie Yim Figer** | Carol Thedford, Nasser Sheikh, Thomas Bush, Christopher Blunt, Lara Carpenter, Robert Rodrigues, James Tolliver, Thomas Healy, Michael Bass, Don Wilmoth | E-mail to in-house counsel and others providing information re: how to proceed on claim against Webley. | Attorney-Client Communication |
| 07/27/03 | Not Numbered | Teresa Hastings | Steve Hooper, Coy Chezem, **Matthew Harthun**, James Bynum, **Jeannie Yim Figer** | Carol Thedford, Nasser Sheikh, Thomas Bush, Christopher Blunt, Lara Carpenter, Robert Rodrigues, James Tolliver, Thomas Healy, Michael Bass, Don Wilmoth | E-mail to in-house and outside counsel and others providing information to legal counsel re: how to proceed on claim against Webley. | Attorney-Client Communication |

13

A 03579

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 07/28/03 | Not Numbered | **Jeannie Yim Figer** | James Bynum, **Matthew Harthun**, Teresa Hastings, Steve Hooper, Coy Chezem | Carol Thedford, Nasser Sheikh, Thomas Bush, Christopher Blunt, Lara Carpenter, Robert Rodrigues, James Tolliver, Thomas Healy, Michael Bass | E-mail from outside counsel to in-house counsel and others re: Webley letter of 7/24/03 (attached) and legal advice to resolve numerous disputes between the parties. | Attorney-Client Communication<br><br>Attorney Work Product |
| 10/22/03 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, Coy Chezem, Carol Thedford, **Matthew Harthun**, Steven Walters, Robert Rodrigues | Christopher Blunt, James Bynum, Tom Tracey, William Vermette, William Klein, Susan Healy, Thomas Healy, Teresa Hastings | E-mail from outside counsel re: letter concerning Webley/EffectNet claim with draft of attached letter. | Attorney-Client Communication<br><br>Attorney Work Product |
| 12/30/03 | Not Numbered | **Susan Klein** | Steven Walters, Steve Hooper | Carol Thedford, Robert Rodrigues, **Matthew Harthun**, Jeannie Yim Figer, Coy Chezem | E-mail from outside counsel providing legal advice on dispute between MCI and Webley with attached invoices. | Attorney-Client Communication<br><br>Attorney Work Product |

14

**A 03580**

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 04/20/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, Coy Chezem, Carol Thedford, Steven Walters, Christopher Blunt, James Bynum, James Tolliver | **Brian Benjet,** Susan Klein, **Matthew Harthun** | E-mail from outside counsel with legal counsel's draft of responses to Webley's proposal attached. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/20/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, Carol Thedford, Steven Walters | **Susan Klein, Matthew Harthun, Brian Benjet** | E-mail from outside counsel providing draft notice of termination with draft attached. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/29/04 | Not Numbered | **Jeannie Yim Figer** | **Brian Benjet, Matthew Harthun,** Steve Hooper, Carol Thedford, Steven Walters | | E-mail from outside counsel forwarding notice of termination. E-mail re: payment schedule has been produced. | Attorney-Client Communication |
| 04/30/04 | Not Numbered | **Jeannie Yim Figer** | **Susan Klein** | Coy Chezem, **Brian Benjet,** Steve Hooper, Steven Walters, Carol Thedford, Matthew Duggan | E-mail from outside counsel providing Webley's responses to Figer's letter and providing legal advice re: same. | Attorney-Client Communication |
| 05/04/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, Coy Chezem, Carol Thedford, Steven Walters, Christopher Blunt, James Bynum, James Tolliver | **Susan Klein Matthew Harthun** | E-mail from outside counsel providing information regarding conversation with Webley's legal counsel. | Attorney-Client Communication |

15

A 03581

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 05/04/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, James Tolliver, Coy Chezem, Carol Thedford, Steven Walters, Christopher Blunt, James Bynum | **Susan Klein, Matthew Harthun** | E-mail from outside counsel describing counteroffer by Webley. | Attorney-Client Communication |
| 05/04/04 | Not Numbered | **Jeannie Yim Figer** | Steven Walters, Steve Hooper, Carol Thedford | **Susan Klein, Matthew Harthun** | E-mail from outside counsel arranging meeting and discussing counteroffer by Webley. | Attorney-Client Communication |
| 05/04/04 | Not Numbered | **Jeannie Yim Figer** | James Tolliver, Steve Hooper, Coy Chezem, Carol Thedford, Steven Walters, Christopher Blunt, James Bynum | **Susan Klein, Matthew Harthun** | E-mail from outside counsel to and from legal counsel re: how to respond to offer by Webley and seeking additional information before responding. | Attorney-Client Communication |
| 06/08/04 | Not Numbered | **Jeannie Yim Figer** | Steven Walters, James Tolliver | **Susan Klein, Matthew Harthun,** Steve Hooper, Coy Chezem, Carol Thedford, Christopher Blunt, James Bynum | E-mail from outside counsel re: update on Webley/EffectNet regarding settlement negotiations. | Attorney-Client Communication |

