| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|----|-----|-----------|
|      |             |        | Phillip Dario, Diana Day, James Demerlis, Dolores Dicicco, Rosanne Dickerson, Leonard Disanza, Gary Dobel, Steve Dobel, Joyce Dorris, Diane Duggan, Scott Eason, Tracy Eastridge, Jerry Edgerton, Sonny Evans, Charles Fick, Thomas Flanagan, Edward Franklin, Jim Frawley, Kevin Gahan, Federico Gallart, Gretchen Gehret, Jerry Franklin, Jim Frawley, Kevin Gahan, Federico Gallart, Gretchen Gehret, Jerry Gerami, Todd Gerdes, Laura Giadone, Rick Gibbens, Diana Gowen, Thomas |    |     |           |

DB02/048629.0094_0019/6733688.2

A 03590

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| | | | Graham, Frank Grillo, Bill Grothe, Jim Gwinn, Cynthia Hamer, George Hampton, Glen Hanson, Victoria Harker, Robert Hartnett, Matthew Harty, John Hendler, Marcel Henry, Suleiman Hessami, Michael Higgins, Anita Hoffmann, Robert Hudspeth, James Huebner, Wayne Huyard, Paul Jacoby, Tom Jeanettes, Matthew Johnson, Steven Johnson, Christopher Kane, Sushil Kapoor, Jared Kearney, Nancy Keeney Shamim Kahn, Hack Kim, Kevin Klein, Martina Knee, Phillip Knell, Jennifer Knox, Dennis Kolb, John Krummel, | | | |

DB02/048629 0094_0019/6733688.2

A 03591

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| | | | Deborah Kuba, Bob Lacy, Lawrence Laque, Robert Lecour, Omar Leeman, Gerald Leonard, Robert Licari, Jeff Lindauer, Sanford Link, Ron Lomenzo, James Looper, Terence Macko, Nicholas Marano, William Marmon, David Martin, Susan Mayer, Thomas McCambridge, Kevin McGann, Lisa McAdams, Jon Mckeown, Sally Mcmahon Ronald Mcmurtrie, Eloise Mcneal, Brian McQuaid, Phillip Meeks, Jay Meyers Dona Miller, Gregory Moore, Christopher Morris, Tim Muilenburg, David Muller, Robert Mullins, | | | |

DB02/048629 0094_0019/6733688.2

A 03592

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|----|-------------|-----------|
|      |             |        | Dan Munger, Christopher Murphy, David Myers, James Myers, Terry Neal, John Nolan, Terence O'Connell, Michael O'Dell, Peter Olle, John Olmstead, Constance Paquette, Michael Pelcovits, Richard Perez, Melissa Pizzo, David Porter, Louis Prestwood, Richard Price, Patricia Proferes Robert Quinn, Paul Ramsey, Gina Rasure, Jay Rattien, Kenneth Rea, Timothy Reedy, Nicholas Ridolfi, Bert Roberts, Jorge Rodriguez, Jack Rosso, James Rush, Anthony Safavieh, Michael Sauer, Marc Schaub, Peter |    |             |           |

27

A 03593

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| | | | Russo, Mehrdad Schulz, Caleb Schutz, Jeff Schweikert, Anthony Scire Chester Scott, Stephanie Scott, Michael Serbousek, Kevin Shaughnessy Kevin Sheldon, Dennis Sickle, John Sidgmore, Andy Sills, Jay Slocum, Michael Smith, Nancy Smith, Darren St. Amant, Nancy Stainer, Keith Steiner, Michael Stewart, Jeffrey Sturgeon, Scott Sullivan, Michael Sunderman, Deborah Surrette Ed Tagg, Bruce Thomas, Terri Thomas, Don Thomason, Brian Trosper, William Trower, Frederick Trumpler, Bob Vetera, Jeffrey Wade, James | | | |

28

DB02/048629 0094_0019/6733688.2

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| | | | Waldo, John<br>Walters, Brooks<br>Warren, Rob<br>Whyley, Gregory<br>Wieboldt, Charles<br>Wiggs, Bruce<br>Willey, Steven<br>Williams, Gary<br>Wilson, Jack<br>Wimmer, James<br>Wolfinger, Sandra<br>Woznitski, Kay<br>Wulf, Stephen<br>Young, Jorge<br>Zapata, Rich<br>Zwicker | | | |
| 07/12/02 | | Michelle Berkovitz | **Michele Kloeppel** | | Phone Memo to in-house counsel re: Purchase Price for Intermedia. | Attorney-Client Communication |
| 06/29/01 | | **Michele Kloeppel** | **Bruce Borghardt** | | Phone Memo between in-house counsel re: Ruberg call on sale of stock. | Attorney-Client Communication<br><br>Attorney Work Product |
| 09/27/00 | | **Bruce Borghardt** | | | Phone Memo by in-house counsel re: Mark Wilson call. | Attorney-Client Communication<br><br>Attorney Work Product |
| 05/21/02 | | **Michele Kloeppel** | | | Attorney notes re: legal actions taken to complete Intermedia merger. | Attorney-Client Communication<br><br>Attorney Work Product |

