# RECORDS RETENTION SCHEDULE

## History

In 1992, MCI hired Price Waterhouse as a consultant to help create a records retention schedule for a records management program.

Price Waterhouse and MCI interviewed VPs, Directors, and Sr. Managers regarding the type of records they had within their departments, and what function each department performed. The Records Retention Schedule (RRS), and the functional records within it, was created from this information. Price Waterhouse created the RRS, as a database, on Paradox for Windows. The database and software currently reside on Lisa Hayward's CPU and within the NSPCY105 LAN server. RIM also has the software on diskette. In addition, the RRS has been converted to Microsoft Access for use within RIM's website.

The legal periods appearing in the RRS were derived two different ways. Price Waterhouse performed the legal research for all Federal recordkeeping requirements. Once Price Waterhouse turned over the RRS to MCI, Records Management performed all the legal research for state and local recordkeeping requirements. The legal research was performed by using the books "Legal Requirements for Business Records, Guide to Records Retention and Recordkeeping Requirements" by Donald S. Skupsky, JD, CRM, Information Requirements Clearinghouse. There are two volumes for state requirements and two volumes for federal requirements. Once a year, supplements or amendments are sent to RIM, and the books are updated. RIM pays for this yearly service.

Federal recordkeeping requirements should be researched through the "Guide to Record Retention Requirements in the Code of Federal Regulations" (CFR), the Legal Requirements books as stated above, or through Lexis-Nexis. The CFR is published by the Office of the Federal Register, National Archives and Records Administration. The latest version of this book is January 1, 1994. All federal and state recordkeeping requirements need to be reviewed every five years. Supplements and amendments are reviewed as they are received via first-class mail. In addition, RIM can contact network MCI Library and submit a research request. The network MCI Library will perform any kind of research. You can submit a research request through the web at http://nml.MCIt.com/library/researchit.htm.

With the legal recordkeeping requirements taken care of, RIM reviewed company operational recordkeeping requirements for each functional type record. This was performed by asking each department to justify the retention of any functional type record for longer than a one year period. If there are no legal or operational recordkeeping requirements, records are to be destroyed. If records with no recordkeeping requirements are placed in storage, they are retained until the yearly destruction review project is performed. Operational need of a record may extend longer than a legal period. If this is the case, it must be documented. The retention period will be noted in the retention schedule. The new retention period will now become company policy.

MCIWC031798

A 03940

Any reduction of records retention period within the RRS needs to be approved by LPP. For any changes in retention periods for financial records, Tax and LPP must approve the change.

The RRS has been changed 3 times in the last five years. The last revision to the RRS was to change its look, as well as merge records series or change some retention periods. A majority of the financial records that were 10 years in retention were changed to 7 years. There were three states driving the retention of 10 years: NC, SC, and CT. LPP and Records Management performed a search for the citations and found that two of the states repealed their 10 year retention rule to 7 years - that left one state with a 10 year retention (NC). MCI's Controller, LPP and Tax were consulted regarding the risk factors for the company if we reduced the retention to 7 years, even though one state dictated that we must retain financial records for 10 years. The Controller, LPP and Tax decided that the risk was minimal, especially since the federal requirement is 7 years. The change to the RRS was made mid-1997.

Records Management performed the legal research for Canadian legal records retention requirements via software called "Filelaw". The RRS is based on the "conservative thought" that the company use the highest retention period found under federal, state or local laws. The legal research for Canadian laws shows that there were only two record series, trademarks and patents, that needed changing. **The change to the RRS was** performed in the beginning of 1997.

The final change to the RRS was in early 1998. This change involved merging "like type" records together, creating one record series for each type record. See Appendix C for this merged listing. For the latest version of the RRS see Appendix A.

A listing of "Records Needed by LPP for Possible Litigations" is under Appendix B.

The electronic version of the RRS sent to the storage vendors for downloading to their system is in Appendix D.

The retention value for the RRS is S+15 under record series RS757.

MCIWC031799

A 03941

Records Management Program – Policies & Procedures

## The Record Retention Schedule (RRS)

The RRS is a tool used by all MCI employees to determine time frames for the retention and disposition of all records created, received, used, and distributed by MCI.

It is not beneficial to MCI to retain records longer than the RRS indicates. There are as many risks in retaining records too long, as there are by not retaining them long enough; therefore, each employee should know the retention requirement, according to the RRS, for all records within their department.

Please understand that even if a record does not have a legal retention value, the records are fully discoverable under law, and can be requested during a litigation. Therefore, it is important that records with no retention be purged when a department's operational need is complete. If records are disposed of during the course of business instead of being unduly retained, they would not be available for discovery during a litigation. Once a record has been requested under discovery for a litigation, it must not be destroyed until authorized by LPP.

Only the official copyholder of a record is required to retain a record for the total retention period. If you maintain originals, you are the official copyholder. Creating a record does not mean you are the official copyholder; you must also maintain the original.

Copies should not be kept once a department's operational need is completed. Operational need being the time MCI requires a record to be retained that has no legal retention.

The RRS is reviewed annually by the RIM, LPP and Tax to determine if changes are necessary to reflect any possible changes in MCI's organizational structure, and/or changes in applicable recordkeeping laws/regulations.

You should use the RRS any time you are trying to determine retention/disposition actions for MCI's records. You must also use the RRS to determine the Record Series (RS) number when placing records in storage and filling out an inventory form.

The RRS groups "like records" first by major function (Primary Classification), and then by type of record within that function. The RRS gives descriptions of each record series, along with the total retention period for which records should be retained before consideration for disposition.

For example:

MCIWC031800

A 03942

Records Management Program – Policies & Procedures ▬▬▬▬▬

**WORLDCOM**
**Records Retention Schedule**

| PRIMARY CATEGORY : ACCOUNTING | | Friday, January 05, 200· | | Page 1 |
|---|---|---|---|---|
| RS # | RECORD SERIES | DEFINITION | TOTAL (years) | COM |
| | 1 ACCOUNTING | The management of receipts and expenditures, cost accounting and payroll, and the auditing of said functions | | |
| 5 | 2 Audits | Audits of accounting records and/or procedures, including backup materials such as Internal Document Requests (IDRs) | C + 7 | FA, V |
| | 2 Cash | | | |
| 12 | 3 Accruals | Information concerning cash forecast and related accounts, such as Cash Forecast Reports, Cash Accrual Reports, etc. | 1 | |
| 11 | 3 Accumulation Accounts | Cash balance reports for WCOM bank accounts | 7 | FA |
| 13 | 3 Daily Cash Folders | Folders incorporating items such as Chase Concentration Report and Cash Report | 2 | |
| | 3 Flow | | | |

RS # - The Record Series Number that uniquely identifies each type of record.

