1

2

UNITED STATES BANKRUPTCY COURT
3  SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
4  In re
                        Case No.
5  WORLDCOM, INC., et al,          02-13533

6        Reorganized Debtors.
-------------------------------x
7                January 17, 2006
                 11:50 a.m.
8                United States Custom House
                 One Bowling Green
9                New York, New York   10004

10       DIGITALLY RECORDED PROCEEDINGS
              (E X C E R P T)
11

11:45 WORLDCOM, INC., ET AL
12  WorldCom's Motion for Summary Judgment
Against Parus Holdings, Inc.'s,
13  Successor-By-Merger to EffectNet, Inc. and
EffectNet, LLC.
14

Opposition by Parus Holdings, Inc. filed.
15

Debtors' Motion to Strike Portions of
16  Affidavits Submitted in Support of Claimant
Parus Holdings, Inc.'s Response and
17  Opposition to WorldCom's Motion for Summary
Judgment.
18

Opposition by Parus Holdings, Inc. filed.
19

B E F O R E:
20

    THE HONORABLE ARTHUR J. GONZALEZ
21    United States Bankruptcy Judge

22

        DEBORAH HUNTSMAN, Court Reporter
23        198 Broadway, Suite 903
         New York, New York   10038
24        (212) 608-9053    (917) 723-9898

25

A 04346

```
 1

 2   A P P E A R A N C E S:

 3      STINSON MORRISON HECKER LLP
        Attorneys for Reorganzied Debtors
 4           1201 Walnut Street
             Kansas City, Missouri   64106
 5
        BY:   ROBERT L. DRISCOLL, ESQ.
 6
        KELLEY DRYE & WARREN LLP
 7      Attorneys for Parus Holdings, Inc.
             101 Park Avenue
 8           New York, New York   10178

 9      BY:   ROBERT S. FRIEDMAN, ESQ.
                  -and-
10           KEVIN J. SMITH, ESQ.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

A 04347

```
 1                    Proceedings
 2               (Whereupon, the following is an
 3    excerpt from 1/17/06 in re Worldcom, et al,
 4    Case No. 02-13533.)
 5               JUDGE GONZALEZ:  Please be seated.
 6               The Debtors' Motion for Summary
 7    Judgment.
 8               MR. DRISCOLL:  Thank you, Your
 9    Honor.  Robert Driscoll for the Debtors.
10               JUDGE GONZALEZ:  All right.  Go
11    ahead.
12               MR. DRISCOLL:  Your Honor, in this
13    proceeding Claimant Parus Holdings asserts
14    two claims.  First is for breach of contract
15    against WorldCom's wholly-owned subsidary
16    Intermedia, and the second is against both
17    WorldCom and Intermedia, asserting various
18    consequential damage claims premised on
19    WorldCom and Intermedia's asserted acting in
20    concert to breach the same contract.
21               The contract involved in both
22    claims is a November 2000 contract between
23    EffectNet, the predecessor of Claimant Parus
24    Holdings, and Intermedia.  It is attached as
25    Exhibit A to our moving papers.  Under this
```

A 04348

1                    Proceedings

2    contract, Intermedia agreed to buy voice

3    messaging services from EffectNet for resale

4    by Intermedia to end users.  Under section

5    2.12 of the contract, Intermedia was

6    obligated to have resold EffectNet's services

7    to 10,000 end users by December 18, 2001,

8    and, if Intermedia failed to meet this 10,000

9    resale quota, it then became liable under

10   section 2.13 of the contract for numeric

11   shortfall times what the contract describes

12   as the "base monthly price."  This is called

13   a "Reconciliation Payment" in the contract.

14   There is no dispute that Intermedia defaulted

15   on its resale and Reconciliation Payment

16   obligations for December 2001 through March

17   of 2002.

18            On the breach of contract claim

19   that is pending, only two issues, I believe,

20   need to be resolved.  The first is the number

21   of Reconciliation Payments Intermedia owes;

22   four are acknowledged by the Debtors and 24

23   are sought by Parus Holdings.  The second

24   issue is the amount of the base monthly price

25   that is used to calculate the monthly

```
 1                   Proceedings

 2   Reconciliation Payments.  Here the choice is

 3   between the basic, and that is a quote,

 4   monthly service price of $11.45, which is

 5   contended by the Debtors as being

 6   appropriate, or the unlimited monthly service

 7   price of $27.40 as contended by Parus

 8   Holdings.  We believe that both issues can be

 9   resolved by the Court through application of

10   the contract terms to the undisputed facts.

11              Starting with the first issue, the

12   number of Reconciliation Payments Intermedia

13   was required to make, this question hinges on

14   whether the contract and the parties'

15   obligations under it were terminated on April

16   12, 2002, 30 days after EffectNet gave notice

17   of written default to Intermedia.  Section

18   5.2 of the contract entitled "Termination"

19   provides that in the event of a contractual

20   default, the contract can be terminated by

21   giving a written notice of default to the

22   defaulting party.  It also specifies that the

23   contract does terminate and will be effective

24   30 days after such notice, if the defaulting

25   party fails to cure its defaults.  As already
```

```
 1                    Proceedings
 2    stated, it is undisputed that Intermedia was
 3    in default to make the Reconciliation
 4    Payments for four months, ending March of
 5    2002, and it is also undisputed that under
 6    section 5.2 of the contract that general
 7    counsel of EffectNet did give written notice
 8    of default to Intermedia on March 12, 2002.
 9    That is Exhibit D to our motion.  As general
10    counsel of EffectNet, Mr. McConnell
11    subsequently explained to WorldCom -- and
12    this is in Exhibit E to the pending motion --
13    on March 25th, he had given written notice of
14    default to EffectNet pursuant to section 5.2
15    of the contract, on March 12th, that section
16    5.2 of the contract provides that the
17    contract will terminate 30 days after such
18    notice, if default is not cured.  Then he
19    advised WorldCom -- and this is a quote and
20    it appears on Exhibit E to our motion --
21    quote, "accordingly, the agreement will be
22    terminated for default by Intermedia on or
23    about April 12, 2002 if the Intermedia
24    defaults are not cured prior thereto."
25    Finally, all parties acknowledge that
```

```
 1                    Proceedings
 2   Intermedia failed to cure its defaults within
 3   that 30-day period.  Accordingly, applying
 4   the plain terms of section 5.2 of the
 5   contract to these admitted facts, the
 6   contract terminated on April 12, 2002.  A
 7   ruling by this Court that the contract was
 8   terminated on that date would be consistent
 9   with the contemporary explanation by
10   EffectNet's general counsel to WorldCom.
11   Similarly, a ruling by this Court that the
12   contract was terminated on April 12, 2002,
13   would be consistent with EffectNet's
14   contemporaneous acts.  After Intermedia
15   failed to respond to EffectNet's notice of
16   default, EffectNet ceased performing on the
17   contract.  This is admitted by EffectNet.
18   Such a cessation of performance is
19   specifically authorized under section 5.3 of
20   the contract, when the contract is terminated
21   for any reason.
22           The consequences, Your Honor, of
23   contract termination are significant.  After
24   termination, Intermedia has no ongoing
25   obligation to continue paying EffectNet the
```

```
 1                    Proceedings
 2   Reconciliation Payments provided for under
 3   section 2.13 of the contract.  As specified
 4   in paragraph 6 of the contract captioned
 5   "Survival," none of the party's obligations
 6   provided for in section 2 of the contract
 7   survive its termination, and this includes
 8   the obligation to pay Reconciliation Payments
 9   under section 2.12.  The result is also
10   consistent with section 5.3 of the contract,
11   which provide for what obligations the
12   parties do remain liable for upon termination
13   of the contract.  Those are obligations that
14   accrued before the date of the termination.
15              Finally, Your Honor, on this point,
16   it is made clear in section 11 of the
17   contract which did survive termination, that
18   neither party to the contract shall be liable
19   to the other for any type of damages or at
20   least for the type of damages that Parus
21   Holdings seeks from Intermedia in this
22   proceeding.  In section 11, the parties
23   provided that in no event shall either party
24   be liable to the other for -- now, this is a
25   direct quote -- "for any incidental,
```

```
 1                    Proceedings
 2    indirect, special, punitive, consequential,
 3    or similar damages of any kind, including
 4    without limitation, loss of profits, loss of
 5    business, or interruption of business.
 6              Parus Holdings seeks to avoid these
 7    results and seeks to avoid summary judgment
 8    by arguing that limiting Parus Holdings'
 9    recovery to the four Reconciliation Payments
10    that are due before or were due before April
11    12, 2002, somehow deprive it of the benefit
12    of its bargain.  We disagree.  To the
13    contrary, it seems quite obvious from the
14    contract provisions that we just discussed,
15    the parties in forming this contract
16    bargained to put boundaries around their
17    potential liabilities to each other.  This is
18    made, I believe, or evident by the penalty
19    provision of the contract which is section
20    5.4, where had Intermedia -- not EffectNet --
21    terminated the contract early, Intermedia
22    would have been liable for a maximum of one
23    half of the 24 months of Reconciliation
24    Payments Parus Holdings now seeks.  Parus
25    Holdings also seeks to avoid summary judgment
```

A 04354

```
 1                     Proceedings
 2   through the affidavit and statements of the
 3   former general counsel of EffectNet, who is
 4   now general counsel of Claimant Parus
 5   Holdings, Robert McConnell.  He, as I stated
 6   earlier, was the author of the March 12, 2002
 7   notice of default to Intermedia and the
 8   author of the March 25, 2002 letter to
 9   WorldCom explaining the consequences of
10   Intermedia's default and failure to cure, and
11   that being termination of the contract on
12   April 12th.
13           Now, in this Court Mr. McConnell
14   has filed an affidavit four years after the
15   fact, in which he states that he did not
16   intend in 2002 to terminate the contract.  We
17   submit, Your Honor, that quite obviously the
18   best evidence of what Mr. McConnell intended
19   to do by his actions in 2002 are the words he
20   then used to describe the effect of the
21   default notice that he sent.  Quite clearly,
22   he explained in 2002 that failure to cure by
23   Intermedia on or about April 12, 2002 would
24   work a termination of the contract.  Under
25   the best evidence rule and the other
```

```
 1                  Proceedings
 2    authorities cited in our related motion to
 3    strike, we believe Mr. McConnell's after the
 4    fact contradictory and self-serving
 5    statements should be disregarded by the Court
 6    in its evaluation of this summary judgment
 7    motion.
 8                  Turning now to the amount owed by
 9    Intermedia for the Reconciliation Payments
10    that it did not make is already noted.
11    Section 2.13 of the contract, the amount of
12    the Reconciliation Payments is a function of
13    what it has described in the contract as the
14    base monthly price of EffectNet's service
15    times the numeric shortfall of end users
16    resold by Intermedia as measured against the
17    10,000 per month quota.  There is no dispute
18    as to the written numeric shortfalls for the
19    months of December 2001 through March of
20    2002.  They are, as set forth in the table
21    appearing at page 17 of Debtors' initial
22    summary judgment.  The only dispute is
23    whether the base monthly price of EffectNet's
24    service was the price of EffectNet's basic
25    service or, as contended by Parus Holdings, a
```

1                     Proceedings

2     $27.40 price of unlimited service.  Both of

3     these pricing options are described in

4     appendix P of the contract at issue.  We

5     believe that based on the plain language in

6     the contract, the $11.40 per month price of

7     basic service is the appropriate contractual

8     reference point for ascertaining the base

9     monthly price.  Ignoring the plain language,

10    we believe, of the contract, Parus Holdings

11    contends that the unlimited service price is

12    really the base monthly price.

13              In addition to being at grammatic

14    odds with the contractual term base, Parus

15    Holdings' contention, I believe, is

16    inappropriately supported by the evidence it

17    offers outside the contract itself, and that

18    consists of its present CEO Mr. Reneau, who

19    in his affidavit frequently states the

20    conclusion that the unlimited price of $27.40

21    was what the parties intended to be used for

22    the base monthly price.  These, however, are

23    ultimate conclusions, and they are not proper

24    statements to support an evidentiary fact

25    finding in summary judgment.  Rule 56(e) of

```
 1                    Proceedings

 2   the Federal Rules, I think, makes this

 3   perfectly clear.  In the words of the rule,

 4   ultimately and conclusory facts cannot be

 5   utilized on a summary judgment motion.

