UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x    Case No.
In re                              02-13533(AJG)

WORLDCOM, INC., et al,             July 11, 2006
                                   10:00 a.m.
        Reorganized Debtors.       New York, New York
------------------------------x

FINAL TRANSCRIPT
DIGITALLY RECORDED PROCEEDINGS
(Excerpt -- Parus Holdings, Inc.)

Pre-Motion Discovery Conference re Claims of Parus
Holdings, Inc.

B E F O R E:

    THE HONORABLE ARTHUR J. GONZALEZ
    United States Bankruptcy Judge

A P P E A R A N C E S:

    STINSON MORRISON HECKER LLP
    Special Counsel for Reorganized Debtors
        1201 Walnut Street
        Kansas City, Missouri   64106

    BY:  ALLISON M. MURDOCK, ESQ.

    KELLEY DRYE & WARREN LLP
    Attorneys for Parus Holdings, Inc.
        101 Park Avenue
        New York, New York   10178

    BY:  ROBERT S. FRIEDMAN, ESQ.

                DEBORAH HUNTSMAN, Court Reporter
                (212) 608-9053    (917) 723-9898
        Proceedings Recorded by Electronic Sound Recording,
            Transcript Produced by Court Reporter

1          (Whereupon, the following is an excerpt from

2    7/11/2006 In re WorldCom, Inc., et al, Case No.

3    02-13533).

4          JUDGE GONZALEZ:  Please be seated.

5          The WorldCom matters.

6          MR. SHAIKEN:  Good morning, Your Honor.  Mark

7    Shaiken of Stinson Morrison Hecker representing the

8    Reorganized Debtors.

9          The first item on the contested docket this

10   morning is the informal conference in the Parus

11   Holdings matter, and my colleague Allison Murdock is

12   handling that.

13         MS. MURDOCK:  May it please the Court, I am

14   Allison Murdock appearing on behalf of the Debtors.

15         Your Honor, MCI requests today permission to

16   file a motion for protective order under Rule 26(c) to

17   shift some or all of the costs of electronic discovery

18   in the matter to Parus Holdings or for an order that

19   the electronic discovery that Parus Holdings is

20   seeking not be had.

21         When the parties last appeared before you on

22   discovery issues, counsel advised the Court that we

23   were just beginning to undertake the factual analysis

24   that would be necessary in order to determine the

25   appropriateness of shifting the costs of electronic

1    discovery in this matter.

2         MCI believes that the factual record necessary

3    for the Court to make a cost shifting determination

4    now has been completed and that there is ample

5    evidence that supports the shifting of costs of

6    electronic discovery to Parus Holdings.

7         By way of very brief background, Parus Holdings

8    has asserted claims against MCI and a subsidiary

9    Intermedia allegedly arising out of a contract between

10   Intermedia and Parus Holdings' predecessor EffectNet.

11   In November of 2000, Intermedia and EffectNet entered

12   into what was called a Unified Communications Services

13   General Agreement, which the parties in shorthand

14   referred to as the UC Contract.  Under the UC

15   Contract, Intermedia was to purchase unified messaging

16   services from EffectNet for resale to Intermedia's

17   customers.

18        As set forth in the summary judgment papers

19   that MCI has filed in this matter, EffectNet

20   terminated the UC Contract in April of 2002.  MCI

21   filed summary judgment last fall because it believes

22   that all of the Parus Holdings' claims, both those

23   sounding in contract and in tort, can be resolved as a

24   matter of law based on the plain language of the UC

25   Contract that controls.

1        Now, as counsel advised during the last hearing

2   on discovery issues, Parus Holdings had just provided

3   to MCI a list of search terms and individual names

4   that Parus Holdings wanted MCI to use in searching the

5   electronic data of MCI and Intermedia.  MCI in turn

6   provided Parus Holdings' search terms and individual

7   key names to the vendor that is assisting us with

8   electronic discovery to attempt to get a cost estimate

9   as to electronic discovery based on the actual search

10  terms that Parus Holdings wanted us to use.  That

11  estimate came back to us in the range between $208,000

12  to $331,000 just in costs to perform the electronic

13  data searches that Parus Holdings was requesting.

14  Because of those costs associated with electronic

15  discovery, we sought an informal conference to seek

16  permission to file a motion to stay discovery while

17  the Court considered our motion for summary judgment,

18  and when the Court did not entertain our request for

19  informal conference, we proceeded with electronic

20  discovery.

21        Our electronic discovery efforts had been

22  related both to MCI and Intermedia for electronic data

23  and data that is considered both accessible and

24  inaccessible.  We recognize that under controlling

25  authority, cost shifting is appropriate only for that

1    electronic data that is viewed as being inaccessible,

2    and the cost shifting motion that we seek to file

3    would be limited accordingly.

4        Now, Mr. Friedman has suggested in a letter

5    recently written to the Court that MCI has undertaken

6    no electronic discovery efforts to date.  On the

7    contrary, in addition to the electronic discovery that

8    we have done with respect to MCI and Intermedia's

9    accessible electronic data, MCI, consistent with the

10   controlling authority, also has now sampled the

11   inaccessible electronic data.  In fact, Parus Holdings

12   is the one that chose the tapes that would be sampled

13   for purposes of the electronic discovery cost shifting

14   analysis.  Parus Holdings selected four backup tapes

15   that it wanted sampled for purposes of determining the

16   cost shifting issue.  For technical reasons related to

17   one of the tapes that Parus Holdings selected, we

18   actually sampled five additional tapes for a total of

19   nine tapes.

20       The search of just those nine tapes alone,

21   using Parus Holdings' search terms and the key names

22   that they had identified, pulled in for review

23   approximately 750,000 pages of documents, which is the

24   equivalent of 300 boxes of documents.  That number is

25   actually after we had conferred with Parus Holdings'

1  counsel, Mr. Kevin Smith, to limit the search terms

2  that were being used by Parus Holdings, and of these

3  750,000 pages, only about 3.28 percent were even

4  responsive to Parus Holdings' request.  I think

5  counsel would agree that it is a fair characterization

6  that even those documents that were responsive don't

7  really move the case forward in any meaningful way.

8       The cost that was associated with just the

9  sampling of these nine tapes that were selected by

10  Parus Holdings was $72,000 just for the sampling

11  alone.  This doesn't take into account any of the

12  attorney review time necessary to review the documents

13  that were pulled as a result of the searches.

14       JUDGE GONZALEZ:  One second, please.  I am

15  getting a little confused as to why we are here today.

16  It seems to me that this was an informal conference

17  dealing with discovery and the scheduling order for a

18  contested matter and you have requested a hearing

19  date.  What is your request?

20       MS. MURDOCK:  MCI also requested an informal

21  conference seeking permission to file a motion for

22  cost shifting under Rule 26(c).  That was in our

23  June 16th letter to the Court that is identified on

24  the docket.

25       JUDGE GONZALEZ:  If that request is granted to

1   schedule the cost shifting or, alternatively, the

2   protective order, that impacts the scheduling order,

3   doesn't it?

