Robert A. Scher (RS 2910)
FOLEY & LARDNER LLP
90 Park Avenue
New York, NY  10016
Phone:     (212) 682-7474
Facsimile:  (212) 682-2329
Email:  rscher@foley.com

-and-

Mark L. Prager (*pro hac vice*)
Steve Szczepanski (*pro hac vice*)
David B. Goroff (*pro hac vice pending*)
Mary Jo Boldingh (*pro hac vice pending*))
Jill L. Murch (4535712)
FOLEY & LARDNER LLP
321 N. Clark Street, Suite 2800
Chicago, IL  60610
Phone:     (212) 832-4500
Facsimile:  (213) 832-4700
Email: sszczepanski@foley.com
*Attorneys for Appellant Parus Holdings, Inc.*
*Successor-By-Merger to EffectNet, Inc. and*
*EffectNet, LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>WORLDCOM, INC., et al.,<br><br>              Debtors.<br>Parus Holdings, Inc.,<br><br>           Appellant,<br><br>    v.<br><br>WorldCom, Inc., et al.,<br><br>           Appellees. | Chapter 11<br>Jointly Administered<br><br>Case No. 02-13533 (AJG)<br><br><br>Case No. 07-cv-10507 (BSJ)<br><br>ECF Case<br><br>**APPENDIX TO OPENING BRIEF FOR**<br>**APPELLANT PARUS HOLDINGS, INC.** |

## <u>TABLE OF CONTENTS</u>

| Tab No. | Volume I | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 1. | Proof of Claim No. 11242, Replacing Claim No. 9291, Filed by EffectNet, Inc. | 1 | 22 | 3 |
| 2. | Proof of Claim No. 11173, Replacing Claim No. 9293, Filed by EffectNet, Inc. | 23 | 44 | 4 |
| 3. | Debtors' Objection to All Proofs of Claim Filed by EffectNet, Inc. Which Is Now Merged Into Parus Holdings, Inc., Including, But Not Limited To, Claim Numbers 9291, 11242, 9293 and 11173 | 45 | 51 | 5 |
| 4. | Response and Opposition of Parus Holdings, Inc. to Debtors' Objection To Proofs of Claim Filed By Effectnet, Inc. | 52 | 106 | 6 |
| 5. | Debtors' First Amended Objection to All Proofs of Claim Filed by EffectNet, Inc. Which is Now Merged Into Parus Holdings, Inc., Including, But Not Limited to Claim Numbers 9291, 9293, 11173 and 11242 | 107 | 114 | 12 |
| 6. | Response and Opposition of Parus Holdings, Inc. to Debtors' First Amended Objection to all Proofs of Claim Filed by Effectnet, Inc | 115 | 120 | 16 |
| 7. | Parus Holdings, Inc.'s Motion to Compel Production of Responsive Documents, Motion to Extend Time for Discovery Deadlines | 121 | 156 | 17 |
| 8. | Declaration of Steven A. Wood in Support of Parus Holdings, Inc.'s Motion to Compel Production of Responsive Documents, Motion to Extend Time for Discovery Deadlines | 157 | 538 | 18 |
| 9. | Declaration Exhibits AA-FF to Declaration of Steven A. Wood | 539 | 558 | 19 |

| Tab No. | Volume II | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 10. | Statement /Amended Exhibits To Declaration Of Stephen A. Wood In Support Of Parus Holdings, Inc.'s Motion to Compel Production of Responsive Documents | 559 | 937 | 20 |
| 11. | Debtors' Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC | 938 | 1026 | 21 |
| 12. | Memorandum of Law in Support of Debtors' Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC | 1027 | 1042 | 22 |
| 13. | Debtors' Response and Opposition to Parus Holdings, Inc.'s Motion to Compel Production of Responsive Documents and to Extend Discovery Deadlines | 1043 | 1095 | 23 |
| 14. | Reply of Claimant, Parus Holdings, Inc., in Further Support of Its Motion to Compel Production of Responsive Documents and to Extend Discovery Deadlines | 1096 | 1108 | 24 |
| 15. | Debtors' Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC | 1109 | 1213 | 27 |
| 16. | Memorandum of Law in Support of Debtors' Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC | 1214 | 1232 | 28 |
| 17. | Parus Holdings, Inc.'s Response to Motion and Opposition to Debtors' Motion for Summary Judgment | 1233 | 1288 | 29 |
| 18. | Parus Holdings, Inc.'s Statement in Response and Opposition to Debtors' Statement of Undisputed Material Facts | 1289 | 1309 | 30 |

| Tab No. | Volume III | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 19. | Declaration of Robert S. Friedman in Support of Parus Holdings, Inc.'s Response and Opposition to Reorganized Debtors' Motion for Summary Judgment | 1310 | 2285 | 31 |

| Tab No. | Volume IV | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 20. | Affidavit of Robert C. McConnell in Support of Parus Holdings, Inc's Response and Opposition to Debtors' Motion for Summary Judgment | 2286 | 2296 | 32 |
| 21. | Affidavit of Taj Reneau in Support of Parus Holdings, Inc.'s Response and Opposition to Debtors' Motion for Summary Judgment | 2297 | 2680 | 33 |
| 22. | Reply Memorandum in Support of Debtors' Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC | 2681 | 2810 | 35 |
| 23. | Debtors' Motion to Strike Portions of Affidavits Submitted in Support of Claimant Parus Holdings, Inc.'s Response and Opposition to WorldCom's Motion for Summary Judgment | 2811 | 2816 | 36 |
| 24. | Debtors' Reply to Parus Holdings, Inc.'s Statement in Response and Opposition to Debtors' Statement of Undisputed Material Facts | 2817 | 2824 | 37 |
| 25. | Notice of Unconventional Filing: Transcript of Hearing on September 13, 2005 on Parus Holdings, Inc.'s Motion to Compel  (Transcript attached as Exhibit E) | 2825 | 2825 | 39 |
| 26. | Parus Holdings, Inc.'s Response and Opposition to Debtors' Motion to Strike Portions of Affidavits Submitted in Support of Claimant Parus Holdings, Inc.'s Response and Opposition to WorldCom's Motion for Summary Judgment | 2826 | 2836 | 40 |
| 27. | Intentionally Omitted | 2837 | 2847 | N/A |
| 28. | Transcript of Hearing held on August 9, 2005, Re: Motion by Parus Holdings, Inc.'s Motion to Compel Production of Documents and to Extend Discovery Deadlines | 2848 | 2885 | 42 |

| Tab No. | Volume IV | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 29. | Notice of Unconventional Filing:  Transcript of Hearing held on November 1, 2005, on Parus Holdings, Inc.'s Motion to Compel Production of Documents and to Extend Discovery Deadlines (Transcript attached as Exhibit F) | 2886 | 2886 | 43 |
| 30. | Motion of Parus Holdings, Inc.'s for Relief Regarding the Debtors' Spoliation of Evidence | 2887 | 2894 | 57 |

| Tab No. | Volume V | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 31. | Memorandum of Law in Support of Parus Holdings, Inc.'s Motion for Relief Regarding the Debtors' Spoliation of Evidence | 2895 | 3366 | 58 |
| 32. | Opinion signed on 5/2/2007 Partially Granting and Partially Denying Debtors' Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC | 3367 | 3401 | 69 |
| 33. | Amended Motion of Parus Holdings, Inc. for Relief Resulting from the Debtors' Spoliation of Evidence | 3402 | 3409 | 74 |

| Tab No. | Volume VI | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 34. | Memorandum of Law in Support of Parus Holdings, Inc.'s Amended Motion for Relief Resulting from the Debtors' Spoliation of Evidence | 3410 | 4079 | 75 |

| Tab No. | Volume VII | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 35. | Opposition to Parus Holdings, Inc.'s Amended Motion Seeking Spoliation Sanctions | 4080 | 4278 | 76 |
| 36. | Debtors' Motion for an Order Permitting Partial Withdrawal of Claim Objection, Allowance of Resulting Claim, and Reservation of Right to Re-File Claim Objection | 4279 | 4285 | 77 |
| 37. | Transcript of Hearing Held on 7/10/07 at 10:12 a.m. Re: Status Conference; Amended Motion of Parus Holdings, Inc. for Relief Resulting from the Debtors' Spoliation of Evidence. Opposition Filed | 4286 | 4297 | 79 |

| Tab No. | Volume VII | Begin Bates | End Bates | Designation No. |
|---|---|---|---|---|
| 38. | Amended Motion to Allow Partial Withdrawal of Claim Objection to Parus Holdings, Inc.'s Proof of Claim No. 11173 (Replacing 9293), Allowing Resulting Claim, and Denying all Other Pending Motions As Moot | 4298 | 4304 | 80 |
| 39. | Parus Holdings, Inc.'s Limited Objection to Debtors' Amended Motion for an Order Permitting Partial Withdrawal of Claim Objection to Parus Holdings, Inc.'s Proof of Claim No. 11173 (Replacing 9293), Allowing Resulting Claim, and Denying All Other Pending Motions as Moot | 4305 | 4324 | 81 |
| 40. | Debtors' Reply Memorandum in Support of Amended Motion for an Order Permitting Partial Withdrawal of Claim Objection to PARUS HOLDINGS, INC.'S Proof of Claim No. 11173 | 4325 | 4336 | 82 |
| 41. | Order signed on 10/3/2007 partially granting and partially denying debtors' motion for summary judgment and motion to strike portions of affidavits concerning claim 11242 (replacing 9291) against MCI WorldCom Communications, Inc. and claim 11173 (replacing 9293) against Intermedia Communications, Inc. | 4337 | 4338 | 83 |
| 42. | Order signed on 10/3/2007 granting debtors' amended motion for partial withdrawal of claim objection and allowance of resulting claim | 4339 | 4340 | 84 |
| 43. | Notice of Appeal | 4341 | 4345 | N/A |
| 44. | Transcript of Hearing held on January 17, 2006, Re: WorldCom's Motion for Summary Judgment Against Parus Holdings, Inc., Successor-By-Merger to EffectNet, Inc. and EffectNet, LLC & Debtors' Motion to Strike Portions of Affidavits Submitted in Support of Claimant Parus Holdings, Inc.'s Response and Opposition to WorldCom's Motion for Summary Judgment | 4346 | 4394 | 41 |
| 45. | Transcript of Hearing held on July 11, 2006 at 10:00 AM, Re: Pre-Motion Discovery Conference Re Claims Of Parus Holdings, Inc. | 4395 | 4420 | 47 |

Dated:  January 4, 2008

FOLEY & LARDNER LLP

By: /s/ Jill L. Murch
    Robert A. Scher (RS 2910)
    90 Park Avenue
    New York, NY 10016
    Phone:  (212) 682-7474

    -and-

    FOLEY & LARDNER LLP

    Mark L. Prager
    Steve Z. Szczepanski
    David B. Goroff
    Mary Jo Boldingh
    Jill L. Murch (4535712)
    321 N. Clark Street, Suite 2800
    Chicago, IL 60610
    Phone:  (312) 832-4500

    Attorneys for Claimant Parus Holdings, Inc.
    Successor-By-Merger to EffectNet, Inc. and
    EffectNet, LLC

1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x          Case Nos.
In re                                    02-13533(AJG)

WORLDCOM INC., et al.,                   New York, New York
                                         March 12, 2007
          Reorganized Debtors.           10:09 a.m.
------------------------------x
                    FINAL TRANSCRIPT
          DIGITALLY RECORDED PROCEEDINGS
            (Proceedings - Entire Day)
10:00 Motion by Debtors to compel Claimant Parus Holdings Inc.
to appear for a properly noticed Rule 30(b)(6) deposition.
Objection filed.                                            2

10:00 Motion by Debtors to apply Bankruptcy Rule 7068 (offer
of judgment) to the proceedings on claim nos. 11242 (replacing
9291) and 11173 (replacing 9293).
Response by Parus Holdings Inc. filed.                     24

B E F O R E:

     THE HONORABLE ARTHUR J. GONZALEZ
     United States Bankruptcy Judge

A P P E A R A N C E S:

     STINSON MORRISON HECKER LLP
     Special Counsel for Reorganized Debtors
          1201 Walnut Street
          Kansas City, Missouri   64106

     BY:  ALLISON M. MURDOCK, ESQ.

     FOLEY & LARDNER LLP
     Attorneys for Parus Holdings Inc.
          321 North Clark Street, Suite 2800
          Chicago, Illinois   60610

     BY:  JILL L. MURCH, ESQ.

                DEBORAH HUNTSMAN, Court Reporter
          (212) 608-9053 (718) 774-2551 (917) 723-9898
       Proceedings Recorded by Electronic Sound Recording,
              Transcript Produced by Court Reporter

Proceedings                                                     2

1          JUDGE GONZALEZ:  Please be seated.

2          All right.  Let's begin then with the WorldCom

3    matters.  We have a motion by the Debtors to compel Parus

4    Holdings to appear for a properly noticed Rule 30(b)(6)

5    deposition.

6          MS. MURDOCK:  May it please the Court, Allison Murdock

7    on behalf of the Debtors, Your Honor.

8          JUDGE GONZALEZ:  Is there anyone on the phone?

9          (Whereupon, no response was heard.)

10         JUDGE GONZALEZ:  Just speak louder, though.

11         MS. MURDOCK:  Yes, sir.  Your Honor, the Debtors have

12   moved to compel Parus to produce a Rule 30(b)(6) witness to

13   testify regarding e-mail and other electronic information

14   systems, its document preservation practices, and the identity

15   of people responsible for carrying out those practices.

16         This discovery is relevant to whether documents exist

17   to support a new damages theory that Parus now has offered for

18   the first time in its spoliation motion or to support Debtors'

19   defense to that new damages theory.  It is also relevant to

20   Parus' claim that Debtors' retention of electronic data on

21   backup tapes was unreasonable and is sanctionable and the

22   issue of whether the documents Parus claims Debtors' destroyed

23   ever existed in the first place.  Finally, the Rule 30(b)(6)

24   deposition is relevant to the issue of cost-shifting and what

25   constitutes reasonable industry practices for storing

1  electronic data.

2        Federal Rule 26(b)(1) expressly authorizes discovery

3  regarding the existence, description, nature, custody,

4  condition and location of documents and the identity of

5  persons with knowledge of discoverable matters, and this is

6  exactly the nature of deposition that the Debtors wish to take

7  of Parus' Rule 30(b)(6) witness.  This is the exact nature of

8  discovery that Parus has already taken of Debtors, and Parus

9  should not be heard now to state that the nature of a party's

10 e-mail systems and how and where they store documents and the

11 people responsible for that is not a relevant inquiry when

12 Parus itself has made inquiry of the Debtors on these points.

13       Now, at a minimum the discovery the Debtors seek is

14 relevant to what documents exist to support this new claim set

15 forth in Parus' spoliation motion -- a claim that Debtors

16 submit cannot be brought at this late stage of the litigation

17 in any event.  That claim is that Parus now claims that it is

18 entitled to $50 million to $80 million in "expectation

19 damages" simply on its breach of contract claim.

20       Parus has not produced any documents in this case

21 evidencing that it had an expectation on its contract claim of

22 damages in this amount, so the Debtors are entitled to

23 discover what sources of documents there might be to support

24 Parus' claim or to support Debtors' defense to that claim.

25       Now, Ms. Murch's February 14th letter to the Court in

1    response to the informal conference on this motion to compel

2    for the first time disclosed that Parus, like the Debtors,

3    maintains documents on backup tapes.  This was never disclosed

4    to the Debtors before.  We don't know how many backup tapes

5    Parus has, what the time frame is for those backup tapes, what

6    search terms were used to search tapes, and what documents

7    were found on the tapes.

8         Rule 26(b)(1) specifically authorizes Debtors to

9    conduct this Rule 30(b)(6) deposition of Parus in order to

10   obtain the information, the very type of information that

11   Parus has already obtained from the Debtors.  The information

12   that the Debtors seek also is relevant to this spoliation

13   motion.

14        In response to Debtors' motion to compel, Parus simply

15   says that its spoliation motion doesn't hinge on whether it

16   stored documents in the same manner that Debtors stored

17   documents, but Debtors' motion to compel has given the Court

18   example after example of where Parus is claiming in its

19   spoliation motion that Debtors should be sanctioned simply

20   because they used backup tapes to store electronic data.

21   Parus does not dispute that this is a component of their

22   spoliation motion.  Their response to the motion to compel

23   just didn't even speak to this portion of the motion filed by

24   the Debtors.  But there can be no dispute -- and this is at

25   page 10 of our memorandum in support -- that that is a

1    component of Parus' spoliation motion.

2        The Debtors should be able to defend the

3    reasonableness of their conduct in using backup tapes by

4    making inquiry of Parus as to whether they used backup tapes

5    as well.  It goes to the reasonableness of the systems used to

6    store electronic data.  The discovery is also relevant to

7    determine whether the documents Parus claims the Debtors

8    destroyed ever existed in the first place, as will be set

9    forth in our opposition of the spoliation motion.  That is a

10   critical component of spoliation -- whether there was evidence

11   that existed that now doesn't exist.

12        Parus claims that it had expectation damages on its

13   breach of contract claim of $50 million to $80 million, but it

14   hadn't produced any documents that would show that it had an

15   expectation on its contract to earn those kinds of dollars.

16   So the Debtors should be entitled to do discovery of the

17   source of its documents, how it maintains those documents.

18   All that is required, as provided for in Rule 26(b)(1), to see

19   whether these expectations that Parus' claims it has, whether

20   documents ever existed to support those expectations in the

21   first place.

22        Finally, Your Honor, on cost-shifting whether the

23   Debtors followed industry standards in using backup tapes to

24   maintain electronic data is relevant to the cost-shifting

25   motion.  Your Honor already has said twice that that could be

1    a relevant or is a relevant factor concerning the

2    reasonableness of the Debtors' actions.

3         Now, Parus complains that it can't be used to look at

4    industry standards, because it is not in the same industry.