DB02/048629.0094_0019/6733688.2

A 03582

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 06/08/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, James Tolliver, Coy Chezem, Carol Thedford, Steven Walters, Christopher Blunt, James Bynum | **Susan Klein, Matthew Harthun,** Thomas Healy | E-mail from outside counsel re: update on migration off the Webley platform. | Attorney-Client Communication |
| 06/21/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, Steven Walters, Carol Thedford | **Susan Klein** | E-mail from outside counsel re: settlement negotiations. | Attorney-Client Communication |
| 06/21/04 | Not Numbered | Steven Walters | **Jeannie Yim Figer,** Steve Hooper, Carol Thedford | **Susan Klein** | E-mail to outside counse and others re: settlement negotiations. | Attorney-Client Communication |
| 06/21/04 | Not Numbered | **Jeannie Yim Figer** | Steven Walters, Steve Hooper, Carol Thedford | **Susan Klein** | E-mail from outside counsel re: settlement negotiations. | Attorney-Client Communication |
| 06/21/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, Coy Chezem, Carol Thedford, Steven Walters, Christopher Blunt, James Bynum, James Tolliver | **Susan Klein, Matthew Harthun** | E-mail from outside counsel re: draft settlement agreement with attached drafts. | Attorney-Client Communication Attorney Work Product |
| 06/22/04 | Not Numbered | Christopher Blunt | **Jeannie Yim Figer,** Steve Hooper, Coy Chezem, Carol Thedford, Steven Walters, James Bynum, James Tolliver | **Susan Klein, Matthew Harthun** | E-mail to outside counsel and others re: settlement negotiations. | Attorney-Client Communication |

17

DB02/048629 0094_0019/6733688 2

A 03583

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 06/22/04 | Not Numbered | **Jeannie Yim Figer** | Steve Hooper, Coy Chezem, Carol Thedford, Steven Walters, **Matthew Harthun, Brian Benjet** | **Susan Klein,** James Bynum, James Tolliver, Christopher Blunt | E-mail from outside counsel re: settlement offer to Parus Holdings. (Letter and Proposed Agreement sent to Robert Duggan have been produced.) | Attorney-Client Communication<br><br>Attorney Work Product |
| 08/06/04 | Not Numbered | **Jeannie Yim Figer** | Steven Walters, Steve Hooper, Carol Thedford, Coy Chezem | Christopher Blunt, James Tolliver, James Bynum, **Matthew Harthun, Brian Benjet,** Susan Klein | E-mail re: settlement negotiations. Attached letter from Webley has been produced. | Attorney-Client Communication |
| 09/27/04 | Not Numbered | **Jeannie Yim Figer** | Carol Thedford, Coy L. Chezem, **Matthew Harthun, Brian Benjet,** Steve Hooper, | Susan Normand, Annie Bowles, Sandra Tolliver, Jamres Blunt, **Lawrence Bigus** | E-mail forwarding settlement agreement. Attached letter and Settlement Agreement has been produced. | Attorney Client Communication |
| 10/26/04 | Not Numbered | Teresa Hastings | Steve Hooper | **David Wachen** | E-mail re: proof of claim filed by Parus Holdings and advice from in-house counsel regarding the same. | Attorney-Client Communication<br><br>Attorney Work Product |

DR02/048629.0094_0019/6733688.2

A 03584

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 10/25/04 | Not Numbered | **David Wachen** | Barry Zipp Carleen Mitchell Jennifer Carroll Mandy Johnson Maria Ayala Mary Kilmartin **Matthew Harthun** Pamela Dunnam Peter Casidy Richard Black Shirley Dale Elizabeth Denham Susan Kennedy Teresa Hastings Nasser Sheikh Linda Stevens | **Larry Bigus (outside legal counsel)** | E-mail from in-house counsel requesting information relating to Parus Holdings claim in bankruptcy and providing legal advice to employees re: contacts by EffectNet or Parus Holdings. | |
| 10/26/04 | Not Numbered | **Sharon Stolte (outside legal counsel)** | Mary Azeltine, Barry Zipp, Carleen Mitchell, David Wachen, Jennifer Carroll, Mandy Johnson, Maria Ayala, Mary Kilmartin, **Matthew Harthun,** Pamela Dunnam, Peter Cassidy, Richard Black, Shirley Dale, Susan Kennedy, Teresa Hastings | | E-mail from outside counsel re: locating relevant documents. | Attorney-Client