DB02/048629 0094_0019/6733688.2

A 03595

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 04/25/02 | | Michele Kloeppel | | | Attorney notes re: legal review of Intermedia indentures. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/30/02 | | Michele Kloeppel | | | Attorney notes re: sale of Intermedia assets and subsidiaries. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/10/02 | | Michele Kloeppel | | | Attorney notes re: Intermedia stock and payment of dividends. | Attorney Work Product |
| Undated | | Michele Kloeppel | | | Attorney notes re: Intermedia indentures. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/02/02 | | Michele Kloeppel | | | Attorney notes re: Intermedia closing documents and legal issues on stock certificates. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/03/02 | | Michele Kloeppel | | | Attorney notes re: Intermedia promissory note terms and legal issues on repayment. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/01/02 03/28/02 | | Michele Kloeppel | | | Attorney notes re: Intermedia closing follow up. | Attorney-Client Communication<br><br>Attorney Work Product |

30

DB02/048629.0994_0019/6733688.2

A 03596

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 02/27/02 | | Michele Kloeppel | | | Attorney notes re: Intermedia closing issues regarding subordinated debt. | Attorney Work Product |
| 06/14/01 06/15/01 | | Michele Kloeppel | | | Attorney notes re: certificate of designation and preparation for closing of merger | Attorney-Client Communication<br><br>Attorney Work Product |
| 06/12/01 | | Michele Kloeppel | | | Attorney notes re: Intermedia closing and list of issues. | Attorney-Client Communication<br><br>Attorney Work Product |
| 06/11/01 | | Michele Kloeppel | | | Attorney notes re: Amendments to Merger Agreement. | Attorney-Client Communication<br><br>Attorney Work Product |
| 06/11/01 | | Michele Kloeppel | | | Attorney notes re: **Borghardt** message concerning how to handle stock owned by specific named individuals. | Attorney-Client Communication<br><br>Attorney Work Product |
| 05/17/01 | | Michele Kloeppel | | | Attorney notes re: Intermedia transaction and legal issues to be resolved. | Attorney-Client Communication<br><br>Attorney Work Product |
| 02/12/01 | | Bruce Borghardt | | | Attorney notes re: merger and shareholder vote. | Attorney Work Product |

31

A 03597

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|----|-------------|-----------|
| 06/01/01 | | Michele Kloeppel | | | Attorney notes re: acquisition subsidiaries used in merger. | Attorney Work Product |
| 01/29/01 | | Michele Kloeppel | | | Attorney notes re: stock resolutions & Intermedia. | Attorney Work Product |
| 11/09/01 | | Bruce Borghardt | | | Attorney notes re: phone calls from Andrew Smith and Jerry Hennigan. | Attorney Work Product |
| 11/03/00 | | Bruce Borghardt | | | Attorney notes re: Intermedia SEC inquiry. | Attorney Work Product |
| 10/12/00 | | Michele Kloeppel | | | Attorney notes re: edits to S-4. | Attorney Work Product |
| 09/16/00 | | Bruce Borghardt | | | Attorney notes re: Intermedia and indemnity provisions. | Attorney Work Product |
| 09/15/00 | | Michele Kloeppel | | | Attorney notes re: Intermedia stock options and impact of merger on same. | Attorney Work Product |
| 09/15/00 | | Bruce Borghardt | | | Attorney notes re: sale of Intermedia. | Attorney Work Product |
| 09/06/00 | | Michele Kloeppel | | | Attorney notes re: SEC filings related to Intermedia merger. | Attorney-Client Communication<br><br>Attorney Work Product |
| 05/31/01 | | Michael Drayer | Arthur Horn | | E-mail from in-house counsel re: terms of Watsco agreement. | Attorney-Client Communication |