RECORD SERIES - A grouping of like records by classification/function.

DEFINITION - Used to describe a particular Record Series, may include sample document types.

TOTAL - The total length of time (number of years) that a Record Series must be retained.

Note: Retention periods are usually expressed as a number of years. Some retention periods are preceded by a letter. The letter is an abbreviation for a record occurrence (i.e., termination or completion of a contract). For example, C + 15 for a contract means that the contract needs to be retained for 15 years after the contract is canceled, completed, or closed. For an explanation of the abbreviations see Key to Comments and Abbreviations.

Primary Classifications and their definitions are as follows:

ACCOUNTING - The management of receipts and expenditures, cost accounting and payroll, and the auditing of said functions.

ADMINISTRATION - Office affairs, functions and services; administrative reporting and management.

CORPORATE - Corporate structure, policy formulating bodies, acquisitions and divestitures, and corporate stock.

MCIWC031801
A 03943

FINANCE - Operating & capital budget data; financial statements prepared for shareholders and regulatory bodies; relations with banks, MCI internal financial reports, analysis, policies and procedures and related projects.

HUMAN RESOURCES - Hiring of employees, monitoring their work and relationships with MCI and the administration of employee-related programs.

LEGAL - Contracted rights and obligations; liability disputes and their resolution; compliance and dealings with government and outside counsel.

MARKETING & SALES - The promotion, advertising and sales of company activities and services; the projection of a favorable corporate image.

NETWORK SERVICES - Equipment, technical facilities, utilization (traffic), personnel and other aspects of installing, activating and maintaining services to MCI customers.

SYSTEMS - The design, installation, operations and maintenance of electronic information and communications systems.

TAX - Information and records pertaining to the Federal, state and locally required income and non-income filings.

## Locating a Record Series Number

Groupings of like records have been assigned unique Records Series names, numbers, and definitions. Refer to RRS example on page 8:

The numbers (1,2,3,4) to the left of the Record Series name indicates "levels" of classification. The levels narrow until you reach the Record Series number.

> 1 = Primary classification
> 2 = Secondary classification
> 3 = Tertiary classification
> 4 = Quaternary classification

In the two examples shown above, the Records Series number is at the level of "Claims" (Quaternary classification) and "Purchase" (Tertiary classification) under "Human Resources/Benefits/Disability" and "Legal/Contracts/Agreement", respectively.

Locate a Records Series number using a paper copy of the RRS printed from the website:

1) Scan your record to gain an understanding of the main topic.

2) Identify the Primary subject classifications (indicated by the number 1 to the left of the Record Series name) for your record, i.e., is this an accounting record, human resources, financial etc.?

MCIWC031802

A 03944

3) Examine the Secondary subject classifications under your selected Primary (number 2) that best describes your record. Note: If you find the Record Series number at this Secondary level of classification, skip steps 4 and 5.

4) Examine the Tertiary classification (number 3), under your selected Secondary, and the Quaternary classification (number 4), under your selected Tertiary, until you identify your Record Series.

5) If none of the Record Series numbers adequately to describe your record, contact Records Management.

<u>Locate a Record Series number using the website:</u>

To locate a record series number using the website, go to the Searchable Records Retention Schedule. The searchable RRS will allow you to search for a record series number using a key word in the definition field.

 Once you have obtained your search results, read each record series description to determine which record series is applicable to your type of record.

Remember: ONLY the Official Copyholder of a record is required to retain a record for the total retention period indicated in the RRS. Copies should not be kept or stored once your operational need is completed.

Note: You are only responsible for the disposal of records within your office. Any records off-site that are eligible for destruction will be destroyed by RIM after being reviewed by LPP and Tax.

MCIWC031803

A 03945

Records Management Program – Policies & Procedures

# VITAL RECORDS

A vital record is the recorded information that is essential for the continuation or reconstruction of an organization. Vital records help establish the legal and financial position of MCI, and are critical to preserving the rights of the organization, its employees, customers and stockholders.

It is the information on a record that is considered vital and needs protection not the record itself. Only 1 to 3 percent of all company information is considered vital.

If a department's information has been labeled vital, per the Record Retention Schedule (RRS), it means the department is responsible for ensuring that an up-to-date copy of the vital information is maintained in a location other than the department's primary location. One copy of the information may remain on-site, and the other copy should be kept in off-site storage. If the vital information consistently changes, the department needs to ensure that they continually update the copy that is in off-site storage. If the information is backed up onto tape, it is recommended that the department set up a tape rotation account with the company's off-site storage vendor.

Below are record series numbers listed by function, which are currently listed as vital in the company's RRS. As of July 10, 2001, the RRS is being reviewed to ensure that it reflects the records that are truly considered vital.

Record series under Accounting that are considered Vital: 5, 14, 17, 31, 34, 35, 38, 43, 48, 50, 51, 54, 56, 64, 65, 467, 561, 566, 585, 592, 599, 733, 734, 836

Record series under Administration that are considered Vital: 101, 104, 106, 108, 112, 115, 120, 159, 160, 163, 167, 317, 471, 473, 474, 475, 476, 534, 536, 723, 731, 757, 837, 838

Record series under Corporate that are considered Vital: 178, 184, 195, 197, 198, 199, 481, 520, 726, 776

Record series under Finance that are considered Vital: 69, 71, 267, 273

Record series under Human Resources that are considered Vital: 356, 357, 359, 361, 363, 365, 366, 367, 368, 370, 374, 384, 386, 389, 390, 399, 409, 417, 540, 547, 844

Record series under Legal that are considered Vital: 277, 282, 283, 285, 288, 289, 292, 298, 301, 497, 589, 596, 598, 706, 761, 803, 806

Record series under Marketing & Sales that are considered Vital: 522, 524, 529, 568, 569, 741

Record series under Network Services that are considered Vital: 227, 234, 237, 611, 729, 773, 815, 829, 848

MCIWC031804

A 03946

Records Management Program – Policies & Procedures

Record series under Systems that are considered Vital:   215, 508, 515, 532, 557, 748

Record series under Tax that are considered Vital:   427, 430, 434, 435, 437, 438, 439, 445, 446, 450, 705



MCIWC031805

**A 03947**

## STORAGE INFORMATION

Off-site storage is to be used for inactive records. If you need to place active records into storage due to space limitations on-site, please contact RIM for special storage procedures.