 6   Further, nowhere in Mr. Reneau's affidavit,

 7   which is lengthy, does he advise that he

 8   actually had firsthand experience or

 9   involvement with the negotiation of the

10   contract at issue.  He doesn't say he

11   negotiated it.  He doesn't say he even

12   participated in the negotiation.  Counsel's

13   comments in briefs say he did, but he doesn't

14   say that in his affidavit.  Indeed, he didn't

15   even sign the contract.  Accordingly, we

16   believe that Mr. Reneau's conclusory

17   statements ought not be regarded concerning

18   what is or what is not the appropriate base

19   monthly price to be applied by this Court.

20                    In summary on the contract breach

21   issue, Your Honor, I believe that application

22   of the contract terms to the acknowledged

23   facts leads to three conclusions.  First is

24   that the contract was terminated on April 12,

25   2002, 30 days after EffectNet gave written
```

1                      Proceedings

2    notice of default and Intermedia failed to

3    cure its default.  Two, Intermedia has

4    liability to make Reconciliation Payments for

5    the shortfall for the period commencing

6    December 18, 2001, and concluding April 12,

7    2002.  The third conclusion, I believe, is

8    that EffectNet's basic service price of

9    $11.45 should be utilized as the multiplier

10   in determining what the amount of the

11   Reconciliation Payments is that are owed to

12   Intermedia.  That is kind of a tortuous path,

13   but sometimes to construe contracts, you have

14   to go through that.  I think the deficiencies

15   that we assert in Parus Holdings'

16   consequential damage claims can be dealt with

17   a bit more succinctly, because those

18   deficiencies relate to the principal elements

19   of the claims.

20             Starting off with Parus Holdings'

21   consequential damage claims against

22   Intermedia, all of those are barred by

23   section 11 of the contract between EffectNet

24   and Intermedia.  As I already read into the

25   record, in section 11 the parties agreed to

```
 1                    Proceedings
 2   comprehensively limit their liability to each
 3   other.  They specifically agreed that in no
 4   event would either be liable to the other
 5   for, among other things, consequential
 6   damages.  As noted in our moving papers, such
 7   a limitation provision is enforceable under
 8   governing Arizona law, and the contract did
 9   provide that Arizona law would control with
10   regard to the contract terms.  As also
11   provided in the authority cited to the Court,
12   enforceability of such contractual
13   limitations are particularly appropriate in
14   commercial contracts, such as the one between
15   these commercial entities and are before your
16   Court.
17            In response, Parus Holdings argues
18   that enforcement of section 11 would leave it
19   without an adequate remedy.  It also argues
20   that the provision itself is ambiguous,
21   because there is a blank in it.  We believe
22   and advocate to the Court that neither
23   argument is available.  Even when section 11
24   is fully enforced, Parus Holdings retains the
25   breach of contract claim and remedy that the
```

```
 1                   Proceedings
 2    parties bargained for, which is the payment
 3    by Intermedia of the Reconciliation Payments
 4    that it owed to EffectNet when the contract
 5    terminated.  As to the blank space creating
 6    an ambiguity, Parus Holdings cites no
 7    authority supporting that argument and, as
 8    noted in our reply in this matter under
 9    Arizona law, blank spaces in contracts don't
10    by themselves create an ambiguity or make the
11    provision unenforceable.  Indeed, as pointed
12    out in one of those Arizona cases, the blank
13    space or the presence of a blank space simply
14    shows the absence of any agreement on that
15    particular subject.  Here, section 11 is
16    fully capable of being enforced as written.
17    The blank, if filled in, would simply have
18    provided for an exception to the scope of the
19    liability limitation.  No such exception was
20    inserted.  The way it reads is, except for
21    damages arising under section blank, and then
22    it proceeds, in no event shall either party
23    be liable to the other for the various kinds
24    of damages I just mentioned.
25                   Concerning Parus Holdings' civil
```

1                    Proceedings

2    conspiracy claim, as noted in our moving

3    papers -- and I don't think there is any

4    disagreement here -- a claim for civil

5    conspiracy cannot rest on proof of the

6    conspiracy alone.  It must be accompanied by

7    evidence of acts in furtherance of the

8    conspiracy for a claim to lie.  This is true

9    in all the state laws that are potentially

10   applicable to this matter.  I don't think

11   Parus Holdings disputes this.  But

12   significantly here, all of the acts that

13   Parus Holdings asserted were acts in

14   furtherance of the asserted conspiracy

15   occurring after the merger of WorldCom with

16   Intermedia effective July 2, 2002.  This is

17   significant, we believe, because it is the

18   general rule that parent and wholly-owned

19   subsidiary corporations cannot be found to

20   have conspired with each other, because their

21   economic interests are such that they are

22   regarded as one entity.

23            The Supreme Court's decision in the

24   Copperweld case is the seminal decision in

25   this area.  The multiple following decisions

```
 1                    Proceedings
 2   are initially cited, I believe, at page 10 of
 3   our opening brief.  In response, Parus
 4   Holdings offers a handful of cases that had
 5   not applied the Copperweld rationale outside
 6   its original antitrust context.  Those cases
 7   are discussed in our reply brief, starting at
 8   page 22.  But for today's purposes, I think
 9   it is sufficient simply to say, there are no
10   controlling cases that are contrary to
11   Copperweld.  There are no better reasons and
12   more persuasively analyzed cases than the
13   Supreme Court's considering the inability of
14   a parent and a subsidiary corporation to
15   conspire with each other in an actionable
16   fashion.  Accordingly, we believe the
17   conspiracy counterclaim should be summarily
18   rejected.
19                Parus Holdings' tortious
20   interference claim is, we believe, similarly
21   deficient.  It is the general rule that a
22   parent corporation may not be held liable in
23   tort for interfering with a subsidiary's
24   contractual relations with a third party
25   under the same analysis as used by the
```

1                      Proceedings

2    Copperweld Court in saying that a conspiracy

3    claim won't lie against them.  Their economic

4    interests are so aligned, they are regarded

5    as one entity and, therefore, when a parent

6    company tells a subsidiary to breach a

7    contract, if that were the case, that is not

8    deemed interference, tortious interference,

9    by the general rule.

10           There are numerous cases on this

11   subject, many of which have been cited to the

12   Court by both parties.  One, I think, is

13   perhaps more instructive than most, and that

14   is the Second Circuit's decision in the

15   Boulevard case.  In that case, applying

16   Connecticut law, the Court of Appeals

17   reversed a District Court ruling finding that

18   a corporate parent had tortiously interfered

19   with a subsidiary's contractual lease by

20   directing the subsidiary to stop paying rent.

21   In reversing, the Court noted that because of

22   the significant economic unity of interest

23   between a parent and a subsidiary -- and this

24   is a direct quote from the case -- "we do not

25   believe that such a shareholder can be

**A 04364**

```
 1                  Proceedings
 2    considered a third party capable of
 3    interfering with its own company's
 4    contracts."
 5              In the course of its opinion and
 6    ruling, the Court of Appeals in Boulevard
 7    collected and analyzed numerous cases from
 8    other jurisdictions, including two from the
 9    State of New York, all applying in varying
10    ways the general rule which precludes tort
11    liability on a corporate parent for
12    interfering with its subsidiary's contractual
13    relations.  Here, we request that the Court
14    also apply that same general rule, and
15    dismiss Parus Holdings' tortious interference
16    claim against the Debtors.
17              Moving now to the deceptive trade
18    practice claim asserted by Parus Holdings, it
19    is a general --
20              JUDGE GONZALEZ:  Before you
21    proceed, the calendar indicates that the
22    parties must have advised Debtors' counsel
23    when preparing the agenda that this would
24    conclude in 45 minutes.
25              MR. DRISCOLL:  That was my
```

```
 1                Proceedings
 2  estimate, Your Honor.
 3            JUDGE GONZALEZ:  All right.  I
 4  believe we started about five minutes late.
 5            MR. DRISCOLL:  Then I should wrap
 6  up, shouldn't I?
 7            JUDGE GONZALEZ:  Yes.
 8            MR. DRISCOLL:  Then I will.  For
 9  the reasons stated in our moving papers, Your
10  Honor, I believe also the unfair deceptive
11  trade practice claim and the good faith and
12  fair dealing claim should be dismissed.
13            Thank you, Your Honor.
14            JUDGE GONZALEZ:  All right.  Thank
15  you.
16            MR. FRIEDMAN:  Good afternoon.  May
17  it please the Court, Robert Friedman from
18  Kelley Drye & Warren for Parus.
19            Your Honor, I think it is important
20  before we address the substance of the
21  summary judgment motion to place the Debtors'
22  motion in context.  There has not been
23  discovery in this case.  They are asking for
24  the extraordinary and unusual relief of
25  summary judgment before discovery, a motion
```

1                    Proceedings

2    which is in this Circuit, quote, unquote,

3    from the Diversified Carting case that we

4    cite, rarely granted.  Not only do they seek

5    summary judgment prior to the completion of

6    discovery, not only have they failed to

7    produce entire categories of relevant hard

8    copy documents, not only have they not

9    produced any documents from the electronic

10   searches, but they failed to introduce any

11   evidence in a case in which it is

12   self-evident that there are inherently

13   factual questions on both the contract and

14   tort claims.  I think it is important also

15   placing this in context.

16           If you look at the source of this

17   motion, our proof of claim was filed three

18   years ago.  Our claims have not changed since

19   then.  The timing has not changed.  The

20   substance of the claims have not changed.

21   They did not make a Motion for Summary

22   Judgment at that time.  A year and a half ago

23   in the summer of 2004, the claim objections

24   were fully briefed and submitted.  At that

25   time, Your Honor, they did not make a summary

1                        Proceedings

2    judgment motion.  They didn't tell the Court

3    that they were purely legal claims here and

4    that our legitimate claims could be dismissed

5    outright.  What happened was after the

6    briefing on the claim objections a year and a

7    half ago, we then pursued discovery in this

8    case and, as the Court is aware, there has

9    been a long and tortured history with respect

10   to getting any documents from the Debtors.

11   We had to make a motion to compel over the

12   summer, and that is the first time, Your

13   Honor, in which the summary judgment motion

14   was raised.  Their whole defense to our

15   motion to compel, Your Honor, was:  "Oh, now

16   we are making a summary judgment motion, and

17   there is an easy way out.  We don't have to

18   get into the Zubulake issues.  We don't have

19   to get into cost shifting.  We don't have to

20   get into a complex analysis of what was

21   produced and not produced.  Just dismiss the

22   case or grant us the summary judgment motion

23   on the nominal amount which they agree they

24   owe us on an admitted breach of contract."

25   Your Honor, the easy way out is not the

1                      Proceedings

2    proper way out and it is not the legal way

3    out in this case.

4              The Court is certainly aware of the

5    standard for summary judgment.  We are

6    entitled to every single inference.  When a

7    summary judgment motion is made prior to

8    completion of discovery, that deference is

9    magnified exponentially.  I mentioned the

10   Diversified Carting case.  We also cite the

11   Sanders case in which the Court said, if

12   there is even an expectation of material

13   evidence, that is enough to defeat a summary

14   judgment motion under Rule 56(f).  We have

15   made a detailed specific showing, both from

16   an affidavit that I submitted and that

17   Mr. Reneau submitted, that there is a great

18   deal of material and relevant evidence that

19   has not been produced with respect to both

20   our contract and tort claims.  These include

21   documents relating to the termination of our

22   product, the UC Contract communications

23   between WorldCom and Intermedia during the

24   relevant time period, which is prior to the

25   date of the merger, and documents relating to

1                    Proceedings

2    competitive products.  It is our view

3    supported by evidence, which we have detailed

4    in these affidavits, and supported by

5    documentary evidence submitted, even prior to

6    discovery, Your Honor, that shows that

7    WorldCom prior to the merger had a

8    competitive product, and they had no

9    intention of going forward with our product.

10   It is conceded.  It is not even disputed by

11   the Debtors.  They intentionally took the

12   legs out of our product.  Either they didn't

13   tell us while it was going on or Intermedia

14   didn't know about it, but whatever the case,

15   WorldCom is responsible for that.  They had a

16   competitive product, and they tortiously

17   interfered, conspired, and unfairly took the

18   legs out of our contract.  What the Debtors

19   do, Your Honor, is they essentially say --

20   and this is a quote from their brief -- all

21   of this evidence is, quote, unquote, properly

22   ignored.  Well, under the law of this circuit

23   you can't properly ignore the evidence,

24   especially when we haven't had an opportunity

25   to complete discovery.  Right now, for the