4       MS. MURDOCK:  Yes, it does, Your Honor.  We

5   submit that it is premature at this time to enter a

6   scheduling order in the case, because of the volume of

7   electronic discovery that is yet to be completed and

8   because the Court has not yet had an opportunity to

9   determine whether there should be cost shifting.  If

10  the Court were to decide that there should be cost

11  shifting, then it is possible that Parus Holdings

12  would decide to limit the requests, if it is required

13  to pay for some of the discovery it is seeking, or

14  that it might not want the discovery.  So under the

15  legal authority that usually controls the cost

16  shifting cases, sampling is done and the Court

17  considers whether there should be cost shifting.  Once

18  that decision is made, then the parties proceed to

19  complete the remainder of the electronic discovery.

20      JUDGE GONZALEZ:  Let me then hear from Parus

21  Holdings with respect to the request to schedule a

22  hearing on the issue of the cost shifting and

23  protective order.

24      MR. FRIEDMAN:  Good morning, Judge.  Robert

25  Friedman of Kelley, Drye & Warren for Parus Holdings.

1          Just to give the entire chronology of this

2   motion, the genesis of this conference is our

3   application to the Court for a scheduling order.  We

4   want to move this case forward with discovery.  It has

5   been pending for over three years now.  The claims

6   objections were fully briefed two years ago.  Each

7   time we try to start discovery, there is another

8   attempt by the Debtors to stop discovery and impede,

9   in our view at least, the resolution of this matter.

10          First, as you are aware, when we made a motion

11   to compel hard copy documents last year, that is when

12   after two and a half years of the case pending they

13   first filed a motion for summary judgment.  After that

14   was fully briefed, we had discussions with the Debtors

15   and were trying to get electronic documents.  We don't

16   have any documents relating to the most crucial areas.

17   What we believe then is that we should move discovery

18   forward.  They should be required to produce whatever

19   documents we have requested that are relevant to this

20   case, and I will mention a few as examples.  In

21   response to that, Judge, we have a cost shifting

22   application.  It is just another step that we are

23   seeing in an effort to delay discovery.

24          JUDGE GONZALEZ:  Let me ask you this question.

25   If I don't take up the cost shifting, are you willing

1    to assume the risk or is your client willing to assume

2    the risk, that when do take it up, I may determine

3    that it should be borne or should have been borne by

4    your client?

5        MR. FRIEDMAN:  Your Honor, I don't think we are

6    there yet.  We don't have a factual basis to even have

7    the cost shifting question come up right now under

8    Zubulake, and I can explain why.  That is why I can't

9    answer that question yet.  Under Zubulake there were

10   several things that had occurred which predated even

11   the cost shifting inquiry.  Number one, there was

12   extensive fact discovery and extensive record and

13   depositions of the key IT people as to the efforts

14   that were made to preserve documents.  Here we have

15   none of that.  In fact, we specifically do not have

16   any depositions of their IT people.  We have no idea

17   right now, Judge.  I have no idea how they have

18   maintained their electronic documents.  They have

19   submitted no facts.  All we have are assertions

20   relating to searches of backup tapes.  That is number

21   one.  Number two, in Zubulake the most crucial

22   witness, who was the supervisor of Mrs. Zubulake, it

23   was an employment case, all of that person's e-mails

24   and the backup tapes had already been produced.  Here

25   we have nothing.  The way the Debtors keep their

1    records, we can't search the most relevant actors so

2    that that can be produced without cost shifting.

3    Right now any cost shifting inquiry, even by the

4    Court, is premature right now, because we have no

5    factual record.  So I think it is a fair question by

6    the Court, and I think that is the ultimate question

7    that can be asked.  But I think it is premature at

8    this point.

9         JUDGE GONZALEZ:  If it is premature at this

10   point and it ultimately matures and then goes to a

11   hearing, the consequences could be that the costs get

12   shifted for what would have then taken place.  I am

13   just speaking without firsthand knowledge of really

14   what the processes would be.  But at least

15   theoretically, it seems to me, if we go down that path

16   and three months or two months or six months from now,

17   whatever the time frame is, the cost shifting

18   application issue arises again and the facts

19   demonstrate under the relevant case law that the shift

20   should take place, it wouldn't be prospective

21   necessarily at that point?

22        MR. FRIEDMAN:  I believe it would under

23   Zubulake.  There was no retroactive cost shifting that

24   was imposed, and I don't believe there is any decision

25   that I have read that imposes cost shifting

1   retroactively.  If the Court is going to allow them to

2   make a motion, and I think the proper process -- and

3   unfortunately it would impose some delay -- would be

4   for us to depose their IT people.

5        JUDGE GONZALEZ:  I am sorry to interrupt you.

6   I almost need a motion to determine whether or not

7   this is premature in some respects.

8        MR. FRIEDMAN:  But in any event, we would be

9   entitled, I think, before consideration of that

10  motion, to depose their IT people, and that would not

11  be subject to any cost shifting.  So I think, if the

12  Court is going to allow the Debtors to make the

13  motion, we should do that beforehand and get that out

14  of the way from both standpoints.  Because under

15  Zubulake they have to submit anyway a detailed, sworn

16  affidavit from their IT people.  When the Court in

17  Zubulake was considering the motion, Judge Scheindlin

18  had depositions of the IT people as well as fact

19  depositions, and it was only prospective from that

20  point.

21       So while I certainly would like to have a

22  scheduling order and that was our initial application

23  here, if the Court is going to consider any cost

24  shifting inquiry at that point, I submit that it makes

25  the most sense to do this limited IT discovery so we

A 04405

1    can actually determine what they have done and what

2    they have not done.  One thing that comes to mind

3    immediately is, from our view at least, and I know the

4    Debtors dispute this, we have Intermedia and we have

5    WorldCom.  These are two different groups of

6    documents.  There are no WorldCom documents, except

7    for maybe possibly a few of what they call POP

8    e-mails.  We believe that those documents should have

9    been preserved at the time that they intentionally

10    breached the contract.  Instead, they were destroyed

11    and now they are completely inaccessible.  We need to

12    inquire as to what the process was at the time that

13    they breached our contract and why they didn't

14    preserve the documents.  There are no documents from

15    the WorldCom side possibly, and we need to inquire as

16    to that, because not only could that affect the cost

17    shifting but it could also affect possible sanctions

18    such as adverse inferences and other types of

19    sanctions that we anticipate making based upon what

20    the evidence shows.

21         JUDGE GONZALEZ:  All right.  Let me hear from

22    the Debtors with respect to the IT discovery before

23    the motion.

24         MS. MURDOCK:  Your Honor, we have made every

25    attempt to make this process as transparent as

1    possible.  We have identified in correspondence to

2    Parus Holdings' counsel all the different types of

3    electronic data there are both for Intermedia and MCI.

4    We have made eight document productions of electronic

5    data, including document productions of WorldCom

6    documents.  Those document productions have been

7    identified as being either from WorldCom or

8    Intermedia.  So this has been a transparent process.

9    We have told them everything that exists.  We have

10   produced documents from the WorldCom side.  No

11   documents have been destroyed.  The sampling that has

12   been done with respect to the inaccessible data or the

13   backup tapes is the type of sampling that was

14   contemplated in the Zubulake decision.  We believe it

15   is unnecessary for there to be depositions of their IT

16   people in advance of a cost shifting motion, because

17   we can provide affidavits in support of our cost

18   shifting motion that show the various types of

19   discovery and information that we have already

20   provided.  This has already been provided to counsel.

21   We can provide it in the form of affidavits, though,

22   if they wish.  The notion that it is important to take

23   deposition discovery of the electronic data that

24   exists seems unnecessary in light of the transparent

25   information that we have been providing to Parus

1  Holdings' counsel over the past six months about all

2  of the sources of electronic discovery.