5    But it certainly is close enough, Your Honor.  There is no

6    requirement that it be identical industries to be probative

7    from Parus, but what certainly is the case is that if Parus --

8    a much smaller company than WorldCom -- was using backup tapes

9    to store electronic data, then that certainly goes to the

10   reasonableness of the company the size of the WorldCom with

11   over 38,000 employees using the same types of procedures to

12   store electronic data.  That would certainly go to the

13   reasonableness of the Debtors' conduct and the industry

14   standards used by the parties.

15        The Debtors are not asking the Court to find at this

16   time that the outcome of the discovery it seeks is going to

17   determine cost-shifting or is going to determine spoliation.

18   We are simply trying to take discovery that is specifically

19   authorized under Rule 26(b)(1) and it certainly is appropriate

20   in this case where, as Your Honor has already found in other

21   motions to compel when judicial intervention is invoked, the

22   scope of the discovery should be based on the needs of the

23   action.  The Debtors should be entitled to judge the

24   reasonableness of their actions by looking at what Parus

25   Holdings did as well.

1        So we ask that Your Honor compel Parus to appear for

2    the Rule 30(b)(6) deposition, and then that Debtors be given a

3    three-week extension from the date of that deposition to file

4    their opposition to the spoliation motion.

5        JUDGE GONZALEZ:  All right.  Thank you.

6        MS. MURCH:  Good morning, Your Honor.  Jill Murch of

7    Foley & Lardner on behalf of Parus Holdings.

8        Judge, there really is no basis for this motion to

9    compel, and I will give you five reasons -- no less than five

10    reasons -- why this motion should be denied.  The first is the

11    Debtors misconstrue the standard for spoliation under the

12    Zubulake cases.

13        Now, the Debtors have said in a letter to the Court

14    that they claim they need the information to determine whether

15    Parus "stored electronic information in the same or similar

16    manner as the Debtors."  Yet, Your Honor, spoliation doesn't

17    hinge on whether Parus and the Debtors stored electronic

18    information in the same or similar manner.  Spoliation is not

19    based on a comparison of document retention policies.

20    Instead, whether spoliation occurred depends on whether the

21    Debtors failed to preserve evidence relevant to litigation at

22    a time when they knew or should have known that evidence may

23    be relevant to future litigation.  In other words, the Debtors

24    were required to implement a "litigation hold," yet they

25    failed to do so, and discovery of Parus' document retention

1    policies does not speak to why the Debtors failed to implement

2    a timely "litigation hold."

3              Indeed, the standard for the <u>Zubulake</u> spoliation case

4    is clear on its face.  It has three elements.  That the party

5    having control over the evidence had an obligation to preserve

6    at the time it was destroyed.  That the records were destroyed

7    with a culpable state of mind, and that the destroyed evidence

8    was relevant to the party's claim or defense.  In short, a

9    Rule 30(b)(6) deposition of Parus regarding Parus' document

10   retention policies will in no way reveal or provide evidence

11   explaining why the Debtors failed to implement a timely

12   "litigation hold."

13             JUDGE GONZALEZ:  Take me back I guess to the time

14   frame.  What is going on, in your view, at the Debtors' in

15   terms of the backup information, and then what happens and

16   what do you believe should have happened at the point in time

17   either the Debtors knew or should have known that preservation

18   was required?

19             MS. MURCH:  Judge, you have heard a lot of references

20   to backup tapes, but let me clarify for the record.  A backup

21   tape is nothing more than a secondary source.  It is a

22   snapshot in time of all electronic data that sat on a server.

23   So, for example, I am in a case where there is a reasonable

24   prospect of litigation.  I may send 10 to 15 e-mails to you

25   about this case.  If I delete those e-mails before it hits the

1    backup tape, there is no record of it, Judge.  It is lost

2    forever.  The backup tapes that the Debtors claim that they

3    have all of this information on is simply a snapshot in time.

4    What existed on that network, what existed on the server at

5    the time the backup tape took a snapshot.

6          So if there is correspondence going back and forth

7    that is deleted prior to that backup tape, it is gone forever.

8    One of the points of the spoliation motion, Your Honor, is

9    this:  that the Debtors were under an obligation to implement

10   a "litigation hold" to prevent that exact thing from

11   happening, where I send e-mails to you and then delete them

12   because I had no idea that they may be relevant to somebody

13   that may be looking to them in the future.

14         The Debtors were under an obligation to issue a

15   "litigation hold," as specified by the Zubulake case to say,

16   "Don't destroy those e-mails.  Don't destroy documents that

17   may be on shared drives in electronic form.  Don't do anything

18   that would destroy or cause spoliation of evidence relevant to

19   this case."

20         So while there is a lot of mention made of backup

21   tapes, we have to really take it for what its face value is,

22   and that is simply a snapshot in time.  The Debtors were

23   obligated, it is Parus' position, in July of 2001 to implement

24   a "litigation hold" with respect to hard copy documents,

25   electronic information, e-mails, electronic documents.  Yet we

1    have testimony from Donald Ramsay, a Stinson lawyer, who is

2    also counsel to the Debtors, who said that a notice to

3    employees about a "litigation hold" didn't occur until 2004.

4    The fall of 2004 and, in fact, Parus filed its proofs of claim

5    in 2003.  Why was there no "litigation hold"?

6         So that is our position, Judge, as to what the Debtors

7    should have done.

8         Getting back to the issue of why this Rule 30(b)(6)

9    motion is inappropriate at this time, as I mentioned

10    Mr. Ramsay stated that the initial effort or the initial

11    e-mail regarding documents didn't come until "early fall, late

12    fall of 2004."

13         Furthermore, one other position -- and this is an

14    answer in response to your question, Your Honor -- the

15    spoliation motion asserts that the Debtors did not preserve

16    records of Intermedia after July 1, 2001, as required by the

17    Debtors' own document retention policy, its own written

18    document retention policy.  So any discovery about how Parus

19    stored documents or how EffecNet stored documents doesn't help

20    the Debtors show why they failed to abide by their own written

21    document retention policy.  Let me give you an example.

22         The Debtors failed to comply with their own written

23    document retention policy when they failed to preserve an

24    electronic document for James Renforth, and just a little

25    background for the Court.  James Renforth is a key employee of

1    Intermedia, who is the point person between Intermedia as well

2    as Parus Holdings with respect to the contact in dispute.

3    MCI's document retention policy says that information of a

4    departing or terminated employee must be retained three years

5    after the employee departed or is terminated.  As in the case

6    of James Renforth, his employment with Intermedia ended on

7    July 27, 2001.

8            The Debtors were, therefore, if we do the math, under

9    an obligation to preserve Renforth's electronic documents

10   until July 27, 2004 by virtue of their own retention policy.

11   This is actually well beyond 2003 when Parus filed its own

12   proofs of claim, and the same holds true for other individuals

13   at Intermedia.  As a result, the question is:  well, where is

14   it?  We have not gotten any of those records.  They haven't

15   been produced.  When Mr. Ramsay, the Stinson lawyer, who was

16   deposed on this very issue, was asked, "What did you find

17   regarding James Renforth, when you undertook such extensive

18   discovery searches?"  All they could find, Judge, was his

19   personnel file despite the fact they were obligated to keep

20   his information for three years.  More importantly, MCI's

21   document retention policy says that all information needs to

22   be stored in a readily retrievable format:  "Also the program

23   is designed to ensure that in the event that legal or

24   financial problems do occur, the organization will have in a

25   readily retrievable form the information it needs to defend

1    itself."

2         We have not seen anything of the like produced in this

3    case, and so, therefore, a Rule 30(b)(6) deposition of Parus

4    is not going to explain to the Court and is not going to

5    explain to anyone why on earth the Debtors failed to comply

6    with their own document retention policies.

7         Judge, another argument is that nothing could be

8    discovered pursuant to Parus' Rule 30(b)(6) deposition that

9    would relieve the Debtors of their duty to preserve evidence.

10   The Debtors, for example, seem to suggest that they are

11   somehow relieved of their discovery obligations so as long as

12   they can prove that Parus did or did not do all of the things

13   that the Debtors should have done.  Judge, the only way Parus'

14   own preservation practices could ever be relevant to the

15   Debtors own obligations to preserve relevant documents is if

16   Parus' conduct could absolve the Debtors from their spoliation

17   of evidence.  Obviously, this isn't the case nor is it the

18   law.

19        The second point I raise for your consideration, Your

20   Honor, is that unlike the Debtors, Parus has never stated that

21   it cannot produce documents because they are inaccessible or

22   unavailable.  The Debtors have failed to provide any instance

23   in all the reams of briefing that Parus destroyed evidence at

24   a time it should have implemented a "litigation hold" and

25   compare this with the litany of information that we have

A 04432

1    tendered to the Court.  That they failed to comply with their

2    own written document retention policies with respect to

3    Renforth, that they don't have anyone who can tell you what

4    indices to 10,000 boxes of documents means.  When deposed

5    Mr. Ramsay was asked, "Do you know, is there anybody who can

6    tell us what these entries mean on these indices to 10,000

7    boxes that you say that you are going to produce?"  And the

8    answer was unequivocally, "No.  That is why we gave the list

9    to Parus.  Maybe they could figure out what it meant."  Well,

10   how on earth can Parus figure out what the Debtors' indices

11   mean?

12          In fact, at last month's hearing the Court agreed with

13   Parus' position.  The Court said, "From what I hear from Parus

14   Holdings -- and at the moment it seems to be convincing --

15   that you have jumped over the step, and the step being they

16   are not able to produce the documents.  If they are able to

17   produce all of the documents that you are seeking that

18   existed, why then would it be relevant to what steps they

19   would have taken in terms of decommissioning computers, et

20   cetera?"

21          Judge, Ms. Murdock's statement on the record is

22   evidence of the very fishing nature of the Debtors' request.

23   Well, that is all we are asking for -- is the deposition to

24   see, if, in fact, all the servers maintained by Parus

25   Holdings.  Judge, there are a myriad of key differences

1    between Parus and the Debtors at this point in the litigation.

2         First, the Debtors cannot point to any information

3    that has been destroyed by Parus.  This is step one.  Second,

4    Parus has evidence that relevant documents are missing, both

5    through sworn testimony through Ramsay and Renforth.  In fact,

6    Parus has produced to the Debtors e-mail from Renforth that

7    the Debtors have never produced back to Parus.  Why is that?

8    Parus, unlike the Debtors, implemented a "litigation hold" and

9    preserved documents in a timely fashion.

10        As I mentioned before, Judge, the backup tapes, we

11   shouldn't get sidetracked by that, because simply they are

12   just a snapshot in time.

13        Now, another reason that Ms. Murdock will address

14   today is that the Rule 30(b)(6) deposition is necessary for

15   cost-shifting, and I would like to address that now.

16        First of all, it is not necessary for cost-shifting.

17   The Debtors misconstrue and misrepresent the standard for

18   cost-shifting under the Zubulake I decision.  Parus' document

19   retention policies are completely irrelevant as to whether the

20   cost of the Debtors' own document production should be shifted

21   to Parus.  Nowhere in the seven factor test set forth by

22   Zubulake I did the Court require evidence of the document

23   retention policies of a third party for the purpose of

24   determining whether another party's cost-shifting request was

25   appropriate.

Proceedings                                    15

1          Now, the Debtors allege that there is an industry

2     standard for cost-shifting.  This argument fails as a matter

3     of law for a couple of reasons, Your Honor.  The first is, I

4     have not seen a case that says there is the industry standard,

5     and that the Debtors are supposed to be judged by an industry

6     standard.  Clearly it is not in the hallmark Zubulake case.

7     Second, Parus and the Debtors were not in the same industry.

8          Now, Ms. Murdock says "close enough," but why are we

9     to take Ms. Murdock's position that they are close enough or

10    her own opinion?  Maybe the Debtors need to hire an expert to

11    determine what industry standards are.  We shouldn't base it

12    on the Debtors' perception of what an industry is.  I raised

13    this in the briefing, Judge.  Michael Jordan had a contract

14    with MCI, but he certainly wasn't in the same industry as the

15    Debtors.  Simply because Parus has a contract with the Debtors

16    does not mean they are in the same industry.

17         For example, Intermedia was acquired by the Debtors

18    for approximately $5.8 billion.  This is according to

19    WorldCom's 10K filed on March 13, 2002.  It described their

20    services, and they say we are the second largest carrier of

21    long distance telecommunication services in the United States.

22    "Our services include basic long distance, telephone service,

23    dial around, collect calling, operator assistance, and calling

24    card services."  Conversely, Parus is a small, privately held

25    company who acted as an integrator and a provider of

1    unidentified communications services.  For example, "Find me

2    Follow me" technology.

3          Third, even if the Debtors could unilaterally impose

4    this industry standard on cost-shifting, which is not grounded

5    in fact nor is it grounded in law, then they should be

6    required to retain an expert who can say what the industry

7    standards are.

8          Now, Judge, I want to point out to the Court -- and I

9    think this is a very important fact -- the Debtors say that

10   Parus has taken discovery on the issue of the Debtors'

11   document retention policies, and so the Debtors likewise

12   should be able to look into that same issue.  Here is where

13   that reasoning goes awry.  The reason this Court ordered the

14   depositions of the five IT personnel of the Debtors, was

15   because Parus had informally requested cost-shifting, and the

16   Court felt it was necessary for Parus to take those

17   depositions in order to defend itself against a possible

18   cost-shifting motion.  Here, Your Honor, Parus has made no

19   such cost-shifting request.  We have not said the onus should

20   be on the Debtors to pay for our document production.

21   Therefore, there is no relevance here as to how Parus

22   maintained its records.

23          Also the Debtors say that Rule 26 allows them to get

24   this discovery, but what the Debtors failed to state is that

25   the parties seeking discovery must make a prima facie showing

1  that the discovery sought is more than merely a fishing

2  expedition.  This is, according to Evans v. Calise, 1994 WL

3  185696.  Indeed, courts routinely decline to authorize fishing

4  expeditions such as this.

5      Now, the Debtors say, "Well, this is a new damage

6  theory.  We are entitled to learn about the basis for the

7  damages."  I want to point out to the Court that the Debtors

8  just served discovery on Parus regarding damages calculations

9  three weeks ago.  So for them to say there has been no

10  document production regarding damages, "Well, give us a chance

11  to respond to your document production, and we will tender

12  whatever information we have that is relevant, subject to all

13  applicable privileges."

14      I would also like to point out, if you look to the

15  rider, Your Honor, of the 30(b)(6) deposition notice, nowhere

16  is there any category for damages or how do you calculate your

17  damages or what is the basis for anticipatory repudiation?

18  Nothing along those lines.  The rider to the Rule 30(b)(6),

19  all it deals with is document retention policies and storage

20  issues, which we have said is not at issue at this point.  If

21  they want discovery regarding damages, let them tender that

22  discovery, but it is not going to come regarding a Rule

23  30(b)(6) deposition regarding Parus' document production.

24      Your Honor, I would finally like to point out, and

25  just as a point of equity, Parus served a Rule 30(b)(6)

A 04437

1   deposition on November 15, 2006, almost four months ago, on

2   the Debtors, regarding their policies of document retention,

3   and this was also under the auspices of the Court saying you

4   need something to defend against a cost-shifting motion.

5        The Debtors have refused to this day to produce their

6   Rule 30(b)(6).  We tried to work it out with them.  We said,

7   "Here, we will give you a written document request.  Rather

8   than tendering a Rule 30(b)(6) witness, go ahead and tell us

9   about your "litigation hold."  Go ahead and respond.  If we

10  deem them inappropriate, we would like to proceed."  They gave

11  us insufficient responses, we asked them to proceed, and they

12  still have refused.  But yet on 14 days' notice, they

13  complained that they have not had a Rule 30(b)(6) deposition

14  of Parus.

15       Judge, if you come before the Court, he who seeks

16  equity must do equity, and we don't believe that is the case

17  here.

18       JUDGE GONZALEZ:  All right.

19       WorldCom, what is the status of the current request

20  for the 30(b)(6) from your point of view as to Parus' request?

21       MS. MURDOCK:  Parus' Rule 30(b)(6) notice on the

22  Debtors?

23       JUDGE GONZALEZ:  Yes.  I am sorry.  I was thinking a

24  little ahead of myself.  What is the status of that?

25       MS. MURDOCK:  Your Honor, the Debtors provided a

1    25-page response to Parus Holdings' "litigation hold"

2    questions, and Parus is the one that proposed doing these

3    questions in written form, rather than deposition, based on

4    our objection that the topic identified in Parus' Rule

5    30(b)(6) notice on its face sought attorney/client privileged

6    information.

7            Now, Ms. Murch has advised that the Debtors'

8    "litigation hold" responses are insufficient, but Parus will

9    not tell Debtors why they are allegedly insufficient.  What

10   the Debtors have proposed is that Parus advise the Debtors

11   what is insufficient in the "litigation hold" responses, so

12   that the Debtors can supplement those responses, just as we

13   typically would in the meet and confer process.  In terms of

14   equity, it is very unfair for Parus to propose that we proceed

15   on written "litigation hold" questions, and then unilaterally

16   say that the Debtors' responses are insufficient, but then

17   refuse to identify the manner in which those were

18   insufficient.

19           So we have simply invited Parus, and, in fact,

20   Ms. Murch has told me on several occasions that some letter

21   will be forthcoming identifying the alleged deficiencies in

22   the Debtors' "litigation hold" responses.  The Debtors should

23   be given the opportunity to correct that, rather than Parus

24   just uniformly taking off the table the proposal that we do

25   those in written form.  So we are really talking about apples

1    and oranges here, Judge.  If Parus will provide us a list of

2    the issues that they have with our "litigation hold"

3    responses, we can consider that and supplement it.  Only until

4    that process is finished, would it be appropriate for Parus to

5    then proceed with depositions of in-house litigation

6    counsel -- that is who they noticed up -- in-house litigation

7    counsel for WorldCom on topics that are clearly, in the

8    30(b)(6) notice, privileged on their face.

9            JUDGE GONZALEZ:  All right.  Go ahead and respond to

10   the other arguments made.