Attorney Work Product |

19

A 03585

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|----|-------------|-----------|
| 08/09/05 | Not Numbered | Kristen Scott | **Jeff Befort** (outside legal counsel) | | Letter to outside counsel re: information on personnel files. | Attorney-Client Communication |
| 08/09/05 | Not Numbered | Kristen Scott | **Jeff Befort** (outside legal counsel) | | Letter to outside counsel re: information on personnel files. | Attorney-Client Communication |
| 08/09/05 | Not Numbered | Kristen Scott | **Jeff Befort** (outside legal counsel) | | Letter to outside counsel re: information on personnel files. | Attorney-Client Communication |
| 08/09/05 | Not Numbered | Kristen Scott | **Jeff Befort** (outside legal counsel) | | Letter to outside counsel re: information on personnel files. | Attorney-Client Communication |
| 08/09/05 | Not Numbered | Kristen Scott | **Jeff Befort** (outside legal counsel) | | Letter to outside counsel re: information on personnel files. | Attorney-Client Communication |
| 05/01/02 | Not Numbered | **Michele Kloeppel** | | | Attorney notes re: Intermedia and compliance with various indentures. | Attorney Work Product |
| 05/09/02 | Not Numbered | KM | **Michele Kloeppel** | | Attorney notes on phone call message re: Matt Nichols and legal advice on non-disclosure agreements.. | Attorney-Client Communication |
| 03/27/02 | Not Numbered | **Michele Kloeppel** | | | Attorney notes re: conversation with Matt Nichols re: merger issues and legal advice on non-disclosure agreements. | Attorney-Client Communication |

DB02/048629 0094_0019/6733688.2

A 03586

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|----|-------------|-----------|
| 04/05/02 | Not Numbered | Michele Kloeppel | | | Attorney notes re: conversations with Bill Benston and M. Stockburger re: legal advice on sections of agreements. | Attorney-Client Communication |
| 04/04/02 | Not Numbered | Michele Kloeppel | | | Teamnet Communications re: Corporate Search. | Attorney Work Product |
| 11/10/00 | Not Numbered | Stephen Martin | Bruce Borghardt | | E-Mail from and to in-house counsel re: legal advice on SEC Informal Inquiry regarding WorldCom/ Intermedia Merger with attachment regarding chronology of merger negotiations prepared for litigation. | Attorney-Client Communication<br><br>Attorney Work Product |

DB02/048629.0094_0019/6733688.2

**A 03587**

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| | | Thomas O'Neil | Stephanie Abruscato, Mona Abutaleb, George Alber, Mary Alexander, John Allen, Samir Ammari, Mark Anderson, Cynthia Andreotti, Donna Armstrong, Gerard Badorrek, Thomas Ballance, John Barrett, Paul Bates, Michael Beach, Sara Beardsley, Ron Beaumont, John Bell IV, Carmen Bell, William Berkowitz, Michael Bickel, Deborah Blackwell, Seth Blumenfeld, Tom Bosley, Kevin Boyne, Michael Bradshaw, Bob Brejcha, Brian Brewer, Fred Briggs, JoeCerf, | Michael Salsbury, Stuart Blythe, Bruce Borghardt, Gram Meadors, Walter Nagel, Clint Smith, William Donovan, Stephen Martin, Ann Lafrance, Bradley Stillman, Carroll Casteel, Donna Sorgi, James Lewis, Lisa Smith, Mary Brown, Paul Eskildsen, Richard, Fruchterman, Richard Heitmann, Richard Whitt, Robert Koppel, Robert Peterson | E-Mail from in-house counsel re: Intermedia Merger and providing legal advice from in-house counsel re: merger issues. | Attorney-Client Communication<br><br>Attorney Work Product |

22

DB02/048629 0094_0019/6733688.2

A 03588

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| | | | Brooks, Jeffrey Brown, Daniel Brunner, Evan Buchanan, John Bullock, Bradford Burns, Kenneth Caldwell, Michael Callahan, John Callari, Puri Carpinteyro, Patrice Carroll, David Case, Kerry Casey, Peter Cassidy, Vinton Michael Cerone, Paul Charbonneau, Michael Cipicchio, Antohony Cirieco, Lynn Coker, Diana Cole, Robert Connelly, Scott Converse, Joseph Cook, Peggy Coons, Cynthia Cooper, Vincent Corica, Daniel Crawford Steve Cress, D. Crookston, D. Crump, John Cucci, Lon Cunninghis, | | | |

DB02/048629.0094_0019/6733688.2

23

A 03589