DB02/648629.0094_0019/6733688.2

A 03598

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 03/06/01 | | **Michael Drayer** | Arthur Horn, Mike Myhand, Richard Klepacz | Scott Wagner | E-mail from in-house counsel re: terms of Watsco agreement (IntermediaOne customer agreement). | Attorney-Client Communication |
| 03/02/01 | | **Michael Drayer** | Arthur Horn, Mike Myhand, Scott Wagner | Tricia Gurr | E-Mail from in-house counsel re:  terms of Watsco agreement and Appendix A to 3 documents. | Attorney-Client Communications |
| 03/01/01 | | **Michael Drayer** | Sherrie Butler | Richard Klepacz, Mike Myhand, Arthur Horn, Scott Wagner | E-Mail from in-house counsel re:  edits to revised Watsco Voice Addendum to IntermediaOne customer agreement. | Attorney-Client Communication |
| 03/01/01 | | Richard Klepacz, | **Michael Drayer**, Sherrie Butler | Arthur Horn, Mike Myhand, Scott Wagner | E-Mail re: Revised Watsco Voice Addenda and responding re revised Addendum to IntermediaOne customer agreement. | Attorney-Client Communication |
| 03/01/01 | | **Michael Drayer** and Arthur Horn | Arthur Horn, **Michael Drayer**, Sherrie Butler, Richard Klepacz | Mike Myhand, Scott Wagner | E-Mail to and from in-house counsel re: Watsco Voice Addenda (IntermediaOne customer agreement). | Attorney-Client Communication |
| 03/01/01 | | **Michael Drayer** | Sherrie Butler, Richard Klepacz | Arthur Horn, Mike Myhand, Scott Wagner | E-Mail from in-house counsel re: Revised Watsco Voice Addenda (IntermediaOne customer agreement). | Attorney-Client Communication |

33

A 03599

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 03/01/01 | | **Michael Drayer** | Sherrie Butler Richard Klepacz | Arthur Horn, Mike Myhand, Scott Wagner | E-Mail from in-house counsel providing legal advice re: Watsco Addenda-Voice (IntermediaOne customer agreement). | Attorney-Client Communication |
| 02/28/01 | | Richard Klepacz | Mike Myhand, **Michael Drayer** | | E-Mail to in-house counsel and others re: Watsco Addendum to IntermediaOne customer contract accepting changes proposed by legal counsel. | Attorney-Client Communication |
| 03/01/01 | | Arthur Horn | Tricia Gurr | **Michael Drayer** | E-Mail re: pricing & address for use in addendum to IntermediaOne customer contract. | Attorney-Client Communication |
| 02/28/01 | | **Michael Drayer** | Arthur Horn, Mike Myhand, Scott | | E-Mail providing legal advice re: Watsco Data MSA. | Attorney-Client Communication |
| 02/28/01 | | **Michael Drayer** | Mike Myhand, **Michael Drayer** | Arthur Horn, Scott Wagner | E-Mail from and to in-house counsel re: legal advice on negotiation of contract terms. | Attorney-Client Communication |
| 02/27/01 | | **Michael Drayer** | Arthur Horn, Mike Myhand, Scott Wagner | | E-Mail from in-house counsel providing legal advice re: Watsco requested changes in agreement | Attorney-Client Communication |

34

DB02/048629 0094_0019/6733688.2

A 03600

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 02/27/01 | | Mike Myhand | **Michael Drayer, Arthur Horn, Scott Wagner** | | E-Mail to in-house counsel and others re: meeting to discuss legal advice on contract issues. | Attorney-Client Communication |
| 02/23/01 | | **Michael Drayer** | Mike Myhand | | E-Mail from in-house counsel providing legal advice re: draft data MSA | Attorney-Client Communication |
| 02/21/01 | | Mike Myhand | **Michael Drayer** | | E-Mail to in-house counsel seeking legal advice re: Addendum to Watsco agreement. | Attorney-Client Communication |
| 04/30/01 | | **William Smith** | Christine Biagioni | | E-mail from in-house counsel re: Intermedia S-4 with attached draft of S-4 document. | Attorney-Client Communication  Attorney Work Product |
| 09/14/00 | | **Michele Kloeppel** | Mark Wilson | | E-mail from in-house counsel re: HSR filing plans. | Attorney-Client Communication |
| 09/14/00 | | **Mary Brown** | **Bruce Borghardt, Michele Kloeppel** | **Deborah Garza,** Rick Rule | E-mail from in-house counsel re: HSR filing plans. | Attorney-Client Communication |
| 10/24/00 | | **Michele Kloeppel** | | | Attorney handwritten notes on Hart Scott Rodino filings and conference with **Deb Garza (outside counsel).** | Attorney-Client Communication  Attorney Work Product |

DB02/048629.0094_0019/6733688.2

**A 03601**

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 10/13/00 | | Roland Behm | **Michele Kloeppel** | | E-mail to in-house counsel re: clarification regarding MAE with handwritten notes and attached draft of letter. | Attorney-Client Communication |
| 12/07/00 | | **Bruce Borghardt** | Scott Sullivan | | E-mail from in-house counsel re: FCC update on filings opposing merger | Attorney-Client Communication |
| 12/06/00 | | **Mary Brown** | Alan Weiss, Ann Lafrance, B. Knaus, Bradford Burns, Bradley Stillman, Brian Sulmonetti, Bruce Metge, Bruce Sokler, **Bruce Borghardt**, Carl Geisy, Carroll Casteel, Claire Hassett, Craig Silliman, Cristin Flynn, David Porter, **Deborah Garza**, Donna Sorgi, Douglas Brent, Elizabeth Yockus, Eric Artman, James Freeman, Gil Strobel, Heather Gold, James Lewis, J. Canis, Jean Kiddoo, Joan | | E-mail from in-house counsel re: FCC Update on filings opposing merger. | Attorney-Client Communication |