MCI has approved off-site storage contracts with several different vendors. Iron Mountain is MCI's national vendor for off-site records storage. There are also five other storage vendors:

Kenwood Records Management, Cedar Rapids, IA
Storage Plus (Five R, Inc.), Tulsa, OK
Mississippi Filing, Jackson, MS.
Datalok, Carson, CA
Recall Storage, San Leandro, CA

The Statement of Work (SOW) for Iron Mountain is attached as Appendix E.  This SOW outlines RIM's required services.  Also attached, in Appendix E, is what could be called a generic SOW ("MCI Procedures for Vendor Off-Site Records Management and Storage") that is a carve-out that can be used with prospective storage vendors.

OFF-SITE STORAGE SERVICES

MCI's off-site storage vendors offer a number of services. RIM encourages the use of off-site storage for all records with a retention requirement. Each off-site storage facility is designed to handle paper records, as well as electronic media, and is better prepared to handle disasters, such as flood, tornadoes, and fire, then any MCI facility.

The advantages of off-site storage are multiple. The obvious is to free-up on-site storage space. The storage vendors contracted by MCI respond to requests for pick-up and retrieval within 24-48 hours, so your records are readily accessible. Cartons along with their descriptive data are entered in to a database upon receipt at the vendor's site. MCI has the ability to query this data in order locate records when needed.

Records Management (RIM) pays all costs relating to off-site storage services, except for two-hour rush requests and when the requestor or his/her stated alternate are not available when the vendor responds to a request, these instances are charged back to your department.

The most important advantage is that MCI's records are reviewed under an established and approved policy. The use of off-site storage also minimizes any risks MCI may encounter related to their records. Since all records in storage must be identified using an inventory form which identifies the record type, required retention through the record series and full description, we know what we have, what we have to keep and where it is. Knowing where our records are is essential for MCI in order to do business effectively and efficiently.

MCIWC031806

A 03948

## HANDLING INSTRUCTIONS FOR PAPER, MICROFORM, AND ELECTRONIC RECORDS

### Paper Records

Place all records in manila file folders. Do not send cartons of loose papers, ring binders or hanging folders. Computer print-outs should be removed from binders and laid flat in cartons.

All Managers' working files for employees should be sent to the HR Fileroom (9835/700) once an employee no longer works for the company or your department. If an employee transfers to another department, you should send any manager notes regarding the employee to the HR Fileroom. It is acceptable to give the new manager the employee's attendance record, performance review and PAF, but you cannot give those notes or written comments that are about or concern the employee.

For the records within your department that are considered copies, there is no retention value. This includes records such as day-timers, appointment books, calendars, telephone messages, reports generated from the mainframe, personal meeting notes and copies of any records where the original was sent to another department. These types of records should not be retained for longer than one year.

### Microform

Place microfilm in protective cartons, and microfiche in jackets. Microfilm, microfiche, tape, imaging platters, and other types of electronic media need to be stored in the vendor's climate control vault.

### Electronic Records

Because of their small size relative to the amount of information they contain, diskettes and magnetic tapes may not require transfer to off-site storage. If such records are to be moved off-site, they should be stored in closed cartons, in humidity/temperature controlled storage sites. MCI's approved storage vendors are equipped to handle this type of storage. Do not use diskettes for long-term storage, since they are not designed for this purpose.

If decommissioning a system, several factors need to be reviewed. If the system contains financial information/data, the tax department needs to be notified before the system is decommissioned. Any data contained on the decommissioned system that has a retention requirement must be retrievable and readable until it has fulfilled its retention requirement. The data does not have to be in the same format as it was on the decommissioned system; however, none of the data may be altered. If the data is in a database format, the database may be saved in a flat file format, so that it may be read on any system. Documentation of the data conversion should be created to prove that it was only converted, and that the value or significance of the data had not been changed.

MCIWC031807

A 03949

Records Management Program – Policies & Procedures

If data contained on a system can only be read with a particular program, the program must be retained for the life of the system, and then migrated to the new system, or until the retention requirement for the data has been reached.

WHEN TO SEND RECORDS TO OFF-SITE STORAGE

At least once a year, usually following the end of the calendar or fiscal year, the RRS should be reviewed by the department's Manager to determine which of their records should be transferred to off-site storage or destroyed.

It is recommended that when your department's operational need for any records is complete, and need to be retained according to the RRS, the records should be transferred to off-site storage for safekeeping.

PICK-UP / DELIVERY SCHEDULE

Storage vendors will pick-up and deliver your cartons. All requested orders that are sent to the storage vendor by 4:00 p.m. will be delivered or picked-up on the next work day. Normal hours of operation are Monday through Friday 8:00 a.m. to 5:00 p.m. locally (except holidays). If a storage vendor cannot fulfill a request because you or your alternate contact is not available, your department will be charged for all fees. NO RUSH OR EMERGENCY RETRIEVALS WILL BE ACCEPTED WITHOUT PRIOR APPROVAL FROM RIM. If you have an emergency situation, please contact Phil Hasselvander at Vnet 806-3398 (703-886-3398) or Chris Moses at Vnet 806-7117 (703-886-7117).

NEW STORAGE

(A copy of the MCI Box Inventory Form, File-Level Inventory Form and Fax Order Form are in Appendix F)

Obtain off-site storage supplies (approved record storage cartons and barcode labels) from your storage vendor through the supply request form on RIM's website.

The MCI Box Inventory Form can also be obtained on RIM's website.