```
 1                    Proceedings
 2   first time, they have informed us, Your
 3   Honor, that they are doing a search for the
 4   electronically stored documents.  That is
 5   underway right now.  In addition, we have now
 6   received information with respect to a
 7   privilege log in which they have withheld
 8   documents that involve communications between
 9   WorldCom and Intermedia prior to the merger.
10   There is absolutely no basis for them to
11   withhold these documents.  We are waiting for
12   these electronic documents to be produced.
13   We are waiting for the documents from the
14   privilege log and we are waiting for the hard
15   copy documents.  We don't have those yet.
16            Rule 56(f), Judge, is a strong
17   basis for this Court not even to entertain
18   this motion at this time.  We are still
19   litigating the discovery.  However, I want to
20   address the substantive claims in any event,
21   and I will start with the contract claim.
22   There are two sources of direct damages, two
23   types of direct damages that we are claiming
24   through the contract.  One is the minimums,
25   called the Reconciliation Payments, which
```

```
 1                    Proceedings
 2    Mr. Driscoll referred to, and the other are
 3    the benefit of the bargain damages.  Make no
 4    mistake about it.  I believe, not
 5    intentionally so, but there was some overlap
 6    in Mr. Driscoll's presentation with respect
 7    to the limitation of liability clause.  We
 8    address in our papers why that provision
 9    should not be enforced, but I am not going to
10    address that here because I recognize there
11    is a concern on timing and we address it
12    sufficiently in our papers.  The damages I am
13    going to talk about now are direct damages,
14    not consequential, the direct damages that we
15    are entitled to under the contract.
16              When Mr. Driscoll says that we have
17    a remedy under the contract, what he doesn't
18    say is the key provisions under the contract
19    sections 2.12 and 2.13, they don't say that
20    the reconciliation obligation stops at
21    termination.  What they say and in reliance
22    of this we ramped up, which is specified in
23    the Taj Reneau affidavit, and we relied on
24    this provision in the contract, until
25    December of 2003, which is the 24 months that
```

A 04372

1                    Proceedings

2    Mr. Driscoll referred to, they had a minimum

3    payment due to us.  That is a clear

4    contractual obligation.  What they are saying

5    now is because they didn't pay us and because

6    they stopped performance and because they

7    breached the contract, their obligation to

8    make that payment stops upon termination, and

9    that is just not the case.  I am going to

10   even assume for this argument, Your Honor,

11   that they are right about Mr. McConnell's

12   submission with respect to the termination of

13   the contract, which we strongly dispute, and

14   I will address it in a moment.  But even

15   assuming they are right, our claims had

16   accrued by their own admission in July of

17   2001.  The timing is critical.  There was no

18   termination until April of 2002.  At that

19   time, under the definition of "accrual,"

20   which we set forth in our papers and the

21   principle anticipatory repudiation, they

22   become liable for all the minimums under the

23   contract.  That is the way anticipatory

24   repudiation works.  They are obligated to

25   give us minimums up through December of 2003.

1                    Proceedings

2    They tell us we are not performing, which

3    they did as of July of 2001.  They

4    essentially shut down the contract.  At that

5    point their contractual obligations can be

6    enforced at any time.  Those claims have

7    accrued.  We have cited several cases from

8    the Arizona Supreme Court, Gust, Rosenfeld,

9    which says claims accrue at the time you can

10   sue.  When they told us that they weren't

11   going to perform, we could sue at that time.

12   The claims accrued.  We also cite the Enyart

13   case, the Arizona Appeals Court decision, in

14   which despite the fact that there was no

15   obligation to pay at that point, as we had in

16   this case, the claims had accrued and their

17   obligations under the minimum, provisions

18   2.12 and 2.13, had accrued.  They don't

19   address our accrual argument in their papers

20   and Mr. Driscoll didn't address it here.

21   They don't address our anticipatory

22   repudiation argument either.  Under

23   anticipatory repudiation, as the Court is

24   aware, once a party indicates that it is not

25   going to perform, we are entitled to cease

```
 1                    Proceedings
 2   performance and enforce our claims under the
 3   contract, even claims for which a payment
 4   obligation had not been made yet, or under
 5   the contract terms, a time had not come up.
 6   What they say -- and by the way, we cite the
 7   United California Bank case, another case
 8   directly on point that says, if one party
 9   indicates it will not perform, the breach is
10   committed at that time and the remedy
11   accrues, not for just their outstanding
12   invoices, but for what they obligated
13   themselves to under the contract, which is
14   the minimum payments.  That is why we devoted
15   one-third of our entire company to this
16   product, which we set forth in the Reneau
17   affidavit.  Their only response to this, Your
18   Honor, without citing any authority in their
19   reply, when we raise the anticipatory
20   repudiation and the accrual argument is,
21   well, you didn't elect your remedy properly.
22   They say, when we told you we weren't going
23   to perform, what you should have done is you
24   should have elected your remedy and sued us.
25   Well, the reason they cite no authority on
```

A 04375

```
 1                    Proceedings
 2    that, Your Honor, is it is directly contrary
 3    to Arizona law.  There is an Arizona case
 4    directly on point, in which this argument was
 5    made by the breaching party, and the Supreme
 6    Court of Arizona rejected it.  That is the
 7    case of Kammert Brothers v. Tanque Verde.
 8    Now, that case is not in our papers, and I
 9    want to put the citation on the record,
10    because this election argument was first
11    raised by Debtors in their reply papers, and
12    we, obviously, don't get a sur reply.  The
13    cite of this case is 102 Ariz. 301, parallel
14    citation 428 P.2d 678.  If the Court could
15    indulge me to read the relevant quotation in
16    this case.  It alone is a basis to reject
17    their entire argument with respect to the
18    minimums.  The Supreme Court said, quote, the
19    seller claims that there can be no
20    anticipatory repudiation here, since the
21    buyer failed to immediately treat the
22    repudiation as a breach and bring suit.  We
23    believe that it is not necessary to say that
24    a breach is not an anticipatory breach until
25    it has been accepted as such by the injured
```

```
 1              Proceedings
 2   party.  A party that has received a definite
 3   repudiation by the other party to the
 4   contract should not be penalized for his
 5   efforts to make the other party live up to
 6   his end of the bargain and can cease urging
 7   performance and bringing suit for the breach
 8   at any time before the other party retracts
 9   his repudiation.  That is the law of
10   California.  Under that law, Your Honor, the
11   minimums for the 24 months became accrued --
12              JUDGE GONZALEZ:  That is a law of
13   California or Arizona?
14              MR. FRIEDMAN:  I am sorry, Your
15   Honor.  I was thinking of the United
16   California Bank case.  It is in Arizona.  I
17   apologize.  Now, this is directly on point,
18   because that is exactly what happened here.
19   Mr. McConnell in his letters was seeking to
20   do exactly that, exactly what the Arizona
21   Supreme Court said you can do, which is try
22   to resolve the issue.  They refused to pay
23   us.  We sent a letter that says "pay us," and
24   we cited the provisions of the contract,
25   which Mr. Driscoll pointed out.  But the
```

```
 1                    Proceedings
 2   McConnell letter also contains conditional
 3   language, even beyond the anticipatory
 4   repudiation point.  Mr. McConnell explains in
 5   his affidavit that his goal in sending this
 6   letter was to get payment of the amounts due,
 7   as the Court in Kammert said was permitted
 8   under Arizona law.  He says at various points
 9   in both letters, which is not cited by the
10   Debtors, if there is a termination, we may
11   seek termination.  Clearly, Your Honor, those
12   letters, which Mr. McConnell explains, are
13   not a basis to extricate Debtors from their
14   clear obligations under the contract.
15              In addition, Your Honor,
16   Mr. McConnell in his affidavit offers
17   uncontradicted evidence that the parties
18   after he sent the letter did not treat the
19   contract as terminated.  He specifically
20   cites some discussions with Jeffrey Shu, a
21   WorldCom attorney.  This is unrebutted.  In
22   fact, the only response to this submission,
23   Your Honor, is a motion to strike this
24   evidence.
25              I just want to address very
```

**A 04378**

```
 1                    Proceedings
 2    briefly, Your Honor, the pricing issue which
 3    Mr. Driscoll discussed.  Make no mistake
 4    about it.  The term "base monthly price" is
 5    an undefined term.  It is not defined
 6    anywhere in the contract.  This is
 7    tailor-made for the introduction of evidence
 8    to explain what the term means.  "Base
 9    monthly price" is not defined.  Under the
10    decisions that we point out in response to
11    their motion to strike the Reneau affidavit,
12    Arizona law is very liberal with respect to
13    the introduction of evidence and the
14    consideration of evidence.  If it doesn't
15    contradict the contract, it comes in and
16    should be considered.  Here, Mr. Reneau
17    explains that the only price that was
18    negotiated was the unlimited price.  "Base
19    monthly price" is a term of art.  Basic
20    service and "base monthly price" are not
21    equivalent.  Those are explained in the
22    affidavit.  Should the parties have defined
23    the term "base monthly price"?  Yes, they
24    should have.  All of the accounts, I think
25    with the exception of one, were unlimited
```

1                    Proceedings

2    service.

3              As Mr. Reneau explains in his

4    affidavit, the basic service was simply a

5    fallback to do some sampling.  If someone

6    wanted to sample the service, they could use

7    the basic service just to see what it is

8    like.  Like if a salesmen goes out and says,

9    "Hey, do you want to try it for a week and

10   use the basic service?"  Importantly also, as

11   explained in the Reneau affidavit, the basic

12   service came with additional costs.  The

13   unlimited service, which was the base, as

14   Mr. Reneau explains, and which is a term of

15   art in the industry, was a fixed rate.  It

16   was a fixed basic rate.

17             Your Honor, finally on the

18   contract, the Debtors misunderstand

19   apparently what our "benefit of bargain"

20   argument is.  We are not seeking

21   consequential damages.  Under Arizona law,

22   benefit of the bargain damages are direct

23   damages.  We are seeking loss of value, which

24   the restatement, which Arizona follows,

25   directly distinguishes between consequential

A 04380

1                    Proceedings

2    damages and benefit of the bargain damages.

3    This is an entirely separate category of our

4    claim.  We are seeking the benefit of our

5    bargain, the loss of value of this contract

6    to us, and all the back-up evidence is

7    submitted, again, in the Reneau affidavit.

8    With respect to what we did, it is undisputed

9    by the Debtors.

10                   Mr. Driscoll mentioned when he

11   concluded with respect to the contract

12   claims, that the argument that the Debtors

13   have made takes a tortuous path and, indeed,

14   I agree with him.  In order for them to go

15   through all of the undefined terms without

16   any evidence, in order for them to say that

17   they should be extricated from clear

18   contractual obligations to pay the 24 months

19   or the minimum, I believe I agree with

20   them -- it is tortuous and it should be

21   denied.

22                   With respect to the tort claims,

23   Your Honor, we have several different tort

24   claims.  I recognize that we are running out

25   of time, so I will try to be brief.  The most

A 04381

```
 1                    Proceedings
 2   important issue with respect to their tort
 3   claims in which the Court does not even have
 4   to get into all of the issues with respect to
 5   Copperweld, and the exceptions to the
 6   privilege involve very simply this:  prior to
 7   January 1, 2001, these were not unified
 8   entities.  It is undisputed the bulk of our
 9   tort claim, not all, but the bulk of our tort
10   claims, and our allegations relate to the
11   period from September 2000 to July 2001.
12   They simply have no basis to assert privilege
13   in this case, Your Honor, and they have no
14   response to this in their papers.  Look
15   through their papers.  You will see that
16   their only response is to say, "Well, yes,
17   you do allege that the allegations occurred
18   during that time period.  But you know what?
19   That is just boilerplate, so we should just
20   ignore that."  Even though, obviously, that
21   is essentially a 12(b)(6) motion that is
22   being decided on the pleadings, because we
23   haven't had the benefit of discovery.  We
24   have alleged and we have shown very clearly
25   and specifically, as best we can with the
```

A 04382

1                   Proceedings

2    limited discovery, that between September

3    2000 and July 2001 there was significant

4    evidence that WorldCom never intended to go

5    forward with this contract. Because of their

6    competitive product, they took the legs right

7    out of our own product. What they do, Judge,

8    is they say, "Well, you know what? We have

9    this Antitrust Order, and it is curious that

10   you didn't hear Mr. Driscoll mention the

11   Antitrust Order, because this was this whole

12   defense to our opposition." This was their

13   whole response to our opposition, when we

14   argued that it is a factual issue with

15   respect to an exception, the exception of

16   wrongful means. We showed that WorldCom used

17   wrongful means with respect to their conduct

18   on this contract. What they said was, "Hey,

19   listen, we have this Antitrust Order that

20   obligates us to divest of Intermedia."

21   Mr. Driscoll didn't mention this for several

22   reasons during his argument. Number one, the

23   Antitrust Order is extremely important,

24   because the language of the Antitrust Order

25   says that they are not to do anything to

A 04383

```
 1                    Proceedings

 2    abrogate or hinder the contractual

 3    relationships between Intermedia and its

 4    contracting parties.  They must divest of

 5    these entities as a going concern.  They

 6    violated that.  Not only did they violate our

 7    rights, Your Honor, but they violated the

 8    Antitrust Order.  In addition, if you accept

 9    that the Antitrust Order has any place as a

10    defense to our showing that they used

11    wrongful means, under the Antitrust Order

12    there is no unity of interest.  They don't

13    have a privilege to begin with, because if

14    you look at the terms of the Antitrust Order,

15    it specifically says that WorldCom and

16    Intermedia are to be deemed separate

17    entities, competitive.  This was a condition

18    put upon them by the Department of Justice.