3       JUDGE GONZALEZ:  Whether the information has

4  been as transparent as you say it is, is one of the

5  central issues.  Your affidavits about what may have

6  already been produced doesn't answer the question of

7  how things were kept, and what may have been available

8  at one point in time, and then what happened to it.

9       MS. MURDOCK:  Actually, Your Honor, the

10 affidavits I contemplated would be on the subject you

11 just mentioned.  Not what has been produced, but all

12 of the sources of electronic data that are available.

13      JUDGE GONZALEZ:  Under the circumstances of

14 this case, why do you think that would suffice?  It is

15 going to be challenged from the outset.  They are

16 going to want to take the deposition of the affiant.

17      MS. MURDOCK:  I am sorry, Your Honor?

18      JUDGE GONZALEZ:  They will want to take the

19 deposition of the very party that you are going to

20 provide the affidavit from.  So what in the world am I

21 going to do with it?  Am I going to just accept it as

22 your affidavit, and they have to file the equivalent

23 of a Rule 56(f) type response to it and say, "We need

24 to take discovery or a deposition of the affiant to

25 find what was kept, how it was kept, and whatever is

1  set forth is accurate"?

2        MS. MURDOCK:  Apparently, what Mr. Friedman is

3  alleging is that the information that counsel has

4  provided to them about the sources of electronic

5  discovery is incomplete or incorrect and we don't

6  believe it is.  We have done a very thorough job in

7  searching for electronic discovery.  If the Court

8  believes that it is appropriate to have depositions of

9  the IT people -- and we are not talking about a single

10 person, there would be more than one person

11 involved -- then all that that would provide is the

12 scope of the discovery that is out there to access.

13 It doesn't really impact the cost shifting issue.  It

14 just impacts where you go to find the electronic

15 discovery.

16        JUDGE GONZALEZ:  Depending on what is

17 discovered, what responses the affiant has to

18 questions as to why something didn't exist and why it

19 did exist and no longer exists or what efforts have

20 been made to search various databases, I don't see how

21 it would be necessarily relevant to the cost shifting.

22 I think it depends on what the answers are.

23        MS. MURDOCK:  In this case, the inaccessible

24 data that we have are backup tapes.  I don't think

25 that there is any dispute about that.  The cost

1  shifting issue would go to the inaccessible data.

2        JUDGE GONZALEZ:  It may be my ignorance of all

3  of the facts here, but when someone says their backup

4  tapes, that triggers in my mind an assumption that

5  there were original tapes, and that is why we have

6  backups.  So I think there seems to be on the surface

7  a legitimate inquiry as to what happened to the

8  originals.  If you had the originals and not the

9  backup, would the search then be enhanced or

10  facilitated?  I don't know the answer to that.  But if

11  it is determined that the originals under the normal

12  course of business or ordinary course of business in

13  the industry would otherwise have been kept and for

14  some reason it doesn't seem that appropriate actions

15  were taken to retain records and now we then have to

16  turn to the backup, there may be an argument from the

17  party seeking the discovery that they shouldn't have

18  to bear the costs for that.  It may come down to

19  whether it was appropriate to have eliminated the

20  original data.  I don't know the answer to that.

21  Sitting here right now, I haven't the faintest idea

22  what the standard is.  I assume it is an industry-wide

23  standard as to what you would apply coupled with the

24  issues about knowing whether a litigation or having an

25  indication that a litigation may follow as to what

1    then you do with data and whether or not proper

2    actions were taken to preserve data once it became

3    known that there was an issue that may ultimately end

4    in litigation.  I just throw out standards that may be

5    applied, but I don't see how just receiving an

6    affidavit as to WorldCom's point of view as to what

7    happened, what we have, and this is what we have, and

8    we think the costs should be shifted is necessarily

9    going to bring me to a point in which I can make a

10   determination because I am quite confident I am going

11   to hear from Parus Holdings that they still need the

12   discovery based on the representations made in the

13   affidavits.

14       MS. MURDOCK:  All right.  Thank you, Your

15   Honor.

16       JUDGE GONZALEZ:  Let me hear then from Parus

17   Holdings.

18       MR. FRIEDMAN:  Judge, I think you are correct

19   with respect to the affidavit.  I just wanted to

20   respond on the sampling issue.  We were reluctant

21   participants in the sampling process.  We still really

22   have very little information as to what they did.  We

23   provided search terms and will always be cooperative

24   and provide search terms and limit it.  I think that

25   is part of the electronic discovery equation, but the

1    fact remains that we have targeted narrow groups of

2    documents that are the most relevant to this case that

3    have not been produced.  I am not doubting counsel's

4    efforts to attempt to provide the discovery.  The fact

5    remains that both Debtors that are involved here had

6    in our view serious problems in maintaining and

7    preserving the documents.  The proof is in the

8    pudding.  We don't have any documents regarding the

9    most important requests that we have.

10           JUDGE GONZALEZ:  I think we are going to

11    ultimately leave that determination for another day.

12    In terms of taking discovery of the IT people, let me

13    hear from the Debtors first.  The Debtors can use the

14    microphone at the table.  You don't need to keep

15    jumping up and down.  You can use both sides.  When

16    would you believe that the relevant parties would be

17    available?

18           MS. MURDOCK:  Your Honor, I would have to check

19    the schedules.  I don't know, as I sit here today.

20           JUDGE GONZALEZ:  With it being the summer, it

21    is a little difficult for everyone to come up with a

22    time frame, whether 30 days would be enough to do the

23    depositions and assuming that the parties were

24    accessible.  It would seem to me that if you got the

25    depositions completed by mid-August, we could then

1  have a hearing early in September on this issue.  If

2  it turns out that the parties can't coordinate the

3  time, early in September may get pushed to later in

4  September.

5          What I think you should do is let the Debtors

6  contact the parties that would be involved from the

7  Debtors' standpoint, and get them to give you some

8  information regarding their schedule over the next

9  30 days.  Then you will have to consider your own

10  schedules over that period.  Then work out a close of

11  deposition time frame in which you will be ready to

12  make the motion.  My guess is the earliest that will

13  take you to is probably mid-September.  It may take

14  you until later in September.  If you see when you are

15  going through the schedule you can ignore the fact

16  that certain WorldCom dates may be blocked out, to the

17  extent this schedule lands you on a blocked-out

18  WorldCom date, let my chambers know and I will let you

19  know whether that date otherwise can be made available

20  for purposes of the hearing.  So don't limit

21  yourselves just to the days that appear on the website

22  as available.  Certain days may still be unavailable,

23  but it is likely I can make an adjustment to that

24  schedule.  I really think we should leave everything

25  else at this point until that hearing date.

1    Now, if you have problems coordinating

2 discovery and the deposition of these parties, just

3 contact my chambers and we can have a conference call

4 to try to work out whatever scheduling issue arises.

5 Is there anything further?

6    MR. FRIEDMAN:  No, Your Honor.  Thank you.

7    MS. MURDOCK:  Thank you, Your Honor

8    JUDGE GONZALEZ:  All right.  Mr. Shaiken, what

9 time is the next matter?

10    MR. SHAIKEN:  At 10:40.

11    JUDGE GONZALEZ:  All right.  I will come back

12 to the bench at 10:40.  Thank you.