11           MS. MURDOCK:  Well Your Honor, obviously we are not

12   here to argue the spoliation motion.  Ms. Murch has spent

13   quite a bit of time going through Parus' alleged allegations

14   with respect to spoliation, but just a couple of points:

15   Ms. Murch is trying to make some point that WorldCom hasn't

16   produced e-mails that Parus has produced.  But what Ms. Murch

17   has failed to remind the Court is that we are in the middle of

18   the sampling process.  Parus selected tapes to be sampled for

19   cost-shifting analysis.  Those tapes were sampled.  There are

20   still over one hundred backup tapes that have to be restored

21   and searched in this case.  It is premature for Parus to be

22   claiming spoliation, when the backup tapes have not yet been

23   searched.

24           Now, the Debtors have asked permission to proceed with

25   the filing of a cost-shifting motion.  Parus is taking the

1   position that you can't do cost-shifting until spoliation is

2   determined, but that is really putting the cart before the

3   horse.  In the Zubulake cases on which Parus relies, the judge

4   was very clear that before you can get to the question of

5   spoliation, cost-shifting has to be determined, backup tapes

6   have to be restored, and the data searched, because until that

7   time there is no way to tell whether there are any e-mails

8   missing.  That is very significant.

9          For Parus to be accusing us of not producing e-mails,

10  when they know that there are over one hundred backup tapes

11  that are waiting to be searched and reviewed for responsive

12  documents, is really egregious.

13         Now, with respect to Rule 26, we are not going on a

14  fishing expedition.  The Debtors are trying to get discovery

15  that they are expressly entitled to under Rule 26, discovery

16  about Parus' documents and how they maintain those documents.

17  There is no requirement in Rule 26 that we prove that there is

18  some deficiency in Parus' document responses.  There is no

19  requirement that we prove how we are going to use that

20  information in order to take the discovery.  Rule 26

21  specifically provides that we can take discovery about how

22  Parus maintains their document responses.

23         This notion that the Debtors just served discovery

24  three weeks ago on Parus' damages, and that we need to wait,

25  is absurd, Your Honor.  There has been damage discovery

Proceedings                                              22

1    pending for over a year.  The 26(a)(1) disclosures were done.

2    But what we have now in response to this spoliation motion is

3    an allegation that on breach of contract alone they want $50

4    million to $80 million.  Every other time that they have

5    mentioned their breach of contract damages in this case, Your

6    Honor, it has been based on the terms of the contract.

7        Now, in their spoliation motion for the first time

8    they have added $50 million to $80 million.  That did prompt

9    an initial document request.  It absolutely did.  But that

10   doesn't mean that we are not entitled to do the discovery that

11   is expressly provided for in Rule 26(b)(1).  There is no

12   requirement that the Debtors make some showing that Parus has

13   failed to produce documents, although we submit that they

14   have, in order to take that discovery.  It is expressly

15   provided for in the rule.  We are just simply trying to take a

16   deposition that is authorized under the rules themselves.

17       JUDGE GONZALEZ:  All right.  Thank you.

18       I will ask Parus Holdings this question first, and

19   then I will hear from the Debtors.  I think at this point one

20   of my concerns is that I haven't really paid enough attention

21   to this litigation to put in context many of the arguments

22   that are made before me, and I am going to have to take some

23   time to re-educate myself with respect to the issues, and then

24   I think it would be easier for me to rule on this current

25   matter.

1        With that said, my recollection is that in terms of

2   discovery, the battle from the Debtors' standpoint is who is

3   going to pay for the search, et cetera, and the production

4   from the backup tapes, and that prompted then the

5   cost-shifting motion which, in turn, either precipitated the

6   spoliation argument or that was there in the first place, I am

7   not sure.  Has that motion been scheduled?

8        MS. MURCH:  No, Your Honor.  The Debtors have not made

9   any cost-shifting motion.  They made an informal request, but

10  that was never scheduled and nothing was ever made of it.

11        JUDGE GONZALEZ:  So we don't actually have the

12  cost-shifting motion filed; is that right?

13        MS. MURDOCK:  No.  Your Honor, we would like

14  permission to file it, but Parus insisted on taking that

15  discovery first.

16        JUDGE GONZALEZ:  All right.  I think what I am going

17  to have to do is:  I will not be present here in the

18  courthouse for a couple of weeks, but during that time I will

19  focus on re-educating myself on the various issues, and then I

20  will have a better understanding of how long it will take to

21  make a decision with respect to what is before me today.

22        Now, coming back, though, my recollection is there was

23  something concerning Parus Holdings that was before me prior

24  to this; is that correct?

25        MS. MURCH:  Yes, Judge.  That is Parus' spoliation

A 04443

Proceedings                                    24

1    motion.  Let me just give you a little bit of a procedural

2    background.  What happened was, we filed this spoliation

3    motion and we teed it up for hearing.  The Debtors asked for

4    an extension, which we granted.  Then the Debtors said, "Well,

5    we need a Rule 30(b)(6) in order to respond to the spoliation

6    motion," to which we said, "No.  You really don't."  They

7    said, "Well, we are not going to decide," and the Court then

8    scheduled this hearing to determine whether this would be

9    relevant to their defense of the spoliation.

10           JUDGE GONZALEZ:  Aside from the spoliation, is there

11   anything pending before the Court with respect to Parus

12   Holdings?

13           MS. MURCH:  That is correct, Your Honor.

14           JUDGE GONZALEZ:  I am sorry.  I wasn't clear.  Is

15   there anything other than the spoliation motion and what is

16   before me today pending before the Court?

17           MS. MURCH:  Yes, Your Honor.  The Debtors filed a

18   summary judgment motion.

19           JUDGE GONZALEZ:  Now, that motion was filed and argued

20   some time ago?

21           MS. MURDOCK:  Right.  It was fully submitted in

22   January of 2006.

23           JUDGE GONZALEZ:  That is what I thought.  That is what

24   we have turned to.  I don't know if that was a partial or

25   complete summary judgment?

**A 04444**

1           MS. MURDOCK:  Complete, Your Honor.

2           JUDGE GONZALEZ:  So, obviously, if I rule in favor of

3      the Debtors, the rest of this -- unless that ruling is

4      reversed -- becomes moot?

5           MS. MURDOCK:  Yes, Your Honor.

6           JUDGE GONZALEZ:  If I deny summary judgment, then all

7      of this then becomes very relevant.

8           I will schedule something I think the first week in

9      April.  Do either one of you have any conflict with April 3rd?

10          MS. MURCH:  No, Your Honor.  That is perfectly fine.

11          MS. MURDOCK:  That is fine.

12          JUDGE GONZALEZ:  I will set it up for April 3rd at

13     10:00.  The time may be adjusted and we will know by April 1st

14     or April 2nd as to whether the ruling will go forward.  All

15     right.  Thank you.

16          There is another matter that is on.

17          MS. MURCH:  Your Honor, may I just interpose, prior to

18     the Court's ruling on the summary judgment motion, Parus had

19     filed a motion requesting that the Court stay its ruling on

20     the summary judgment motion in order to consider the

21     spoliation motion, and the reason is, we felt that the

22     spoliation motion would have some bearing on the Debtors'

23     summary judgment motion.  That being, if the Court, for

24     example, felt that evidence was destroyed, there would be a

25     possible adverse inference or some other step the Court has

Proceedings                                    26

1   within its powers to take and, obviously, the Court can

2   determine for itself if it feels that spoliation would be

3   relevant to its summary judgment ruling.  That was a request.

4   We had filed a motion back, I believe, in October to ask the

5   Court to consider spoliation when determining its summary

6   judgment ruling.

7          MS. MURDOCK:  Your Honor, that motion was withdrawn.

8   There is no motion pending on that.

9          MS. MURCH:  Your Honor, we withdrew, because the Court

10  said, "Well, go ahead and get it on file before the summary

11  judgment ruling."  So that is why it was withdrawn and that is

12  what we did pursuant to the Court's directive.

13         JUDGE GONZALEZ:  All right.  I remember that.  I

14  understand why.  There was a concern by Parus Holdings that I

15  would rule on the summary judgment motion before my ruling on

16  the spoliation motion, and I said don't worry I wasn't going

17  to rule on it in the near term.  I will factor all of that in.

18  I do remember that.

19         Now, with respect to the Debtors' motion to apply Rule

20  7068 (offer of judgment) to proceedings on claims, are you

21  here to proceed with that as well?

22         MS. MURDOCK:  Yes, Your Honor.

23         JUDGE GONZALEZ:  All right.  Go ahead.

24         MS. MURDOCK:  Your Honor, the Debtors have moved to

25  apply Rule 7068 to this case so that they can make an offer of

1    judgment to Parus Holdings, and the offer of judgment will be

2    based on the terms of the contract that forms the basis of

3    Parus' claims here.  As reflected in the Debtors' motion for

4    summary judgment which was submitted last January, the Debtors

5    submit that the contract at issue (a contract that the parties

6    refer to as the "Unidentified Communications Contract" or the

7    "UC Contract") controls here; that it precludes Parus' court

8    claims in this case by its very terms.

9           Under the express terms of the contract, Parus may

10   only proceed with a breach of contract claim in this action,

11   and also under the terms of the UC Contract, as reflected in

12   our summary judgment briefing, the amount of damages that

13   Parus can recover is limited based on the express terms of the

14   contract.

15          Now, Parus has refused to agree to a stay of discovery

16   in case while Your Honor considers whether the terms of the UC

17   Contract control the amount of damages in this case.  Instead,

18   Parus has served hundreds of written discovery requests and it

19   has taken depositions, and all of that has primarily been

20   geared to the discovery of the discovery process itself.

21   Information that Debtors submit is completely irrelevant, if,

22   as our summary judgment motion shows, only the terms of the

23   contract at issue will control all of the parties' rights and

24   liabilities in this case.

25          So this really presents a classic scenario where an

1    offer of judgment is appropriate.  Debtors can offer a

2    judgment based on their position, that the UC Contract limits

3    Parus to a breach of contract claim and limits the damages it

4    can recover under that contract, and, if Parus disagrees that

5    the contract controls, then it can simply reject the offer of

6    judgment or let the offer of judgment lapse without accepting

7    it.  If at the end of the case, Parus recovers more than what

8    the Debtors offer, then the offer of judgment will have been

9    of no consequence.  If Debtors are correct, and Parus is

10   limited to recovery under the terms of the contract, then the

11   Debtors will have to pay the costs that Debtors incur after

12   the offer of judgment is made.

13          So the Debtors believe that the offer of judgment will

14   advance this case by requiring Parus to focus on and

15   reevaluate its current position that the express terms of this

16   contract are of no consequence here.

17          Now, Parus opposes the application of Rule 7068 on the

18   basis that somehow it will relieve Debtors of discovery

19   obligations.  Obviously, Rule 7068 has no impact whatsoever on

20   Debtors' discovery obligations.  Debtors don't claim that it

21   does.  It won't affect the discovery obligations of either of

22   the parties.

23          Parus also claims that it needs more discovery in

24   order to evaluate the offer of judgment.  As I mentioned, Your

25   Honor, the Debtors' offer of judgment is going to be based on

1    the express terms of this contract.  Parus has the contract.

2    It has obviously evaluated what can be recovered under the

3    contract.  In fact, under the express terms of Rule 7068 and

4    in the case law that is set forth in our reply brief, an offer

5    of judgment can be made at any time even before discovery is

6    undertaken, as long as it was more than 10 days before the

7    trial of a matter.

8         So there is no prohibition against the Debtors making

9    an offer of judgment prior to discovery going any further in

10   this case.  In fact, we believe it would be appropriate, given

11   the type of discovery and the scope of discovery and the

12   Debtors' position, that this contract in the end is going to

13   control.

14        Now, Rule 7068 automatically applies in adversary

15   proceedings.  We would submit that this case really has

16   proceeded much like an adversary proceeding, and we believe

17   that the application of the offer of judgment rule here is

18   appropriate under the circumstances.

19        JUDGE GONZALEZ:  All right.  Thank you.

20        MS. MURCH:  Your Honor, Jill Murch on behalf of Parus

21   Holdings.  I would tender five responses to the Debtors'

22   motion to have Rule 7068 apply.  I pick up on Ms. Murdock's

23   last statement, that Rule 7068 applies to adversary actions

24   and that this proceeding is "much like an adversary action."

25   But what I point out to the Court is that Rule 7068 applies

1    only to adversary actions, not contested matters.  So their

2    motion is procedurally improper.  Rule 9014, which does apply

3    to contested matters, specifies which adversary rules apply to

4    contested claims litigation, and there is a litany of rules

5    provided -- 7009, 7017, 7025.  The list goes on and on, but

6    yet, Judge, conspicuously absent from Rule 9014 is an

7    incorporation by reference of Rule 7068 to contested claim

8    litigation.   Basically, the Debtors are asking you to go

9    outside of the rule and apply this -- a rule that normally

10   applies to adversary actions -- to contested claims

11   litigation.

12           More importantly, the Debtors have not provided this

13   Court nor have they provided Parus a single case to establish

14   or to show where a bankruptcy court did, in fact, apply Rule

15   7068 to contested claims litigation.  It is procedurally

16   improper, Your Honor.

17           I would also raise the second argument, that this

18   motion is really duplicative of a summary judgment motion

19   pending before the Court and this is why.  The Debtors already

20   contend in their summary judgment motion that their damages

21   are limited; and, again, in their reply in support of the Rule

22   7068 motion, they say "Debtors will base their offer of

23   judgment upon the operation of these contractual terms."  Now,

24   either the court is going to agree with the Debtors or it is

25   going to agree with Parus on the motion for summary judgment,

1    and the Rule 7068 motion adds nothing to this litigation.

2           I would posit, Your Honor, that, indeed, the Debtors'

3    motion is nothing more than a thinly disguised cost-shifting

4    motion.  Realizing that the Debtors have no basis for

5    cost-shifting, they made informal requests months and months

6    ago, but have not followed up on it.  They try now to get de

7    facto cost-shifting through Rule 7068.

8           The Debtors say on page 4 of their reply brief, "Parus

9    would only have to pay for the cost of discovery if it

10   over-estimated its anticipated award."  Your Honor, Rule 7068

11   shouldn't be used as thinly veiled attempt to obtain

12   cost-shifting.  If the Debtors want cost-shifting, let them

13   satisfy their burden and demonstrate that cost-shifting is

14   appropriate under the seven factor test of the Zubulake case.

15   The Debtors basically want the benefit of cost-shifting

16   through Rule 7068, without the concomitant burden of putting

17   on a prima facie case that cost-shifting is appropriate.

18          Your Honor, the fourth argument I tender to the Court

19   is that the Debtors should not be allowed to use Rule 7068 as

20   both a sword and a shield.  As we stated along and along,

21   again and again, the Debtors have failed to produce the very

22   documents necessary to evaluate the damages claims, and I

23   mention the litany of documents by Mr. Renforth, including

24   hard copies of minutes, projections, Microsoft Word documents,

25   Microsoft Excel documents, and Microsoft project documents.

1    None of these hard copy documents, which are separate and

2    aside from the electronic dispute, have been produced.  Where

3    are they?  Where are the hard copy documents?  They are not

4    sitting in an electronic vacuum.  Where are they?

5          Yet the Debtors now ask the Court to direct Parus,

6    outside of the rule, to evaluate its damages claims without

7    the Debtors providing these very documents to Parus.  Doing so

8    would allow the Debtors to use Rule 7068 as both a sword and a

9    shield, and the Court should not countenance such a practice.

10         Finally, the fifth argument, Your Honor, is even if

11   Rule 7068 could have been procedurally proper, it is, indeed,

12   at this point premature.  Any assessment of Parus' damages

13   claims hinges on (1) this Court's ruling as to summary

14   judgment; and (2) more importantly, the Court's ruling as to

15   Parus' spoliation motion.  For example, if the Court grants

16   Parus an adverse inference based on the Debtors' spoliation,

17   this will factor prominently into Parus' damage calculations.

18         Therefore, Your Honor, we ask that the Court decline

19   the Debtors' invitation to apply Rule 7068.

20         MS. MURDOCK:  Your Honor, I have just two points.

21   Your Honor absolutely has discretion to apply Rule 7068 here.

22   There is no question as to the Court's discretion to apply the

23   rule.  The offer of judgment in essence is a type of

24   cost-shifting.  The Debtors acknowledge that judgment will be

25   entered in this case on the breach of contract claim.  We

1    acknowledge that.  We acknowledge that the terms of contract

2    provide that some damages will be paid.  An offer of judgment

3    is particularly appropriate where the parties disagree on the

4    amount of damages, and, if Parus wants to proceed with what

5    has been extremely costly litigation and lots of discovery on

6    issues that we believe in the end are going to be irrelevant

7    to the Court's analysis of the terms of the contract, that is

8    the classic case for allowing Debtors to make an offer of

9    judgment.

10        JUDGE GONZALEZ:  All right.  I will let you know where

11   I am, hopefully, on April 4th.

12        Thank you.

13        MS. MURDOCK:  Just to confirm, I take it that the

14   Debtors' opposition to this spoliation motion is held in

15   abeyance until further order of the Court?

16        JUDGE GONZALEZ:  Yes.

17        MS. MURDOCK:  Thank you.

18        JUDGE GONZALEZ:  All right.  I am going to terminate

19   the phone call.

20        Have a nice day.

21        (Time noted:  10:57 a.m.)