36

**A 03602**

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| | | | Campion, Jonathan Spear, Kathy Wallman, Kerry Murray, Leigh Cox, Les Kumagai, Mario Filipponi, Marsha Ward, Michael Pelcovits, **Michele Kloeppel, Michael Salsbury**, Neal Larson, Pat Kurin, **Paul Eskildsen**, Peter Lucht, Rebecca O'Donnell, Richard Fruchterman, Richard Severy, Richard Metzger, Richard Whitt, Rick Heitmann, Rick Rule, Robert Koppel, Robert Lopardo, Ruth Milkman, Clint Smith, Terri Bryson, **Thomas O'Neil**, Valerie Yates, Timothy Vogel, William Donovan, Zainal | | | |

37

A 03603

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|------|-------------|--------|-----------|-----|-------------|-----------|
| 10/17/04 | | Roland Behm | **Bruce Borghardt** | | E-mail to in-house counsel re: letter to Intermedia employees with attorney handwritten notes and attached report. | Attorney-Client Communication<br>Attorney Work Product |
| 08/20/02 | | David Stoughton | **Michele Kloeppel** | | Fax to in-house counsel re: Intermedia Communications officers with counsel's handwritten notes. | Attorney-Client Communication<br>Attorney Work Product |
| 05/21/01 | MCIWC007387-7396 | Mary Campanola | **Michael Drayer,** Kathy Victory | Chris Gaffney, Bill Rochfort, Rick Buyens | E-mail to in-house counsel and others re: Merchant Wired – LD Voice with proposed edits to draft of Addendum. | Attorney-Client Communication |
| 04/03/01 | MCIWC007404-7405 | James Coldren | **Michael Drayer,** Sherrie Butler, Chris Gaffney, Michael Dunn | Jim Renforth | E-mail to in-house counsel and others re: Merchant Wired/Voice and IntermediaOne product. | Attorney-Client Communication |
| 04/03/01 | MCIWC007406-7408 | **Michael Drayer** | Chris Gaffney, Michael Dunn, Ken Nordine, Suzanne Schwallie | Cheryl Mellon, Sherrie Butler, Jim Renforth, Gianni Walkey, Kathy Victory, Bill Rochfort, Dennis Fredrickson, Pamela Campodonico | E-mail from in-house counsel providing legal advice re: Merchant Wired/Voice with attached document that includes revised terms requested by counsel. | Attorney-Client Communication |

38

A 03604

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 04/02/01 | MCIWC007409-7411 | **Michael Drayer** | Jim Renforth | Cheryl Mellon, Sherrie Butler, Gianni Walkey | E-mail from in-house counsel providing legal advice re: Merchant Wired with attached document reflecting counsel's revisions. | Attorney-Client Communication |
| 03/28/01 | MCIWC007414-7415 | **Michael Drayer** | Ken Nordine | Bill Rochfort, Suzanne Schwallie | E-mail from in-house counsel re: Merchant Wired Changes. | Attorney-Client Communication |
| 03/22/01 | MCIWC007416-7418 | **Michael Drayer** | Kathy Victory, Cheryl Mellon, Jack Lee, Sherrie Butler | Dennis Fredrickson, Bill Rochfort, Suzanne Schwallie, Michael Dunn, Chris Gaffney, Ken Nordine | E-mail from in-house counsel providing legal advice re: Merchant Wired MSA Revisions with attached draft of addendum reflecting counsel's revisions. | Attorney-Client Communication<br><br>Attorney Work Product |
| 04/17/01 | Not numbered | **Rob Manning** | Chip Yorkgifts | | Memo providing legal advice re: follow-up questions from the Department of Justice | Attorney-Client Communication |
| 09/10/01 | Not numbered | **Prince Jenkins** | Michael Randels | | E-mail providing legal advice re: regulatory issues for WorldCom | Attorney-Client Communication |
| 09/02/05 | MCIW029866 | Michael Randels | **Donald Ramsay** | | E-mail sending documents re: headcount due diligence. Document attached to e-mail has been produced. | Attorney-Client Communication |