Follow these steps to send cartons to storage:

1. Complete the Inventory Form (see instructions below).
2. Two identical peel-off, die cut, barcode labels are provided. Affix the small barcode label to the Inventory Form where indicated. This barcode number is your carton number. This is the number you will use to retrieve and refile your cartons.
3. Affix the larger barcode label to the narrow side of the carton under the hold handle.
4. The inventory form is not a two-part form. After affixing the barcode label, make a copy of this form for your files.
5. Schedule a pick-up by completing the new storage pick-up request form on the RIM website. If you are not sure which city you should choose, please contact Phil

MCIWC031808     A 03950

Hasselvander at Vnet  806-3398 (703-886-3398) or Chris Moses at Vnet 806-7117 (703-886-7117).

6. You must FAX your inventory form to RIM at 703-886-0807 for review before pick-up of new storage can occur. Once RIM has reviewed your inventory form to ensure that it has been completed properly, RIM will forward your pick-up request to the storage vendor. This change in procedure is to ensure that the records are completely identifiable, easily retrievable and the information required for retention and destruction review is correct.

Complete the Inventory Form as follows:

Check whether it is Standard Storage or Climate Control Storage at the top of the form. Climate Control is used for electronic media. Do not mix electronic records with paper records. If you have both standard storage and climate control storage, you need to fill out a separate form for each type of storage.

ACCT. #: Fill in the storage vendor account number for your area. See the Storage Vendor Telephone Directory and Contact List for account numbers in your area.
PREPARED BY: Fill in your name.
PHONE NO.: Fill in your outside telephone number here.
DATE: Fill in the date the form is filled out.
DEPT: Fill in your department name or four-digit department number. Location number is not needed.
CARTON BARCODE: Place small die cut barcode label from the large barcode label sheet here.
RECORD CLASSIFICATION CODE: Fill in the Record Series # from MCI's Records Retention Schedule.
DATE RANGE: Fill in From and Thru dates of records in carton. For example, if a box contains invoices from June 1996 to September 1996, you should fill in the "From" field with 06/01/1996 and the "Thru" field with 09/30/1996. If you only have a year, then span the entire year (i.e., 01/01/96 to 12/31/96).
RETENTION CODE: Leave blank, unless instructed otherwise by RIM. You would need to complete this field if you are storing active records, or records under litigation or audit; therefore, please call RIM for the code.
DESCRIPTION: 55 characters of descriptive information that FULLY explains the records in the carton. The description should be able to identify, to anyone within the company, the contents of the carton.

IMPORTANT:

The Inventory form is used to identify carton contents and ownership. It is also used to input carton information into MCI's national database of records. All storage vendors have been instructed, by RIM, to refuse pick-up of new storage cartons without accompanying inventory forms. In addition, all storage vendors have been instructed to return any cartons with an incomplete inventory form. Unique abbreviations, acronyms, numbers without qualifiers, individuals' names, terms such as: miscellaneous files, general files, desk files, old files, office files are unacceptable. Cartons containing these types of descriptions or cartons picked-up with no inventory forms will be returned to

MCIWC031809    A 03951

you. All costs associated with returning cartons to you will be charged to your department. If you have questions regarding acceptable/unacceptable descriptions, contact Phil Hasselvander at Vnet 806-3398 (703-886-3398) or Chris Moses Vnet 806-7117 (703-886-7117).

RETRIEVALS

Retrievals are those cartons that you wish to have recalled from the storage vendor and returned to you for temporary use. To retrieve cartons from storage, use the retrieval request form on the RIM website. You will need to indicate which carton numbers you want retrieved from storage and delivered to you. You may only retrieve records stored by your department.

A department may not purge any records from a box that was retrieved from storage. Cartons that are retrieved must be returned to storage within 10 business days. For an exception to this policy, send an e-mail to RIM at rim@mci.com with an explanation and justification for longer retention within the department.

REFILES

Refiles are those cartons previously retrieved from the storage vendor, that you wish to have re-stored. To refile records with your storage vendor, use the pick-up request form on the RIM website to schedule carton pick-ups. To add cartons to your pick-up order, you must prepare a new request form.



MCIWC031810

A 03952

Records Management Program – Policies & Procedures ━━━━━━━━━━━━

## RETENTION HOLD CODES

A Retention Hold Code assigned to records prevents those records from going through the destruction review process when its retention period has been met. Any boxes in storage that are being used for an audit or litigation must have a "hold" code assigned to each carton/item.  The codes used are as follows:

    002 - additional 2 years retention
    455 - Legal hold
    458 - Patent Litigation (will be deleted, not showing on any boxes yet)
    488 - 900 Litigation
    ACT - active
    373 - permanent (will be deleted)
    355 - Tax hold
    296 - audits
    105 - yearly review - temporary
    TR - tape rotation

(as of 12/13/2000)

A retention hold code report is to be received from each storage vendor/district annually. This is to be reviewed and the need for the retention codes to be continued verified with the end-user.

MCIWC031811

## INVENTORY REVIEWS

In 1994 and 1995, RIM had the storage vendors perform an inventory project that included approximately 65,000 boxes, in total. This project was necessary when RIM took control of all storage company-wide.

RIM performs an inventory review, on a monthly basis, for all new box storage and an inventory review once a year for all storage. The monthly and annual inventory reports received from the storage vendors is run in record class order first, then box number.

During the inventory review, RIM looks for missing data, incorrect data or illogical descriptions. For any boxes missing information or with incomplete data, RIM will request the user to provide the information needed. If the boxes are old or the department that is responsible for the boxes cannot be located, RIM either requests the storage vendor to inventory the boxes, or pulls the boxes into the office to review them and provide the appropriate information to the vendor via e-mail. All data changes to inventory are sent to the storage vendor via e-mail.

A quarterly outcard report is also received from the storage vendors/districts. This is to be reviewed for records being retained beyond RIM's policy.

## INVENTORY PROJECTS

The events necessitating an inventory project to be conducted at a storage vendor would be the transfer of inventory from a MCI location or a third-party storage location (such as a self-serve storage facility). The project would be initiated in order to obtain the required descriptive data for the records.