19    They had no basis to assert a privilege under

20    the Antitrust Order.

21                    Your Honor, I think it is

22    self-evident and I don't need to spend a lot

23    of time on the exception to the privilege

24    that they assert with respect to our tortious

25    interference and the conspiracy claim.  We
```

```
 1                  Proceedings
 2   can show that it was not in the subsidiary's
 3   interest.  We can show wrongful means.  The
 4   cases hold conclusively that these are
 5   fact-based considerations.  We have received
 6   no discovery.  We have made a showing on the
 7   limited discovery we have that is set forth
 8   in our papers with respect to both the direct
 9   and circumstantial evidence of both the
10   improper conduct, the wrongful means, and the
11   fact that this was not in Intermedia's
12   interest.
13             Your Honor, at best this motion is
14   premature, and at worse it is frivolous.
15   Either way, it should be denied.
16             JUDGE GONZALEZ:  All right.  Thank
17   you.
18             Mr. Driscoll, do you care to
19   respond?
20             MR. DRISCOLL:  Very briefly.  I
21   agree with counsel that the Court can look at
22   the pending motion as a motion brought under
23   12(b)(6) of the Federal Rules, the motion to
24   dismiss, and that it does not require
25   evidence outside for the matters that are
```

```
 1                 Proceedings
 2    before the Court at this point.  Certainly
 3    the contract speaks for itself and so on.  I
 4    do not think any further evidence is
 5    required, so I agree.
 6                 Thank you, Your Honor.
 7                 JUDGE GONZALEZ:  All right.  Thank
 8    you.  I will take it under advisement.
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

A 04386

```
 1
 2                    C E R T I F I C A T E
 3     STATE OF NEW YORK     )
                              : SS:
 4     COUNTY OF NEW YORK    )
 5
 6          I, DEBORAH HUNTSMAN, a Shorthand
 7     Reporter and Notary Public within and for the
 8     State of New York, do hereby certify:
 9             That the within is a true and
10     accurate transcript of the proceedings taken
11     on the 17th day of January, 2006.
12             I further certify that I am not
13     related by blood or marriage to any of the
14     parties and that I am not interested in the
15     outcome of this matter.
16             IN WITNESS WHEREOF, I have hereunto
17     set my hand this 20th day of January, 2006.
18
19                _____
                        DEBORAH HUNTSMAN
20
21     **DIGITALLY RECORDED CD RECEIVED BY COURT
       REPORTER ON 1/18/06 AT 12:45 P.M.
22
23
24
25
```

A 04387

## $

**$11.40** [1] - 12:6
**$11.45** [2] - 5:4, 14:9
**$27.40** [3] - 5:7, 12:2, 12:20

## 0

**02-13533** [2] - 1:5, 3:4

## 1

**1** [1] - 37:7
**1/17/06** [1] - 3:3
**1/18/06** [1] - 42:21
**10** [1] - 18:2
**10,000** [3] - 4:7, 4:8, 11:17
**10004** [1] - 1:9
**10038** [1] - 1:23
**101** [1] - 2:7
**10178** [1] - 2:8
**102** [1] - 31:13
**11** [7] - 8:16, 8:22, 14:23, 14:25, 15:18, 15:23, 16:15
**11:45** [1] - 1:11
**11:50** [1] - 1:7
**12** [10] - 5:16, 6:8, 6:23, 7:6, 7:12, 9:11, 10:6, 10:23, 13:24, 14:6
**12(b)(6** [2] - 37:21, 40:23
**1201** [1] - 2:4
**12:45** [1] - 42:21
**12th** [2] - 6:15, 10:12
**17** [2] - 1:7, 11:21
**17th** [1] - 42:11
**18** [2] - 4:7, 14:6
**198** [1] - 1:23

## 2

**2** [2] - 8:6, 17:16
**2.12** [4] - 4:5, 8:9, 27:19, 29:18
**2.13** [5] - 4:10, 8:3, 11:11, 27:19, 29:18
**2000** [3] - 3:22, 37:11, 38:3
**2001** [9] - 4:7, 4:16, 11:19, 14:6, 28:17, 29:3, 37:7, 37:11, 38:3
**2002** [19] - 4:17, 5:16, 6:5, 6:8, 6:23, 7:6, 7:12, 9:11, 10:6,

**10:8, 10:16, 10:19, 10:22, 10:23, 11:20, 13:25, 14:7, 17:16, 28:18**
**2003** [2] - 27:25, 28:25
**2004** [1] - 22:23
**2006** [3] - 1:7, 42:11, 42:17
**20th** [1] - 42:17
**212** [1] - 1:24
**22** [1] - 18:8
**24** [5] - 4:22, 9:23, 27:25, 32:11, 36:18
**25** [1] - 10:8
**25th** [1] - 6:13

## 3

**30** [4] - 5:16, 5:24, 6:17, 13:25
**30-day** [1] - 7:3
**301** [1] - 31:13

## 4

**428** [1] - 31:14
**45** [1] - 20:24

## 5

**5.2** [5] - 5:18, 6:6, 6:14, 6:16, 7:4
**5.3** [2] - 7:19, 8:10
**5.4** [1] - 9:20
**56(e** [1] - 12:25
**56(f** [2] - 24:14, 26:16

## 6

**6** [1] - 8:4
**608-9053** [1] - 1:24
**64106** [1] - 2:4
**678** [1] - 31:14

## 7

**723-9898** [1] - 1:24

## 9

**903** [1] - 1:23
**917** [1] - 1:24

## A

**abrogate** [1] - 39:2
**absence** [1] - 16:14
**absolutely** [1] - 26:10

**accept** [1] - 39:8
**accepted** [1] - 31:25
**accompanied** [1] - 17:6
**accordingly** [1] - 6:21
**Accordingly** [3] - 7:3, 13:15, 18:16
**accounts** [1] - 34:24
**accrual** [3] - 28:19, 29:19, 30:20
**accrue** [1] - 29:9
**accrued** [7] - 8:14, 28:16, 29:7, 29:12, 29:16, 29:18, 32:11
**accrues** [1] - 30:11
**accurate** [1] - 42:10
**acknowledge** [1] - 6:25
**acknowledged** [2] - 4:22, 13:22
**acting** [1] - 3:19
**actionable** [1] - 18:15
**actions** [1] - 10:19
**acts** [4] - 7:14, 17:7, 17:12, 17:13
**addition** [4] - 12:13, 26:5, 33:15, 39:8
**additional** [1] - 35:12
**address** [10] - 21:20, 26:20, 27:8, 27:10, 27:11, 28:14, 29:19, 29:20, 29:21, 33:25
**adequate** [1] - 15:19
**admission** [1] - 28:16
**admitted** [3] - 7:5, 7:17, 23:24
**advise** [1] - 13:7
**advised** [2] - 6:19, 20:22
**advisement** [1] - 41:8
**advocate** [1] - 15:22
**affidavit** [7] - 10:2, 10:14, 12:19, 13:6, 13:14, 24:16, 27:23, 30:17, 33:5, 33:16, 34:11, 34:22, 35:4, 35:11, 36:7
**affidavits** [1] - 25:4
**Affidavits** [1] - 1:16
**afternoon** [1] - 21:16
**agenda** [1] - 20:23
**ago** [3] - 22:18, 22:22, 23:7
**agree** [5] - 23:23, 36:14, 36:19, 40:21, 41:5

**agreed** [3] - 4:2, 14:25, 15:3
**agreement** [2] - 6:21, 16:14
**ahead** [1] - 3:11
**al** [2] - 1:5, 3:3
**AI** [1] - 1:11
**aligned** [1] - 19:4
**allegations** [2] - 37:10, 37:17
**allege** [1] - 37:17
**alleged** [1] - 37:24
**alone** [2] - 17:6, 31:16
**ambiguity** [2] - 16:6, 16:10
**ambiguous** [1] - 15:20
**amount** [5] - 4:24, 11:8, 11:11, 14:10, 14:23
**amounts** [1] - 33:6
**analysis** [2] - 18:25, 23:20
**analyzed** [2] - 18:12, 20:7
**anticipatory** [8] - 28:21, 28:23, 29:21, 29:23, 30:19, 31:20, 31:24, 33:3
**Antitrust** [10] - 38:9, 38:11, 38:19, 38:23, 38:24, 39:8, 39:9, 39:11, 39:14, 39:20
**antitrust** [1] - 18:6
**apologize** [1] - 32:17
**Appeals** [3] - 19:16, 20:6, 29:13
**appearing** [1] - 11:21
**appendix** [1] - 12:4
**applicable** [1] - 17:10
**application** [2] - 5:9, 13:21
**applied** [2] - 13:19, 18:5
**apply** [1] - 20:14
**applying** [3] - 7:3, 19:15, 20:9
**appropriate** [4] - 5:6, 12:7, 13:18, 15:13
**April** [10] - 5:15, 6:23, 7:6, 7:12, 9:10, 10:12, 10:23, 13:24, 14:6, 28:18
**area** [1] - 17:25
**argued** [1] - 38:14
**argues** [2] - 15:17, 15:19
**arguing** [1] - 9:8

**argument** [12] - 15:23, 16:7, 28:10, 29:19, 29:22, 30:20, 31:4, 31:10, 31:17, 35:20, 36:12, 38:22
**arising** [1] - 16:21
**Ariz** [1] - 31:13
**Arizona** [16] - 15:8, 15:9, 16:9, 16:12, 29:8, 29:13, 31:3, 31:6, 32:13, 32:16, 32:20, 33:8, 34:12, 35:21, 35:24
**art** [2] - 34:19, 35:15
**Arthur** [1] - 1:20
**ascertaining** [1] - 12:8
**assert** [4] - 14:15, 37:12, 39:19, 39:24
**asserted** [4] - 3:19, 17:13, 17:14, 20:18
**asserting** [1] - 3:17
**asserts** [1] - 3:13
**assume** [1] - 28:10
**assuming** [1] - 28:15
**attached** [1] - 4:18
**attorney** [1] - 33:21
**Attorneys** [2] - 2:3, 2:7
**author** [2] - 10:6, 10:8
**authorities** [1] - 11:2
**authority** [4] - 15:11, 16:7, 30:18, 30:25
**authorized** [1] - 7:19
**available** [1] - 15:23
**Avenue** [1] - 2:7
**avoid** [3] - 9:6, 9:7, 9:25
**aware** [3] - 23:8, 24:4, 29:24

## B

**back-up** [1] - 36:6
**Bank** [2] - 30:7, 32:16
**Bankruptcy** [2] - 1:2, 1:21
**bargain** [7] - 9:12, 27:3, 32:6, 35:19, 35:22, 36:2, 36:5
**bargained** [2] - 9:16, 16:2
**barred** [1] - 14:22
**base** [3] - 4:12, 4:24, 11:14, 11:23, 12:8, 12:12, 12:14, 12:22, 13:18, 34:4, 34:20, 34:23, 35:13