13    (Whereupon, from 10:26 a.m. to 10:42 a.m. a

14 recess was taken.)

15

16

17

18

19

20

21

22

23

24

25

A 04414

1                C E R T I F I C A T E

2    STATE OF NEW YORK     )
                          : SS:
3    COUNTY OF NEW YORK    )

4

5            I, DEBORAH HUNTSMAN, a Shorthand Reporter

6    and Notary Public within and for the State of New

7    York, do hereby certify:

8            That the within is a true and accurate

9    transcript from the official electronic sound

10   recording of the proceedings held on the 11th day of

11   July, 2006.

12           I further certify that I am not related by

13   blood or marriage to any of the parties and that I am

14   not interested in the outcome of this matter.

15           IN WITNESS WHEREOF, I have hereunto set my

16   hand this 20th day of July, 2006.

17

18

19                          DEBORAH  HUNTSMAN
20                          DEBORAH  HUNTSMAN

21   PROOFREAD BY HALLIE CANTOR

22   PRELIMINARY TRANSCRIPT SENT VIA E-MAIL 7/16/2006

23

24

25

## $

$208,000 [1] - 4:11
$331,000 [1] - 4:12
$72,000 [1] - 6:10

## 0

02-13533(AJG [1] -
1:3
02-13533) [1] - 2:3

## 1

101 [1] - 1:17
10178 [1] - 1:18
10:00 [1] - 1:4
10:26 [1] - 20:10
10:40 [2] - 20:10,
20:12
10:42 [1] - 20:13
11 [1] - 1:4
11th [1] - 21:10
1201 [1] - 1:14
16th [1] - 6:23

## 2

2000 [1] - 3:11
2002 [1] - 3:20
2006 [3] - 1:4, 21:11,
21:16
20th [1] - 21:16
212 [1] - 1:24
26(c [1] - 2:16
26(c) [1] - 6:22

## 3

3.28 [1] - 6:3
30 [2] - 18:22, 19:9
300 [1] - 5:24

## 5

56(f [1] - 14:23

## 6

608-9053 [1] - 1:24
64106 [1] - 1:14

## 7

7/11/2006 [1] - 2:2
7/16/2006 [1] - 21:22
723-9898 [1] - 1:24
750,000 [2] - 5:23,
6:3

## 9

917 [1] - 1:24

## A

a.m [3] - 1:4, 20:13
accept [1] - 14:21
access [1] - 15:12
accessible [3] - 4:23,
5:9, 18:24
accordingly [1] - 5:3
account [1] - 6:11
accurate [2] - 15:1,
21:8
actions [2] - 16:14,
17:2
actors [1] - 10:1
actual [1] - 4:9
addition [1] - 5:7
additional [1] - 5:18
adjustment [1] -
19:23
advance [1] - 13:16
adverse [1] - 12:18
advised [2] - 2:22,
4:1
affect [2] - 12:16,
12:17
affiant [3] - 14:16,
14:24, 15:17
affidavit [5] - 11:16,
14:20, 14:22, 17:6,
17:19
affidavits [5] - 13:17,
13:21, 14:5, 14:10,
17:13
ago [1] - 8:6
agree [1] - 6:5
Agreement [1] - 3:13
al [2] - 1:4, 2:2
allegedly [1] - 3:9
alleging [1] - 15:3
ALLISON [1] - 1:15
Allison [2] - 2:11,
2:14
allow [2] - 11:1,
11:12
almost [1] - 11:6

alone [2] - 5:20, 6:11
alternatively [1] - 7:1
ample [1] - 3:4
analysis [2] - 2:23,
5:14
answer [4] - 9:9,
14:6, 16:10, 16:20
answers [1] - 15:22
anticipate [1] - 12:19
anyway [1] - 11:15
appear [1] - 19:21
appeared [1] - 2:21
appearing [1] - 2:14
application [4] - 8:3,
8:22, 10:18, 11:22
applied [1] - 17:5
apply [1] - 16:23
appropriate [4] -
4:25, 15:8, 16:14,
16:19
appropriateness [1]
- 2:25
April [1] - 3:20
areas [1] - 8:16
argument [1] - 16:16
arises [2] - 10:18,
20:4
arising [1] - 3:9
ARTHUR [1] - 1:10
asserted [1] - 3:8
assertions [1] - 9:19
assisting [1] - 4:7
associated [2] -
4:14, 6:8
assume [3] - 9:1,
16:22
assuming [1] - 18:23
assumption [1] -
16:4
attempt [4] - 4:8, 8:8,
12:25, 18:4
attorney [1] - 6:12
Attorneys [1] - 1:17
August [1] - 18:25
authority [3] - 4:25,
5:10, 7:15
available [5] - 14:7,
14:12, 18:17, 19:19,
19:22
Avenue [1] - 1:17
aware [1] - 8:10

## B

background [1] - 3:7
backup [8] - 5:14,
9:20, 9:24, 13:13,
15:24, 16:3, 16:9,
16:16

backups [1] - 16:6
BANKRUPTCY [1] -
1:1
Bankruptcy [1] -
1:11
based [4] - 3:24, 4:9,
12:19, 17:12
basis [1] - 9:6
bear [1] - 16:18
became [1] - 17:2
beforehand [1] -
11:13
beginning [1] - 2:23
behalf [1] - 2:14
believes [3] - 3:2,
3:21, 15:8
bench [1] - 20:12
between [3] - 3:9,
4:11
blocked [2] - 19:16,
19:17
blocked-out [1] -
19:17
blood [1] - 21:13
borne [1] - 9:3
boxes [1] - 5:24
breached [2] - 12:10,
12:13
brief [1] - 3:7
briefed [2] - 8:6, 8:14
bring [1] - 17:9
business [2] - 16:12
BY [3] - 1:15, 1:19,
21:21

## C

CANTOR [1] - 21:21
Case [2] - 1:2, 2:2
case [10] - 6:7, 7:6,
8:4, 8:12, 8:20, 9:23,
10:19, 14:14, 15:23,
18:2
cases [1] - 7:16
central [1] - 14:5
certain [1] - 19:16
Certain [1] - 19:22
certainly [1] - 11:21
certify [2] - 21:7,
21:12
challenged [1] -
14:15
chambers [2] -
19:18, 20:3
characterization [1]
- 6:5
check [1] - 18:18
chose [1] - 5:12
chronology [1] - 8:1

circumstances [1] -
14:13
City [1] - 1:14
claims [3] - 3:8, 3:22,
8:5
Claims [1] - 1:8
client [2] - 9:1, 9:4
close [1] - 19:10
colleague [1] - 2:11
Communications [1]
- 3:12
compel [1] - 8:11
complete [1] - 7:19
completed [3] - 3:4,
7:7, 18:25
completely [1] -
12:11
Conference [1] - 1:8
conference [7] -
2:10, 4:15, 4:19, 6:16,
6:21, 8:2, 20:3
conferred [1] - 5:25
confident [1] - 17:10
confused [1] - 6:15
consequences [1] -
10:11
consider [2] - 11:23,
19:9
consideration [1] -
11:9
considered [2] -
4:17, 4:23
considering [1] -
11:17
considers [1] - 7:17
consistent [1] - 5:9
contact [2] - 19:6,
20:3
contemplated [2] -
13:14, 14:10
contested [2] - 2:9,
6:18
contract [2] - 3:9,
3:23, 12:10, 12:13
Contract [4] - 3:14,
3:15, 3:20, 3:25
contrary [1] - 5:7
controlling [2] -
4:24, 5:10
controls [2] - 3:25,
7:15
cooperative [1] -
17:23
coordinate [1] - 19:2
coordinating [1] -
20:1
copy [1] - 8:11
correct [1] - 17:18
correspondence [1]
- 13:1