22

23

24

25

```
 1                C E R T I F I C A T E

 2   STATE OF NEW YORK     )
                                  : SS:
 3   COUNTY OF NEW YORK    )

 4

 5            I, DEBORAH HUNTSMAN, a Shorthand Reporter and

 6   Notary Public within and for the State of New York, do hereby

 7   certify:

 8            That the within is a true and accurate

 9   transcript from the official electronic sound recording of the

10   proceedings held on the 12th day of March, 2007.

11            I further certify that I am not related by blood

12   or marriage to any of the parties and that I am not interested

13   in the outcome of this matter.

14            IN WITNESS WHEREOF, I have hereunto set my hand

15   this 16th day of March, 2007.

16

17

18                        DEBORAH HUNTSMAN
                          _____
19                        DEBORAH HUNTSMAN

20   PROOFREAD BY HALLIE CANTOR

21   ROUGH DRAFTS 1 AND 2 DELIVERED VIA E-MAIL 3/14/2007
     PRELIMINARY TRANSCRIPT DELIVERED VIA E-MAIL 3/15/2007
22

23

24

25
```

**$**

**$50** [4] - 3:18, 5:13, 22:3, 22:8
**$80** [4] - 3:18, 5:13, 22:4, 22:8

**0**

**02-13533(AJG** [1] - 1:2

**1**

**1** [3] - 10:16, 32:13, 34:21
**10** [3] - 4:25, 8:24, 29:6
**10,000** [2] - 13:4, 13:6
**10:00** [3] - 1:7, 1:9, 25:13
**10:09** [1] - 1:4
**10:57** [1] - 33:21
**10K** [1] - 15:19
**11173** [1] - 1:10
**11242** [1] - 1:9
**12** [1] - 1:4
**1201** [1] - 1:16
**12th** [1] - 34:10
**13** [1] - 15:19
**14** [1] - 18:12
**14th** [1] - 3:25
**15** [2] - 8:24, 18:1
**16th** [1] - 34:15
**185696** [1] - 17:3
**1994** [1] - 17:2
**1st** [1] - 25:13

**2**

**2** [3] - 1:8, 32:14, 34:21
**2001** [3] - 9:23, 10:16, 11:7
**2002** [1] - 15:19
**2003** [2] - 10:5, 11:11
**2004** [4] - 10:3, 10:4, 10:12, 11:10
**2006** [2] - 18:1, 24:22
**2007** [3] - 1:4, 34:10, 34:15
**212** [1] - 1:23
**24** [1] - 1:10
**25-page** [1] - 19:1
**26** [5] - 16:23, 21:13,

21:15, 21:17, 21:20
**26(a)(1** [1] - 22:1
**26(b)(1** [4] - 3:2, 4:8, 5:18, 6:19
**26(b)(1)** [1] - 22:11
**27** [1] - 11:7, 11:10
**2800** [1] - 1:19
**2nd** [1] - 25:14

**3**

**3/14/2007** [1] - 34:21
**3/15/2007** [1] - 34:21
**30(b)(6** [23] - 1:7, 2:4, 2:12, 2:23, 3:7, 4:9, 7:2, 8:9, 10:8, 12:3, 12:8, 14:14, 17:15, 17:18, 17:23, 17:25, 18:8, 18:13, 18:20, 18:21, 19:5, 20:8, 24:5
**30(b)(6)** [1] - 18:6
**321** [1] - 1:19
**38,000** [1] - 6:11
**3rd** [2] - 25:9, 25:12

**4**

**4** [1] - 31:8
**4th** [1] - 33:11

**5**

**5.8** [1] - 15:18

**6**

**60610** [1] - 1:20
**608-9053** [1] - 1:23
**64106** [1] - 1:16

**7**

**7009** [1] - 30:5
**7017** [1] - 30:5
**7025** [1] - 30:5
**7068** [22] - 1:9, 26:20, 26:25, 28:17, 28:19, 29:3, 29:14, 29:22, 29:23, 29:25, 30:7, 30:15, 30:22, 31:1, 31:7, 31:10, 31:16, 31:19, 32:8, 32:11, 32:19, 32:21
**718** [1] - 1:23

**723-9898** [1] - 1:23
**774-2551** [1] - 1:23

**9**

**9014** [2] - 30:2, 30:6
**917** [1] - 1:23
**9291** [1] - 1:10
**9293)** [1] - 1:10

**A**

**a.m** [2] - 1:4, 33:21
**abeyance** [1] - 33:15
**abide** [1] - 10:20
**able** [4] - 5:2, 13:16, 16:12
**absent** [1] - 30:6
**absolutely** [2] - 22:9, 32:21
**absolve** [1] - 12:16
**absurd** [1] - 21:25
**accepting** [1] - 28:6
**according** [2] - 15:18, 17:2
**accurate** [1] - 34:8
**accusing** [1] - 21:9
**acknowledge** [3] - 32:24, 33:1
**acquired** [1] - 15:17
**acted** [1] - 15:25
**action** [3] - 6:23, 27:10, 29:24
**actions** [5] - 6:2, 6:24, 29:23, 30:1, 30:10
**added** [1] - 22:8
**address** [2] - 14:13, 14:15
**adds** [1] - 31:1
**adjusted** [1] - 25:13
**advance** [1] - 28:14
**adversary** [7] - 29:14, 29:16, 29:23, 29:24, 30:1, 30:3, 30:10
**adverse** [2] - 25:25, 32:16
**advise** [1] - 19:10
**advised** [1] - 19:7
**affect** [1] - 28:21
**ago** [5] - 17:9, 18:1, 21:24, 24:20, 31:6
**agree** [3] - 27:15, 30:24, 30:25
**agreed** [1] - 13:12
**ahead** [6] - 18:8, 18:9, 18:24, 20:9,

26:10, 26:23
**al** [1] - 1:3
**allegation** [1] - 22:3
**allegations** [1] - 20:13
**allege** [1] - 15:1
**alleged** [2] - 19:21, 20:13
**allegedly** [1] - 19:9
**ALLISON** [1] - 1:17
**Allison** [1] - 2:6
**allow** [1] - 32:8
**allowed** [1] - 31:19
**allowing** [1] - 33:8
**allows** [1] - 16:23
**almost** [1] - 18:1
**alone** [1] - 22:3
**amount** [4] - 3:22, 27:12, 27:17, 33:4
**analysis** [2] - 20:19, 33:7
**AND** [1] - 34:21
**answer** [2] - 10:14, 13:8
**anticipated** [1] - 31:10
**anticipatory** [1] - 17:17
**appear** [3] - 1:7, 2:4, 7:1
**apples** [1] - 19:25
**applicable** [1] - 17:13
**application** [2] - 28:17, 29:17
**applies** [4] - 29:14, 29:23, 29:25, 30:10
**apply** [11] - 1:9, 26:19, 26:25, 29:22, 30:2, 30:3, 30:9, 30:14, 32:19, 32:21, 32:22
**appropriate** [9] - 6:19, 14:25, 20:4, 28:1, 29:10, 29:18, 31:14, 31:17, 33:3
**April** [6] - 25:9, 25:12, 25:13, 25:14, 33:11
**argue** [1] - 20:12
**argued** [1] - 24:19
**argument** [6] - 12:7, 15:2, 23:6, 30:17, 31:18, 32:10
**arguments** [2] - 20:10, 22:21
**ARTHUR** [1] - 1:12
**aside** [1] - 32:2
**Aside** [1] - 24:10
**asserts** [1] - 10:15

**assessment** [1] - 32:12
**assistance** [1] - 15:23
**attempt** [1] - 31:11
**attention** [1] - 22:20
**attorney/client** [1] - 19:5
**Attorneys** [1] - 1:19
**auspices** [1] - 18:3
**authorize** [1] - 17:3
**authorized** [2] - 6:19, 22:16
**authorizes** [3] - 3:2, 4:8
**automatically** [1] - 29:14
**award** [1] - 31:10
**awry** [1] - 16:13

**B**

**background** [2] - 10:25, 24:2
**backup** [23] - 2:21, 4:3, 4:4, 4:5, 4:20, 5:3, 5:4, 5:23, 6:8, 8:15, 8:20, 9:1, 9:2, 9:5, 9:7, 9:20, 14:10, 20:20, 20:22, 21:5, 21:10, 23:4
**bankruptcy** [1] - 30:14
**BANKRUPTCY** [1] - 1:1
**Bankruptcy** [2] - 1:9, 1:13
**base** [2] - 15:11, 30:22
**based** [9] - 6:22, 7:19, 19:3, 22:6, 27:2, 27:13, 28:2, 28:25, 32:16
**basic** [1] - 15:22
**basis** [6] - 7:8, 17:6, 17:17, 27:2, 28:18, 31:4
**battle** [1] - 23:2
**bearing** [1] - 25:22
**becomes** [2] - 25:4, 25:7
**begin** [1] - 2:2
**behalf** [3] - 2:7, 7:7, 29:20
**benefit** [1] - 31:15
**better** [1] - 23:20
**between** [2] - 11:1, 14:1
**beyond** [1] - 11:11

**billion** [1] - 15:18
**bit** [2] - 20:13, 24:1
**blood** [1] - 34:11
**boxes** [2] - 13:4, 13:7
**breach** [7] - 3:19, 5:13, 22:3, 22:5, 27:10, 28:3, 32:25
**brief** [2] - 29:4, 31:8
**briefing** [3] - 12:23, 15:13, 27:12
**brought** [1] - 3:16
**burden** [2] - 31:13, 31:16
**BY** [3] - 1:17, 1:21, 34:20

**C**

**calculate** [1] - 17:16
**calculations** [2] - 17:8, 32:17
**Calise** [1] - 17:2
**cannot** [3] - 3:16, 12:21, 14:2
**CANTOR** [1] - 34:20
**card** [1] - 15:24
**carrier** [1] - 15:20
**carrying** [1] - 2:15
**cart** [1] - 21:2
**case** [31] - 3:20, 6:7, 6:20, 8:3, 8:23, 8:25, 9:15, 9:19, 11:5, 12:3, 12:17, 15:4, 15:6, 18:16, 20:21, 22:5, 26:25, 27:8, 27:16, 27:17, 27:24, 28:7, 28:14, 29:4, 29:10, 29:15, 30:13, 31:14, 31:17, 32:25, 33:8
**Case** [1] - 1:2
**cases** [2] - 7:12, 21:3
**category** [1] - 17:16
**certainly** [6] - 6:5, 6:7, 6:9, 6:12, 6:19, 15:14
**certify** [2] - 34:7, 34:11
**cetera** [2] - 13:20, 23:3
**chance** [1] - 17:10
**Chicago** [1] - 1:20
**circumstances** [1] - 29:18
**City** [1] - 1:16
**claim** [20] - 1:9, 2:20, 3:14, 3:15, 3:17, 3:19, 3:21, 3:24, 5:13, 7:14, 8:8, 9:2, 10:4, 11:12,

27:10, 28:3, 28:20, 30:7, 32:25
**Claimant** [1] - 1:7
**claiming** [2] - 4:18, 20:22
**claims** [15] - 2:22, 3:17, 5:7, 5:12, 5:19, 26:20, 27:3, 27:8, 28:23, 30:4, 30:10, 30:15, 31:22, 32:6, 32:13
**clarify** [1] - 8:20
**Clark** [1] - 1:19
**classic** [2] - 27:25, 33:8
**clear** [3] - 8:4, 21:4, 24:14
**Clearly** [1] - 15:6
**clearly** [1] - 20:7
**close** [3] - 6:5, 15:8, 15:9
**collect** [1] - 15:23
**coming** [1] - 23:22
**Communications** [1] - 27:6
**communications** [1] - 16:1
**company** [3] - 6:8, 6:10, 15:25
**compare** [1] - 12:25
**comparison** [1] - 7:19
**compel** [10] - 1:7, 2:3, 2:12, 4:1, 4:14, 4:17, 4:22, 6:21, 7:1, 7:9
**complained** [1] - 18:13
**complains** [1] - 6:3
**complete** [1] - 24:25
**Complete** [1] - 25:1
**completely** [2] - 14:19, 27:21
**comply** [3] - 10:22, 12:5, 13:1
**component** [3] - 4:21, 5:1, 5:10
**computers** [1] - 13:19
**concern** [1] - 26:14
**concerning** [2] - 6:1, 23:23
**concerns** [1] - 22:20
**concomitant** [1] - 31:16
**condition** [1] - 3:4
**conduct** [4] - 4:9, 5:3, 6:13, 12:16
**confer** [1] - 19:13
**conference** [1] - 4:1

**confirm** [1] - 33:13
**conflict** [1] - 25:9
**consequence** [2] - 28:9, 28:16
**consider** [3] - 20:3, 25:20, 26:5
**consideration** [1] - 12:19
**considers** [1] - 27:16
**conspicuously** [1] - 30:6
**constitutes** [1] - 2:25
**contact** [1] - 11:2
**contend** [1] - 30:20
**contested** [6] - 30:1, 30:3, 30:4, 30:7, 30:10, 30:15
**context** [1] - 22:21
**contract** [28] - 3:19, 3:21, 5:13, 5:15, 5:15, 15:15, 22:3, 22:5, 22:6, 27:2, 27:5, 27:9, 27:10, 27:14, 27:23, 28:3, 28:4, 28:5, 28:10, 28:16, 29:1, 29:3, 29:12, 32:25, 33:1, 33:7
**Contract** [5] - 27:6, 27:7, 27:11, 27:17, 28:2
**contractual** [1] - 30:23
**control** [4] - 8:5, 27:17, 27:23, 29:13
**controls** [1] - 27:7, 28:5
**Conversely** [1] - 15:24
**convincing** [1] - 13:14
**copies** [1] - 31:24
**copy** [3] - 9:24, 32:1, 32:3
**correct** [4] - 19:23, 23:24, 24:13, 28:9
**correspondence** [1] - 9:6
**cost** [32] - 2:24, 5:22, 5:24, 6:17, 14:15, 14:16, 14:18, 14:20, 14:24, 15:2, 16:4, 16:15, 16:18, 16:19, 18:4, 20:19, 20:25, 21:1, 21:5, 23:5, 23:9, 23:12, 31:3, 31:5, 31:7, 31:9, 31:12, 31:13, 31:15, 31:17, 32:24
**cost-shifting** [30] - 2:24, 5:22, 5:24, 6:17,

14:15, 14:16, 14:18, 14:24, 15:2, 16:4, 16:15, 16:18, 16:19, 18:4, 20:19, 20:25, 21:1, 21:5, 23:5, 23:9, 23:12, 31:3, 31:5, 31:7, 31:12, 31:13, 31:15, 31:17, 32:24
**costly** [1] - 33:5
**costs** [1] - 28:11
**Counsel** [1] - 1:15
**counsel** [3] - 10:2, 20:6, 20:7
**countenance** [1] - 32:9
**COUNTY** [1] - 34:3
**couple** [2] - 15:3, 20:14, 23:18
**COURT** [1] - 1:1
**court** [3] - 27:7, 30:14, 30:24
**Court** [38] - 1:23, 1:24, 2:6, 3:25, 4:17, 6:15, 7:13, 10:25, 12:4, 13:1, 13:12, 13:13, 14:22, 16:8, 16:13, 16:16, 17:7, 18:3, 18:15, 20:17, 24:7, 24:11, 24:16, 25:19, 25:23, 25:25, 26:1, 26:5, 26:9, 29:25, 30:13, 30:19, 31:18, 32:5, 32:9, 32:15, 32:18, 33:15
**Court's** [6] - 25:18, 26:12, 32:13, 32:14, 32:22, 33:7
**courthouse** [1] - 23:18
**courts** [1] - 17:3
**critical** [1] - 5:10
**culpable** [1] - 8:7
**current** [3] - 18:19, 22:24, 28:15
**custody** [1] - 3:3

**D**

**damage** [3] - 17:5, 21:25, 32:17
**damages** [22] - 2:17, 2:19, 3:19, 3:22, 5:12, 17:7, 17:8, 17:10, 17:16, 17:17, 17:21, 21:24, 22:5, 27:12, 27:17, 28:3, 30:20, 31:22, 32:6, 32:12, 33:2, 33:4
**data** [9] - 2:20, 3:1,

4:20, 5:6, 5:24, 6:9, 6:12, 8:22, 21:6
**date** [1] - 7:3
**days** [1] - 29:6
**days'** [1] - 18:12
**de** [1] - 31:6
**deals** [1] - 17:19
**DEBORAH** [4] - 1:23, 34:5, 34:18, 34:19
**Debtors** [124] - 1:4, 1:7, 1:9, 1:15, 2:3, 2:7, 2:11, 3:6, 3:8, 3:12, 3:13, 3:15, 3:22, 4:2, 4:4, 4:8, 4:11, 4:12, 4:16, 4:19, 4:24, 5:2, 5:7, 5:16, 5:23, 6:15, 6:23, 7:2, 7:11, 7:13, 7:16, 7:17, 7:21, 7:23, 8:1, 8:11, 8:17, 9:2, 9:9, 9:14, 9:22, 10:2, 10:6, 10:15, 10:20, 10:22, 11:8, 12:5, 12:9, 12:10, 12:13, 12:15, 12:16, 12:20, 12:22, 14:1, 14:2, 14:6, 14:7, 14:8, 14:17, 15:1, 15:5, 15:7, 15:10, 15:15, 15:17, 16:3, 16:9, 16:11, 16:14, 16:20, 16:23, 16:24, 17:5, 17:7, 18:2, 18:5, 18:22, 18:25, 19:9, 19:10, 19:12, 19:22, 20:24, 21:14, 21:23, 22:12, 22:19, 23:8, 24:3, 24:4, 24:17, 25:3, 26:24, 27:4, 27:21, 28:1, 28:8, 28:9, 28:11, 28:13, 28:18, 28:20, 29:8, 30:8, 30:12, 30:19, 30:22, 30:24, 31:4, 31:8, 31:12, 31:15, 31:19, 31:21, 32:5, 32:7, 32:8, 32:24, 33:8
**Debtors'** [30] - 2:18, 2:20, 2:22, 3:24, 4:14, 4:17, 6:2, 6:13, 8:14, 10:17, 13:10, 13:22, 14:20, 15:12, 16:10, 19:7, 19:16, 19:22, 23:2, 25:22, 26:19, 27:3, 28:20, 28:25, 29:12, 29:21, 31:2, 32:16, 32:19, 33:14
**decide** [1] - 24:7
**decision** [2] - 14:18, 23:21

decline [2] - 17:3, 32:18
decommissioning [1] - 13:19
deem [1] - 18:10
defend [4] - 5:2, 11:25, 16:17, 18:4
defense [4] - 2:19, 3:24, 8:8, 24:9
deficiencies [1] - 19:21
deficiency [1] - 21:18
delete [2] - 8:25, 9:11
deleted [1] - 9:7
DELIVERED [2] - 34:21, 34:21
demonstrate [1] - 31:13
denied [1] - 7:10
deny [1] - 25:6
departed [1] - 11:5
departing [1] - 11:4
deposed [2] - 11:16, 13:4
deposition [18] - 1:7, 2:5, 2:24, 3:6, 4:9, 7:2, 7:3, 8:9, 12:3, 12:8, 13:23, 14:14, 17:15, 17:23, 18:1, 18:13, 19:3, 22:16
depositions [4] - 16:14, 16:17, 20:5, 27:19
described [1] - 15:19
description [1] - 3:3
designed [1] - 11:23
despite [1] - 11:19
destroy [3] - 9:16, 9:18
destroyed [8] - 2:22, 5:8, 8:6, 8:7, 12:23, 14:3, 25:24
determine [7] - 5:7, 6:17, 7:14, 15:11, 24:8, 26:2
determined [2] - 21:2, 21:5
determining [2] - 14:24, 26:5
dial [1] - 15:23
differences [1] - 13:25
DIGITALLY [1] - 1:6
direct [1] - 32:5
directive [1] - 26:12
disagree [1] - 33:3
disagrees [1] - 28:4
disclosed [2] - 4:2,