39

A 03605

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 09/02/05 | MCIW029869 | Michael Randels | **Donald Ramsay** | | E-mail forwarding to counsel information re: Product Weekly Integration Updates. Information sent with e-mail has been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW029873 | Michael Randels | **Donald Ramsay** | | E-mail forwarding information re: Sales – Weekly integration issues, updates and changes. Information attached to e-mail has been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW029876 | Michael Randels | **Donald Ramsay** | | E-mail forwarding information re: Sales Final-Update. Information attached to e-mail has been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW029878 | Michael Randels | **Donald Ramsay** | | E-mail forwarding information re: 10/24/ Wednesday Report: P1-P16. Information attached to e-mail has been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW029880 | Michael Randels | **Donald Ramsay** | | E-mail forwarding information re: Intermedia RIF date report. Attached information has been produced. | Attorney-Client Communication |

40

A 03606

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 09/02/05 | MCIW030054 | Michael Randels | **Donald Ramsay** | | E-mail forwarding Master RIF list. Master list has been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW030109 | Michael Randels | **Donald Ramsay** | | E-mail forwarding Financial Spreadsheet. Financial Spreadsheet has been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW030113 | Michael Randels | **Donald Ramsay** | | E-mail forwarding Voice Product Strategy Plans. Information attached to e-mail has been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW030138 | Michael Randels | **Donald Ramsay** | | E-mail forwarding Integration Planning – Presentations. Integration Planning Presentations have been produced. | Attorney-Client Communication |
| 09/02/05 | MCIW030150 | Michael Randels | **Donald Ramsay** | | E-mail forwarding document re: 7/20/00 presentation. Information attached to e-mail has been produced. | Attorney-Client Communication |
| 09/02/05 | MCI030177 | Michael Randels | **Donald Ramsay** | | E-mail forwarding document re: Intermedia's HRM's PeopleSoft is merging with WCOM's HRMS PeopleSoft. Document sent with e-mail has been produced. | Attorney-Client Communication |

41

A 03607

| Date | Bates Range | Author | Recipient | CC | Description | Privilege |
|---|---|---|---|---|---|---|
| 09/02/05 | MCIW030179 | Michael Randels | Donald Ramsay | | E-mail forwarding document re: ICIX Headcount slides. Document attached to e-mail has been produced. | Attorney-Client Communication |
| 09/10/02 | Not Numbered | Jeff Hsu | Megan Lawless | | Cover sheet regarding Webley Systems (attached document produced at Bates Nos. MCIWC030392-030463) | Attorney-Client Communication<br><br>Attorney Work Product |

DB02/048629 0094_0019/673368K.2

A 03608



10230 S. 50th Place
Phoenix, AZ 85044
Office: 602.296.3300
Fax: 602.296.3311

Writer's Direct No.
(888)-387-3481

March 12, 2002

**Via Federal Express Mail**
Mr. Rich Black
Senior Vice President
of Sales and Marketing
One Intermedia Way
Tampa, Florida 33647

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) ("**EffectNet**") and Intermedia Communications, Inc. ("**Intermedia**") (the "**Agreement**")

Dear Mr. Black:

Pursuant to the terms of the referenced Agreement, Intermedia agreed to market the UC Services to Intermedia customers and end users, including wholesale and retail customers. Intermedia agreed to provide periodic forecasts of expected mailbox activations, the first of such forecasts to be provided on or before November 30, 2000. Intermedia also agreed to deliver a minimum number of current active subscribers on or before certain dates up to a minimum of 10,000 such subscribers on or before December 18, 2001 and at the end of each calendar month thereafter for the Term of the Agreement. Intermedia also agreed to pay the agreed pricing for activated mailboxes pursuant to the Agreement. Intermedia further agreed to pay all invoices within 15 calendar days of receipt. Intermedia also agreed to pay a Reconciliation Payment as of the Ramp Date and the end of each calendar month thereafter during the Term. On February 12, 2002, Intermedia received an invoice for the pricing applicable to subscribers and for the Reconciliation Payment with respect to the

Exhibit F

A 03609

Mr. Rich Black
Page 2 of 3
March 12, 2002

month of December 2001 (including the Ramp Date) and the month of January 2002.  Each of the forgoing obligations has not been fulfilled by Intermedia as required by the Agreement ("**Intermedia Defaults**") and each such obligation is a material obligation of Intermedia under the Agreement.  The forgoing is not intended to be a full and complete statement of all material obligations under the Agreement that remain unfulfilled by Intermedia.  Capitalized terms used in this letter without definition have the meaning assigned to such term in the Agreement.