Attached in Appendix G is a Project Requirements document, a Project Estimate Request document and an Inventory Form designed to be used with an inventory project, these specific documents would be submitted to the storage vendor performing the project. Also included is a Project Plan; this is an internal document used to direct all of the RIM team members on the project. These documents would be used for in-house inventory projects; meaning a project to be conducted on records/cartons already in storage at the vendor's facility. These documents would have to be rewritten to accommodate a third-party inventory project such as a current storage vendor retrieving inventory from another storage vendor location, a self-storage unit or from a MCI warehouse or deactivated office.

MCIWC031812

# DESTRUCTION REVIEW

The annual destruction review project begins in November and is not fully completed until approximately April.

Every November, RIM requests each storage vendor district to produce a report showing all boxes that are eligible for destruction. The criteria for the destruction report is the destruct review date (always the last day of the current year). The report is run in record class order. RIM reviews the report for accuracy by looking at the description and record series to make sure they are correct and appropriate for the record type. In addition, RIM ensures that the record series calculated the correct destruct date for each box.

Destruction review dates for all boxes within storage are calculated via computer. An electronic listing of all record series numbers, along with their retention periods were given to each storage vendor. The vendor inputs the data into their computer system. When a box is added to their system, the computer calculates the destruct date by adding the retention period to the date range. For example, a box could have a date range of 1993 through 1994. The record series number for this box is RS45. Record series RS45 has a retention period of seven years. The computer will add seven years to the last date within the date range (1994). The destruct date will be calculated as 2001.

RIM then creates a spreadsheet (Appendix H) showing each record series number within the RRS and indicating the number of boxes eligible for destruction within each off-site storage district by each record series. Finally, RIM consolidates the numbers to one total number, along with the retention period for each record series for review by LPP and Tax. See Appendix H, for a sample of the memorandum that accompanies the destruct review lists.

LPP and Tax are requested to review and approve the listings, within two weeks, to determine whether the boxes eligible for destruction under each record series may be destroyed. If not, they need to indicate their reasons and a date range they are targeting.

Once RIM receives the review listing back from LPP and Tax, RIM sends each storage vendor their signed destruct review list, indicating any boxes that may not be destroyed or changes needed in any box data information. The vendors are requested to have all boxes destroyed within a four month period. The vendors will then send RIM a Certificate of Destruction listing the boxes that were officially destroyed. RIM places the review listings and the Certificates of Destruction in storage for a period of 15 years under record series RS153.

MCIWC031813

## IMAGING SYSTEMS OR OTHER ELECTRONIC MEDIA

When implementing a new imaging system or any other type of electronic media for records the following information must be maintained.

1.  A record of where, when, and on what equipment any document was imaged will be maintained.

2.  Documentation on the initial system, an accurate chronological record of changes to the system. This must be maintained for as long as the system is running. Any major changes need to be discussed with the Tax department.

3.  Evidence of procedures ensuring the quality, reliability and the integrity of the documents being imaged, including audit procedures.

4.  A list of MCI management personnel responsible for the supervision of the system (systems and record imaging). Provide names, dates, and titles. This needs to be updated when the "players" change.

5.  A description of the optical platters used for storage, and location of where back-up copies will be maintained.

6.  Identify the location of records that are not or cannot be imaged.

7.  Procedures for retrieving records from imaging system.

Originals of imaged documents need to be retained if the retention period is longer than 7 years. Imaging systems should be used for day-to-day use and the need for quick retrieval, not for long-term storage.

If implementing an imaging system for financial records, IRS Rev. Proc. 98-25 and 97-22 must be followed. A copy of both revenue procedures is in Appendix I.

Back-up copies of imaging platters or electronic media (CD ROM, tape, diskette, etc.) must be stored in a location separate from where they were created, are used and updated. RIM recommends that the back-ups be placed in off-site storage within a climate controlled vault. Much like tape storage, there should be a "floor copy" which is used as the working copy, and a copy used for disaster recovery. If anything happens to the "floor copy", the disaster recovery copy is pulled from storage, copied, and returned to storage.

For any new system containing records where the originals will no longer be received, it is highly recommended that LPP be consulted regarding approval of the system, and to make sure that originals are not required. If the new system involves financial records, LPP and Tax should be consulted.

MCIWC031814

Finally, it is recommended that you speak with the Income/Franchise Group within the Tax Department to ensure that you are following all the rules, and that there is not a problem with the new system and its function.

## Currently, the company has three imaging systems in place.
*Needs updating.*

The first imaging system is located in PCY under RIM. The system is a Viewstar imaging system implemented in 1994 for A/P vouchers. All details regarding this system are found in a binder within RIM. This system is gradually being replaced by the Filenet imaging system. This imaging system will be used on the front-end, instead of the back-end. Viewstar, which was used for back-end operation, will remain in use for historical data only. All imaging for new vouchers is done on Filenet.

The second system is located at HR Records in Denver. This system is used to image personnel records. A binder providing all details regarding this system is located in the HR Fileroom. A listing of records imaged at HR Records can be found in Appendix J; also an approval memo from LPP to retain the above records on one imaging system.

The final imaging system is Filenet, and is used for travel and expense documentation within Vendor Services located in Atlanta. A binder detailing this system is located in Vendor Services in Atlanta.

## EDI data.

For EDI, a binder should be created that states how the records are received, read, processed, and retained. The binder should also state who is responsible for the records, processing the records and the overall system, along with how long the record is being retained and where.

## Other Recommended Storage Medium

Microfilm and microfiche are good forms of archival media for records that need to be retained over 10 years. Tape storage is a good form of media for records that are retained less than 10 years. Tape starts to breakdown after 10 years. If the tape is used frequently, the usefulness of the tape is further reduced. CD ROM has not been tested for longevity; however, experts state that CD ROM should last 10 years depending on the amount of use it gets. Tapes and CD ROMs should be migrated to a new media form if the data is to be retained over 10 years.

RIM policy on tape rotation follows.

MCIWC031815

A 03957

-----Original Message-----
**From:**   **Vickie Lucas [mailto:Vickie.Lucas@wcom.com]**
**Sent:**   Thursday, April 05, 2001 12:37 PM
**To:**     'Brenda Tate'; 'Albert Talley'; 'Chicha Barnes'; 'Lisa Hayward'; 'Phil Hasselvander'
**Subject:** Tape Rotation Draft 'Policy'

To all,

Before delving in to the specifics of tape rotation, we should remind each other that our department is not here solely for records storage. The Records and Information department of MCI assists, oversees....the *management* of records and information – in any form – active/inactive – onsite/offsite. *Please* ask for a discussion on this if you feel you are not clear on it.