A 04388

**Base** [2] - 34:8, 34:18
**based** [2] - 12:5, 40:5
**basic** [9] - 5:3, 11:24, 12:7, 14:8, 35:4, 35:7, 35:10, 35:11, 35:16
**Basic** [1] - 34:19
**basis** [6] - 26:10, 26:17, 31:16, 33:13, 37:12, 39:19
**became** [2] - 4:9, 32:11
**become** [1] - 28:22
**begin** [1] - 39:13
**benefit** [7] - 9:11, 27:3, 35:19, 35:22, 36:2, 36:4, 37:23
**best** [4] - 10:18, 10:25, 37:25, 40:13
**better** [1] - 18:11
**between** [10] - 3:22, 5:3, 14:23, 15:14, 19:23, 24:23, 26:8, 35:25, 38:2, 39:3
**beyond** [1] - 33:3
**bit** [1] - 14:17
**blank** [7] - 15:21, 16:5, 16:9, 16:12, 16:13, 16:17, 16:21
**blood** [1] - 42:13
**boilerplate** [1] - 37:19
**Boulevard** [2] - 19:15, 20:6
**boundaries** [1] - 9:16
**Bowling** [1] - 1:8
**breach** [12] - 3:14, 3:20, 4:18, 13:20, 15:25, 19:6, 23:24, 30:9, 31:22, 31:24, 32:7
**breached** [1] - 28:7
**breaching** [1] - 31:5
**brief** [4] - 18:3, 18:7, 25:20, 36:25
**briefed** [1] - 22:24
**briefing** [1] - 23:6
**briefly** [2] - 34:2, 40:20
**briefs** [1] - 13:13
**bring** [1] - 31:22
**bringing** [1] - 32:7
**Broadway** [1] - 1:23
**Brothers** [1] - 31:7
**brought** [1] - 40:22
**bulk** [2] - 37:8, 37:9
**business** [1] - 9:5
**buy** [1] - 4:2
**buyer** [1] - 31:21

**C**

**calculate** [1] - 4:25
**calendar** [1] - 20:21
**California** [4] - 30:7, 32:10, 32:13, 32:16
**cannot** [2] - 13:4, 17:5, 17:19
**capable** [2] - 16:16, 20:2
**captioned** [1] - 8:4
**care** [1] - 40:18
**Carting** [2] - 22:3, 24:10
**Case** [2] - 1:4, 3:4
**case** [26] - 17:24, 19:7, 19:15, 19:24, 21:23, 22:3, 22:11, 23:8, 23:22, 24:3, 24:10, 24:11, 25:14, 28:9, 29:13, 29:16, 30:7, 31:3, 31:7, 31:8, 31:13, 31:16, 32:16, 37:13
**cases** [9] - 16:12, 18:4, 18:6, 18:10, 18:12, 19:10, 20:7, 29:7, 40:4
**categories** [1] - 22:7
**category** [1] - 36:3
**Cd** [1] - 42:21
**cease** [2] - 29:25, 32:6
**ceased** [1] - 7:16
**Ceo** [1] - 12:18
**certainly** [1] - 24:4
**Certainly** [1] - 41:2
**certify** [2] - 42:8, 42:12
**cessation** [1] - 7:18
**changed** [3] - 22:18, 22:19, 22:20
**choice** [1] - 5:2
**circuit** [1] - 25:22
**Circuit** [1] - 22:2
**Circuit's** [1] - 19:14
**circumstantial** [1] - 40:9
**citation** [2] - 31:9, 31:14
**cite** [6] - 22:4, 24:10, 29:12, 30:6, 30:25, 31:13
**cited** [7] - 11:2, 15:11, 18:2, 19:11, 29:7, 32:24, 33:9
**cites** [2] - 16:6, 33:20
**citing** [1] - 30:18
**City** [1] - 2:4
**civil** [2] - 16:25, 17:4

**claim** [18] - 4:18, 15:25, 17:2, 17:4, 17:8, 18:20, 19:3, 20:16, 20:18, 21:11, 21:12, 22:17, 22:23, 23:6, 26:21, 36:4, 37:9, 39:25
**Claimant** [4] - 1:16, 3:13, 3:23, 10:4
**claiming** [1] - 26:23
**claims** [26] - 3:14, 3:18, 3:22, 14:16, 14:19, 14:21, 22:14, 22:18, 22:20, 23:3, 23:4, 24:20, 26:20, 28:15, 29:6, 29:9, 29:12, 29:16, 30:2, 30:3, 31:19, 36:12, 36:22, 36:24, 37:3, 37:10
**clause** [1] - 27:7
**clear** [5] - 8:16, 13:3, 28:3, 33:14, 36:17
**Clearly** [1] - 33:11
**clearly** [2] - 10:21, 37:24
**collected** [1] - 20:7
**commencing** [1] - 14:5
**comments** [1] - 13:13
**commercial** [2] - 15:14, 15:15
**committed** [1] - 30:10
**communications** [2] - 24:22, 26:8
**company** [2] - 19:6, 30:15
**company's** [1] - 20:3
**compel** [2] - 23:11, 23:15
**competitive** [5] - 25:2, 25:8, 25:16, 38:6, 39:17
**complete** [1] - 25:25
**completion** [2] - 22:5, 24:8
**complex** [1] - 23:20
**comprehensively** [1] - 15:2
**conceded** [1] - 25:10
**concern** [2] - 27:11, 39:5
**concerning** [1] - 13:17
**Concerning** [1] - 16:25
**concert** [1] - 3:20
**conclude** [1] - 20:24

**concluded** [1] - 36:11
**concluding** [1] - 14:6
**conclusion** [2] - 12:20, 14:7
**conclusions** [2] - 12:23, 13:23
**conclusively** [1] - 40:4
**conclusory** [2] - 13:4, 13:16
**condition** [1] - 39:17
**conditional** [1] - 33:2
**conduct** [2] - 38:17, 40:10
**Connecticut** [1] - 19:16
**consequences** [2] - 7:22, 10:9
**consequential** [8] - 3:18, 9:2, 14:16, 14:21, 15:5, 27:14, 35:21, 35:25
**consideration** [1] - 34:14
**considerations** [1] - 40:5
**considered** [2] - 20:2, 34:16
**considering** [1] - 18:13
**consistent** [3] - 7:8, 7:13, 8:10
**consists** [1] - 12:18
**conspiracy** [8] - 17:2, 17:5, 17:6, 17:8, 17:14, 18:17, 19:2, 39:25
**conspire** [1] - 18:15
**conspired** [2] - 17:20, 25:17
**construe** [1] - 14:13
**contains** [1] - 33:2
**contemporaneous** [1] - 7:14
**contemporary** [1] - 7:9
**contended** [2] - 5:5, 5:7, 11:25
**contends** [1] - 12:11
**contention** [1] - 12:15
**context** [3] - 18:6, 21:22, 22:15
**continue** [1] - 7:25
**Contract** [1] - 24:22
**contract** [87] - 3:14, 3:20, 3:21, 3:22, 4:2, 4:5, 4:10, 4:11, 4:13, 4:18, 5:10, 5:14, 5:18,

5:20, 5:23, 6:6, 6:15, 6:16, 6:17, 7:5, 7:6, 7:7, 7:12, 7:17, 7:20, 7:23, 8:3, 8:4, 8:6, 8:10, 8:13, 8:17, 8:18, 9:14, 9:15, 9:19, 9:21, 10:11, 10:16, 10:24, 11:11, 11:13, 12:4, 12:6, 12:10, 12:17, 13:10, 13:15, 13:20, 13:22, 13:24, 14:23, 15:8, 15:10, 15:25, 16:4, 19:7, 22:13, 23:24, 24:20, 25:18, 26:21, 26:24, 27:15, 27:17, 27:18, 27:24, 28:7, 28:13, 28:23, 29:4, 30:3, 30:5, 30:13, 32:4, 32:24, 33:14, 33:19, 34:6, 34:15, 35:18, 36:5, 36:11, 38:5, 38:18, 41:3
**contracting** [1] - 39:4
**contracts** [4] - 14:13, 15:14, 16:9, 20:4
**contractual** [11] - 5:19, 12:7, 12:14, 15:12, 18:24, 19:19, 20:12, 28:4, 29:5, 36:18, 39:2
**contradict** [1] - 34:15
**contradictory** [1] - 11:4
**contrary** [3] - 9:13, 18:10, 31:2
**control** [1] - 15:9
**controlling** [1] - 18:10
**Copperweld** [5] - 17:24, 18:5, 18:11, 19:2, 37:5
**copy** [2] - 22:8, 26:15
**corporate** [2] - 19:18, 20:11
**corporation** [2] - 18:14, 18:22
**corporations** [1] - 17:19
**cost** [1] - 23:19
**costs** [1] - 35:12
**counsel** [7] - 6:7, 6:10, 7:10, 10:3, 10:4, 20:22, 40:21
**Counsel's** [1] - 13:12
**counterclaim** [1] - 18:17

**County**[1] - 42:4
**course** [1] - 20:5
**Court**[36] - 1:2, 1:22, 5:9, 7:7, 7:11, 10:13, 11:5, 13:19, 15:11, 15:16, 15:22, 19:2, 19:12, 19:16, 19:17, 19:21, 20:6, 20:13, 21:17, 23:2, 23:8, 24:4, 24:11, 26:17, 29:8, 29:13, 29:23, 31:6, 31:14, 31:18, 32:21, 33:7, 37:3, 40:21, 41:2, 42:21
**Court's** [2] - 17:23, 18:13
**create** [1] - 16:10
**creating** [1] - 16:5
**critical** [1] - 28:17
**cure** [5] - 5:25, 7:2, 10:10, 10:22, 14:3
**cured** [2] - 6:18, 6:24
**curious** [1] - 38:9
**Custom**[1] - 1:8

**D**

**damage** [3] - 3:18, 14:16, 14:21
**damages** [17] - 8:19, 8:20, 9:3, 15:6, 16:21, 16:24, 26:22, 26:23, 27:3, 27:12, 27:13, 27:14, 35:21, 35:22, 35:23, 36:2
**date** [3] - 7:8, 8:14, 24:25
**days** [4] - 5:16, 5:24, 6:17, 13:25
**deal** [1] - 24:18
**dealing** [1] - 21:12
**dealt** [1] - 14:16
**Deborah** [3] - 1:22, 42:6, 42:19
**Debtors** [15] - 1:6, 2:3, 3:9, 4:22, 5:5, 20:16, 23:10, 25:11, 25:18, 31:11, 33:10, 33:13, 35:18, 36:9, 36:12
**Debtors'** [5] - 1:15, 3:6, 11:21, 20:22, 21:21
**December** [6] - 4:7, 4:16, 11:19, 14:6, 27:25, 28:25
**deceptive** [2] - 20:17, 21:10
**decided** [1] - 37:22
**decision** [4] - 17:23,

17:24, 19:14, 29:13
**decisions** [2] - 17:25, 34:10
**deemed** [2] - 19:8, 39:16
**default** [14] - 5:17, 5:20, 5:21, 6:3, 6:8, 6:14, 6:18, 6:22, 7:16, 10:7, 10:10, 10:21, 14:2, 14:3
**defaulted** [1] - 4:14
**defaulting** [2] - 5:22, 5:24
**defaults** [3] - 5:25, 6:24, 7:2
**defeat** [1] - 24:13
**defense** [3] - 23:14, 38:12, 39:10
**deference** [1] - 24:8
**deficiencies** [2] - 14:14, 14:18
**deficient** [1] - 18:21
**defined** [3] - 34:5, 34:9, 34:22
**definite** [1] - 32:2
**definition** [1] - 28:19
**denied** [2] - 36:21, 40:15
**Department** [1] - 39:18
**deprive** [1] - 9:11
**describe** [1] - 10:20
**described** [2] - 11:13, 12:3
**describes** [1] - 4:11
**despite** [1] - 29:14
**detailed** [2] - 24:15, 25:3
**determining** [1] - 14:10
**devoted** [1] - 30:14
**different** [1] - 36:23
**Digitally** [2] - 1:10, 42:21
**direct** [8] - 8:25, 19:24, 26:22, 26:23, 27:13, 27:14, 35:22, 40:8
**directing** [1] - 19:20
**directly** [5] - 30:8, 31:2, 31:4, 32:17, 35:25
**disagree** [1] - 9:12
**disagreement** [1] - 17:4
**discovery** [12] - 21:23, 21:25, 22:6, 23:7, 24:8, 25:6, 25:25, 26:19, 37:23, 38:2, 40:6, 40:7