**cost** [31] - 3:3, 4:8, 4:25, 5:2, 5:13, 5:16, 6:8, 6:22, 7:1, 7:9, 7:10, 7:15, 7:17, 7:22, 8:21, 8:25, 9:7, 9:11, 10:2, 10:3, 10:17, 10:23, 10:25, 11:11, 11:23, 12:16, 13:16, 13:17, 15:13, 15:21, 15:25
**costs** [8] - 2:17, 2:25, 3:5, 4:12, 4:14, 10:11, 16:18, 17:8
**Counsel** [1] - 1:13
**counsel** [8] - 2:22, 4:1, 6:1, 6:5, 13:2, 13:20, 14:1, 15:3
**counsel's** [1] - 18:3
**COUNTY** [1] - 21:3
**coupled** [1] - 16:23
**course** [2] - 16:12
**Court** [20] - 1:23, 1:25, 2:13, 2:22, 3:3, 4:17, 4:18, 5:5, 6:23, 7:8, 7:10, 7:16, 8:3, 10:4, 10:6, 11:1, 11:12, 11:16, 11:23, 15:7
**COURT** [1] - 1:1
**crucial** [2] - 8:16, 9:21
**customers** [1] - 3:17

### D

**data** [17] - 4:5, 4:13, 4:22, 4:23, 5:1, 5:9, 5:11, 13:3, 13:5, 13:12, 13:23, 14:12, 15:24, 16:1, 16:20, 17:1, 17:2
**databases** [1] - 15:20
**date** [5] - 5:6, 6:19, 19:18, 19:19, 19:25
**dates** [1] - 19:16
**days** [4] - 18:22, 19:9, 19:21, 19:22
**dealing** [1] - 6:17
**DEBORAH** [4] - 1:23, 21:5, 21:19, 21:20
**Debtors** [14] - 1:5, 1:13, 2:8, 2:14, 8:8, 8:14, 9:25, 11:12, 12:4, 12:22, 18:5, 18:13, 19:5
**Debtors'** [1] - 19:7
**decide** [2] - 7:10, 7:12

**decision** [1] - 7:18, 10:24, 13:14
**delay** [2] - 8:23, 11:3
**demonstrate** [1] - 10:19
**depose** [2] - 11:4, 11:10
**deposition** [6] - 13:23, 14:16, 14:19, 14:24, 19:11, 20:2
**depositions** [8] - 9:13, 9:16, 11:18, 11:23, 15:13, 15:8, 18:23, 18:25
**destroyed** [2] - 12:10, 13:11
**detailed** [1] - 11:15
**determination** [3] - 3:3, 17:10, 18:11
**determine** [5] - 2:24, 7:9, 9:2, 11:6, 12:1
**determined** [1] - 16:11
**determining** [1] - 5:15
**different** [2] - 12:5, 13:2
**difficult** [1] - 18:21
**DIGITALLY** [1] - 1:6
**discovered** [1] - 15:17
**Discovery** [1] - 1:8
**discovery** [42] - 2:17, 2:19, 2:22, 3:1, 3:6, 4:2, 4:8, 4:9, 4:15, 4:16, 4:20, 4:21, 5:6, 5:7, 5:13, 6:17, 7:7, 7:13, 7:14, 7:19, 8:4, 8:7, 8:8, 8:17, 8:23, 9:12, 11:25, 12:22, 13:19, 13:23, 14:2, 14:24, 15:5, 15:7, 15:12, 15:15, 16:17, 17:12, 17:25, 18:4, 18:12, 20:2
**discussions** [1] - 8:14
**dispute** [2] - 12:4, 15:25
**DISTRICT** [1] - 1:2
**docket** [2] - 2:9, 6:24
**document** [3] - 13:4, 13:5, 13:6
**documents** [21] - 5:23, 5:24, 6:6, 6:12, 8:11, 8:15, 8:16, 8:19, 9:14, 9:18, 12:6, 12:8, 12:14, 13:6, 13:10, 13:11, 18:2, 18:7, 18:8

**done** [6] - 5:8, 7:16, 12:1, 12:2, 13:12, 15:6
**doubting** [1] - 18:3
**down** [3] - 10:15, 16:18, 18:15
**Drye** [1] - 7:25
**DRYE** [1] - 1:16
**during** [1] - 4:1

### E

**E-MAIL** [1] - 21:22
**e-mails** [2] - 9:23, 12:8
**earliest** [1] - 19:12
**early** [2] - 19:1, 19:3
**EffectNet** [4] - 3:10, 3:11, 3:16, 3:19
**effort** [1] - 8:23
**efforts** [5] - 4:21, 5:6, 9:13, 15:19, 18:4
**eight** [1] - 13:4
**either** [1] - 13:7
**electronic** [32] - 2:17, 2:19, 2:25, 3:6, 4:5, 4:8, 4:9, 4:12, 4:14, 4:19, 4:21, 4:22, 5:1, 5:6, 5:7, 5:9, 5:11, 5:13, 7:7, 7:19, 8:15, 9:18, 13:3, 13:4, 13:23, 14:2, 14:12, 15:4, 15:7, 15:14, 17:25, 21:9
**Electronic** [1] - 1:24
**eliminated** [1] - 16:19
**employment** [1] - 9:23
**end** [1] - 17:3
**enhanced** [1] - 16:9
**enter** [1] - 7:5
**entered** [1] - 3:11
**entertain** [1] - 4:18
**entire** [1] - 8:1
**entitled** [1] - 11:9
**equation** [1] - 17:25
**equivalent** [2] - 5:24, 14:22
**ESQ** [2] - 1:15, 1:19
**estimate** [2] - 4:8, 4:11
**et** [2] - 1:4, 2:2
**event** [1] - 11:8
**evidence** [2] - 3:5, 12:20
**examples** [1] - 8:20
**except** [1] - 12:6
**Excerpt** [1] - 1:7

**excerpt** [1] - 2:1
**exist** [2] - 15:18, 15:19
**exists** [3] - 13:9, 13:24, 15:19
**explain** [1] - 9:8
**extensive** [2] - 9:12
**extent** [1] - 19:17

### F

**facilitated** [1] - 16:10
**fact** [7] - 5:11, 9:12, 9:15, 11:18, 18:1, 18:4, 19:15
**facts** [3] - 9:19, 10:18, 16:3
**factual** [4] - 2:23, 3:2, 9:6, 10:5
**faintest** [1] - 16:21
**fair** [2] - 6:5, 10:5
**fall** [1] - 3:21
**few** [2] - 8:20, 12:7
**file** [5] - 2:16, 4:16, 5:2, 6:21, 14:22
**filed** [3] - 3:19, 3:21, 8:13
**FINAL** [1] - 1:6
**First** [1] - 8:10
**first** [2] - 2:9, 8:13, 18:13
**firsthand** [1] - 10:13
**five** [1] - 5:18
**follow** [1] - 16:25
**following** [1] - 2:1
**form** [1] - 13:21
**forth** [2] - 3:18, 15:1
**forward** [3] - 6:7, 8:4, 8:18
**four** [1] - 5:14
**frame** [3] - 10:17, 18:22, 19:11
**FRIEDMAN** [7] - 1:19, 7:24, 9:5, 10:22, 11:8, 17:18, 20:6
**Friedman** [3] - 5:4, 7:25, 15:2
**fully** [2] - 8:6, 8:14