4:3
disclosures [1] - 22:1
discover [1] - 3:23
discoverable [1] - 3:5
discovered [1] - 12:8
discovery [44] - 2:16, 3:2, 3:8, 3:13, 5:6, 5:16, 6:16, 6:18, 6:22, 7:25, 10:18, 11:18, 12:11, 16:10, 16:24, 16:25, 17:1, 17:8, 17:21, 17:22, 21:14, 21:15, 21:20, 21:21, 21:23, 21:25, 22:10, 22:14, 23:2, 23:15, 27:15, 27:18, 27:20, 28:18, 28:20, 28:21, 28:23, 29:5, 29:9, 29:11, 31:9, 33:5
discretion [2] - 32:21, 32:22
disguised [1] - 31:3
dispute [4] - 4:21, 4:24, 11:2, 32:2
distance [2] - 15:21, 15:22
DISTRICT [1] - 1:1
document [27] - 2:14, 7:19, 7:25, 8:9, 10:17, 10:18, 10:21, 10:23, 10:24, 11:3, 11:21, 12:6, 13:2, 14:18, 14:20, 14:22, 16:11, 16:20, 17:10, 17:11, 17:19, 17:23, 18:2, 18:7, 21:18, 21:22, 22:9
documents [42] - 2:16, 2:22, 3:4, 3:10, 3:14, 3:20, 3:23, 4:3, 4:6, 4:16, 4:17, 5:7, 5:14, 5:17, 5:20, 9:16, 9:24, 9:25, 10:11, 10:19, 11:9, 12:15, 12:21, 13:4, 13:16, 13:17, 14:4, 14:9, 21:12, 21:16, 22:13, 31:22, 31:23, 31:24, 31:25, 32:1, 32:3, 32:7
dollars [1] - 5:15
Donald [1] - 10:1
done [3] - 10:7, 12:13, 22:1
DRAFTS [1] - 34:21
drives [1] - 9:17
duplicative [1] - 30:18

during [1] - 23:18
duty [1] - 12:9

E

E-MAIL [1] - 34:21, 34:21
e-mail [2] - 2:13, 3:10, 10:11, 14:6
e-mails [8] - 8:24, 8:25, 9:11, 9:16, 9:25, 20:16, 21:7, 21:19
early [1] - 10:11
earn [1] - 5:15
earth [2] - 12:5, 13:10
easier [1] - 22:24
educate [1] - 22:23
educating [1] - 23:19
EffecNet [1] - 10:19
effort [1] - 10:10
egregious [1] - 21:12
either [5] - 8:17, 23:5, 25:9, 28:21, 30:24
Electronic [1] - 1:24
electronic [19] - 2:13, 2:20, 3:1, 4:20, 5:6, 5:24, 6:9, 6:12, 7:15, 7:17, 8:22, 9:17, 9:25, 10:24, 11:9, 32:2, 32:4, 34:9
elements [1] - 8:4
employee [3] - 10:25, 11:4, 11:5
employees [2] - 6:11, 10:3
employment [1] - 11:6
end [3] - 28:7, 29:12, 33:6
ended [1] - 11:6
ensure [1] - 11:23
entered [1] - 32:25
Entire [1] - 1:6
entitled [7] - 3:18, 3:22, 5:16, 6:23, 17:6, 21:15, 22:10
entries [1] - 13:6
equity [4] - 17:25, 18:16, 19:14
ESQ [2] - 1:17, 1:21
essence [1] - 32:23
establish [1] - 30:13
estimated [1] - 31:10
et [3] - 1:3, 13:19, 23:3
evaluate [3] - 28:24, 31:22, 32:6

evaluated [1] - 29:2
Evans [1] - 17:2
event [2] - 3:17, 11:23
evidence [14] - 5:10, 7:21, 7:22, 8:5, 8:7, 8:10, 9:18, 12:9, 12:17, 12:23, 13:22, 14:4, 14:22, 25:24
evidencing [1] - 3:21
exact [2] - 3:7, 9:10
exactly [1] - 3:6
example [9] - 4:18, 8:23, 10:21, 12:10, 15:17, 16:1, 25:24, 32:15
Excel [1] - 31:25
exist [3] - 2:16, 3:14, 5:11
existed [2] - 2:23, 5:8, 5:11, 5:20, 9:4, 13:18
existence [1] - 3:3
expectation [4] - 3:18, 3:21, 5:12, 5:15
expectations [2] - 5:19, 5:20
expedition [2] - 17:2, 21:14
expeditions [1] - 17:4
expert [2] - 15:10, 16:6
explain [2] - 12:4, 12:5
explaining [1] - 8:11
express [5] - 27:9, 27:13, 28:15, 29:1, 29:3
expressly [4] - 3:2, 21:15, 22:11, 22:14
extension [2] - 7:3, 24:4
extensive [1] - 11:17
extremely [1] - 33:5

F

face [4] - 8:4, 9:21, 19:5, 20:8
facie [2] - 16:25, 31:17
fact [10] - 10:4, 11:19, 13:12, 13:24, 14:5, 16:5, 16:9, 19:19, 29:3, 29:10, 30:14
facto [1] - 31:7
factor [5] - 6:1,

14:21, 26:17, 31:14, 32:17
failed [14] - 7:21, 7:25, 8:1, 8:11, 10:20, 10:22, 10:23, 12:5, 12:22, 13:1, 16:24, 20:17, 22:13, 31:21
fails [1] - 15:2
fall [3] - 10:4, 10:11, 10:12
fashion [1] - 14:9
favor [1] - 25:2
February [1] - 3:25
Federal [1] - 3:2
felt [3] - 16:16, 25:21, 25:24
fifth [1] - 32:10
figure [2] - 13:9, 13:10
file [4] - 7:3, 11:19, 23:14, 26:10
filed [12] - 1:8, 1:10, 4:23, 10:4, 11:11, 15:19, 23:12, 24:2, 24:17, 24:19, 25:19, 26:4
filing [1] - 20:25
FINAL [1] - 1:5
Finally [3] - 2:23, 5:22, 32:10
finally [1] - 17:24
financial [1] - 11:24
fine [2] - 25:10, 25:11
finished [1] - 20:4
First [2] - 14:2, 14:16
first [12] - 2:18, 2:23, 4:2, 5:8, 5:21, 7:10, 15:3, 22:7, 22:18, 23:6, 23:15, 25:8
fishing [4] - 13:22, 17:1, 17:3, 21:14
five [4] - 7:9, 16:14, 29:21
focus [2] - 23:19, 28:14
FOLEY [1] - 1:18
Foley [1] - 7:7
Follow [1] - 16:2
followed [2] - 5:23, 31:6
forever [2] - 9:2, 9:7
form [4] - 9:17, 11:25, 19:3, 19:25
format [1] - 11:22
forms [1] - 27:2
forth [5] - 3:15, 5:9, 9:6, 14:21, 29:4
forthcoming [1] - 19:21

**forward** [1] - 25:14
**four** [1] - 18:1
**fourth** [1] - 31:18
**frame** [2] - 4:5, 8:14
**fully** [1] - 24:21
**Furthermore** [1] -
10:13
**future** [2] - 7:23, 9:13

### G

**geared** [1] - 27:20
**given** [4] - 4:17, 7:2,
19:23, 29:10
**GONZALEZ** [25] -
1:12, 2:1, 2:8, 2:10,
7:5, 8:13, 18:18,
18:23, 20:9, 22:17,
23:11, 23:16, 24:10,
24:14, 24:19, 24:23,
25:2, 25:6, 25:12,
26:13, 26:23, 29:19,
33:10, 33:16, 33:18
**granted** [1] - 24:4
**grants** [1] - 32:15
**grounded** [2] - 16:4,
16:5
**guess** [1] - 8:13

### H

**HALLIE** [1] - 34:20
**hallmark** [1] - 15:6
**hand** [1] - 34:14
**hard** [4] - 9:24,
31:24, 32:1, 32:3
**hear** [2] - 13:13,
22:19
**heard** [3] - 2:9, 3:9,
8:19
**hearing** [3] - 13:12,
24:3, 24:8
**HECKER** [1] - 1:15
**held** [3] - 15:24,
33:14, 34:10
**help** [1] - 10:19
**hereby** [1] - 34:6
**hereunto** [1] - 34:14
**hinge** [2] - 4:15, 7:17
**hinges** [1] - 32:13
**hire** [1] - 15:10
**hits** [1] - 8:25
**hold** [17] - 7:24, 8:2,
8:12, 9:10, 9:15, 9:24,
10:3, 10:5, 12:24,
14:8, 18:9, 19:1, 19:8,
19:11, 19:15, 19:22,
20:2

**Holdings** [15] - 1:7,
1:10, 1:19, 2:4, 6:25,
7:7, 11:2, 13:14,
13:25, 22:18, 23:23,
24:12, 26:14, 27:1,
29:21
**Holdings'** [1] - 19:1
**holds** [1] - 11:12
**Honor** [43] - 2:7,
2:11, 5:22, 5:25, 6:5,
6:20, 7:1, 7:6, 7:16,
9:8, 10:14, 12:20,
15:3, 16:18, 17:15,
17:24, 18:25, 20:11,
21:25, 22:6, 23:8,
23:13, 24:13, 24:17,
25:1, 25:5, 25:10,
25:17, 26:7, 26:9,
26:22, 26:24, 27:16,
28:25, 29:20, 30:16,
31:2, 31:10, 31:18,
32:10, 32:18, 32:20,
32:21
**HONORABLE** [1] -
1:12
**hopefully** [1] - 33:11
**horse** [1] - 21:3
**house** [2] - 20:5,
20:6
**hundred** [2] - 20:20,
21:10
**hundreds** [1] - 27:18
**HUNTSMAN** [4] -
1:23, 34:5, 34:18,
34:19

### I

**idea** [1] - 9:12
**identical** [1] - 6:6
**identified** [1] - 19:4
**identify** [1] - 19:17
**identifying** [1] -
19:21
**identity** [2] - 2:14,
3:4
**Illinois** [1] - 1:20
**impact** [1] - 28:19
**implement** [5] - 7:24,
8:1, 8:11, 9:9, 9:23
**implemented** [2] -
12:24, 14:8
**important** [1] - 16:9
**importantly** [3] -
11:20, 30:12, 32:14
**impose** [1] - 16:3
**improper** [2] - 30:2,
30:16
**IN** [1] - 34:14

**in-house** [2] - 20:5,
20:6
**inaccessible** [1] -
12:21
**inappropriate** [2] -
10:9, 18:10
**INC** [1] - 1:3
**Inc** [3] - 1:7, 1:10,
1:19
**include** [1] - 15:22
**including** [1] - 31:23
**incorporation** [1] -
30:7
**incur** [1] - 28:11
**Indeed** [2] - 8:3, 17:3
**indeed** [2] - 31:2,
32:11
**indices** [2] - 13:4,
13:6, 13:10
**individuals** [1] -
11:12
**industries** [1] - 6:6
**industry** [15] - 2:25,
5:23, 6:4, 6:13, 15:1,
15:4, 15:5, 15:7,
15:11, 15:12, 15:14,
15:16, 16:4, 16:6
**inference** [2] - 25:25,
32:16
**informal** [3] - 4:1,
23:9, 31:5
**informally** [1] - 16:15
**Information** [1] -
27:21
**information** [19] -
2:13, 4:10, 4:11, 7:14,
7:15, 7:18, 8:15, 9:3,
9:25, 11:3, 11:20,
11:21, 11:25, 12:25,
14:2, 17:12, 19:6,
21:20
**initial** [3] - 10:10,
22:9
**inquiry** [3] - 3:11,
3:12, 5:4
**insisted** [1] - 23:14
**instance** [1] - 12:22
**Instead** [2] - 7:20,
27:17
**insufficient** [6] -
18:11, 19:8, 19:9,
19:11, 19:16, 19:18
**integrator** [1] - 15:25
**interested** [1] - 34:12
**Intermedia** [6] -
10:16, 11:1, 11:6,
11:13, 15:17
**interpose** [1] - 25:17
**intervention** [1] -
6:21

**invitation** [1] - 32:19
**invited** [1] - 19:19
**invoked** [1] - 6:21
**irrelevant** [3] - 14:19,
27:21, 33:6
**issue** [10] - 2:22,
2:24, 9:14, 10:8,
11:16, 16:10, 16:12,
17:20, 27:5, 27:23
**issues** [5] - 17:20,
20:2, 22:23, 23:19,
33:6
**IT** [1] - 16:14
**itself** [5] - 3:12, 12:1,
16:17, 26:2, 27:20

### J

**James** [4] - 10:24,
10:25, 11:6, 11:17
**January** [2] - 24:22,
27:4
**JILL** [1] - 1:21
**Jill** [2] - 7:6, 29:20
**Jordan** [1] - 15:13
**Judge** [17] - 1:13,
7:8, 8:19, 9:1, 10:6,
11:18, 12:7, 12:13,
13:21, 13:25, 14:10,
15:13, 16:8, 18:15,
20:1, 23:25, 30:6
**judge** [2] - 6:23, 21:3
**JUDGE** [24] - 2:1,
2:8, 2:10, 7:5, 8:13,
18:18, 18:23, 20:9,
22:17, 23:11, 23:16,
24:10, 24:14, 24:19,
24:23, 25:2, 25:6,
25:12, 26:13, 26:23,
29:19, 33:10, 33:16,
33:18
**judged** [1] - 15:5
**judgment** [38] - 1:9,
24:18, 24:25, 25:6,
25:18, 25:20, 25:23,
26:3, 26:6, 26:11,
26:15, 26:20, 27:1,
27:4, 27:12, 27:22,
28:1, 28:2, 28:6, 28:8,
28:12, 28:13, 28:24,
28:25, 29:5, 29:9,
29:17, 30:18, 30:20,
30:23, 30:25, 32:14,
32:23, 32:24, 33:2,
33:9
**judicial** [1] - 6:21
**July** [4] - 9:23, 10:16,
11:7, 11:10
**jumped** [1] - 13:15

### K

**Kansas** [1] - 1:16
**keep** [1] - 11:19
**key** [2] - 10:25, 13:25
**kinds** [1] - 5:15
**knowledge** [1] - 3:5
**known** [2] - 7:22,
8:17

### L

**lapse** [1] - 28:6
**Lardner** [1] - 7:7
**LARDNER** [1] - 1:18
**largest** [1] - 15:20
**last** [3] - 13:12, 27:4,
29:23
**late** [2] - 3:16, 10:11
**law** [4] - 12:18, 15:3,
16:5, 29:4
**lawyer** [2] - 10:1,
11:15
**learn** [1] - 17:6
**legal** [1] - 11:23
**less** [1] - 7:9
**letter** [3] - 3:25, 7:13,
19:20
**liabilities** [1] - 27:24
**likewise** [1] - 16:11
**limited** [3] - 27:13,
28:10, 30:21
**limits** [2] - 28:2, 28:3
**lines** [1] - 17:18
**list** [3] - 13:8, 20:1,
30:5
**litany** [3] - 12:25,
30:4, 31:23
**litigation** [31] - 3:16,
7:21, 7:23, 7:24, 8:2,
8:12, 8:24, 9:10, 9:15,
9:24, 10:3, 10:5,
12:24, 14:1, 14:8,
18:9, 19:1, 19:8,
19:11, 19:15, 19:22,
20:2, 20:5, 20:6,
22:21, 30:4, 30:8,
30:11, 30:15, 31:1,
33:5
**LLP** [2] - 1:15, 1:18
**location** [1] - 3:4
**look** [3] - 6:3, 16:12,
17:14
**looking** [2] - 6:24,
9:13
**lost** [1] - 9:1
**louder** [1] - 2:10