EffectNet hereby gives Intermedia written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults and EffectNet further hereby gives Intermedia written notice that EffectNet may (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice if each of the Intermedia Defaults has not been cured within such thirty (30) day period, and (ii) further exercise all available remedies pursuant to the terms of the Agreement and as otherwise may be available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of the Agreement, of the amounts itemized below:

Total Amount Past Due on invoice 1010,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the December 2001 billing cycle):                  $274,021.05

Total Amount Past Due on invoice 1011,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the January 2002 billing cycle):                   $274,066.20

**Required Payment:**                                   $548,087.25

The total amount past due is as of March 12, 2002.  EffectNet gives notice that all provisions of default will be strictly enforced.  As indicated above, Intermedia has until the expiration of thirty (30) days after this written notice to remit the Required Payment.  The Required Payment should be made payable, and delivered by wire transfer to Wells Fargo Bank, Tempe, Arizona; ABA Routing Number 1221-05278; EffectNet Operations Account; Account Number 046-4657220; attn: Stephanie Jordan at 480-644-8396.

A 03610

Mr. Rich Black
Page 3 of 3
March 12, 2002

Intermedia should also take notice of the Due Date of invoice #1018, dated March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on March 6, 2002. Payment of this amount is due on or before March 21, 2002.

If Intermedia fails to cure the Intermedia Defaults and if EffectNet terminates the Agreement as aforesaid, EffectNet may claim damages for all amounts due pursuant to the Agreement, including, without limitation, the following:

| | |
|---|---|
| Required Payment | $ 548,087.25 |
| Invoice # 1018 | $ 279,757.02 |
| Reconciliation Payments | |
| for the unexpired Term | $5,662,667.58 |
| Forfeiture of Deposit | $ 175,000.00 |

Nothing in this letter is intended to be a waiver or release of any rights or remedies, or an election thereof, that EffectNet has under the Agreement or applicable law, and all such rights and remedies are hereby expressly reserved in their entirety.

Very truly yours,

Robert C. McConnell
General Counsel

A 03611

SCANNED

JAN  7 2005



One Parkway North
Fourth Floor North
Deerfield, Illinois 60015
Office:  888.444.6400

Writer's Direct No.
(888)-387-3481

March 25, 2002

**Via Federal Express Mail**
Mr. Brett Bacon
MCI/WorldCom
1945 Old Gallows Road
Vienna, Virginia 22182

Re: Unified Communications General Agreement, dated November 20, 2000, by and between EffectNet, Inc. (formerly EffectNet LLC) ("**EffectNet**") and Intermedia Communications, Inc. ("**Intermedia**") (the "**Agreement**")

Dear Mr. Bacon:

EffectNet, by letter to the attention of Mr. Rich Black, dated March 12, 2002, issued a written notice of default under Section 5.2 of the Agreement with respect to the Intermedia Defaults, as defined in the March 12 letter (the "**March 12 Letter**").  I understand from you that Mr. Black referred the March 12 letter to your attention upon receipt.  As you know, the Agreement in Section 5.2 provides that "[t]ermination due to default under this Section shall be effective thirty (30) days after written notice to the defaulting Party if the default has not been cured within such thirty (30) day period."  Accordingly, the Agreement will be terminated for default by Intermedia on or about April 12, 2002 if the Intermedia Defaults are not cured prior thereto.

I spoke with you on or about March 13 and you indicated that Intermedia and/or its affiliates were interested in pursuing immediate settlement discussions.  I also understand that you spoke with Mr. Jim Calandra, Chief Financial Officer of EffectNet on March 18 and that you told Mr. Calandra that Mr. Barry Zip would

Exhibit G

A 03612

Mr. Brett Bacon
Page 2 of 3
March 25, 2002

be handling settlement discussions.  Further, I understand that you told Mr. Calandra that you would provide Mr. Zip with contact information of Mr. Calandra.  On March 20, Mr. Calandra exchanged voice messages with you whereby Mr. Calandra inquired of Mr. Zip and the lack of communication from him and you responded by giving Mr. Calandra, for the first time, contact information for Mr. Zip.  Mr. Calandra called Mr. Zip the same day, March 20, and left a voice message for Mr. Zip requesting that Mr. Zip return the call.  Neither Mr. Calandra nor anyone else has since received any communications from Intermedia or its affiliates regarding this matter.  As you might imagine, EffectNet is becoming increasingly concerned that Intermedia and/or its affiliates fail to understand the gravity of this matter and the urgency with which it must be addressed.

Intermedia should also take notice of the Due Date of invoice #1018, dated March 5, 2002, in the amount of $279,757.02 and delivered to Intermedia on March 6, 2002.  Payment of this amount was due on or before March 21, 2002.  EffectNet has not received this past due payment (the **"February Payment Default"**).