Is the end-user talking about tape rotation for *system* backups (see LAN below). For example, there are departments in MCI that backup their customer's systems on tape or retain their records/information on tape (or other electronic media). In other words, all of the customer's system information / or billing records / or HR records may be contained on the tapes being discussed. These are records/information and come under *all* of the record management procedures as far as retention and storage.

DRAFT POLICY RE: TAPE ROTATION .......there items that we/RIM need to discuss and decide upon, so this is may be bare bones.

Is the tape rotation for *system* backup for a LAN system or a midrange system?

- LAN: Tape rotation for system backups to a LAN is not under the prevue of the Records Management department. This involves a large volume of *systems* backup; it does not involve the backup of records/information. This type of tape rotation is each department's responsibility. RIM can advise on vendor selection and vendor monitoring, if requested.

- Midrange systems: Tape rotation for backups for a midrange system, which *do* contain records, are on a case by case basis. The end-user inquiring must submit their specific information to RIM for review and determination. *Points for our review and determination*:
  - What records are involved? Are Vital records are involved.
  - The volume of tapes.
  - Size of the department. *

* This is an item we need to discuss within RIM. The records/information contained on these midrange systems could entail Vital Records/Information. Where that pertains, the following is a decision to be made by RIM.

MCIWC031816

A 03958

A large department with a large volume of records – large volume of tape backups – can accommodate this process for their department, including costs. The premise that RIM is making these backups a requirement or a procedure does not mean that RIM must pay for it. Again, we can advise where necessary.

Small departments, with a small volume of backups (say...5, 10 tapes), again containing Vital Records - RIM should advise them of the requirement of backup. However, since the department may have not budgeted for this process, RIM could pay for the remaining of this year to allow for budget planning for following years.

---

This is the best I can do on a 'draft policy' prior to RIM getting together to discuss. Please submit comments on what I have put together. We should set a day/time to meet while Lisa is here next week, to discuss.

If you need explanation on LAN, midrange, etc, please ask.

Thanks,
Vickie

-----Original Message-----
**From:**      **Lisa Hayward [mailto:lisa.hayward@wcom.com]**
**Sent:**       Tuesday, April 10, 2001 9:20 PM
**To:**          Chicha Barnes (E-mail); Phil Hasselvander (E-mail)
**Cc:**          Al Talley (E-mail); Brenda Tate (E-mail); Vickie Lucas (E-mail)
**Subject:**   Tape Rotation

Chicha and Phil,

Just to recap our meeting today, I want to make sure that you understand that you are not to give authorization for tape rotation to any group. It will be necessary that each end-user requesting tape rotation put their request in writing with all the necessary information we need in order to access RIM's role. The e-mail needs to indicate the department making the request, the department's function, why they need tape rotation, what type of information on the tape, how often do they want the rotation, how many tapes, etc., as well as the other questions that Vickie referenced in her e-mail. For the next several requests, Vickie or myself will review the requests with you, and if necessary, meet with the end-user making the request.
Chicha will be contacting the other individuals who inquired regarding tape rotation and setting up meetings with them and myself so that we may discuss their need for tape rotation. In addition, Chicha will be finding the information needed to locate the individuals that she previously authorized tape rotation for, so that we can meet with them and discuss their continued use of tape rotation under RIM's budget.
Also, once Matt Mannix lets Chicha know when it would be good to have another meeting, Chicha will set-up a conference bridge, and inform Matt and myself the date, time and number via e-mail.
If either of you have a questions regarding anything on tape rotation, please let me know.

MCIWC031817    A 03959

Records Management Program – Policies & Procedures

Lisa Hayward
Records Specialist
MCI
1000 St. Albans Drive
Raleigh, NC  27609
Vnet 939-1271
919-325-1271
https://teamnet2.mcilink.com/departments/rim/

The information in this email is confidential and may be legally privileged; it is intended solely for the addressee. Access to this email by anyone else is unauthorized.
If you are not the intended recipient, any disclosure, copying, distribution or any action taken or omitted to be taken in reliance on it, is prohibited and may be unlawful.

MCIWC031818

A 03960

## DECOMMISSIONING SYSTEMS

If a department is decommissioning a system, several factors need to be reviewed.

First, if the system contains financial information/data, Bob Evans in the tax department needs to be notified before the system is decommissioned. Any data contained on the decommissioned system that has a retention requirement must be retrievable and readable until it has fulfilled its retention requirement. The data does not have to be in the same format as it was on the decommissioning system; however, none of the data may be altered or changed. If the data is in a database format, the database may be saved in a flat file format, so that it may be read on any system. Documentation of the data conversion should be created to prove that it was only converted, and that the value or significance of the data had not been changed.

If data contained on a system can only be read with a particular program or hardware, the hardware or program must be retained for the life of the system, or until the retention requirement for the data has been reached.

It is not mandatory to convert data from the old system to the new system. The only requirement is that data can be found, retrieved and read in a timely manner.

An application or HLQ with data on the mainframe does not need to worry about retention of their records. Even if the HLQ is being decommissioned, the mainframe will maintain the data for its entire retention period. (See Records Retention Initiative (RRI) section.)

MCIWC031819

A 03961

## ACQUISITIONS, MERGERS & JOINT VENTURES

When MCI acquires or merges with another company, it is RIM's responsibility to bring the new company into compliance with the retention program. The first thing that should be done is to find out if the acquired company had a records retention program. Next, RIM needs to find out where all the financial and human resources records are located. If in storage through a vendor not utilized by MCI, RIM needs to assist in the transfer of the records to one of our vendors and then inventory the contents of each box. For both on-site records and stored records, RIM needs to ascertain what retention period, if any, was being utilized. All personnel records/human resource records need to be shipped to the HR Fileroom. Finally, familiarize each employee of the new company with the requirements of the records retention program.

If MCI buys into another company as a joint venture, and if MCI is the minority holder, we have absolutely no obligation or responsibility for the joint venture's records. However, in the past, MCI has offered their expertise in records retention to the other company (i.e., Avantel). We have given advice, but we do not participate in the retention of their records.