**discussed** [3] - 9:14, 18:7, 34:3
**discussions** [1] - 33:20
**dismiss** [3] - 20:15, 23:21, 40:24
**dismissed** [2] - 21:12, 23:4
**dispute** [4] - 4:14, 11:17, 11:22, 28:13
**disputed** [1] - 25:10
**disputes** [1] - 17:11
**disregarded** [1] - 11:5
**distinguishes** [1] - 35:25
**District** [2] - 1:3, 19:17
**Diversified** [2] - 22:3, 24:10
**divest** [2] - 38:20, 39:4
**documentary** [1] - 25:5
**documents** [11] - 22:8, 22:9, 23:10, 24:21, 24:25, 26:4, 26:8, 26:11, 26:12, 26:13, 26:15
**done** [1] - 30:23
**down** [1] - 29:4
**Driscoll** [18] - 2:5, 3:8, 3:9, 3:12, 20:25, 21:5, 21:8, 27:2, 27:16, 28:2, 29:20, 32:25, 34:3, 36:10, 38:10, 38:21, 40:18, 40:20
**Driscoll's** [1] - 27:6
**Drye** [2] - 2:6, 21:18
**due** [4] - 9:10, 28:3, 33:6
**during** [3] - 24:23, 37:18, 38:22

**E**

**early** [1] - 9:21
**easy** [2] - 23:17, 23:25
**economic** [3] - 17:21, 19:3, 19:22
**effect** [1] - 10:20
**effective** [2] - 5:23, 17:16
**Effectnet** [16] - 1:13, 1:13, 3:23, 4:3, 5:16, 6:7, 6:10, 6:14, 7:16, 7:17, 7:25, 9:20, 10:3, 13:25, 14:23, 16:4

**Effectnet's** [8] - 4:6, 7:10, 7:13, 7:15, 11:14, 11:23, 11:24, 14:8
**efforts** [1] - 32:5
**either** [4] - 8:23, 15:4, 16:22, 29:22
**Either** [2] - 25:12, 40:15
**elect** [1] - 30:21
**elected** [1] - 30:24
**election** [1] - 31:10
**electronic** [2] - 22:9, 26:12
**electronically** [1] - 26:4
**elements** [1] - 14:18
**end** [4] - 4:4, 4:7, 11:15, 32:6
**ending** [1] - 6:4
**enforce** [1] - 30:2
**enforceability** [1] - 15:12
**enforceable** [1] - 15:7
**enforced** [4] - 15:24, 16:16, 27:9, 29:6
**enforcement** [1] - 15:18
**entertain** [1] - 26:17
**entire** [3] - 22:7, 30:15, 31:17
**entirely** [1] - 36:3
**entities** [4] - 15:15, 37:8, 39:5, 39:17
**entitled** [4] - 5:18, 24:6, 27:15, 29:25
**entity** [2] - 17:22, 19:5
**Enyart** [1] - 29:12
**equivalent** [1] - 34:21
**especially** [1] - 25:24
**Esq** [3] - 2:5, 2:9, 2:10
**essentially** [3] - 25:19, 29:4, 37:21
**estimate** [1] - 21:2
**et** [2] - 1:5, 3:3
**Et** [1] - 1:11
**evaluation** [1] - 11:6
**event** [5] - 5:19, 8:23, 15:4, 16:22, 26:20
**evidence** [22] - 10:18, 10:25, 12:16, 17:7, 22:11, 24:13, 24:18, 25:3, 25:5, 25:21, 25:23, 33:17, 33:24, 34:7, 34:13,

34:14, 36:6, 36:16, 38:4, 40:9, 40:25, 41:4
**evident** [3] - 9:18, 22:12, 39:22
**evidentiary** [1] - 12:24
**exactly** [3] - 32:18, 32:20
**except** [1] - 16:20
**exception** [6] - 16:18, 16:19, 34:25, 38:15, 39:23
**exceptions** [1] - 37:5
**excerpt** [1] - 3:3
**Exhibit** [4] - 3:25, 6:9, 6:12, 6:20
**expectation** [1] - 24:12
**experience** [1] - 13:8
**explain** [1] - 34:8
**explained** [4] - 6:11, 10:22, 34:21, 35:11
**explaining** [1] - 10:9
**explains** [5] - 33:4, 33:12, 34:17, 35:3, 35:14
**explanation** [1] - 7:9
**exponentially** [1] - 24:9
**extraordinary** [1] - 21:24
**extremely** [1] - 38:23
**extricate** [1] - 33:13
**extricated** [1] - 36:17

**F**

**fact** [7] - 10:15, 11:4, 12:24, 29:14, 33:22, 40:5, 40:11
**fact-based** [1] - 40:5
**facts** [4] - 5:10, 7:5, 13:4, 13:23
**factual** [2] - 22:13, 38:14
**failed** [7] - 4:8, 7:2, 7:15, 14:2, 22:6, 22:10, 31:21
**fails** [1] - 5:25
**failure** [2] - 10:10, 10:22
**fair** [1] - 21:12
**faith** [1] - 21:11
**fallback** [1] - 35:5
**fashion** [1] - 18:16
**Federal** [2] - 13:2, 40:23
**filed** [4] - 1:14, 1:18, 10:14, 22:17

**filled** [1] - 16:17
**finally** [1] - 35:17
**Finally**[2] - 6:25, 8:15
**first** [5] - 4:20, 5:11, 23:12, 26:2, 31:10
**First**[2] - 3:14, 13:23
**firsthand** [1] - 13:8
**five** [1] - 21:4
**fixed** [2] - 35:15, 35:16
**following** [2] - 3:2, 17:25
**follows** [1] - 35:24
**former** [1] - 10:3
**forming** [1] - 9:15
**forth** [4] - 11:20, 28:20, 30:16, 40:7
**forward** [2] - 25:9, 38:5
**four** [4] - 4:22, 6:4, 9:9, 10:14
**frequently** [1] - 12:19
**Friedman**[4] - 2:9, 21:16, 21:17, 32:14
**frivolous** [1] - 40:14
**fully** [3] - 15:24, 16:16, 22:24
**function** [1] - 11:12
**furtherance** [2] - 17:7, 17:14

## G

**general** [11] - 6:6, 6:9, 7:10, 10:3, 10:4, 17:18, 18:21, 19:9, 20:10, 20:14, 20:19
**given** [1] - 6:13
**goal** [1] - 33:5
**Gonzalez**[10] - 1:20, 3:5, 3:10, 20:20, 21:3, 21:7, 21:14, 32:12, 40:16, 41:7
**governing** [1] - 15:8
**grammatical** [1] - 12:13
**grant** [1] - 23:22
**granted** [1] - 22:4
**great** [1] - 24:17
**Green**[1] - 1:8
**Gust**[1] - 29:8

## H

**half** [3] - 9:23, 22:22, 23:7
**hand** [1] - 42:17
**handful** [1] - 18:4

**hard** [2] - 22:7, 26:14
**hear** [1] - 38:10
**Hecker** [1] - 2:3
**held** [1] - 18:22
**hereby** [1] - 42:8
**hereunto** [1] - 42:16
**hinder** [1] - 39:2
**hinges** [1] - 5:13
**history** [1] - 23:9
**hold** [1] - 40:4
**Holdings** [23] - 1:12, 1:14, 1:16, 1:18, 2:7, 3:13, 3:24, 4:23, 5:8, 8:21, 9:6, 9:24, 9:25, 10:5, 11:25, 12:10, 15:17, 15:24, 16:6, 17:11, 17:13, 18:4, 20:18
**Holdings'** [7] - 9:8, 12:15, 14:15, 14:20, 16:25, 18:19, 20:15
**Honor** [33] - 3:9, 3:12, 7:22, 8:15, 10:17, 13:21, 21:2, 21:10, 21:13, 21:19, 22:25, 23:13, 23:15, 23:25, 25:6, 25:19, 26:3, 28:10, 30:18, 31:2, 32:10, 32:15, 33:11, 33:15, 33:23, 34:2, 35:17, 36:23, 37:13, 39:7, 39:21, 40:13, 41:6
**Honorable** [1] - 1:20
**House** [1] - 1:8
**Huntsman** [3] - 1:22, 42:6, 42:19

## I

**ignore** [2] - 25:23, 37:20
**ignored** [1] - 25:22
**Ignoring** [1] - 12:9
**immediately** [1] - 31:21
**important** [4] - 21:19, 22:14, 37:2, 38:23
**Importantly** [1] - 35:10
**improper** [1] - 40:10
**inability** [1] - 18:13
**inappropriately** [1] - 12:16
**Inc** [6] - 1:5, 1:11, 1:13, 1:14, 1:18, 2:7
**Inc.'s** [2] - 1:12, 1:16
**incidental** [1] - 8:25
**include** [1] - 24:20

**includes** [1] - 8:7
**including** [2] - 9:3, 20:8
**Indeed** [2] - 13:14, 16:11
**indeed** [1] - 36:13
**indicates** [3] - 20:21, 29:24, 30:9
**indirect** [1] - 9:2
**indulge** [1] - 31:15
**industry** [1] - 35:15
**inference** [1] - 24:6
**information** [1] - 26:6
**informed** [1] - 26:2
**inherently** [1] - 22:12
**initial** [1] - 11:21
**injured** [1] - 31:25
**inserted** [1] - 16:20
**instructive** [1] - 19:13
**intend** [1] - 10:16
**intended** [3] - 10:18, 12:21, 38:4
**intention** [1] - 25:9
**intentionally** [2] - 25:11, 27:5
**interest** [4] - 19:22, 39:12, 40:3, 40:12
**interested** [1] - 42:14
**interests** [2] - 17:21, 19:4
**interfered** [2] - 19:18, 25:17
**interference** [5] - 18:20, 19:8, 20:15, 39:25
**interfering** [3] - 18:23, 20:3, 20:12
**Intermedia** [38] - 3:16, 3:17, 3:24, 4:2, 4:4, 4:5, 4:8, 4:14, 4:21, 5:12, 5:17, 6:2, 6:8, 6:22, 6:23, 7:2, 7:14, 7:24, 8:21, 9:20, 9:21, 10:7, 10:23, 11:9, 11:16, 14:2, 14:3, 14:12, 14:22, 14:24, 16:3, 17:16, 24:23, 25:13, 26:9, 38:20, 39:3, 39:16
**Intermedia's** [3] - 3:19, 10:10, 40:11
**interruption** [1] - 9:5
**introduce** [1] - 22:10
**introduction** [2] - 34:7, 34:13
**invoices** [1] - 30:12
**involve** [2] - 26:8, 37:6

**involved** [1] - 3:21
**involvement** [1] - 13:9
**issue** [9] - 4:24, 5:11, 12:4, 13:10, 13:21, 32:22, 34:2, 37:2, 38:14
**issues** [4] - 4:19, 5:8, 23:18, 37:4
**itself** [3] - 12:17, 15:20, 41:3

## J

**January**[4] - 1:7, 37:7, 42:11, 42:17
**Jeffrey**[1] - 33:20
**Judge**[12] - 1:21, 3:5, 3:10, 20:20, 21:3, 21:7, 21:14, 26:16, 32:12, 38:7, 40:16, 41:7
**judgment** [16] - 9:7, 9:25, 11:6, 11:22, 12:25, 13:5, 21:21, 21:25, 22:5, 23:2, 23:13, 23:16, 23:22, 24:5, 24:7, 24:14
**Judgment**[4] - 1:12, 1:17, 3:7, 22:22
**July**[5] - 17:16, 28:16, 29:3, 37:11, 38:3
**jurisdictions** [1] - 20:8
**Justice**[1] - 39:18

## K

**Kammert** [2] - 31:7, 33:7
**Kansas** [1] - 2:4
**Kelley** [2] - 2:6, 21:18
**Kevin**[1] - 2:10
**key** [1] - 27:18
**kind** [2] - 9:3, 14:12
**kinds** [1] - 16:23

## L

**language** [4] - 12:5, 12:9, 33:3, 38:24
**late** [1] - 21:4
**law** [12] - 15:8, 15:9, 16:9, 19:16, 25:22, 31:3, 32:9, 32:10, 32:12, 33:8, 34:12, 35:21
**laws** [1] - 17:9
**leads** [1] - 13:23

**lease** [1] - 19:19
**least** [1] - 8:20
**leave** [1] - 15:18
**legal** [2] - 23:3, 24:2
**legitimate** [1] - 23:4
**legs** [3] - 25:12, 25:18, 38:6
**lengthy** [1] - 13:7
**letter** [5] - 10:8, 32:23, 33:2, 33:6, 33:18
**letters** [3] - 32:19, 33:9, 33:12
**liabilities** [1] - 9:17
**liability** [5] - 14:4, 15:2, 16:19, 20:11, 27:7
**liable** [9] - 4:9, 8:12, 8:18, 8:24, 9:22, 15:4, 16:23, 18:22, 28:22
**liberal** [1] - 34:12
**lie** [2] - 17:8, 19:3
**limit** [1] - 15:2
**limitation** [4] - 9:4, 15:7, 16:19, 27:7
**limitations** [1] - 15:13
**limited** [2] - 38:2, 40:7
**limiting** [1] - 9:8
**listen** [1] - 38:19
**litigating** [1] - 26:19
**live** [1] - 32:5
**Llc**[1] - 1:13
**Llp**[2] - 2:3, 2:6
**log** [2] - 26:7, 26:14
**Look**[1] - 37:14
**look** [3] - 22:16, 39:14, 40:21
**loss** [4] - 9:4, 35:23, 36:5