### G

**General** [1] - 3:13
**genesis** [1] - 8:2
**GONZALEZ** [10] - 1:10, 2:4, 6:14, 6:25, 7:20, 8:24, 10:9, 11:5, 12:21, 14:3, 14:13, 14:18, 15:16, 16:2,

17:16, 18:10, 18:20, 20:8, 20:11
**granted** [1] - 6:25
**groups** [2] - 12:5, 18:1
**guess** [1] - 19:12

### H

**half** [1] - 8:12
**HALLIE** [1] - 21:21
**hand** [1] - 21:16
**handling** [1] - 2:12
**hard** [1] - 8:11
**hear** [5] - 7:20, 12:21, 17:11, 17:16, 18:13
**hearing** [7] - 4:1, 6:18, 7:22, 10:11, 19:1, 19:20, 19:25
**HECKER** [1] - 1:13
**Hecker** [1] - 2:7
**held** [1] - 21:10
**hereby** [1] - 21:7
**hereunto** [1] - 21:15
**Holdings** [22] - 1:7, 1:8, 1:17, 2:11, 2:18, 2:19, 3:6, 3:7, 4:2, 4:4, 4:10, 4:13, 5:11, 5:14, 5:17, 6:2, 6:10, 7:11, 7:21, 7:25, 17:11, 17:17
**Holdings'** [8] - 3:10, 3:22, 4:6, 5:21, 5:25, 6:4, 13:2, 14:1
**Honor** [11] - 2:6, 2:15, 7:14, 9:5, 12:24, 14:9, 14:17, 17:15, 18:18, 20:6, 20:7
**HONORABLE** [1] - 1:10
**HUNTSMAN** [4] - 1:23, 21:5, 21:19, 21:20

### I

**idea** [3] - 9:16, 9:17, 16:21
**identified** [4] - 5:22, 6:23, 13:1, 13:7
**ignorance** [1] - 16:2
**ignore** [1] - 19:15
**immediately** [1] - 12:3
**impact** [1] - 15:13
**impacts** [2] - 7:2, 15:14

impede [1] - 8:8
important [2] - 13:22, 18:9
impose [1] - 11:3
imposed [1] - 10:24
imposes [1] - 10:25
IN [1] - 21:15
inaccessible [7] - 4:24, 5:1, 5:11, 12:11, 13:12, 15:23, 16:1
INC [1] - 1:4
Inc [4] - 1:7, 1:8, 1:17, 2:2
including [1] - 13:5
incomplete [1] - 15:5
incorrect [1] - 15:5
indication [1] - 16:25
individual [2] - 4:3, 4:6
industry [2] - 16:13, 16:22
industry-wide [1] - 16:22
inferences [1] - 12:18
informal [5] - 2:10, 4:15, 4:19, 6:16, 6:20
information [6] - 13:19, 13:25, 14:3, 15:3, 17:22, 19:8
initial [1] - 11:22
inquire [2] - 12:12, 12:15
inquiry [4] - 9:11, 10:3, 11:24, 16:7
Instead [1] - 12:10
intentionally [1] - 12:9
interested [1] - 21:14
Intermedia [9] - 3:9, 3:10, 3:11, 3:15, 4:5, 4:22, 12:4, 13:3, 13:8
Intermedia's [2] - 3:16, 5:8
interrupt [1] - 11:5
involved [3] - 15:11, 18:5, 19:6
issue [9] - 5:16, 7:22, 10:18, 15:13, 16:1, 17:3, 17:20, 19:1, 20:4
issues [4] - 2:22, 4:2, 14:5, 16:24
IT [11] - 9:13, 9:16, 11:4, 11:10, 11:16, 11:18, 11:25, 12:22, 13:15, 15:9, 18:12
item [1] - 2:9

**J**

job [1] - 15:6
Judge [6] - 1:11, 7:24, 8:21, 9:17, 11:17, 17:18
JUDGE [18] - 2:4, 6:14, 6:25, 7:20, 8:24, 10:9, 11:5, 12:21, 14:3, 14:13, 14:18, 15:16, 16:2, 17:16, 17:18, 18:20, 20:8, 20:11
judgment [4] - 3:18, 3:18, 3:21, 4:17, 8:13
July [3] - 1:4, 21:11, 21:16
jumping [1] - 18:15
June [1] - 6:23

**K**

Kansas [1] - 1:14
keep [2] - 9:25, 18:14
KELLEY [1] - 1:16
Kelley [1] - 7:25
kept [4] - 14:7, 14:25, 16:13
Kevin [1] - 6:1
key [3] - 4:7, 5:21, 9:13
knowing [1] - 16:24
knowledge [1] - 10:13
known [1] - 17:3

**L**

lands [1] - 19:17
language [1] - 3:24
last [4] - 2:21, 3:21, 4:1, 8:11
law [2] - 3:24, 10:19
least [3] - 8:9, 10:14, 12:3
leave [2] - 18:11, 19:24
legal [1] - 7:15
legitimate [1] - 16:7
letter [2] - 5:4, 6:23
light [1] - 13:24
likely [1] - 19:23
limit [4] - 6:1, 7:12, 17:24, 19:20
limited [2] - 5:3, 11:25
list [1] - 4:3

litigation [3] - 16:24, 16:25, 17:4
LLP [2] - 1:13, 1:16

**M**

MAIL [1] - 21:22
mails [2] - 9:23, 12:8
maintained [1] - 9:18
maintaining [1] - 18:6
Mark [1] - 2:6
marriage [1] - 21:13
matter [9] - 2:11, 2:18, 3:1, 3:19, 3:24, 6:18, 8:9, 20:9, 21:14
matters [1] - 2:5
matures [1] - 10:10
MCI [15] - 2:15, 3:2, 3:8, 3:19, 3:20, 4:3, 4:4, 4:5, 4:22, 5:5, 5:8, 5:9, 6:20, 13:3
meaningful [1] - 6:7
mention [1] - 8:20
mentioned [1] - 14:11
messaging [1] - 3:15
microphone [1] - 18:14
mid [2] - 18:25, 19:13
mid-August [1] - 18:25
mid-September [1] - 19:13
might [1] - 7:14
mind [2] - 12:2, 16:4
Missouri [1] - 1:14
months [4] - 10:16, 14:1
morning [3] - 2:6, 2:10, 7:24
MORRISON [1] - 1:13
Morrison [1] - 2:7
most [6] - 8:16, 9:21, 10:1, 11:25, 18:2, 18:9
motion [17] - 2:16, 4:16, 4:17, 5:2, 6:21, 8:2, 8:10, 8:13, 11:2, 11:6, 11:10, 11:13, 11:17, 12:23, 13:16, 13:18, 19:12
Motion [1] - 1:8
move [3] - 6:7, 8:4, 8:17
MR [8] - 2:6, 7:24, 9:5, 10:22, 11:8,