**M**

**MAIL** [2] - 34:21, 34:21
**mail** [4] - 2:13, 3:10, 10:11, 14:6
**mails** [8] - 8:24, 8:25, 9:11, 9:16, 9:25, 20:16, 21:7, 21:9
**maintain** [2] - 5:24, 21:16
**maintained** [2] - 13:24, 16:22
**maintains** [3] - 4:3, 5:17, 21:22
**manner** [4] - 4:16, 7:16, 7:18, 19:17
**March** [4] - 1:4, 15:19, 34:10, 34:15
**marriage** [1] - 34:12
**math** [1] - 11:8
**matter** [5] - 15:2, 22:25, 25:16, 29:7, 34:13
**matters** [4] - 2:3, 3:5, 30:1, 30:3
**MCI** [1] - 15:14
**MCI's** [2] - 11:3, 11:20
**mean** [4] - 13:6, 13:11, 15:16, 22:10
**means** [1] - 13:4
**meant** [1] - 13:9
**meet** [1] - 19:13
**memorandum** [1] - 4:25
**mention** [2] - 9:20, 31:23
**mentioned** [4] - 10:9, 14:10, 22:5, 28:24
**merely** [1] - 17:1
**Michael** [1] - 15:13
**Microsoft** [3] - 31:24, 31:25
**middle** [1] - 20:17
**might** [1] - 3:23
**million** [8] - 3:18, 5:13, 22:4, 22:8
**mind** [1] - 8:7
**minimum** [1] - 3:13
**minutes** [1] - 31:24
**misconstrue** [2] - 7:11, 14:17
**misrepresent** [1] - 14:17
**missing** [2] - 14:4, 21:8
**Missouri** [1] - 1:16
**moment** [1] - 13:14

**month's** [1] - 13:12
**months** [3] - 18:1, 31:5
**moot** [1] - 25:4
**morning** [1] - 7:6
**MORRISON** [1] - 1:15
**Motion** [2] - 1:7, 1:9
**motion** [63] - 2:3, 2:18, 3:15, 4:1, 4:13, 4:14, 4:15, 4:17, 4:19, 4:22, 4:23, 5:1, 5:9, 5:25, 7:4, 7:8, 7:10, 9:8, 10:9, 10:15, 16:18, 18:4, 20:12, 20:25, 22:2, 22:7, 23:5, 23:7, 23:9, 23:12, 24:1, 24:3, 24:6, 24:15, 24:18, 24:19, 25:18, 25:19, 25:20, 25:21, 25:22, 25:23, 26:4, 26:7, 26:8, 26:15, 26:16, 26:19, 27:3, 27:22, 29:22, 30:2, 30:18, 30:20, 30:22, 30:25, 31:1, 31:3, 31:4, 32:15, 33:14
**motions** [1] - 6:21
**moved** [2] - 2:12, 26:24
**MS** [26] - 2:6, 2:11, 7:6, 8:19, 18:21, 18:25, 20:11, 23:8, 23:13, 23:25, 24:13, 24:17, 24:21, 25:1, 25:5, 25:10, 25:11, 25:17, 26:7, 26:9, 26:22, 26:24, 29:20, 32:20, 33:13, 33:17
**Murch** [7] - 7:6, 19:7, 19:20, 20:12, 20:15, 20:16, 29:20
**MURCH** [11] - 1:21, 7:6, 8:19, 23:8, 23:25, 24:13, 24:17, 25:10, 25:17, 26:9, 29:20
**Murch's** [1] - 3:25
**MURDOCK** [17] - 1:17, 2:6, 2:11, 18:21, 18:25, 20:11, 23:13, 24:21, 25:1, 25:5, 25:11, 26:7, 26:22, 26:24, 32:20, 33:13, 33:17
**Murdock** [3] - 2:6, 14:13, 15:8
**Murdock's** [3] - 13:21, 15:9, 29:22
**must** [3] - 11:4,

16:25, 18:16
**myriad** [1] - 13:25

**N**

**nature** [5] - 3:3, 3:6, 3:7, 3:9, 13:22
**near** [1] - 26:17
**necessary** [4] - 14:14, 14:16, 16:16, 31:22
**need** [5] - 7:14, 15:10, 18:4, 21:24, 24:5
**needs** [4] - 6:22, 11:21, 11:25, 28:23
**network** [1] - 9:4
**never** [4] - 4:3, 12:20, 14:7, 23:10
**new** [4] - 2:17, 2:19, 3:14, 17:5
**NEW** [3] - 1:1, 34:2, 34:3
**New** [3] - 1:3, 34:6
**nice** [1] - 33:20
**None** [1] - 32:1
**normally** [1] - 30:9
**North** [1] - 1:19
**Nos** [1] - 1:2
**nos** [1] - 1:9
**Notary** [1] - 34:6
**noted** [1] - 33:21
**nothing** [5] - 8:21, 12:7, 23:10, 31:1, 31:3
**Nothing** [1] - 17:18
**notice** [6] - 10:2, 17:15, 18:12, 18:21, 19:5, 20:8
**noticed** [3] - 1:7, 2:4, 20:6
**notion** [1] - 21:23
**November** [1] - 18:1
**Nowhere** [1] - 14:21
**nowhere** [1] - 17:15

**O**

**objection** [1] - 19:4
**Objection** [1] - 1:8
**obligated** [2] - 9:23, 11:19
**obligation** [4] - 8:5, 9:9, 9:14, 11:9
**obligations** [5] - 12:11, 12:15, 28:19, 28:20, 28:21
**obtain** [2] - 4:10,

31:11
**obtained** [1] - 4:11
**obviously** [4] - 20:11, 25:2, 26:1, 29:2
**Obviously** [2] - 12:17, 28:19
**occasions** [1] - 19:20
**occur** [2] - 10:3, 11:24
**occurred** [1] - 7:20
**October** [1] - 26:4
**OF** [3] - 1:1, 34:2, 34:3
**offer** [21] - 1:9, 26:20, 26:25, 27:1, 28:1, 28:5, 28:6, 28:8, 28:12, 28:13, 28:24, 28:25, 29:4, 29:9, 29:17, 30:22, 32:23, 33:2, 33:8
**offered** [1] - 2:17
**official** [1] - 34:9
**One** [1] - 9:8
**one** [37] - 10:13, 14:3, 19:2, 20:20, 21:10, 22:19, 25:9
**onus** [1] - 16:19
**operation** [1] - 30:23
**operator** [1] - 15:23
**opinion** [1] - 15:10
**opportunity** [1] - 19:23
**opposes** [1] - 28:17
**opposition** [2] - 5:9, 7:4, 33:14
**oranges** [1] - 20:1
**order** [8] - 4:9, 16:17, 21:20, 22:14, 24:5, 25:20, 28:24, 33:15
**ordered** [1] - 16:13
**organization** [1] - 11:24
**outcome** [2] - 6:16, 34:13
**outside** [2] - 30:9, 32:6
**over-estimated** [1] - 31:10
**own** [12] - 10:17, 10:20, 10:22, 11:10, 11:11, 12:6, 12:14, 12:15, 13:2, 14:20, 15:10

**P**

**page** [2] - 4:25, 31:8

**paid** [2] - 22:20, 33:2
**partial** [1] - 24:24
**particularly** [1] - 33:3
**parties** [6] - 6:14, 16:25, 27:5, 28:22, 33:3, 34:12
**parties'** [1] - 27:23
**party** [2] - 8:4, 14:23
**party's** [3] - 3:9, 8:8, 14:24
**Parus** [105] - 1:7, 1:10, 1:19, 2:3, 2:12, 2:17, 2:22, 3:8, 3:12, 3:17, 3:20, 4:2, 4:5, 4:9, 4:11, 4:14, 4:18, 4:21, 5:4, 5:7, 5:12, 6:3, 6:7, 6:24, 7:1, 7:7, 7:15, 7:17, 8:9, 10:4, 10:18, 11:2, 11:11, 12:3, 12:12, 12:20, 12:23, 13:9, 13:10, 13:13, 13:24, 14:1, 14:3, 14:4, 14:6, 14:7, 14:8, 14:21, 15:7, 15:15, 15:24, 16:10, 16:15, 16:16, 16:18, 16:21, 17:8, 17:25, 18:14, 19:1, 19:2, 19:8, 19:10, 19:14, 19:19, 19:23, 20:1, 20:4, 20:16, 20:18, 20:21, 20:25, 21:3, 21:9, 21:22, 22:12, 22:18, 23:14, 23:23, 24:11, 25:18, 26:14, 27:1, 27:9, 27:13, 27:15, 27:18, 28:3, 28:4, 28:7, 28:9, 28:14, 28:17, 28:23, 29:1, 29:20, 30:13, 30:25, 31:8, 32:5, 32:7, 32:16, 33:4
**Parus'** [28] - 2:20, 3:7, 3:15, 3:24, 5:1, 5:19, 7:25, 8:9, 9:23, 12:8, 12:13, 12:16, 13:13, 14:18, 17:23, 18:20, 18:21, 19:4, 20:13, 21:16, 21:18, 21:24, 23:25, 27:3, 27:7, 32:12, 32:15, 32:17
**pay** [4] - 16:20, 23:3, 28:11, 31:9
**pending** [5] - 22:1, 24:11, 24:16, 26:8, 30:19
**people** [2] - 2:15, 3:11

A 04459

perception [1] - 15:12
perfectly [1] - 25:10
permission [2] - 20:24, 23:14
person [1] - 11:1
personnel [2] - 11:19, 16:14
persons [1] - 3:5
phone [2] - 2:8, 33:19
pick [1] - 29:22
place [4] - 2:23, 5:8, 5:21, 23:6
point [16] - 8:16, 11:1, 12:19, 14:1, 14:2, 16:8, 17:7, 17:14, 17:20, 17:24, 17:25, 18:20, 20:15, 22:19, 29:25, 32:12
points [4] - 3:12, 9:8, 20:14, 32:20
policies [10] - 7:19, 8:1, 8:10, 12:6, 13:2, 14:19, 14:23, 16:11, 17:19, 18:2
policy [7] - 10:17, 10:18, 10:21, 10:23, 11:3, 11:10, 11:21
portion [1] - 4:23
posit [1] - 31:2
position [9] - 9:23, 10:6, 10:13, 13:13, 15:9, 21:1, 28:2, 28:15, 29:12
possible [2] - 16:17, 25:25
powers [1] - 26:1
practice [1] - 32:9
practices [4] - 2:14, 2:15, 2:25, 12:14
precipitated [1] - 23:5
precludes [1] - 27:7
PRELIMINARY [1] - 34:21
premature [2] - 20:21, 32:12
present [1] - 23:17
presents [1] - 27:25
preservation [2] - 2:14, 8:17, 12:14
preserve [7] - 7:21, 8:5, 10:15, 10:23, 11:9, 12:9, 12:15
preserved [1] - 14:9
prevent [1] - 9:10
prima [2] - 16:25, 31:17
primarily [1] - 27:19

privately [1] - 15:24
privileged [2] - 19:5, 20:8
privileges [1] - 17:13
probative [1] - 6:6
problems [1] - 11:24
procedural [1] - 24:1
procedurally [3] - 30:2, 30:15, 32:11
procedures [1] - 6:11
proceed [8] - 18:10, 18:11, 19:14, 20:5, 20:24, 26:21, 27:10, 33:4
proceeded [1] - 29:16
proceeding [2] - 29:16, 29:24
PROCEEDINGS [1] - 1:6
Proceedings [2] - 1:6, 1:24
proceedings [4] - 1:9, 26:20, 29:15, 34:10
process [4] - 19:13, 20:4, 20:18, 27:20
produce [8] - 2:12, 12:21, 13:7, 13:16, 13:17, 18:5, 22:13, 31:21
produced [9] - 3:20, 5:14, 11:15, 12:2, 14:6, 14:7, 20:16, 32:2
Produced [1] - 1:24
producing [1] - 21:9
production [6] - 14:20, 16:20, 17:10, 17:11, 17:23, 23:3
program [1] - 11:22
prohibition [1] - 29:8
project [1] - 31:25
projections [1] - 31:24
prominently [1] - 32:17
prompt [1] - 22:8
prompted [1] - 23:4
PROOFREAD [1] - 34:20
proofs [2] - 10:4, 11:12
proper [1] - 32:11
properly [2] - 1:7, 2:4
proposal [1] - 19:24
propose [1] - 19:14
proposed [2] - 19:2,

19:10
prospect [1] - 8:24
prove [3] - 12:12, 21:17, 21:19
provide [4] - 8:10, 12:22, 20:1, 33:2
provided [7] - 5:18, 18:25, 22:11, 22:15, 30:5, 30:12, 30:13
provider [1] - 15:25
provides [1] - 21:21
providing [1] - 32:7
Public [1] - 34:6
purpose [1] - 14:23
pursuant [2] - 12:8, 26:12
put [1] - 22:21
putting [2] - 21:2, 31:16

Q

questions [3] - 19:2, 19:3, 19:15
quite [1] - 20:13

R

raise [2] - 12:19, 30:17
raised [1] - 15:12
Ramsay [5] - 10:1, 10:10, 11:15, 13:5, 14:5
rather [2] - 19:3, 19:23
Rather [1] - 18:7
re [3] - 1:2, 22:23, 23:19
re-educate [1] - 22:23
re-educating [1] - 23:19
readily [2] - 11:22, 11:25
Realizing [1] - 31:4
really [10] - 7:8, 9:21, 19:25, 21:2, 21:12, 22:20, 24:6, 27:25, 29:15, 30:18
reams [1] - 12:23
reason [3] - 14:13, 16:13, 25:21
reasonable [2] - 2:25, 8:23
reasonableness [6] - 5:3, 5:5, 6:2, 6:10, 6:13, 6:24

reasoning [1] - 16:13
reasons [3] - 7:9, 7:10, 15:3
recollection [2] - 23:1, 23:22
record [3] - 8:20, 9:1, 13:21
Recorded [1] - 1:24
RECORDED [1] - 1:6
Recording [1] - 1:24
recording [1] - 34:9
records [4] - 8:6, 10:16, 11:14, 16:22
recover [2] - 27:13, 28:4
recovered [1] - 29:2
recovers [1] - 28:7
recovery [1] - 28:10
reevaluate [1] - 28:15
refer [1] - 27:6
reference [1] - 30:7
references [1] - 8:19
reflected [2] - 27:3, 27:11
refuse [1] - 19:17
refused [3] - 18:5, 18:12, 27:15
regarding [4] - 2:13, 3:3, 8:9, 10:11, 11:17, 17:8, 17:10, 17:21, 17:22, 17:23, 18:2
reject [1] - 28:5
related [1] - 34:11
relevance [1] - 16:21
relevant [23] - 2:16, 2:19, 2:24, 3:11, 3:14, 4:12, 5:6, 5:24, 6:1, 7:21, 7:23, 8:8, 9:12, 9:18, 12:14, 12:15, 13:18, 14:4, 17:12, 24:9, 25:7, 26:3
relies [1] - 21:3
relieve [2] - 12:9, 28:18
relieved [1] - 12:11
remember [2] - 26:13, 26:18
remind [1] - 20:17
Renforth [8] - 10:24, 10:25, 11:6, 11:17, 13:3, 14:5, 14:6, 31:23
Renforth's [1] - 11:9
Reorganized [2] - 1:4, 1:15
replacing [1] - 1:9, 1:10
reply [3] - 29:4, 30:21, 31:8

Reporter [3] - 1:23, 1:24, 34:5
repudiation [1] - 17:17
request [9] - 13:22, 14:24, 16:19, 18:7, 18:19, 18:20, 22:9, 23:9, 26:3
requested [1] - 16:15
requesting [1] - 25:19
requests [2] - 27:18, 31:5
require [1] - 14:22
required [5] - 5:18, 7:24, 8:18, 10:16, 16:6
requirement [4] - 6:6, 21:17, 21:19, 22:12
requiring [1] - 28:14
respect [9] - 9:24, 11:2, 13:2, 20:14, 21:13, 22:23, 23:21, 24:11, 26:19
respond [4] - 17:11, 18:9, 20:9, 24:5
Response [1] - 1:10
response [7] - 2:9, 4:1, 4:14, 4:22, 10:14, 19:1, 22:2
responses [10] - 18:11, 19:8, 19:11, 19:12, 19:16, 19:22, 20:3, 21:18, 21:22, 29:21
responsible [2] - 2:15, 3:11
responsive [1] - 21:11
rest [1] - 25:3
restored [2] - 20:20, 21:6
result [1] - 11:13
retain [1] - 16:6
retained [1] - 11:4
retention [18] - 2:20, 7:19, 7:25, 8:10, 10:17, 10:18, 10:21, 10:23, 11:3, 11:10, 11:21, 12:6, 13:2, 14:19, 14:23, 16:11, 17:19, 18:2
retrievable [2] - 11:22, 11:25
reveal [1] - 8:10
reversed [1] - 25:4
reviewed [1] - 21:11
rider [2] - 17:15, 17:18

**rights** [1] - 27:23
**ROUGH** [1] - 34:21
**routinely** [1] - 17:3
**rule** [12] - 22:15, 22:24, 25:2, 26:15, 26:17, 29:17, 30:9, 32:6, 32:23
**Rule** [55] - 1:7, 1:9, 2:4, 2:12, 2:23, 3:2, 3:7, 4:8, 4:9, 5:18, 6:19, 7:2, 8:9, 10:8, 12:3, 12:8, 14:14, 16:23, 17:18, 17:22, 17:25, 18:6, 18:8, 18:13, 18:21, 19:4, 21:13, 21:15, 21:17, 21:20, 22:11, 24:5, 26:19, 26:25, 28:17, 28:19, 29:3, 29:14, 29:22, 29:23, 29:25, 30:2, 30:6, 30:7, 30:14, 30:21, 31:1, 31:7, 31:10, 31:16, 31:19, 32:8, 32:11, 32:19, 32:21
**rules** [3] - 22:16, 30:3, 30:4
**ruling** [10] - 25:3, 25:14, 25:18, 25:19, 26:3, 26:6, 26:11, 26:15, 32:13, 32:14

**S**

**sampled** [2] - 20:18, 20:19
**sampling** [1] - 20:18
**sanctionable** [1] - 2:21
**sanctioned** [1] - 4:19
**sat** [1] - 8:22
**satisfy** [1] - 31:13
**scenario** [1] - 27:25
**schedule** [1] - 25:8
**scheduled** [3] - 23:7, 23:10, 24:8
**scope** [2] - 6:22, 29:11
**search** [3] - 4:6, 23:3
**searched** [4] - 20:21, 20:23, 21:6, 21:11
**searches** [1] - 11:18
**seated** [1] - 2:1
**Second** [2] - 14:3, 15:7
**second** [3] - 12:19, 15:20, 30:17
**secondary** [1] - 8:21
**see** [2] - 5:18, 13:24