Accordingly, EffectNet hereby gives Intermedia written notice of default under Section 5.2 of the Agreement with respect to the February Payment Default and EffectNet further hereby gives Intermedia written notice that EffectNet may (i) terminate the Agreement under Section 5.2 due to default effective thirty (30) days after this written notice (if the Agreement is not sooner terminated pursuant to the March 12 Letter) if the February Payment Default has not been cured within such thirty (30) day period, and (ii) further exercise all available remedies pursuant to the terms of the Agreement and as otherwise may be available at law or in equity.

EffectNet hereby demands immediate payment, in accordance with the terms of the Agreement, of the amounts itemized below:

Total Amount Past Due on invoice 1010,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the December 2001 billing cycle):                    $274,021.05

Total Amount Past Due on invoice 1011,
dated February 6, 2002, and delivered to
Intermedia on February 12, 2002
(for the January 2002 billing cycle):                      $274,066.20

A 03613

Mr. Brett Bacon
Page 3 of 3
March 25, 2002

Total Amount Past Due on Invoice #1018,
dated March 5, 2002, and delivered to
Intermedia on March 6, 2002
(for the February 2002 billing cycle):                      <u>$279,757.02</u>

**Required Payment:**                                        $827,844.27

The total amount past due is as of March 21, 2002. EffectNet gives notice that
all provisions of default will be strictly enforced. As indicated above, Intermedia
has until the expiration of thirty (30) days after the March 12 Letter or this
written notice, as the case may be, to remit the Required Payment. The
Required Payment should be made payable and delivered by wire transfer to
Wells Fargo Bank, Tempe, Arizona; ABA Routing Number 1221-05278; EffectNet
Operations Account; Account Number 046-4657220; attn: Stephanie Jordan at
480-644-8396.

If Intermedia fails to cure the Intermedia Defaults and the February Payment
Default and if the Agreement is terminated as aforesaid, EffectNet may claim
damages for all amounts due pursuant to the Agreement.

Nothing in this letter is intended to be a waiver or release of any rights or
remedies, or an election thereof, that EffectNet has under the Agreement or
applicable law, and all such rights and remedies are hereby expressly reserved in
their entirety.

Very truly yours,

Robert C. McConnell
General Counsel

CC: Mr. Rich Black

STINSON MORRISON HECKER LLP

Robert L. Driscoll, Esq.
Allison M. Murdock, Esq.
Mark M. Iba, Esq.
1201 Walnut Street
Kansas City, MO 64106
Telephone:    (816) 842-8600
Facsimile:    (816) 691-3495
Attorneys for Reorganized Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | Chapter 11 Case No. 02-13533 (AJG) |
| WORLDCOM, INC., *et al.*, | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |

--------------------------------------------------------x

## DEBTORS' RESPONSE TO CLAIMANT'S
## QUESTIONS REGARDING "LITIGATION HOLD"

Debtors MCI WorldCom Communications, Inc. ("MCI") and Intermedia

Communications, Inc. ("Intermedia") (collectively "Debtors") provide the following responses to

the questions regarding "litigation hold" served by Claimant Parus Holdings, Inc. successor-by-

merger to EffectNet, Inc. and EffectNet, LLC ("Claimant") on November 21, 2006.[1]

### General Objection

Claimant's questions use the phrase "litigation hold" without explanation or definition. If

Claimant intends "litigation hold" to be defined as set forth in Claimant's Second Request for

----

[1] Claimant served these questions after Debtors objected to subpoenas served on their former in-
house litigation counsel Jeffrey Hsu and David Wachen and to a notice of deposition served on
Debtors pursuant to Fed. R. Civ. P. 30(b)(6) because they sought information and documents
protected from disclosure by the attorney-client privilege and/or litigation work product
immunity.

DB02/048629

Exhibit H

**A 03615**

Production of Documents served on October 20, 2006, Debtors object to that definition. In its second document request, Claimant defines "litigation hold" to mean "an express written or oral instruction, order or directive to preserve and/or maintain documents." This definition fails to acknowledge or include the concept that a duty to preserve documents does not arise until the party is put on notice that litigation is reasonably anticipated. Even then, the obligation is limited to a duty to preserve documents that are relevant to the anticipated claim. The existence of a duty to take affirmative steps to preserve documents, as well as the scope and extent of any such duty, must also be evaluated in the context of the Debtors' bankruptcy filing in which over 60,000 claims were asserted. Thus, Debtors object to Claimant's definition of "litigation hold" because it improperly attempts to impose or assume a legal obligation to preserve certain documents at times when no such obligation existed.