An Acquisition Guide was developed to issue to new acquisition personnel until they have access to RIM's website. A Questionnaire was also developed to ascertain storage practices and needs of the acquisition. Both the Guide and the Questionnaire are in Appendix K.

MCIWC031820

**A 03962**

## RIM COMPLIANCE AUDIT PROGRAM

The RIM Compliance Audit Program is a continuous process. The purpose of the audit program is to ensure that all departments are complying with the records management procedures and retention program. One objective of the audit is to educate each department regarding the Records Management Program and their individual responsibilities.

Department are selected randomly. The auditor needs to perform background research on the department, such as what types of records the department has, if they have off-site storage, etc. An e-mail, along with a questionnaire (Appendix L) is sent to the department requesting a meeting. The questionnaire is reviewed, follow-up questions are asked and answered, and then the department is accessed for compliance.

Factors in compliance:

Is the department retaining their records in accordance with the RRS?

Is the department shredding confidential records? Does the department understand what is considered confidential?

Is the department storing their records off-site properly? Can records be retrieved in a timely and efficient manner?

Is the department destroying on-site records that have surpassed their retention?

Is the department backing-up their PCs? Does the department retain e-mail when appropriate?

Does your department enter journal entries into the ledger system? If so, what do you do with the original documentation?

There are other criteria for passing the audit; however, the most important criteria is whether or not the department is retaining records they are responsible for, and retaining them for the right period of time.

Once the department has been audited, a memorandum is created stating the results and recommendations. The memorandum should be sent to the Interviewee with a copy going to their manager. If the department passes the audit, a certificate (Appendix L) is sent along with the memorandum. Departments that pass the audit are audited every five years. If a department fails the audit, the memorandum will contain reasons for noncompliance, recommendations to become compliant, and a re-audit date. Departments that fail are audited again after one year. See Appendix L, for a sample of a department who was not compliant with the records management program.

On a quarterly basis, a status report of the compliance audits is given to the Manager and Sr. Manager of the department. See Appendix L, for an example of the status report.

MCIWC031821    A 03963

## RECORDS RETENTION INITIATIVE (RRI)

The Records Retention Initiative, or RRI, was a corporate-wide project to identify, and retain electronic data critical to legacy-MCI's legal and fiduciary requirements. The project was initiated to support managing the risk associated with electronic data retention.

RIM was the major driver in the creation of the RRI. The RRI started in 1997 after RIM found that some tape data was not being retained long enough. It was determined by the Director of Finance, VP of Finance/Controller, and Director of Production Operations that a task force was necessary to review every mainframe system application high-level qualifier (HLQ) within MCI, and certify it for compliance with retention policies. The project was owned and driven by MCI's Service Operation's Production Operations Department located in Colorado Springs. It is now handled and maintained by EDS.

The RRI created a purpose and mission statement as follows:

Purpose:

The purpose of the RRI was to implement and explain the standards and management of Direct Access Storage Devices (DASD) and of magnetic tape resources on the mainframe.

Mission Statement:

The RRI will implement a process to ensure MCI's critical data is retained in accordance with government regulations and MCI Corporate Policy.

The RRI main objective has been achieved. As of now, the RRI handles new high level qualifiers (HLQs) and HLQs that are changing their process. HLQ is a two alpha letters identifying the application. You can view the standards by going to
http://eashome.mcit.com/innerstand/
You will find specific information regarding Critical Data Set Naming and Retention located under 1.2.3.13 of the standards. This will show a list of the categories and their retention requirements as dictated by Records Management.

Records Management's role has been to determine if a HLQ has a retention requirement and, if so, what category they fall under within the standards. Records Management does not assign data set names or give direction in how it is to be done. All instructions are to be given by the RRI group within EDS. A listing of HLQs and their required retention is in Appendix M.

The RRI Committee includes:
      Project Lead:  Carla Adams, EDS, Vnet 622-5556
      Project Coordinator:  Trishell Glasco, EDS, Vnet 622-3133
            Records and Retention Advisor:  Records Management

MCIWC031822

A 03964

## INTERNAL E-MAIL POLICY

All electronic communication systems and all communication and information transmitted by, received from, or stored in these systems are the property of the Company, and as such are to be used solely for job-related purposes.

Offensive messages, such as those including racial slurs, sexual innuendo or any other type of inappropriate language, are strictly prohibited. Additionally, the e-mail network is not to be used to solicit for outside business ventures or political or religious causes.

Employees should not use this system for personal purposes. Further, employees are not permitted to use a code, access a file, or retrieve any stored communication unless authorized to do so or unless they have received prior clearance from an authorized Company representative. No employee may use a pass code that has not been issued to that employee or that is unknown to the Company.

Electronic mail communications are considered to be Company property and are subject to inspection by the Company at any time without prior notice. Employees who violate this policy are subject to disciplinary action, up to and including discharge.

As you know, MCI has in place a mandatory records retention policy developed and monitored by RIM. This policy applies to all MCI entities and establishes retention criteria, which are generally based on the nature or content of a particular document. Because e-mail encompasses the full array of types of communications, the retention period is based on the content of the message in question. Thus, for example, an e-mail message between a MCI employee and a vendor must be retained for the time period specified for vendor correspondence.

Unless otherwise covered by a specific retention requirement, internal e-mail need not be retained beyond its useful life unless it is relevant to ongoing litigation, an enforcement proceeding or an audit. Under such circumstances, you typically will be notified of the obligation to retain until further notice the pertinent hard copy and electronically stored materials.

This policy is intended to supplement, not supersede or contradict, any other e-mail policies in effect at the Company. Those policies are located at the following Intranet websites:    https://teamnet2.mcilink.com/departments/lppgc/techlaw/

See Appendix N for a copy of LPP's "E-Mail Guidelines."

MCIWC031823

A 03965

## RECORDS MANAGEMENT TRAINING

Records Management training is given throughout the company. Typically, training is given when enough individuals have requested it in a particular location and can be given either via Conference Bridge or in person by RIM personnel.