## M

**magnified** [1] - 24:9
**March** [8] - 4:16, 6:4, 6:8, 6:13, 6:15, 10:6, 10:8, 11:19
**marriage** [1] - 42:13
**material** [2] - 24:12, 24:18
**matter** [3] - 16:8, 17:10, 42:15
**matters** [1] - 40:25
**maximum** [1] - 9:22
**Mcconnell** [9] - 6:10, 10:5, 10:13, 10:18, 32:19, 33:2, 33:4, 33:12, 33:16
**Mcconnell's** [2] -

11:3, 28:11
**means** [6] - 34:8, 38:16, 38:17, 39:11, 40:3, 40:10
**measured** [1] - 11:16
**meet** [1] - 4:8
**mention** [2] - 38:10, 38:21
**mentioned** [3] - 16:24, 24:9, 36:10
**merger** [5] - 1:13, 17:15, 24:25, 25:7, 26:9
**messaging** [1] - 4:3
**minimum** [4] - 28:2, 29:17, 30:14, 36:19
**minimums** [5] - 26:24, 28:22, 28:25, 31:18, 32:11
**minutes** [2] - 20:24, 21:4
**Missouri** [1] - 2:4
**mistake** [2] - 27:4, 34:3
**misunderstand** [1] - 35:18
**moment** [1] - 28:14
**month** [2] - 11:17, 12:6
**monthly** [16] - 4:12, 4:24, 4:25, 5:4, 5:6, 11:14, 11:23, 12:9, 12:12, 12:22, 13:19, 34:4, 34:9, 34:19, 34:20, 34:23
**months** [6] - 6:4, 9:23, 11:19, 27:25, 32:11, 36:18
**Morrison** [1] - 2:3
**most** [2] - 19:13, 36:25
**motion** [26] - 6:9, 6:12, 6:20, 11:2, 11:7, 13:5, 21:21, 21:22, 21:25, 22:17, 23:2, 23:11, 23:13, 23:15, 23:16, 23:22, 24:7, 24:14, 26:18, 33:23, 34:11, 37:21, 40:13, 40:22, 40:23
**Motion** [5] - 1:12, 1:15, 1:17, 3:6, 22:21
**moving** [4] - 3:25, 15:6, 17:2, 21:9
**Moving** [1] - 20:17
**multiple** [1] - 17:25
**multiplier** [1] - 14:9
**must** [3] - 17:6, 20:22, 39:4

**N**

**necessary** [1] - 31:23
**need** [2] - 4:20, 39:22
**negotiated** [2] - 13:11, 34:18
**negotiation** [2] - 13:9, 13:12
**never** [1] - 38:4
**New** [11] - 1:3, 1:9, 1:23, 2:8, 20:9, 42:3, 42:4, 42:8
**nominal** [1] - 23:23
**none** [1] - 8:5
**Notary** [1] - 42:7
**noted** [5] - 11:10, 15:6, 16:8, 17:2, 19:21
**notice** [10] - 5:16, 5:21, 5:24, 6:7, 6:13, 6:18, 7:15, 10:7, 10:21, 14:2
**November** [1] - 3:22
**nowhere** [1] - 18:6
**number** [2] - 4:20, 5:12
**Number** [1] - 38:22
**numeric** [3] - 4:10, 11:15, 11:18
**numerous** [2] - 19:10, 20:7

**O**

**objections** [2] - 22:23, 23:6
**obligated** [3] - 4:6, 28:24, 30:12
**obligates** [1] - 38:20
**obligation** [7] - 7:25, 8:8, 27:20, 28:4, 28:7, 29:15, 30:4
**obligations** [9] - 4:16, 5:15, 8:5, 8:11, 8:13, 29:5, 29:17, 33:14, 36:18
**obvious** [1] - 9:13
**obviously** [3] - 10:17, 31:12, 37:20
**occurred** [1] - 37:17
**occurring** [1] - 17:15
**odds** [1] - 12:14
**offers** [3] - 12:17, 18:4, 33:16
**once** [1] - 29:24
**one** [9] - 9:22, 15:14, 16:12, 17:22, 19:5, 30:8, 30:15, 34:25,
38:22
**One** [3] - 1:8, 19:12, 26:24
**one-third** [1] - 30:15
**ongoing** [1] - 7:24
**opening** [1] - 18:3
**opinion** [1] - 20:5
**opportunity** [1] - 25:24
**opposition** [2] - 38:12, 38:13
**Opposition** [3] - 1:14, 1:17, 1:18
**options** [1] - 12:3
**order** [2] - 36:14, 36:16
**Order** [10] - 38:9, 38:11, 38:19, 38:23, 38:24, 39:8, 39:9, 39:11, 39:14, 39:20
**original** [1] - 18:6
**ought** [1] - 13:17
**outcome** [1] - 42:15
**outright** [1] - 23:5
**outside** [3] - 12:17, 18:5, 40:25
**outstanding** [1] - 30:11
**overlap** [1] - 27:5
**owe** [1] - 23:24
**owed** [3] - 11:8, 14:11, 16:4
**owes** [1] - 4:21
**own** [3] - 20:3, 28:16, 38:7
**owned** [2] - 3:15, 17:18

**P**

**P.2d** [1] - 31:14
**page** [3] - 11:21, 18:2, 18:8
**papers** [13] - 3:25, 15:6, 17:3, 21:9, 27:8, 27:12, 28:20, 29:19, 31:8, 31:11, 37:14, 37:15, 40:8
**paragraph** [1] - 8:4
**parallel** [1] - 31:13
**parent** [7] - 17:18, 18:14, 18:22, 19:5, 19:18, 19:23, 20:11
**Park** [1] - 2:7
**participated** [1] - 13:12
**particular** [1] - 16:15
**particularly** [1] - 15:13
**parties** [13] - 6:25,
8:12, 8:22, 9:15, 12:21, 14:25, 16:2, 19:12, 20:22, 33:17, 34:22, 39:4, 42:14
**parties'** [1] - 5:14
**party** [15] - 5:22, 5:25, 8:18, 8:23, 16:22, 18:24, 20:2, 29:24, 30:8, 31:5, 32:2, 32:3, 32:5, 32:8
**party's** [1] - 8:5
**Parus** [31] - 1:12, 1:14, 1:16, 1:18, 2:7, 3:13, 3:23, 4:23, 5:7, 8:20, 9:6, 9:8, 9:24, 10:4, 11:25, 12:10, 12:14, 14:15, 14:20, 15:17, 15:24, 16:6, 16:25, 17:11, 17:13, 18:3, 18:19, 20:15, 20:18, 21:18
**path** [2] - 14:12, 36:13
**pay** [6] - 8:8, 28:5, 29:15, 32:22, 32:23, 36:18
**paying** [1] - 7:25, 19:20
**payment** [5] - 16:2, 28:3, 28:8, 30:3, 33:6
**Payment** [2] - 4:13, 4:15
**payments** [1] - 30:14
**Payments** [14] - 4:21, 5:2, 5:12, 6:4, 8:2, 8:8, 9:9, 9:24, 11:9, 11:12, 14:4, 14:11, 16:3, 26:25
**penalized** [1] - 32:4
**penalty** [1] - 9:18
**pending** [3] - 4:19, 6:12, 40:22
**per** [2] - 11:17, 12:6
**perfectly** [1] - 13:3
**perform** [4] - 29:11, 29:25, 30:9, 30:23
**performance** [4] - 7:18, 28:6, 30:2, 32:7
**performing** [2] - 7:16, 29:2
**perhaps** [1] - 19:13
**period** [5] - 7:3, 14:5, 24:24, 37:11, 37:18
**permitted** [1] - 33:7
**persuasively** [1] - 18:12
**place** [2] - 21:21, 39:9
**placing** [1] - 22:15
**plain** [3] - 7:4, 12:5,
12:9
**pleadings** [1] - 37:22
**Pm** [1] - 42:21
**point** [10] - 8:15, 12:8, 29:5, 29:15, 30:8, 31:4, 32:17, 33:4, 34:10, 41:2
**pointed** [2] - 16:11, 32:25
**points** [1] - 33:8
**Portions** [1] - 1:15
**potential** [1] - 9:17
**potentially** [1] - 17:9
**practice** [2] - 20:18, 21:11
**precludes** [1] - 20:10
**predecessor** [1] - 3:23
**premature** [1] - 40:14
**premised** [1] - 3:18
**preparing** [1] - 20:23
**presence** [1] - 16:13
**present** [1] - 12:18
**presentation** [1] - 27:6
**price** [23] - 4:12, 4:24, 5:4, 5:7, 11:14, 11:23, 11:24, 12:2, 12:6, 12:9, 12:11, 12:12, 12:20, 12:22, 13:19, 14:8, 34:4, 34:9, 34:17, 34:18, 34:19, 34:20, 34:23
**pricing** [2] - 12:3, 34:2
**principal** [1] - 14:18
**principle** [1] - 28:21
**privilege** [7] - 26:7, 26:14, 37:6, 37:12, 39:13, 39:19, 39:23
**proceed** [1] - 20:21
**proceeding** [2] - 3:13, 8:22
**proceedings** [1] - 42:10
**Proceedings** [1] - 1:10
**proceeds** [1] - 16:22
**produce** [1] - 22:7
**produced** [5] - 22:9, 23:21, 24:19, 26:12
**product** [8] - 24:22, 25:8, 25:9, 25:12, 25:16, 30:16, 38:6, 38:7
**products** [1] - 25:2
**profits** [1] - 9:4
**proof** [2] - 17:5, 22:17

proper [2] - 12:23, 24:2
properly [3] - 25:21, 25:23, 30:21
provide [2] - 8:11, 15:9
provided [5] - 8:2, 8:6, 8:23, 15:11, 16:18
provides [2] - 5:19, 6:16
provision [6] - 9:19, 15:7, 15:20, 16:11, 27:8, 27:24
provisions [4] - 9:14, 27:18, 29:17, 32:24
Public [1] - 42:7
punitive [1] - 9:2
purely [1] - 23:3
purposes [1] - 18:8
pursuant [1] - 6:14
pursued [1] - 23:7
put [3] - 9:16, 31:9, 39:18

**Q**

questions [1] - 22:13
quite [2] - 9:13, 10:17
Quite [1] - 10:21
quota [2] - 4:9, 11:17
quotation [1] - 31:15
quote [9] - 5:3, 6:19, 6:21, 8:25, 19:24, 22:2, 25:20, 25:21, 31:18

**R**

raise [1] - 30:19
raised [2] - 23:14, 31:11
ramped [1] - 27:22
rarely [1] - 22:4
rate [2] - 35:15, 35:16
rationale [1] - 18:5
re [2] - 1:4, 3:3
read [2] - 14:24, 31:15
reads [1] - 16:20
really [1] - 12:12
reason [2] - 7:21, 30:25
reasons [3] - 18:11, 21:9, 38:22
Received [1] - 42:21
received [3] - 26:6, 32:2, 40:5

recognize [2] - 27:10, 36:24
Reconciliation [16] - 4:13, 4:15, 4:21, 5:2, 5:12, 6:3, 8:2, 8:8, 9:9, 9:23, 11:9, 11:12, 14:4, 14:11, 16:3, 26:25
reconciliation [1] - 27:20
record [2] - 14:25, 31:9
Recorded [2] - 1:10, 42:21
recovery [1] - 9:9
reference [1] - 12:8
referred [2] - 27:2, 28:2
refused [1] - 32:22
regard [1] - 15:10
regarded [2] - 13:17, 17:22, 19:4
reject [1] - 31:16
rejected [2] - 18:18, 31:6
relate [2] - 14:18, 37:10
related [2] - 11:2, 42:13
relating [2] - 24:21, 24:25
relations [2] - 18:24, 20:13
relationships [1] - 39:3
relevant [4] - 22:7, 24:18, 24:24, 31:15
reliance [1] - 27:21
relied [1] - 27:23
relief [1] - 21:24
remain [1] - 8:12
remedy [6] - 15:19, 15:25, 27:17, 30:10, 30:21, 30:24
Reneau [10] - 12:18, 24:17, 27:23, 30:16, 34:11, 34:16, 35:3, 35:11, 35:14, 36:7
Reneaus [3] - 13:6, 13:16
rent [1] - 19:20
Reorganized [1] - 1:6
Reorganized [1] - 2:3
reply [5] - 16:8, 18:7, 30:19, 31:11, 31:12
Reporter [3] - 1:22, 42:7, 42:21
repudiation [10] - 28:21, 28:24, 29:22, 29:23, 30:20, 31:20,