17:18, 20:6, 20:10
MS [11] - 2:13, 6:20, 7:4, 12:24, 14:9, 14:17, 15:2, 15:23, 17:14, 18:18, 20:7
MURDOCK [12] - 1:15, 2:13, 6:20, 7:4, 12:24, 14:9, 14:17, 15:2, 15:23, 17:14, 18:18, 20:7
Murdock [2] - 2:11, 2:14

**N**

names [3] - 4:3, 4:7, 5:21
narrow [1] - 18:1
necessarily [3] - 10:21, 15:21, 17:8
necessary [3] - 2:24, 3:2, 6:12
need [6] - 11:6, 12:11, 12:15, 14:23, 17:11, 18:14
NEW [3] - 1:2, 21:2, 21:3
New [4] - 1:5, 1:18, 21:6
next [2] - 19:8, 20:9
nine [3] - 5:19, 5:20, 6:9
none [1] - 9:15
normal [1] - 16:11
Notary [1] - 21:6
nothing [1] - 9:25
notion [1] - 13:22
November [1] - 3:11
number [2] - 5:24, 9:20
Number [2] - 9:11, 9:21

**O**

objections [1] - 8:6
occurred [1] - 9:10
OF [3] - 1:2, 21:2, 21:3
official [1] - 21:9
Once [1] - 7:17
once [1] - 17:2
one [7] - 5:12, 5:17, 9:11, 9:21, 14:4, 14:8, 15:10
One [2] - 6:14, 12:2
opportunity [1] - 7:8
order [10] - 2:16,

2:18, 2:24, 6:17, 7:2, 7:6, 7:23, 8:3, 11:22
ordinary [1] - 16:12
original [2] - 16:5, 16:20
originals [3] - 16:8, 16:11
otherwise [2] - 16:13, 19:19
outcome [1] - 21:14
outset [1] - 14:15
own [1] - 19:9

**P**

pages [2] - 5:23, 6:3
papers [1] - 3:18
Park [1] - 1:17
part [1] - 17:25
participants [1] - 17:21
parties [3] - 2:21, 3:13, 7:18, 18:16, 18:23, 19:2, 19:6, 20:2, 21:13
party [2] - 14:19, 16:17
Parus [30] - 1:7, 1:8, 1:17, 2:10, 2:18, 2:19, 3:6, 3:7, 3:10, 3:22, 4:2, 4:4, 4:6, 4:10, 4:13, 5:11, 5:14, 5:17, 5:21, 5:25, 6:2, 6:4, 6:10, 7:11, 7:20, 7:25, 13:2, 13:25, 17:11, 17:16
past [1] - 14:1
path [1] - 10:15
pay [1] - 7:13
pending [2] - 8:5, 8:12
people [9] - 9:13, 9:16, 11:4, 11:10, 11:16, 11:18, 13:16, 15:9, 18:12
percent [1] - 6:3
perform [1] - 4:12
period [1] - 19:10
permission [3] - 2:15, 4:16, 6:21
person [2] - 15:10
person's [1] - 9:23
place [2] - 10:12, 10:20
plain [1] - 3:24
point [9] - 10:8, 10:10, 10:21, 11:20, 11:24, 14:8, 17:6, 17:9, 19:25

**POP** [1] - 12:7
**possible** [3] - 7:11, 12:17, 13:1
**possibly** [2] - 12:7, 12:15
**Pre** [1] - 1:8
**Pre-Motion** [1] - 1:8
**predated** [1] - 9:10
**predecessor** [1] - 3:10
**PRELIMINARY** [1] - 21:22
**premature** [1] - 7:5, 10:4, 10:7, 10:9, 11:7
**preserve** [3] - 9:14, 12:14, 17:2
**preserved** [1] - 12:9
**preserving** [1] - 18:7
**problems** [2] - 18:6, 20:1
**proceed** [1] - 7:18
**proceeded** [1] - 4:19
**proceedings** [1] - 21:10
**PROCEEDINGS** [1] - 1:6
**Proceedings** [1] - 1:24
**process** [5] - 11:2, 12:12, 12:25, 13:8, 17:21
**processes** [1] - 10:14
**produce** [1] - 8:18
**Produced** [1] - 1:25
**produced** [6] - 9:24, 10:2, 13:10, 14:6, 14:11, 18:3
**productions** [3] - 13:4, 13:5, 13:6
**proof** [1] - 18:7
**PROOFREAD** [1] - 21:21
**proper** [2] - 11:2, 17:1
**prospective** [2] - 10:20, 11:19
**protective** [3] - 2:16, 7:2, 7:23
**provide** [6] - 13:17, 13:21, 14:20, 15:11, 17:24, 18:4
**provided** [6] - 4:2, 4:6, 13:20, 15:4, 17:23
**providing** [1] - 13:25
**Public** [1] - 21:6
**pudding** [1] - 18:8
**pulled** [2] - 5:22, 6:13

**purchase** [1] - 3:15
**purposes** [3] - 5:13, 5:15, 19:20
**pushed** [1] - 19:3

**Q**

**questions** [1] - 15:18
**quite** [1] - 17:10

**R**

**range** [1] - 4:11
**re** [3] - 1:3, 1:8, 2:2
**read** [1] - 10:25
**ready** [1] - 19:11
**really** [5] - 6:7, 10:13, 15:13, 17:21, 19:24
**reason** [1] - 16:14
**reasons** [1] - 5:16
**receiving** [1] - 17:5
**recently** [1] - 5:5
**recess** [1] - 20:14
**recognize** [1] - 4:24
**record** [3] - 3:2, 9:12, 10:5
**RECORDED** [1] - 1:6
**Recorded** [1] - 1:24
**recording** [1] - 21:10
**Recording** [1] - 1:24
**records** [2] - 10:1, 16:15
**referred** [1] - 3:14
**regarding** [2] - 18:8, 19:8
**related** [3] - 4:22, 5:16, 21:12
**relating** [2] - 8:16, 9:20
**relevant** [6] - 8:19, 10:1, 10:19, 15:21, 18:2, 18:16
**reluctant** [1] - 17:20
**remainder** [1] - 7:19
**remains** [2] - 18:1, 18:5
**Reorganized** [3] - 1:5, 1:13, 2:8
**Reporter** [1] - 1:23, 1:25, 21:5
**representations** [1] - 17:12
**representing** [1] - 2:7
**request** [5] - 4:18, 6:4, 6:19, 6:25, 7:21
**requested** [1] - 6:18,

6:20, 8:19
**requesting** [1] - 4:13
**requests** [3] - 2:15, 7:12, 18:9
**required** [1] - 7:12, 8:18
**resale** [1] - 3:16
**resolution** [1] - 8:9
**resolved** [1] - 3:23
**respect** [5] - 5:8, 7:21, 12:22, 13:12, 17:19
**respects** [1] - 11:7
**respond** [1] - 17:20
**response** [2] - 8:21, 14:23
**responses** [1] - 15:17
**responsive** [2] - 6:4, 6:6
**result** [1] - 6:13
**retain** [1] - 16:15
**retroactive** [1] - 10:23
**retroactively** [1] - 11:1
**review** [3] - 5:22, 6:12
**risk** [2] - 9:1, 9:2
**Robert** [1] - 7:24
**ROBERT** [1] - 1:19
**Rule** [3] - 2:16, 6:22, 14:23