**seek** [2] - 3:13, 4:12
**seeking** [2] - 13:17, 16:25
**seeks** [2] - 6:16, 18:15
**seem** [1] - 12:10
**selected** [1] - 20:18
**send** [2] - 8:24, 9:11
**separate** [1] - 32:1
**served** [4] - 17:8, 17:25, 21:23, 27:18
**server** [2] - 8:22, 9:4
**servers** [1] - 13:24
**service** [1] - 15:22
**services** [5] - 15:20, 15:21, 15:22, 15:24, 16:1
**set** [6] - 3:14, 5:8, 14:21, 25:12, 29:4, 34:14
**seven** [2] - 14:21, 31:14
**several** [1] - 19:20
**shared** [1] - 9:17
**shield** [2] - 31:20, 32:9
**shifted** [1] - 14:20
**shifting** [30] - 2:24, 5:22, 5:24, 6:17, 14:15, 14:16, 14:18, 14:24, 15:2, 16:4, 16:15, 16:18, 16:19, 18:4, 20:19, 20:25, 21:1, 21:5, 23:5, 23:9, 23:12, 31:3, 31:5, 31:7, 31:12, 31:13, 31:15, 31:17, 32:24
**short** [1] - 8:8
**Shorthand** [1] - 34:5
**show** [3] - 5:14, 10:20, 30:14
**showing** [2] - 16:25, 22:12
**shows** [1] - 27:22
**sidetracked** [1] - 14:11
**significant** [1] - 21:8
**similar** [2] - 7:15, 7:18
**Simply** [1] - 15:15
**simply** [7] - 3:19, 4:14, 4:19, 6:18, 9:3, 9:22, 14:11, 19:19, 22:15, 28:5
**single** [1] - 30:13
**sitting** [1] - 32:4
**size** [1] - 6:10
**small** [1] - 15:24
**smaller** [1] - 6:8
**snapshot** [5] - 8:22,

9:3, 9:5, 9:22, 14:12
**sorry** [2] - 18:23, 24:14
**sought** [2] - 17:1, 19:5
**sound** [1] - 34:9
**Sound** [1] - 1:24
**source** [2] - 5:17, 8:21
**sources** [1] - 3:23
**SOUTHERN** [1] - 1:2
**Special** [1] - 1:15
**specifically** [3] - 4:8, 6:18, 21:21
**specified** [1] - 9:15
**specifies** [1] - 30:3
**spent** [1] - 20:12
**spoliation** [41] - 2:18, 3:15, 4:12, 4:15, 4:19, 4:22, 5:1, 5:9, 5:10, 6:17, 7:4, 7:11, 7:16, 7:20, 8:3, 9:8, 9:18, 10:15, 12:16, 20:12, 20:14, 20:22, 21:1, 21:5, 22:2, 22:7, 23:6, 23:25, 24:2, 24:5, 24:9, 24:10, 24:15, 25:21, 25:22, 26:2, 26:5, 26:16, 32:15, 32:16, 33:14
**Spoliation** [1] - 7:18
**SS** [1] - 34:2
**stage** [1] - 3:16
**standard** [7] - 7:11, 8:3, 14:17, 15:2, 15:4, 15:6, 16:4
**standards** [5] - 5:23, 6:4, 6:14, 15:11, 16:7
**standpoint** [1] - 23:2
**STATE** [1] - 34:2
**state** [3] - 3:9, 8:7, 16:24
**State** [1] - 34:6
**statement** [2] - 13:21, 29:23
**STATES** [1] - 1:1
**States** [2] - 1:13, 15:21
**status** [2] - 18:19, 18:24
**stay** [2] - 25:19, 27:15
**step** [4] - 13:15, 14:3, 25:25
**steps** [1] - 13:18
**still** [2] - 18:12, 20:20
**Stinson** [2] - 10:1, 11:15
**STINSON** [1] - 1:15
**storage** [1] - 17:19

**store** [5] - 3:10, 4:20, 5:6, 6:9, 6:12
**stored** [7] - 4:16, 7:15, 7:17, 10:19, 11:22
**storing** [1] - 2:25
**Street** [2] - 1:16, 1:19
**subject** [1] - 17:12
**submit** [5] - 3:16, 22:13, 27:5, 27:21, 29:15
**submitted** [2] - 24:21, 27:4
**suggest** [1] - 12:10
**Suite** [1] - 1:19
**summary** [17] - 24:18, 24:25, 25:6, 25:18, 25:20, 25:23, 26:3, 26:5, 26:10, 26:15, 27:4, 27:12, 27:22, 30:18, 30:20, 30:25, 32:13
**supplement** [2] - 19:12, 20:3
**support** [8] - 2:17, 2:18, 3:14, 3:23, 3:24, 4:25, 5:20, 30:21
**supposed** [1] - 15:5
**sword** [2] - 31:20, 32:8
**sworn** [1] - 14:5
**systems** [3] - 2:14, 3:10, 5:5

**T**

**table** [1] - 19:24
**tape** [4] - 8:21, 9:1, 9:5, 9:7
**tapes** [22] - 2:21, 4:3, 4:4, 4:5, 4:6, 4:7, 4:20, 5:3, 5:4, 5:23, 6:8, 8:20, 9:2, 9:21, 14:10, 20:18, 20:19, 20:20, 20:22, 21:5, 21:10, 23:4
**technology** [1] - 16:2
**teed** [1] - 24:3
**telecommunication** [1] - 15:21
**telephone** [1] - 15:22
**tender** [4] - 17:11, 17:21, 29:21, 31:18
**tendered** [1] - 13:1
**tendering** [1] - 18:8
**term** [1] - 26:17
**terminate** [1] - 33:18
**terminated** [2] - 11:4, 11:5

**terms** [20] - 4:6, 8:15, 13:19, 19:13, 22:6, 23:1, 27:2, 27:8, 27:9, 27:11, 27:13, 27:16, 27:22, 28:10, 28:15, 29:1, 29:3, 30:23, 33:1, 33:7
**test** [2] - 14:21, 31:14
**testify** [1] - 2:13
**testimony** [2] - 10:1, 14:5
**THE** [1] - 1:12
**themselves** [1] - 22:16
**theory** [3] - 2:17, 2:19, 17:6
**therefore** [2] - 11:8, 12:3
**Therefore** [2] - 16:21, 32:18
**thinking** [1] - 18:23
**thinly** [2] - 31:3, 31:11
**third** [1] - 14:23
**Third** [1] - 16:3
**three** [6] - 7:3, 8:4, 11:4, 11:20, 17:9, 21:24
**three-week** [1] - 7:3
**timely** [3] - 8:2, 8:11, 14:9
**today** [3] - 14:14, 23:21, 24:16
**took** [1] - 9:5
**topic** [1] - 19:4
**topics** [1] - 20:7
**transcript** [1] - 34:9
**Transcript** [1] - 1:24
**TRANSCRIPT** [2] - 1:5, 34:21
**trial** [1] - 29:7
**tried** [1] - 18:6
**true** [2] - 11:12, 34:8
**try** [1] - 31:6
**trying** [4] - 6:18, 20:15, 21:14, 22:15
**turn** [1] - 23:5
**turned** [1] - 24:24
**twice** [1] - 5:25
**two** [1] - 32:20
**type** [3] - 4:10, 29:11, 32:23
**types** [1] - 6:11
**typically** [1] - 19:13

**U**

**UC** [4] - 27:7, 27:11,

27:16, 28:2
**unavailable** [1] - 12:22
**under** [16] - 6:19, 7:11, 9:9, 9:14, 11:8, 14:18, 18:3, 21:15, 22:16, 27:11, 28:4, 28:10, 29:2, 29:3, 29:18, 31:14
**Under** [1] - 27:9
**undertaken** [1] - 29:6
**undertook** [1] - 11:17
**unequivocally** [1] - 13:8
**unfair** [1] - 19:14
**Unidentified** [1] - 27:6
**unidentified** [1] - 16:1
**uniformly** [1] - 19:24
**unilaterally** [2] - 16:3, 19:15
**UNITED** [1] - 1:1
**United** [2] - 1:13, 15:21
**unless** [1] - 25:3
**unlike** [2] - 12:20, 14:8
**unreasonable** [1] - 2:21
**up** [5] - 20:6, 24:3, 25:12, 29:22, 31:6

## V

**vacuum** [1] - 32:4
**value** [1] - 9:21
**various** [1] - 23:19
**veiled** [1] - 31:11
**VIA** [2] - 34:21, 34:21
**view** [2] - 8:14, 18:20
**virtue** [1] - 11:10

## W

**wait** [1] - 21:24
**waiting** [1] - 21:11
**Walnut** [1] - 1:16
**wants** [1] - 33:4
**week** [2] - 7:3, 25:8
**weeks** [3] - 17:9, 21:24, 23:18
**whatsoever** [1] - 28:19
**WHEREOF** [1] - 34:14

**wish** [1] - 3:6
**withdrawn** [2] - 26:7, 26:11
**withdrew** [1] - 26:9
**WITNESS** [1] - 34:14
**witness** [3] - 2:12, 3:7, 18:8
**WL** [1] - 17:2
**Word** [1] - 31:24
**words** [1] - 7:23
**WorldCom** [6] - 2:2, 6:8, 6:10, 18:19, 20:7, 20:15
**WORLDCOM** [1] - 1:3
**WorldCom's** [1] - 15:19
**worry** [1] - 26:16
**written** [9] - 10:17, 10:20, 10:22, 13:2, 18:7, 19:3, 19:15, 19:25, 27:18

## Y

**year** [1] - 22:1
**years** [2] - 11:4, 11:20
**YORK** [3] - 1:1, 34:2, 34:3
**York** [3] - 1:3, 34:6

## Z

**Zubulake** [8] - 7:12, 8:3, 9:15, 14:18, 14:22, 15:6, 21:3, 31:14

A 04462

1

1  UNITED STATES BANKRUPTCY COURT

2  SOUTHERN DISTRICT OF NEW YORK

3  Case No. 02-13533

4  - - - - - - - - - - - - - - - - - - - -x

5  In the Matter of:

6

7  WORLDCOM, INC.,

8

9          Debtor.

10

11  - - - - - - - - - - - - - - - - - - - -x

12

13              U.S. Bankruptcy Court

14              One Bowling Green

15              New York, New York

16

17              May 15, 2007

18              2:03 p.m.

19

20  B E F O R E:

21  HON. ARTHUR J. GONZALEZ

22  U.S. BANKRUPTCY JUDGE

23

24

25

2

1    MOTION by Debtors to Apply Bankruptcy Rule 7068 (offer of

2    judgment) to the Proceedings on Claim Numbers 11242 and 11173.

3    Opposition by Parus Holdings, Inc.

4

5    MOTION of Debtors to Compel Claimant Parus Holdings, Inc. to

6    Appear for a Properly Noticed Rule 30(b)(6) Deposition.

7    Opposition Filed.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24    Transcribed By:  Esther Accardi

25

3

```
 1    A P P E A R A N C E S :

 2    STINSON MORRISON & HECKER, LLP

 3           Attorneys for Debtors

 4           1201 Walnut Street

 5           Kansas City, Missouri 64106

 6

 7    BY:   ALLISON MURDOCK, ESQ.

 8           MARK IBA, ESQ.

 9           (Telephonically)

10

11    FOLEY & LARDNER, LLP

12           Attorneys for Parus Holdings

13           321 North Clark

14           Chicago, Illinois 60610

15

16    BY:   JILL MURCH, ESQ.

17           (Telephonically)

18

19

20

21

22

23

24

25
```

4

1                          P R O C E E D I N G S

2              THE COURT:  Hello.  This is Judge Gonzalez.  Hello,

3    are the parties on the phone?

4              MS. MURDOCK:  Debtors are appearing by Allison

5    Murdock.

6              MS. MURCH:  Yes, Your Honor.  Jill Murch on behalf of

7    Parus Holdings.

8              THE COURT:  All right.  In light of the opinion that

9    I issued, I guess it was last week or the week before, I

10   thought it would be appropriate to have the status conference

11   to focus on what the next step is.  It seems to me that the

12   motion to compel discovery etcetera is not really relevant any

13   longer.  As well as the motion by the debtors of the offer of

14   judgment I don't think really serves any purpose either.  And

15   what we need to focus on is determining what the amount of the

16   damages are.  And the dispute seems to be between the two

17   amounts as a basic charge versus the, what I call -- I don't

18   have it in front of me, the more inclusive flat rate charge.

19   And then resolve that issue through an evidentiary hearing and

20   then let the parties exercise whatever appellate rights they

21   may choose to do so thereafter.  And so with that in mind, I

22   think the debtor should either withdraw the offer of judgment,

23   if they want me to rule on it I'll rule on it.  But I would

24   exercise my discretion even if it were -- if it could be done

25   in the context of an objection to claim -- exercise discretion

5

1    under the circumstances not to do it.  And with respect to the

2    discovery issue is have the parties focus on that discovery

3    that is relevant to the issue as to what was the parties'

4    intention or how to interpret that provision in calculation of

5    the damages as to what amount is to be used.  I'll hear first

6    from the debtor.

7            MS. MURDOCK:  Your Honor, Allison Murdock on behalf

8    of the debtors.  With regard to the motion to compel we agree

9    with Your Honor that the reasons that we were seeking that at

10   deposition have been severely limited and rendered moot by the

11   Court's written opinion.  The only issue that really remains

12   with respect to caution fees.  But because the Court should so

13   narrowly focus the remaining issue in the case, presumably the

14   parties can agree upon appropriate search terms and appropriate

15   data disbursement to substantially reduce the cost that would

16   be associated with electronic discovery.  So it really would

17   make sense that the parties should go back to the table and see

18   whether we really are talking about substantial costs on

19   electronic discovery before we proceeded down the road of

20   caution fees.  One thing that the debtors did seek the Rule

21   30(b)(6) for we thought in it's spoliation motion, we believe

22   that motion has been rendered moot by the Court's order because

23   that goes exclusively to Parus' claim for expectation damages

24   under the UC contract which Your Honor held are not

25   recoverable.  And I was advised by Ms. Burch last night however

1    that Parus did not believe that's their spoliation motion had

2    been rendered moot.  And she did not explain why -- wasn't sure

3    how this could be the case given that that motion -- given that

4    the only issue in the case is whether they -- that the base for

5    the unlimited price was going to apply to the full

6    reconciliation payments they're owed under the UC contract.

7    That spoliation motion does not go to price at all, it doesn't

8    deal with price at all.  The thing that it deals with, the

9    entire motion is on Parus' claim that it needed to support the

10   claim for expectation damages and whether there could be

11   documents on backup cases for this pending spoliation.  And

12   setting aside and there's a lot, preserving on backup case can

13   be spoliation because the expectation damages are not withheld

14   alone and depending on contracts they're irrelevant in that the

15   debtors will produce those documents even it were true,

16   couldn't be spoliation.  So that definite issue that remains

17   with respect to the 30(b)(6) is the fact that their spoliation

18   motion had been rendered moot and we believe that as a result

19   of that we don't need that 30(b)(6) on spoliation issues.

20            THE COURT:  All right.  What about the offer of

21   judgment?

22            MS. MURDOCK:  Your Honor, given that the damages have

23   been limited as to -- if we can agree on the parameters -- I

24   suppose it depends in part on what position Parus is taking.

25   If spoliation is still on the table and we're going to incur

7

1    substantial costs in shaping down discovery on matters, that at

2    least debtors respectfully submit are irrelevant, then we would

3    like the ability to still make an offer of judgment within the

4    parameters of the Court's summary judgment ruling.  Keeping in

5    mind that the Court now has said it's dealing on the damages

6    that Parus is going to be able to recover.

7            THE COURT:  All right.  Parus Holdings.

8            MS. MURCH:  Your Honor, Jill Murch, Foley & Lardner,

9    on behalf of Parus Holdings.  A couple of things here.  We do

10   believe that spoliation still remains relevant.  And there's a

11   very simple reason why.  Ms. Murdock has raised and is

12   describing the issues before the Court, but what I would

13   caution to the Court is and we argued before the Court

14   previously and in our papers, is that James Renforth who

15   negotiated the terms of the UC contract between InterMedia and

16   Parus.  He had a whole host of documents in his office

17   conspicuously labeled, word documents, Microsoft product

18   documents, excel spreadsheets, that all dealt with the term

19   pricing issues related to the contract.  That would even be

20   relevant to the narrow issue before this Court now.  And so to

21   say that it's not relevant is not accurate because if that's

22   the case then Parus should be entitled to an inference in terms

23   of damages.  We have not received any of those documents, those

24   hardcopies, we're not even talking electronics we're talking

25   about --

8

1          THE COURT:  All right.  I understand that.  But what

2     does that got to do with this spoliation motion which was

3     focused on the electronic discovery.  What is it -- I think

4     what we need to do is just focus on that issue and the

5     discovery related to the appropriate damage calculation in the

6     context of the opinion that was rendered.  And then from there

7     we can get a better understanding of really what is at issue

8     and whether or not any motion needs to be adjudicated as to a

9     spoliation issue at all.  I really don't know what the debtor

10    has, what they claim they don't have, and why they don't have

11    it, whether or not this person is available.  I don't know the

12    details of that and I'm not going to go through them now.  But

13    it seems to me that the parties need to get together, focus on

14    what remains based upon the opinion as rendered.  And move

15    forward and let's get an answer, at least from a court's

16    determination as to what is the appropriate damage, and if it

17    is relevant to consider whether there is any shifting of the

18    burden, I'll consider it.  But it doesn't seem to me that I

19    have really focused in on that to the point where I can

20    determine that it is relevant to go forward.  Because most, if

21    not all, of the argument that I recall being made about

22    spoliation all had to do with the responsibility and

23    obligations to maintain certain electronic records.

24          MS. MURCH:  Judge, this is Jill Murch.  Actually,

25    there was a significant portion of the briefing that was

9

1    dedicated exclusively to the debtor's failure to provide

2    hardcopy documents.  Well, I agree that electronic discovery

3    was a component that was not the only component.