### Specific Objections and Responses

Subject to and without waiving the foregoing general objection, Debtors respond to Claimant's questions as follows:

**Question 1.** **On what date did Intermedia and MCI believe that a possible threat of litigation with EffectNet/Parus existed.**

**Answer.** Regarding the breach of contract claim, Debtors have not identified the date on which they first believed that a possible or likely threat of litigation existed regarding Claimant's claim that Intermedia failed to make reconciliation payments in breach of the Unified Communications Services General Agreement dated November 20, 2000 between Intermedia and EffectNet LLC ("UC Contract"). Although Claimant did not bill Intermedia for reconciliation payments under the UC Contract until February 2002, during March 2002,

2

Claimant's General Counsel advised that if Intermedia did not make those

reconciliation payments on or before April 12, 2002, the UC Contract would

terminate on that date pursuant to §5.2 of the contract and that Claimant "may

claim damages for all amounts due pursuant to the [UC Contract]." Intermedia

did not make the reconciliation payments that Claimant claimed were due.

Nevertheless, Claimant did not assert any claim for breach of contract until after

WorldCom had instituted bankruptcy proceedings on July 21, 2002.

Regarding consequential damage and tort claims, Debtors had no reason to

believe that there was a threat or likelihood of litigation before Claimant actually

asserted such claims. This is true for three reasons. First, under section §11 of

the UC Contract, the parties (which include Parus Holdings, Inc. and WorldCom

as successors by merger to EffectNet LLC and Intermedia, respectively) may not

assert any claims for consequential damages against each other. Second,

WorldCom and Intermedia were prohibited from engaging in the type of business

activities that Claimant has alleged as the bases for its consequential damage and

tort claims. Specifically, from and after November 17, 2000, WorldCom and

Intermedia were subject to a Hold Separate Stipulation and Order entered into

with the United States Department of Justice and filed with the federal court

requiring WorldCom and Intermedia to maintain the business operations of

Intermedia (including its contractual relationships) separate from and

uninfluenced by WorldCom. See Hold Separate Stipulation and Order dated

November 17, 2000, USA v. WorldCom, Inc. & Intermedia Communications,

Inc., D.D.C., Case No. 1:00CV02789 (RWR) (attached as Exhibit A). Third,

3

**A 03617**

Intermedia was a subsidiary of WorldCom on and after July 1, 2001. As a matter of black letter law, a subsidiary cannot conspire with its parent, nor does a claim lie for a parent interfering with its contracts, which are what Claimant has alleged. Debtors did not know (nor did they have any reason to know) that the Claimant was going to make such allegations until after Claimant filed its claim in the bankruptcy proceeding. Prior to reviewing Claimant's filing – which was one of over 60,000 claims filed in WorldCom's bankruptcy proceeding – Debtors believed that Claimant was seeking only unpaid reconciliation payments under the UC Contract raised in 2002.

**Question 2.**    **On what date did Intermedia and MCI determine that litigation with EffectNet/Parus was likely to occur or may occur.**

**Answer.**            See Debtor's response to Question No. 1.

**Question 3.**    **On what date Intermedia and MCI should have known that there was a possible threat of litigation with EffectNet/Parus.**

**Answer.**            Debtors object to this request as seeking a legal conclusion, not facts. Without waiving this objection, see Debtors' response to Question No. 1.

**Question 4.**    **Which persons at Intermedia and MCI identified the threat or possibility of litigation with EffectNet/Parus and how was such threat or possibility determined.**

**Answer.**            Debtors' in-house counsel identified the threat or possibility of litigation with Claimant concerning an alleged breach of contract after Intermedia failed to make certain reconciliation payments on or before April 12, 2002 based on correspondence from Claimant's General Counsel stating (1) that the UC Contract

4

A 03618

would be terminated as of April 12, 2002 pursuant to §5.2 of that contract if Intermedia did not make certain payments by that date and (2) that Claimant "may claim damages for all amounts due pursuant to the [UC Contract]" if Intermedia did not make those payments.

Debtors did not identify a threat or possibility of litigation with Claimant concerning any consequential damages or tort claims until Claimant actually asserted those claims in WorldCom's bankruptcy proceeding. Debtors' counsel determined that such claims had been made by evaluating Claimant's proofs of claim among the over 60,000 of proofs of claim filed in the bankruptcy proceeding.

**Question 5.** **Was the possible threat of litigation with EffectNet/Parus identified as part of the due diligence related to the MCI/Intermedia merger. If yes, on what date, by whom, and how so.**

**Answer.** For purposes of responding to this question, Debtors assume that the phrase "the due diligence related to the MCI/Intermedia merger" means during the time preceding the July 1, 2001 effective date of the MCI/Intermedia merger during which the parties were undertaking pre-merger due diligence. Based on that assumption, as of July 1, 2001, Intermedia had not yet failed to make the reconciliation payments which underlie Claimant's breach of contract claim, and Claimant had not yet made known its consequential damage or tort claims. In addition, all of the acts that Claimant has advanced to support its consequential damage and tort claims took place after July 1, 2001. Accordingly, Debtors do not believe that a possible threat of litigation was identified, nor could have been

5

A 03619