Areas covered in training are:

> What is Records Management?
> What is a record and non-record?
> What are vital records?
> What is a Records Retention Schedule?
> Why can't records be saved forever?
> What is the Records Management Compliance Audit?
> E-Mail issues
> Records Management's web-site

In addition to the areas covered above, two videos are shown during the training. The first video shown is "For the Record". The second video is "The Plugged-In Mailbox; E-Mail Uses and Misuses". Both videos are by Commonwealth Films, Inc. and both are approximately 22 minutes in length.

A copy of the training presentation and other records management training information is in Appendix O.

MCIWC031824

A 03966

Records Management Program – Policies & Procedures ▬▬▬▬▬▬▬▬

## COMMUNICATION – "NEW EMPLOYEES"

Once a month RIM receives a list of newly hired employees and sends a communication out to them. A copy of this document is available by request per Christopher Moses; Christopher.Moses@mci.com.



## Welcome New Employee!

The Records and Information Management group would like to welcome you to MCI. We believe that every new employee can immediately contribute to the success and continuity of our Records Program.

We have outlined the program's objectives and described employee responsibilities in the following overview. Please take a moment to read through this information.

We wish you every success in your new job!

### *Introduction:*

Compliance with MCI's Records Program is mandatory. As an MCI employee, you are responsible for understanding the policy and complying with the program. Records management is an ongoing effort and a regular part of each employee's job.

Since the Records Program is mandatory for all employees, and all levels of management are held accountable for their department's compliance, Records and Information Management (RIM) would like to take this opportunity to familiarize you with the records guidelines. The information contained within this document will help you learn about records and their importance to MCI as well as your responsibilities for records retention.

### *Objectives of MCI's Records Program:*

➢ Ensures that all local, state, federal and operational record-keeping requirements are met.

➢ Preserves valuable floor space and other data storage space by assigning retention period limits to records.

➢ Promotes the availability of information by providing required retention periods.

➢ Ensures orderly and efficient records life-cycle management.

### *What is a Record?*

➢ A record is any recorded information created, received, used or distributed by MCI in the course of conducting business, regardless of media or other specific characteristics.

➢ A record may be in the form of paper, microfilm, computer tape, floppy disk, CD-ROM, microfiche, videotape, optical disks, email, PC hard drive, local area networks or other unique forms.

➢ Regardless of the form, only the recorded information is the actual record. The medium is used as a container for the record and therefore has no bearing on records retention requirements.

➢ *RIM requires that all MCI records be maintained in a manner that makes them easily and cost- effectively retrievable and readable throughout the life-cycle of the record.*

### *What is a Non-Record?*

➢ Any tangible information that does not typically contain data pertaining to or originated by MCI.

➢ Materials typically used as reference or research tools, including such items as newspapers, periodicals, brochures, internet information and books.

➢ Unsolicited announcements, invitations or other materials that are not filed as evidence of office or production operations.

MCIWC031825

A 03967

➢ Preliminary notes that do not represent significant steps in the preparation of record documents.

➢ Blank forms, file and office supplies.

## What is a Vital Record?

➢ A vital record is a record that is considered to be absolutely essential to the continuation or reconstruction of an organization. Vital records help establish the legal and financial position of MCI, and are critical to preserving the rights of the organization, its employees, customers, and stockholders.

➢ Departments with vital records must have a disaster recovery program in place. Periodical testing of the program with results documented is required.

➢ Vital records must be adequately protected from loss due to accident, fire, flood, sabotage, etc.

## Record versus Non-Record:

➢ As defined above, the differences between a record and a non-record are clear. *A record* is required to be retained in accordance with MCI RIM policy and procedures, as it possesses significant administrative and operational value for the company. A *non-record* possesses no significant administrative or operational value to the company, and therefore *has no required retention*.

## What is a Records Retention Schedule?

➢ A Records Retention Schedule (RRS) is a comprehensive listing for all MCI employees to determine time frames for the retention of ALL records created, received, used and distributed by MCI, regardless of media. The RRS is subject-oriented and hierarchical. It groups "like records" first by major function (Primary Classification), and then by type of record (Record Series) within that function.

➢ All records, regardless of media, (paper, electronic, microfilm, etc.) are the property of MCI and as such subject to MCI RIM policies. The RRS lists the record types and how long they are required to be kept.

➢ The RRS is available at  https://teamnet2.mcilink.com/departments/rim/retention/index.html.

## What are the Responsibilities of Employees and Management?

➢ All employees and all levels of management are required to be familiar with the Records Program and to comply with its policies and procedures.

➢ All employees are expected to retain records in an orderly manner to facilitate a cost-effective and resource-efficient retrieval process.

➢ Departments with vital records must have a disaster recovery program in place.

➢ MCI management is required to periodically review the RRS to determine the retention period for their organization records. If a record series that matches the records within an organization cannot be located, Records and Information Management should be contacted.

➢ MCI management is required to test their organization's compliance with the corporate Records Program on an annual basis.

## Where can I find out more information about MCI's Records Program?

Visit the Records and Information Management website at: (https://teamnet2.mcilink.com/departments/rim/ ) or call Records and Information Management.
## Contacts:
➢ Senior Manager, Audit & Control
   o Brenda Tate
     Vnet – 806-3538
     brenda.tate@mci.com

MCIWC031826

A 03968

Records Management Program – Policies & Procedures

- Manager, Records and Information Management
  - o Joyce Moultry
    Vnet – 806-3336
    joyce.moultry@mci.com

- Facility Closures and Records Recovery
  - o Darrell Daniels
    Vnet – 806-3378
    darrell.daniels@mci.com

- Electronic Records Specialist
  - o Michael L. Simms
    Vnet – 806-1252
    michael.l.simms@mci.com

- Audit and Vital Records
  - o James Green
    Vnet – 806-3364
    james.green@mci.com

- Records Inventory and Special Projects
  - o Joe Stephens
    Vnet – 806-3401
    joe.w.stephens@mci.com
- Paralegal
  - o Charles L. McBride
    Vnet – 806-3831
    charles.mcbride@mci.com

- Offsite Storage and Invoicing
  - o Philip Hasselvander
    Vnet – 806-3398
    philip.h.hasselvander@mci.com

- Offsite Storage and Document Retrieval
  - o Chris Moses
    Vnet – 806-7117
    christopher.moses@mci.com

MCIWC031827

A 03969