31:22, 32:3, 32:9, 33:4
request [1] - 20:13
require [1] - 40:24
required [2] - 5:13, 41:5
resale [3] - 4:3, 4:9, 4:15
resold [2] - 4:6, 11:16
resolve [1] - 32:22
resolved [2] - 4:20, 5:9
respect [16] - 23:9, 24:19, 26:6, 27:6, 28:12, 31:17, 34:12, 36:8, 36:11, 36:22, 37:2, 37:4, 38:15, 38:17, 39:24, 40:8
respond [2] - 7:15, 40:19
Response [1] - 1:16
response [8] - 15:17, 18:3, 30:17, 33:22, 34:10, 37:14, 37:16, 38:13
responsible [1] - 25:15
rest [1] - 17:5
restatement [1] - 35:24
result [1] - 8:9
results [1] - 9:7
retains [1] - 15:24
retracts [1] - 32:8
reversed [1] - 19:17
reversing [1] - 19:21
rights [1] - 39:7
Robert [5] - 2:5, 2:9, 3:9, 10:5, 21:17
Rosenfeld [1] - 29:8
Rule [3] - 12:25, 24:14, 26:16
rule [7] - 10:25, 13:3, 17:18, 18:21, 19:9, 20:10, 20:14
Rules [2] - 13:2, 40:23
ruling [4] - 7:7, 7:11, 19:17, 20:6
running [1] - 36:24

**S**

salesmen [1] - 35:8
sample [1] - 35:6
sampling [1] - 35:5
Sanders [1] - 24:11
scope [1] - 16:18
search [1] - 26:3

searches [1] - 22:10
seated [1] - 3:5
Second [1] - 19:14
second [2] - 3:16, 4:23
section [20] - 4:4, 4:10, 6:6, 6:14, 6:15, 7:4, 7:19, 8:3, 8:6, 8:9, 8:10, 8:16, 8:22, 9:19, 14:23, 14:25, 15:18, 15:23, 16:15, 16:21
Section [2] - 5:17, 11:11
sections [1] - 27:19
see [2] - 35:7, 37:15
seek [2] - 22:4, 33:11
seeking [4] - 32:19, 35:20, 35:23, 36:4
seeks [5] - 8:21, 9:6, 9:7, 9:24, 9:25
self [3] - 11:4, 22:12, 39:22
self-evident [2] - 22:12, 39:22
self-serving [1] - 11:4
seller [1] - 31:19
seminal [1] - 17:24
sending [1] - 33:5
sent [3] - 10:21, 32:23, 33:18
separate [2] - 36:3, 39:16
September [2] - 37:11, 38:2
service [17] - 5:4, 5:6, 11:14, 11:24, 11:25, 12:2, 12:7, 12:11, 14:8, 34:20, 35:2, 35:4, 35:6, 35:7, 35:10, 35:12, 35:13
services [2] - 4:3, 4:6
serving [1] - 11:4
set [5] - 11:20, 28:20, 30:16, 40:7, 42:17
several [2] - 29:7, 36:23, 38:21
shall [3] - 8:18, 8:23, 16:22
shareholder [1] - 19:25
shifting [1] - 23:19
shortfall [3] - 4:11, 11:15, 14:5
shortfalls [1] - 11:18
Shorthand [1] - 42:6
show [2] - 40:2, 40:3
showed [1] - 38:16

showing [3] - 24:15, 39:10, 40:6
shown [1] - 37:24
shows [2] - 16:14, 25:6
Shu [1] - 33:20
shut [1] - 29:4
sign [1] - 13:15
significant [4] - 7:23, 17:17, 19:22, 38:3
significantly [1] - 17:12
similar [1] - 9:3
similarly [1] - 18:20
Similarly [1] - 7:11
simply [6] - 16:13, 16:17, 18:9, 35:4, 37:6, 37:12
single [1] - 24:6
Smith [1] - 2:10
someone [1] - 35:5
sometimes [1] - 14:13
sorry [1] - 32:14
sought [1] - 4:23
source [1] - 22:16
sources [1] - 26:22
Southern [1] - 1:3
space [3] - 16:5, 16:13
spaces [1] - 16:9
speaks [1] - 41:3
special [1] - 9:2
specific [1] - 24:15
specifically [5] - 7:19, 15:3, 33:19, 37:25, 39:15
specified [2] - 8:3, 27:22
specifies [1] - 5:22
spend [1] - 39:22
Ss [1] - 42:3
standard [1] - 24:5
start [1] - 26:21
started [1] - 21:4
starting [1] - 18:7
Starting [2] - 5:11, 14:20
state [1] - 17:9
State [3] - 20:9, 42:3, 42:8
statements [4] - 10:2, 11:5, 12:24, 13:17
States [3] - 1:2, 1:8, 1:21
states [2] - 10:15, 12:19
still [1] - 26:18

**Stinson** [1] - 2:3
**stop** [1] - 19:20
**stopped** [1] - 28:6
**stops** [2] - 27:20, 28:8
**stored** [1] - 26:4
**Street** [1] - 2:4
**Strike** [1] - 1:15
**strike** [3] - 11:3, 33:23, 34:11
**strong** [1] - 26:16
**strongly** [1] - 28:13
**subject** [2] - 16:15, 19:11
**submission** [2] - 28:12, 33:22
**submit** [1] - 10:17
**Submitted** [1] - 1:16
**submitted** [5] - 22:24, 24:16, 24:17, 25:5, 36:7
**subsequently** [1] - 6:11
**subsidiary** [6] - 3:15, 17:19, 18:14, 19:6, 19:20, 19:23
**subsidiary's** [4] - 18:23, 19:19, 20:12, 40:2
**substance** [2] - 21:20, 22:20
**substantive** [1] - 26:20
**Successor** [1] - 1:13
**Successor-by-merger** [1] - 1:13
**succinctly** [1] - 14:17
**sue** [2] - 29:10, 29:11
**sued** [1] - 30:24
**sufficient** [1] - 18:9
**sufficiently** [1] - 27:12
**suit** [2] - 31:22, 32:7
**Suite** [1] - 1:23
**summarily** [1] - 18:17
**summary** [17] - 9:7, 9:25, 11:6, 11:22, 12:25, 13:5, 13:20, 21:21, 21:25, 22:5, 22:25, 23:13, 23:16, 23:22, 24:5, 24:7, 24:13
**Summary** [4] - 1:12, 1:17, 3:6, 22:21
**summer** [2] - 22:23, 23:12
**Support** [1] - 1:16
**support** [1] - 12:24

**supported** [3] - 12:16, 25:3, 25:4
**supporting** [1] - 16:7
**Supreme** [6] - 17:23, 18:13, 29:8, 31:5, 31:18, 32:21
**sur** [1] - 31:12
**Survival** [1] - 8:5
**survive** [2] - 8:7, 8:17

## T

**table** [1] - 11:20
**tailor** [1] - 34:7
**tailor-made** [1] - 34:7
**Taj** [1] - 27:23
**Tanque** [1] - 31:7
**term** [7] - 12:14, 34:4, 34:5, 34:8, 34:19, 34:23, 35:14
**terminate** [3] - 5:23, 6:17, 10:16
**terminated** [11] - 5:15, 5:20, 6:22, 7:6, 7:8, 7:12, 7:20, 9:21, 13:24, 16:5, 33:19
**termination** [15] - 7:23, 7:24, 8:7, 8:12, 8:14, 8:17, 10:11, 10:24, 24:21, 27:21, 28:8, 28:12, 28:18, 33:10, 33:11
**Termination** [1] - 5:18
**terms** [7] - 5:10, 7:4, 13:22, 15:10, 30:5, 36:15, 39:14
**themselves** [2] - 16:10, 30:13
**therefore** [1] - 19:5
**thereto** [1] - 6:24
**thinking** [1] - 32:15
**third** [4] - 14:7, 18:24, 20:2, 30:15
**three** [2] - 13:23, 22:17
**timing** [3] - 22:19, 27:11, 28:17
**today's** [1] - 18:8
**took** [3] - 25:11, 25:17, 38:6
**tort** [9] - 18:23, 20:10, 22:14, 24:20, 36:22, 36:23, 37:2, 37:9
**tortious** [4] - 18:19, 19:8, 20:15, 39:24
**tortiously** [2] -

19:18, 25:16
**tortuous** [3] - 14:12, 36:13, 36:20
**tortured** [1] - 23:9
**trade** [2] - 20:17, 21:11
**transcript** [1] - 42:10
**treat** [2] - 31:21, 33:18
**true** [2] - 17:8, 42:9
**try** [3] - 32:21, 35:9, 36:25
**Turning** [1] - 11:8
**Two** [1] - 14:3
**two** [5] - 3:14, 4:19, 20:8, 26:22
**type** [2] - 8:19, 8:20
**types** [1] - 26:23

## U

**Uc** [1] - 24:22
**ultimate** [1] - 12:23
**ultimately** [1] - 13:4
**uncontradicted** [1] - 33:17
**undefined** [2] - 34:5, 36:15
**Under** [7] - 3:25, 4:4, 10:24, 29:22, 32:10, 34:9, 35:21
**under** [27] - 4:9, 5:15, 6:5, 7:19, 8:2, 8:9, 15:7, 16:8, 16:21, 18:25, 24:14, 25:22, 27:15, 27:17, 27:18, 28:19, 28:22, 29:17, 30:2, 30:4, 30:13, 33:8, 33:14, 39:11, 39:19, 40:22, 41:8
**underway** [1] - 26:5
**undisputed** [5] - 5:10, 6:2, 6:5, 36:8, 37:8
**unenforceable** [1] - 16:11
**unfair** [1] - 21:10
**unfairly** [1] - 25:17
**unified** [1] - 37:7
**United** [5] - 1:2, 1:8, 1:21, 30:7, 32:15
**unity** [2] - 19:22, 39:12
**unlimited** [7] - 5:6, 12:2, 12:11, 12:20, 34:18, 34:25, 35:13
**unquote** [2] - 22:2, 25:21
**unrebutted** [1] - 33:21

**unusual** [1] - 21:24
**up** [6] - 21:6, 27:22, 28:25, 30:5, 32:5, 36:6
**urging** [1] - 32:6
**users** [3] - 4:4, 4:7, 11:15
**utilized** [2] - 13:5, 14:9

## V

**value** [2] - 35:23, 36:5
**various** [3] - 3:17, 16:23, 33:8
**varying** [1] - 20:9
**Verde** [1] - 31:7
**view** [1] - 25:2
**violate** [1] - 39:6
**violated** [2] - 39:6, 39:7
**voice** [1] - 4:2

## W

**waiting** [3] - 26:11, 26:13, 26:14
**Walnut** [1] - 2:4
**Warren** [2] - 2:6, 21:18
**ways** [1] - 20:10
**week** [1] - 35:9
**Whereof** [1] - 42:16
**whole** [3] - 23:14, 38:11, 38:13
**wholly** [2] - 3:15, 17:18
**wholly-owned** [2] - 3:15, 17:18
**withheld** [1] - 26:7
**withhold** [1] - 26:11
**Witness** [1] - 42:16
**words** [2] - 10:19, 13:3
**works** [1] - 28:24
**Worldcom** [18] - 1:5, 1:11, 3:3, 3:17, 3:19, 6:11, 6:19, 7:10, 10:9, 17:15, 24:23, 25:7, 25:15, 26:9, 33:21, 38:4, 38:16, 39:15
**Worldcom's** [3] - 1:12, 1:17, 3:15
**worse** [1] - 40:14
**wrap** [1] - 21:5
**written** [7] - 5:17, 5:21, 6:7, 6:13, 11:18, 13:25, 16:16
**wrongful** [5] - 38:16,

38:17, 39:11, 40:3, 40:10

## Y

**year** [2] - 22:22, 23:6
**years** [2] - 10:14, 22:18
**York** [11] - 1:3, 1:9, 1:23, 2:8, 20:9, 42:3, 42:4, 42:8

## Z

**Zubulake** [1] - 23:18

A 04394