**S**

**sampled** [4] - 5:10, 5:12, 5:15, 5:18
**sampling** [7] - 6:9, 6:10, 7:16, 13:11, 13:13, 17:20, 17:21
**sanctions** [2] - 12:17, 12:19
**schedule** [6] - 7:1, 7:21, 19:8, 19:15, 19:17, 19:24
**schedules** [2] - 18:19, 19:10
**scheduling** [6] - 6:17, 7:2, 7:6, 8:3, 11:22, 20:4
**Scheindlin** [1] - 11:17
**scope** [1] - 15:12
**search** [11] - 4:3, 4:6, 4:9, 5:20, 5:21, 6:1, 10:1, 15:20, 16:9, 17:23, 17:24
**searches** [1] - 4:13,

6:13, 9:20
**searching** [2] - 4:4, 15:7
**seated** [1] - 2:4
**second** [1] - 6:14
**see** [5] - 15:20, 17:5, 19:14
**seeing** [1] - 8:23
**seek** [2] - 4:15, 5:2
**seeking** [4] - 2:20, 6:21, 7:13, 16:17
**seem** [2] - 16:14, 18:24
**selected** [3] - 5:14, 5:17, 6:9
**sense** [1] - 11:25
**SENT** [1] - 21:22
**September** [5] - 19:1, 19:3, 19:4, 19:13, 19:14
**serious** [1] - 18:6
**Services** [1] - 3:12
**services** [1] - 3:16
**set** [3] - 3:18, 15:1, 21:15
**several** [1] - 9:10
**SHAIKEN** [2] - 2:6, 20:10
**Shaiken** [2] - 2:7, 20:8
**shift** [2] - 2:17, 10:19
**shifted** [2] - 10:12, 17:8
**shifting** [31] - 2:25, 3:3, 3:5, 4:25, 5:2, 5:13, 5:16, 6:22, 7:1, 7:9, 7:11, 7:16, 7:17, 7:22, 8:21, 8:25, 9:7, 9:11, 10:2, 10:3, 10:17, 10:23, 10:25, 11:11, 11:24, 12:17, 13:16, 13:18, 15:13, 15:21, 16:1
**Shorthand** [1] - 21:5
**shorthand** [1] - 3:13
**show** [1] - 13:18
**shows** [1] - 12:20
**side** [2] - 12:15, 13:10
**sides** [1] - 18:15
**single** [1] - 15:9
**sit** [1] - 18:19
**Sitting** [1] - 16:21
**six** [2] - 10:16, 14:1
**Smith** [1] - 6:1
**someone** [1] - 16:3
**sorry** [2] - 11:5, 14:17
**sought** [1] - 4:15
**Sound** [1] - 1:24

**sound** [1] - 21:9
**sounding** [1] - 3:23
**sources** [3] - 14:2, 14:12, 15:4
**SOUTHERN** [1] - 1:2
**speaking** [1] - 10:13
**Special** [1] - 1:13
**specifically** [1] - 9:15
**SS** [1] - 21:2
**standard** [2] - 16:22, 16:23
**standards** [1] - 17:4
**standpoint** [1] - 19:7
**standpoints** [1] - 11:14
**start** [1] - 8:7
**STATE** [1] - 21:2
**State** [1] - 21:6
**STATES** [1] - 1:1
**States** [1] - 1:11
**stay** [1] - 4:16
**step** [1] - 8:22
**still** [3] - 17:11, 17:21, 19:22
**Stinson** [1] - 2:7
**STINSON** [1] - 1:13
**stop** [1] - 8:8
**Street** [1] - 1:14
**subject** [2] - 11:11, 14:10
**submit** [3] - 7:5, 11:15, 11:24
**submitted** [1] - 9:19
**subsidiary** [1] - 3:8
**suffice** [1] - 14:14
**suggested** [1] - 5:4
**summary** [4] - 3:18, 3:21, 4:17, 8:13
**summer** [1] - 18:20
**supervisor** [1] - 9:22
**support** [1] - 13:17
**supports** [1] - 3:5
**surface** [1] - 16:6
**sworn** [1] - 11:15

**T**

**table** [1] - 18:14
**tapes** [5] - 5:12, 5:14, 5:17, 5:18, 5:19, 5:20, 6:9, 9:20, 9:24, 13:13, 15:24, 16:4, 16:5
**targeted** [1] - 18:1
**technical** [1] - 5:16
**terminated** [1] - 3:20
**terms** [8] - 4:3, 4:6,

4:10, 5:21, 6:1, 17:23, 17:24, 18:12

**THE** [1] - 1:10
**theoretically** [1] - 10:15
**thorough** [1] - 15:6
**three** [2] - 8:5, 10:16
**throw** [1] - 17:4
**today** [3] - 2:15, 6:15, 18:19
**tort** [1] - 3:23
**total** [1] - 5:18
**TRANSCRIPT** [2] - 1:6, 21:22
**transcript** [1] - 21:9
**Transcript** [1] - 1:25
**transparent** [4] - 12:25, 13:8, 13:24, 14:4
**triggers** [1] - 16:4
**true** [1] - 21:8
**try** [2] - 8:7, 20:4
**trying** [1] - 8:15
**turn** [2] - 4:5, 16:16
**turns** [1] - 19:2
**two** [5] - 8:6, 8:12, 9:21, 10:16, 12:5
**type** [2] - 13:13, 14:23
**types** [3] - 12:18, 13:2, 13:18

## U

**UC** [4] - 3:14, 3:20, 3:24
**ultimate** [1] - 10:6
**ultimately** [3] - 10:10, 17:3, 18:11
**unavailable** [1] - 19:22
**under** [9] - 2:16, 4:24, 6:22, 7:14, 9:7, 10:19, 10:22, 11:14, 16:11
**Under** [3] - 3:14, 9:9, 14:13
**undertake** [1] - 2:23
**undertaken** [1] - 5:5
**unfortunately** [1] - 11:3
**Unified** [1] - 3:12
**unified** [1] - 3:15
**UNITED** [1] - 1:1
**United** [1] - 1:11
**unnecessary** [2] - 13:15, 13:24
**up** [5] - 8:25, 9:2, 9:7, 18:15, 18:21

## V

**various** [2] - 13:18, 15:20
**vendor** [1] - 4:7
**VIA** [1] - 21:22
**view** [4] - 8:9, 12:3, 17:6, 18:6
**viewed** [1] - 5:1
**volume** [1] - 7:6

## W

**Walnut** [1] - 1:14
**WARREN** [1] - 1:16
**Warren** [1] - 7:25
**website** [1] - 19:21
**WHEREOF** [1] - 21:15
**wide** [1] - 16:22
**willing** [2] - 8:25, 9:1
**wish** [1] - 13:22
**WITNESS** [1] - 21:15
**witness** [1] - 9:22
**world** [1] - 14:20
**WORLDCOM** [1] - 1:4
**WorldCom** [10] - 2:2, 2:5, 12:5, 12:6, 12:15, 13:5, 13:7, 13:10, 19:16, 19:18
**WorldCom's** [1] - 17:6
**written** [1] - 5:5

## Y

**year** [1] - 8:11
**years** [3] - 8:5, 8:6, 8:12
**YORK** [3] - 1:2, 21:2, 21:3
**York** [5] - 1:5, 1:18, 21:7
**yourselves** [1] - 19:21

## Z

**Zubulake** [8] - 9:8, 9:9, 9:21, 9:22, 10:23, 11:15, 11:17, 13:14

A 04420