4              THE COURT:  But electronic -- hardcopy documents

5    regarding what issue?

6              MS. MURCH:  Regarding the very specific issue of the

7    UC contract and InterMedia One as well as damages.  And

8    frankly, these are all documents that James Renforth, a key

9    witness in the case, had in his office, but for some reason now

10   no longer exists or is yet to be produced by the debtors to

11   Parus.  But my only hesitation is we can go back to the debtors

12   and say we want it again but we're still not going to get it

13   and the spoliation motion still remains relevant.  We took a

14   deposition.  In fact, it was over, I believe, eight hours of

15   Mr. Renforth about what documents did you have, where did you

16   put them, what did they relate to and that's all very much

17   detailed in the spoliation motion.  We haven't gotten those

18   documents and that was a major part of the spoliation motion,

19   the hardcopy documents.  The documents of the key person that

20   can even shed light on wire issues but also the very specific

21   issue that this Court wants the parties to address.

22             THE COURT:  All right.

23             MS. MURDOCK:  Your Honor, may I?

24             THE COURT:  Go ahead.

25             MS. MURDOCK:  Your Honor, with regard to Parus'

1   spoliation motion, they address the relevancy of the documents

2   in their spoliation motion on page 59.  The documents that they

3   claim were not preserved by the backup tape rather than being

4   readily accessible were revenue reports and projections,

5   business reports, marketing studies, financial analyses of

6   InterMedia One and the products from Unified Methagene.  All of

7   that was lost revenue expectation damages which this Court had

8   already said are not recoverable.  Now perhaps Ms. Murch has

9   some issue with pricing, if she does it's not in this

10  spoliation motion, that is not what this spoliation motion was

11  about, it was about the expectation damages that Parus is

12  claiming its entitled to recover.  And that's on page 59, where

13  they themselves describe the relevancy of the documents being

14  addressed in their spoliation motion.

15          THE COURT:  All right.  What I think I'll do is I

16  need to be better prepared for this.  What I expect to do is

17  rule next Tuesday at 2 o'clock unless you hear to the contrary.

18  I'll review the motion.  But assuming the facts are as alleged

19  by the debtor it would seem to me that what needs to be

20  discovered are what the party's intention were on a contract

21  and not what happened thereafter, and whether what amount was

22  to be used to calculate the damages under the applicable

23  provision.  And if the facts are as alleged by Parus Holding

24  then maybe I have to then move forward with an adjudication of

25  exfoliation motion.  But I thought it was far more simpler than

11

```
1    it seems to be as is being presented by the parties.  I'll

2    review the papers.  And in the interim I still think you both

3    need to focus on how to narrow the discovery and address the

4    specific issue as to what is the intention of the parties in

5    determining or in agreeing upon what would be the basic

6    calculation of the damages under the appropriate damage

7    provision.  With that said we can have this return for a ruling

8    next Tuesday, 5/22 at 2 p.m.  Just check the agenda to make

9    sure it's going forward at that time.  And if it's not going

10   forward on that date chambers will contact one or both of you

11   and ask that person to contact the other.

12            MS. MURDOCK:  Yes, Your Honor.  Thank you, Your

13   Honor.

14            MS. MURCH:  Thank you very much, Your Honor.

15            THE COURT:  Thank you.

16        (Proceedings concluded at 2:16 p.m.)

17

18

19

20

21

22

23

24

25
```

12

1

2                     C E R T I F I C A T I O N

3

4    I, Esther Accardi, court approved transcriber, certify that the

5    foregoing is a correct transcript from the official electronic

6    sound recording of the proceedings in the above-entitled

7    matter.

8

9    _____ May 17, 2007_____

10   Signature of Transcriber              Date

11

12   Esther Accardi_____

13   typed or printed name

14

15

16

17

18

19

20

21

22

23

24

25

| A | | | |
|---|---|---|---|

**A**

**ability** 7:3
**able** 7:6
**above-entitled** 12:6
**Accardi** 2:24 12:4
  12:12
**accessible** 10:4
**accurate** 7:21
**address** 9:21 10:1
  11:3
**addressed** 10:14
**adjudicated** 8:8
**adjudication** 10:24
**advised** 5:25
**agenda** 11:8
**agree** 5:8,14 6:23
  9:2
**agreeing** 11:5
**ahead** 9:24
**alleged** 10:18,23
**Allison** 3:7 4:4 5:7
**amount** 4:15 5:5
  10:21
**amounts** 4:17
**analyses** 10:5
**answer** 8:15
**Appear** 2:6
**appearing** 4:4
**appellate** 4:20
**applicable** 10:22
**apply** 2:1 6:5
**appropriate** 4:10
  5:14,14 8:5,16
  11:6
**approved** 12:4
**argued** 7:13
**argument** 8:21
**ARTHUR** 1:22
**aside** 6:12
**associated** 5:16
**assuming** 10:18
**Attorneys** 3:3,12
**available** 8:11

**B**

**B** 1:21

**back** 5:17 9:11
**backup** 6:11,12 10:3
**Bankruptcy** 1:2,14
  1:23 2:1
**base** 6:4
**based** 8:14
**basic** 4:17 11:5
**behalf** 4:6 5:7 7:9
**believe** 5:21 6:1,18
  7:10 9:14
**better** 8:7 10:16
**Bowling** 1:15
**briefing** 8:25
**Burch** 5:25
**burden** 8:18
**business** 10:5

**C**

**C** 3:1 4:1 12:2,2
**calculate** 10:22
**calculation** 5:4 8:5
  11:6
**call** 4:17
**case** 1:4 5:13 6:3,4
  6:12 7:22 9:9
**cases** 6:11
**caution** 5:12,20 7:13
**certain** 8:23
**certify** 12:4
**chambers** 11:10
**charge** 4:17,18
**check** 11:8
**Chicago** 3:14
**choose** 4:21
**circumstances** 5:1
**City** 3:5
**claim** 2:2 4:25 5:23
  6:9,10 8:10 10:3
**Claimant** 2:5
**claiming** 10:12
**Clark** 3:13
**compel** 2:5 4:12 5:8
**component** 9:3,3
**concluded** 11:16
**conference** 4:10
**consider** 8:17,18

**conspicuously** 7:17
**contact** 11:10,11
**context** 4:25 8:6
**contract** 5:24 6:6
  7:15,19 9:7 10:20
**contracts** 6:14
**contrary** 10:17
**correct** 12:5
**cost** 5:15
**costs** 5:18 7:1
**couple** 7:9
**court** 1:2,14 4:2,8
  5:12 6:20 7:5,7,12
  7:13,13,20 8:1 9:4
  9:21,22,24 10:7,15
  11:15 12:4
**court's** 5:11,22 7:4
  8:15

**D**

**D** 4:1
**damage** 8:5,16 11:6
**damages** 4:16 5:5,23
  6:10,13,22 7:5,23
  9:7 10:7,11,22
  11:6
**data** 5:15
**date** 11:10 12:10
**deal** 6:8
**dealing** 7:5
**deals** 6:8
**dealt** 7:18
**debtor** 1:10 4:22 5:6
  8:9 10:19
**debtors** 2:1,5 3:3 4:4
  4:13 5:8,20 6:15
  7:2 9:10,11
**debtor's** 9:1
**dedicated** 9:1
**definite** 6:16
**depending** 6:14
**depends** 6:24
**deposition** 2:6 5:10
  9:14
**describe** 10:13
**describing** 7:12

**detailed** 9:17
**details** 8:12
**determination** 8:16
**determine** 8:20
**determining** 4:15
  11:5
**disbursement** 5:15
**discovered** 10:20
**discovery** 4:12 5:2,2
  5:16,19 7:1 8:3,5
  9:2 11:3
**discretion** 4:24,25
**dispute** 4:16
**DISTRICT** 1:3
**documents** 6:11,15
  7:16,17,18,23 9:2
  9:4,8,15,18,19,19
  10:1,2,13

**E**

**E** 1:21,21 3:1,1 4:1,1
  12:2
**eight** 9:14
**either** 4:14,22
**electronic** 5:16,19
  8:3,23 9:2,4 12:5
**electronics** 7:24
**entire** 6:9
**entitled** 7:22 10:12
**ESQ** 3:7,8,16
**Esther** 2:24 12:4,12
**etcetera** 4:12
**evidentiary** 4:19
**excel** 7:18
**exclusively** 5:23 9:1
**exercise** 4:20,24,25
**exfoliation** 10:25
**exists** 9:10
**expect** 10:16
**expectation** 5:23
  6:10,13 10:7,11
**explain** 6:2

**F**

**F** 1:21 12:2
**fact** 6:17 9:14
**facts** 10:18,23

**failure** 9:1
**far** 10:25
**fees** 5:12,20
**Filed** 2:7
**financial** 10:5
**first** 5:5
**flat** 4:18
**focus** 4:11,15 5:2,13
  8:4,13 11:3
**focused** 8:3,19
**Foley** 3:11 7:8
**foregoing** 12:5
**forward** 8:15,20
  10:24 11:9,10
**frankly** 9:8
**front** 4:18
**full** 6:5

**G**

**G** 4:1
**given** 6:3,3,22
**go** 5:17 6:7 8:12,20
  9:11,24
**goes** 5:23
**going** 6:5,25 7:6
  8:12 9:12 11:9,9
**Gonzalez** 1:22 4:2
**gotten** 9:17
**Green** 1:15
**guess** 4:9

**H**

**happened** 10:21
**hardcopies** 7:24
**hardcopy** 9:2,4,19
**hear** 5:5 10:17
**hearing** 4:19
**HECKER** 3:2
**held** 5:24
**Hello** 4:2,2
**hesitation** 9:11
**Holding** 10:23
**Holdings** 2:3,5 3:12
  4:7 7:7,9
**HON** 1:22
**Honor** 4:6 5:7,9,24
  6:22 7:8 9:23,25

11:12,13,14
**host** 7:16
**hours** 9:14

**I**

**IBA** 3:8
**Illinois** 3:14
**inclusive** 4:18
**incur** 6:25
**inference** 7:22
**intention** 5:4 10:20
  11:4
**interim** 11:2
**InterMedia** 7:15 9:7
  10:6
**interpret** 5:4
**irrelevant** 6:14 7:2
**issue** 4:19 5:2,3,11
  5:13 6:4,16 7:20
  8:4,7,9 9:5,6,21
  10:9 11:4
**issued** 4:9
**issues** 6:19 7:12,19
  9:20

**J**

**J** 1:22
**James** 7:14 9:8
**Jill** 3:16 4:6 7:8 8:24
**Judge** 1:23 4:2 8:24
**judgment** 2:2 4:14
  4:22 6:21 7:3,4

**K**

**Kansas** 3:5
**Keeping** 7:4
**key** 9:8,19
**know** 8:9,11

**L**

**labeled** 7:17
**Lardner** 3:11 7:8
**let's** 8:15
**light** 4:8 9:20
**limited** 5:10 6:23
**LLP** 3:2,11
**longer** 4:13 9:10

**lost** 10:7
**lot** 6:12

**M**

**maintain** 8:23
**major** 9:18
**MARK** 3:8
**marketing** 10:5
**matter** 1:6 12:7
**matters** 7:1
**Methagene** 10:6
**Microsoft** 7:17
**mind** 4:21 7:5
**Missouri** 3:5
**moot** 5:10,22 6:2,18
**MORRISON** 3:2
**motion** 2:1,5 4:12,13
  5:8,21,22 6:1,3,7,9
  6:18 8:2,8 9:13,17
  9:18 10:1,2,10,10
  10:14,18,25
**move** 8:14 10:24
**Murch** 3:16 4:6,6
  7:8,8 8:24,24 9:6
  10:8 11:14
**Murdock** 3:7 4:4,5
  5:7,7 6:22 7:11
  9:23,25 11:12

**N**

**N** 3:1 4:1 12:2
**name** 12:13
**narrow** 7:20 11:3
**narrowly** 5:13
**need** 4:15 6:19 8:4
  8:13 10:16 11:3
**needed** 6:9
**needs** 8:8 10:19
**negotiated** 7:15
**New** 1:3,16,16
**night** 5:25
**North** 3:13
**Noticed** 2:6
**Numbers** 2:2

**O**

**O** 1:21 4:1 12:2

**objection** 4:25
**obligations** 8:23
**offer** 2:1 4:13,22
  6:20 7:3
**office** 7:16 9:9
**official** 12:5
**opinion** 4:8 5:11 8:6
  8:14
**Opposition** 2:3,7
**order** 5:22
**owed** 6:6
**o'clock** 10:17

**P**

**P** 3:1,1 4:1
**page** 10:2,12
**papers** 7:14 11:2
**parameters** 6:23 7:4
**part** 6:24 9:18
**parties** 4:3,20 5:2,3
  5:14,17 8:13 9:21
  11:1,4
**party's** 10:20
**Parus** 2:3,5 3:12 4:7
  5:23 6:1,9,24 7:6,7
  7:9,16,22 9:11,25
  10:11,23
**payments** 6:6
**pending** 6:11
**person** 8:11 9:19
  11:11
**phone** 4:3
**point** 8:19
**portion** 8:25
**position** 6:24
**prepared** 10:16
**presented** 11:1
**preserved** 10:3
**preserving** 6:12
**presumably** 5:13
**previously** 7:14
**price** 6:5,7,8
**pricing** 7:19 10:9
**printed** 12:13
**proceeded** 5:19
**proceedings** 2:2

11:16 12:6
**produce** 6:15
**produced** 9:10
**product** 7:17
**products** 10:6
**projections** 10:4
**Properly** 2:6
**provide** 9:1
**provision** 5:4 10:23
  11:7
**purpose** 4:14
**put** 9:16
**p.m** 1:19 11:8,16

**R**

**R** 1:21 3:1 4:1 12:2
**raised** 7:11
**rate** 4:18
**readily** 10:4
**really** 4:12,14 5:11
  5:16,18 8:7,9,19
**reason** 7:11 9:9
**reasons** 5:9
**recall** 8:21
**received** 7:23
**reconciliation** 6:6
**recording** 12:6
**records** 8:23
**recover** 7:6 10:12
**recoverable** 5:25
  10:8
**reduce** 5:15
**regard** 5:8 9:25
**regarding** 9:5,6
**relate** 9:16
**related** 7:19 8:5
**relevancy** 10:1,13
**relevant** 4:12 5:3
  7:10,20,21 8:17,20
  9:13
**remaining** 5:13
**remains** 5:11 6:16
  7:10 8:14 9:13
**rendered** 5:10,22
  6:2,18 8:6,14
**Renforth** 7:14 9:8

9:15
**reports** 10:4,5
**resolve** 4:19
**respect** 5:1,12 6:17
**respectfully** 7:2
**responsibility** 8:22
**result** 6:18
**return** 11:7
**revenue** 10:4,7
**review** 10:18 11:2
**right** 4:8 6:20 7:7
  8:1 9:22 10:15
**rights** 4:20
**road** 5:19
**rule** 2:1,6 4:23,23
  5:20 10:17
**ruling** 7:4 11:7

**S**

**S** 3:1 4:1
**search** 5:14
**see** 5:17
**seek** 5:20
**seeking** 5:9
**sense** 5:17
**serves** 4:14
**setting** 6:12
**severely** 5:10
**shaping** 7:1
**shed** 9:20
**shifting** 8:17
**Signature** 12:10
**significant** 8:25
**simple** 7:11
**simpler** 10:25
**sound** 12:6
**SOUTHERN** 1:3
**specific** 9:6,20 11:4
**spoliation** 5:21 6:1,7
  6:11,13,16,17,19
  6:25 7:10 8:2,9,22
  9:13,17,18 10:1,2
  10:10,10,14
**spreadsheets** 7:18
**STATES** 1:2
**status** 4:10

**step** 4:11
**STINSON** 3:2
**Street** 3:4
**studies** 10:5
**submit** 7:2
**substantial** 5:18 7:1
**substantially** 5:15
**summary** 7:4
**support** 6:9
**suppose** 6:24
**sure** 6:2 11:9

**T**

**T** 12:2,2
**table** 5:17 6:25
**talking** 5:18 7:24,24
**tape** 10:3
**Telephonically** 3:9
  3:17
**term** 7:18
**terms** 5:14 7:15,22
**Thank** 11:12,14,15
**thing** 5:20 6:8
**things** 7:9
**think** 4:14,22 8:3
  10:15 11:2
**thought** 4:10 5:21
  10:25
**time** 11:9
**Transcribed** 2:24
**transcriber** 12:4,10
**transcript** 12:5
**true** 6:15
**Tuesday** 10:17 11:8
**two** 4:16
**typed** 12:13

**U**

**UC** 5:24 6:6 7:15 9:7
**understand** 8:1
**understanding** 8:7
**Unified** 10:6
**UNITED** 1:2
**unlimited** 6:5
**U.S** 1:14,23

**V**

**versus** 4:17

**W**

**Walnut** 3:4
**want** 4:23 9:12
**wants** 9:21
**wasn't** 6:2
**week** 4:9,9
**we're** 6:25 7:24,24
  9:12
**wire** 9:20
**withdraw** 4:22
**withheld** 6:13
**witness** 9:9
**word** 7:17
**WORLDCOM** 1:8
**written** 5:11

**X**

**x** 1:5,12

**Y**

**York** 1:3,16,16

**0**

**02-13533** 1:4

**1**

**11173** 2:2
**11242** 2:2
**1201** 3:4
**15** 1:18
**17** 12:9

**2**

**2** 10:17 11:8
**2:03** 1:19
**2:16** 11:16
**2007** 1:18 12:9

**3**

**30(b)(6)** 2:6 5:21
  6:17,19
**321** 3:13

**5**

**5/22** 11:8
**59** 10:2,12

| 6 | | | |
|---|---|---|---|
| **60610** 3:14 | | | |
| **64106** 3:5 | | | |
| 7 | | | |
| **7068** 2:1 | | | |